# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| GREGORY B. MYERS,<br><br>    Appellant,<br><br>    v.<br><br>ROGER SCHLOSSBERG, BRIAN KING,<br>CRISTINA AND BRIAN KING<br>CHILDREN'S TRUST and<br>CRISTINA KING,<br><br>    Appellees. | Civil Action No. 25-2042-TDC |
| GREGORY B. MYERS,<br><br>    Appellant,<br><br>    v.<br><br>ROGER SCHLOSSBERG, BRIAN KING,<br>CRISTINA AND BRIAN KING<br>CHILDREN'S TRUST and<br>CRISTINA KING,<br><br>    Appellees. | Civil Action Nos. 25-2103-TDC<br>25-2337-TDC<br>25-2635-TDC |
| GREGORY B. MYERS,<br><br>    Appellant,<br><br>    v.<br><br>ROGER SCHLOSSBERG, BRIAN KING,<br>CRISTINA KING and<br>CRISTINA AND BRIAN KING<br>CHILDREN'S TRUST,<br><br>    Appellees. | Civil Action No. 25-2338-TDC |

## MEMORANDUM OPINION

Appellant Gregory B. Myers has appealed 13 orders of the United States Bankruptcy Court for the District of Maryland across five different appeals, Nos. 25-2042-TDC, 25-2103-TDC, 25-2337-TDC, 25-2338-TDC, and 25-2635-TDC. Having reviewed the submitted materials, the Court finds that no hearing is necessary because the facts and legal arguments have been adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr. P. 8019(b). For the reasons set forth below, Myers's Motion to Supplement the Record will be GRANTED, Myers's Motion to Compel will be DENIED, Myers's appeal of the bankruptcy court's orders in No. 25-2042-TDC will be DISMISSED, and the bankruptcy court's orders in the remaining appeals will be AFFIRMED.

## BACKGROUND

### I.    Goldsboro LLC

In late 2012, Appellant-Debtor Gregory B. Myers located a parcel of real property located at 6789 Goldsboro Road in Bethesda, Maryland ("the Property") that he believed to be suitable for the development of townhomes. Myers decided to approach Appellee Brian King about financing the purchase of the Property, which led to the establishment of a limited liability company ("LLC"), 6789 Goldsboro LLC ("Goldsboro LLC"). Specifically, the members of Goldsboro LLC consisted of three Class A members, Brian King, Cristina King, and the Cristina and Brian King Children's Trust (collectively, "the King Parties"), and one Class B member, Serv Trust, which was a trust created by Myers's mother for the benefit of Myers's children and of which Myers was a co-trustee. According to Goldsboro LLC's Operating Agreement ("the Operating Agreement"), the King Parties provided almost all of the funds needed to purchase the Property, and Serv Trust was provided a period of three years in which to make the project profitable, or Serv Trust's interest in the Property could be redeemed by the King Parties. In particular, the Operating Agreement

2

stated that if government approvals needed to subdivide the property into at least 19 townhomes were not obtained by July 18, 2016, the King Parties could have the Property appraised. If the appraised value of the Property fell below the King Parties' total investment in the Property, the King Parties could then redeem Serv Trust's interest in Goldsboro LLC in that they could claim Serv Trust's interest in the Property in exchange for the value of payments and distributions previously paid to Serv Trust. On July 18, 2013, Goldsboro LLC purchased the Property for $1.35 million. Myers was named as manager of Goldsboro LLC.

The necessary government approvals to permit the development of 19 townhomes on the Property were never obtained. However, as the project progressed, Myers convinced Brian King to contribute additional funds to Goldsboro LLC, which could then be loaned to Serv Trust or to Myers. In September 2016, the King Parties offered to purchase Serv Trust's shares in Goldsboro LLC for $2 million, reduced by the amount needed to repay Serv Trust's outstanding loan obligations to Goldsboro LLC. Serv Trust was required to accept the offer by September 12, 2016 but did not do so.

In January 2017, after the local government denied the proposal to develop townhomes on the Property, Myers emailed Brian King an executed Memorandum of Understanding in which he claimed that Serv Trust had timely accepted the King Parties' offer. Brian King rejected the untimely acceptance and terminated Myers as the manager of Goldsboro LLC.

Pursuant to the terms of the Operating Agreement, the King Parties had the Property appraised and determined that it was worth between $1 million and $1.325 million, below the approximately $3 million the King Parties had invested in the Property. As a result, pursuant to the Operating Agreement, the King Parties could redeem, or claim, Serv Trust's ownership interest in Goldsboro LLC without additional payments to Serv Trust.

3

## II.   Bankruptcy and Related Proceedings

Meanwhile, on November 18, 2015, Myers filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Maryland ("the bankruptcy court"). On February 22, 2017, Myers's bankruptcy was converted to a Chapter 7 bankruptcy, and the United States Trustee ("the Trustee") was appointed in relation to that proceeding.

On September 14, 2017, the King Parties filed a Complaint in the Circuit Court for Montgomery County, Maryland ("the State Court Case") seeking a declaratory judgment that Serv Trust's interest in Goldsboro LLC had been redeemed pursuant to the terms of the Operating Agreement ("the Redemption Claim").

On October 29, 2018, Goldsboro LLC commenced an adversary proceeding in the bankruptcy court (Bankr. No. 18-00407) against Myers, Serv Trust, and the Trustee, in which it sought a declaratory judgment that Serv Trust was the alter ego of Myers and that, as such, Serv Trust's assets and liabilities were subject to administration by the Trustee. Goldsboro LLC also sought an order staying the State Court Case. On January 30, 2019, the bankruptcy court entered an order abstaining from exercising jurisdiction over the claims in the adversary proceeding after determining that the State Court Case could result in a finding of whether Serv Trust was the alter ego of Myers, and if such a finding was made, the parties could return to the bankruptcy court for further proceedings. After the entry of the bankruptcy court's abstention order, the King Parties filed an amended complaint in the State Court Case seeking a declaratory judgment that Serv Trust was Myers's alter ego.

After a trial in the State Court Case on January 3, 2023, the court determined that Serv Trust was the alter ego of Myers and entered an order reflecting that judgment on January 12, 2023 ("the Alter Ego Order"). Specifically, the Alter Ego Order found that Serv Trust was Myers's alter

ego as of November 18, 2015, the day on which Myers filed his original bankruptcy petition, that Serv Trust was therefore a disregarded entity, and that because Serv Trust was Myers's alter ego, any remaining proceedings in the State Court Case were subject to the automatic stay provision in 11 U.S.C. § 362(a), including those relating to the Redemption Claim.

Upon the entry of the Alter Ego Order, the Trustee took the position that all of Serv Trust's assets became part of Myers's bankruptcy estate as a matter of law. As a result, the King Parties and the Trustee entered into negotiations over how to resolve the King Parties' Redemption Claim against Serv Trust in the State Court Case. On February 7, 2023, the King Parties and the Trustee filed in the bankruptcy court a Notice of a Proposed Compromise and Settlement which proposed that the King Parties would dismiss the Redemption Claim in the State Court Case in exchange for the Trustee's agreement to a tolling of the applicable statute of limitations. The parties further agreed to negotiate for 30 days at which point if there was no resolution of the Redemption Claim, the King Parties would refile the Redemption Claim as an adversary proceeding in Myers's bankruptcy case. On December 11, 2023, the bankruptcy court issued an order approving the Proposed Compromise and Settlement. Approximately 18 months later, on June 26, 2025, Myers appealed this order to this Court in No. 25-2042-TDC. Meanwhile, when the negotiations did not result in a settlement, the King Parties filed proofs of claim in Myers's bankruptcy case and refiled the Redemption Claim as an adversary proceeding (Bankr. No. 24-00007) on January 11, 2024 ("the Adversary Proceeding").

During the Adversary Proceeding, the King Parties and the Trustee resumed negotiations, and on December 30, 2024, the Trustee filed a "Notice of Trustee's Proposed Compromise and Settlement with King Plaintiffs." Appellee's App'x ("A.A.") 45, No. 25-2103-TDC, ECF No. 29-1. Under the terms of the proposed settlement, the King Parties would pay to the Trustee, for the

5

benefit of the bankruptcy estate, $150,000 in order to gain control of Serv Trust's interest in Goldsboro LLC and resolve the Redemption Claim in the Adversary Proceeding. Once the payment was made, the parties would dismiss the claims in the Adversary Proceeding, and the King Parties would reimburse the Trustee for attorney's fees and expenses incurred in connection with any appeals taken from the bankruptcy court's approval of the settlement.

On January 21, 2025, Myers filed objections to the proposed settlement, and on June 26, 2025, he filed a Notice of Appeal in relation to seven orders issued by the bankruptcy court in the Adversary Proceeding, including: (1) an Order to Show Cause Why the Complaint Should Not be Dismissed for Want of Prosecution; (2) an Order Granting the Stipulation and Motion to Extend Time; (3) the Scheduling Order; (4) a Memorandum to the Parties; (5) a Notice of an Evidentiary Hearing; (6) an Order Dissolving the Show Cause Order After Response; and (7) a second Notice of an Evidentiary Hearing. This appeal was assigned No. 25-2103-TDC.

On June 30 and July 1, 2025, in the Adversary Proceeding, the bankruptcy court held a two-day evidentiary hearing regarding the proposed settlement, in which the King Parties, the Trustee, and Myers all participated. On July 3, 2025, the bankruptcy court issued an oral ruling, which it later memorialized in a written order, approving the proposed settlement between the King Parties and the Trustee ("the Settlement Order"). That same day, the bankruptcy court issued an Order Overruling Claim Objections as Moot in relation to Myers's objections to the King Parties' proofs of claim. On July 17, 2025, Myers filed a Notice of Appeal through which he initiated an appeal of the Settlement Order, which was assigned No. 25-2337-TDC. That same day, Myers filed a second Notice of Appeal through which he initiated an appeal of the Order Overruling Claim Objections as Moot, which was assigned No. 25-2338-TDC.

6

On July 16, 2025, in the Adversary Proceeding, Myers filed an Emergency Motion for a Stay Pending Appeal and a Motion to Shorten the Time to Respond to the Emergency Motion to Stay Pending Appeal. The bankruptcy court denied both Motions on July 18, 2025. On August 1, 2025, Myers filed a Notice of Appeal relating to the denial of these motions, which was assigned No. 25-2635-TDC.

On October 23, 2025, this Court issued an order consolidating Nos. 25-2103-TDC, 25-2337-TDC, and 25-2635-TDC for purposes of appeal ("the Consolidated Appeals"). On January 8, 2026, Myers filed a Motion to Compel the Production of the Executed Settlement Agreement, and on January 9, 2026, Myers filed a Motion to Supplement the Record with certain hearing transcripts. Finally, Myers filed an Emergency Motion for a Stay Pending Appeal on February 19, 2026, which the Court denied on April 29, 2026.

## DISCUSSION

The Court has before it three different bankruptcy appeals advanced by Myers: No. 25-2042-TDC; the Consolidated Appeals in Nos. 25-2103-TDC, 25-2337-TDC, and 25-2635-TDC; and No. 25-2338-TDC. Because these appeals all arise out of Myers's bankruptcy proceedings and all relate to the same general matters in which the King Parties are the adverse party to Myers, the Court will address them in the same ruling.

### I.   Standard of Review

On an appeal from the bankruptcy court, this Court reviews legal conclusions *de novo*, factual findings for clear error, and discretionary decisions for abuse of discretion. *Copley v. United States*, 959 F.3d 118, 121 (4th Cir. 2020); *In re Harford Sands, Inc.*, 372 F.3d 637, 639 (4th Cir. 2004).

## II.      Procedural Motions

Before addressing the appeals, the Court considers and resolves certain procedural motions filed by Myers.

### A.      Motion to Supplement the Record

Myers has filed an unopposed Motion to Supplement the Record through which he seeks to supplement the appellate record with transcripts of the bankruptcy court's June 30 and July 1, 2025 hearing on the Settlement Order, which were unavailable when Myers made his initial designation of record. Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8009 permits either party to correct an omission or misstatement in the record by filing a supplemental record with the court in which the appeal is pending. *See* Fed. R. Bankr. P. 8009(e)(2)(C). Accordingly, the Court will grant this Motion. In addition, where Myers included the transcript of the bankruptcy court's oral ruling approving the Settlement Order as Appendix F-1 to his opening brief, but that transcript was not included in Myers's original designation of record, the Court will construe this Motion as including a request to supplement the record with the transcript included in Appendix F-1 and will grant that request.

### B.      Motion to Compel

Myers has also filed a Motion to Compel the Production of the Executed Settlement Agreement, in which he requests that the Court require the Trustee to produce the executed settlement agreement approved in the Settlement Order, or to certify that no agreement was ever executed. Appellees oppose this Motion and argue that Myers failed to raise the issue of the lack of a signed settlement agreement before the bankruptcy court and that the production of any written settlement agreement is immaterial to the appeal because Bankruptcy Rule 9019 does not require a written settlement agreement.

8

Where this Court's review of appeals from the bankruptcy court is generally limited to the record before the bankruptcy court, and it is undisputed that no such written settlement agreement was presented to the bankruptcy court, it is neither necessary nor proper to include extra-record evidence in the record before this Court. *See In re CPDC, Inc.*, 337 F.3d 436, 443 (5th Cir. 2003) (holding that the Bankruptcy Rules do not "permit items to be added to the record on appeal to the district court if they were not part of the record before the bankruptcy court"); *In re Bartlett*, 92 B.R. 142, 143 (E.D.N.C. 1988) ("[I]n reviewing a bankruptcy case on appeal, a district court can consider only that evidence which was presented before the bankruptcy court and made a part of the record."). Moreover, as discussed below, the Court concludes that a written settlement agreement is not required for a bankruptcy court to approve a settlement pursuant to Bankruptcy Rule 9019, so the production and inclusion of any such written settlement agreement would be immaterial to the Court's ruling on the appeals. *See infra* part IV.B.2. Accordingly, Myers's Motion to Compel will be denied.

## III.    No. 25-2042-TDC

In No. 25-2042-TDC, Myers seeks review of two orders of the bankruptcy court: (1) the December 11, 2023 Order Denying the Debtor's Motion to Strike the Trustee's Motion for Approval of the Proposed Compromise and Settlement with the King Parties; and (2) the December 11, 2023 Order Granting the Trustee's Motion for Approval of the Proposed Compromise and Settlement with the King Parties. Rather than filing an appellant's brief, Myers has filed a Notice entitled "Appellant Gregory B. Myers's Notice of Overlapping Issues and Cross-Application of Opening Brief," in which he cross-references the arguments made in his opening brief filed in the Consolidated Appeals. Notice at 1–2, No. 25-2042-TDC, ECF No. 18. In No. 25-2042-TDC, Appellees have filed a Motion to Dismiss the Appeal in which they argue that the

9

Court lacks jurisdiction over the appeal because Myers's Notice of Appeal was untimely filed, and because this appeal is Myers's second attempt to obtain appellate review over the bankruptcy court orders at issue. Myers has not filed any brief in opposition to Appellees' Motion to Dismiss.

A party seeking to appeal an order of the bankruptcy court must file a notice of appeal with the Clerk of the bankruptcy court within 14 days of the entry of the order to be appealed. *See* Fed. R. Bankr. P. 8002(a)(1). The issue of whether an appellant has timely filed a notice of appeal in a bankruptcy appeal is jurisdictional. *See In re Berman-Smith*, 737 F.3d 997, 1003 (5th Cir. 2013); *In re Myers*, No. 20-2309, 2024 WL 2764717, at *1 (4th Cir. May 30, 2024).

Here, the two bankruptcy court orders at issue in No. 25-2042-TDC were both entered on December 11, 2023, so the deadline to file a notice of appeal period was 14 days after that date, or on December 25, 2023. Myers, however, filed his Notice of Appeal on June 26, 2025, over 18 months after the entry of the appealed orders. Therefore, Myers's Notice of Appeal is untimely, and the Court lacks jurisdiction to review the underlying orders. Accordingly, the Court will grant the Motion to Dismiss and will dismiss No. 25-2042-TDC.

## IV.   Consolidated Appeals (Nos. 25-2103-TDC, 25-2337-TDC, and 25-2635-TDC)

In the Consolidated Appeals, Myers seeks review of 10 orders of the bankruptcy court in relation to the Adversary Proceeding involving the King Parties: (1) the Order to Show Cause Why the Complaint Should Not be Dismissed for Want of Prosecution; (2) the Order Granting the Stipulation and Motion to Extend Time; (3) the Scheduling Order; (4) a Memorandum to the Parties; (5) a Notice of an Evidentiary Hearing; (6) the Order Dissolving the Show Cause Order After Response; (7) a second Notice of an Evidentiary Hearing; (8) the Settlement Order; (9) the Order Denying the Emergency Motion for a Stay Pending Appeal; and (10) the Order Denying the Motion to Shorten the Time to Respond to the Emergency Motion for a Stay Pending Appeal.

10

### A.    Abandoned Arguments

In his opening brief, Myers's arguments relate only to the reasons that the bankruptcy court erred in issuing the Settlement Order, and he asserts no arguments relating to the nine other bankruptcy court orders referenced in the Notices of Appeal.  Appellees thus argue that Myers has abandoned the appeal of these nine orders.  In a bankruptcy appeal, issues not raised in the opening brief are deemed abandoned on appeal.  *See Moses v. CashCall, Inc.*, 781 F.3d 63, 79 (4th Cir. 2015); *Lyerly v. Internal Revenue Serv.*, 235 B.R. 401, 404 (W.D.N.C. 1998) (citing *Tucker v. Waddell*, 83 F.3d 688, 690 n.1 (4th Cir. 1996)); *Bastman v. Hassell*, No. 5:18-cv-486-D, 2019 WL 2366422, at *3 (E.D.N.C. May 15, 2019).  Indeed, the Federal Rules of Bankruptcy Procedure and the Federal Rules of Appellate Procedure both require that the argument section of an appellant's brief must contain the "appellant's contentions and the reasons for them."  Fed. R. Bankr. P. 8014(a)(8); *see also* Fed. R. App. P. 28(a)(8)(A) (same).  The United States Court of Appeals for the Fourth Circuit has held that the failure to comply with this requirement waives any such claim on appeal.  *See Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 607 (4th Cir. 2009).

Upon review of Myers's opening brief, the Court finds that he has asserted arguments only in relation to the Settlement Order.  Accordingly, the Court finds that Myers has abandoned any arguments relating to the other nine bankruptcy court orders in the Consolidated Appeals and therefore summarily affirms the bankruptcy court as to those orders.

### B.    Settlement Order

In the opening brief, Myers asserts five arguments for why the bankruptcy court erred in issuing the Settlement Order:  (1) the bankruptcy court lacked subject matter jurisdiction to approve the Settlement Order; (2) the bankruptcy court erred when it approved the compromise pursuant to Bankruptcy Rule 9019 without a written settlement agreement; (3) the bankruptcy

11

court violated Myers's constitutional right to due process of law when, as part of the Settlement Order, it held that the King Parties' proofs of claim were withdrawn even while Myers's objections to those claims were pending; (4) the Settlement Order is not a final order; and (5) the bankruptcy court abused its discretion by approving the Settlement Order when it did not have the statutory authority to do so.

### 1.    Subject Matter Jurisdiction

Myers first argues that the bankruptcy court lacked subject matter jurisdiction to issue the Settlement Order because it could not approve a settlement affecting Serv Trust's property, which he argues was not bankruptcy estate property. Specifically, Myers argues that a claim that Serv Trust is his alter ego must be litigated and determined in a Chapter 5 adversary proceeding, which has not occurred, and that such status cannot be determined by a "non-final state-court order" such as the ruling in the State Court Case. Appellant's Brf. at 11, No. 25-2103-TDC, ECF No. 21.

The issue of whether the bankruptcy court had subject matter jurisdiction to issue the Settlement Order is a question of law which the Court reviews *de novo*. *See Copley*, 959 F.3d at 121; *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1007 (4th Cir. 2014) ("We review questions of law, including a lower court's determination of its subject-matter jurisdiction, de novo."). A bankruptcy court, as a unit of a United States District Court, has exclusive jurisdiction over the property of the bankruptcy estate. *See* 28 U.S.C. §§ 151, 1334(e)(1). A bankruptcy estate generally includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, whether property is an asset of a bankruptcy estate is determined by state law, in this case, Maryland law. *See In re Levitsky*, 401 B.R. 695, 710 (Bankr. D. Md. 2008).

As to whether Serv Trust's assets can be considered property of Myers's bankruptcy estate, the State Court's Alter Ego Order entered on January 12, 2023, which determined that Serv Trust was Myers's alter ego as of November 18, 2015, that Serv Trust was a disregarded entity, and that any remaining state court proceedings against Serv Trust were subject to the Bankruptcy Code's automatic stay provision set forth in 11 U.S.C. § 362, was a valid, final order. Indeed, the Court takes judicial notice that, although Myers appealed the State Court Case in which the Alter Ego Order was entered, on February 11, 2026, the Appellate Court of Maryland issued its mandate dismissing Myers's appeal. *See* Mandate at 1, *Myers v. Serv Trust*, No. ACM-REG-0910-2025 (Md. App. Ct. Feb. 11, 2026). As for its status as of the entry of the Settlement Order on July 3, 2025, before the dismissal of the appeal, a judgment becomes effective "when entered," Md. Rule 2–601(a)(4), and there was no stay pending appeal, so as the bankruptcy court concluded, it was a valid judgment entitled to full force and effect. Thus, as of January 12, 2023, Serv Trust was an alter ego of Myers, its assets were part of Myers's bankruptcy estate, and the bankruptcy court had subject matter jurisdiction over the administration of Serv Trust's assets.

Myers's argument that any alter ego determination must be made in a bankruptcy court adversary proceeding is without merit. Myers has identified no authority establishing such a requirement. In *In re Bogdan*, 414 F.3d 507 (4th Cir. 2005), cited by Myers, the court held that the property of a bankruptcy estate includes a cause of action assigned to it by a creditor, and the Trustee has standing to advance such a claim on behalf of the estate. *See id.* at 512. In *Wilson v. Dollar General Corp.*, 717 F.3d 337 (4th Cir. 2013), also cited by Myers, the court held that a Chapter 13 debtor possesses standing, concurrent with the Trustee, to maintain non-bankruptcy causes of action on behalf of the estate. *Id.* at 343. Neither of these cases address or limit the ability of third parties to seek a declaratory judgment in state court that an entity such as Serv Trust

13

is the alter ego of a debtor such as Myers, or otherwise require such claims to be brought by the Trustee in an adversary proceeding.  Myers's citation to *Law v. Siegel*, 571 U.S. 415 (2014), is similarly unpersuasive.  *Law* stands for the unremarkable proposition that a bankruptcy court, when exercising its statutory and inherent powers, cannot contravene specific statutory provisions. *See id.* at 421.

Notably, the bankruptcy court specifically agreed to have the alter ego determination made in the State Court Case.  The record reflects that on October 29, 2018, Goldsboro LLC commenced an adversary proceeding in the bankruptcy court seeking a declaratory judgment that Serv Trust was the alter ego of Myers, and that Serv Trust's assets and liabilities were thus subject to administration by the Trustee.  However, on January 30, 2019, the bankruptcy court entered an order abstaining from exercising jurisdiction over the claims in the adversary proceeding after determining that whether Serv Trust was the alter ego of Myers could be decided in the State Court Case.  In its abstention order, the bankruptcy court directed that if the state court determined that Serv Trust was Myers's alter ego, then the parties could return to the bankruptcy court for further proceedings.  Notably, Myers did not and does not appeal the bankruptcy court's abstention order, and the exact sequence of events envisioned in the bankruptcy court's abstention order came to pass when the State Court determined that Serv Trust was Myers's alter ego, and the parties then returned to the bankruptcy court.

Regardless, Myers overreads the extent of the bankruptcy court's Settlement Order. Although Myers argues that the bankruptcy court exceeded its constitutional limitations when it "purported to enter a final, binding order purporting to transfer non-estate property owned by a non-debtor trust," the Settlement Order did not do so.  Appellant's Brf. at 11.  Rather, the Settlement Order authorizes the Trustee to transfer to the King Parties "all of the right, title and

14

interest of the Trustee, the Debtor and the bankruptcy estate in and to any and all membership interest in or property of 6789 Goldsboro LLC." A.A. 205. By limiting the Settlement Order in this way, the bankruptcy court ensured that the Settlement Order extended only to property of the bankruptcy estate, without needing to adjudicate the exact contours of what interests of Serv Trust, if any, were part of the bankruptcy estate. Accordingly, even if the Alter Ego Order were deemed to be invalid or inapplicable, the bankruptcy court still would have had subject matter jurisdiction to enter the Settlement Order.

### 2.    Lack of a Written Agreement

Next, Myers argues that the bankruptcy court committed legal error when it approved the Settlement Order pursuant to Bankruptcy Rule 9019 without an "executed settlement agreement" that was "submitted, admitted, or incorporated into the order." Appellant's Brf. at 13. As a result, Myers argues that the bankruptcy court improperly approved a settlement "whose existence, scope, and enforceability cannot be verified from the record." *Id.* Myers also argues that the bankruptcy court inappropriately added terms to the Settlement Order at the hearing on the proposed settlement without providing prior notice. Specifically, Myers objects to the term in the Settlement Order that the King Parties' proofs of claim filed in the underlying bankruptcy case would be deemed withdrawn. The Court reviews these issues of law *de novo*. *See Barlow*, 772 F.3d at 1007.

Upon review, the Court first finds that Myers has waived these arguments because he did not timely raise them before the bankruptcy court. Objections to the proposed settlement between the Trustee and the King Parties were due 21 days after the issuance of Notice of the Trustee's Proposed Compromise and Settlement, which was filed on December 30, 2024. Although Myers filed timely objections to the proposed settlement on January 21, 2025, those objections focused on the validity of the State Court Alter Ego Order and did not include an objection to the lack of a

15

written settlement agreement. Although Myers filed supplemental objections to the proposed settlement on July 3, 2025, which included an objection to the lack of a written settlement agreement, these objections were submitted months after the deadline for submitting objections, after the bankruptcy court had already held a two-day hearing on the proposed settlement, and on the morning that the bankruptcy court issued its oral ruling approving the proposed settlement. Because those supplemental objections were not timely filed, the bankruptcy court declined to consider them.

An Appellant's failure to raise properly a non-jurisdictional issue before a bankruptcy court will generally be treated as a waiver of that issue on appeal. *See United Rentals, Inc. v. Angell*, 592 F.3d 525, 531 n.2 (4th Cir. 2010) ("Because this argument is raised for the first time on appeal, we do not address it."); *Rusnack v. Cardinal Bank, N.A.*, 695 F. App'x 704, 711 (4th Cir. 2017) ("We regularly decline to hear claims litigants raise for the first time on appeal . . . [t]he same rationale applies with equal force to arguments not raised before the bankruptcy court . . . ."). In particular, courts have concluded that, as occurred here, when a party fails to assert an argument before the bankruptcy court in a timely manner, the issue can be deemed waived on appeal. *See In re Maurice*, 21 F.3d 767, 771 (7th Cir. 1994) (concluding that "[r]aising the issue after the judge has conducted the hearing and received all of the evidence is too late; failing to timely object to the alleged error waives any right to later appeal the issue"); *In re Imerys Talc Am., Inc.* 38 F.4th 361, 372–73 (3d Cir. 2022) (agreeing with the district court that when a party first raised an argument "in a 'supplemental objection' filed months after the bankruptcy court's deadline for objections had passed," the issue had been waived on appeal, but then considering the issue as a matter of discretion because the bankruptcy court had addressed its merits). Although there is a limited exception to the waiver rule when the error is plain and the refusal to consider the issue

16

would result in a miscarriage of justice, Myers has made no showing that this exception is applicable here. *See Dean v. McDow*, 299 B.R. 133, 139 (E.D. Va. 2003). Because Myers failed to timely raise this issue before the bankruptcy court, he has waived this argument.

Even if the argument was not waived, it is without merit. Bankruptcy Rule 9019 allows a bankruptcy court to approve a compromise or settlement "[o]n the trustee's motion and after notice and a hearing." Fed. R. Bankr. P. 9019(a). Notice must be given, in relevant part, to "all creditors" and "the debtor." *Id.* Nothing in the rule requires that there be a written settlement agreement, an "executed settlement agreement," or a settlement agreement that is "submitted, admitted, or incorporated into the order," as Myers suggests. Appellant's Brf. at 13. Rather, Rule 9019 and due process are satisfied "without setting forth verbatim the full text of a proposed settlement," which may be described "in general terms." *In re Drexel Burnham Lambert Grp. Inc*, 995 F.2d 1138, 1145 (2d Cir. 1993). For the same reason, the inclusion of the provision withdrawing the proofs of claim did not violate the notice requirement because it does not require "a detailed description of each item" in the proposed settlement. *Id.* at 1144. To hold otherwise would be to ignore that negotiations over the precise wording of a proposed settlement may still be ongoing after the notice is issued. *See id.* at 1145 ("[P]recise specificity apparently was impossible given that negotiations with respect to details of the settlement agreement were ongoing and not concluded until the proverbial eleventh hour.") For all of these reasons, the Court rejects the argument that the bankruptcy court violated Rule 9019 and due process when it issued the Settlement Order without a written settlement agreement.

### 3.    Due Process on Proofs of Claim

Myers also argues that the bankruptcy court violated due process when, in the Settlement Order, it permitted the King Parties to withdraw their proofs of claim filed in the underlying

bankruptcy case despite Myers's pending objections to them. Myers further argues that allowing the withdrawal of the proofs of claim violated Bankruptcy Rule 3006. This issue raises a mixed question of law and fact which the Court reviews *de novo* because it primarily requires consideration of legal principles. *See Rinn v. First Union Nat'l Bank*, 176 B.R. 401, 407 (D. Md. 1995).

To begin, as Appellees point out, it is difficult to see how Myers's due process rights were violated when the King Parties agreed to withdraw their proofs of claim against his bankruptcy estate—proofs of claim to which he objected. Although Myers argues that his objections to the proofs of claim were extinguished without adjudication, which "deprived the Debtor of notice and a hearing, in violation of due process," Appellant's Brf. at 14, the King Parties' withdrawal of these proofs of claim effectively granted Myers the relief he sought when he filed those objections. To the extent that any due process rights were impacted by the Settlement Order, it was the King Parties' right to have their proofs of claim adjudicated.

Even considering the due process argument, the standard procedural due process requirements of notice and an opportunity to be heard were satisfied. *See Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014) ("At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard."). First, as to notice, the Notice of the Trustee's Proposed Compromise and Settlement, docketed on December 30, 2024, stated that "[u]pon successful negotiation of the Settlement Payment by the Trustee, the parties will file a Stipulation of Dismissal in the Adversary Case dismissing all claims therein with prejudice." A.A. 50. Where the withdrawn proofs of claim were for an "[e]quitable and statutory claim, as set forth in [the Adversary Proceeding]," Myers had advanced notice that the dismissal of the claims in the Adversary Proceeding would encompass dismissal of the proofs of claim,

18

which were filed in order to preserve the King Parties' right to pursue relief in the Adversary Proceeding.  A.A. 211, 214, 217.

Further, Myers had notice of, attended, and participated in the bankruptcy court's hearing on the proposed settlement on June 30 and July 1, 2025, after which the bankruptcy court memorialized the withdrawal of the proofs of claim in the Settlement Order.  During the hearing, when the King Parties confirmed that they would withdraw their proofs of claim in the bankruptcy case, Myers was provided with an opportunity to address the bankruptcy court immediately after that discussion.  A.A. 224–25.  Where Myers received notice and an opportunity to be heard, the Court does not find that the bankruptcy court's approval of the withdrawal of the proofs of claim violated due process.  For the same reasons, that action did not violate Bankruptcy Rule 3006, which requires notice to the debtor of the hearing at which a proof of claim will be withdrawn and further provides that "[a] creditor may not withdraw a proof of claim" if an objection to it has been filed "unless the court orders otherwise after notice and a hearing."  Fed. R. Bankr. P. 3006(a)(1), (b).

### 4.      Final Order

Myers next argues that the Settlement Order is not a final order.  If Myers were correct that the Settlement Order is not a final order, then this Court would be required to dismiss this appeal, because the Court only has jurisdiction to hear appeals "from final judgments, orders, and decrees," unless the court grants leave to appeal an interlocutory order, which Myers has neither sought nor received.  28 U.S.C. §§ 158(a)(1), (3); *see* Fed. R. Bankr. P. 8004(a) (setting forth the requirements for a party seeking to appeal an interlocutory order under 28 U.S.C. § 158(a)(3)).

Regardless, a bankruptcy court's order approving a settlement between parties under Rule 9019 is a final order.  *See In re Gibraltar Res., Inc.*, 210 F.3d 573, 576 (5th Cir. 2000) ("A

19

bankruptcy court's approval of a settlement order that brings to an end litigation between parties is a 'final' order."); *In re The Bennett Funding Grp., Inc.*, 439 F.3d 155, 160 (2d Cir. 2006) (citing *In re Gibraltar Res., Inc.*). Here, where the Settlement Order was such an order, and the Adversary Proceeding was then dismissed with prejudice, Notice of Dismissal (Bankr. No. 24-00007) at 1, No. 25-2103-TDC, ECF No. 26-4, the Court rejects Myers's argument that the Settlement Order is not a final order.

### 5. Lack of Statutory Authority

Finally, Myers argues that the bankruptcy court abused its discretion because the Settlement Order "transferred or extinguished rights in non-estate property." Appellant's Brf. at 14. This argument mirrors Myers's argument that the bankruptcy court lacked subject matter jurisdiction because it could not approve a settlement affecting Serv Trust's property, which Myers maintains was non-estate property. In the context of that argument, the Court has already concluded that Serv Trust's property was part of the bankruptcy estate, and that even if it was not, the Settlement Order authorized the transfer to the King Parties of only the interests of Myers and the bankruptcy estate in Goldsboro LLC, so it did not transfer any property outside of the bankruptcy estate. *See supra* part IV.B.1. Based on these same findings, the Court rejects the argument that the bankruptcy court exceeded its statutory authority when it issued the Settlement Order.

For all of the reasons discussed above, the Court affirms the bankruptcy court's approval of the Settlement Order.

## V. No. 25-2338-TDC

In No. 25-2338-TDC, Myers seeks review of the bankruptcy court's July 3, 2025 Order Overruling the Claim Objections as Moot, in which the bankruptcy court ruled that Myers's

objections to the King Parties' withdrawn proofs of claim were moot. As in No. 25-2042-TDC, rather than filing an appellant's brief, Myers has filed a Notice entitled "Appellant Gregory B. Myers's Notice of Overlapping Issues and Cross-Application of Opening Brief," in which he cross-references his arguments made in the appellant's brief filed in the Consolidated Appeals, including those addressing "the bankruptcy court's authority to enter the challenged orders." Notice at 1–2, No. 25-2338-TDC, ECF No. 14. In the Consolidated Appeals, Myers argued that the bankruptcy court violated due process and Bankruptcy Rule 3006 when, in the Settlement Order, it allowed the King Parties' proofs of claim to be deemed withdrawn despite Myers's pending objections to those proofs of claim. However, as discussed above, the Court has concluded that the bankruptcy court did not violate due process and Bankruptcy Rule 3006 and instead properly permitted the King Parties to withdraw their proofs of claim in the Settlement Order. *See supra* part IV.B.3. For the same reasons, the Court also finds that the bankruptcy court properly overruled as moot Myers's objections to the Kings Parties' proofs of claim once they were withdrawn pursuant to the Settlement Order. Accordingly, the Court affirms the bankruptcy court's Order Overruling the Claim Objections as Moot.

<strong>CONCLUSION</strong>

For the foregoing reasons, Myers's Motion to Supplement the Record will be GRANTED, Myers's Motion to Compel will be DENIED, Myers's appeal of the bankruptcy court's orders in No. 25-2042-TDC will be DISMISSED, and the bankruptcy court's orders in Nos. 25-2103-TDC, 25-2337-TDC, 25-2338-TDC, and 25-2635-TDC will be AFFIRMED. A separate Order shall issue.

Date: June 3, 2026



THEODORE D. CHUANG
United States District Judge