Entered: April 15th, 2026
Signed: April 14th, 2026

## SO ORDERED

For the reasons stated in the Trustee's opposition at Dkt. No. 68,
the motion is denied.

*Maria Ellena Chavez-Ruark*

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor. | ) | (Chapter 7) |
| | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.:  24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER DENYING MOTION TO INTERVENE IN ADVERSARY PROCEEDING

Upon consideration of the *Motion to Intervene in Adversary Proceeding* (the "*Motion*"),

[Dkt. #43], filed by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger

Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in

connection with the *Motion*, and this Court being fully advised, it is hereby

**ORDERED**, that the *Motion* be, and the same hereby is, **DENIED**.

**END OF ORDER**

Appx. 0021

cc:    Roger Schlossberg, Esq.
        Frank J. Mastro, Esq.
        Maurice B. Verstandig, Esq.
        Gregory B. Myers, Debtor
        All persons requesting notice

Appx. 0022

Entered: April 15th, 2026
Signed: April 14th, 2026

## SO ORDERED

For the reasons stated in the Trustee's opposition at Dkt. No. 69, the motion is denied.



*Maria Ellena Chavez-Ruark*

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re: ) | |
| GREGORY B. MYERS, ) | Case No. 15-26033-MCR |
| ) | |
| Debtor. ) | (Chapter 7) |
| ) | |
| ) | |
| BRIAN KING, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adv. No.:  24-00007 |
| ) | |
| ROGER SCHLOSSBERG, TRUSTEE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER DENYING MOTION TO DISMISS**
**FOR FAILURE TO JOIN INDISPENSABLE PARTY**

Upon consideration of the *Motion to Dismiss for Failure to Join Indispensable Party* (the

"*Motion*"), [Dkt. #45], filed by the Debtor, Gregory B. Myers, the opposition thereto filed by

Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed

in connection with the *Motion*, and this Court being fully advised, it is hereby

**ORDERED**, that the *Motion* be, and the same hereby is, **DENIED**.

Appx. 0023

**END OF ORDER**

cc:  Roger Schlossberg, Esq.
Frank J. Mastro, Esq.
Maurice B. Verstandig, Esq.
Gregory B. Myers, Debtor
All persons requesting notice

Appx. 0024

**SO ORDERED**

For the reasons stated in the Trustee's opposition at Dkt. No. 72, the motion is denied.



*Maria Ellena Chavez-Ruark*

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re: ) | |
| GREGORY B. MYERS, ) | Case No. 15-26033-MCR |
| ) | |
| Debtor. ) | (Chapter 7) |
| ) | |
| ) | |
| BRIAN KING, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adv. No.: 24-00007 |
| ) | |
| ROGER SCHLOSSBERG, TRUSTEE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER DENYING MOTION TO DISQUALIFY JUDGE**

Upon consideration of the *Motion to Disqualify Judge Maria Ellena Chavez-Ruark* (the "*Motion*"), [Dkt. #47], filed herein by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in connection with the *Motion*, and this Court being fully advised, it is hereby

**ORDERED**, that the *Motion* be, and the same hereby is, **DENIED**.

**END OF ORDER**

Appx. 0025

cc:   Roger Schlossberg, Esq.
      Frank J. Mastro, Esq.
      Maurice B. Verstandig, Esq.
      Gregory B. Myers, Debtor
      All persons requesting notice

Appx. 0026

Entered: April 15th, 2026
Signed: April 14th, 2026

## SO ORDERED

For the reasons stated in the King Parties' opposition at Dkt. No. 67, the motion is denied.



Maria Ellena Chavez-Ruark

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Case No. 24-00007-MCR |
| v. | ) | |
| | ) | |
| ROGER SCHLOSSBERG, in His Official | ) | |
| Capacity as Chapter 7 Trustee of the | ) | |
| Bankruptcy Estate of Gregory B. Myers, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER DENYING DEBTOR'S MOTION TO DISQUALIFY COUNSEL

Upon consideration of the Debtor's Motion to Disqualify Counsel (the "Motion," as found

at DE #49); the opposition of Brian King, Cristina King and the Cristina and Brian King Children's

Trust thereto, the arguments set forth in the aforesaid opposition, the record herein, and applicable

law, it is, by the United States Bankruptcy Court for the District of Maryland, hereby:

Appx. 0027

ORDERED, that the Motion be, and hereby is, DENIED

Copies:

Frank J. Mastro, Esq.
Schlossberg Mastro
P.O. Box 2067
Hagerstown, Maryland 21742
Email: fmastro@schlosslaw.com

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Email: mac@mbvesq.com

Gregory Myers
700 Gulf Shore Blvd. N
Naples, Florida 34102

2

Appx. 0028

Entered: April 15th, 2026
Signed: April 14th, 2026

## SO ORDERED

For the reasons stated in the Trustee's opposition at Dkt. No. 74, the motion is denied.



*Maria Ellena Chavez-Ruark*

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re:<br>GREGORY B. MYERS,<br><br>Debtor. | )<br>) Case No. 15-26033-MCR<br>)<br>) (Chapter 7)<br>) |
| BRIAN KING, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROGER SCHLOSSBERG, TRUSTEE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Adv. No.: 24-00007<br>)<br>)<br>)<br>) |

### <u>ORDER DENYING SECOND MOTION TO DISQUALIFY JUDGE</u>

Upon consideration of the *Second Motion to Disqualify Judge Maria Ellena Chavez-Ruark* (the "*Second Motion*"), [Dkt. #57], filed herein by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in connection with the *Second Motion*, and this Court being fully advised, it is hereby

**ORDERED**, that the *Second Motion* be, and the same hereby is, **DENIED**.

Appx. 0029

**END OF ORDER**

cc:    Roger Schlossberg, Esq.
       Frank J. Mastro, Esq.
       Maurice B. Verstandig, Esq.
       Gregory B. Myers, Debtor
       All persons requesting notice

Appx. 0030

Entered: April 15th, 2026
Signed: April 14th, 2026

**SO ORDERED**

The Court denied the Debtor's motion to intervene. Therefore, the Debtor's motion for summary judgment is denied.

*Maria Ellena Chavez-Ruark*

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor. | ) | (Chapter 7) |
| | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.:  24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Upon consideration of the "*Motion for Final Summary Judgment as to Count I of Third Party Complaint and Demand for Jury Trial*" (the "*Motion*"), [Dkt. #78], filed by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in connection with the *Motion*, and this Court being fully advised, it is hereby

ORDERED, that the *Motion* be, and the same hereby is, **DENIED**.

Appx. 0031

**END OF ORDER**

cc:    Roger Schlossberg, Esq.
        Frank J. Mastro, Esq.
        Maurice B. VerStandig, Esq.
        Gregory B. Myers, Debtor
        All persons requesting notice

Appx. 0032

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:

GREGORY B. MYERS,

    Debtor.

_____/

Case No. 15-26033-MCR
(Chapter 7)

BRIAN KING, et al.,

    Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

    Defendant.

_____/

Adv. No. 24-00007

**DEBTOR'S OMNIBUS PROTECTIVE MOTION FOR EXTENSION OF TIME TO
APPEAL APRIL 15, 2026 ORDERS, TO VACATE ORDERS AS VOID, OR
ALTERNATIVELY FOR INDICATIVE RULING UNDER RULE 8008**

Debtor Gregory B. Myers, pro se, files this Omnibus Protective Motion for Extension of
Time to Appeal April 15, 2026 Orders, to Vacate Orders as Void, or Alternatively for Indicative
Ruling Under Rule 8008 (the "Motion"), and states as follows:

**I. INTRODUCTION**

1. On April 15, 2026, this Court entered six orders in the captioned adversary proceeding (the
"Adversary Proceeding") at Docket Nos. 116, 117, 118, 119, 120, and 121 (collectively, the
"Orders").

2. Those Orders are:

    a. **Docket No. 116** — Order Denying Motion to Intervene in Adversary Proceeding;

1



b. **Docket No. 117** — Order Denying Motion to Dismiss for Failure to Join Indispensable Party;

c. **Docket No. 118** — Order Denying Motion to Disqualify Judge;

d. **Docket No. 119** — Order Denying Debtor's Motion to Disqualify Counsel;

e. **Docket No. 120** — Order Denying Second Motion to Disqualify Judge; and

f. **Docket No. 121** — Order Denying Motion for Summary Judgment.

3. As set forth in the Declaration of Gregory B. Myers filed herewith, Debtor first discovered the April 15, 2026 Orders on or about May 13, 2026.

4. Debtor's position is that the April 15, 2026 Orders are void because, when they were entered, this Adversary Proceeding and the relevant aspects of the case were already pending on appeal before the United States District Court for the District of Maryland in Case Nos. 25-02103-TDC, 25-02337-TDC, 25-02635-TDC, 25-02042-TDC, and/or 25-02338-TDC, all of which are assigned to District Judge Theodore D. Chuang.

5. Under *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), the filing of a notice of appeal is an event of jurisdictional significance. It confers jurisdiction on the appellate court and divests the lower court of control over those aspects of the case involved in the appeal.

6. The April 15, 2026 Orders were not collateral administrative or ministerial orders. The Orders addressed Debtor's right to participate in this Adversary Proceeding, indispensable-party defects, disqualification of the presiding judge, disqualification of counsel, and dispositive relief.

7. Each of the Orders directly relates to the structure, jurisdiction, adjudicative authority, parties, and merits posture of this Adversary Proceeding — the same Adversary Proceeding whose orders and related jurisdictional issues were already pending in the District Court before

2

District Judge Theodore D. Chuang.

8. Accordingly, Debtor does not concede that the April 15, 2026 Orders are valid, final, appealable, effective, or capable of becoming final through failure to appeal.

9. This Motion is filed protectively and without waiver of Debtor's position that the April 15, 2026 Orders are void ab initio.

10. To avoid any contention that Debtor was required to file a separate appeal from orders Debtor contends are void, Debtor requests, in the alternative and without waiver, an extension of time to appeal the April 15, 2026 Orders under Federal Rule of Bankruptcy Procedure 8002(d).

11. Debtor further requests that the Court vacate the April 15, 2026 Orders as void under Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b)(4).

12. Alternatively, if this Court concludes that the pending District Court appeals deprive it of authority to grant vacatur, Debtor requests an indicative ruling under Federal Rule of Bankruptcy Procedure 8008 that this Motion raises a substantial issue and/or that the Court would grant relief if the District Court remands for that purpose.

## II. RELEVANT PROCEDURAL BACKGROUND

13. The Adversary Proceeding, Adv. Proc. No. 24-00007-MCR, was filed by Brian King, Cristina King, and the Cristina and Brian King Children's Trust against Roger Schlossberg, Chapter 7 Trustee.

14. The Adversary Proceeding concerns, among other things, alleged rights and interests relating to 6789 Goldsboro LLC ("Goldsboro"), Serv Trust, and/or property that Debtor contends is not property of Debtor's bankruptcy estate in Case No. 15-26033.

15. On or about December 11, 2023, this Court entered orders including, without limitation,

3

the *Order Granting Motion for Approval of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* (Doc. 1029) (the **"Settlement Procedures Order"**) and related orders in Case No. 15-26033 (the main bankruptcy case) and/or the Adversary Proceeding.

16. On or about July 3, 2025, this Court entered an *Order Approving Trustee's Compromise and Settlement with King Parties* (Case 24-00007; Doc 61) (the **"Settlement Order"**).

17. Debtor appealed, or otherwise sought District Court review of, orders arising from or relating to the Adversary Proceeding and the settlement/adjudicatory structure. Those appeals are pending before Judge Theodore D. Chuang in the United States District Court for the District of Maryland.

18. The pending appeals before the United States District Court for the District of Maryland include, without limitation: Case Nos. 25-02103-TDC, 25-02337-TDC, 25-02635-TDC, 25-02042-TDC, 25-02338-TDC, and such other related appeals as may be consolidated with or related to the foregoing.

19. The issues pending before the District Court include, among other things, whether the bankruptcy court had jurisdiction and authority to approve, effectuate, or structure relief in the main case and the subject Adversary Proceeding affecting alleged non-estate property and/or the rights of non-debtor parties.

20. While those appellate proceedings were pending, this Court entered the April 15, 2026 Orders at Docket Nos. 116 through 121 in this Adversary Proceeding.

21. The April 15, 2026 Orders were entered after this Court signed them on April 14, 2026.

22. Debtor did not receive or did not become aware of the April 15, 2026 Orders until on or about May 13, 2026.

4

23. Debtor promptly files this Motion after discovering the April 15, 2026 Orders.

## III. THE APRIL 15, 2026 ORDERS AT ISSUE

### A. Docket No. 116 — Order Denying Motion to Intervene

24. At Docket No. 116, this Court denied Debtor's Motion to Intervene in this Adversary Proceeding.

25. The order states that the motion was denied "for the reasons stated in the Trustee's opposition at Dkt. No. 68."

26. Debtor's right to intervene in the Adversary Proceeding is directly tied to the issues pending on appeal because Debtor contends the Adversary Proceeding was used to affect, settle, transfer, compromise, or adjudicate rights involving Goldsboro, Serv Trust, and/or property that Debtor contends is not property of Debtor's bankruptcy estate in Case No. 15-26033

27. The question whether Debtor could intervene in the Adversary Proceeding was not collateral to the pending appeals. It went directly to who may be heard in the Adversary Proceeding and whether the Adversary Proceeding could proceed in the absence of the affected parties.

28. A copy of Docket No. 116 — Order Denying Motion to Intervene is attached hereto as **Exhibit A.**

### B. Docket No. 117 — Order Denying Motion to Dismiss for Failure to Join Indispensable Party

29. At Docket No. 117, this Court denied Debtor's Motion to Dismiss for Failure to Join Indispensable Party.

30. The order states that the motion was denied "for the reasons stated in the Trustee's opposition at Dkt. No. 69."

31. The indispensable-party issue is directly tied to the pending appeals because Debtor

5

Appx. 0037

contends the adversary proceeding and settlement structure improperly affected rights of Serv Trust, 6789 Goldsboro LLC, and/or other non-debtor parties without their presence.

32. Whether indispensable parties were absent goes to the structural validity of the adversary proceeding and the bankruptcy court's authority to enter or approve relief affecting alleged non-estate property.

33. A copy of Docket No. 117 — Order Denying Motion to Dismiss for Failure to Join Indispensable Party is attached hereto as **Exhibit B**.

**C. Docket No. 118 — Order Denying Motion to Disqualify Judge**

34. At Docket No. 118, this Court denied Debtor's Motion to Disqualify Judge Maria Ellena Chavez-Ruark.

35. The order states that the motion was denied "for the reasons stated in the Trustee's opposition at Dkt. No. 72."

36. The disqualification motion was not a free-standing collateral matter unrelated to the pending appeals.

37. It concerned the bankruptcy judge's continued authority to preside over the same adversary proceeding whose orders, structure, jurisdictional predicates, and settlement-related rulings were already pending before the District Court.

38. Because disqualification goes to the judge's authority to preside, the Court could not proceed to hear and determine substantive adversary matters without first addressing it.

39. But the necessity of resolving disqualification did not restore jurisdiction over matters divested by the pending appeals.

40. A copy of Docket No. 118 — Order Denying Motion to Disqualify Judge is attached hereto as **Exhibit C**.

6

Appx. 0038

**D. Docket No. 119 — Order Denying Debtor's Motion to Disqualify Counsel**

41. At Docket No. 119, this Court denied Debtor's Motion to Disqualify Counsel.

42. The order states that the motion was denied "for the reasons stated in the King Parties' opposition at Dkt. No. 67."

43. The counsel-disqualification issue was likewise tied to the Adversary Proceeding, the settlement structure, the role of the King Parties, and counsel's continued participation in proceedings affecting matters already before the District Court.

44. To the extent the Court treated Docket No. 119 as clearing the way for continued adjudication of appealed adversary issues, the order exceeded the Court's residual jurisdiction.

45. A copy of Docket No. 119 — Order Denying Debtor's Motion to Disqualify Counsel is attached hereto as **Exhibit D**.

**E. Docket No. 120 — Order Denying Second Motion to Disqualify Judge**

46. At Docket No. 120, this Court denied Debtor's Second Motion to Disqualify Judge Maria Ellena Chavez-Ruark.

47. The order states that the motion was denied "for the reasons stated in the Trustee's opposition at Dkt. No. 74."

48. For the same reasons set forth above as to Docket No. 118, Docket No. 120 concerned the bankruptcy judge's continued authority to preside over the same adversary proceeding whose operative issues were already before the District Court.

49. A copy of Docket No. 120 — Order Denying Second Motion to Disqualify Judge is attached hereto as **Exhibit E**.

**F. Docket No. 121 — Order Denying Motion for Summary Judgment**

50. At Docket No. 121, this Court denied Debtor's "Motion for Final Summary Judgment as

7

to Count I of Third Party Complaint and Demand for Jury Trial."

51. The order states: "The Court denied the Debtor's motion to intervene. Therefore, the Debtor's motion for summary judgment is denied."

52. Docket No. 121 issues are not collateral, ministerial, or administrative.

53. It is a merits-related order denying dispositive relief.

54. It is also derivative of Docket No. 116 because the Court denied summary judgment solely because it had denied intervention.

55. If Docket No. 116 was entered without jurisdiction, then Docket No. 121 necessarily falls with it.

56. A copy of Docket No. 121 — Order Denying Motion for Summary Judgment is attached hereto as **Exhibit F**.

## IV. THE APRIL 15, 2026 ORDERS WERE ENTERED WITHOUT JURISDICTION UNDER GRIGGS

57. In *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), the Supreme Court held that a notice of appeal is an event of jurisdictional significance.

58. Upon filing of a notice of appeal, jurisdiction over the matters involved in the appeal transfers to the appellate court, and the lower court is divested of control over those aspects of the case involved in the appeal.

59. The purpose of the *Griggs* rule is to prevent two courts from exercising simultaneous control over the same case or same issues.

60. The *Griggs* divestiture rule applies in bankruptcy appeals.

61. A bankruptcy court may retain jurisdiction over matters that are collateral, administrative, ministerial, or unrelated to the appealed issues.

62. But the bankruptcy court may not enter orders that alter, modify, supplement, adjudicate,

8

Appx. 0040

or interfere with matters involved in the appeal.

63. Here, the April 15, 2026 orders were entered in the same adversary proceeding already involved in the pending District Court appeals.

64. They did not merely preserve the status quo.

65. They did not merely perform administrative docket management.

66. They decided who could participate in the Adversary Proceeding.

67. They decided whether the Adversary Proceeding could proceed despite alleged failure to join indispensable parties.

68. They decided whether the presiding judge and counsel could continue in the Adversary Proceeding.

69. They denied dispositive relief.

70. They directly affected the structure, jurisdictional integrity, party status, and merits posture of the Adversary Proceeding.

71. These are precisely the types of issues that the bankruptcy court lacked jurisdiction to decide once the relevant aspects of the Adversary Proceeding were before the District Court.

72. Because the April 15, 2026 Orders were entered without jurisdiction, they are void, ineffective, and not entitled to preclusive, law-of-the-case, finality, or waiver effect.

## V. THE DISQUALIFICATION ORDERS DO NOT CURE THE JURISDICTIONAL DEFECT

73. Debtor recognizes that a judge ordinarily must address a motion seeking her disqualification before presiding over further substantive proceedings.

74. That principle does not cure the jurisdictional problem here.

75. The disqualification motions were tied to the same adversary proceeding and same adjudicatory structure already before the District Court.

9

Appx. 0041

76. If this Court concluded that disqualification had to be addressed before further proceedings, the proper course was to refrain from conducting further proceedings affecting appealed matters unless and until jurisdiction was restored or clarified.

77. The Court could not use its own denial of disqualification as a jurisdictional bridge to proceed to adjudicate intervention, indispensable-party objections, counsel disqualification, and summary judgment in the appealed adversary proceeding.

78. The necessity of addressing disqualification before further proceedings therefore confirms rather than defeats Debtor's position.

79. It demonstrates that the April 15, 2026 hearing and Orders were not collateral housekeeping matters.

80. They were part of the same adversary proceeding and same appealed controversy.

## VI. THE ORDERS SHOULD BE VACATED AS VOID UNDER RULE 9024 AND RULE 60(b)(4)

81. Federal Rule of Bankruptcy Procedure 9024 incorporates Federal Rule of Civil Procedure 60 in bankruptcy cases, subject to limitations not applicable here.

82. Federal Rule of Civil Procedure 60(b)(4) authorizes relief from a judgment or order that is void.

83. An order entered by a court lacking jurisdiction is void.

84. Because this Court lacked jurisdiction to enter the Orders at Docket Nos. 116 through 121 while the relevant aspects of this Adversary Proceeding were pending before the District Court, those Orders should be vacated as void.

85. Debtor therefore requests that the Court vacate the Orders at Docket Nos. 116, 117, 118, 119, 120, and 121.

## VII. ALTERNATIVELY, THE COURT SHOULD ISSUE AN INDICATIVE RULING UNDER RULE 8008

10

Appx. 0042

86. Federal Rule of Bankruptcy Procedure 8008 applies when a party files a motion in the bankruptcy court for relief that the bankruptcy court lacks authority to grant because an appeal is pending.

87. Under Rule 8008, the bankruptcy court may:

   a. defer considering the motion;

   b. deny the motion;

   c. state that it would grant the motion if the court where the appeal is pending remands for that purpose; or

   d. state that the motion raises a substantial issue.

88. If this Court concludes that the pending District Court appeals deprive it of authority to vacate the April 15, 2026 Orders outright, Debtor requests an indicative ruling under Rule 8008.

89. Specifically, Debtor requests that the Court state that this Motion raises a substantial issue and/or that the Court would grant the Motion and vacate the Orders at Docket Nos. 116 through 121 if the District Court remands for that purpose.

90. Such an indicative ruling would permit Debtor to seek appropriate relief from the District Court without waiver of Debtor's position that the April 15, 2026 Orders are void.

## VIII. PROTECTIVE REQUEST FOR EXTENSION OF TIME TO APPEAL UNDER RULE 8002(d)

91. Debtor does not concede that a separate appeal was required from the April 15, 2026 Orders.

92. Debtor's position is that those orders are void and incapable of becoming valid merely because no separate notice of appeal was filed within 14 days.

93. Nevertheless, to avoid any contention that Debtor forfeited appellate review if a reviewing court later determines that a separate appeal was required, Debtor requests a protective

11

Appx. 0043

extension of time under Federal Rule of Bankruptcy Procedure 8002(d).

94. The April 15, 2026 orders were entered on April 15, 2026.

95. The ordinary 14-day deadline under Rule 8002(a) expired on April 29, 2026.

96. Under Rule 8002(d), this Court may extend the time to appeal upon a motion filed within 21 days after expiration of the original appeal deadline, upon a showing of excusable neglect.

97. Twenty-one days after April 29, 2026 is May 20, 2026.

98. This Motion is therefore timely under Rule 8002(d), provided it is filed on or before May 20, 2026.

99. Excusable neglect exists.

100. First, Debtor did not discover the April 15, 2026 Orders until on or about May 13, 2026.

101. Second, the April 15, 2026 Orders were entered while the relevant aspects of this Adversary Proceeding were already pending before the District Court.

102. Third, Debtor reasonably believed, and continues to believe, that this Court lacked jurisdiction to enter substantive orders affecting the appealed adversary proceeding.

103. Fourth, Debtor acted promptly upon discovering the April 15, 2026 Orders.

104. Fifth, no party can claim unfair prejudice from a protective extension of time where the April 15, 2026 Orders were entered in the same adversary proceeding already involved in pending appellate proceedings.

105. Sixth, the question whether the bankruptcy court had jurisdiction to enter the April 15, 2026 Orders is a substantial jurisdictional issue, not a tactical delay.

106. Accordingly, if any separate appeal was required, Debtor respectfully requests an extension of time to file a notice of appeal from the Orders at Docket Nos. 116, 117, 118, 119, 120, and 121.

Appx. 0044

107. This request is made protectively and without waiver of Debtor's position that the April 15, 2026 Orders are void.

## IX. NO WAIVER

108. Nothing in this Motion shall be construed as a concession that:

    a. the April 15, 2026 Orders are valid;

    b. the April 15, 2026 Orders are final;

    c. the April 15, 2026 Orders are appealable;

    d. a separate appeal was required;

    e. this Court had jurisdiction to enter the April 15, 2026 Orders;

    f. Debtor was required to seek relief in this Court rather than in the District Court;

    g. Debtor waived any issue pending before the District Court; or

    h. Debtor waived any argument that the April 15, 2026 Orders are void, ineffective, or without preclusive effect.

109. This Motion is filed solely to preserve Debtor's rights and to prevent the Trustee, the King Parties, or any other party from later arguing that Debtor acquiesced in orders entered without jurisdiction.

## X. REQUEST FOR RELIEF

**WHEREFORE**, Debtor Gregory B. Myers respectfully requests that this Court enter an order:

    (i) Granting Debtor a protective extension of time under Federal Rule of Bankruptcy Procedure 8002(d) to appeal the April 15, 2026 Orders entered at Docket Nos. 116, 117, 118, 119, 120, and 121;

    (ii) Vacating the Orders at Docket Nos. 116, 117, 118, 119, 120, and 121 as void under

Appx. 0045

Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b)(4);

(iii) Alternatively, if the Court concludes it lacks authority to vacate the April 15, 2026 Orders because of the pending District Court appeals, issuing an indicative ruling under Federal Rule of Bankruptcy Procedure 8008 stating that this Motion raises a substantial issue and/or that the Court would grant the Motion upon remand from the District Court;

(iv) Confirming that Debtor's filing of this protective Motion does not waive Debtor's position that the April 15, 2026 Orders are void ab initio and that no separate appeal was required; and

(v) Granting such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED on May 20, 2026.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
*gregbmyers@verizon.net*

14

Appx. 0046

## DECLARATION OF GREGORY B. MYERS IN SUPPORT OF DEBTOR'S OMNIBUS PROTECTIVE MOTION

I, Gregory B. Myers, declare under penalty of perjury as follows:

1. I am the Debtor in Bankruptcy Case No. 15-26033-MCR and a party-in-interest in matters relating to Adv. Proc. No. 24-00007-MCR.

2. I submit this declaration in support of Debtor's Omnibus Protective Motion for Extension of Time to Appeal April 15, 2026 Orders, to Vacate Orders as Void, or Alternatively for Indicative Ruling Under Rule 8008.

3. On or about May 13, 2026, I discovered that the Bankruptcy Court had entered six orders on April 15, 2026 in Adv. Proc. No. 24-00007-MCR at Docket Nos. 116, 117, 118, 119, 120, and 121 (collectively, the "Orders").

4. Before discovering those Orders, I was unaware that the Bankruptcy Court had entered them.

5. At the time the April 15, 2026 Orders were entered, the relevant aspects of Adv. Proc. No. 24-00007-MCR and related bankruptcy orders were already pending on appeal before the United States District Court for the District of Maryland.

6. I believed, and continue to believe, that the Bankruptcy Court (Ruark, J) lacked jurisdiction to enter substantive orders affecting the appealed adversary proceeding while those appeals were pending.

7. Upon discovering the April 15, 2026 orders, I acted promptly to prepare and file the accompanying protective motion.

8. This declaration is made based on my personal knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 20, 2026.


_____
Gregory B. Myers

15

Appx. 0047

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2026, the foregoing Motion, together with all

exhibits, was filed with the Clerk of the Bankruptcy Court and a true and correct copy of same

was served upon all parties registered to receive service by CM/ECF, including the following:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012


_____
Gregory B. Myers, *pro se*

16

# Exhibit A

Appx. 0049

Entered: April 15th, 2026
Signed: April 14th, 2026

## SO ORDERED

For the reasons stated in the Trustee's opposition at Dkt. No. 68, the motion is denied.



*Maria Ellena Chavez-Ruark*

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### (Greenbelt Division)

| | |
|---|---|
| In re: | ) |
| GREGORY B. MYERS, | ) Case No. 15-26033-MCR |
| | ) |
| Debtor. | ) (Chapter 7) |
| | ) |
| | ) |
| BRIAN KING, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adv. No.: 24-00007 |
| | ) |
| ROGER SCHLOSSBERG, TRUSTEE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### ORDER DENYING MOTION TO INTERVENE IN ADVERSARY PROCEEDING

Upon consideration of the *Motion to Intervene in Adversary Proceeding* (the "*Motion*"), [Dkt. #43], filed by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in connection with the *Motion*, and this Court being fully advised, it is hereby

**ORDERED**, that the *Motion* be, and the same hereby is, **DENIED**.

### END OF ORDER

cc:    Roger Schlossberg, Esq.
        Frank J. Mastro, Esq.
        Maurice B. Verstandig, Esq.
        Gregory B. Myers, Debtor
        All persons requesting notice

2

Appx. 0051

# Exhibit B

Appx. 0052

Entered: April 15th, 2026
Signed: April 14th, 2026

## SO ORDERED

For the reasons stated in the Trustee's opposition at Dkt. No. 69, the motion is denied.



**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re:<br>GREGORY B. MYERS,<br><br>    Debtor. | ) Case No. 15-26033-MCR<br>)<br>) (Chapter 7)<br>) |
| BRIAN KING, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>ROGER SCHLOSSBERG, TRUSTEE,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Adv. No.: 24-00007<br>)<br>)<br>)<br>)<br>) |

### ORDER DENYING MOTION TO DISMISS
### FOR FAILURE TO JOIN INDISPENSABLE PARTY

Upon consideration of the *Motion to Dismiss for Failure to Join Indispensable Party* (the "*Motion*"), [Dkt. #45], filed by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in connection with the *Motion*, and this Court being fully advised, it is hereby

ORDERED, that the *Motion* be, and the same hereby is, **DENIED**.

## END OF ORDER

cc:    Roger Schlossberg, Esq.
       Frank J. Mastro, Esq.
       Maurice B. Verstandig, Esq.
       Gregory B. Myers, Debtor
       All persons requesting notice

2

Appx. 0054

# Exhibit C

Entered: April 15th, 2026
Signed: April 14th, 2026

## SO ORDERED

For the reasons stated in the Trustee's opposition at Dkt. No. 72, the motion is denied.



*Maria Ellena Chavez-Ruark*

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### (Greenbelt Division)

| | |
|---|---|
| In re:<br>GREGORY B. MYERS,<br><br>Debtor. | )<br>) Case No. 15-26033-MCR<br>)<br>) (Chapter 7)<br>) |
| BRIAN KING, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROGER SCHLOSSBERG, TRUSTEE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Adv. No.: 24-00007<br>)<br>)<br>)<br>)<br>) |

### ORDER DENYING MOTION TO DISQUALIFY JUDGE

Upon consideration of the *Motion to Disqualify Judge Maria Ellena Chavez-Ruark* (the "*Motion*"), [Dkt. #47], filed herein by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in connection with the *Motion*, and this Court being fully advised, it is hereby

**ORDERED**, that the *Motion* be, and the same hereby is, **DENIED**.

#### END OF ORDER

cc:    Roger Schlossberg, Esq.
Frank J. Mastro, Esq.
Maurice B. Verstandig, Esq.
Gregory B. Myers, Debtor
All persons requesting notice

2

# Exhibit D

Appx. 0058

Entered: April 15th, 2026
Signed: April 14th, 2026

## SO ORDERED

For the reasons stated in the King Parties' opposition at Dkt. No. 67, the motion is denied.



*Maria Elena Chavez-Ruark*

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| In re: | ) |
| | ) |
| GREGORY B. MYERS, | )      Case No. 15-26033-MCR |
| | ) |
| Debtor, | ) |
| ———————————————— | ) |
| | ) |
| BRIAN KING, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | )      Adversary Case No. 24-00007-MCR |
| v. | ) |
| | ) |
| ROGER SCHLOSSBERG, in His Official | ) |
| Capacity as Chapter 7 Trustee of the | ) |
| Bankruptcy Estate of Gregory B. Myers, | ) |
| | ) |
| Defendant. | ) |
| ———————————————— | ) |

## ORDER DENYING DEBTOR'S MOTION TO DISQUALIFY COUNSEL

Upon consideration of the Debtor's Motion to Disqualify Counsel (the "Motion," as found at DE #49); the opposition of Brian King, Cristina King and the Cristina and Brian King Children's Trust thereto, the arguments set forth in the aforesaid opposition, the record herein, and applicable law, it is, by the United States Bankruptcy Court for the District of Maryland, hereby:

1

Appx. 0059

ORDERED, that the Motion be, and hereby is, DENIED

Copies:

Frank J. Mastro, Esq.
Schlossberg Mastro
P.O. Box 2067
Hagerstown, Maryland 21742
Email: fmastro@schlosslaw.com

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., #665
Henderson, Nevada 89012
Email: mac@mbvesq.com

Gregory Myers
700 Gulf Shore Blvd. N
Naples, Florida 34102

Appx. 0060

# Exhibit E

Appx. 0061

Entered: April 15th, 2026
Signed: April 14th, 2026

## SO ORDERED

For the reasons stated in the Trustee's opposition at Dkt. No. 74, the motion is denied.



*Maria Ellena Chavez-Ruark*

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| In re:<br>GREGORY B. MYERS,<br><br>Debtor. | ) Case No. 15-26033-MCR<br>)<br>) (Chapter 7)<br>) |
| BRIAN KING, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROGER SCHLOSSBERG, TRUSTEE,<br><br>Defendant. | )<br>)<br>)<br>) Adv. No.: 24-00007<br>) |

## ORDER DENYING SECOND MOTION TO DISQUALIFY JUDGE

Upon consideration of the *Second Motion to Disqualify Judge Maria Ellena Chavez-Ruark* (the "*Second Motion*"), [Dkt. #57], filed herein by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in connection with the *Second Motion*, and this Court being fully advised, it is hereby

**ORDERED**, that the *Second Motion* be, and the same hereby is, **DENIED.**

Appx. 0062

**END OF ORDER**

cc:    Roger Schlossberg, Esq.
       Frank J. Mastro, Esq.
       Maurice B. Verstandig, Esq.
       Gregory B. Myers, Debtor
       All persons requesting notice

Appx. 0063

# Exhibit F

Appx. 0064

Entered: April 15th, 2026
Signed: April 14th, 2026

## SO ORDERED

The Court denied the Debtor's motion to intervene. Therefore, the Debtor's motion for summary judgment is denied.



*Maria Ellena Chavez-Ruark*

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

|  |  |
|---|---|
| In re: <br> GREGORY B. MYERS, <br><br>     Debtor. | ) <br> )    Case No. 15-26033-MCR <br> ) <br> )    (Chapter 7) <br> ) |
| BRIAN KING, *et al.*, <br><br>     Plaintiffs, <br><br> v. <br><br> ROGER SCHLOSSBERG, TRUSTEE, <br><br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> )    Adv. No.: 24-00007 <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Upon consideration of the "*Motion for Final Summary Judgment as to Count I of Third Party Complaint and Demand for Jury Trial*" (the "*Motion*"), [Dkt. #78], filed by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in connection with the *Motion*, and this Court being fully advised, it is hereby

**ORDERED**, that the *Motion* be, and the same hereby is, **DENIED**.

Appx. 0065

## END OF ORDER

cc:    Roger Schlossberg, Esq.
       Frank J. Mastro, Esq.
       Maurice B. VerStandig, Esq.
       Gregory B. Myers, Debtor
       All persons requesting notice

Appx. 0066

United States Bankruptcy Court

District of Maryland

King,

    Plaintiff

Adv. Proc. No. 24-00007-MCR

Schlossberg,

    Defendant

# CERTIFICATE OF NOTICE

| District/off: 0416-0 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Apr 15, 2026 | Form ID: pdfparty | Total Noticed: 5 |

The following symbols are used throughout this certificate:

**Symbol**      **Definition**

\+      Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Apr 17, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Gregory B. Myers, 700 Gulf Shore Blvd N., Naples, FL 34102-5325 |
| pla | + | Brian King, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976 |
| pla | + | Cristina King, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976 |
| pla | + | Cristina and Brian King Children's Trust, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976 |

TOTAL: 4

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| dft | + Email/Text: trustee@schlosslaw.com | Apr 15 2026 19:39:00 | Roger Schlossberg, Law firm of Schlossberg Mastro & Scanlan, 18421 Henson Boulevard, Suite 201, PO Box 2067, Hagerstown, MD 21742-2067 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 17, 2026          Signature:        /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 15, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Frank J. Mastro | fmastro@schlosslaw.com |
| Maurice Belmont VerStandig | |

Appx. 0067

District/off: 0416-0                     User: admin                              Page 2 of 2

Date Rcvd: Apr 15, 2026                  Form ID: pdfparty                        Total Noticed: 5

mac@mbvesq.com
lisa@mbvesq.com,mahlon@dcbankruptcy.com,mac@dcbankruptcy.com,verstandig.mauricer104982@notify.bestcase.com,verstandiglaw@recap.email

TOTAL: 2

Entered: April 15th, 2026
Signed: April 14th, 2026

**SO ORDERED**

For the reasons stated in the Trustee's opposition at Dkt. No. 68, the motion is denied.

Maria Ellena Chavez-Ruark
_____
**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor. | ) | (Chapter 7) |
| | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.: 24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER DENYING MOTION TO INTERVENE IN ADVERSARY PROCEEDING**

Upon consideration of the *Motion to Intervene in Adversary Proceeding* (the "*Motion*"), [Dkt. #43], filed by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in connection with the *Motion*, and this Court being fully advised, it is hereby

**ORDERED**, that the *Motion* be, and the same hereby is, **DENIED**.

**END OF ORDER**

Appx. 0069

cc:    Roger Schlossberg, Esq.
       Frank J. Mastro, Esq.
       Maurice B. Verstandig, Esq.
       Gregory B. Myers, Debtor
       All persons requesting notice

Appx. 0070

United States Bankruptcy Court

District of Maryland

King,

    Plaintiff

Schlossberg,

    Defendant

Adv. Proc. No. 24-00007-MCR

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0416-0 | User: admin | Page 1 of 2 |
| Date Rcvd: Apr 15, 2026 | Form ID: pdfparty | Total Noticed: 5 |

The following symbols are used throughout this certificate:

**Symbol**  **Definition**

+  Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Apr 17, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Gregory B. Myers, 700 Gulf Shore Blvd N., Naples, FL 34102-5325 |
| pla | + | Brian King, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976 |
| pla | + | Cristina King, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976 |
| pla | + | Cristina and Brian King Children's Trust, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976 |

TOTAL: 4

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| dft | + Email/Text: trustee@schlosslaw.com | Apr 15 2026 19:39:00 | Roger Schlossberg, Law firm of Schlossberg Mastro & Scanlan, 18421 Henson Boulevard, Suite 201, PO Box 2067, Hagerstown, MD 21742-2067 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 17, 2026  Signature:     /s/Gustava Winters

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 15, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Frank J. Mastro | fmastro@schlosslaw.com |
| Maurice Belmont VerStandig | |

Appx. 0071

District/off: 0416-0                              User: admin                                    Page 2 of 2

Date Rcvd: Apr 15, 2026                          Form ID: pdfparty                              Total Noticed: 5

mac@mbvesq.com
lisa@mbvesq.com,mahlon@dcbankruptcy.com,mac@dcbankruptcy.com,verstandig.mauricer104982@notify.bestcase.com,verstandiglaw@recap.email

TOTAL: 2

Entered: April 15th, 2026
Signed: April 14th, 2026

**SO ORDERED**

For the reasons stated in the Trustee's opposition at Dkt. No. 69,
the motion is denied.

_Maria Ellena Chavez-Ruark_
_____
**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re: ) | |
| GREGORY B. MYERS, ) | Case No. 15-26033-MCR |
| ) | |
| Debtor. ) | (Chapter 7) |
| ) | |
| ) | |
| BRIAN KING, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adv. No.:  24-00007 |
| ) | |
| ROGER SCHLOSSBERG, TRUSTEE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER DENYING MOTION TO DISMISS**
**FOR FAILURE TO JOIN INDISPENSABLE PARTY**

Upon consideration of the *Motion to Dismiss for Failure to Join Indispensable Party* (the

"*Motion*"), [Dkt. #45], filed by the Debtor, Gregory B. Myers, the opposition thereto filed by

Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed

in connection with the *Motion*, and this Court being fully advised, it is hereby

ORDERED, that the *Motion* be, and the same hereby is, **DENIED**.

Appx. 0073

**END OF ORDER**

cc:    Roger Schlossberg, Esq.
        Frank J. Mastro, Esq.
        Maurice B. Verstandig, Esq.
        Gregory B. Myers, Debtor
        All persons requesting notice

Appx. 0074

United States Bankruptcy Court

District of Maryland

King,

    Plaintiff

Schlossberg,

    Defendant

Adv. Proc. No. 24-00007-MCR

# CERTIFICATE OF NOTICE

| District/off: 0416-0 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Apr 15, 2026 | Form ID: pdfparty | Total Noticed: 5 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Apr 17, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Gregory B. Myers, 700 Gulf Shore Blvd N., Naples, FL 34102-5325 |
| pla | + | Brian King, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976 |
| pla | + | Cristina King, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976 |
| pla | + | Cristina and Brian King Children's Trust, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976 |

TOTAL: 4

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| dft | + Email/Text: trustee@schlosslaw.com | Apr 15 2026 19:39:00 | Roger Schlossberg, Law firm of Schlossberg Mastro & Scanlan, 18421 Henson Boulevard, Suite 201, PO Box 2067, Hagerstown, MD 21742-2067 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 17, 2026        Signature:      /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 15, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Frank J. Mastro | fmastro@schlosslaw.com |
| Maurice Belmont VerStandig | |

Appx. 0075

District/off: 0416-0                    User: admin                                    Page 2 of 2

Date Rcvd: Apr 15, 2026                 Form ID: pdfparty                               Total Noticed: 5

mac@mbvesq.com
lisa@mbvesq.com,mahlon@dcbankruptcy.com,mac@dcbankruptcy.com,verstandig.mauricer104982@notify.bestcase.com,verstandiglaw@recap.email

TOTAL: 2

Appx. 0076

Entered: April 15th, 2026
Signed: April 14th, 2026

**SO ORDERED**

For the reasons stated in the Trustee's opposition at Dkt. No. 72,
the motion is denied.

Maria Ellena Chavez-Ruark
_____
MARIA ELLENA CHAVEZ-RUARK
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re: | ) |
| GREGORY B. MYERS, | ) Case No. 15-26033-MCR |
| | ) |
| Debtor. | ) (Chapter 7) |
| | ) |
| | ) |
| BRIAN KING, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adv. No.: 24-00007 |
| | ) |
| ROGER SCHLOSSBERG, TRUSTEE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER DENYING MOTION TO DISQUALIFY JUDGE**

Upon consideration of the *Motion to Disqualify Judge Maria Ellena Chavez-Ruark* (the "*Motion*"), [Dkt. #47], filed herein by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in connection with the *Motion*, and this Court being fully advised, it is hereby

**ORDERED**, that the *Motion* be, and the same hereby is, **DENIED**.

**END OF ORDER**

Appx. 0077

cc:    Roger Schlossberg, Esq.
        Frank J. Mastro, Esq.
        Maurice B. Verstandig, Esq.
        Gregory B. Myers, Debtor
        All persons requesting notice

Appx. 0078

United States Bankruptcy Court

District of Maryland

King,

    Plaintiff

Schlossberg,

    Defendant

Adv. Proc. No. 24-00007-MCR

# CERTIFICATE OF NOTICE

| District/off: 0416-0 | User: admin | Page 1 of 1 |
|---|---|---|
| Date Rcvd: Apr 15, 2026 | Form ID: pdfparty | Total Noticed: 2 |

The following symbols are used throughout this certificate:

**Symbol    Definition**

+    Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Apr 17, 2026:**

| Recip ID | Recipient Name and Address |
|---|---|
| db | + Gregory B. Myers, 700 Gulf Shore Blvd N., Naples, FL 34102-5325 |
| | + Maurice B. VerStandig, Esq., The VerStandig Law Firm, LLC, 1452 W. Horizon Ridge Pkwy, #665, Henderson, Nevada 89012-4422 |

TOTAL: 2

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 17, 2026        Signature:    /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 15, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Frank J. Mastro | |
| | fmastro@schlosslaw.com |
| Maurice Belmont VerStandig | |
| | mac@mbvesq.com |
| | lisa@mbvesq.com,mahlon@dcbankruptcy.com,mac@dcbankruptcy.com,verstandig.mauricer104982@notify.bestcase.com,verstandiglaw@recap.email |

TOTAL: 2

Appx. 0079

Entered: April 15th, 2026
Signed: April 14th, 2026

**SO ORDERED**

For the reasons stated in the King Parties' opposition at Dkt. No. 67, the motion is denied.

Maria Ellena Chavez-Ruark

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Case No. 24-00007-MCR |
| v. | ) | |
| | ) | |
| ROGER SCHLOSSBERG, in His Official | ) | |
| Capacity as Chapter 7 Trustee of the | ) | |
| Bankruptcy Estate of Gregory B. Myers, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEBTOR'S MOTION TO DISQUALIFY COUNSEL**

Upon consideration of the Debtor's Motion to Disqualify Counsel (the "Motion," as found at DE #49); the opposition of Brian King, Cristina King and the Cristina and Brian King Children's Trust thereto, the arguments set forth in the aforesaid opposition, the record herein, and applicable law, it is, by the United States Bankruptcy Court for the District of Maryland, hereby:

1

Appx. 0080

ORDERED, that the Motion be, and hereby is, DENIED

Copies:

Frank J. Mastro, Esq.
Schlossberg Mastro
P.O. Box 2067
Hagerstown, Maryland 21742
Email: fmastro@schlosslaw.com

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Email: mac@mbvesq.com

Gregory Myers
700 Gulf Shore Blvd. N
Naples, Florida 34102

Appx. 0081

United States Bankruptcy Court

District of Maryland

King,

    Plaintiff

Schlossberg,

    Defendant

Adv. Proc. No. 24-00007-MCR

# CERTIFICATE OF NOTICE

District/off: 0416-0                 User: admin                            Page 1 of 2

Date Rcvd: Apr 15, 2026          Form ID: pdfparty                      Total Noticed: 5

The following symbols are used throughout this certificate:

**Symbol**           **Definition**

+                Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Apr 17, 2026:**

**Recip ID**               **Recipient Name and Address**

db                  +   Gregory B. Myers, 700 Gulf Shore Blvd N., Naples, FL 34102-5325

pla                 +   Brian King, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976

pla                 +   Cristina King, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976

pla                 +   Cristina and Brian King Children's Trust, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976

TOTAL: 4

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**

Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| dft | + Email/Text: trustee@schlosslaw.com | Apr 15 2026 19:39:00 | Roger Schlossberg, Law firm of Schlossberg Mastro & Scanlan, 18421 Henson Boulevard, Suite 201, PO Box 2067, Hagerstown, MD 21742-2067 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 17, 2026                  Signature:        /s/Gustava Winters

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 15, 2026 at the address(es) listed below:**

**Name**               **Email Address**

Frank J. Mastro

            fmastro@schlosslaw.com

Maurice Belmont VerStandig

Appx. 0082

District/off: 0416-0                    User: admin                              Page 2 of 2

Date Rcvd: Apr 15, 2026                 Form ID: pdfparty                        Total Noticed: 5

mac@mbvesq.com
lisa@mbvesq.com,mahlon@dcbankruptcy.com,mac@dcbankruptcy.com,verstandig.mauricer104982@notify.bestcase.com,verstandiglaw@recap.email

TOTAL: 2

Appx. 0083

Entered: April 15th, 2026
Signed: April 14th, 2026

**SO ORDERED**

For the reasons stated in the Trustee's opposition at Dkt. No. 74,
the motion is denied.

*Maria Ellena Chavez-Ruark*

_____

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor. | ) | (Chapter 7) |
| | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.: 24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER DENYING SECOND MOTION TO DISQUALIFY JUDGE**

Upon consideration of the *Second Motion to Disqualify Judge Maria Ellena Chavez-Ruark* (the "*Second Motion*"), [Dkt. #57], filed herein by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in connection with the *Second Motion*, and this Court being fully advised, it is hereby

**ORDERED**, that the *Second Motion* be, and the same hereby is, **DENIED**.

Appx. 0084

**END OF ORDER**

cc:     Roger Schlossberg, Esq.
        Frank J. Mastro, Esq.
        Maurice B. Verstandig, Esq.
        Gregory B. Myers, Debtor
        All persons requesting notice

2

United States Bankruptcy Court

District of Maryland

King,

    Plaintiff

Adv. Proc. No. 24-00007-MCR

Schlossberg,

    Defendant

# CERTIFICATE OF NOTICE

| District/off: 0416-0 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Apr 15, 2026 | Form ID: pdfparty | Total Noticed: 5 |

The following symbols are used throughout this certificate:

**Symbol**      **Definition**

+      Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Apr 17, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Gregory B. Myers, 700 Gulf Shore Blvd N., Naples, FL 34102-5325 |
| pla | + | Brian King, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976 |
| pla | + | Cristina King, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976 |
| pla | + | Cristina and Brian King Children's Trust, c/o The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, MD 20854-3976 |

TOTAL: 4

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| dft | + Email/Text: trustee@schlosslaw.com | Apr 15 2026 19:39:00 | Roger Schlossberg, Law firm of Schlossberg Mastro & Scanlan, 18421 Henson Boulevard, Suite 201, PO Box 2067, Hagerstown, MD 21742-2067 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Apr 17, 2026      Signature:      /s/Gustava Winters

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 15, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Frank J. Mastro | fmastro@schlosslaw.com |
| Maurice Belmont VerStandig | |

Appx. 0086

District/off: 0416-0                     User: admin                                    Page 2 of 2

Date Rcvd: Apr 15, 2026                  Form ID: pdfparty                              Total Noticed: 5

mac@mbvesq.com
lisa@mbvesq.com,mahlon@dcbankruptcy.com,mac@dcbankruptcy.com,verstandig.mauricer104982@notify.bestcase.com,versta
ndiglaw@recap.email

TOTAL: 2

Appx. 0087

Entered: April 15th, 2026
Signed: April 14th, 2026

**SO ORDERED**

The Court denied the Debtor's motion to intervene. Therefore, the Debtor's motion for summary judgment is denied.

Maria Ellena Chavez-Ruark

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor. | ) | (Chapter 7) |
| | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.: 24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Upon consideration of the "*Motion for Final Summary Judgment as to Count I of Third Party Complaint and Demand for Jury Trial*" (the "*Motion*"), [Dkt. #78], filed by the Debtor, Gregory B. Myers, the opposition thereto filed by Roger Schlossberg, the Chapter 7 Trustee herein, any other opposition or reply memoranda filed in connection with the *Motion*, and this Court being fully advised, it is hereby

**ORDERED**, that the *Motion* be, and the same hereby is, **DENIED**.

Appx. 0088

**END OF ORDER**

cc:    Roger Schlossberg, Esq.
       Frank J. Mastro, Esq.
       Maurice B. VerStandig, Esq.
       Gregory B. Myers, Debtor
       All persons requesting notice

2

Entered: May 26th, 2026
Signed: May 24th, 2026

## DENIED

The Debtor filed this motion 35 days after entry of the subject orders, and the BNC Certificates of Mailing confirm that they were served on the Debtor at his address of record. Therefore, the Court finds the motion untimely. Moreover, under the "functional test," the Court had jurisdiction to consider the six motions. See Green v. 1900 Cap. Tr. II by U.S. Bank Tr. Natl Assn, 619 B.R. 121, 134 (D. Md. 2020) (citing Bank of N.Y. Tr. Co. v. Pac. Lumber Co. (In re Scopac), 624 F.3d 274, 280 (5th Cir. 2010)), affd sub. nom. Green v. Shellpoint Mortg. Servicing, 834 F. Appx 18 (4th Cir. 2021).



**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:

GREGORY B. MYERS,

    Debtor.

_____

BRIAN KING, et al.,

    Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

    Defendant.

_____

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

**DEBTOR'S OMNIBUS PROTECTIVE MOTION FOR EXTENSION OF TIME TO APPEAL APRIL 15, 2026 ORDERS, TO VACATE ORDERS AS VOID, OR ALTERNATIVELY FOR INDICATIVE RULING UNDER RULE 8008**

Debtor Gregory B. Myers, pro se, files this Omnibus Protective Motion for Extension of Time to Appeal April 15, 2026 Orders, to Vacate Orders as Void, or Alternatively for Indicative Ruling Under Rule 8008 (the "Motion"), and states as follows:

**I. INTRODUCTION**

1. On April 15, 2026, this Court entered six orders in the captioned adversary proceeding (the "Adversary Proceeding") at Docket Nos. 116, 117, 118, 119, 120, and 121 (collectively, the "Orders").

2. Those Orders are:

    a. **Docket No. 116** — Order Denying Motion to Intervene in Adversary Proceeding;

1

34

Appx. 0090

b. **Docket No. 117** — Order Denying Motion to Dismiss for Failure to Join Indispensable Party;

c. **Docket No. 118** — Order Denying Motion to Disqualify Judge;

d. **Docket No. 119** — Order Denying Debtor's Motion to Disqualify Counsel;

e. **Docket No. 120** — Order Denying Second Motion to Disqualify Judge; and

f. **Docket No. 121** — Order Denying Motion for Summary Judgment.

3. As set forth in the Declaration of Gregory B. Myers filed herewith, Debtor first discovered the April 15, 2026 Orders on or about May 13, 2026.

4. Debtor's position is that the April 15, 2026 Orders are void because, when they were entered, this Adversary Proceeding and the relevant aspects of the case were already pending on appeal before the United States District Court for the District of Maryland in Case Nos. 25-02103-TDC, 25-02337-TDC, 25-02635-TDC, 25-02042-TDC, and/or 25-02338-TDC, all of which are assigned to District Judge Theodore D. Chuang.

5. Under *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), the filing of a notice of appeal is an event of jurisdictional significance. It confers jurisdiction on the appellate court and divests the lower court of control over those aspects of the case involved in the appeal.

6. The April 15, 2026 Orders were not collateral administrative or ministerial orders. The Orders addressed Debtor's right to participate in this Adversary Proceeding, indispensable-party defects, disqualification of the presiding judge, disqualification of counsel, and dispositive relief.

7. Each of the Orders directly relates to the structure, jurisdiction, adjudicative authority, parties, and merits posture of this Adversary Proceeding — the same Adversary Proceeding whose orders and related jurisdictional issues were already pending in the District Court before

2

Appx. 0091

District Judge Theodore D. Chuang.

8. Accordingly, Debtor does not concede that the April 15, 2026 Orders are valid, final, appealable, effective, or capable of becoming final through failure to appeal.

9. This Motion is filed protectively and without waiver of Debtor's position that the April 15, 2026 Orders are void ab initio.

10. To avoid any contention that Debtor was required to file a separate appeal from orders Debtor contends are void, Debtor requests, in the alternative and without waiver, an extension of time to appeal the April 15, 2026 Orders under Federal Rule of Bankruptcy Procedure 8002(d).

11. Debtor further requests that the Court vacate the April 15, 2026 Orders as void under Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b)(4).

12. Alternatively, if this Court concludes that the pending District Court appeals deprive it of authority to grant vacatur, Debtor requests an indicative ruling under Federal Rule of Bankruptcy Procedure 8008 that this Motion raises a substantial issue and/or that the Court would grant relief if the District Court remands for that purpose.

## II. RELEVANT PROCEDURAL BACKGROUND

13. The Adversary Proceeding, Adv. Proc. No. 24-00007-MCR, was filed by Brian King, Cristina King, and the Cristina and Brian King Children's Trust against Roger Schlossberg, Chapter 7 Trustee.

14. The Adversary Proceeding concerns, among other things, alleged rights and interests relating to 6789 Goldsboro LLC ("Goldsboro"), Serv Trust, and/or property that Debtor contends is not property of Debtor's bankruptcy estate in Case No. 15-26033.

15. On or about December 11, 2023, this Court entered orders including, without limitation,

3

the *Order Granting Motion for Approval of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* (Doc. 1029) (the **"Settlement Procedures Order"**) and related orders in Case No. 15-26033 (the main bankruptcy case) and/or the Adversary Proceeding.

16. On or about July 3, 2025, this Court entered an *Order Approving Trustee's Compromise and Settlement with King Parties* (Case 24-00007; Doc 61) (the **"Settlement Order"**).

17. Debtor appealed, or otherwise sought District Court review of, orders arising from or relating to the Adversary Proceeding and the settlement/adjudicatory structure. Those appeals are pending before Judge Theodore D. Chuang in the United States District Court for the District of Maryland.

18. The pending appeals before the United States District Court for the District of Maryland include, without limitation: Case Nos. 25-02103-TDC, 25-02337-TDC, 25-02635-TDC, 25-02042-TDC, 25-02338-TDC, and such other related appeals as may be consolidated with or related to the foregoing.

19. The issues pending before the District Court include, among other things, whether the bankruptcy court had jurisdiction and authority to approve, effectuate, or structure relief in the main case and the subject Adversary Proceeding affecting alleged non-estate property and/or the rights of non-debtor parties.

20. While those appellate proceedings were pending, this Court entered the April 15, 2026 Orders at Docket Nos. 116 through 121 in this Adversary Proceeding.

21. The April 15, 2026 Orders were entered after this Court signed them on April 14, 2026.

22. Debtor did not receive or did not become aware of the April 15, 2026 Orders until on or about May 13, 2026.

4

23. Debtor promptly files this Motion after discovering the April 15, 2026 Orders.

## III. THE APRIL 15, 2026 ORDERS AT ISSUE

### A. Docket No. 116 — Order Denying Motion to Intervene

24. At Docket No. 116, this Court denied Debtor's Motion to Intervene in this Adversary Proceeding.

25. The order states that the motion was denied "for the reasons stated in the Trustee's opposition at Dkt. No. 68."

26. Debtor's right to intervene in the Adversary Proceeding is directly tied to the issues pending on appeal because Debtor contends the Adversary Proceeding was used to affect, settle, transfer, compromise, or adjudicate rights involving Goldsboro, Serv Trust, and/or property that Debtor contends is not property of Debtor's bankruptcy estate in Case No. 15-26033

27. The question whether Debtor could intervene in the Adversary Proceeding was not collateral to the pending appeals. It went directly to who may be heard in the Adversary Proceeding and whether the Adversary Proceeding could proceed in the absence of the affected parties.

28. A copy of Docket No. 116 — Order Denying Motion to Intervene is attached hereto as **Exhibit A.**

### B. Docket No. 117 — Order Denying Motion to Dismiss for Failure to Join Indispensable Party

29. At Docket No. 117, this Court denied Debtor's Motion to Dismiss for Failure to Join Indispensable Party.

30. The order states that the motion was denied "for the reasons stated in the Trustee's opposition at Dkt. No. 69."

31. The indispensable-party issue is directly tied to the pending appeals because Debtor

5

Appx. 0094

contends the adversary proceeding and settlement structure improperly affected rights of Serv Trust, 6789 Goldsboro LLC, and/or other non-debtor parties without their presence.

32. Whether indispensable parties were absent goes to the structural validity of the adversary proceeding and the bankruptcy court's authority to enter or approve relief affecting alleged non-estate property.

33. A copy of Docket No. 117 — Order Denying Motion to Dismiss for Failure to Join Indispensable Party is attached hereto as **Exhibit B**.

**C. Docket No. 118 — Order Denying Motion to Disqualify Judge**

34. At Docket No. 118, this Court denied Debtor's Motion to Disqualify Judge Maria Ellena Chavez-Ruark.

35. The order states that the motion was denied "for the reasons stated in the Trustee's opposition at Dkt. No. 72."

36. The disqualification motion was not a free-standing collateral matter unrelated to the pending appeals.

37. It concerned the bankruptcy judge's continued authority to preside over the same adversary proceeding whose orders, structure, jurisdictional predicates, and settlement-related rulings were already pending before the District Court.

38. Because disqualification goes to the judge's authority to preside, the Court could not proceed to hear and determine substantive adversary matters without first addressing it.

39. But the necessity of resolving disqualification did not restore jurisdiction over matters divested by the pending appeals.

40. A copy of Docket No. 118 — Order Denying Motion to Disqualify Judge is attached hereto as **Exhibit C**.

6

Appx. 0095

**D. Docket No. 119 — Order Denying Debtor's Motion to Disqualify Counsel**

41. At Docket No. 119, this Court denied Debtor's Motion to Disqualify Counsel.

42. The order states that the motion was denied "for the reasons stated in the King Parties' opposition at Dkt. No. 67."

43. The counsel-disqualification issue was likewise tied to the Adversary Proceeding, the settlement structure, the role of the King Parties, and counsel's continued participation in proceedings affecting matters already before the District Court.

44. To the extent the Court treated Docket No. 119 as clearing the way for continued adjudication of appealed adversary issues, the order exceeded the Court's residual jurisdiction.

45. A copy of Docket No. 119 — Order Denying Debtor's Motion to Disqualify Counsel is attached hereto as **Exhibit D**.

**E. Docket No. 120 — Order Denying Second Motion to Disqualify Judge**

46. At Docket No. 120, this Court denied Debtor's Second Motion to Disqualify Judge Maria Ellena Chavez-Ruark.

47. The order states that the motion was denied "for the reasons stated in the Trustee's opposition at Dkt. No. 74."

48. For the same reasons set forth above as to Docket No. 118, Docket No. 120 concerned the bankruptcy judge's continued authority to preside over the same adversary proceeding whose operative issues were already before the District Court.

49. A copy of Docket No. 120 — Order Denying Second Motion to Disqualify Judge is attached hereto as **Exhibit E**.

**F. Docket No. 121 — Order Denying Motion for Summary Judgment**

50. At Docket No. 121, this Court denied Debtor's "Motion for Final Summary Judgment as

7

to Count I of Third Party Complaint and Demand for Jury Trial."

51. The order states: "The Court denied the Debtor's motion to intervene. Therefore, the Debtor's motion for summary judgment is denied."

52. Docket No. 121 issues are not collateral, ministerial, or administrative.

53. It is a merits-related order denying dispositive relief.

54. It is also derivative of Docket No. 116 because the Court denied summary judgment solely because it had denied intervention.

55. If Docket No. 116 was entered without jurisdiction, then Docket No. 121 necessarily falls with it.

56. A copy of Docket No. 121 — Order Denying Motion for Summary Judgment is attached hereto as **Exhibit F**.

## IV. THE APRIL 15, 2026 ORDERS WERE ENTERED WITHOUT JURISDICTION UNDER GRIGGS

57. In *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), the Supreme Court held that a notice of appeal is an event of jurisdictional significance.

58. Upon filing of a notice of appeal, jurisdiction over the matters involved in the appeal transfers to the appellate court, and the lower court is divested of control over those aspects of the case involved in the appeal.

59. The purpose of the *Griggs* rule is to prevent two courts from exercising simultaneous control over the same case or same issues.

60. The *Griggs* divestiture rule applies in bankruptcy appeals.

61. A bankruptcy court may retain jurisdiction over matters that are collateral, administrative, ministerial, or unrelated to the appealed issues.

62. But the bankruptcy court may not enter orders that alter, modify, supplement, adjudicate,

8

or interfere with matters involved in the appeal.

63. Here, the April 15, 2026 orders were entered in the same adversary proceeding already involved in the pending District Court appeals.

64. They did not merely preserve the status quo.

65. They did not merely perform administrative docket management.

66. They decided who could participate in the Adversary Proceeding.

67. They decided whether the Adversary Proceeding could proceed despite alleged failure to join indispensable parties.

68. They decided whether the presiding judge and counsel could continue in the Adversary Proceeding.

69. They denied dispositive relief.

70. They directly affected the structure, jurisdictional integrity, party status, and merits posture of the Adversary Proceeding.

71. These are precisely the types of issues that the bankruptcy court lacked jurisdiction to decide once the relevant aspects of the Adversary Proceeding were before the District Court.

72. Because the April 15, 2026 Orders were entered without jurisdiction, they are void, ineffective, and not entitled to preclusive, law-of-the-case, finality, or waiver effect.

## V. THE DISQUALIFICATION ORDERS DO NOT CURE THE JURISDICTIONAL DEFECT

73. Debtor recognizes that a judge ordinarily must address a motion seeking her disqualification before presiding over further substantive proceedings.

74. That principle does not cure the jurisdictional problem here.

75. The disqualification motions were tied to the same adversary proceeding and same adjudicatory structure already before the District Court.

Appx. 0098

76. If this Court concluded that disqualification had to be addressed before further proceedings, the proper course was to refrain from conducting further proceedings affecting appealed matters unless and until jurisdiction was restored or clarified.

77. The Court could not use its own denial of disqualification as a jurisdictional bridge to proceed to adjudicate intervention, indispensable-party objections, counsel disqualification, and summary judgment in the appealed adversary proceeding.

78. The necessity of addressing disqualification before further proceedings therefore confirms rather than defeats Debtor's position.

79. It demonstrates that the April 15, 2026 hearing and Orders were not collateral housekeeping matters.

80. They were part of the same adversary proceeding and same appealed controversy.

## VI. THE ORDERS SHOULD BE VACATED AS VOID UNDER RULE 9024 AND RULE 60(b)(4)

81. Federal Rule of Bankruptcy Procedure 9024 incorporates Federal Rule of Civil Procedure 60 in bankruptcy cases, subject to limitations not applicable here.

82. Federal Rule of Civil Procedure 60(b)(4) authorizes relief from a judgment or order that is void.

83. An order entered by a court lacking jurisdiction is void.

84. Because this Court lacked jurisdiction to enter the Orders at Docket Nos. 116 through 121 while the relevant aspects of this Adversary Proceeding were pending before the District Court, those Orders should be vacated as void.

85. Debtor therefore requests that the Court vacate the Orders at Docket Nos. 116, 117, 118, 119, 120, and 121.

## VII. ALTERNATIVELY, THE COURT SHOULD ISSUE AN INDICATIVE RULING UNDER RULE 8008

10

Appx. 0099

86. Federal Rule of Bankruptcy Procedure 8008 applies when a party files a motion in the bankruptcy court for relief that the bankruptcy court lacks authority to grant because an appeal is pending.

87. Under Rule 8008, the bankruptcy court may:

    a. defer considering the motion;

    b. deny the motion;

    c. state that it would grant the motion if the court where the appeal is pending remands for that purpose; or

    d. state that the motion raises a substantial issue.

88. If this Court concludes that the pending District Court appeals deprive it of authority to vacate the April 15, 2026 Orders outright, Debtor requests an indicative ruling under Rule 8008.

89. Specifically, Debtor requests that the Court state that this Motion raises a substantial issue and/or that the Court would grant the Motion and vacate the Orders at Docket Nos. 116 through 121 if the District Court remands for that purpose.

90. Such an indicative ruling would permit Debtor to seek appropriate relief from the District Court without waiver of Debtor's position that the April 15, 2026 Orders are void.

## VIII. PROTECTIVE REQUEST FOR EXTENSION OF TIME TO APPEAL UNDER RULE 8002(d)

91. Debtor does not concede that a separate appeal was required from the April 15, 2026 Orders.

92. Debtor's position is that those orders are void and incapable of becoming valid merely because no separate notice of appeal was filed within 14 days.

93. Nevertheless, to avoid any contention that Debtor forfeited appellate review if a reviewing court later determines that a separate appeal was required, Debtor requests a protective

11

extension of time under Federal Rule of Bankruptcy Procedure 8002(d).

94. The April 15, 2026 orders were entered on April 15, 2026.

95. The ordinary 14-day deadline under Rule 8002(a) expired on April 29, 2026.

96. Under Rule 8002(d), this Court may extend the time to appeal upon a motion filed within 21 days after expiration of the original appeal deadline, upon a showing of excusable neglect.

97. Twenty-one days after April 29, 2026 is May 20, 2026.

98. This Motion is therefore timely under Rule 8002(d), provided it is filed on or before May 20, 2026.

99. Excusable neglect exists.

100. First, Debtor did not discover the April 15, 2026 Orders until on or about May 13, 2026.

101. Second, the April 15, 2026 Orders were entered while the relevant aspects of this Adversary Proceeding were already pending before the District Court.

102. Third, Debtor reasonably believed, and continues to believe, that this Court lacked jurisdiction to enter substantive orders affecting the appealed adversary proceeding.

103. Fourth, Debtor acted promptly upon discovering the April 15, 2026 Orders.

104. Fifth, no party can claim unfair prejudice from a protective extension of time where the April 15, 2026 Orders were entered in the same adversary proceeding already involved in pending appellate proceedings.

105. Sixth, the question whether the bankruptcy court had jurisdiction to enter the April 15, 2026 Orders is a substantial jurisdictional issue, not a tactical delay.

106. Accordingly, if any separate appeal was required, Debtor respectfully requests an extension of time to file a notice of appeal from the Orders at Docket Nos. 116, 117, 118, 119, 120, and 121.

12

107. This request is made protectively and without waiver of Debtor's position that the April 15, 2026 Orders are void.

## IX. NO WAIVER

108. Nothing in this Motion shall be construed as a concession that:

a. the April 15, 2026 Orders are valid;

b. the April 15, 2026 Orders are final;

c. the April 15, 2026 Orders are appealable;

d. a separate appeal was required;

e. this Court had jurisdiction to enter the April 15, 2026 Orders;

f. Debtor was required to seek relief in this Court rather than in the District Court;

g. Debtor waived any issue pending before the District Court; or

h. Debtor waived any argument that the April 15, 2026 Orders are void, ineffective, or without preclusive effect.

109. This Motion is filed solely to preserve Debtor's rights and to prevent the Trustee, the King Parties, or any other party from later arguing that Debtor acquiesced in orders entered without jurisdiction.

## X. REQUEST FOR RELIEF

**WHEREFORE**, Debtor Gregory B. Myers respectfully requests that this Court enter an order:

(i) Granting Debtor a protective extension of time under Federal Rule of Bankruptcy Procedure 8002(d) to appeal the April 15, 2026 Orders entered at Docket Nos. 116, 117, 118, 119, 120, and 121;

(ii) Vacating the Orders at Docket Nos. 116, 117, 118, 119, 120, and 121 as void under

13

Appx. 0102

Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b)(4);

(iii) Alternatively, if the Court concludes it lacks authority to vacate the April 15, 2026 Orders because of the pending District Court appeals, issuing an indicative ruling under Federal Rule of Bankruptcy Procedure 8008 stating that this Motion raises a substantial issue and/or that the Court would grant the Motion upon remand from the District Court;

(iv) Confirming that Debtor's filing of this protective Motion does not waive Debtor's position that the April 15, 2026 Orders are void ab initio and that no separate appeal was required; and

(v) Granting such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED on May 20, 2026.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
*gregbmyers@verizon.net*

14

## DECLARATION OF GREGORY B. MYERS IN SUPPORT OF
## DEBTOR'S OMNIBUS PROTECTIVE MOTION

I, Gregory B. Myers, declare under penalty of perjury as follows:

1. I am the Debtor in Bankruptcy Case No. 15-26033-MCR and a party-in-interest in matters relating to Adv. Proc. No. 24-00007-MCR.

2. I submit this declaration in support of Debtor's Omnibus Protective Motion for Extension of Time to Appeal April 15, 2026 Orders, to Vacate Orders as Void, or Alternatively for Indicative Ruling Under Rule 8008.

3. On or about May 13, 2026, I discovered that the Bankruptcy Court had entered six orders on April 15, 2026 in Adv. Proc. No. 24-00007-MCR at Docket Nos. 116, 117, 118, 119, 120, and 121 (collectively, the "Orders").

4. Before discovering those Orders, I was unaware that the Bankruptcy Court had entered them.

5. At the time the April 15, 2026 Orders were entered, the relevant aspects of Adv. Proc. No. 24-00007-MCR and related bankruptcy orders were already pending on appeal before the United States District Court for the District of Maryland.

6. I believed, and continue to believe, that the Bankruptcy Court (Ruark, J) lacked jurisdiction to enter substantive orders affecting the appealed adversary proceeding while those appeals were pending.

7. Upon discovering the April 15, 2026 orders, I acted promptly to prepare and file the accompanying protective motion.

8. This declaration is made based on my personal knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 20, 2026.

_____
Gregory B. Myers

15

Appx. 0104

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2026, the foregoing Motion, together with all

exhibits, was filed with the Clerk of the Bankruptcy Court and a true and correct copy of same

was served upon all parties registered to receive service by CM/ECF, including the following:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012



_____
Gregory B. Myers, *pro se*

16

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re:

GREGORY B. MYERS,

     Debtor.

_____/

BRIAN KING, *et al.*,

     Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

     Defendant.

_____/

Case No.  15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

### NOTICE OF APPEAL

GREGORY B. MYERS appeals to the United States District Court for the District of

Maryland from the May 26, 2026 order (Doc 131) entered by the United States Bankruptcy Court

for the District of Maryland in Adversary Case No. 24-00007, a copy of which is attached hereto

as **Exhibit A**.

The parties to this appeal are as follows:

**Appellant:** Gregory B. Myers
**Appellee:** Roger Schlossberg, Chapter 7 Trustee
**Appellee:** Brina King
**Appellee:** Cristina King
**Appellee:** Cristina and Brian King Children's Trust

Dated: June 1, 2026

Respectfully submitted,

_____
Gregory B. Myers, *pro se*

1

Appx. 0106

700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 1, 2026, the foregoing NOTICE OF APPEAL was filed

with the Clerk of the Bankruptcy Court and a true and correct copy of same was served upon all

parties registered to receive service by CM/ECF, including the following:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

_____
Gregory B. Myers, *pro se*

2

Appx. 0107

# Exhibit A

Appx. 0108

Entered: May 26th, 2026
Signed: May 24th, 2026



MARIA ELLENA CHAVEZ-RUARK
U.S. BANKRUPTCY JUDGE

## DENIED

The Debtor filed this motion 35 days after entry of the subject orders, and the BNC Certificates of Mailing confirm that they were served on the Debtor at his address of record. Therefore, the Court finds the motion untimely. Moreover, under the "functional test," the Court had jurisdiction to consider the six motions. See Green v. 1900 Cap. Tr. II by U.S. Bank Tr. Natl Assn, 619 B.R. 121, 134 (D. Md. 2020) (citing Bank of N.Y. Tr. Co. v. Pac. Lumber Co. (In re Scopac), 624 F.3d 274, 280 (5th Cir. 2010)), affd sub. nom. Green v. Shellpoint Mortg. Servicing, 834 F. Appx 18 (4th Cir. 2021).



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:

GREGORY B. MYERS,

 Debtor.

BRIAN KING, et al.,

 Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

 Defendant.

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

**DEBTOR'S OMNIBUS PROTECTIVE MOTION FOR EXTENSION OF TIME TO APPEAL APRIL 15, 2026 ORDERS, TO VACATE ORDERS AS VOID, OR ALTERNATIVELY FOR INDICATIVE RULING UNDER RULE 8008**

Debtor Gregory B. Myers, pro se, files this Omnibus Protective Motion for Extension of Time to Appeal April 15, 2026 Orders, to Vacate Orders as Void, or Alternatively for Indicative Ruling Under Rule 8008 (the "Motion"), and states as follows:

**I. INTRODUCTION**

1. On April 15, 2026, this Court entered six orders in the captioned adversary proceeding (the "Adversary Proceeding") at Docket Nos. 116, 117, 118, 119, 120, and 121 (collectively, the "Orders").

2. Those Orders are:

 a. Docket No. 116 — Order Denying Motion to Intervene in Adversary Proceeding;

1

34

Appx. 0109

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re:

GREGORY B. MYERS,

     Debtor.

_____/

BRIAN KING, *et al.*,

     Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

     Defendant.

_____/

Case No.  15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

## NOTICE OF APPEAL

GREGORY B. MYERS appeals to the United States District Court for the District of

Maryland from the May 26, 2026 order (Doc 131) entered by the United States Bankruptcy Court

for the District of Maryland in Adversary Case No. 24-00007, a copy of which is attached hereto

as **Exhibit A.**

The parties to this appeal are as follows:

**Appellant:** Gregory B. Myers
**Appellee:** Roger Schlossberg, Chapter 7 Trustee
**Appellee:** Brina King
**Appellee:** Cristina King
**Appellee:** Cristina and Brian King Children's Trust

Dated: June 1, 2026

Respectfully submitted,

_____
Gregory B. Myers, *pro se*

1

District Judge Theodore D. Chuang.

8. Accordingly, Debtor does not concede that the April 15, 2026 Orders are valid, final, appealable, effective, or capable of becoming final through failure to appeal.

9. This Motion is filed protectively and without waiver of Debtor's position that the April 15, 2026 Orders are void ab initio.

10. To avoid any contention that Debtor was required to file a separate appeal from orders Debtor contends are void, Debtor requests, in the alternative and without waiver, an extension of time to appeal the April 15, 2026 Orders under Federal Rule of Bankruptcy Procedure 8002(d).

11. Debtor further requests that the Court vacate the April 15, 2026 Orders as void under Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b)(4).

12. Alternatively, if this Court concludes that the pending District Court appeals deprive it of authority to grant vacatur, Debtor requests an indicative ruling under Federal Rule of Bankruptcy Procedure 8008 that this Motion raises a substantial issue and/or that the Court would grant relief if the District Court remands for that purpose.

## II. RELEVANT PROCEDURAL BACKGROUND

13. The Adversary Proceeding, Adv. Proc. No. 24-00007-MCR, was filed by Brian King, Cristina King, and the Cristina and Brian King Children's Trust against Roger Schlossberg, Chapter 7 Trustee.

14. The Adversary Proceeding concerns, among other things, alleged rights and interests relating to 6789 Goldsboro LLC ("Goldsboro"), Serv Trust, and/or property that Debtor contends is not property of Debtor's bankruptcy estate in Case No. 15-26033.

15. On or about December 11, 2023, this Court entered orders including, without limitation,

3

the *Order Granting Motion for Approval of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* (Doc. 1029) (the "**Settlement Procedures Order**") and related orders in Case No. 15-26033 (the main bankruptcy case) and/or the Adversary Proceeding.

16. On or about July 3, 2025, this Court entered an *Order Approving Trustee's Compromise and Settlement with King Parties* (Case 24-00007; Doc 61) (the "**Settlement Order**").

17. Debtor appealed, or otherwise sought District Court review of, orders arising from or relating to the Adversary Proceeding and the settlement/adjudicatory structure. Those appeals are pending before Judge Theodore D. Chuang in the United States District Court for the District of Maryland.

18. The pending appeals before the United States District Court for the District of Maryland include, without limitation: Case Nos. 25-02103-TDC, 25-02337-TDC, 25-02635-TDC, 25-02042-TDC, 25-02338-TDC, and such other related appeals as may be consolidated with or related to the foregoing.

19. The issues pending before the District Court include, among other things, whether the bankruptcy court had jurisdiction and authority to approve, effectuate, or structure relief in the main case and the subject Adversary Proceeding affecting alleged non-estate property and/or the rights of non-debtor parties.

20. While those appellate proceedings were pending, this Court entered the April 15, 2026 Orders at Docket Nos. 116 through 121 in this Adversary Proceeding.

21. The April 15, 2026 Orders were entered after this Court signed them on April 14, 2026.

22. Debtor did not receive or did not become aware of the April 15, 2026 Orders until on or about May 13, 2026.

4

Appx. 0112

23. Debtor promptly files this Motion after discovering the April 15, 2026 Orders.

## III. THE APRIL 15, 2026 ORDERS AT ISSUE

### A. Docket No. 116 — Order Denying Motion to Intervene

24. At Docket No. 116, this Court denied Debtor's Motion to Intervene in this Adversary Proceeding.

25. The order states that the motion was denied "for the reasons stated in the Trustee's opposition at Dkt. No. 68."

26. Debtor's right to intervene in the Adversary Proceeding is directly tied to the issues pending on appeal because Debtor contends the Adversary Proceeding was used to affect, settle, transfer, compromise, or adjudicate rights involving Goldsboro, Serv Trust, and/or property that Debtor contends is not property of Debtor's bankruptcy estate in Case No. 15-26033

27. The question whether Debtor could intervene in the Adversary Proceeding was not collateral to the pending appeals. It went directly to who may be heard in the Adversary Proceeding and whether the Adversary Proceeding could proceed in the absence of the affected parties.

28. A copy of Docket No. 116 — Order Denying Motion to Intervene is attached hereto as Exhibit A.

### B. Docket No. 117 — Order Denying Motion to Dismiss for Failure to Join Indispensable Party

29. At Docket No. 117, this Court denied Debtor's Motion to Dismiss for Failure to Join Indispensable Party.

30. The order states that the motion was denied "for the reasons stated in the Trustee's opposition at Dkt. No. 69."

31. The indispensable-party issue is directly tied to the pending appeals because Debtor

5

Appx. 0113

contends the adversary proceeding and settlement structure improperly affected rights of Serv Trust, 6789 Goldsboro LLC, and/or other non-debtor parties without their presence.

32. Whether indispensable parties were absent goes to the structural validity of the adversary proceeding and the bankruptcy court's authority to enter or approve relief affecting alleged non-estate property.

33. A copy of Docket No. 117 — Order Denying Motion to Dismiss for Failure to Join Indispensable Party is attached hereto as **Exhibit B**.

**C. Docket No. 118 — Order Denying Motion to Disqualify Judge**

34. At Docket No. 118, this Court denied Debtor's Motion to Disqualify Judge Maria Ellena Chavez-Ruark.

35. The order states that the motion was denied "for the reasons stated in the Trustee's opposition at Dkt. No. 72."

36. The disqualification motion was not a free-standing collateral matter unrelated to the pending appeals.

37. It concerned the bankruptcy judge's continued authority to preside over the same adversary proceeding whose orders, structure, jurisdictional predicates, and settlement-related rulings were already pending before the District Court.

38. Because disqualification goes to the judge's authority to preside, the Court could not proceed to hear and determine substantive adversary matters without first addressing it.

39. But the necessity of resolving disqualification did not restore jurisdiction over matters divested by the pending appeals.

40. A copy of Docket No. 118 — Order Denying Motion to Disqualify Judge is attached hereto as **Exhibit C**.

6

Appx. 0114

**D. Docket No. 119 — Order Denying Debtor's Motion to Disqualify Counsel.**

41. At Docket No. 119, this Court denied Debtor's Motion to Disqualify Counsel.

42. The order states that the motion was denied "for the reasons stated in the King Parties' opposition at Dkt. No. 67."

43. The counsel-disqualification issue was likewise tied to the Adversary Proceeding, the settlement structure, the role of the King Parties, and counsel's continued participation in proceedings affecting matters already before the District Court.

44. To the extent the Court treated Docket No. 119 as clearing the way for continued adjudication of appealed adversary issues, the order exceeded the Court's residual jurisdiction.

45. A copy of Docket No. 119 — Order Denying Debtor's Motion to Disqualify Counsel is attached hereto as **Exhibit D.**

**E. Docket No. 120 — Order Denying Second Motion to Disqualify Judge**

46. At Docket No. 120, this Court denied Debtor's Second Motion to Disqualify Judge Maria Ellena Chavez-Ruark.

47. The order states that the motion was denied "for the reasons stated in the Trustee's opposition at Dkt. No. 74."

48. For the same reasons set forth above as to Docket No. 118, Docket No. 120 concerned the bankruptcy judge's continued authority to preside over the same adversary proceeding whose operative issues were already before the District Court.

49. A copy of Docket No. 120 — Order Denying Second Motion to Disqualify Judge is attached hereto as **Exhibit E.**

**F. Docket No. 121 — Order Denying Motion for Summary Judgment**

50. At Docket No. 121, this Court denied Debtor's "Motion for Final Summary Judgment as

7

Appx. 0115

to Count I of Third Party Complaint and Demand for Jury Trial."

51. The order states: "The Court denied the Debtor's motion to intervene. Therefore, the Debtor's motion for summary judgment is denied."

52. Docket No. 121 issues are not collateral, ministerial, or administrative.

53. It is a merits-related order denying dispositive relief.

54. It is also derivative of Docket No. 116 because the Court denied summary judgment solely because it had denied intervention.

55. If Docket No. 116 was entered without jurisdiction, then Docket No. 121 necessarily falls with it.

56. A copy of Docket No. 121 — Order Denying Motion for Summary Judgment is attached hereto as **Exhibit F**.

## IV. THE APRIL 15, 2026 ORDERS WERE ENTERED WITHOUT JURISDICTION UNDER GRIGGS

57. In *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), the Supreme Court held that a notice of appeal is an event of jurisdictional significance.

58. Upon filing of a notice of appeal, jurisdiction over the matters involved in the appeal transfers to the appellate court, and the lower court is divested of control over those aspects of the case involved in the appeal.

59. The purpose of the *Griggs* rule is to prevent two courts from exercising simultaneous control over the same case or same issues.

60. The *Griggs* divestiture rule applies in bankruptcy appeals.

61. A bankruptcy court may retain jurisdiction over matters that are collateral, administrative, ministerial, or unrelated to the appealed issues.

62. But the bankruptcy court may not enter orders that alter, modify, supplement, adjudicate,

8

or interfere with matters involved in the appeal.

63. Here, the April 15, 2026 orders were entered in the same adversary proceeding already involved in the pending District Court appeals.

64. They did not merely preserve the status quo.

65. They did not merely perform administrative docket management.

66. They decided who could participate in the Adversary Proceeding.

67. They decided whether the Adversary Proceeding could proceed despite alleged failure to join indispensable parties.

68. They decided whether the presiding judge and counsel could continue in the Adversary Proceeding.

69. They denied dispositive relief.

70. They directly affected the structure, jurisdictional integrity, party status, and merits posture of the Adversary Proceeding.

71. These are precisely the types of issues that the bankruptcy court lacked jurisdiction to decide once the relevant aspects of the Adversary Proceeding were before the District Court.

72. Because the April 15, 2026 Orders were entered without jurisdiction, they are void, ineffective, and not entitled to preclusive, law-of-the-case, finality, or waiver effect.

## V. THE DISQUALIFICATION ORDERS DO NOT CURE THE JURISDICTIONAL DEFECT

73. Debtor recognizes that a judge ordinarily must address a motion seeking her disqualification before presiding over further substantive proceedings.

74. That principle does not cure the jurisdictional problem here.

75. The disqualification motions were tied to the same adversary proceeding and same adjudicatory structure already before the District Court.

Appx. 0117

76. If this Court concluded that disqualification had to be addressed before further proceedings, the proper course was to refrain from conducting further proceedings affecting appealed matters unless and until jurisdiction was restored or clarified.

77. The Court could not use its own denial of disqualification as a jurisdictional bridge to proceed to adjudicate intervention, indispensable-party objections, counsel disqualification, and summary judgment in the appealed adversary proceeding.

78. The necessity of addressing disqualification before further proceedings therefore confirms rather than defeats Debtor's position.

79. It demonstrates that the April 15, 2026 hearing and Orders were not collateral housekeeping matters.

80. They were part of the same adversary proceeding and same appealed controversy.

## VI. THE ORDERS SHOULD BE VACATED AS VOID UNDER RULE 9024 AND RULE 60(b)(4)

81. Federal Rule of Bankruptcy Procedure 9024 incorporates Federal Rule of Civil Procedure 60 in bankruptcy cases, subject to limitations not applicable here.

82. Federal Rule of Civil Procedure 60(b)(4) authorizes relief from a judgment or order that is void.

83. An order entered by a court lacking jurisdiction is void.

84. Because this Court lacked jurisdiction to enter the Orders at Docket Nos. 116 through 121 while the relevant aspects of this Adversary Proceeding were pending before the District Court, those Orders should be vacated as void.

85. Debtor therefore requests that the Court vacate the Orders at Docket Nos. 116, 117, 118, 119, 120, and 121.

## VII. ALTERNATIVELY, THE COURT SHOULD ISSUE AN INDICATIVE RULING UNDER RULE 8008

Appx. 0118

86. Federal Rule of Bankruptcy Procedure 8008 applies when a party files a motion in the bankruptcy court for relief that the bankruptcy court lacks authority to grant because an appeal is pending.

87. Under Rule 8008, the bankruptcy court may:

    a. defer considering the motion;

    b. deny the motion;

    c. state that it would grant the motion if the court where the appeal is pending remands for that purpose; or

    d. state that the motion raises a substantial issue.

88. If this Court concludes that the pending District Court appeals deprive it of authority to vacate the April 15, 2026 Orders outright, Debtor requests an indicative ruling under Rule 8008.

89. Specifically, Debtor requests that the Court state that this Motion raises a substantial issue and/or that the Court would grant the Motion and vacate the Orders at Docket Nos. 116 through 121 if the District Court remands for that purpose.

90. Such an indicative ruling would permit Debtor to seek appropriate relief from the District Court without waiver of Debtor's position that the April 15, 2026 Orders are void.

## VIII. PROTECTIVE REQUEST FOR EXTENSION OF TIME TO APPEAL UNDER RULE 8002(d)

91. Debtor does not concede that a separate appeal was required from the April 15, 2026 Orders.

92. Debtor's position is that those orders are void and incapable of becoming valid merely because no separate notice of appeal was filed within 14 days.

93. Nevertheless, to avoid any contention that Debtor forfeited appellate review if a reviewing court later determines that a separate appeal was required, Debtor requests a protective

11

extension of time under Federal Rule of Bankruptcy Procedure 8002(d).

94. The April 15, 2026 orders were entered on April 15, 2026.

95. The ordinary 14-day deadline under Rule 8002(a) expired on April 29, 2026.

96. Under Rule 8002(d), this Court may extend the time to appeal upon a motion filed within 21 days after expiration of the original appeal deadline, upon a showing of excusable neglect.

97. Twenty-one days after April 29, 2026 is May 20, 2026.

98. This Motion is therefore timely under Rule 8002(d), provided it is filed on or before May 20, 2026.

99. Excusable neglect exists.

100. First, Debtor did not discover the April 15, 2026 Orders until on or about May 13, 2026.

101. Second, the April 15, 2026 Orders were entered while the relevant aspects of this Adversary Proceeding were already pending before the District Court.

102. Third, Debtor reasonably believed, and continues to believe, that this Court lacked jurisdiction to enter substantive orders affecting the appealed adversary proceeding.

103. Fourth, Debtor acted promptly upon discovering the April 15, 2026 Orders.

104. Fifth, no party can claim unfair prejudice from a protective extension of time where the April 15, 2026 Orders were entered in the same adversary proceeding already involved in pending appellate proceedings.

105. Sixth, the question whether the bankruptcy court had jurisdiction to enter the April 15, 2026 Orders is a substantial jurisdictional issue, not a tactical delay.

106. Accordingly, if any separate appeal was required, Debtor respectfully requests an extension of time to file a notice of appeal from the Orders at Docket Nos. 116, 117, 118, 119, 120, and 121.

Appx. 0120

107. This request is made protectively and without waiver of Debtor's position that the April 15, 2026 Orders are void.

## IX. NO WAIVER

108. Nothing in this Motion shall be construed as a concession that:

a. the April 15, 2026 Orders are valid;

b. the April 15, 2026 Orders are final;

c. the April 15, 2026 Orders are appealable;

d. a separate appeal was required;

e. this Court had jurisdiction to enter the April 15, 2026 Orders;

f. Debtor was required to seek relief in this Court rather than in the District Court;

g. Debtor waived any issue pending before the District Court; or

h. Debtor waived any argument that the April 15, 2026 Orders are void, ineffective, or without preclusive effect.

109. This Motion is filed solely to preserve Debtor's rights and to prevent the Trustee, the King Parties, or any other party from later arguing that Debtor acquiesced in orders entered without jurisdiction.

## X. REQUEST FOR RELIEF

**WHEREFORE**, Debtor Gregory B. Myers respectfully requests that this Court enter an order:

(i) Granting Debtor a protective extension of time under Federal Rule of Bankruptcy Procedure 8002(d) to appeal the April 15, 2026 Orders entered at Docket Nos. 116, 117, 118, 119, 120, and 121;

(ii) Vacating the Orders at Docket Nos. 116, 117, 118, 119, 120, and 121 as void under

Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60(b)(4);

(iii) Alternatively, if the Court concludes it lacks authority to vacate the April 15, 2026 Orders because of the pending District Court appeals, issuing an indicative ruling under Federal Rule of Bankruptcy Procedure 8008 stating that this Motion raises a substantial issue and/or that the Court would grant the Motion upon remand from the District Court;

(iv) Confirming that Debtor's filing of this protective Motion does not waive Debtor's position that the April 15, 2026 Orders are void ab initio and that no separate appeal was required; and

(v) Granting such other and further relief as is just and proper.

RESPECTFULLY SUBMITTED on May 20, 2026.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
*gregbmyers@verizon.net*

14

Appx. 0122

## DECLARATION OF GREGORY B. MYERS IN SUPPORT OF
## DEBTOR'S OMNIBUS PROTECTIVE MOTION

I, Gregory B. Myers, declare under penalty of perjury as follows:

1. I am the Debtor in Bankruptcy Case No. 15-26033-MCR and a party-in-interest in matters relating to Adv. Proc. No. 24-00007-MCR.

2. I submit this declaration in support of Debtor's Omnibus Protective Motion for Extension of Time to Appeal April 15, 2026 Orders, to Vacate Orders as Void, or Alternatively for Indicative Ruling Under Rule 8008.

3. On or about May 13, 2026, I discovered that the Bankruptcy Court had entered six orders on April 15, 2026 in Adv. Proc. No. 24-00007-MCR at Docket Nos. 116, 117, 118, 119, 120, and 121 (collectively, the "Orders").

4. Before discovering those Orders, I was unaware that the Bankruptcy Court had entered them.

5. At the time the April 15, 2026 Orders were entered, the relevant aspects of Adv. Proc. No. 24-00007-MCR and related bankruptcy orders were already pending on appeal before the United States District Court for the District of Maryland.

6. I believed, and continue to believe, that the Bankruptcy Court (Ruark, J) lacked jurisdiction to enter substantive orders affecting the appealed adversary proceeding while those appeals were pending.

7. Upon discovering the April 15, 2026 orders, I acted promptly to prepare and file the accompanying protective motion.

8. This declaration is made based on my personal knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 20, 2026.

Gregory B. Myers

15

Appx. 0123

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2026, the foregoing Motion, together with all

exhibits, was filed with the Clerk of the Bankruptcy Court and a true and correct copy of same

was served upon all parties registered to receive service by CM/ECF, including the following:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012



_____
Gregory B. Myers, *pro se*

# UNITED STATES BANKRUPTCY COURT
# TRANSMITTAL SHEET TO UNITED STATES DISTRICT COURT

Transmitted by: Laurie Arter    Phone Number: 301–344–3327   Date: 6/16/26

*BANKRUPTCY MATTER (answer only one):*

☑ 1. Appeal      ☐ Cross Appeal (if applicable)   Appellant's Designation of Record included:   ☐ yes   ☑ no

    ☐ Initial Transmittal

    ☑ Transmittal of Record on Appeal (USDC Case No. 8:26–cv–02175–TDC)

    ☐ Supplemental Transmittal (reason: )

☐ 2. Motion/Request for Direct Appeal to 4th Circuit USCA

☐ 3. Motion for Leave to Appeal (Interlocutory Appeal)

☐ 4. Motion for Withdrawal of Reference

☐ 5. Findings of Fact and Conclusions of Law (No Objections)

☐ 6. Findings of Fact and Conclusions of Law with Objection

☐ 7. Contempt

☐ 8. Other:

*RELATED CASE INFORMATION (answer all):*

1. Bankruptcy Case Number: 15–26033    Chapter: 7
2. Adversary Proceeding Number (if applicable): 24–00007
3. U.S. Bankruptcy Judge: Maria Ellena Chavez–Ruark
4. Related U.S. District Court Civil Action Number (if applicable): 17cv01218PX; 17cv01239PX; 17cv02537PX; 17cv02781PX; 17cv03396PX; 17cv03846PX; 17cv03847PX; 18cv03783PX; 18cv01417PX; 18cv01630PX; 18cv02536PX; 18cv00336PX; 18cv02144PX; 19cv00245PX; 19cv03677PX19cv00637PX; 20cv01261PX; 21cv01184GJH; 21cv01185GJH; 21cv01186GJH; 22cv00778GJH; 23cv03511DLB; 8:25cv02042TDC; 8:25cv02338TD; 8:26–cv–02204–DLB
5. Fee Paid:   ☐ yes  ☑ no

6. Additional comments: Appellant Designation was not filed.

*PARTY INFORMATION (answer all):*

1. Debtor: Gregory B Myers
2. Trustee (if applicable): Roger Schlossberg

Appellant/Movant: Gregory B Myers

Appellant/Movant's Counsel: pro se

Appellee/Respondent: Brian King, Cristina King, Cristina and Brian King Children's Trust, Roger Schlossberg

Appellee/Respondent's Counsel: Maurice Belmnont VerStandig for Brian King and Cristina King and Cristina and Brian King Children's Trust, Frank J. Mastro for Roger Schlossberg

transmdc (07/28/2015) – *LaurieArter*

Appx. 0125

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re:

GREGORY B. MYERS,

       Debtor.

_____/

BRIAN KING, *et al.*,

       Plaintiffs,

    v.

ROGER SCHLOSSBERG, Trustee,

       Defendant.

_____/

Case No.  15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

## MOTION TO INTERVENE IN ADVERSARY PROCEEDING

Gregory B. Myers ("Mr. Myers"), pursuant to Rule 24 of the Federal Rules of Civil Procedure as made applicable to these proceedings by Rule 7024 of the Federal Rules of Bankruptcy Procedure, respectfully moves the Court for an order allowing him to intervene in Adversary Proceeding No. 24-00007 ("Adversary Proceeding 24-00007"). In support, Debtor states as follows:

1. On January 10, 2024, Brian King ("Mr. King"), Cristina King ("Mrs. King"), and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (the "Trustee of the Children's Trust," with the trust itself being known as the "Children's Trust")) (Mr. King, Mrs. King, and the Trustee of the Children's Trust being collectively known as the "Plaintiffs" and each sometimes being known as a "Plaintiff"), commenced Adversary Proceeding 24-00007 by filing a

1

Appx. 0126

COMPLAINT FOR DECLARATORY RELIEF [Adv. Proc. Dkt. #1] (the "Complaint") against Roger Schlossberg, in his official capacity as Chapter 7 Trustee of Mr. Myers's bankruptcy estate (the "Trustee" or "Defendant").

2. Pursuant to Federal Rule 24(a)(2), Mr. Myers has an absolute right to intervene in Adversary Proceeding 24-00007 as he arguably possesses constitutionally protected rights and interests relating to the subject matter of Adversary Proceeding 24-00007, the disposition of which may, as a practical matter, impair or impede Mr. Myers's ability to protect his rights and interests. Moreover, it is certain that Mr. Myers's rights and interests will **not** be adequately represented by the Trustee in Adversary Proceeding 24-00007.

3. Mr. Myers also possesses claims and defenses that share "a common question of law or fact" with the matters articulated in Adversary Proceeding 24-00007. Thus, even assuming the factors for intervention as of right under Federal Rule 24(a)(2) are not satisfied here (which they are), Mr. Myers should be permitted to intervene pursuant to Federal Rule 24(b).

4. Because Mr. Myers satisfies the requirements set forth in Federal Federal Rule 24(a) and (b), this motion should be granted. If this Court were to deny Mr. Myers's request to intervene in Adversary Proceeding 24-00007, Mr. Myers would be severely prejudiced.

**WHEREFORE**, Mr. Myers respectfully requests that the Court enter an order authorizing him to intervene in Adversary Proceeding 24-00007 and grant such other and further relief as is just and proper.

**RESPECTFULLY SUBMITTED** on this 26th day of June, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.

2

Appx. 0127

Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 26, 2025, a copy of the foregoing was furnished to the

following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

_____
Gregory B. Myers, *pro se*

3

Appx. 0128



# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:

GREGORY B. MYERS,

    Debtor.
_____/

BRIAN KING, *et al.*,

    Plaintiffs,

    v.

ROGER SCHLOSSBERG, Trustee,

    Defendant.
_____/

GREGORY MYERS

    Third-Party Plaintiff,

v.

JUDGE MARIA ELENA CHAVEZ-RUARK,
in her official capacity

    Third-Party Defendant,

and

6789 GOLDSBORO LLC

    Third-Party Defendant,

and

MAURICE B. VERSTANDIG

Case No.  15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

1

Appx. 0130

Third-Party Defendant,

THE VERSTANDIG LAW FIRM, LLC

Third-Party Defendant,

and

FRANK MASTRO

Third-Party Defendant,

and

SCHLOSSBERG & ASSOCIATES, P.A.

Third-Party Defendant,

## THIRD PARTY COMPLAINT AND DEMAND FOR TRIAL BY JURY

Comes now GREGORY B. MYERS ("Myers" or "Debtor" or "Third Party Plaintiff"), and pursuant to 11 U.S.C. § 1109(b)[1] and Federal Rule of Civil Procedure 14 made applicable to adversary proceedings pursuant to Bankruptcy Rule 7014, brings this Third Party Complaint and Demand for Trial by Jury (the "Third Party Complaint") against JUDGE MARIA ELENA CHAVEZ-RUARK, in her official capacity ("Ruark"), 6789 GOLDSBORO LLC ("Goldsboro"), MAURICE B. VERSTANDIG ("VerStandig"), THE VERSTANDIG LAW FIRM, LLC ("MBV Law"), FRANK MASTRO ("Mastro"), and SCHLOSSBERG & ASSOCIATES, P.A. ("Schlossberg Law") (with Ruark, Goldsboro, VerStandig, MBV Law, Mastro, and Schlossberg Law being collectively known as the "Third-Party Defendants" and each sometimes being known

---

[1] 11 U.S.C. § 1109(b) provides: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

2

Appx. 0131

as a " Third-Party Defendant"), and does allege as follows:

## INTRODUCTION

1.    It is well established that "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." *Hedges* v. *Dixon County*, 150 U. S. 182, 192 (1893). "A Court of equity cannot, by avowing that there is a right but no remedy known to the law, create a remedy in violation of law . . . ." *Rees* v. *Watertown*, 19 Wall. 107, 122 (1874). See also, *e. g.*, *Thompson* v. *Allen County*, 115 U. S. 550, 555 (1885); 1 J. Story, Equity Jurisprudence § 19 (W. Lyon ed. 1918). See also *INS v. Pangilinan*, 486 U.S. 875, 883, 108 S.Ct. 2210, 2216, 100 L.Ed.2d 882 (1988) (quoting *Hedges v. Dixon County*, 150 U.S. 182, 192, 14 S.Ct. 71, 74, 37 L.Ed. 1044 (1893)); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").

2.    Furthermore, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984)); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 42 (2021) (noting that in *Pulliam*, "the plaintiff sought an injunction only to prevent the judge from enforcing a rule of her own creation").

3.    Former U.S. Attorney General John Ashcroft's remarks summarize the bankruptcy court corruption taking place in Adversary Proceeding No. 24-00007 (the "Adversary"):

> Bankruptcy court corruption is not just a matter of bankruptcy trustees in collusion with corrupt bankruptcy judges. The corruption is supported, and justice hindered by high-ranking officials in the United States Trustee Program. The corruption has advanced to punishing any and all who mention the criminal acts of trustees and organized crime operating through the United States Bankruptcy Courts. As though greed is not enough, the trustees, in collusion with others, intentionally go forth to destroy lives. Exemptions provided by law are denied debtors. Cases are intentionally and unreasonably kept open for years. Parties in cases are sanctioned to discourage

Appx. 0132

them from pursuing justice. Contempt of court powers are misused to coerce litigants into agreeing with extortion demands. This does not ensure integrity and restore public confidence.

## PARTIES

4.  Myers is a natural person who is a citizen of the state of Florida.

5.  Ruark is a bankruptcy judge of the United States Bankruptcy Court for the District of Maryland and is being sued in her official capacity.

6.  Goldsboro is a Maryland LLC formed pursuant to the laws of the State of Maryland, with its principal place of business in the State of Maryland.

7.  VerStandig is, upon information and belief, a citizen of Nevada and the owner of MBV Law.

8.  MBV Law is, upon information and belief, a Maryland LLC formed pursuant to the laws of the State of Maryland, with its principal place of business in Maryland.

9.  Mastro is, upon information and belief, a citizen of Maryland and and owner of Schlossberg Law.

10.  Schlossberg Law is a partnership operating and organized under the laws of Maryland.

## FACTS

11.  On November 18, 2015, Myers filed a voluntary petition for bankruptcy relief under the reorganization provisions of Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), Case 15-26033 (the "Myers Bankruptcy Case").

4

Appx. 0133

12.    On February 22, 2017, the Myers Bankruptcy Case was converted from a case under chapter 11 to a case under chapter 7 and Schlossberg was appointed as chapter 7 trustee of the bankruptcy estate of Gregory B. Myers (the "Chapter 7 Trustee").

13.    On November 13, 2019, Maurice VerStandig, in his personal capacity, filed a Notice of Removal in this Court—removing State Court Case Nos. 436977-V and 451611-V (collectively, the "State Court Case") from the Circuit Court for Montgomery County, Maryland to the United States Bankruptcy Court for the District of Maryland, thereby initiating Adversary Proceeding 19-00427 (Adv. Proc. 19-00427; Doc 1).

14.    On December 5, 2019, the United States Bankruptcy Court for the District of Maryland (Simpson, J) entered an Order remanding the State Court Case back to the Circuit Court for Montgomery County, Maryland (the "Remand Order"), stating:

> ORDERED, that the above-captioned adversary proceeding is remanded to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. 1452(b).

(Adv. No. 19-00427, Dkt. No. 5).

15. On December 11, 2023, the Bankruptcy Court (Ruark, J) entered an Order approving what the Bankruptcy Court describes as a "Settlement Procedure Motion" which "seeks to *establish a procedural mechanism* for resolving litigation pending in state court among Brian King, Cristina King, and the Cristina and Brian King Children's Trust (collectively, the 'King Parties'), Serv Trust, and the Trustee [Roger Schlossberg] (who was named as a nominal defendant)." The "Settlement Procedure Motion"

16.    On January 10, 2024, Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, the "King Parties"), commenced Adversary Proceeding 24-00007 by filing a *Complaint For Declaratory Relief* [Adv.

5

Proc. Dkt. #1] (the "Complaint") against Roger Schlossberg, in his official capacity as Chapter 7 Trustee of Mr. Myers's bankruptcy estate ("Schlossberg" or "Trustee").

17.    On January 10, 2024:

- Brian King filed a Proof of Claim (Claim 21-1) in the amount of Zero Dollars and No Cents ($0.00) with "the basis of the claim" identified as "Equitable and statutory claim, as set forth in Case No. 24-00007"
- Cristina King filed a Proof of Claim (Claim 22-1) in the amount of Zero Dollars and No Cents ($0.00) with "the basis of the claim" identified as "Equitable and statutory claim, as set forth in Case No. 24-00007"
- Cristina and Brian King Children's Trust filed a Proof of Claim (Claim 23-1) in the amount of Zero Dollars and No Cents ($0.00) with "the basis of the claim" identified as "Equitable and statutory claim, as set forth in Case No. 24-00007"

18.    On June 25, 2025, Mr. Myers filed a Notice of Appeal (Doc xx), appealing to the to the United States District Court for the District of Maryland from the following orders entered in Case No. 15-26033-MCR by the United States Bankruptcy Court for the District of Maryland (Ruark, J):

- Order Denying Debtor's Motion To Strike Trustee's Motion For Approval Of Proposed Compromise And Settlement With Brian King, Cristina King, And The Cristina And Brian King Children's Trust (Doc. 1028)
- Order Granting Motion For Approval Of Proposed Compromise And Settlement With Brian King, Cristina King, And The Cristina And Brian King Children's Trust (Doc. 1029).

The referenced appeal was docketed in the United States District Court for the District of Maryland as Case 8:25-cv-02042-TDC.

19.    On June 25, 2025, Mr. Myers filed a Notice of Appeal (Doc xx), appealing to the to the United States District Court for the District of Maryland from the following orders, memorandums, notices, and rulings entered in Adversary Case No. 24-00007 by the United States Bankruptcy Court for the District of Maryland (Ruark, J):

Appx. 0135

- Order Granting Stipulation And Motion To Extend Time (Adv. No. 24-00007; Doc. 7).
- Scheduling Order (Adv. No. 24-00007; Doc. 15).
- Memorandum To Parties (Adv. No. 24-00007; Doc. 27).
- Notice Of Evidentiary Hearing (Adv. No. 24-00007; Doc. 29).
- Order Dissolving Show Cause Order After Response (Adv. No. 24-00007; Doc. 32).
- Notice Of Evidentiary Hearing (Adv. No. 24-00007; Doc. 33).

The referenced appeal was docketed in the United States District Court for the District of Maryland as Case 8:25-cv-02103-TDC.

20. On June 30, 2025, in Adversary Proceeding 24-00007, Myers filed *Motion to Disqualify Judge Maria Elen Chavez-Ruark* (Case 24-00007; Doc 47) (the "Motion to Disqualify"). Judge Ruark refused to consider or rule on the Motion to Disqualify, constituting judicial misconduct and a violation of Myers's procedural due process rights.

21. On June 30, 2025, the Maryland Bankruptcy Court orally denied Myers's Motion to Intervene in Adversary Proceeding (Case 24-00007; Doc 43).

22. On June 30, 2025, the Maryland Bankruptcy Court orally denied Myers's *ore tenus* Motion to Stay [Adversary Proceeding 24-00007] Pending Appeal.

## COUNT I
### Constructive Fraud
### (All Third Party Defendants)

23. Plaintiff incorporates paragraphs 1 through 22 of the Third Party Complaint as though they were fully set forth within this count of the Third Party Complaint.

24. Third Party Defendants knowingly and purposefully acted outside the scope of their authority in a manner that is contrary to clearly established law where there was sufficient precedent at the time of their unlawful actions to put them on notice that their conduct was constructively fraudulent and constitutionally prohibited.

25. Third Party Defendants acted in concert and conspired to put in place a fraudulent

7

scheme (i.e., "*establish a procedural mechanism*") to defraud Myers. All Third Party Defendants willfully aided in its execution. See *Etgen v. Washington County Bldg. Loan Ass'n.*, 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land W*ater Co. v. Robinson, 154 Cal. 36, 97 P. 10, 14."). Id. at 418.

26.    Third Party Defendants held positions of public trust and owed a duty of good faith and fair dealing to all parties, including Myers.

27.    Third Party Defendants breached their duty to uphold the public's trust intentionally with malice, and/or with reckless disregard for Myers's rights by willfully and intentionally participating in a fraudulent scheme to convert non-estate property without legal authority or justification.

28.    Third Party Defendants breached their fiduciary duty to Myers intentionally with malice, and/or with reckless disregard for Myers's rights by willfully and intentionally participating in a fraudulent scheme to convert non-estate property without legal authority or justification.

29.    Third Party Defendants actions were taken with support and cooperation of all Third Party Defendants, despite actual knowledge of all relevant law and facts.

30.    As a result of the Third Party Defendants reach of their legal, public, and fiduciary

8

duties, Myers has suffered material harm and material damages, and will continue to incur material

harm and material damages due to ~~loss of the Escrow Funds.~~ the Third Party Defendants' Fraudulent scheme aforesaid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against Third Party Defendants, jointly and severally, for actual damages in an amount not less than Ten Million Dollars ($10,000,000.00), award Third Party Plaintiff his attorneys' fees and suit costs incurred in connection with the prosecution of this matter and award any other relief it deems just and proper.

## DEMAND FOR JURY TRIAL

Third Party Plaintiff demands to exercise his right to a trial by jury on all claims or issues so triable.

Dated: July 2, 2025

Respectfully submitted,

Gregory B. Myers, pro se
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

9

Appx. 0138

I HEREBY CERTIFY that on July 2, 2025, a copy of the foregoing was furnished to the

following parties:

Judge Maria Elena Chavez-Ruark
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

_____
Gregory B. Myers, *pro se*

10

Appx. 0139

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Greenbelt**

In re:   Case No.: **15–26033 – MCR**   Chapter: **7**   Adversary No.: **24–00007**

**Gregory B Myers**
Debtor

**Brian King**
**Cristina King**
**Cristina and Brian King Children's Trust**
Plaintiffs

vs.

**Roger Schlossberg**
Defendant

# DEFICIENCY NOTICE

DOCUMENT:    43 – Motion to Intervene Filed by Gregory B. Myers . (Arter, Laurie)

PROBLEM:    **The following items are deficient for the above pleading, and must be cured by 7/14/25. No Proposed Order was submitted.**

CURE:    A proposed order with a list of those who should receive a copy must be filed. Also, a copy of the proposed order must be transmitted to all other parties to the matter. All proposed orders should be submitted in accordance with the Court's Electronic Filing Procedures. (Exhibit A to Administrative Order 03–02, Local Bankruptcy Rule 9013–3)

CONSEQUENCE:  Failure to cure the problem by the date above may result in the pleading being stricken or other action the Court deems appropriate without further notice. For a proposed order, the failure to cure the problem may result in the relief sought being denied for want of prosecution.

**Additional information on filing requirements: http://www.mdb.uscourts.gov/content/filing–requirements.**
**Additional information for non–attorney filers: http://www.mdb.uscourts.gov/content/after–filing.**

Dated: 6/30/25

Mark A. Neal, Clerk of Court
by Deputy Clerk, Laurie Arter
301–344–3327

cc:   Debtor – Gregory Myers

defntc (rev. 12/12/2016)

Appx. 0140

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| BRIAN KING, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.: 24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**TRUSTEE'S OPPOSITION TO DEBTOR'S MOTION
TO INTERVENE IN ADVERSARY PROCEEDING**

Defendant, Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of Gregory B.

Myers (the "Trustee"), by his undersigned counsel, pursuant to Local Rule 9006-1(a), hereby

opposes the *Motion to Intervene in Adversary Proceeding* (the "*Motion to Intervene*"), [Dkt. #43],

filed herein by the Debtor, Gregory B. Myers, on grounds that the Debtor has failed to comply

with Fed. R. Civ. P. 24(c), and, more importantly, that the Debtor cannot satisfy the requirements

necessary to intervene as of right in this adversary proceeding or, alternatively, for permissive

intervention. In further support of this opposition, the Trustee respectfully represents as follows:

**I.     BACKGROUND**

1.      On January 10, 2024, Brian King, Cristina King, and the Cristina and Brian King

Children's Trust (the "King Plaintiffs") commenced the instant adversary proceeding by filing

Appx. 0141

their *Complaint* herein. [Dkt. #1]. The Trustee thereafter filed an *Answer* on April 15, 2024. [Dkt. #13].

2.      On December 30, 3024, the Trustee filed a *Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs* (the "*Rule 9019 Motion*"). [Dkt. #17]. The Trustee explained therein that the proposed settlement, if approved by the Court, would resolve the instant adversary proceeding.

3.      The Debtor filed a preliminary objection to the Trustee's proposed settlement on January 21, 2025, [Dkt. #10], and a supplemental objection on February 4, 2025, [Dkt. #22].

4.      On May 7, 2025, at a status conference attended by the Debtor and the parties to this adversary case, the Court scheduled a two-day evidentiary hearing on the *Rule 9019 Motion* for June 30-July 1, 2025. [Dkt. #28]. On May 8, 2025, the Court issued a *Notice* regarding the hearing. [Dkt. #29].

5.      On June 27, 2025 at 5:19 p.m. – after the close of business on the last business day before the evidentiary hearing on the *Rule 9019 Motion* was set to begin – the Debtor filed the instant *Motion to Intervene*, [Dkt. #43], but made no effort to notify the parties of his filing in advance of the hearing. Rather, the Clerk provided electronic notice of the *Motion to Intervene* on June 30, 3025 at 7:25 a.m., shortly before the hearing was scheduled to commence.

6.      The two-day hearing on the *Rule 9019 Motion* proceeded as scheduled and concluded on July 1, 2025. [Dkt. #52]. On July 3, 2025, the Court convened a further hearing, [Dkt. #51], at which it delivered an oral ruling approving the Trustee's proposed settlement. [Dkt. #59]. Later that day, the Court entered its written *Order* approving the settlement. [Dkt. #61].

7.      As the Debtor did not move to shorten the time for a response to the *Motion to Intervene*, or for an expedited hearing thereon, *see* Local Rule 9013-6, responses to the *Motion to*

2

*Intervene* remained due on July 14, 2025. *See* Local Rule 9006-1(a). For the reasons set forth below, the *Motion to Intervene* must be denied.

## II.      ARGUMENT

**A.      The Debtor is Not Entitled to Intervene as of Right Because He Has Not Sufficiently Identified What Interest He Allegedly Possesses in the Subject Matter of this Adversary Proceeding and Has Not Attached a Pleading Setting Out the Claim or Defense for Which Intervention is Sought.**

As a preliminary matter, the Trustee observes that the *Motion to Intervene* fails to comply with Rule 24(c) as it does not attach "a pleading that sets out the claim or defense for which intervention is sought." *See* Fed. R. Civ. P. Rule 24(c), made applicable herein by Fed. R. Bankr. P. 7024; *Kelly v. Offit Kurman, P.A.*, 2021 WL 3725379, *8 (D. Md. Aug. 23, 2021) ("Unaccompanied by a pleading, Myers's motion does little to apprise the court or Offit Kurman of his proposed claims."). While this Court possesses the discretion to overlook a defect in compliance with the procedural requirements of Rule 24(c), *see Spring Constr. Co. v. Harris*, 614 F.2d 374, 376-77 (4th Cir. 1980), the Debtor's failure to attach a responsive pleading serves to highlight why the *Motion to Intervene* does not satisfy the requirements of either Rule 24(a) or Rule 24(b).

Under Rule 24(a), the Court must permit anyone to intervene who can show: (1) a timely application to intervene; (2) an interest in the subject matter of the underlying action; (3) that a denial of the motion to intervene would impair or impede the movant's ability to protect its interest; and (4) that the movant's interest is not adequately represented by the existing parties to the litigation. *See Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999); Fed. R. Civ. P. 24(a). The party moving for intervention as of right "bears the burden of establishing a right to intervene, and must do so by satisfying all four requirements." *U.S. ex rel. MPA Constr. Inc. v. XL*

3

*Specialty Ins. Co.*, 349 F. Supp. 2d 934, 937 (D. Md. 2004) (citing *In re Richman*, 104 F.3d 654, 658 (4th Cir. 1997)).

Here, given the lack of a pleading appended to the *Motion to Intervene*, it is unclear whether the Debtor seeks to intervene as a plaintiff or as defendant. Further, the substance of the Debtor's motion does little to illuminate the nature of the Debtor's interest in this adversary proceeding. The Debtor simply parrots the language of Rule 24(a) but fails to identify the specific "rights and interests" that he claims to possess which are related to the subject matter of this adversary proceeding.[1] Without a pleading attached to the *Motion to Intervene*, the Trustee is left to speculate as to what the nature of the Debtor's alleged interest may be. *See Kelly, supra*, 2021 WL at 3725379 at * 8 ("The motion [to intervene] simply asserts that Myers has an interest in the [subject] Agreement (even though, as the court has already explained, he is not a party to it) … and vaguely asserts that he has legal malpractice, negligence, and emotional distress claims against Offit Kurman without any explanation as to whether and how those claims relate to Kelly's claims regarding Offit Kurman's conduct with respect to the Agreement.").

**B.      The Debtor is Not Entitled to Intervene as of Right Because the *Motion to Intervene* is Untimely.**

Even if the Debtor had sufficiently disclosed an interest related to the subject matter of this adversary proceeding, intervention still would not be proper under Rule 24(a) because the *Motion to Intervene* clearly is untimely. The determination of whether a motion to intervene under Rule 24(a) is timely is committed to the court's discretion and is guided by three factors: (1) how far the underlying suit has progressed; (2) why the movant was tardy in filing its motion; and (3) the

---

[1] The Debtor vaguely states that "he arguably possesses constitutionally protected rights and interests related to the subject matter of Adversary Proceeding 24-00007, the disposition of which may, as a practical matter, impair or impede Mr. Myers's ability to protect his rights and interests."

4

prejudice any resulting delay might cause the other parties. *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). Here, all three factors militate against intervention.

First, the Debtor did not move to intervene until more than 18 months after the filing of the *Complaint* herein notwithstanding his knowledge of this action. Further, even though the Debtor was aware of the proposed settlement between the Trustee and the King Plaintiffs that stood to resolve the adversary case if approved, he waited for approximately six (6) months – until after the close of business on the last business day before the evidentiary hearing on the *Rule 9019 Motion* was set to begin – to file the *Motion to Intervene*. The Debtor provides no explanation in for his tardiness in seeking intervention. Further, now that the Trustee's settlement with the King Plaintiffs has been approved and the adversary case has been fully resolved, the parties would be unduly prejudiced if the Court were to "reopen" the adversary case to allow the Debtor – to the extent that he seeks to intervene as a plaintiff or counter-plaintiff – to file an undisclosed claim(s) which might take upwards of several years to litigate.[2]

## C.    The Debtor is Not Entitled to Intervene as of Right Because He Has Not Shown That Any Interest He Has Relating to the Subject Matter of this Case Would Not Be Adequately Represented by the Trustee.

Even if the Debtor had moved to intervene in a timely fashion and identified an interest relating to the subject matter of this litigation, he still would not be permitted to intervene as of right because he has not shown (and cannot show) that any interest he has would not be adequately represented by the Trustee.

As this Court is aware, the instant adversary case arose out of a dispute between the King Plaintiffs and Serv Trust, who each owned membership interests in 6789 Goldsboro, LLC. The

---

[2] At this point, there would seem to be no purpose to the Debtor intervening as a defendant given that the King Plaintiffs will be dismissing their *Complaint* with prejudice pursuant to the court-approved settlement. [Dkt. #61].

Appx. 0145

King Plaintiffs sought a declaration that they had redeemed Serv Trust's membership interest pursuant to the entity's operating agreement. As Serv Trust has been judicially determined to be the alter ego of the Debtor, the Trustee properly was named as a party-defendant. *See Angeles Real Estate Co. v. Kerxton*, 737 F.2d 416, 418 (4th Cir. 1984) (trustee stands in the shoes of the bankrupt and succeeds to the bankrupt's interest in property); 11 U.S.C. § 541; *see also* 11 U.S.C. § 323 (trustee, as representative of bankruptcy estate, has capacity to sue and be sued). Thus, there is no reason to believe that the Trustee would not be able to adequately represent the Debtor's interests herein (and no reason was articulated by the Debtor in the *Motion to Intervene*). Indeed, considering this Court's determination that the Trustee obtained the "best possible result" in his settlement with the King Plaintiffs, it cannot be said the Trustee did not adequately represent whatever interests the Debtor may have had in the subject matter of this adversary case.

> **D.    The Debtor is Not Entitled to Permissive Intervention Because His Motion is Untimely and Intervention Will Unduly Delay and Prejudice the Rights of the Parties Herein.**

If intervention of right is not warranted, a court may still allow a party to intervene permissively under Rule 24(b) if the party "has a claim or defense that shares with the main action a common question of law or fact." *See* Fed. R. Civ. P. 24(b). Permissive intervention, however, is subject to the filing of a timely motion. *See Alt, supra*, 758 F.3d at 590 n.2. Additionally, the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *See Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013); Fed. R. Civ. P. 24(b)(3).

For the reasons previously discussed, the Debtor's *Motion to Intervene* is untimely. *See* discussion, *supra*, at § II.B. Additionally, as previously discussed, allowing the Debtor to intervene and inject new claims into the action after the original parties have resolved all causes of action

6

Appx. 0146

necessarily would result in undue delay and prejudice. *Id*. Thus, the Debtor should not be permitted to intervene herein.

## III.    CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Debtor's *Motion to Intervene* be DENIED.

Respectfully submitted,

SCHLOSSBERG | MASTRO

By:    /s/ Frank J. Mastro
    Frank J. Mastro #24679
    Roger Schlossberg
    P.O. Box 2067
    Hagerstown, MD 21742
    (301) 739-8610
    fmastro@schlosslaw.com
    *Attorneys for Defendant,*
    *Roger Schlossberg, Trustee*

7

Appx. 0147

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the *14th* day of *July 2025*, a copy of the *Trustee's Opposition to Debtor's Motion to Intervene in Adversary Proceeding* and proposed Order was served electronically via CM/ECF upon:

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012
mac@mbvesq.com
*Attorneys for Plaintiffs*

and via first-class, postage prepaid mail upon:

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. North
Naples, FL 34102
*Debtor*

*/s/ Frank J. Mastro*
Frank J. Mastro

8

Appx. 0148

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re:

GREGORY B. MYERS,

        Debtor.

_____/

BRIAN KING, *et al.*,

        Plaintiffs,

    v.

ROGER SCHLOSSBERG, Trustee,

        Defendant.

_____/

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

### MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTY

Gregory B. Myers ("Mr. Myers"), moves to dismiss the above-captioned adversary proceeding for failure to join an indispensable party, and states:

On December 5, 2019, the United States Bankruptcy Court for the District of Maryland (Simpson, J) entered an order remanding State Court Case Nos. 436977-V and 451611-V (the "State Court Case") back to the Circuit Court for Montgomery County, Maryland ("State Court"):

> **ORDERED**, that the above-captioned adversary proceeding is **remanded** to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. 1452(b).

(Adv. No. 19-00427, Dkt. No. 5). A copy of December 5, 2019, Order entered by Judge Simpson is attached hereto as **Exhibit A**. Accordingly, and contrary to this Court's (Ruark, J) Order entered in Case 15-26033 (Doc 1029), neither this Court nor Roger Schlossberg, the Chapter 7 trustee

1

Appx. 0149

("Schlossberg" or the "Trustee") appointed to administer the Chapter 7 bankruptcy estate of Gregory B. Myers, has the authority or jurisdiction to *"establish a procedural mechanism for resolving litigation pending in state court* (i.e., the State Court Case) among Brian King, Cristina King, and the Cristina and Brian King Children's Trust (collectively, the "King Parties"), Serv Trust, and the Trustee (who was named as a nominal defendant)."

It is the State Court—not this Court—that has "authority under the Maryland Rules to control its judgments that are non-final." *Id*. Any such *"procedural mechanism"* purportedly established by this Court (Ruark, J) *"for resolving litigation pending in state court"* was/is a violation of the *Rooker-Feldman* doctrine. Simply put, the King Parties have to find a state court remedy to their claims (i.e., a <u>final state court judgment</u>) or obtain relief from the U.S. Supreme Court; *not* come into this Court which has no jurisdiction over this matter pursuant to the *Rooker-Feldman* doctrine.

On September 23, 2019 in the State Court Case, Mr. VerStanding (counsel for the King Parties) made the following representations to The Honorable Debra L. Dwyer, Judge of the Montgomery County Circuit Court:

> MR. VERSTANDIG: Thank you, Your Honor. Maurice Verstandig, again on behalf of the King parties. *** **We joined Mr. Myers as a "necessary party" because we're seeking declaratory judgment and Serv Trust is an alter ego.** *** **Maryland has a compulsory joinder rule.** *** **And I had to join Mr. Myers,** which is why they are here.

(Emphasis added). A copy of the September 23, 2019 hearing transcript is attached hereto as **Exhibit B.**

On December 16, 2022, a hearing was held in the State Court Case at which time the State Court (Lease, J) made the following rulings:

> MR. MYERS: There would still be a ruling that would impose

2

liability upon me.

THE COURT: There would not be a ruling that would impose liability on you. There would be a ruling that would potentially impose liability on Serv Trust. However, these plaintiffs would have to, if they wanted to proceed against you, would be required to try that matter again separately, and there would not be any res judicata or collateral estoppel issues, **because you were not a party to that case**...at that time because, well, you were stayed, **so you were not considered a party**.
\*\*\*
THE COURT: Well, one is **you're not a live party in this case right now**.
\*\*\*
THE COURT: Well, **it makes you a non-party...for the purpose of the upcoming trial**, because the upcoming trial does not involve you.

(Alterations and emphasis supplied).[1] Because the State Court (Lease, J) ruled on December 16, 2022, that Mr. Myers was **"not a party"** to the State Court Case (**"it makes you a non-party...for the purpose of the upcoming trial"**), the January 12, 2023, ORDER ENTERING PARTIAL JUDGMENT AND STAY is void and unenforceable for failure to join an indispensable party as required by Maryland law.

---

[1] On December 18, 2018, The Honorable Anne K. Albright found that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members" (his family), concluding that Mr. King's actions **"would amount to constructive fraud."** Here, this Court **(Ruark, J)** has willfully aided in the execution of this fraudulent scheme, including without limitation, by entering the December 11, 2023, Order (Case 15-26033; Doc 1029) facilitating "the mechanism" by which the Trustee and the King Parties are now seeking to **defraud Mr. Myers and Serv Trust**. See *Etgen v. Washington County Bldg. Loan Ass'n.,* 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land Water* Co. v. Robinson, 154 Cal. 36, 97 P. 10, 14."). Id. at 418. Notably, the Federal Tort Claims Act (FTCA) allows private parties to sue the United States in federal court for torts committed by persons (i.e., Ruark, J) acting on behalf of the government. 28 U.S.C. § 2674.

It has long been established that courts "'can make no decree affecting the rights of an absent person, and can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights.'" *Greeley v. Lowe*, 155 U.S. 58, 70 (1894) (quoting *Shields v. Barrow*, 58 U.S. 130, 141-42 (1854)). This rule is just as strong today as when it was first set forth. *See, e.g., Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008) (recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties").

In any event, the State Court (Lease, J) is barred by the principles of res judicata and collateral estoppel from entering an order contrary to the findings of fact in the Memorandum Opinion and Order Entering Judgment issued by this Court (Lipp, J) on September 28, 2018 [Adv. No. 17-00193, Dkt. No. 94; Dkt. No. 93], which state in pertinent part:

### I. Findings of Fact

The following facts are relevant to the issues at hand and are either uncontroverted or are supported by the evidence in this case. [FN2: To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.] \*\*\* Serv Trust is a trust that was created by Myers' mother for the benefit of Myers' five children. Serv Trust was funded with an initial deposit of $1,000.00 from Myers' mother. Myers and Daniel Ring are the co-trustees of Serv Trust. \*\*\* Myers testified that Serv Trust has a 50% interest in a Maryland limited liability company named 6789 Goldsboro LLC ("Goldsboro"). \*\*\* Goldsboro advanced significant sums of money to Serv Trust to enable Serv Trust to make substantial distributions to Myers and/or Kelly for the benefit of their children. \*\*\* Goldsboro continued to make post-petition advances to Serv Trust, which funds were then made available to Myers and/or Kelly to pay for their children's education and household expenses. \*\*\* It is **undisputed** that Serv Trust was established to pay educational and other expenses related to Myers' children. It is **also undisputed** that Myers is a co-trustee of Serv Trust with the authority to direct Serv Trust to make payments on

4

behalf of its beneficiaries – the Myers' children. Myers was adamant at trial that every payment that he and/or Kelly ever received from Serv Trust was for the benefit of his children. \*\*\* If, **as irrefutably testified to by Myers**, every payment from Serv Trust to Myers and/or Kelly was for the benefit of their children, then it appears Serv Trust was serving its intended purpose – i.e., providing for Myers' children. Such payments would not be "loans" to Myers and/or Kelly. They would be distributions to the Trust's beneficiaries.

(Alterations and emphasis supplied).

**WHEREFORE**, Mr. Myers demands this Court enter an order dismissing Adversary Proceeding 24-00007, with prejudice, and grant such other and further relief as is just and proper.

**RESPECTFULLY SUBMITTED** on this 27th day of June, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

5

Appx. 0153

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 27, 2025, a copy of the foregoing was furnished to the

following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

_____
Gregory B. Myers, *pro se*

Appx. 0154

# Exhibit A

Entered: December 5th, 2019
Signed: December 4th, 2019

## SO ORDERED



_____
**LORI S. SIMPSON**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BAKNRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
## at Greenbelt

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Gregory B. Myers, | * | Case No. 15-26033-WIL |
| | * | Chapter 7 |
| Debtor. | * | |
| | * | |

| | | |
|---|---|---|
| Gregory B. Myers, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Adversary No. 19-00427 |
| | * | |
| Brian King, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

## ORDER REMANDING CASE

The above-captioned adversary proceeding was commenced on November 13, 2019, upon

the Notice of Removal filed by Maurice VerStandig.   The Notice of Removal states that Gregory

Myers (the "Debtor") filed a third-party claim and counterclaim against various parties (the "Myers

1

Appx. 0156

Defendants") in Consolidated Case No. 451611-V pending in the Circuit Court for Montgomery County, Maryland alleging that the Myers Defendants violated Section 362 of Title 11 of the United States Code (the "Third Party Complaint"). Because the Third Party Complaint asserts that the Myers Defendants violated the automatic stay arising in the Debtor's bankruptcy case pending in this Court, the Myers Defendants consented to the removal of the Circuit Court Action.

On December 3, 2019, the Debtor filed a Notice of Voluntary Dismissal of the Third Party Complaint pursuant to Fed. R. Civ. P. 41, made applicable to this proceeding by Fed. R. Bankr. P. 7041. Based on the dismissal of the Third Party Complaint, and this Court having previously elected to abstain from exercising jurisdiction over the underlying Circuit Court Action[1], the Court will remand this matter to the Circuit Court for Montgomery County, Maryland.

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland, hereby

**ORDERED**, that the above-captioned adversary proceeding is remanded to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. § 1452(b).

cc:     All Counsel
        All Parties
        United States Trustee
        Chapter 7 Trustee: Roger Schlossberg

**END OF ORDER**

---

[1] *See* Order of Abstention (Docket Entry No. 28) entered on January 30, 2019, in Adversary Proceeding 18-00407.

Appx. 0157

# Exhibit B

55

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
------------------------------X
                              :
BRIAN KING,                   :
                              :
          Plaintiff,          :
                              :
             v.               :        Civil No. 436977
                              :
SERV TRUST,                   :
                              :
          Defendant.          :
                              :
------------------------------X
```

MOTIONS HEARING

Rockville, Maryland                    September 23, 2019

DEPOSITION SERVICES, INC.
12321 Middlebrook Road, Suite 210
Germantown, Maryland 20874
(301) 881-3344

Appx. 0159

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
------------------------------X
                              :
BRIAN KING,                   :
                              :
          Plaintiff,          :
                              :
              v.              :        Civil No. 436977
                              :
SERV TRUST,                   :
                              :
          Defendant.          :
------------------------------X
```

Rockville, Maryland

September 23, 2019

WHEREUPON, the proceedings in the above-entitled matter commenced

BEFORE:    THE HONORABLE DEBRA L. DWYER, JUDGE

APPEARANCES:

FOR THE PLAINTIFF:

MAURICE B. VERSTANDIG, Esq.
The Verstandig Law Firm, LLC
9812 Falls Road #114-1460
Rockville, Maryland 20854

FOR THE DEFENDANT:

DOMINIC J. SOUZA, Esq.
Souza, LLC
2543 Housley Road
Annapolis, Maryland 21401

Appx. 0160

I N D E X

Page

Judge's Ruling                                            10

Appx. 0161

4

P R O C E E D I N G S

THE BAILIFF:  All rise.  Circuit Court for Montgomery County is now in session.  The Honorable Debra Dwyer presiding.

THE COURT:  Good morning, everyone.  You can be seated.  Thank you so much.

All right.

FEMALE CLERK:  Calling civil case number 436977 --

THE COURT:  Now, wait a minute.  I want to call just a couple matters first.  I just have to put one thing on the record.  So I'm going to call these, the criminal cases.

THE CLERK:  Calling Civil Case No. 436977, Brian King, et al. versus Serv Trust, et al.

MR. VERSTANDIG:  Good morning, Your Honor.  Maurice Verstandig on behalf of Brian King, Cristina King, and the Christina and Brian King Children's Trust.

THE COURT:  All right, good morning.

MR. PELLETIER:  Good morning, Your Honor.  Eric Pelletier here on behalf of 6789 Goldsboro, LLC.

THE COURT:  Good morning.

MR. PELLETIER:  Good morning.

MR. MASTRO:  Good morning, Your Honor.  Frank Mastro on behalf of Roger Schlossberg, Chapter 7 bankruptcy trustee.

THE COURT:  Good morning.

MR. DUNBAR:  Good morning, Your Honor.  Justin Dunbar on behalf of Serv Trust.

Appx. 0162

5

MR. ANDRES:  Good morning, Your Honor.  Ben Andres on behalf of Mr. Myers.

THE COURT:  Okay.  Good morning, all of you.  Okay. You can all have a seat if you'd like.  So we're here on a couple of motions.  We have -- the first one is Docket Entry No. 131, which is 6789 Goldsboro, LLC's motion to compel and for sanctions against defendant Greg Myers for failing to appear at his deposition.  I think the parties have agreed in our conference call that this motion is now moot.  Is that right?

MR. PELLETIER:  Your Honor, Eric Pelletier for 6789. Just for the record, we withdrew that motion, so that is correct.

THE COURT:  So it is withdrawn?

MR. PELLETIER:  It is withdrawn.  We withdrew it thinking we were going to be in trial today.

THE COURT:  Okay, so that matter is resolved.  So now we'll move to Docket Entry 163, which is defendant Gregory Myers's amended motion to dismiss 6789 Goldsboro, LLC's amended complaint.  And at Docket Entry 185 is Goldsboro's response. So I have -- before we get started, I just want you to know, my clerk and I have read all the pleadings since we spoke.  We have them all here in front of me.

My clerk and I have talked about the issues.  He's prepared a memo for me.  So I think I'm very familiar with the

6

arguments that you've raised. So with that said, I'm happy to hear from you. Happy to hear any arguments that you want to highlight for me, any case law, but please know I have read everything. I have a nice chart here of all of the arguments, particularly when we get into the second motion at Docket Entry 164, which is a little more complex.

But with that said, I'm happy to hear from everyone. But please know I have read it all and I think I know what the issues are. So if you want to highlight anything or remind me of anything, I'm happy to hear from you. So with that said, Mr. Andres, this is Mr. Myers's motion to dismiss. So I'm happy to hear from you. And then I'm happy to hear from Mr. Pelletier and anyone else who would like to join in. So Mr. Andres?

MR. ANDRES: Your Honor, with respect to 6789 Goldsboro, LLC's complaint, we had -- Mr. Myers had raised two issues in the motion to dismiss. One of them involved the automatic stay of the bankruptcy court. Recently within the past two weeks, Mr. Myers has dismissed the Chapter 13 bankruptcy. So Mr. Myers does believe that that is moot, so we won't be pursuing that any further.

THE COURT: Okay, so the argument that you made, which was your initial argument, which I had kind of referred to as the stay argument, you believe is no longer applicable?

MR. ANDRES: That is correct. And I don't believe I.

have anything to add to what you've seen in the motion from the claim, so I don't think I would require any further time.

THE COURT: All right, so just for the record, in Docket Entry 163, which is Defendant Myers's amended motion to dismiss Goldsboro's amended complaint, there were two arguments raised in support of the motion to dismiss. The first was what I'm calling and my clerk and I are calling the stay argument. And that is that Myers was alleging that Goldsboro violated the stay that was put in place. Oh, go ahead.

MR. ANDRES: Mr. Myers wanted me to --

THE COURT: Is this Mr. Myers?

MR. ANDRES: This is Mr. Myers.

THE COURT: So Mr. Myers, do you want to speak to your counsel?

MR. ANDRES: He wants to come and sit here, though.

THE COURT: Sure, that would be great.

MR. ANDRES: But I just want to clarify that in terms of this case for right now, we don't believe that this would -- the stay would prevent that case from moving forward.

THE COURT: I understand.

MR. ANDRES: We don't have any argument with regard to any violation of that --

THE COURT: I understand. So the first argument that you raised was that Goldsboro violated the automatic stay that had been put in place and you articulated that argument very

clearly and your position now today that because the bankruptcy I think you said was denied -- is that right?

MR. ANDRES:  Voluntarily withdrawn.

THE COURT:  Okay, so it was voluntarily withdrawn. Therefore the arguments related to the stay, for purposes of Docket Entry 163 are -- you're not making those arguments, am I right?

MR. ANDRES:  That is correct.

THE COURT:  Okay, and so the second argument that you raised in Docket Entry 163 was Myers alleged that Goldsboro's complaint failed to state a claim for breach of contract. There really wasn't any argument elaborated there, but I think, what I got, the gist of Mr. Myers argument was that there was no contract because there was no meeting of the minds.  And so with that, I will turn to -- let's see here -- Mr. Pelletier.

MR. PELLETIER:  Thank you, Your Honor.

THE COURT:  So first the stay argument, I don't think I need to hear from you on that.  But if there's anything you'd like to say related to the accuracy of the claim, I'm happy to hear from you -- the breach of contract claim -- I'm happy to hear from you on that.

MR. PELLETIER:  I just want to make the record clear as to the first argument with respect to the stay.  From what I understood, Mr. Andres -- I think it's Andres -- he just got the case.  I'm not familiar -- is that --

Appx. 0166

MR. ANDRES: Yes.

MR. PELLETIER: That argument with respect to the stay and a stay violation -- they're not making it now, but they're not waiving it.

THE COURT: Yes.

MR. PELLETIER: Okay, as I understood the argument to be in any event was that what Mr. Myers had argued was that he had filed the case, that the discharge was denied back in September. He filed our amended complaint adding him and then. after that, he filed a second bankruptcy. Before we filed our amended complaint to add him, he filed a motion for reconsideration. I just want to note for the record that we cited cases that are on point that say a motion for reconsideration would not have stayed the case further. And the cases that he cited didn't have anything to do with it. So --

THE COURT: And I agree with that.

MR. PELLETIER: Good. I'm glad we agree. Thank you, Your Honor. Moving on, the next argument is whether we have a claim for breach of contract. You know, along with the amended complaint, we attach both the promissory note and the guarantee which are executed by Mr. Myers. I won't belabor the point, but breach of contract claims are one of the most simple claims to state, which we did. There was a contract, a contract for payment and guarantee. They were breached. No payments were

10

made.   That's the entire case we have here.   And that we stated a claim..

And so Mr. Myers made some argument that I'm not fully clear about.   You've tried to decipher it.   But outside the pleadings, it incorporates something from somewhere and tries to argue that we can state a claim.   But that would be a summary judgment issue.   And it wasn't set up correctly for summary judgment.   There were no supporting affidavits and so on.   So we would ask that his motion be denied in that regard.

THE COURT:   Okay.   Mr. Andres, did you want to respond?

MR. ANDRES:   Your Honor, I think Mr. Myers is -- again, Mr. Myers filed this motion pro se, so I would refer to Mr. Myers's motion that he had asked for the complaint attached, the motions that Mr. Myers's basically has put forward that the documents attached fail to evidence a contract and that the plaintiffs in this case should be held to relying on the documents that they produced.   And if the documents produced as Mr. Myers set forth in the motion fail to produce an actual contract, then they have not properly alleged a contract and their breach of contract claim should be dismissed.

JUDGE'S RULING

Okay.   So a couple of things.   I think what goes without saying is that Myers incorrectly relies on a document

Appx. 0168

outside the pleadings.  By attaching whatever it is he attached to that and asking the Court to look at that document, Goldsboro is saying and arguing that this motion to dismiss that Mr. Myers filed essentially becomes a motion for summary judgment.  Because in a motion to dismiss, the Court is not allowed to look outside the four corners of the charging document, but in a motion for summary judgment, we would be permitted to do so.

So by attaching the documents and asking the Court to look at them, Mr. Goldsboro is saying that Mr. Myers is actually asking for a motion for summary judgment.  So I think that's what your argument is, and I think that you're right, if that's what your argument is.  And it's not correct to look outside the documents.  Docket Entry 163 is Myers's motion to dismiss, and so the Court must look at the pleading and what is alleged in the pleading and must consider those facts pled as true and in the light most favorable to Goldsboro, the non-moving party.

And I think it's clear that in reading the complaint, it clearly states a breach of contract claim.  It states that there were two contracts that were breached.  There's a promissory note and a guarantee, and it states in two contracts there was a breach and there were damages.  And I think it clearly sets out that dispute of fact and I think it legally does so and sufficiently does so.

12

And so accordingly, as I said, I'm treating this as a motion to dismiss, because that's what it is entitled as. I think because of that, I will deny defendant -- Mr. Gregory's amended motion to dismiss at Docket Entry 163.

So we'll move to -- you did turn that heat down, didn't you? I don't know what happened. So we'll move to Docket Entry 164. Docket Entry 164 is again Mr. Myers's motion, and it is Mr. Myers's motion to dismiss the King parties' first amended complaint, and their complaint is for declaratory judgment. And the King party is represented by Mr. Verstandig. So Mr. Andres, I will hear from you.

There are a number of reasons and arguments raised in Docket Entry 163, and I just want to try and summarize them and then I'm going to try to focus you, Mr. Andres, on what I would like to hear from -- there are several arguments raised. First is that there's no actual controversy between the parties that would require a declaratory judgment.

The second argument is the stay argument that was raised in the motion to dismiss against Goldsboro, so I don't really think I need to hear anything related to the stay argument.

There's the third argument, which is an argument of insufficient process. Mr. Myers's alleges that the complaint that the King parties filed was improperly served. And Mr. Myers argues he was not served with a summons.

The fourth argument is that the Court has no personal jurisdiction over Mr. Myers because he doesn't have continuous and systemic contacts with Maryland. I'll hear from you. If you want to touch base on that argument with anything -- I know you didn't elaborate on it in your motion. I don't know that I really need to hear from you, but I will if you'd like to say something on it for the record.

The fifth argument is the argument I'd like to hear from you on, Mr. Andres. Mr. Myers argues the Court lacks subject matter jurisdiction because the King parties didn't have standing to bring this suit. And this is what I have referred to -- my clerk and I have referred to as this alter ego argument. Apparently the bankruptcy court said we're not going to rule on the alter ego issue. Let the Circuit Court -- and that would be me -- rule on that.

So I do obviously want to hear from the parties on that argument and well get back to that.

The sixth argument is Mr. Myers says that the King party complaint fails to state a claim for declaratory judgment because there's no claim or controversy for the Court to decide. There's no claim against -- the Myers alleged that they haven't alleged any liability or any fraud or any harm. So there's no claim or controversy for this Court to decide. There's no claim against the Myers's alleged, that they haven't alleged any liability, any fraud or any harm. So there's no

14

claim or controversy for this Court to decide.  I'll hear from you on that if you'd like to put anything on the record on that argument.

The next argument is that the operating agreement prevents Serv Trust from transferring its interest to Myers. I'm happy to hear from you on that.  The next argument is this judicial estoppel argument that Myers says the Kings' complaint is barred by judicial estoppel.  I'm not so sure that's going to persuade me, but I'm happy to hear from you on that.

The next argument Mr. Myers raises is one called the doctrine of waiver.  He alleges that the Kings' complaint is barred by the doctrine of waiver.

The next argument is that the Kings' complaint against Myers is barred by collateral estoppel and res judicata.  Again, I'm not sure that I'm persuaded by the arguments I've read in your pleadings, but I'm happy to hear from you.

The next argument that Mr. Myers raises is that the complaint is barred by the statute of limitations.  Mr. Myers argues that the three year statute of limitations has run because the plaintiffs had knowledge of the cause of action beyond this period.  I'm not sure and persuaded on that argument.  Mr. Myers does not really elaborate on that argument in his pleadings.  So I'm not really sure.  But I'm happy to hear from you, Mr. Andres, on that.

15

So with that said, I'm not going to limit your argument.  We have all morning.  I think there are 11 different arguments that you've raised.  But again, I really would like you to focus your arguments on this alter ego argument.  I'd like to hear from you as to why the Myers argument on this alter ego theory fails, is not supported by law.

MR. ANDRES:  Thank you, Your Honor.

THE COURT:  Or not the Myers argument -- yes, the Myers argument.  Sorry.

MR. ANDRES:  Thank you, Your Honor.  I would address a couple of those first issues.  Similar to the Goldsboro complaint, Mr. Myers does not waive any argument that the plaintiffs in this case violated the automatic stay by bringing the actions.  But we won't be -- we will waiving that argument for purposes of this proceeding.  Similarly, I don't -- Mr. Myers and I do not withdraw any of the deficiencies that we have alleged in the service of process made upon Mr. Myers, but at this point, Mr. Myers is here and we believe that that issue would be moot.  Mr. Myers will waive or withdraw any objection to personal jurisdiction that this Court would have over him at this time.

With that said, I will move on.  I believe that Your Honor is correct that there are two issues here that are particularly problematic with the Kings' complaint, and that is the substance of the alter ego allegation and the standing that

Appx. 0173

the King parties have to bring that.

First is that by -- I will address the standing of the King parties first, Your Honor, and that is as an operation of federal law, the claims that would allow such an alter ego claim to bring against a bankruptcy debtor -- and this is well established -- belong solely to the trustee.  And this includes claims that could be brought by the creditor -- or by the debtor himself in an action to recover money for the estate or claims that would be brought against -- by a creditor to bring that into the estate.  And Your Honor, I'm sure you've seen the cases cited in the briefing, but I'm happy to --

THE COURT:  Go ahead.

MR. ANDRES: I would specifically refer to Wilson v. Dollar General Corp., 717 F. 3d 337 and In Re: Charles Edwards Enterprises, Inc. at 344 B.R. 788.  And these cases and many others are very clear that a claim such as an alter ego claim are the exclusive property of the bankruptcy trustee and can only be pursued by that trustee in a bankruptcy proceeding unless there is a specific judicial determination that it may be pursued elsewhere.  A planning of abstention that the bankruptcy court does not want to hear the alter ego claim is not a judicial determination that other creditors are entitled to bring a claim that belongs only to the trustee.

Furthermore, even if the trustee, who is Mr. Schlossberg in the bankruptcy case, had filed the complaint,

that would have been disallowed because there is also a law that they are separate from the Maryland statute of limitations on any claim.  There is a limitation when a trustee may bring claims, such as an alter ego claim, against the debtor.  And that is limited to within a year of his appointment of trustee in this case.

Of course, Your Honor, this does not concede any claim actually exists, but even the authority to allege a claim would only exist with the trustee and only within the time period which I believe based on the filing in this case would have expired in February of 2018.  So there is no authority for the King parties in particular or even the trustee at this time to have brought the allegations in the second amended -- or on the first amended complaint.  Excuse me.

THE COURT:  All right.

MR. ANDRES:  Furthermore, even if they were allowed to bring the claim in that regard, the claim for an alter ego theory simply does not state a claim for which this Court can grant any relief.  There is -- I mean, it is a matter of constitutional law that a claim must require an actual wrong and an actual controversy.  The allegations of the King parties are against Serv Trust.  There is no allegation that by use of this alleged alter ego that additional harm has been done to them.

The granting of this declaratory judgment would not

18

resolve any controversy. The alleged debts are all presented in the complaint against Serv Trust or in the other case that has been consolidated, 6789 Goldsboro's complaint against both Serv Trust and Mr. Myers, which is, irrespective of an alter ego theory, that's based on a promissory note and a personal guarantee. There would be no change to any of the judiciable issues that are present in the pending litigation between the parties, even if this Court were to grant or agree that there has been an alter ego use of the trust.

So therefore, there is no actual controversy and the declaratory judgment is a nullity. It is not asking for any proper relief. The King parties don't have standing to bring it. I think the -- I think the impact of this is pretty clear. If you look at -- and I'm sure you have as well, but in the relevant cases cited in our motion, and in the response motions, there are many cases that have been brought where a creditor has brought an alter ego action against an individual who has been trying to use a trust or a corporation as a means of shielding money from creditors.

And one common thread in all of these is that it is the debtor -- the corporation -- and they bring an alter ego theory to try to access the funds of the individual who is not in bankruptcy, because the actual debtor, the nominal debtor is bankrupt, and they can't access the funds.

So here, we flip that on its head, and Mr. Myers is

Appx. 0176

19

the one in bankruptcy.  The debtor, there has been no allegation that Serv Trust, if it is in fact a debtor, if they were to prevail on their original claims, would be the one that owes money.  The would be in a better position to collect money from Serv Trust if they did not bring the alter ego theory.  The only reason that they would have brought an alter ego theory is because they expect to have a deal worked out with the trustee in order to access these funds by settling the case, right, Mr. Myers or Serv Trust being able to present their own defenses, because they expect that the bankruptcy trustee would be presenting a more favorable settlement offer to them.

There would be no other basis for bringing a claim in this way, because they would be in effect compromising their position by throwing themselves in with Mr. Myers's other creditors rather than existing as they are now, the only potential creditor of Serv Trust.  So therefore, there is no actual relief that they would gain that this Court could grant them in the alter ego theory.  So Count 2 of the first amended complaint must be dismissed, because it fails to state a claim. Brief indulgence, Your Honor.

THE COURT:  Okay, than you.  Is there anything else you want to tell me about any of your remaining arguments?

MR. ANDRES:  Brief indulgence, Your Honor?

THE COURT:  Sure.

MR. ANDRES:  Your Honor, there are, as you alluded to, there are several other arguments that Mr. Myers raised in his proceeding.  And I'd be happy to address those later, but I think it might be more helpful for us to allow Mr. Verstandig to respond at this point.

THE COURT:  Okay.  All right. That's fine.  All right, so who would like to -- Mr. Verstandig, you'd like to probably be heard from?

MR. VERSTANDIG:  Yes, Your Honor.

THE COURT:  Would anyone else like to be heard from on this argument?

MR. VERSTANDIG: Your Honor, I think depending or the sufficiency or lack thereof of my comments, Mr. Mastro, who represents the bankruptcy trustee -- might be more eloquent than myself or he might be less eloquent than myself.

THE COURT:  All right, that's fine.  So I'll hear from you first then, Mr. Verstandig.

MR. VERSTANDIG:  Thank you, Your Honor.  Maurice Verstandig, again on behalf of the King parties.  Let me say at the outset, there's a bit of an oddity to this motion.  We joined Mr. Myers as a "necessary party" because we're seeking declaratory judgment and Serv Trust is an alter ego.  Serv Trust moved to dismiss the claim that was denied by Judge Burrell.  Serv Trust moved for summary judgment and was denied by Judge Burrell.  Serv Trust filed an answer on our alter ago

claim against Serv Trust.

If Mr. Myers doesn't wish to be present to contribute evidence or testimony or whatever it may be towards adjudication of this matter, we have no objection to him being let out of the case. He is here solely as a necessary party. And they are very much accurate when they say we are not asserting -- meaning my client -- I don't speak for Mr. Pelletier -- we are not asserting a monetary claim against them.

Maryland has a compulsory joinder rule. Under that rule, I had to join Mr. Schlossberg, which is why Mr. Mastro is here. And I had to join Mr. Myers, which is why they are here. But Maryland case law is also pretty clear that if you have knowledge of a case, the joinder rule you sort of kind of follow, then you choose not to participate, judgment is still binding.

I don't mean this in a smart-alecky way, and I don't mean to say I stand up and concede the motion or anything like that. But we're going forward on this claim one way or another. It strikes me as very strange that Mr. Myers would not want to avail himself of the opportunity to participate at trial. I certainly believe we were successful there as well.

As an initial matter -- and it sounds like you are better prepared than almost any other judge I've been in front of in a while, I brought a copy --

THE COURT:  That's a compliment to you, Andrew.

MR. VERSTANDIG:  I brought a copy of the extension order.  I also brought a copy of the bankruptcy court's order clarifying the applicability of the automatic stay, which I think is relevant because it sort of anticipates that this Honorable Court will make a ruling.  May I approach?  This is the order clarifying my statement -- the last paragraph I'll point to, that's the one.  I have copies for any lawyer or want or needs it.

MR. MASTRO:  If you've got a copy, I'll take it.  Thank you.

THE COURT:  Can I keep this?  Is this for me?

MR. VERSTANDIG:  Absolutely.  It's all yours.  Your Honor, my clients are being sued by Serv Trust for myriad claims that are not the subject of today's motions, but that are part of this case.  My clients are being sued for breach of fiduciary duty, breach of contract, constructive fraud and so on and so forth.

Our position, very simply, is that Serv Trust cannot sue us for these things, because it does not own any litigation rights to such claims to the extent they exist at all.  And the reason is litigation rights are an asset.  In the bankruptcy world, litigation rights are frequently purchased.  Litigation rights are frequently settled.  They are viewed as an asset of the debtor to the point that there's a place on a debtor's

23

schedule to list litigation rights.

If Serv Trust is Mr. Myers's alter ago as we allege -- and I believe we have adequately endeavors and activities that suggest it is his alter ago, then any litigation rights belonging to Serv Trust really belong to Mr. Myers and the moment Mr. Myers filed bankruptcy, those inure to the benefit of Mr. Schlossberg. So I'm saying that Serv Trust, Mr. Myers, and the collection of attorneys on the other side of this courtroom, much as we may respect them, have no right to bring these causes of action against my clients.

Rather, the only party capable of bringing these causes of action against my clients is Mr. Schlossberg, who is represented by counsel here today. And the bankruptcy court is well aware of this. That's why I passed up the two orders. We didn't want to go rogue on the bankruptcy court.

In terms of what is there that is a justiciable controversy, that is it. We have alleged that they don't have standing to be sniping at us for lack of a more eloquent term. And that in reality, the claims they endeavor to adjudicate in this court belong to the bankruptcy trustee which creates two parallel problems.

One, we're being chased by someone who has no right to chase us. But two, to whatever extent those claims have merit -- and I would urge on the record they have no merit -- chasing them in this court without the bankruptcy trustee

24

prosecuting them actually damages the assets of Mr. Myers's bankruptcy estate. That is why the alter ego claim is relevant and material. If these claims -- strike that.

If Serv Trust is Mr. Myers's alter ego, these claims belong to his bankruptcy estate, not to Serv Trust. And we ought not be here. One of the more interesting things about the motion to clarify the applicability on that is the instruction from the judge in the last paragraph. In the event the Circuit Court for Montgomery County, Maryland determines that Serv Trust is the debtor's alter ego, then the automatic stay provided by Section 362 of Title XI in the United States Code shall immediately apply to Serv Trust, and any further proceedings against Serv Trust in the matters filed at King, et al v. Serv Trust, et al, Case No. 436977V in the Circuit Court for Montgomery County shall be stayed pending further order of this Court.

These are assets of the bankruptcy court. They need to be adjudicated and liquidated in the bankruptcy court, both from a federal venue point of view, a jurisdictional point of view, and an equitable point of view.

So we seek that determination. I believe that is more than a justiciable controversy in the fact there's a federal court I believe politely inappropriately nudging this Honorable Court to make that determination weighs heavily in favor of them. Ultimately, Mr. Mastro will support that the

trustee would certainly have an interest in these claims.

There was a reference towards the end of Mr. Andres's argument, which I think has appeared at least one before, or there is argument in papers that we have some underhanded deal with the trustee to settle these claims. Let me be very clear. We have entered into no agreements with the trustee to resolve these claims. If they become an asset of the bankruptcy court, will I call Mr. Mastro the next morning and tried to settle these claims? Absolutely. I'd be negligent not to.

There is no agreement in place. It's not there. There's also a reference in one of the footnotes to this motion that my client is paying Mr. Mastro's attorney's fees. That would come as a surprise to me and give me disclosure as requisite of a bankruptcy trustee and his counsel, and that would come as a surprise to the bankruptcy court. There's no reason to credit that.

There is case law that establishes that bankruptcy courts take note of where there's an alter ego. I don't think that was really raised today or issued today. And I'm not too worried about that. I do want to say in terms of the limitations argument that sort of suggested the two years, that's for an avoidance action.

THE COURT:  That's what?

MR. VERSTANDIG:  That's for an avoidance action. That's where you're trying to unwind a conveyance of assets on

26

the eve of bankruptcy to a third party. We're not suggesting a fraudulent conveyance. We're suggesting an alter ego. Mr. Myers used this trust as his personal bailiwick.

THE COURT: So I guess I just -- a lot of what you say make sense. But how do I -- how do I not take into consider what Mr. Andres argued, because the alter ego claims -- and I think the case law on this is really clear. So tell me what I'm missing. Alter ego claims belong to the trustee.

MR. VERSTANDIG: Yes. The trustee has asked us to pursue such matters in this case and the bankruptcy court has been very clear in suggesting through its order of extension that the State court litigation was ongoing and judicial economy favors a resolution as part of this case. If you prevail, my clients do not have the right to start seizing Mr. Myer's assets. I think that's the critical distinction. My clients can't go out and ask the sheriff to levy upon Serv Trust's lawn mower. I don't think Serv Trust actually owns a lawn mower, but for these purposes -- my clients get no monetary benefit out of this. The benefit of the claim goes to the bankruptcy trustee and then derivatively to the creditors in Mr. Myers's bankruptcy estate.

Once it's established that Serv Trust is its alter ego, if there's going to be a marshaling of Serv Trust's assets, it certainly falls on Mr. Schlossberg in the bankruptcy court to take the discovery requisite to determine what those

Appx. 0184

assets are, to levy upon them, to seize upon them, to liquidate them, and to proceed accordingly. My client would have no standing to do that. And candidly, my client had no interest in doing that, because my client is not a creditor of the bankruptcy estate.

So we're not trying to pierce a veil for purposes of recovering a monetary judgment. And I think that's the distinction with much of the case law that's been referenced herein. We're saying that because of an alter ego construct, the party coming at us -- and for want of a more eloquent term -- lacks standard to do so -- and we've got a bankruptcy court and a bankruptcy trust cognizable or making these claims, and the trustee seems to be supportive of our making these claims. I don't mean to suggest the bankruptcy court takes an interest one way or another. And these are things that have to be determined.

If not, it would create a terrifically inequitable situation because if my clients and I prevail at trial, and it turns out that there was some merit to the claims, which again, there was not, we would have defeated an asset of the bankruptcy estate. Similarly, if Serv Trust were to prevail at trial and seize money from my clients upon its affirmative claims, it would be taking money that belongs to Mr. Schlossberg in his official capacity. So that's the distinction I would urge. The fact is that we're not seeking

28

money.  We're not trying to recover on a judgment.  And I think that's what distinguishes us from existing case law and that also explains the orders from the bankruptcy court and this somewhat unique posture of this case.

Your Honor, perhaps I've rambled too long and Mr. Mastro might be more eloquent than myself on some of the bankruptcy points.

THE COURT:  Okay, I'm happy to hear from him.

MR. VERSTANDIG:  And as with Mr. Andres, I'd rest on my papers for the other arguments.

THE COURT:  Okay.

MR. VERSTANDIG:  I don't mean to suggest anything else.

THE COURT:  Okay.  Thank you.  So Mr. Mastro -- is it Mastro?

MR. MASTRO:  Mastro.  Yes.

MR. ANDRES:  If I may?  Did you file any motions based on -- in this --

MR. MASTRO:  I have not filed any motions.  The bankruptcy trustee is not a party to these pending motions. The bankruptcy trustee has been added as a nominal defendant in these cases as Mr. Verstandig has described.  And really, I think the purpose of me standing here is not necessarily to argue one side or another, but to just advise the Court that, you know, in bankruptcy cases, it's not uncommon for --

trustees have very limited resources to pursue all these actions.

So many times, a creditor will pursue an action. And the creditor in this case has been authorized by the trustee to do that. I believe this has all been disclosed and filed with the bankruptcy court. So had I known this was going to come up today, I would have, you know, brought that stuff. But to the extent that there's any argument that this is being pursued without the knowledge of the trustee or without the trustee's consent, I can tell you that that's not the case. And you know, I'm happy to answer any other questions. I think Mr. Verstandig stated correctly, about 546, that that limitation only refers to the trustee's avoidance powers.

A bankruptcy court would not be an avoidance action. It would simply be classified as an adversary case to determine whether or not this is an asset of the bankruptcy estate or not. And that's how it started in the bankruptcy court, and then Judge Lipp decided to abstain and said alter ego is really a state law determination, Montgomery County should do that. And that's my understanding of how we got here. And I'm happy to answer any questions the best I can, Your Honor.

THE COURT: And I'm going to ask you the same question I asked of Mr. Andres -- Mr. Verstandig suggests -- and again, I hadn't read this order upon motion to clarify acceptability of automatic stay until this morning. Mr.

Verstandig suggests that the last paragraph is the bankruptcy court --

MR. MASTRO:  Judge Lipp, Your Honor.

THE COURT:  Okay -- is sort of nudging me, the Circuit Court for Montgomery County, to determine that Serv Trust is Myers's alter ego.  Do you agree with that?

MR. MASTRO:  Well, the way I read it, Your Honor, I mean, I don't know that the bankruptcy court is telling you to rule one way or the other.  I think what the bankruptcy court is saying is that upon a ruling, if that ruling is in favor of Mr. Verstandig's client, then at that very moment, the automatic stay would attach.

THE COURT:  Yes, right.

MR. MASTRO:  Because then Serv Trust becomes an asset of the bankruptcy estate.

THE COURT:  Right. Serv Trust becomes an asset at that point.

MR. MASTRO:  Correct.  Correct.

THE COURT:  All right.  Okay.  I appreciate your comments.

MR. MASTRO:  You're welcome, Your Honor.  If you need anything else, I'm here.

THE COURT:  Okay, so hang on one second while I take a note here, Mr. Andres.  So, Mr. Andres, tell me why Mr. Verstandig is wrong.  Tell me why his interpretation -- you

31

know, the federal law that you cited, the Wilson case an others, you said it's just obvious, Judge, it's as obvious that can be that the claim for -- these alter ego claims, this alter ego theory can only be pursued by the trustee.  It only belongs to the trustee.  Alter ego claims -- and I wrote this -- I think this was your language -- are exclusive property of the trustee.  So tell me why what Mr. Verstandig said is not persuasive, should not be persuasive to me?

MR. ANDRES:  Well, Your Honor, I don't believe that Mr. Verstandig addressed the issue that the trustee must be the one to bring the claim.  And they have brought Mr. Mastro here and they have put forward that nothing is being done without the trustee's knowledge.  And Mr. Schlossberg is aware of these claims.  That is not what the bankruptcy law and the case law requires.  There has to be -- in order for a derivative standing to exist for a creditor, that has to be a judicial determination that is given to the creditor.

THE COURT:  Well, Mr. Verstandig said that the trustee has asked the plaintiff to pursue these claims.

MR. ANDRES:  The trustee -- while on one hand he denies any, you know, deals and communications he has, and on · the other he says that he has gotten the blessing of the trustee, but that is not reflected in any orders or hearings -- or proceedings in the bankruptcy court, where the trustee would give a notice of standing.  There would be an opportunity to

Appx. 0189

object and the Court could then enter an order granting derivative standing.

THE COURT: Okay.

MR. ANDRES: The orders that Mr. Verstandig presented don't do that. They are simply -- one is simply a note that the bankruptcy court is not going to hear the issue. And I think even if Mr. Mastro were correct, there was no indication one way or another in that bankruptcy court's order. There is nothing saying Judge Dwyer, please grant this, this is what you should do. But simply saying, I don't want to hear it, if the Circuit Court does something, then something can happen here. But that is not an affirmative grant of derivative standing, which is what is required by the bankruptcy code and the case law.

Further, to the extent that the motion to clarify the applicability of automatic stay was entered in -- that was entered in Case 19-17428, that is the case that has been dismissed. I have a copy of the order dismissing that. I can show you that if you would like to see that.

MR. VERSTANDIG: I don't know what it is. I'm sorry.

MR. ANDRES: It is the order showing that that case was dismissed. Again, I don't think that that order actually portends anything as that simply stated that the bankruptcy court is not objecting to the stay and if the case is dismissed, then certainly there would be no stay from that

case.   As you can see from the other order that Mr. Verstandig presented, there is still bankruptcy proceeding and Mr. Myers is still a bankruptcy debtor.   Any claims in that action still belong solely to the trustee unless there is an affirmative judicial determination that derivative standing exists for someone else, for a creditor to bring that claim.

And I have more cases, but I think from the memos and all the case law stated, I think Your Honor can see -- I disagree that I just went with the interpretation that 546 doesn't present at any adversary proceeding, including this claim for an alter ego theory, which would -- it has the same effect that they are attempting to bring money that was allegedly fraudulently removed from the bankruptcy debtor's estate back into the estate and that such an action would be in the domain of the trustee and therefore governed by the statute of limitations of a trustee bringing those claims, which has long since expired.

And I think -- I just want to make sure that Your Honor keeps it clear that there are really two standing issues. The first is the grant of authority for this matter to be heard or brought by any creditor rather than only by the trustee in the bankruptcy court.   The other is -- and this might go more to Mr. Verstandig's first point that although Serv Trust has already filed a motion that was denied, Mr. Myers has filed a motion to dismiss and Mr. Myers, if successful, it's not an

34

allegation that Mr. Myers should be dismissed as a defendant.

But this is an allegation that Count 2 of the first amended complaint, the claim for declaratory judgment, should be dismissed.  The fact that Judge Burrell previously denied other motions does not prevent you from issuing, if you are persuaded by the arguments put forward by Mr. Myers, that the Count 2 of the first amended complaint is without merit, you are certainly free to do that with regard to some prior ruling by Judge Burrell in this case.

THE COURT:  So let me ask you about that.  Clearly this argument was not raised in front of Judge Burrell, correct?

MR. VERSTANDIG:  It was.

THE COURT:  It was?

MR. ANDRES:  It was not.

MR. VERSTANDIG:  I want to be clear -- not every nuance, or that I would suggest that every citation was in there necessarily.  But yes, I stood up and defended the argument that alter ego liability is not a thing that ought to happen.

THE COURT:  Is not what?

MR. VERSTANDIG:  Is not a thing that ought to be found in the prism of this case.  Again, many specifics were different and it would be disingenuous for me to say it was absolutely identical.  But no, I defended it in front of Judge

Burrell, that the alter ego claim does not state a colorable claim for similar reasons and may not proceed for similar reasons. And we were fortunate to prevail in front of Judge Burrell. Which is why I believe we're going forward against Serv Trust one way or another.

THE COURT: And that was in the -- the motion you made in front of Judge Burrell was what?

MR. VERSTANDIG: I didn't -- I was defending their motion to dismiss and the motion for summary judgment.

THE COURT: And your client Serv Pro?

MR. VERSTANDING: No, I represent the King parties. Serv Trust --

THE COURT: So why were you -- Serv Pro was the subject of the motion to dismiss.

MR. VERSTANDIG: Yes, Your Honor. My clients are the ones that are seeking the declaratory judgment that Serv Trust is the debtor's alter ego. So Serv Trust brought a motion to dismiss my client's claim and a motion for summary judgment on my client's claim.

THE COURT: Okay.

MR. VERSTANDING: And I was fortunate to defend those tangential -- counsel pointed out to me, there was an application for derivative standing that underlies the order of abstention. It's referenced on page 2 of the order of abstention towards the bottom.

36

THE COURT:  Okay.  So what else --

MR. MASTRO:  Your Honor, if I may?  I was not in the case at the time that the Serv Trust motion was argued.  But I do have a copy of the motion that Serv trust filed and that was ruled on by Judge Burrell and it raises one of these issues. It raises the issue of whether a proper claim under the Declaratory Judgment Act was stated by Count 2.  There was no allegations in the -- that I see in the motion by Serv Trust that the bankruptcy court retained its jurisdiction on the trustee and not a creditor has standing.  So I don't believe that that issue was actually considered by Judge Burrell in her ruling.

Furthermore, and I remind you that regardless of what Judge Burrell decided, under Electric General Corporation v. Lebance (phonetic sp.), one judge of a trial court ruling on a matter is not bound by a prior ruling in the same case by another judge.

THE COURT:  I understand.  And understand.  I just was curious as to how she ruled.  So I guess going back to the whole Serv Trust thing in front of Judge Burrell, and maybe not going back to that, but would Serv Trust have standing -- an I guess this question is for you, Mr. Verstandig -- if Serv Trust would have standing because the litigation rights belong to the trustee, does that question make sense to you?

MR. VERSTANDING:  I think you mentioned the King

Appx. 0194

parties have standing.  Serv Trust is the alleged alter ego.

THE COURT:  Right.  Okay, so well, I guess I meant to ask Mr. Andres the question, not you.  So I mean, if Serv Trust would have standing because the litigation rights would belong to the trustee --

MR. VERSTANDIG:  I'm not sure I understand your question, Your Honor.

THE COURT:  Yes, I don't think I understand it either.  Okay --

MR. ANDRES:  Your Honor, I think I can clarify the answer to that on two fronts.  If we're correct that the litigation rights belong to the trustee, Serv Trust has no standing to bring the claims in this Court.

MR. DUNBAR:  Your Honor, that's an issue that's an issue for trial.

THE COURT:  All right --

MR. ANDRES:  I agree, whether we're correct is a triable fact.

MR. DUNBAR:  That's all.

MR. ANDRES:  I am not asking you to make an alter ego finding today, Your Honor.

THE COURT:  Okay, so what did you just say again? And you were sort of interrupted there by Mr. Dunbar.  Tell me again what you just said -- Myer -- if you're correct --

MR. ANDRES:  If the King parties are correct that the

litigation rights belong to the trustee, Serv Trust does not have standing to bring them in this case. Period. Hard stop. They are counter claims, and that is why the alter ego issue has to be adjudicated, because Serv Trust is positing them as counter claims.

THE COURT: So if King is correct that the litigation rights belong to the trustee -- all right --

MR. ANDRES: Yes?

THE COURT: Then Serv Trust, you agree, has no standing. Is that what you said?

MR. ANDRES: That's our position, absolutely. If they belong to the trustee, Serv Trust cannot -- because Serv Trust is the debtor's alter ego -- if that is true, Serv Trust is the debtor's alter ego. The debtor can't pursue claims against the debtor himself. That would be backhanded and create vast chaos. And that's why we seek this determination, because it goes to whether or not their counter claims can even be heard in this case. Only because I repeatedly nudged -- and I think there's importance -- I don't mean to go back to this -- the trustee expressly and enthusiastically consents to derivative standing and the bankruptcy court was aware of that, et. cetera, when it was ordered that this matter be heard in this court.

But Your Honor, if my client is correct, Serv Trust's counter claims don't exist in this court. It's not just that

they can't pursue them.  No offense to Your Honor, but you don't have jurisdiction to hear them, because they're an asset of the bankruptcy estate under 28 U.S.C. 157.  Don't hold me to that.  It's a court proceeding that can only be administered in a federal court.  Liquidation of the bankruptcy estate's assets including litigation rights is the province of the bankruptcy court and the province of the trustee.  Serv Trust can't do that in this court.

THE COURT:  All right, what else do you want me to hear from you?  Anything else on this issue?  Alter ego?  Anybody else want to say anything on the alter ego issue?  I'll come back to you.  Anybody else?

MR. VERSTANDING:  We'll submit on papers.

THE COURT:  All right, Mr. Andres?  Oh, I'm sorry, did you --

MR. ANDRES:  Just a couple of clarifications I think, Your Honor.  First, the order that they're referring to that they passed up where it says an attached e-mail shows that the trustee expressly consents.  That expressly consents to Goldsboro pursuing the complaint.  There's not even an allegation that --

THE COURT:  Where are we?

MR. ANDRES:  Bottom of page 2 of the order of abstention.

THE COURT:  Yes, I don't see it there.  Can you be

more specific?  Where at the bottom?

MR. ANDRES:  The last two sentences.

THE COURT:  Okay, on December 14 -- right?

MR. ANDRES:  Right.  December 14, 2018, plaintiff filed a motion for derivative standing to pursue the complaint to which an attached e-mail indicates that the trustee expressed a consent to go over pursuing the complaint.

MR. ANDRES:  Right.  And that is to Goldsboro pursing in its position of the plaintiffs, Goldsboro and the King parties are not the same.  So that would have no bearing on the King parties bringing this complaint.

THE COURT:  All right.

MR. ANDRES:  Second, there is a statement in here that there was a motion for derivative standing filed but there is I think no order granting a motion for derivative standing, or plaintiffs would certainly have presented that if the bankruptcy court had so ruled.

THE COURT:  All right.

MR. ANDRES:  So simply filing a motion doesn't entitle someone to relief.

THE COURT:  All right.

MR. ANDRES:  Furthermore in regards to Mr. Verstandig's argument as to if they are successful, there is no standing -- that is only partially correct.  That is not -- that does not mean if they are successful there is no claim

against the King parties.  It means someone else would be responsible and have the decision-making authority to pursue that claim.

This is not the purpose of the Declaratory Judgment Action.  It is supposed to -- it would be to resolve a judiciable claim.  That is not what would happen here.  This would simply give the King parties a more favorable opposing party to· deal with.  It would not resolve an issue.  Whether or not it is heard in this Court -- and I would suggest that it's not a court proceeding and if they are permitted to come from the bankruptcy court to pursue this claim here, then there is no reason the same claims could not also be granted by the bankruptcy court to allow that secondary proceeding to also occur here.

So it does not resolve the claims against the King parties, it simply gives them a more favorable opposing party.  And finally, this is all moot because the claims only belong to the trustee.  The trustee must be the one to bring the claim.  And even· if the trustee had -- even if the trustee were properly a party bringing the claim here, he cannot do so because it is past the statute of limitations.  He has passed his opportunity to bring such a claim against Myers to try to bring the Serv Trust property into the bankruptcy estate and adjudicate it in that fashion.

THE COURT:  All right, so let me just go back and I'm

42

going to try -- maybe I'm not understanding, but Mr. Verstandig, just tell me in the most simple language you can find why isn't Mr. Anders right in that his last few arguments from way back in the very beginning. Why isn't the trustee the only one that can bring the claim? Why? Tell me why in two sentences.

MR. VERSTANDIG: Because we're not seeking money.

THE COURT: You're seeking to have Mr. Myers declared the alter ego of Serv Trust. Why isn't that relief only allowed to the trustee?

MR. VERSTANDIG: Two reasons. One, because it is raised in a counter claim, we are defending their standing. We are arguing their lack of standing to bring the counter claim. Let me give an analogy on that. Let's suppose that we sued them for assault and there's no assault claim in this case. And let's suppose they counter claimed for breach of a promissory note. And on the back of the promissory note, there was an endorsement from them to some third party.

We would have every right to seek a declaration in this court that they don't have the right to enforce that promissory note. It's been endorsed over to a third party. It belongs to the third party. And then we would probably go out, we'd get the third party, we'd tell the third party come join us in this court as an interested party because hey, we might owe money under a promissory note. We deny it. But if we

Appx. 0200

don't owe money to the third party, we certainly don't want to pay a promissory note twice.

THE COURT:  Yes.

MR. VERSTANDIG:  I also cannot stress enough the trustee's consent, the bankruptcy court's acknowledgment of the trustee's consent to derivative standing, and the bankruptcy court's decision to -- I don't want to say direct this court, because that's a misstatement, but to make very clear that it understands this matter is being adjudicated in this court and it seems knowledgeable to posture.

I mean, trustee's consent has been reiterated on the record today.  But because it's a counter claim and thus something we have to deal with here, we're allowed to stand up and say, whoa, we don't want to pay an assigned promissory note twice, and we certainly don't want to be sued by someone who doesn't have standing to enforce an assigned promissory note. And that's basically what we're doing.

If the judge's ruling that the trustee, in lieu of being a nominal defendant must be a nominal plaintiff, I'd have to have a conversation with the trustee and I can't speak for them, but I'd imagine we'd simply ask you to recapture the case.  I mean, they're here, the bankruptcy court knows they're here.  This matter is being pursued and the trustee is exceedingly interested.

THE COURT:  All right.  Second prong of Mr. Andres's

argument, the statute of limitations argument.  Why is he wrong?

MR. VERSTANDIG:  For two reasons.  One, this isn't a fraudulent conveyance case.  Two year limitations under 546 and 548 of the bankruptcy code says that -- and I'm using a hypothetical that has nothing to do with this case.  John Doe knows he's going to go into bankruptcy.  Three months before he files his bankruptcy petition, he writes his oldest son a check for $7 million and says son, take this money and use it well.  And by the way, buy me dinner when I get old.  The bankruptcy court has got two years to reach back and pull that money aside.

Contrast -- six months before John Doe files bankruptcy, John Doe takes $7 million and puts it in a bank account that he doesn't tell anyone about.  When he files his bankruptcy petition, eh doesn't list that bank account on the schedules.  The trustee finds out four years later that John Doe concealed that bank account and it should have been an asset of the estate all along.  Two years limitation doesn't apply.  It's not a fraudulent conveyance it is a failure to list an asset of the estate, and a judicial determination of what the assets of the estate are.  If Serv Trust is his alter ego, we're not clawing back their property.  We're saying your property has been his property at all times relevant.

THE COURT:  Okay.  All right, Mr. Andres, I'm going

to give you the last word.  It's your motion.

MR. ANDRES:  Thank you, Your Honor.  Your Honor, I think first that the idea that the trustee would now enthusiastically join as a nominal plaintiff, I'd like to point out that the trustee has stated in the bankruptcy that he is not pursuing any further actions against Mr. Myers's bankruptcy estate.  Even as late as last week when we were confirming the claims and issues with Your Honor, Mr. Mastro, for Mr. Schlossberg, stated that Mr. Schlossberg is not pursing anything in this case.  He is not pursuing an action.  This is entirely a fabrication by the King parties in order to not achieve a resolution which you undermined the authority of the correct parties to facilitate this trial of these issues.

There is no -- I mean, Mr. Verstandig's hypotheticals are irrelevant.  There's no situation here where the King parties will have to pay twice on a promissory note if subsequently there is a bankruptcy situation.  If Serv Trust receives assets and the trustee had the authority to re-start a claim against the Myers bankruptcy or from the Myers bankruptcy estate against Serv Trust and bring those assets into the case, anything that the King parties had paid to Serv Trust would simply be brought into Mr. Myers.

There's no new case that would be coming against the King parties.  That is simply fanciful and an attempt to -- I actually have no idea what the point of that is, because there

is no chance of that happening.  There is one claim, whether they make a payment that subsequently the bankruptcy trustee attempts to claim, assuming that he had the authority to do so, which to be clear, he does not -- that would not impact the King parties.  They would have paid whatever was due by them, assuming that they -- or assuming that Serv Trust is successful on its counter claim.  There is no potential damage to the King parties about this.  The only basis for this declaratory judgment action is to undermine the ability of these parties to defend it.  It did not resolve the claim.  It simply gets them a more favorable, friendly opposing party with whom they think they can reach a better deal.

THE COURT:  And do you want to respond to that?

MR. VERSTANDIG:  I have no doubt that the trustee would be a more reasonable opposing party if it would stop the impetus for doing that.  And that's not meant as an insult to Mr. Andres.  By the way, if we cut a deal with the trustee, it's still subject to bankruptcy court approval.  Everybody has the right to object, including the debtor.  Everyone has the right to be heard on the merits of that deal.  It's under I believe Federal Law Bankruptcy Procedure 90.19.  It's not as though if we prevail on this matter, we can go into a back room with Roger Schlossberg, have my client hand over $200 and decide we're done.  It doesn't work that way.

THE COURT:  Right.

Case 24-00007   Doc 45-2   Filed 06/27/25   Page 48 of 55

47

MR. VERSTANDIG:  With regard to being sued twice, I mean, I think Mr. Schlossberg would do it here -- I would hope not -- but here's the reality.  I'll go back to my promissory note analogy.  And I'll put it in the context of a bankruptcy. If the debtor is owed money on a promissory note and files bankruptcy and the promissory note becomes an asset of the estate.  And the debtor goes out and gets John Doe to make a payment on the note.  And the debtor takes that money and spends it on food, vacation, whatever it may be.  You can bet the bankruptcy trustee is not going to credit that payment.

THE COURT:  He's not going to what?

MR. VERSTANDIG:  Credit that payment.  So yes, there would be the risk of being sued twice, but again, they just don't have standing to bring these counter claims.  And because they're counter claims, we uniquely have to deal with them in this case.  We came here seeking declaratory judgment on a different matter that's not at issue today, dealing with redemption of an interest in an LLC.  Because it's been posited as counter claims, we are forced to confront them in this case, which is what invites the admittedly peculiar and somewhat generous posture that the Court confronts today.

But I believe the bankruptcy court has been as clear as it can be in guiding and understanding what's happening here.  It's good with what's happening here, and it looks forward to hearing what the outcome of what happens here may

be.  If this Honorable Court were to decline to rule on the merits of the alter ego claim, Your Honor -- and that sounds darker than I mean it to -- but I'd have to go back to the bankruptcy court and ask for some other means of having that court adjudicate it, because this court felt it was not proper, ripe, whatever it may be.  And that's just going to create a procedural dizziness, the likes of which I haven't seen in my remarkable young legal career.  Thank you, Your Honor.

THE COURT:  All right.  Thank you. So let's go back. There are a whole lot of other defenses or claims raised in Docket Entry 164.  Do you want to put anything on the record about that, Mr. Andres?

MR. ANDRES:  Your Honor, in reviewing Mr. Verstandig's opposition, I think that that might be correct in that these claims are similar to the other issues.  It would be involving docket entries and things that are not part of the pleadings and be more appropriate as a summary judgment or affirmative defenses.  So I would say that we would not be abandoning those claims, but I don't see that there is a good way for us to pursue them here today in the posture that we're in right now.

THE COURT:  All right.  Okay.  All right, so I'm going to take a short recess and look at a couple of things and then we'll be back.

MR. VERSTANDIG:  Thank you, Your Honor.

49

THE COURT:  Thank you.

THE BAILIFF:  All rise.

THE CLERK:  The Court stands in recess.

(Recess)

THE BAILIFF:  All rise.

JUDGE'S RULING

THE COURT:  Thank you.  You can be seated.  All right, so just to start, we're now on Docket Entry 164.  I've already ruled on the other, 163.  And I just wanted to have the record be clear that in Docket Entry 164, Mr. Myers raises several reasons to support his motion to dismiss the King parties' first amended complaint and declaratory judgment.  And I think there were actually like perhaps 11 different arguments put forth, and I was prepared to address all of them.  But in light of Mr. Andres's saying on the record this morning that he -- the stay argument, one of those arguments is this -- what I can refer to as the stay argument.  And Mr. Andres I think has waived the stay argument and so we haven't heard anything on that.

Mr. Verstandig had comments on the stay argument as it relates to Docket Entry 163.  And I said -- sort of off the cuff, but not really, I know we're on the record here -- that I tend to agree with Mr. Verstandig's arguments as they relate to the stay.  But I'm just treating the stay argument as being waived by Mr. Andres.  Is that correct, Mr. Andres?  When I say

Appx. 0207

use of the word waiving it, because you made no argument on it, and I'm not going to rule on it.

MR. ANDRES:  As a part of these proceedings?

THE COURT:  Yes.  So I'm not going to rule on that. . And then there were a number of other arguments that you have on behalf of Mr. Myers raised in your Docket Entry 164 that again -- and they include but are not limited to no actual controversy, the insufficient process, the personal jurisdiction.  It's my understanding that you're also today, for purposes of this hearing, waiving those arguments.  I am not going to rule on their merits.  I'm just not addressing them.  Is that how you want me to proceed?

MR. ANDRES:  You know, with the understanding that other than personal jurisdiction and service of process, we would reserve those arguments for a future motion.

THE COURT:  Okay.  So I think you can file any future motions you want, but I'm not going to rule on their merits today.  And I hope the record is clear on that.  So the one argument that we've heard -- you've spent a lot of time this morning on, that I will rule on -- I think it's your fifth argument in the order of your memo -- is this -- you claim the Court has no subject matter jurisdiction because the Kings have standing to raise this alter ego theory.

And I appreciate counsel taking the time to walk me through this.  I think it's really interesting and it's not

something that I have a lot of professional dealings with in my career.  So I appreciate you sort of educating me this morning.  And all of your arguments were very helpful to me as were the pleadings, the motions that you've previously filed.

So I tend to agree with the plaintiff's arguments, and I'll tell you why.  A couple of things were important to my decision and I think should be on the record here.  It is a distinction that deserves noting that the Kings are not creditors of the Myers -- of Mr. Myers.  What King wants in their suit, they want Serv Trust's interest in this LLC, this Goldsboro, LLC to be revoked.  And I think this is a redemption argument that they have made. They're not seeking money.  They're seeking that Serv Trust's interests in the LLC be revoked.

The case law that was cited by Mr. Myers in support of his theory that only the trustee can bring this action has subtle differences to the facts in this case.  And that is that those cases, the creditors were trying to get money from debtors and were therefore -- they were trying to promote this alter ego theory to sort of pierce the veil or get underneath the veil of the corporation of the debtor, corporate debtor, to get money, to get monetary relief.  And here, as I said, the Kings aren't creditors.  And I think the facts are therefore different.

So I think they do have standing to pursue the claim.

52

I also think it's important -- it's important to my ruling today that the trustees -- that the trustee, Mr. Schlossberg, is on board with the Kings pursuing this alter ego declaration. Mr. Verstandig and Mr. Mastro as officers of the Court have shared that with me and I think it's obvious that that is so. And so the facts in this case are just too different from the facts in the case law cited by Mr. Myers that sort of stands for this theory that only the trustee can pursue an alter ego theory. I think that might be true under the facts of the case as you've cited, but they just don't fit here. And I think this case is a little more unique in that the trustee is on board. Mr. Mastro representing the trustee has told me that. Mr. Verstandig has told me that as an officer of the court.

And I also have, you know, this side action, this parallel action in bankruptcy court, and in the order upon motion to clarify applicability of automatic stay, which today is the first time I've seen that, was ordered -- was entered and signed on July 8, 2019, the last paragraph of that order says that in the event the Circuit Court for Montgomery County, Maryland -- that's me -- determines that Serv Trust is Mr. Myers -- and he calls him the debtor -- Myers's alter ego, then the automatic stay provided by Section 362 of Title XI shall apply to Serv Trust any and further proceedings against Serv Trust in the matter styled as King v. Serv Trust in this Court, which is Case No. 436977, shall be stayed.

Appx. 0210

53

So upon that happening, Serv Trust becomes an asset of the bankruptcy estate.  And so based on all of that, I hope my record is clear.  I do think the facts of this case are distinguished from the cases that Mr. Myers cited and for those reasons, I do think it is appropriate to allow the plaintiff King to pursue their amended -- their first amended complaint for declaratory judgment.

And so accordingly, I will deny Mr. Myers's motion to dismiss at Docket Entry 164 for the reasons that I've stated here on this record.  So I think that covers everything that we're here to do this morning.  And I guess we'll hear from you soon.

MR. VERSTANDING:  Thank you, Your Honor.

MR. ANDRES:  Thank you, Your Honor.

THE COURT:  Thank you all very much.  Thank you.

(The proceedings were concluded.)

54

√ Digitally signed by Lauren Araya

## DIGITALLY SIGNED CERTIFICATE

**DEPOSITION SERVICES, INC.** hereby certifies that the attached pages represent an accurate transcript of the electronic sound recording of the proceedings in the Circuit Court for Montgomery County in the matter of:

Civil No. 736977

BRIAN KING

v.

SERV TRUST

By:

_____

LAUREN ARAYA
Transcriber

Appx. 0212

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Greenbelt**

In re:      Case No.: **15–26033 – MCR**      Chapter: **7**      Adversary No.: **24–00007**

**Gregory B Myers**
Debtor

**Brian King**
**Cristina King**
**Cristina and Brian King Children's Trust**
Plaintiffs

vs.

**Roger Schlossberg**
Defendant

# DEFICIENCY NOTICE

DOCUMENT:      45 – Motion to Dismiss Adversary Proceeding for Failure to Join Indispensable Party Filed by Gregory B. Myers . (Attachments: # 1 Exhibit A # 2 Exhibit B) (Arter, Laurie)

PROBLEM:      **The following items are deficient for the above pleading, and must be cured by 7/14/25. No Proposed Order was submitted.**

CURE:      A proposed order with a list of those who should receive a copy must be filed. Also, a copy of the proposed order must be transmitted to all other parties to the matter. All proposed orders should be submitted in accordance with the Court's Electronic Filing Procedures. (Exhibit A to Administrative Order 03–02, Local Bankruptcy Rule 9013–3)

CONSEQUENCE:  Failure to cure the problem by the date above may result in the pleading being stricken or other action the Court deems appropriate without further notice. For a proposed order, the failure to cure the problem may result in the relief sought being denied for want of prosecution.

**Additional information on filing requirements: http://www.mdb.uscourts.gov/content/filing–requirements.**
**Additional information for non–attorney filers: http://www.mdb.uscourts.gov/content/after–filing.**

Dated: 6/30/25

Mark A. Neal, Clerk of Court
by Deputy Clerk, Laurie Arter
301–344–3327

cc:    Debtor – Gregory Myers

defntc (rev. 12/12/2016)

Appx. 0213

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.:  24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**TRUSTEE'S OPPOSITION TO DEBTOR'S MOTION TO DISMISS
FOR FAILURE TO JOIN INDISPENSABLE PARTY**

Defendant, Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers (the "Trustee"), by his undersigned counsel, pursuant to Local Rule 9006-1(a), hereby opposes the *Motion to Dismiss for Failure to Join Indispensable Party* (the "*Motion to Dismiss*"), [Dkt. #45], filed herein by the Debtor, Gregory B. Myers, and respectfully represents as follows:

1.      The Debtor is not a party to the instant adversary case and, therefore, lacks standing to file the instant *Motion to Dismiss*.[1]

2.      To the extent that the Debtor seeks to intervene as a party herein in order to obtain standing, intervention should be denied for the multitude of reasons set forth in the *Trustee's*

_____

[1] Curiously, nowhere in the *Motion to Dismiss* does the Debtor identify the person or entity who allegedly is "indispensable" to the adjudication of this adversary proceeding and must be joined as a party. Thus, the motion may be denied as vague and unintelligible.

Appx. 0214

*Opposition to Debtor's Motion to Intervene in Adversary Proceeding*, [Dkt. #68], filed contemporaneously herein, which is adopted and incorporated herein by reference.

3.      In any event, this adversary proceeding has been rendered moot by the Court's approval of a settlement between the Trustee and the Plaintiffs, Brian King, Cristina King, and the Cristina and Brian King Children's Trust (the "King Plaintiffs").[2] [Dkt. #61]. Pursuant to the settlement, the *Complaint* filed by the King Plaintiffs will be dismissed with prejudice. *Id.* Thus, even if the Debtor could obtain standing, the *Motion to Dismiss* still must be denied.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the *Motion to Dismiss* be DENIED.

Respectfully submitted,

SCHLOSSBERG | MASTRO

By:  */s/ Frank J. Mastro*
Frank J. Mastro #24679
Roger Schlossberg
P.O. Box 2067
Hagerstown, MD 21742
(301) 739-8610
fmastro@schlosslaw.com
*Attorneys for Defendant,*
*Roger Schlossberg, Trustee*

---

[2] The Debtor filed the instant *Motion to Dismiss* on June 27, 2025 at 5:20 p.m. – after the close of business on the last business day before an evidentiary hearing on the Trustee's *Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs* (the "*Rule 9019 Motion*"), [Dkt. #17], was scheduled to begin. The Debtor made no effort to notify the parties of his filing in advance of the hearing. Rather, the Clerk provided electronic notice of the *Motion to Dismiss* on June 30, 3025 at 7:30 a.m., shortly before the hearing was scheduled to commence. However, as the Debtor did not move to shorten the time for a response to the *Motion to Dismiss*, or for an expedited hearing thereon, *see* Local Rule 9013-6, responses to the *Motion to Dismiss* remained due on July 14, 2025. *See* Local Rule 9006-1(a).

2

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the **14th** day of **July 2025**, a copy of the *Trustee's Opposition to Debtor's Motion to Dismiss for Failure to Join Indispensable Party* and proposed Order was served electronically via CM/ECF upon:

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012
mac@mbvesq.com
*Attorneys for Plaintiffs*

and via first-class, postage prepaid mail upon:

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. North
Naples, FL 34102
*Debtor*

/s/ Frank J. Mastro
Frank J. Mastro

3

Appx. 0216

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:

GREGORY B. MYERS,

        Debtor.

Case No.  15-26033-MCR
(Chapter 7)

_____/

BRIAN KING, *et al.*,

        Plaintiffs,

    v.

Adv. No. 24-00007

ROGER SCHLOSSBERG, Trustee,

        Defendant.

_____/

## MOTION TO DISQUALIFY JUDGE MARIA ELENA CHAVEZ-RUARK

Gregory B. Myers ("Mr. Myers"), pursuant to 28 U.S.C. § 455(a) and 28 U.S.C. § 455(b)(5)(iii), moves for Judge Maria Elena Chavez-Ruark ("Judge Ruark") to disqualify herself from further participation in these proceedings due to the filing of the COMPLAINT AND DEMAND FOR TRIAL BY JURY on June 30, 2025, a copy of which is attached hereto as Exhibit A.

When the impartiality of a judge is in doubt, the appropriate remedy is to disqualify that judge from hearing further proceedings in the matter. In *Caperton v. A. T Massey Coal Co.*, 1129 S. Ct. 2252 (2009), a case concerning disqualification of a state supreme court justice, the U.S. Supreme Court reaffirmed that litigants have a due process right to an impartial judge and that, under circumstances in which judicial bias was probable, due process required disqualification.

1



Appx. 0217

The court noted, however, that disqualification rules may be and often are more rigorous than the Due Process Clause requires. So it is with disqualification requirements for federal judges, which require disqualification when a judge's impartiality "might reasonably be questioned." 28 U.S.C. § 455(a).

WHEREFORE, Mr. Myers requests that Judge Ruark enter an Order immediately disqualifying herself from any further particiaption in these proceedings.

RESPECTFULLY SUBMITTED on this 30th day of June, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

Appx. 0218

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 30, 2025, a copy of the foregoing was furnished to the

following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

_____
Gregory B. Myers, *pro se*

3

Appx. 0219

Case 24-00007  Doc 47-1  Filed 06/30/25  Page 1 of 17
Case 8:26-cv-02175-TDC  Document 12-2  Filed 07/29/26  Page 200 of 458

EXHIBIT "A"

Appx. 0220

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY B. MYERS,

        Plaintiff,

        v.

JUDGE MARIA ELENA CHAVEZ-RUARK,
in her official capacity; RAMONA D. ELLIOTT,
ROGER SCHLOSSBERG, FRANK MASTRO,
SCHLOSSBERG & ASSOCIATES, P.A., and
MAURICE B. VERSTANDIG,

        Defendants.

_____/

Case No. JMC 25 CV 2085

USDC - GREENBELT
'25 JUN 30 AM 9:58

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff GREGORY B. MYERS ("Myers" or "Plaintiff") brings this COMPLAINT AND DEMAND FOR TRIAL BY JURY (the "Complaint") against Defendants JUDGE MARIA ELENA CHAVEZ-RUARK, in her official capacity ("Ruark"); RAMONA D. ELLIOTT ("Elliott"); ROGER SCHLOSSBERG ("Schlossberg"), FRANK MASTRO ("Mastro"), SCHLOSSBERG & ASSOCIATES, P.A. ("Schlossberg Law"), and MAURICE B. VERSTANDIG ("VerStandig") (with Ruark, Elliott, Schlossberg, Mastro, Schlossberg Law, and VerStandig being collectively known as the "Defendants" and each sometimes being known as a "Defendant"), and does allege as follows:

## INTRODUCTION

A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it. Compensation for the government's taking of a person's property is constitutionally mandated, full stop. See United States Constitution, Amendment V; *Knick v. Township of Scott*, 139 S. Ct. 2162, 2172 ("'[I]n the event of a taking, the compensation remedy is required by the Constitution.'" (quoting *First English Evangelical Lutheran Church of*

1

Appx. 0221

*Glendale v. County of Los Angeles*, 482 U.S. 304, 316 (1987))); id. ("rejecting the view that the Constitution does not, of its own force, furnish a basis for a court to award money damages against the government" (internal citation and quotation marks omitted)); id. at 2170 ("[I]f there is a taking, the claim is 'founded upon the Constitution'" (quoting *United States v. Causby*, 328 U.S. 256, 267 (1946)); *First English*, 482 U.S. at 315 ("claims for just compensation are grounded in the Constitution itself"); *id.* ("'suits [for just compensation are] founded upon the Constitution of the United States'") (quoting *Jacobs v. United States*, 290 U.S. 13, 16 (1933)).

Former U.S. Attorney General John Ashcroft's remarks neatly summarize this case:

> Bankruptcy court corruption is not just a matter of bankruptcy trustees in collusion with corrupt bankruptcy judges. The corruption is supported, and justice hindered by high-ranking officials in the United States Trustee Program. The corruption has advanced to punishing any and all who mention the criminal acts of trustees and organized crime operating through the United States Bankruptcy Courts. As though greed is not enough, the trustees, in collusion with others, intentionally go forth to destroy lives. Exemptions provided by law are denied debtors. Cases are intentionally and unreasonably kept open for years. Parties in cases are sanctioned to discourage them from pursuing justice. Contempt of court powers are misused to coerce litigants into agreeing with extortion demands. This does not ensure integrity and restore public confidence.

Furthermore, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984)); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 42 (2021) (noting that in *Pulliam*, "the plaintiff sought an injunction only to prevent the judge from enforcing a rule of her own creation").

## PARTIES

1.  Plaintiff Myers is a natural person and a citizen of the state of Florida.

2.  Defendant Ruark is a bankruptcy judge of the United States Bankruptcy Court for the District of Maryland and is being sued in her official capacity.

2

Appx. 0222

3.     Defendant Elliott is Principal Deputy Director and General Counsel of the Executive Office of the United States Trustees (EOUST).

4.     Defendant Schlossberg is a citizen of Maryland and owner of Defendant Schlossberg Law.

5.     Defendant Mastro is a citizen of Maryland and, upon information and belief, an owner of Defendant Schlossberg Law.

6.     Defendant Schlossberg Law is a partnership operating in and organized under the laws of Maryland.

7.     Defendant VerStandig is, upon information, a citizen of Nevada and an attorney practicing law in Maryland and Florida.

## JURISDICTION AND VENUE

8. `    This Court has jurisdiction under 28 U.S.C. § 1331, because this case asserts claims arising under the Constitution or laws of the United States.

9.     This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants, and the claims are for a sum greater than seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

10.     This Court has jurisdiction under 28 U.S.C. § 2201, *et seq.*, because the case arises from an actual controversy within the jurisdiction of this Court, and is not subject to any exception in 28 U.S.C. § 2201(a). This Court is therefore vested with the power to declare the rights and legal relations of Plaintiff as he is an interested party.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

3

Appx. 0223

## BARTON DOCTRINE DOES NOT APPLY

12.    This case falls squarely within the "ultra vires exception" to the Barton doctrine which allows suits by individuals as a matter of right when a receiver or trustee, by mistake or wrongfully, acted beyond their official capacity and takes possession of property belonging to another. For example, seizing property not belonging to the bankruptcy estate falls under this exception. Myers alleges at the outset of this suit facts that establish a prima facie case against the Defendants, including Schlossberg, and demonstrates that the Defendants knowingly and purposefully acted outside the scope of their authority in a manner that is contrary to clearly established law where there was sufficient precedent at the time of the Defendants' unlawful actions, factually similar to Myers's allegations, to put the Defendants on notice that their conduct was constitutionally prohibited. Moreover, a court-appointed receiver has no immunity where, as here, Myers has alleged the Defendants stole non-estate property being held in an escrow account and belonging to Myers and his wife, Barbara Ann Kelly ("Kelly"), as tenants by the entireties. As theft is an inherently unlawful act, it is impossible that any court authorized any Defendant to commit theft, and therefore the allegations are necessarily outside the scope of any judicial authority or immunity.

13.    The Barton Doctrine is not intended to shield trustees from constitutional violations and does not apply to a Fifth Amendment taking claim against a trustee acting outside his authority or in a way that is not protected by the doctrine. Accordingly, the Defendants have no qualified immunity from constitutional violations and Myers may bring suit against the Defendants personally and hold the Defendants personally liable for their unlawful conduct. Furthermore, the Eleventh Circuit has ruled that the Barton Doctrine's protection ceases when no estate assets

4

remain. In such instances, a district court decision would not impact the bankruptcy estate, and the doctrine would not remove the district court's jurisdiction.

## FACTUAL ALLEGATIONS

14.     On March 23, 2004, Myers and Kelly purchased the real property commonly known as Lot 6, Seaside 14, Santa Rosa Beach, Florida 32459 ("Lot 6").

15.     On November 18, 2015, Myers filed a voluntary petition for bankruptcy relief under the reorganization provisions of Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), Case 15-26033 (the "Myers Bankruptcy Case").

16.     On November 18, 2015, the Bankruptcy Court entered a *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines*, which states:

> The debtor is permitted by law to keep certain property as exempt. Exempt property will not be sold and distributed to creditors, even if the debtor's case is converted to chapter 7.

(Case 15-26033; Doc. 6) (emphasis added).

17.     On October 27, 2016, Myers and Kelly sold Lot 6 and $1,238,598.91 in net sales proceeds were wired to the law firm of McNamee Hosea Jernigan Kim Green & Lynch, P.A. ("McNamee Hosea") and deposited in the "McNamee, Hosea Attorneys Escrow Account" (the "Escrow Funds").

18.     The Escrow Funds are not "property" of Myers's bankruptcy estate under 11 U.S.C. § 541.[1]

---

[1] *See Alvarez* v. *HSBC Bank USA (In re Alvarez)*, 733 F.3d 136, 141 (4th Cir. 2013), holding "under our precedent ... only [the debtor's] interest in the entireties property, and not the whole of the entireties property owned by the marital unit, became part of his bankruptcy estate." (Alterations supplied). The *Alvarez* Court also makes clear that a bankruptcy trustee obtains only custody of a *debtor's interest* in entireties property. *Id.* at 141 (internal citations omitted). See also *In re Hunter, 284* B.R. 806 (Bankr.E.D.Va.2002), holding that the bankruptcy court lacked

5

19.     On February 15, 2017, the Bankruptcy Court (Lipp, J) ruled that the Escrow Funds are owned by Myers and Kelly as tenants by the entireties (i.e., "I ruled based on the law that the asset was T by E and therefore monies had to be released.").

20.     On February 15, 2017, the United States Trustee for Region Four, through its counsel Lynn Kohen, told the Bankruptcy Court, "Generally T by E funds we say are not property of the estate."

21.     On February 22, 2017, the Myers Bankruptcy Case was converted from a case under chapter 11 to a case under chapter 7 and Schlossberg was appointed as chapter 7 trustee of the bankruptcy estate of Gregory B. Myers (the "Chapter 7 Trustee").

22.     On March 21, 2017, Myers filed an amended Schedule C, inter alia, claiming an exemption in Lot 6 at "100% of fair market value, up to any applicable statutory limit."[2]

23.     On August 3, 2017, the Chapter 7 Trustee filed an objection to Myers's amended Schedule C claim of exemptions.

24.     On August 31, 2017, the Bankruptcy Court (Lipp J)—without authority[3] or jurisdiction and over the objection of Myers and Kelly—ordered McNamee Hosea to transfer custody of the Escrow Funds to Schlossberg subject to the following conditions:

---

authority to alter rights in property owned by the debtor and his spouse as tenants by the entireties because only the debtor's interest in the entireties property, rather than the whole of the property, was before the bankruptcy court.

[2] Lot 6 was a Florida property, and therefore both Lot 6 and the sale proceeds (Escrow Funds) are governed by Florida law. Myers is a Florida citizen and is therefore entitled to Florida exemptions. Florida's statutory exemption for entireties property is unlimited. When a monetary exemption is greater than or equal to the value of the subject property, the owner's possessory and pecuniary interests are both fully protected.

[3] See *In re Hunter*, 284 B.R. 806 (Bankr.E.D.Va.2002), holding that the bankruptcy court lacked authority to alter rights in property owned by the debtor and his spouse as tenants by the entireties because only the debtor's interest in the entireties property, rather than the whole of the property, was before the bankruptcy court.

Appx. 0226

2. Within ten (10) days of the entry of this Order, the law firm of McNamee Hosea Jernigan Kim Green & Lynch, P.A. (the "Firm") shall transfer custody to the Trustee of the Net Sale Proceeds (the "Net Sale Proceeds") currently being held by the Firm as escrow agent under the Court's sale order (Doc. No. 175) (the "Lot 6 Sale Order"). The Trustee shall hold possession of the Net Sale Proceeds, but shall make no payments, credits, offsets, or any other reduction in the Net Sale Proceeds absent further order(s) of the Court. Any liens, claims, or interests in, on, or to the Net Sale Proceeds, shall continue on the Net Sale Proceeds notwithstanding the movement of the funds to the Trustee and shall be subject to further Order of the Court.

3. The Court does not determine, and nothing in this Order, or in the change of custody or possession of the Net Sales Proceeds from the Firm to the Trustee, shall eliminate, create, alter, or effect in any way, rights in favor of any person or party.

25. On September 13, 2017, Elliott, then Deputy Director/General Counsel, Department of Justice, Executive Office for United States Trustees (EOUST), filed a brief in the United States District Court for the District of Maryland, Case 8:17-cv-01239-PX, in which Elliott and the Department of Justice confirmed that "because her [Ms. Kelly's] interest in that property [Lot 6] was in the nature of tenants-by-the-entireties, her interest never became part of the bankruptcy estate. *See Alvarez*, 733 F.3d at 141". Elliott and the Department of Justice *counterfactually* represented to the Court that as of September 13, 2017, "[t]he $1,238,598.91 remains in the escrow account today."

26. On December 12, 2017, counsel for the Chapter 7 Trustee, Paul Sweeney ("Sweeney"), testified under oath in the Myers Bankruptcy Case, admitting to actual conflicts of interest with numerous principals of the Offit Kurman, P.A. law firm ("Offit Kurman"), stating:

> "Obviously I knew that Offit Kurman was a creditor. Obviously I see that their attorney of record is Mr. Hoffman, Mr. Poppleton, and now we have Mr. Johnson who is also known to me. But at no time did any of **those conflicts** register as a connection[.]"

7

Appx. 0227

(Emphasis added). "[T]hose conflicts" with Offit Kurman also included attorney Maurice VerStandig. "[T]hose conflicts" with Offit Kurman were imputed to the Chapter 7 Trustee.

27. On December 12, 2017, Bradford F. Englander, Esq., counsel for Ms. Kelly, made the following statement to Judge Lipp in open court in the Myers Bankruptcy Case:

> "What's really going on here, and the only thing that's going on here, **is an effort by the trustee and Offit Kurman to grab T-by-E property**...there is nothing in the Bankruptcy Code that gives a trustee in a bankruptcy case the power to do that. *** **We all know what this is, it's -- and my words -- a money grab**. *** So in every extent possible, it appears that this is an end run around virtually every applicable provision of the Bankruptcy Code and unsupported by any specific provision of the Bankruptcy Code."

(Emphasis added). When, on December 12, 2017, Mr. Englander questioned the Chapter 7 Trustee about his "surcharge" of fully exempt property (i.e., the Escrow Funds), Schlossberg testified under oath, telling the Bankruptcy Court, "**guilty as charged**."

28. On December 22, 2017, after an evidentiary hearing on December 19, 2017, the Bankruptcy Court (Lipp, J.) entered an order (the "Exemption Order") flatly overruling the Chapter 7 Trustee's objection to Myers's amended Schedule C claim of exemptions. The Chapter 7 Trustee did not appeal the Exemption Order. The Exemption Order was effective immediately and is final and binding on all parties. Accordingly, any collateral attack by the Chapter 7 Trustee (Schlossberg) on the Escrow Funds is in derogation of Myers's and Myers's substantive property rights and is expressly barred by statute.

29. In January 2018—notwithstanding the Chapter 7 Trustee's admitted conflicts of interest with numerous principals of Offit Kurman—the Chapter 7 Trustee transferred $525,000 of the Escrow Funds to the Offit Kurman law firm.

30. On April 10, 2018, the Bankruptcy Court (Lipp, J) confirmed that the Escrow Funds are exempt and not subject to administration by the Chapter 7 Trustee:

Appx. 0228

> MR. MYERS: Respectfully…there is an exemption order and the property that was on my amended schedule C is now exempt.
> THE COURT: **Understood. And that's understood.**

(Emphasis added).

31. On October 18, 2018, the Chapter 7 Trustee filed a motion in the Myers Bankruptcy Case admitting that Lot 6 and the Escrow Funds are fully exempt property not subject to administration by the Chapter 7 Trustee:

> Although the Debtor's original Schedule C filed on December 16, 2015 only sought to exempt the property located at 700 Gulf Shore Blvd. in Naples, Florida, McNamee Hosea later filed an Amended Schedule C on March 21, 2017 which claimed exemptions for the following additional properties:
>
> (1) 4505 Wetherill Road, Bethesda, Maryland
> (2) 147 Silver Laurel Way, Santa Rosa Beach, Florida
> (3) Lot 6, Seaside Beach Subdivision, Santa Rosa Beach, Florida
> (4) "Open space and natural areas" of The Villages at Seagrove Planned Unit Development
>
> Additionally, although the Trustee later filed an objection to the Debtor's claimed exemptions on Amended Schedule C, the bankruptcy court ultimately overruled the Trustee's objections and the above exemptions were allowed to stand.

32. On October 29, 2018—after having transferred $525,000 of the Escrow Funds to Offit Kurman— the Chapter 7 Trustee *counterfactually* represented to the Bankruptcy Court (Lipp, J) that "the only fund that we have in this case is the fund that was turned over to me from [McNamee, Hosea], that was the $1,110,247.01."

33. On May 6, 2019—after having transferred $525,000 of the Escrow Funds to Offit Kurman— the Chapter 7 Trustee *counterfactually* testified under oath in the Myers Bankruptcy Case that the Escrow Funds "[were] not administered" as follows:

> MR. SCHLOSSBERG: On March 21, 2017, that decision not to claim it as exempt went by the wayside and they amended to claim it as exempt property. **\*\*\* The property was not administered. I**

9

Appx. 0229

certainly tried my best with respect to that argument—**I lost it and you have to move on**.

(Emphasis supplied). Schlossberg also testified under oath that he "took" $190,000.00 of the

Escrow Funds (i.e., *non*-estate property):

> MR. SCHLOSSBERG: I can't remember the exact numbers now, $190,000.00 I believe out of the funds – **I took those from that**.

(Emphasis added).

34.    On April 6, 2021, Judge Maria Ellena Chavez-Ruark held a hearing in the Myers

Bankruptcy Case at which time the following statements were placed on the record:

> THE COURT: Counsel, parties, please identify yourselves for the record.
> MR. MASTRO: Good morning, Your Honor, Frank Mastro, on behalf of the Chapter 7 Trustee, Roger Schlossberg.
> MR. SCHLOSSBERG: Good morning, Your Honor, Roger Schlossberg, Chapter 7 Trustee.
> THE COURT: Good morning, gentlemen.
> MR. LUDWIG: Good morning, Your Honor, David Ludwig on behalf of the Debtor, Gregory Myers. And Mr. Myers is here as well.
> MR. PALIK: I think we're talking over one another, Craig Palik on behalf of McNamee Hosea. Good morning, Your Honor.
> MR. JOHNSON: Good morning, Your Honor, Gregory Johnson on behalf of Offit Kurman. We do not, we are only going to be appearing in an observatory status and do not plan to participate otherwise.
> THE COURT: Okay, thank you, Mr. Johnson.
> MR. HODGES: Good morning, Your Honor, Daniel Hodges, on behalf of McNamee, but only in connection with the adversary proceeding involving Barbara Ann Kelly. So at this point I don't think I'm involved in this part of the hearing, but nonetheless, I am here.
> THE COURT: Thank you very much. And Mr. Palik are you here for the main case and the adversary? Or are you here only for the adversary?
> MR. PALIK: I'm here for the main case. And to the extent necessary for the adversary, but Mr. Hodges is going to handle that as counsel for McNamee.
> THE COURT: All right, thank you.
> ***
> THE COURT: So Mr. Ludwig, the motion to compel is your motion, so I'm going to start with you. Do you -- can we all agree, and I'm

10

going to ask the Trustee this as well, can we all agree that Lot 6 was owned T by E, that when it was sold, the sale proceeds are held, are also owned T by E, and that the Trustee filed an objection to exemptions which dealt with other issues. Dealt with where the Debtor was domiciled, and whether the property -- well actually dealt with this issue, whether this property was owned T by E. **And the Court concluded that the property is, was owned and sale proceeds are held in a T by E interest.** Can we agree on that?

MR. LUDWIG: Yes, Your Honor, that's our position and I believe the Court has already ruled on that issue some years ago.

**THE COURT: Mr. Mastro, do we agree that the property and sale proceeds are owned T by E, and that the objection to exemptions on that particular issue was overruled?**

**MR. MASTRO: That's correct, Your Honor. It was originally a T by E property, and the objection to exemptions was overruled.**

THE COURT: Okay, good. What I'm trying to do is, I'm trying to understand where the parties agree and where the parties disagree so that we don't spend a lot of time with arguments on issues where there is no disagreement.

(Emphasis added).

35.     On April 21, 2021, Judge Maria Ellena Chavez-Ruark made the following ruling in the Myers Bankruptcy Case:

> **THE COURT**: Next Ms. Kelly argues that both Lot 6 and the Lot 6 sale proceeds are exempt from process under Florida Law and that Lot 6 itself and Ms. Kelly's interest in Lot 6 have never been property of the Debtor's Bankruptcy estate. That's in her motion at paragraph 8 and 9. **The Court agrees that Ms. Kelly's interest in the Lot 6 property and Lot 6 sale proceeds is not property of the Debtor's Bankruptcy estate.**

(Emphasis added). See, e.g., *Sitomer v. Orlan*, 660 So.2d 1111 (Fla. Dist. Ct. App.1995) (internal citations omitted), holding the "non-severability doctrine preserves the entireties status of funds even after one spouse transfers money from it without the consent of the other" such that the non-consenting spouse may recover funds from the possession of a third party after they had been transferred without her consent from an entireties account.

36.     Neither the Bankruptcy Court nor the Chapter 7 Trustee has jurisdiction or authority to attach, take control of, appropriate, convert or otherwise administer the Escrow Funds, including

11

ordering the Escrow Funds be transferred to the Chapter 7 Trustee, Offit Kurman, or McNamee Hosea.

37.    Contrary to repeated demands by Myers, Kelly, and their counsel, the Chapter 7 Trustee has refused and failed to return the Escrow Funds ($1,110,247.01) lawfully belonging to Myers and Kelly as tenants by the entireties.

38.    The Defendants have, at all relevant times, acted in coordination with the Chapter 7 Trustee and/or supported the Chapter 7 Trustee and/or benefited from the Chapter 7 Trustee's unauthorized actions in connection with Myers's rights, interests and fully exempt property, including the Escrow Funds.

## COUNT I
### Declaratory Judgment
### (28 U.S.C. § 2201)

39.    Plaintiff incorporates paragraphs 1 through 38 of the Complaint as though they were fully set forth within this count of the Complaint.

40.    There is an actual, present, and practical need for declaratory relief because Myers's interest in the Escrow Funds and these issues are actual controversies that are real and substantial, and involve a genuine conflict of tangible interests.

41.    Plaintiff therefore requests that this Court determine his rights and other legal relations with regard to the Escrow Funds, and the Chapter 7 Trustee's purported right vel non to possess, control, administer, transfer, disburse, or retain same.

## COUNT II
### 42 U.S.C. § 1983
### (Takings Claim Under United States Constitution, Amendment V)

42.    Plaintiff incorporates paragraphs 1 through 38 of the Complaint as though they were fully set forth within this count of the Complaint.

43.    Myers's interest in the Escrow Funds was his constitutionally protected property.

Appx. 0232

44.     Defendants actions in seizing, possessing, controlling, administering, transferring, disbursing, or retaining the Escrow Funds wrongfully deprived Myers of his property without just compensation and due process of law in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.     .

## COUNT III
### (Conversion)

45.     Plaintiff incorporates paragraphs 1 through 38 of the Complaint as though they were fully set forth within this count of the Complaint.

46.     The Defendants had no right or authority to seize, possess, control, administer, transfer, disburse, or retain any portion of the Escrow Funds.

47.     Nevertheless, Defendants seized and took possession of the Escrow Funds without authorization from Myers and Kelly.

48.     The Defendants actions were intentional, and constituted a conversion of Myers's property..

49.     The Defendants actions caused damages to Myers by depriving him of his rightful property, and by preventing him from realizing the use and benefit of the Escrow Funds

## COUNT IV
### (Wrongful Retention)

50.     Plaintiff incorporates paragraphs 1 through 38 of the Complaint as though they were fully set forth within this count of the Complaint.

51.     The Defendants taking of the Escrow Funds was not authorized by Myers and Kelly, was intentional, was without permission or justification, and constituted a conversion of Myer's property.

52.     The Defendants acted with actual malice in converting the Escrow Funds to their own use. The Defendants enjoyed monetary gain from the appropriation of the Escrow Funds to

13

enrich .

53.    The Defendant's conversion of Myers's property deprived him of the use and benefit of the Escrow Funds beginning October 2016 and continuing to the present. If Myers would have had access to the Escrow Funds for this period, hhe would have benefitted from them in an amount to be proved at trial.  The Defendants retained the Escrow Funds and used them in their business(es) and/or personally benefitted from them in spite of repeated demands by Myers and Kelly to return the Escrow Funds to Myers and Kelly.

54.    The Escrow Funds had a value of $1,110,247.01 at the time of conversion.  The Defendants, acting with malice, used Myers's Escrow Funds to benefit themselves or other third parties. The Defendants had no legal right to convert and then retain the Escrow Funds.

## COUNT V
### (Constructive Fraud)

55.    Plaintiff incorporates paragraphs 1 through 38 of the Complaint as though they were fully set forth within this count of the Complaint.

56.    The Defendants acted in concert and conspired to wrongfully appropriate the Escrow Funds.

57.    The Defendants knew of the fraudulent scheme and willfully aided in its execution. See *Etgen v. Washington County Bldg. Loan Ass'n.,* 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing

14

Appx. 0234

injury regardless of the degree of culpability. *Lomita Land Water Co. v. Robinson*, 154 Cal. 36, 97 P. 10, 14."). Id. at 418.

58.     The Defendants held positions of public trust and owed a duty of good faith and fair dealing to all parties, including Myers.

59.     The Defendants owed a further fiduciary duty to Myers as a consequence of taking possession and/or control of the Escrow Funds.

60.     The Defendants breached their duty to uphold the public's trust intentionally with malice, and/or with reckless disregard for Myers's rights by willfully and intentionally seizing control of the Escrow Funds without legal authority or justification.

61.     The Defendants breached their fiduciary duty to Myers intentionally with malice, and/or with reckless disregard for Myers's rights by willfully and intentionally seizing control of the Escrow Funds without legal authority or justification.

62.     The Defendants actions were taken with support and cooperation of all Defendants, despite actual knowledge of all relevant law and facts.

63.     As a result of the Defendants breach of their legal, public, and fiduciary duties, Myers has suffered material harm and material damages, and will continue to incur material harm and material damages due to loss of the Escrow Funds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

a.      That this Court enter a enter a declaration that the Escrow Funds are not part of the bankruptcy estate of Gregory B. Myers, and that the Chapter 7 Trustee has no right or authority to seize, possess, control, administer, transfer, disburse, or retain the Escrow Funds;

Appx. 0235

b.    That this Court enter a judgment instructing the Chapter 7 Trustee to immediately return the Escrow Funds to Myers and Kelly as the lawful tenants by the entireties owners of the Escrow Funds;

c.    That this Court enter a judgment against the Defendants, jointly and severally, for actual damages in an amount not less than Ten Million Dollars ($10,000,000.00);

d.    That this Court enter a judgment against the Defendants, jointly and severally, for punitive damages in an amount not less than Thirty Million Dollars ($30,000,000.00);

e.    That this Court enter a judgment awarding Plaintiff his attorneys' fees and suit costs incurred in connection with the prosecution of this matter;

f.    That this Court award any other relief it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands to exercise his right to a trial by jury on all claims or issues so triable.

Dated: June 30, 2025

Respectfully submitted,

Gregory B. Myers, pro se
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

16

Appx. 0236

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Greenbelt**

In re:   Case No.: **15–26033 – MCR**   Chapter: **7**   Adversary No.: **24–00007**

**Gregory B Myers**
Debtor

**Brian King**
**Cristina King**
**Cristina and Brian King Children's Trust**
Plaintiffs

vs.

**Roger Schlossberg**
Defendant

# DEFICIENCY NOTICE

DOCUMENT:   47 – Motion to Disqualify Judge Maria Elena Chavez–Ruark Filed by Gregory B. Myers . (Attachments: # 1 Exhibit A) (Arter, Laurie)

PROBLEM:   **The following items are deficient for the above pleading, and must be cured by 7/14/25. No proposed order was submitted.**

CURE:   A proposed order with a list of those who should receive a copy must be filed. Also, a copy of the proposed order must be transmitted to all other parties to the matter. All proposed orders should be submitted in accordance with the Court's Electronic Filing Procedures. (Exhibit A to Administrative Order 03–02, Local Bankruptcy Rule 9013–3)

CONSEQUENCE:   Failure to cure the problem by the date above may result in the pleading being stricken or other action the Court deems appropriate without further notice. For a proposed order, the failure to cure the problem may result in the relief sought being denied for want of prosecution.

**Additional information on filing requirements: http://www.mdb.uscourts.gov/content/filing–requirements.**
**Additional information for non–attorney filers: http://www.mdb.uscourts.gov/content/after–filing.**

Dated: 6/30/25

Mark A. Neal, Clerk of Court
by Deputy Clerk, Laurie Arter
301–344–3327

cc:   Debtor – Gregory Myers

defntc (rev. 12/12/2016)

Appx. 0237

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.:  24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPPOSITION TO DEBTOR'S MOTION TO DISQUALIFY JUDGE

Defendant, Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers (the "Trustee"), by his undersigned counsel, pursuant to Local Rule 9006-1(a), hereby opposes the *Motion to Disqualify Judge Maria Ellena Chavez-Ruark* (the "*Motion to Disqualify*"), [Dkt. #47], filed herein by the Debtor, Gregory B. Myers, and respectfully represents as follows:

### I.    BACKGROUND

1.    On January 10, 2024, Brian King, Cristina King, and the Cristina and Brian King Children's Trust (the "King Plaintiffs") commenced the instant adversary proceeding by filing their *Complaint* herein. [Dkt. #1]. The Trustee thereafter filed an *Answer* on April 15, 2024. [Dkt. #13].

2.    On December 30, 3024, the Trustee filed a *Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs* (the "*Rule 9019 Motion*"). [Dkt. #17]. The

Appx. 0238

Trustee explained therein that the proposed settlement, if approved by the Court, would resolve the instant adversary proceeding.

3.      The Debtor filed a preliminary objection to the Trustee's proposed settlement on January 21, 2025, [Dkt. #10], and a supplemental objection on February 4, 2025, [Dkt. #22].

4.      On May 7, 2025, at a status conference attended by the Debtor and the parties to this adversary case, the Court scheduled a two-day evidentiary hearing on the *Rule 9019 Motion* on June 30, 2025 and July 1, 2025, beginning at 10:00 a.m. on each day. [Dkt. #28]. On May 8, 2025, the Court issued a *Notice* regarding the hearing. [Dkt. #29].

5.      On June 30, 2025 at 10:07 a.m., the Debtor personally filed the instant *Motion to Disqualify* with the Clerk, notwithstanding the hearing on the *Rule 9019 Motion* had been scheduled to begin seven minutes earlier.  The Debtor thereafter belatedly arrived at the courtroom where the hearing on the *Rule 9019 Motion* was scheduled to occur.

6.      Following the Debtor's belated arrival, the hearing on the *Rule 9019 Motion* began and proceeded to its conclusion on July 1, 2025.  [Dkt. #52]. The Court did not address the merits of the *Motion to Disqualify* at the hearing. Indeed, as the Debtor did not move to shorten the time for a response to the *Motion to Disqualify*, or for an expedited hearing thereon, *see* Local Rule 9013-6, the motion was not ripe for adjudication at that time.

7.      On July 3, 2025, the Court convened a further hearing, [Dkt. #51], at which it delivered an oral ruling approving the Trustee's proposed settlement. [Dkt. #59]. Later that day, the Court entered its written *Order* approving the settlement. [Dkt. #61].

8.      The sole ground urged in the *Motion to Disqualify* is the Debtor's filing of a complaint in the United States District Court for the District of Maryland at 9:59 a.m. on June 30, 2025 – eight minutes prior to filing the instant motion – which named as defendants the presiding judge in this adversary proceeding, the Hon. Maria Ellena Chavez-Ruark, as well as counsel for

2

all the parties herein and Ramona Elliott, Esq., the deputy director and general counsel of the Executive Office of the United States Trustee. *See Myers v. Chavez-Ruark, et al.*, Case No. 25-CV-2085 (D. Md.).

9.    The Trustee now timely files his opposition to the *Motion to Disqualify*. *See* Local Rule 9006-1(a). For the reasons set forth below, the Debtor's motion should be denied.

## II.    ARGUMENT

Under 28 U.S.C. § 455, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard for recusal is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *U.S. v. Studley*, 783 F.2d, 934, 939 (9th Cir. 1986); *see also In re Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir. 1993). A motion to disqualify is committed to the sound discretion of the judge and will not be reversed absent an abuse of discretion. *Hipp*, 5 F.3d at 116, *Studley*, 783 F.2d at 940.

Here, the sole ground for recusal is that Judge Chavez-Ruark is named as a defendant in a lawsuit that the Debtor filed mere minutes before filing the *Motion to Disqualify*. However, "a judge is not disqualified merely because a litigant sues or threatens to sue him." *U.S. v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977); *see also Ronwin v. State Bar of Ariz.*, 686 F.2d 692, 701 (9th Cir. 1982) (observing that "[s]uch an easy method for obtaining disqualification should not be encouraged or allowed"), *rev'd on other grounds sub nom, Hoover v. Ronwin*, 466 U.S. 558 (1984); *Springer v. Hunt*, 2017 WL 3380675, *4 (D. Haw. Aug. 4, 2017) ("disqualification of a judge cannot be obtained by the simple act of suing the judge" because to allow such "would permit and might even encourage litigants to manipulate and abuse the judicial process, which could undermine public confidence in the integrity of the judiciary").

3

Appx. 0240

In the circumstances of this case, it is patently obvious that the filing of the lawsuit against Judge Chavez-Ruark followed by the filing of the *Motion to Disqualify* immediately thereafter were part of a concerted, last ditch effort by the Debtor to improperly delay the hearing of the *Rule 9109 Motion. See Hipp, supra*, 5 F.3d at 116-17 (5th Cir. 1993) (affirming order finding no basis for recusal where defendant filed civil lawsuit against judge assigned to criminal case in attempt to gain continuance of scheduled trial date); *In re Bush*, 232 Fed. App'x 852, 853-54 (11th Cir. Jan. 31, 2007) (affirming denial of debtor's motion to recuse district court judge from presiding over bankruptcy appeal where debtor had named judge as third-party defendant by debtor in pending civil case because recusal "would give [debtor] an effective means to manipulate and needlessly delay the judicial process"); *Dydzak v. United States*, 2018 WL 1400248, *4 (N.D. Cal. Mar. 19, 2018) ("where a party files a lawsuit against a judge to gain an advantage, such as to delay proceedings, recusal is not warranted"); *Mellow v. Sacramento County*, 2008 WL 2169447, *3 (E.D. Cal. May 23, 2008) (party "may not file frivolous actions against a judge and then base a motion for disqualification upon those actions").

The instant *Motion to Disqualify* is the just latest example of the "dilatory and abusive litigation tactics" that the Debtor has employed "to exploit and subvert the bankruptcy process for over eight years." *See In re Kelly*, 656 B.R 541, 548 (Bankr. D. Md. 2023). In short, the motion reeks of bad faith and should not be tolerated by the Court, lest it invite similar manipulation and abuse from other litigants. *See Rochester v. Laubshire*, 2012 WL 2805717, *2 (D.S.C. July 10. 2012) ("A judge may exercise discretion and refuse to recuse himself in proceedings where a litigant is abusing the judicial system… Otherwise, a litigant would have the ability to improperly manipulate the judicial system"); *Mellow, supra*, 2008 WL 2169447 at *2 ("if courts are not simply to be abused on the whim of litigants, a judge has discretion not to recuse when the facts of the situation allow for no other conclusion [than] that the courts are being

4

abused. Any other ruling permits ever expansive suits against judges where the judge in the present proceeding is added to the next lawsuit for spite purposes, and so on and so on.").

## III.  CONCLUSION

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the *Motion to Disqualify* be DENIED.

Respectfully submitted,

SCHLOSSBERG | MASTRO

By:  */s/ Frank J. Mastro*
Frank J. Mastro #24679
Roger Schlossberg
P.O. Box 2067
Hagerstown, MD 21742
(301) 739-8610
fmastro@schlosslaw.com
*Attorneys for Defendant,*
*Roger Schlossberg, Trustee*

5

Appx. 0242

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the **14th** day of **July 2025**, a copy of the foregoing

*Opposition to Debtor's Motion to Disqualify Judge* and proposed Order was served electronically

via CM/ECF upon:

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012
mac@mbvesq.com
*Attorneys for Plaintiffs*

and via first-class, postage prepaid mail upon:

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. North
Naples, FL 34102
*Debtor*

*/s/ Frank J. Mastro*
Frank J. Mastro

Appx. 0243

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

In re:

GREGORY B. MYERS,                                    Case No.  15-26033-MCR

Debtor.                                              (Chapter 7)

_____/

BRIAN KING, *et al.*,

Plaintiffs,

v.                                                   Adv. No. 24-00007

ROGER SCHLOSSBERG, Trustee,

Defendant.

_____/

DEBTOR'S MOTION TO DISQUALIFY COUNSEL

DEBTOR, GREGORY B. MYERS ("MR. MYERS") HEREBY MOVES TO DISQUALIFY MAURICE B. VERSTANDIG ("VERSTANDIG"), THE VERSTANDIG LAW FIRM, LLC, ROGER SCHLOSSBERG, TRUSTEE, FRANK MASTRO, SCHLOSSBERG & ASSOCIATES, P.A. ("SCHLOSSBERG LAW") FROM ANY FURTHER PARTICIPATION IN CASE NO. 15-26033 AND ADVERSARY PROCEEDING NO. 24-0007 AS A RESULT OF VERSTANDIG'S PRIOR REPRESENTATION OF SERV TRUST, 6789 GOLDSBORO LLC, GREGORY B. MYERS, AND DANIEL J. RING, TRUSTEE OF SERV TRUST. FURTHER VERSTANDIG REPRESENTS THE KING PARTIES IN THE ABOVE ADVERSARY AT THE DIRECTION OF ROGER SCHLOSSBERG, TRUSTEE, WHICH IS A CLEAR CONFLICT OF INTEREST ("FRUIT OF THE POISONOUS TREE"). MR. MYERS ADOPTS AND INCORPORATES HEREIN THE "DEBTOR'S MOTION TO DISQUALIFY" ATTACHED HERE AS EXHIBIT "A", AND MADE A PART HEREOF FOR ALL PURPOSES.

Appx. 0244

RESPECTFULLY SUBMITTED on this 30th day of June, 2025.

_____
Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 30, 2025, a copy of the foregoing was furnished to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

_____
Gregory B. Myers, *pro se*

Appx. 0245

EXHIBIT "A"

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**
www.flmb.uscourts.gov

In re:                                              Case No.: 2:21-bk-00123-FMD

Gregory Brian Myers,                               Chapter 13

        Debtor.
_____/

**DEBTOR'S MOTION TO DISQUALIFY**
*(and Incorporated Memorandum of Law)*

Debtor, GREGORY BRIAN MYERS, respectfully moves this Court for an order

disqualifying Maurice B. VerStandig ("Verstandig") and The VerStandig Law Firm, LLC as

attorneys for non-creditors, Brian King, Cristina King, and Brian King in his capacity as trustee of

the Cristina and Brian King Children's Trust (collectively the "King Parties") in this matter as a

result of VerStandig's prior representation of the Debtor. In support thereof, the Debtor states as

follows:

**I. INTRODUCTION**

Debtor, Gregory Brian Myers ("Myers"), filed this bankruptcy proceeding on January 28,

2021. Mr. Myers has a long-standing reputation as a property developer and property manager

engaged in projects of varying degrees of complexity. As a consequence of the Great Recession,

long term medical and disability issues, and numerous business disputes and unsuccessful

bankruptcies, Mr. Myers is making a good faith effort of exercising the rights afforded to him

under state law and the U.S. Bankruptcy Code to protect his interests and achieve a fresh start.

Appx. 0247

## II. FACTUAL BACKGROUND

Mr. Myers is one of two co-trustees[1] of "Serv Trust" which is an irrevocable spendthrift trust established in 2010 by Myers' mother (now deceased) for the benefit of Myers' five children. Myers was not a grantor/trustor/settlor of Serv Trust, and Myers has never been a beneficiary of Serv Trust.

Serv Trust is presently involved in a business/legal dispute in connection with 6789 Goldsboro LLC, a Maryland Limited Liability Company, which dispute is currently pending in the Circuit Court for Montgomery County, Maryland in consolidated case nos. 436977-V and 451611-V (hereinafter the "Goldsboro Litigation"). The King Parties are defendants in the Goldsboro Litigation and are accused of fraud and other insidious behavior by Serv Trust.

The King Parties are not creditors of Myers and the King Parties have previously acknowledged in open court that they have no monetary or other claim against Myers.

With this backdrop, it is patently obvious that the King Parties' *Motion to Dismiss and Bar Debtor from Refiling for Five Years* (the "King Motion") is nothing more than an outlandish attempt to sully Myers' reputation to gain advantage in the Goldsboro Litigation which is wholly unrelated to this bankruptcy proceeding. To file the King Motion, the King Parties hired Maurice B. VerStandig and the VerStandig Law Firm, LLC who previously served as legal counsel to Myers, 6789 Goldsboro, LLC and Serv Trust, rendering legal advice on the same matters at issue in the King Motion, including at least eight (8) state court litigation cases and various appellate matters associated therewith, matters which VerStandig now disingenuously characterizes as evidence of vexatious litigation and bad faith conduct.[2]

---

[1] The other co-trustee of Serv Trust is Daniel J. Ring, CPA who had historically provided financial advice to Myers' mother.

[2] Which brings to question why VerStandig would have participated and acted as counsel of record at the time if he truly believed that those actions were in bad faith, frivolous or vexatious.

Appx. 0248

This is an impermissible conflict because it violates the Rules Regulating the Florida Bar's former client conflict of interest rule, and both VerStandig and The VerStandig Law Firm, LLC should be disqualified from representing the King Parties as a result.

VerStandig has been representing Myers in various endeavors and legal matters since as early as 2011, when he worked at Offit Kurman, P.A. ("Offit Kurman") in the Washington, D.C. area. On May 15, 2013, VerStandig, acting as attorney for Myers, admitted by email that he does "occasionally offer assistance with Greg's various legal matters…" and in the same email referred to Myers as "a longstanding firm client and an all around good guy." *See* **Exhibit "A",** a true and correct copy of email from VerStandig.

VerStandig also acted as legal counsel for Myers after he left Offit Kurman to open The VerStandig Law Firm, LLC, including working with Myers' bankruptcy counsel in the very same Maryland bankruptcy proceeding which VerStandig has now characterized in the King Motion as "abusive litigious undertakings" (King Motion, p.3). *See* **Exhibit "B",** a true and correct copy of email from VerStandig dated December 17, 2015. Furthermore, and troubling, VerStandig is currently Myers' attorney of record in a Walton County, Florida state court proceeding; *see* a true and correct copy of the clerk of court's docket reflecting same and attached as **Exhibit "C".**

VerStandig was also active legal counsel to Myers as co-trustee of Serv Trust and "Manager" of 6789 Goldsboro LLC which LLC was then owned 100% by Serv Trust. As referenced above, Serv Trust and 6789 Goldsboro LLC are presently in a legal dispute with the King Parties. Shockingly, VerStandig is now attempting to represent the King Parties as their attorney of record in the Goldsboro Litigation, notwithstanding a Motion to Disqualify VerStandig was filed by Serv Trust's counsel in that case, which Motion to Disqualify is still pending in that case. A copy of that Motion to Disqualify is attached hereto as **Exhibit "D"** and page 19 of Exhibit

Appx. 0249

D shows an invoice documenting VerStandig's participation in providing legal advice to Myers as a co-trustee of Serv Trust and as the "Manager" of 6789 Goldsboro LLC, dating back as far as May 20, 2013, before any involvement by the King Parties in 6789 Goldsboro LLC. As such, the issues raised in the King Motion are directly related to issues discussed during VerStandig's representation of Myers individually and as a co-trustee of Serv Trust and the "Manager" of 6789 Goldsboro LLC.

Critically, the arguments that VerStandig is advancing on behalf of the King Parties in this case are contrary to the positions and advice that VerStandig provided to Myers in his various capacities during their ongoing representation relationship. This is a significant conflict that will be further exacerbated if this matter proceeds to discovery and evidentiary hearing. VerStandig should not be permitted to continue to represent the King Parties in this matter as VerStandig and The VerStandig Law Firm, LLC are conflicted and should be disqualified.

## III. STANDARD OF REVIEW

"Motions to disqualify are governed by two sources of authority," the local rules of the court in which they appear" and "federal common law." *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). If a district court bases its disqualification order on an allegation of an ethical violation," the court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *Id.* Attorneys in the Middle District of Florida are governed in their professional conduct by the Rules Regulating the Florida Bar. *See* M.D. Fla. Local Rule 2090-1(d).

Here, the relevant ethical rule is Rule 4-1.9 (Conflict of Interest; Former Client) which prohibits a "lawyer who has formerly represented a client in a matter" from later "representing another person in the same or substantially related matter in which that person's interests are

Appx. 0250

materially adverse to the interests of the former client unless the former client gives informed consent." *R. Regulating Fla. Bar 4-1.9 (a) (emphasis added)*.

In order to succeed on a motion for disqualification on the basis of a conflict of interest, the party seeking disqualification must first show "the existence of a prior attorney/client relationship." *See Fenik v. One Water Place*, No. 3:06CV514/RV/EMT, 2007 WL 527997, at *4 (N.D. Fla. Feb. 14, 2007). "[O]nce the attorney-client relationship is established, there is an irrebuttable presumption the members of the firm have obtained confidential knowledge from the relationship." *Matter of Outdoor Prod. Corp.*, 183 B.R. 645, 648-49 (Bankr. M.D.Fla. 1995). Second, the movant must show that "the matter in which the law firm [is] subsequently represent[ing] the interest adverse to the former client [is] the same or substantially related to the matter in which it represented the former client." *United States Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, No. 12-81311-CV, 2013 WL 12082739, at *4 (S.D. Fla. Sept. 6, 2013).

## IV. ARGUMENT

VerStandig and the VerStandig Law Firm, LLC (collectively "VerStandig") should be disqualified from representing the King Parties in this action as a result of VerStandig's prior representation of Myers in his various capacities, pursuant to Rule Regulating the Florid Bar 4-1.9. Both factual elements necessary for disqualification are present here and VerStandig should be disqualified as a result.[3]

### A. An Attorney-Client Relationship Existed Between VerStandig and Myers

There can be no reasonable dispute that VerStandig represented Myers in his various capacities in connection with 6789 Goldsboro LLC now implicated in the Goldsboro Litigation,

---

[3] Where one lawyer in a firm is prohibited from representing a client under Rule 4-1.9, the entire firm is disqualified as well. *See* Fla. R. Prof'l Conduct 4-1.10.

Appx. 0251

as well as VerStandig's collaboration with Myers's Maryland counsel on filings in connection with Myers's Maryland bankruptcy proceeding (*see* **Exhibit A**). Legal advice was solicited by Myers and rendered by VerStandig. Exhibits A, B, C and D clearly document this fact; there was clearly an attorney-client relationship.

### B. VerStandig's Representation Was Substantially Related to the Issues in This Proceeding

"Matters are 'substantially related' for the purposes of this rule [Rule 4-1.9] if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client." *Philip Morris USA Inc. v. Caro*, No. 4D16-2416, 2016 WL 7118833, *3 (Fla. 4th DCA Dec. 7, 2016) (citing R. Regulating Fla. Bar 4-1.9 comment); *see also Commodity Futures*, 2013 WL 12082739 at *4 (for an action to be substantially related, the matter "need only be akin to the present action in a way reasonable persons would understand as important to the issues involved"). VerStandig's prior representation of Myers in his various capacities involved the same issues as the King Motion including various state court litigation cases and appeals (*see* Exhibits A and C), the Maryland bankruptcy proceeding (*see* Exhibit B), and the negotiation, drafting and enactment of the amended operating agreement for 6789 Goldsboro LLC between the King Parties and ServTrust for which Myers is a co-trustee, (*see* Exhibit D, p.19) and which is at the core of the King Motion. Moreover, it was an Offit Kurman attorney who, while representing Myers, introduced the King Parties to Myers and helped facilitate the King Parties involvement in 6789 Goldsboro LLC now implicated in the Goldsboro Litigation referenced in the King Motion (*see* Exhibit D).

Though Myers is not required to show that he is prejudiced by VerStandig's representation of the King Parties, there can be no doubt that he is, in fact, prejudiced by VerStandig's representation of the King Parties and said representation is a breach of

Appx. 0252

VerStandig's duties to Myers. As stated by the Supreme Court of Florida, "Our legal system cannot function fairly or effectively if an attorney has an informational advantage in the form of confidences gained during a former representation of his client's current opponent." *State Farm Mut.*, 575 So.2d at 632. Here, VerStandig has an informational advantage because of the confidences gained during his representation of Myers in his various capacities, which advantage VerStandig can and will use to Myers' detriment.

There is clearly, at the very least, "an appearance of impropriety – in the form of an undermining of the loyalty and trust upon which an attorney-client relationship is based" – which requires VerStandig's disqualification from representing King Parties in this litigation. *Brent v. Smithers*, 529 So.2d 1267, 1269 (Fla. 3rd DCA 1998) (law firm that previously represented one co-trustee of estate disqualified from defending the other co-trustee and beneficiaries).

## V. CONCLUSION

VerStandig and The VerStandig Law Firm, LLC should be disqualified from representing the King Parties in this proceeding as a result of VerStandig's prior and current representation of Myers. VerStandig has received confidential information from Myers and has provided confidential legal advice to Myers in his various capacities, which information and advice is materially related to the matters at issue in the King Motion. Significant discovery will have to be taken from VerStandig, including testimony from VerStandig. Myers' motion to disqualify VerStandig should be granted.

Dated: May 12, 2021                    ANASTASIA LAW, P.L.

                                       */s/ Undine C. George*
                                       Undine C. George, Esquire
                                       FL Bar No. 16872
                                       107 A 11th Street
                                       St. Augustine, FL 32080
                                       (904) 236-6243

Appx. 0253

undine@anastasialaw.net
service@anastasialaw.net
*Attorney for Debtor*

**PROOF OF SERVICE**

I hereby certify that on May 12, 2021, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system thereby serving all registered users in this case, including the Chapter 13 Trustee, Jon Waage, PO Box 25001, Bradenton, FL 34206-5001 and Maurice B. VerStandig, Esq., 1452 W. Horizon Ridge Pkwy, #665, Henderson, Nevada 89012, counsel for the King Parties, mac@mbvesq.com .

*/s/ Undine C. George*
Undine C. George, Esquire
FL Bar No. 16872
107 A 11th Street
St. Augustine, FL 32080

Appx. 0254

# Exhibit A

 Gmail

Undine George <undinec@gmail.com>

## FW: Montgomery County Land Development Project

1 message

**Greg Myers** <gregbmyers@verizon.net>                                    Mon, May 10, 2021 at 2:01 PM
To: undine george <undine@anastasialaw.net>
Cc: gregbmyers@verizon.net

FYI

-----Original Message-----
From: VerStandig, Mac <mverstandig@offitkurman.com>
Sent: Thursday, May 16, 2013 3:59 PM
To: Greg Myers <gregbmyers@verizon.net>
Cc: Erskine, William <werskine@offitkurman.com>; Lynch, Timothy <tlynch@offitkurman.com>; King, Lisa
<lking@offitkurman.com>
Subject: Re: Montgomery County Land Development Project

Greg,

Tomorrow is not going to work for scheduling reasons, but we would be delighted to meet at 2:00 Monday if you could
come to Maple Lawn then.

In the interim, I have given Bill the broadest of outlines of what you are contemplating, but he would appreciate it if you
could send an email with a factual sketch - and any supporting docs (ie, old ordinances) - before the meeting.

Vis a vis charge, please bring with you a check for $1,500.00 to cover the meeting.

Thanks,

Maurice "Mac" VerStandig
Offit | Kurman
        Attorneys At Law

4800 Montgomery Lane
Suite 900
Bethesda, Maryland 20814

(240) 507-1714

mailto:mverstandig@offitkurman.com
http://www.offitkurman.com
PRIVILEGED COMMUNICATION/PRIVACY NOTICE

Information contained in this transmission is attorney-client privileged and confidential.  It is solely intended for use by the
individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that
any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this
communication in error, please immediately notify us by telephone and delete this communication.
IRS CIRCULAR 230 DISCLOSURE

To ensure compliance with requirements imposed by the IRS, we inform you that any US federal tax advice contained in
this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose
of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party
any transaction or matter addressed herein.

Sent from my iPhone

On May 16, 2013, at 7:44 AM, "Greg Myers" <gregbmyers@verizon.net<mailto:gregbmyers@verizon.net>> wrote:

I am available to meet tomorrow, Friday 5/17, anytime from 11 AM on in Maples Lawn - please pick a time and let me

Appx. 0256

know. I will email information about the property.

Thanks,
Gregory B. Myers
(301) 325-2312  Mobile


From: Erskine, William [mailto:werskine@offitkurman.com]
Sent: Thursday, May 16, 2013 6:47 AM
To: VerStandig, Mac
Cc: Greg Myers; Lynch, Timothy; King, Lisa
Subject: RE: Montgomery County Land Development Project

Mac,

I am happy to assist. I am pretty flexible tomorrow or Monday. Let me know if that works for you. It would be helpful if Greg could email me as much information as possible about the property and the project being contemplated in advance so that I can have a base level understanding before we meet.

I look forward to seeing you.
William E. Erskine
Principal
Offit | Kurman
Attorneys At Law

From: VerStandig, Mac
Sent: Wednesday, May 15, 2013 11:44 PM
To: Erskine, William
Cc: Greg Myers; Lynch, Timothy
Subject: Montgomery County Land Development Project

Bill,

Tim Lynch represents a gentleman named Greg Myers, who I am copying on this e-mail, and I do what I can to occasionally offer assistance with Greg's various legal matters. Greg is a longstanding firm client and an all around good guy.

Greg has indicated that he is currently amidst the study period on a land acquisition deal in Montgomery County, and his review of both the subject real estate and various accompanying ordinances has served to create a situation where he believes there may be ample opportunity for a large scale development project. However, a good bit of this belief stems from Greg's reading of local code provisions (both current and historic in nature), and he would like to review much of this – and discuss various timelines and potential steps – before his study period expires and he is forced to make a final decision on how to proceed.

With this in mind, please let us know if you have some time in the coming week to sit down with Greg, Tim and/or myself, in Maple Lawn, to discuss this in some greater detail and offer some guidance on the matter. I know Greg prides himself on being available, but if you could kindly let us know when may be best for you, we can all see if our calendars sync up accordingly, and go from there.

Thanks,
Maurice "Mac" VerStandig
Attorney
Offit | Kurman
Attorneys At Law

240.507.1714  Washington
240.507.1735  Facsimile
www.offitkurman.com<http://www.offitkurman.com>

Washington
4800 Montgomery Lane | 9th Floor | Bethesda, MD 20814
_____
PRIVILEGED COMMUNICATION/PRIVACY NOTICE
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that

Appx_0257

any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone and delete this communication.

IRS CIRCULAR 230 DISCLOSURE
To ensure compliance with requirements imposed by the IRS, we inform you that any US federal tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Appx. 0258

# Exhibit B

 Gmail

Undine George <undinec@gmail.com>

## FW: SERVICE OF COURT DOCUMENT - CASE NUMBER 2D2015-4521

1 message

**Greg Myers** <gregbmyers@verizon.net>                    Mon, May 10, 2021 at 1:55 PM
To: undine george <undine@anastasialaw.net>
Cc: gregbmyers@verizon.net

FYI

**From:** Steven L. Goldberg <sgoldberg@mhlawyers.com>
**Sent:** Thursday, December 17, 2015 3:15 AM
**To:** 'Mac VerStandig' <mac@mbvesq.com>
**Cc:** 'Lynch, Timothy' <tlynch@offitkurman.com>; James M. Greenan <JGreenan@MHLawyers.com>; 'gregbmyers@verizon.net' <gregbmyers@verizon.net>;
'bakellymyers@verizon.net' <bakellymyers@verizon.net>
**Subject:** RE: SERVICE OF COURT DOCUMENT - CASE NUMBER 2D2015-4521

Thanks Mac. I can only take little credit; the heavy lifting was yours. It's good to hear from you. Lets catch up soon. Take care.

**From:** Mac VerStandig [mailto:mac@mbvesq.com]
**Sent:** Thursday, December 17, 2015 1:35 AM
**To:** Steven L. Goldberg
**Cc:** Lynch, Timothy; James M. Greenan; gregbmyers@verizon.net; bakellymyers@verizon.net
**Subject:** Re: SERVICE OF COURT DOCUMENT - CASE NUMBER 2D2015-4521

Thanks, Steve -- changes look good to me and help it a good bit. I'll file in the morning.

Nice to see your name pop up; it's been more than a few years...

Thanks,

Maurice "Mac" VerStandig, Esq.

The VerStandig Law Firm, LLC

12505 Park Potomac Avenue, Sixth Floor

Potomac, Maryland 20854

Phone: (301)444-4600

Cell: (240)351-6442

mac@mbvesq.com

**PRIVILEGED COMMUNICATION/PRIVACY NOTICE**
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

**TAX ADVICE NOTICE**
Any tax advice included in this communication may not contain a full description of all relevant facts or a complete analysis of all relevant tax issues or authorities. This communication is solely for the intended recipient's benefit and may not be relied upon by any other person or entity.

On Dec 16, 2015, at 10:28 PM, Steven L. Goldberg <sgoldberg@mhlawyers.com> wrote:

Mac, Tim: Good work on the Response. It's excellent. I added a few cases and made some minor revisions/additions for your consideration. Nice job.

**From:** Lynch, Timothy [mailto:tlynch@offitkurman.com]
**Sent:** Wednesday, December 16, 2015 8:59 PM
**To:** James M. Greenan
**Cc:** gregbmyers@verizon.net; Steven L. Goldberg; bakellymyers@verizon.net; mac@mbvesq.com
**Subject:** RE: SERVICE OF COURT DOCUMENT - CASE NUMBER 2D2015-4521

Appx_0260

This is what we prepared while we were waiting to see if you had guidance. If you want to review and share some insight – we are receptive to that. We are not asking you to redline but if this position is not consistent with the position that you all are taking for Greg – we are certain that Barbara Ann would not want to be inconsistent with his positions.

Please copy Mac on any response as I will be in trial all day tomorrow and this needs to be e-filed. Mac has agreed to do that.


Tim



**From:** James M. Greenan [mailto:JGreenan@MHLawyers.com]
**Sent:** Wednesday, December 16, 2015 4:56 PM
**To:** Lynch, Timothy <tlynch@offitkurman.com>
**Cc:** gregbmyers@verizon.net; Steven L. Goldberg <sgoldberg@mhlawyers.com>
**Subject:** RE: SERVICE OF COURT DOCUMENT - CASE NUMBER 2D2015-4521


Ok. We will have it ready tomorrow.

Good luck in your trial!

Jim



<image001.jpg>    James M. Greenan, Esq.

Principal*


6411 Ivy Lane, Suite 200

Greenbelt, Maryland 20770

(301) 441-2420 (P)

(301) 982-9450 (F)


888 Bestgate Road, Suite 402

Annapolis, Maryland 21401

(410) 266-9909 (P)

(410) 266-8425 (F)


www.mhlawyers.com

www.linkedin.com/in/jamesgreenan


*Admitted in Maryland

and the District of Columbia

The information contained herein is confidential and intended for the exclusive use of the addressee(s). If you are not the intended recipient, you are hereby notified that any review, use, dissemination, distribution or copying of this message is strictly prohibited. If you received this e-mail in error, please notify the sender immediately and delete the message.

Disclosure Required by IRS Circular 230:

In accordance with IRS requirements, we wish to inform you that, to the extent this communication contains tax advice, it is not intended or written to be used for the purpose of 1) avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service, or 2) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Appx. 0261

**From:** Lynch, Timothy [mailto:tlynch@offitkurman.com]
**Sent:** Wednesday, December 16, 2015 4:53 PM
**To:** James M. Greenan
**Cc:** gregbmyers@verizon.net; Steven L. Goldberg
**Subject:** RE: SERVICE OF COURT DOCUMENT - CASE NUMBER 2D2015-4521

Not sure - maybe tomorrow. I am in trial in nyc

Sent from my Android phone using TouchDown (www.nitrodesk.com)

-----Original Message-----
**From:** James M. Greenan [JGreenan@MHLawyers.com]
**Received:** Wednesday, 16 Dec 2015, 2:37PM
**To:** Lynch, Timothy [tlynch@offitkurman.com]
**CC:** Greg Myers (gregbmyers@verizon.net) [gregbmyers@verizon.net]; Steven L. Goldberg [sgoldberg@mhlawyers.com]
**Subject:** RE: SERVICE OF COURT DOCUMENT - CASE NUMBER 2D2015-4521

Tim: Steve is going to prepare a response for you to file. When is it due?

Jim

<image001.jpg>   James M. Greenan, Esq.

Principal*

6411 Ivy Lane, Suite 200

Greenbelt, Maryland 20770

(301) 441-2420 (P)

(301) 982-9450 (F)

888 Bestgate Road, Suite 402

Annapolis, Maryland 21401

(410) 266-9909 (P)

(410) 266-8425 (F)

www.mhlawyers.com

www.linkedin.com/in/jamesgreenan

*Admitted in Maryland

and the District of Columbia

The information contained herein is confidential and intended for the exclusive use of the addressee(s). If you are not the intended recipient, you are hereby notified that any review, use, dissemination, distribution or copying of this message is strictly prohibited. If you received this e-mail in error, please notify the sender immediately and delete the message.

Disclosure Required by IRS Circular 230:
In accordance with IRS requirements, we wish to inform you that, to the extent this communication contains tax advice, it is not intended or written to be used for the purpose of 1) avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service, or 2) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Lynch, Timothy [mailto:tlynch@offitkurman.com]
**Sent:** Monday, December 14, 2015 12:56 PM
**To:** James M. Greenan; Gregory Myers
**Cc:** bakellymyers@verizon.net; mac@mbvesq.com
**Subject:** FW: SERVICE OF COURT DOCUMENT - CASE NUMBER 2D2015-4521

Appx 0262

Here is the related filing.

From: eservice@myflcourtaccess.com [mailto:eservice@myflcourtaccess.com]
Sent: Monday, December 14, 2015 12:52 PM
Subject: SERVICE OF COURT DOCUMENT - CASE NUMBER 2D2015-4521

Notice of Service of Court Documents

Filing Information

| | |
|---|---|
| Filing #: | 35496130 |
| Filing Time: | 12/14/2015 12:51:39 PM ET |
| Filer: | Dean A. Morande 561-659-7070 |
| Court: | Second District Court of Appeal |
| Case #: | 2D2015-4521 |
| Court Case #: | 2D2015-4521 |
| Case Style: | GREGORY MYERS vs U. S. BANK NATIONAL ASOC. |

| Title | File |
|---|---|
| Response | 2015-12-14 - WF-Kelly & Myers - Appellee's Response to Order re Bankruptcy Stay.pdf |

| Name | Email Address |
|---|---|
| Dean A. Morande | dmorande@cfjblaw.com |
| | kcasazza@cfjblaw.com |
| | wpbecf@cfdom.net |
| Gregory B. Myers | gregbmyers@verizon.net |
| Timothy Lynch | tlynch@offitkurman.com |
| Maurice VerStandig | mverstandig@offitkurman.com |
| Julie Anthousis | flcourtdocs@brockandscott.com |

| Name | Email Address |
|---|---|
| Michael A. Gort | mike@gortlaw.com |
| Christopher C. Fogleman | cfogleman@gleason-law.com |
| Philip D. Storey | stb@aswpa.com |
| Hilda Cenecharles | hildacenecharles@yahoo.com |

Appx. 0263

| Name | Email Address |
|---|---|
| Alice Rios, LAA | arios@cfjblaw.com |
| Jason Perkins | jperkins@cfjblaw.com |

Thank you,
The Florida Courts E-Filing Portal

The following identifier(s) are associated with this transaction:

request_id#:35496130;Audit#:122993561;UCN#:2D2015-4521;

**PRIVILEGED COMMUNICATION/PRIVACY NOTICE**
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

Any tax advice included in this communication may not contain a full description of all relevant facts or a complete analysis of all relevant tax issues or authorities. This communication is solely for the intended recipient's benefit and may not be relied upon by any other person or entity.

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

**PRIVILEGED COMMUNICATION/PRIVACY NOTICE**
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

Any tax advice included in this communication may not contain a full description of all relevant facts or a complete analysis of all relevant tax issues or authorities. This communication is solely for the intended recipient's benefit and may not be relied upon by any other person or entity.

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

**PRIVILEGED COMMUNICATION/PRIVACY NOTICE**
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

Any tax advice included in this communication may not contain a full description of all relevant facts or a complete analysis of all relevant tax issues or authorities. This communication is solely for the intended recipient's benefit and may not be relied upon by any other person or entity.

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

<Myers Greg Memo re Stay.docx>

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

Appx_0264

# Exhibit C

Appx. 0265

5/10/2021

# Alex Alford  Clerk of Courts & County Comptroller

"Providing exceptional service through innovation, quality and commitment."

New Search  Expand All

| Case Number | Filed Date | Case Type | Status | Contested | Jury Trial |
|---|---|---|---|---|---|
| 662010CA000660CAAXMX [10000660CAAXMX] | 04/26/2010 | Circuit Civil 37-D | CLOSED CASE | NO | NO |

| Filing Date | Description | Active | Contested | Judgment Date |
|---|---|---|---|---|
| 04/26/2010 | RP/MF-NONHOMESTEAD RESD $250,000-MORE | NO | NO | 04/06/2015 |

10 ∨

| Party Name | Party Type | Attorney | Bar ID |
|---|---|---|---|
| LEWIS, JEFFREY EDWARD | JUDGE | | |
| LEWIS, JEFFREY EDWARD | JUDGE AT DISPOSITION | | |
| BANK OF AMERICA NATIONAL ASSOC   Search This Party | PLAINTIFF | PERKINS, JASON ANDREW | 610852 |
| KELLY, BARBARA ANN   Search This Party | DEFENDANT | VERSTANDIG, MAURICE BELMONT | 76723 |
| MYERS, GREGORY B   Search This Party | DEFENDANT | VERSTANDIG, MAURICE BELMONT | 76723 |
| REGIONS BANK   Search This Party | DEFENDANT | GARRIDO, CARIDAD MONTERO | 814733 |
| WATERCOLOR COMMUNITY ASSOC INC   Search This Party | DEFENDANT | SHIPMAN, GARY ALLEN | 593435 |
| TENANT, #1   Search This Party | DEFENDANT | | |
| TENANT #2   Search This Party | DEFENDANT | | |
| TENANT #3   Search This Party | DEFENDANT | | |

## Dockets  —

Page : 1   10 ∨

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| | 587 | 02/17/2021 | SUGGESTION OF BANKRUPTCY | 3 |
| | 586 | 02/02/2021 | BY ORDER OF THE COURT FILED | 1 |
| | 585 | 01/05/2021 | BY ORDER OF THE COURT FILED | 1 |
| | 584 | 12/29/2020 | PAYMENT RECEIVED $924.00 RECEIPT NUMBER MX 138005 | |
| | 583 | 12/29/2020 | ASSESSMENT 27 ASSESSED AT SUM $924.00 | |
| | 582 | 12/11/2020 | BY ORDER OF THE COURT FILED | 1 |
| | 581 | 07/15/2020 | BY ORDER OF THE COURT FILED | 1 |
| | 580 | 07/02/2020 | BY ORDER OF THE COURT FILED | 1 |
| | 579 | 03/06/2020 | BY ORDER OF THE COURT FILED APPEAL DISMISSED 18-0690 | 1 |
| | 578 | 12/19/2019 | BY ORDER OF THE COURT FILED | 1 |

| Judge Assignment History | + |
|---|---|
| **Court Events** | + |
| **Financial Summary** | + |
| **Reopen History** | + |

** Pursuant to Florida Statutes and Florida Rules of Court Procedure, records that have been designated as expunged, sealed or confidential may not be available through this service. For additional information on specific records please contact the Clerk of Court.

Appx. 0266

Case Case-04-00023-FM Doc 49 Doc Filed 07/01/25 12 Page Page 24 of 86 of 83

# Exhibit D

# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

BRIAN KING, et al.

    Plaintiffs / Counter Defendants,

v.

SERV TRUST, et al,

    Defendants / Counter Plaintiff.

_____/

**Case No.: 436977-V**
**(Lead Case)**


6789 GOLDSBORO LLC,

    Plaintiff,

v.

SERV TRUST, *et al.*,

    Defendants.

_____/

**Case No.: 451611-V**


## MOTION FOR DISQUALIFICATION OF COUNSEL

COMES NOW Defendant Gregory B. Myers, through undersigned counsel, and respectfully moves that this Court Disqualify the counsel of all Plaintiffs in the above captioned actions for conflict of interest, and in support thereof states:

## I.    INTRODUCTION

Counsel for both sets of Plaintiffs in this consolidated action must be disqualified from the above captioned case(s) because of their prior representation of Defendant Gregory B. Myers ("Myers"). Specifically, Maurice VerStandig ("Mr. VerStandig") and the VerStandig Law Firm ("VLF"), counsel for the 436977-V Plaintiffs Brian King, Cristina King, and the Cristina and Brian

1

Appx. 0268

King Children's Trust (together the "King Parties"); and Eric Pelletier ("Mr. Pelletier"), Frances Wilburn ("Mr. Wilburn"), and the law firm of Offit Kurman, counsel for the 451611-V Plaintiff 6789 Goldsboro LLC ("Goldsboro"), are prohibited by the Maryland Rules of Professional Conduct from appearing in this case adverse to Myers. Myers was a longstanding client of the firm Offit Kurman, and during that time Mr. VerStandig was an associate with that firm. Mr. VerStandig and multiple other attorneys at Offit Kurman represented Myers on a multitude of matters, including issues substantially related – if not in fact identical – to the issues presented in the current litigation. Therefore, as set forth in further detail below, any attorney associated with Offit Kurman cannot represent parties adverse to Myers in this case.

## II.    RELEVANT FACTS

The procedural history of the current litigation is convoluted and sordid, and the allegations and disputed issues are numerous. However, for the purposes of the current motion, the following cursory summary of the cases will suffice.[1]

Case No. 451611-V (the "Goldsboro Case") alleges breach by Serv Trust of a promissory note to 6789 Goldsboro LLC. It further alleges the existence and breach of a personal guarantee of that promissory note by Myers.

Case No. 436977-V (the "King Case") seeks declaratory judgment holding that, under the terms of the current operating agreement of Goldsboro LLC, the King parties, as Class A members, are entitled to redeem the interests of Serv Trust, the Class B member. This claim is based on the alleged contributions of the Class A members to the LLC, the value of the real property located at

---

[1] The facts recited herein are meant only as a summary of the various parties' positions, and are made without prejudice to any position that Myers takes, has taken, or will take with regard to these issues.

Appx. 0269

6789 Goldsboro Road Bethesda, MD 20817 (the "Goldsboro Property"), and the rights that Serv Trust has allegedly waived. Serv Trust has filed a counterclaim alleging various wrongdoings by Goldsboro and the King Parties, including breach of fiduciary duties with regards to developing the Goldsboro Property, and failure to close on a contract to purchase Serv Trust's interest in the Goldsboro Property. The King parties have alleged that Serv Trust is in fact an alter ego of Myers based on his and the trust's actions during their relationship with the King Parties.

## III.    LEGAL STANDARD

It is a clear principle, both in the model rules of professional conduct and in Maryland in particular, that an attorney may not represent a party adverse to his former client in a substantially related matter. *See* Md. Rule 19-301.7 *et seq.* This is true regardless of whether the prior client was an actual client, or merely prospective. Md. Rule 19-301.18. The restrictions apply both to individual attorneys, and, more broadly, to their law firms. Md. Rule 19-301.10. These rules must be enforced by trial courts because "[o]ne of the Court's duties and responsibilities is to ensure that attorneys who appear before it preserve the public's confidence in the judicial system." *Buckley v. Airshield Corp.*, 908 F.Supp. 299, 303-04 (D. Md. 1995)(citations omitted). "[T]he guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings." *Stratagene v. Invitrogen Corp.*, 225 F.Supp.2d 608, 610 (D. Md. 2002)(citations omitted).

Disqualification of a party's chosen attorney is not to be taken lightly. However, this concern "is secondary in importance to the Court's duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar." 908 F. Supp. at 308 (quoting *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990)). In determining if disqualification is appropriate, courts look for a "substantial relationship" between

3

the conflicting representations. *Stitz v. Bethlehem Steel Corp.*, 650 F. Supp. 914, 916 (D. Md. 1987); *see also Davis v. Petito*, 197 Md. App. 487, 509 (2011) (applying the *Stitz* holding to civil cases in Maryland Circuit Courts). A substantial relationship is presumed if there is even "a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation." *Stitz*, 650 F. Supp. at 916. Furthermore, a "trial court is not to weigh the circumstances with 'hairsplitting nicety,' but, in the proper exercise of its supervisory power. . . is to resolve all doubts in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977).

## IV.     ARGUMENT

The Maryland Rules provide that:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interest of the former client unless the former client consents after consultation; . . . .

Md. Rule 19-301.9. Application of this rule involves a two-step inquiry. First, there must be an attorney-client relationship with the former client. *Stratagene*, 225 F. Supp. 2d at 610. Second, the matter at issue in the former representation must be substantially related to that in the current action. *Id.* Even if no attorney-client relationship exists, an attorney and the associated law firm are subject to the same restrictions on representing a party adverse to a prospective client. Md. Rule 19-301.18. A prospective client is defined as "a person who discusses with an attorney the possibility of forming a client-attorney relationship with respect to a matter," and is entitled to the same rights as former clients under Rule 19-301.9. *Id.*

4

## A. Myers is a former and/or prospective Client of Mr. VerStandig and Offit Kurman.

There is no doubt that both Mr. VerStandig and Offit Kurman had an attorney client relationship with Mr. Myers. Mr. VerStandig directly confirmed as much in an email (sent in his capacity as an Offit Kurman associate to another attorney at Offit Kurman) in 2013 stating "Greg is a longstanding firm client . . . ." Erskine Emails, attached hereto as Exhibit A. The email also stated "I do what I can to occasionally offer assistance with Greg's various legal matters." *Id.* These matters included providing Mr. Myers with legal counsel in, *inter alia*, defending foreclosure proceedings against property owned by Mr. Myers and his wife, bankruptcy proceedings, and other civil actions by and against Mr. Myers in both Maryland and Florida courts. Offit Kurman's representation of Mr. Myers also included matters that did not ultimately result in litigation, or in which Offit Kurman did not serve as Mr. Myers's trial counsel. One such matter involved a dispute between Mr. Myers and his disability insurance carrier.

The duration, breadth, and depth of Offit Kurman's representation of Mr. Myers on these matters alone is sufficient to warrant their disqualification from representing adverse parties in this litigation. *See* Md. Rule 19-301.9. As general counsel to Mr. Myers from 2010 to 2015, Offit Kurman attorneys were privy to countless details regarding Mr. Myers's legal, financial, and personal information.[2] *Id.; see also Buckley*, 908 F. Supp. at 306 ("A confidence can be revealed on a related subject matter in a brief moment and without the client being charged a nickel.").

## B. Mr. VerStandig and Offit Kurman previously represented Myers regarding issues that are substantially related to this Litigation.

The need for this court to disqualify Mr. VerStandig and Offit Kurman is even clearer. While representing Mr. Myers, Offit Kurman was consulted regarding Mr. Myers's plans

---

[2] For instance, in negotiating with Mr. Myers's insurance carrier regarding a claim for benefits, Offit Kurman would have had access to highly detailed and confidential - and potentially embarrassing - medical records and reports.

5

and concerns for Serv Trust and the Goldsboro property. Moreover, Offit Kurman and Mr. VerStandig were Mr. Myers's attorneys at the time that the Promissory Note and Guaranty – the subject of Case No. 451611-V – were negotiated and executed. They were Mr. Myers's attorneys when he discussed with them the potential for rezoning and developing the Goldsboro property – details of which may well be dispositive of Case No. 436977-V.[3]

The issues discussed by Myers and his attorneys at Offit Kurman are reflected in their written communications. In May of 2013, Myers, in his capacity as the trustee of Serv Trust, was introduced by Mr. VerStandig to another Offit Kurman attorney, William Erskine, in order to go over plans and proposals that Myers was contemplating with regards to the Goldsboro property. Exhibit A. These discussions with Myers occurred in May of 2013 – prior to Offit Kurman being retained by Goldsboro LLC, which did not occur until late July 2013.[4] *See* Offit Kurman Invoices, attached hereto as Exhibit B, at p. 2; *see also* Engagement Letter, attached hereto as Exhibit C. Mr. Erskine's work with Myers on this subject continued until at least August of 2014. *See* Offit Kurman Invoices, Exhibit C, at p. 34.[5]

Offit Kurman attorneys – while representing Myers – also introduced Myers to King, and facilitated, *inter alia*, the drafting and enactment of the Goldsboro Operating agreement.[6] These are all key facts and issues in Case No. 436977-V, where Mr. VerStandig's current clients – the King Parties – are directly adverse to his former client Gregory Myers. In particular, Myers's

---

[3] Even if Offit Kurman ultimately did not represent Myers on these issues, he is still a prospective client with respect to these matters. There is no question that Myers requested consultations with Offit Kurman attorneys – with the reasonable expectation that an attorney-client relationship would result – on subjects now central to this litigation.

[4] Prior to July 18, 2013, Serv Trust was the sole member of 6789 Goldsboro LLC, with Gregory Myers acting as Manager of the LLC. After July 18, 2013, the King Parties comprised 50% of the membership of Goldsboro LLC, with Myers continuing to act as Manager until August 13, 2017.

[5] Note that all invoices are submitted to "gregbmyers@verizon.net" – the contact point for Mr. Myers.

[6] The King Parties allege that "Mr. Myers was introduced to Mr. King." First Am. Comp. at par. 32. They fail to mention, however, that it was Tim Lynch of Offit Kurman – who was then Myers's attorney – who introduced Myers to his adversary, and whom Offit Kurman attorneys now represent.

6

discussions with his counsel necessarily divulged his factual knowledge, legal theories, and plans or intentions for developing the Goldsboro property – a critical issue in this case.

The billing statements issued by Offit Kurman confirm that such confidential information was exchanged. On February 6, 2019, Offit Kurman attorney John Raftery billed for:

> Review research by Mac Verstandig [sic], otherwise **review Greg's outline of proposed projec**t (.4); **meeting with Greg to review and discuss project**; review statutes, case law and **extensive dialog on goals and methodology**; consider protected classes and other potential users of the facility (2.4)

Offit Kurman Invoices, Exhibit B, at p. 18 (emphasis added). Plainly, the attorneys of Offit Kurman had direct access to Myers's confidential information regarding development of the Goldsboro property. *Id.* It is clearly improper for that firm – or any attorneys associated therewith, to now oppose Myers in a dispute over these issues.

Subsequently, in October of 2014, Myers sought advice from his attorneys regarding a contemplated promissory note between Goldsboro LLC and Serv Trust. He was referred specifically to attorney Dave McRae,[7] who discussed the issue with Myers via telephone and email. *See* McRae Emails, attached hereto as Exhibit D. Mr. McRae also provided Myers with a redlined revision draft of the Promissory Note. *Id.* This Promissory Note, and the associated Personal Guarantee, are contracts at issue in the Goldsboro case, where Offit Kurman's new client – Goldsboro LLC – is directly adverse to its former client, Gregory Myers.

### C. If an Attorney in a Law Firm is Disqualified, All Attorneys Associated with that Attorney OR Firm are Similarly Barred.

Both the Maryland and model rules of professional conduct extend the prohibition on an individual attorney appearing adverse to a former client to that attorney's entire law firm:

---

[7] Although no longer associated with Offit Kurman, Mr. McRae was associated therewith at the time of his work for Myers.

7

> While attorneys are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 19-301.7 (1.7) or 19-301.9 (1.9), unless the prohibition is based on a personal interest of the prohibited attorney and does not present a significant risk of materially limiting the representation of the client by the remaining attorneys in the firm.

Md. Rule 19-301.10. It is immaterial whether any particular attorney is identified as having personally worked for the former client – they are plainly disqualified by dint of their association with a disqualified firm. *Id; The Nichols Agency, Inc. v. Enchanted Child Care, Inc.*, 537 F.Supp.2d 774, 777, n. 1 (D. Md. 2008) (Rule 1.10 states that none of the lawyers in a firm may represent a client if any of the lawyers in the firm is prohibited from such representation).

In this case, both Mr. VerStandig[8], counsel for the King Parties, and all attorneys of Offit Kurman, counsel for Goldsboro, must be disqualified. Although Mr. VerStandig has now separated from Offit Kurman and maintains a separate practice, it is undisputed that between 2010 and 2015 he was an associate of the Offit Kurman firm.[9] While at Offit Kurman, Mr. VerStandig was one of several attorneys who represented Mr. Myers on a wide variety of legal matters. Regardless, there is an irrefutable presumption that confidential information was conveyed to any and all attorneys associated with Offit Kurman at the time that it represented Myers. *Nichols*, 537 F. Supp. 2d at 779. Therefore all attorneys of Offit Kurman, including the former associate Mr. VerStandig and his current firm VLF, are prohibited from representing the Plaintiffs in this action, and so must be disqualified.

---

[8] And, by imputation, the VerStandig Law Firm. Md. Rule 19-301.10.
[9] Moreover Mr. VerStandig transitioned directly from his association with Offit Kurman to his current practice in 2015, as confirmed by his autobiographical information on the VLF website, and Maryland SDAT filings.

8

## V.     CONCLUSION

For the foregoing reasons, and any reasons that may arise on the hearing requested in this matter, Myers respectfully requests that the foregoing motion be granted in full, that Mr. VerStandig, the VerStandig Law Firm, and all attorneys of Offit Kurman be disqualified as counsel to any party adverse to Gregory B. Myers in the above captioned actions.

Respectfully submitted,

10/10/19

Roger C. Simmons, Esq.
Benjamin J. Andres, Esq.
Gordon & Simmons, LLC
1050 Key Parkway, Suite 101
Frederick, Maryland 21702
(301) 662-9122
(301) 698-0392 (fax)
rsimmons@gordonsimmons.com
*Counsel for Gregory B. Myers*

Appx. 0276

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 10th day of October, 2019, via email on:

Dominic Souza, Esq.
SOUZA LLC
2543 Housley Road
Annapolis, Maryland 21401
Tel.: (410) 571-8366
Fax: (410) 571-8367
E-mail: dsouza@souzalaw.com
**Counsel for Serv Trust**

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: 301-444-4600
Facsimile: 301-576-6885
E-mail: mac@mbvesq.com
**Counsel for Brian King, Cristina King, and the Cristina and Brian King Children's Trust**

Eric Pelletier, Esq.
4800 Montgomery Lane, 9th Floor
Bethesda, MD 20814
Phone: (240) 507-1700
Facsimile: (240) 507-1735
E-mail: epelletier@offitkurman.com
**Counsel for 6789 Goldsboro LLC**

Frank J. Mastro, Esq.
Schlossberg, Mastro & Scanlan
PO Box 2067
Hagerstown MD 21742
Phone: (301) 739-8610
Facsimile: (301) 791-6302
E-mail: fmastro@schlosslaw.com
**Counsel for Roger Schlossberg**

_____
Benjamin J. Andres, Esq.

10

Appx. 0277

# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

BRIAN KING, et al.

    Plaintiffs / Counter Defendants,

v.

                                               **Case No.: 436977-V**

SERV TRUST, et al,                           **(Lead Case)**

    Defendants / Counter Plaintiff.

_____/

6789 GOLDSBORO LLC,

    Plaintiff,

                                               **Case No.: 451611-V**

v.

SERV TRUST, *et al.*,

    Defendants.

_____/

## ORDER FOR DISQUALIFICATION OF COUNSEL

UPON CONSIDERATION of Defendant Gregory B. Myers's Motion for Disqualification of Counsel, any opposition and/or support thereto, it is, this ___ day of _____, 2019, by the Circuit Court for Montgomery County, Maryland, hereby:

ORDERED that the Motion for Disqualification is GRANTED; and it is further

ORDERED that the appearances of Maurice VerStandig, the VerStandig Law Firm, Eric Pelletier, Frances Wilburn, and Offit Kurman are hereby STRICKEN from the above-captioned case.

_____
JUDGE of the Circuit Court for Montgomery County, Maryland

# Exhibit A

Erskine Emails

**Kira Muren**

| | |
|---|---|
| **From:** | Greg Myers <gregbmyers@verizon.net> |
| **Sent:** | Wednesday, October 9, 2019 10:31 PM |
| **To:** | Benjamin Andres |
| **Cc:** | gregbmyers@verizon.net |
| **Subject:** | FW: Montgomery County Land Development Project |

FYI

-----Original Message-----
From: Greg Myers <gregbmyers@verizon.net>
Sent: Friday, May 17, 2013 2:47 PM
To: 'Erskine, William' <werskine@offitkurman.com>; 'VerStandig, Mac' <mverstandig@offitkurman.com>
Cc: 'Lynch, Timothy' <tlynch@offitkurman.com>; 'King, Lisa' <lking@offitkurman.com>; 'King, Lisa' <lking@offitkurman.com>
Subject: RE: Montgomery County Land Development Project

Bill - will do.

Thanks,
Gregory B. Myers
(301) 325-2312  Mobile

-----Original Message-----
From: Erskine, William [mailto:werskine@offitkurman.com]
Sent: Friday, May 17, 2013 9:23 AM
To: Gregory Myers; VerStandig, Mac
Cc: Lynch, Timothy; King, Lisa; King, Lisa
Subject: RE: Montgomery County Land Development Project

Greg,

Please be sure to forward me any information you have on the property and a description of you desired use.  I would like to be able to review this information over the weekend in preparation for our meeting on Monday.

Thanks a lot.  I look forward to meeting you.

William E. Erskine Principal Offit | Kurman Attorneys At Law

-----Original Message-----
From: Gregory Myers [mailto:gregbmyers@verizon.net]
Sent: Thursday, May 16, 2013 5:25 PM
To: VerStandig, Mac
Cc: Erskine, William; Lynch, Timothy; King, Lisa; Gregory Myers
Subject: Re: Montgomery County Land Development Project

OK - see everyone Monday.

1

Appx. 0280

Sent from my iPhone

On May 16, 2013, at 3:59 PM, "VerStandig, Mac" <mverstandig@offitkurman.com> wrote:

> Greg,
>
> Tomorrow is not going to work for scheduling reasons, but we would be delighted to meet at 2:00 Monday if you could come to Maple Lawn then.
>
> In the interim, I have given Bill the broadest of outlines of what you are contemplating, but he would appreciate it if you could send an email with a factual sketch - and any supporting docs (ie, old ordinances) - before the meeting.
>
> Vis a vis charge, please bring with you a check for $1,500.00 to cover the meeting.
>
> Thanks,
>
> Maurice "Mac" VerStandig
> Offit | Kurman
>     Attorneys At Law
>
> 4800 Montgomery Lane
> Suite 900
> Bethesda, Maryland 20814
>
> (240) 507-1714
>
> mailto:mverstandig@offitkurman.com
> http://www.offitkurman.com
> PRIVILEGED COMMUNICATION/PRIVACY NOTICE
>
> Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.
> IRS CIRCULAR 230 DISCLOSURE
>
> To ensure compliance with requirements imposed by the IRS, we inform you that any US federal tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.
>
> Sent from my iPhone
>
> On May 16, 2013, at 7:44 AM, "Greg Myers" <gregbmyers@verizon.net<mailto:gregbmyers@verizon.net>> wrote:
>
> I am available to meet tomorrow, Friday 5/17, anytime from 11 AM on in Maples Lawn - please pick a time and let me know. I will email information about the property.
>
> Thanks,
> Gregory B. Myers
> (301) 325-2312  Mobile

2

Appx. 0281

> 
> 
> From: Erskine, William [mailto:werskine@offitkurman.com]
> Sent: Thursday, May 16, 2013 6:47 AM
> To: VerStandig, Mac
> Cc: Greg Myers; Lynch, Timothy; King, Lisa
> Subject: RE: Montgomery County Land Development Project
> 
> Mac,
> 
> I am happy to assist. I am pretty flexible tomorrow or Monday. Let me know if that works for you. It would be helpful if Greg could email me as much information as possible about the property and the project being contemplated in advance so that I can have a base level understanding before we meet.
> 
> I look forward to seeing you.
> William E. Erskine
> Principal
> Offit|Kurman
> Attorneys At Law
> 
> From: VerStandig, Mac
> Sent: Wednesday, May 15, 2013 11:44 PM
> To: Erskine, William
> Cc: Greg Myers; Lynch, Timothy
> Subject: Montgomery County Land Development Project
> 
> Bill,
> 
> Tim Lynch represents a gentleman named Greg Myers, who I am copying on this e-mail, and I do what I can to occasionally offer assistance with Greg's various legal matters. Greg is a longstanding firm client and an all around good guy.
> 
> Greg has indicated that he is currently amidst the study period on a land acquisition deal in Montgomery County, and his review of both the subject real estate and various accompanying ordinances has served to create a situation where he believes there may be ample opportunity for a large scale development project. However, a good bit of this belief stems from Greg's reading of local code provisions (both current and historic in nature), and he would like to review much of this – and discuss various timelines and potential steps – before his study period expires and he is forced to make a final decision on how to proceed.
> 
> With this in mind, please let us know if you have some time in the coming week to sit down with Greg, Tim and/or myself, in Maple Lawn, to discuss this in some greater detail and offer some guidance on the matter. I know Greg prides himself on being available, but if you could kindly let us know when may be best for you, we can all see if our calendars sync up accordingly, and go from there.
> 
> Thanks,
> Maurice "Mac" VerStandig
> Attorney
> Offit|Kurman
> Attorneys At Law
> 
> 240.507.1714  Washington
> 240.507.1735   Facsimile

3

> www.offitkurman.com<http://www.offitkurman.com>
>
> Washington
> 4800 Montgomery Lane | 9th Floor | Bethesda, MD 20814
> _____ PRIVILEGED COMMUNICATION/PRIVACY
> NOTICE Information contained in this transmission is attorney-client
> privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.
>
> IRS CIRCULAR 230 DISCLOSURE
> To ensure compliance with requirements imposed by the IRS, we inform you that any US federal tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.
>

Appx. 0283

# Exhibit B

Offit Kurman Invoices

Appx. 0284



WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

**6789 Goldsboro, LLC**
**EMAIL INVOICE**
gregbmyers@verizon.net
'

| | | |
|---|---|---|
| Invoice Date | 08/07/2013 |
| Client Number | 00220225 |
| Invoice Number | 376914 |
| Services Through | 07/31/2013 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 | Development Project | | | | | |
| | $0.00 | $0.00 | $0.00 | $0.00 | $1,480.00 | $1,480.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $1,480.00 | $1,480.00 |

**Balance due within 30 days of the invoice date**

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

**Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759**

**301.575.0300**

1

Appx. 0285

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

# Offit | Kurman
Attorneys At Law

8171 Maple Lawn Blvd., Suite 200, Maple Lawn, MD 20759

Tax I.D.:52-1518021

# INVOICE

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

|  |  |
|---|---|
| Invoice Date | 08/07/2013 |
| Client Number | 00220225 |
| Invoice Number | 376914 |
| Services Through | 07/31/2013 |

**00220225.00001  Development Project**

## ACCOUNT SUMMARY

### PRIOR CHARGES

| | | |
|---|---|---|
| NET BALANCE FORWARD | | $0.00 |
| **CURRENT CHARGES** | | |
| Total Services  (details follow) | $1,480.00 | |
| Total Expenses  (details follow) | $0.00 | |
| TOTAL CURRENT CHARGES | | $1,480.00 |
| **TOTAL BALANCE NOW DUE FOR THIS MATTER:** | | **$1,480.00** |

## DETAIL OF CURRENT CHARGES

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| **William E. Erskine** | | | | |
| 05/20/2013 | Meeting with Greg Myers and Mac VerStandig re: development potential of Goldsboro Road property. | 1.70 | 400.00 | 680.00 |
| 05/20/2013 | Review of email correspondence and attached documents received from Greg Myers.  Review of Montgomery County Zoning Code; preparation for meeting with client. | 2.00 | 400.00 | 800.00 |
| TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | | 3.70 | | 1,480.00 |
| TOTAL CURRENT CHARGES FOR THIS MATTER: | | 3.70 | | 1,480.00 |
| TOTAL CURRENT CHARGES: | | | | $1,480.00 |

2

Appx. 0286

## TIMEKEEPER SUMMARY FOR THIS MATTER

| Timekeeper | Hours | Amount |
|---|---|---|
| William E. Erskine | 3.70 | 1,480.00 |
| | 3.70 | $1,480.00 |

Appx. 0287

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA



Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net
'

| | Invoice Date | 10/14/2013 |
|---|---|---|
| | Client Number | 00220225 |
| | Invoice Number | 385140 |
| | Services Through | 09/30/2013 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 Development Project | | | | | | |
| | $1,480.00 | ($1,480.00) | $0.00 | $0.00 | $450.00 | $450.00 |
| | $1,480.00 | ($1,480.00) | $0.00 | $0.00 | $450.00 | $450.00 |

Balance due within 30 days of the invoice date

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

4

Appx. 0288



WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

8171 Maple Lawn Blvd., Suite 200, Maple Lawn, MD 20759

Tax I.D.:52-1518021

# INVOICE

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

'

| | |
|---|---|
| Invoice Date | 10/14/2013 |
| Client Number | 00220225 |
| Invoice Number | 385140 |
| Services Through | 09/30/2013 |

00220225.00001  Development Project

## ACCOUNT SUMMARY

PRIOR CHARGES

| | | |
|---|---|---|
| Balance of last invoice | $1,480.00 | |
| Payments since last invoice | -1,480.00 | |
| NET BALANCE FORWARD | | $0.00 |
| CURRENT CHARGES | | |
| Total Services  (details follow) | $450.00 | |
| Total Expenses  (details follow) | $0.00 | |
| TOTAL CURRENT CHARGES | | $450.00 |
| TOTAL BALANCE NOW DUE FOR THIS MATTER: | | $450.00 |

## DETAIL OF CURRENT CHARGES

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| Timothy C. Lynch | | | | |
| 08/27/2013 | Meet with Myers re: review of code and discuss next steps with planning and possible litigation; memo to file re: same | 1.00 | 450.00 | 450.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 1.00 | | 450.00 |
| | TOTAL CURRENT CHARGES FOR THIS MATTER: | 1.00 | | 450.00 |
| | TOTAL CURRENT CHARGES: | | | $450.00 |

Appx. 0289

**TIMEKEEPER SUMMARY FOR THIS MATTER**

| Timekeeper | Hours | Amount |
|---|---|---|
| Timothy C. Lynch | 1.00 | 450.00 |
| | 1.00 | $450.00 |

Appx. 0290

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

# Offit | Kurman
### Attorneys At Law

Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

8789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net
'

| | | Invoice Date | 11/14/2013 |
|---|---|---|---|
| | | Client Number | 00220225 |
| | | Invoice Number | 388296 |
| | | Services Through | 10/31/2013 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 Development Project | | | | | | |
| | $450.00 | $0.00 | $0.00 | $450.00 | $0.00 | $450.00 |
| | $450.00 | $0.00 | $0.00 | $450.00 | $0.00 | $450.00 |

Balance due within 30 days of the invoice date

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

7

Appx. 0291

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA



Attorneys At Law

Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

**6789 Goldsboro, LLC**
**EMAIL INVOICE**
gregbmyers@verizon.net

| | | |
|---|---|---|
| Invoice Date | 12/19/2013 |
| Client Number | 00220225 |
| Invoice Number | 391908 |
| Services Through | 11/30/2013 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 | Development Project | | | | | |
| | $450.00 | $0.00 | $0.00 | $450.00 | $11,979.00 | $12,429.00 |
| | $450.00 | $0.00 | $0.00 | $450.00 | $11,979.00 | $12,429.00 |

**Balance due within 30 days of the invoice date**

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

8

Appx. 0292

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

8171 Maple Lawn Blvd., Suite 200, Maple Lawn, MD  20759

# Offit | Kurman
## Attorneys At Law

Tax I.D.:52-1516021

# INVOICE

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

'

| | |
|---|---|
| Invoice Date | 12/19/2013 |
| Client Number | 00220225 |
| Invoice Number | 391908 |
| Services Through | 11/30/2013 |

**00220225.00001  Development Project**

## ACCOUNT SUMMARY

| | | |
|---|---|---|
| PRIOR CHARGES | | |
| Balance of last invoice | $450.00 | |
| NET BALANCE FORWARD | | $450.00 |
| CURRENT CHARGES | | |
| Total Services  (details follow) | $11,979.00 | |
| Total Expenses  (details follow) | $0.00 | |
| TOTAL CURRENT CHARGES | | $11,979.00 |
| TOTAL BALANCE NOW DUE FOR THIS MATTER: | | $12,429.00 |

## DETAIL OF CURRENT CHARGES

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| **William E. Erskine** | | | | |
| 11/13/2013 | Meeting with client re: development options for Goldsboro Road property. | 2.00 | 425.00 | 850.00 |
| 11/18/2013 | Review of documentary materials provided by Greg Myers re: proposed multi-family development of Goldsboro Road property. Review of Montgomery County zoning regulations and case law re: development of pre- 1958 Lot of Record under regulations in effect at time lot was created.  Review of current and proposed R-60 zoning regulations. | 4.10 | 425.00 | 1,742.50 |
| 11/19/2013 | Continue analysis of redevelopment opportunities for Goldsboro Road property.  Begin review of Council Resolution 17-601 (2012-2016 Subdivision Staging Policy).  Review of Preliminary Plan approval process and exceptions for deeded parcels of record prior to June 1, 1958. | 3.10 | 425.00 | 1,317.50 |

9

Appx. 0293

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| 11/20/2013 | Review of Bethesda/Chevy Chase Master Plan. | 1.50 | 425.00 | 637.50 |
| 11/23/2013 | Research and analysis of Montgomery County Zoning Regulations, subdivision regulations and Maryland case law re: development of Goldsboro property as multi-family housing. | 3.20 | 425.00 | 1,360.00 |
| 11/25/2013 | Draft and edit Memorandum to client re: assessment of opportunities to develop multi-family housing on subject property. PRepare for meeting with client. | 3.40 | 425.00 | 1,445.00 |
| 11/25/2013 | Meeting with client to discuss potential for multi-family development on subject property.  Telephone call with Dave Woessner (Bohler Engineering) re: scheduling meeting with client to discuss engineering of project. | 2.50 | 425.00 | 1,062.50 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 19.80 | | 8,415.00 |

**Lisa M. King**

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| 11/19/2013 | Discussion with W. Erskine re: research; telephone call with Megan at MNCPPC re: zoning and development for subject property; review master plan for Bethesda-Chevy Chase and zoning ordinance; email W. Erskine re: same. | 2.60 | 180.00 | 468.00 |
| 11/20/2013 | Continue research re: potential avenues of development (cluster development); discuss same with W. Erskine. | 0.90 | 180.00 | 162.00 |
| 11/26/2013 | Exchange emails with D. Woessner (Bohler Engineering) re: Goldsboro Road property. | 0.30 | 180.00 | 54.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 3.80 | | 684.00 |

**Timothy C. Lynch**

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| 11/04/2013 | Meeting with Myers re: next steps; review of info from land use atty and strategize next steps | 2.00 | 450.00 | 900.00 |
| 11/13/2013 | Meet with Greg and Erskine re: planning and next steps; memo to Erskine re:  same | 1.90 | 450.00 | 855.00 |
| 11/25/2013 | Review memo from Erskine re: land use issues; meet with client and Erskine re: same and next steps | 2.50 | 450.00 | 1,125.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 6.40 | | 2,880.00 |
| | TOTAL CURRENT CHARGES FOR THIS MATTER: | 30.00 | | 11,979.00 |
| | TOTAL CURRENT CHARGES: | | | $11,979.00 |

**TIMEKEEPER SUMMARY FOR THIS MATTER**

| Timekeeper | Hours | Amount |
|---|---|---|
| William E. Erskine | 19.80 | 8,415.00 |
| Lisa M. King | 3.80 | 684.00 |
| Timothy C. Lynch | 6.40 | 2,880.00 |
| | 30.00 | $11,979.00 |

10

Appx. 0294

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA



**Offit | Kurman**

Attorneys At Law

Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

| | | | |
|---|---|---|---|
| Invoice Date | 01/09/2014 |
| Client Number | 00220225 |
| Invoice Number | 393560 |
| Services Through | 12/31/2013 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 | Development Project | | | | | |
| | $12,429.00 | $0.00 | $0.00 | $12,429.00 | $3,725.00 | $16,154.00 |
| | $12,429.00 | $0.00 | $0.00 | $12,429.00 | $3,725.00 | $16,154.00 |

**Balance due within 30 days of the invoice date**

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

11

Appx. 0295

# Offit | Kurman
Attorneys At Law

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

8171 Maple Lawn Blvd., Suite 200, Maple Lawn, MD 20759

Tax I.D.:52-1518021

## INVOICE

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net
,

| | |
|---|---|
| Invoice Date | 01/09/2014 |
| Client Number | 00220225 |
| Invoice Number | 393560 |
| Services Through | 12/31/2013 |

00220225.00001  Development Project

## ACCOUNT SUMMARY

### PRIOR CHARGES

| | | |
|---|---|---|
| Balance of last invoice | $12,429.00 | |
| NET BALANCE FORWARD | | $12,429.00 |

### CURRENT CHARGES

| | | |
|---|---|---|
| Total Services  (details follow) | $3,725.00 | |
| Total Expenses  (details follow) | $0.00 | |
| TOTAL CURRENT CHARGES | | $3,725.00 |
| TOTAL BALANCE NOW DUE FOR THIS MATTER: | | $16,154.00 |

## DETAIL OF CURRENT CHARGES

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| William E. Erskine | | | | |
| 12/02/2013 | Review of file.  Telephone call with Dan Duke re: overview of site and description of needs for engineering services. | 0.80 | 425.00 | 340.00 |
| 12/09/2013 | Review and reply to email from Greg Myers re: potential development of a group home.  Review of case law pertaining to FHA protection of group home's from discrimination. | 1.20 | 425.00 | 510.00 |
| 12/09/2013 | Meeting with Greg Myers; Tim Lynch and Dan Duke re: development process for Goldsboro Road property.  Discussion of various development options. | 1.90 | 425.00 | 807.50 |
| 12/11/2013 | Telephone call with Greg Myers re: potential development of Goldsboro Road property with an assisted living facility or a religious facility.  Telephone calls and emails to Steve Gaylor and Gloria Brock re: development of assisted living facility and memory unit. | 1.40 | 425.00 | 595.00 |

12

Appx. 0296

| Date | Services | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| | Email and telephone call with Steve Ferrandi re: market for religious facility properties in Bethesda area. | | | |
| 12/16/2013 | Meeting with Steve Ferrandi (KLNB) re: potential development of site with a religious facility or very high end town houses. | 0.50 | 425.00 | 212.50 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 5.80 | | 2,465.00 |

**Timothy C. Lynch**

| Date | Services | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| 12/09/2013 | Meeting with engineer and clients re: planning issues and next steps for development | 2.80 | 450.00 | 1,260.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 2.80 | | 1,260.00 |
| | TOTAL CURRENT CHARGES FOR THIS MATTER: | 8.60 | | 3,725.00 |
| | TOTAL CURRENT CHARGES: | | | $3,725.00 |

## TIMEKEEPER SUMMARY FOR THIS MATTER

| Timekeeper | Hours | Amount |
|------------|-------|--------|
| William E. Erskine | 5.80 | 2,465.00 |
| Timothy C. Lynch | 2.80 | 1,260.00 |
| | 8.60 | $3,725.00 |

13

Appx. 0297

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA



Attorneys At Law

Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net
'

| | | | Invoice Date | 02/14/2014 |
| | | | Client Number | 00220225 |
| | | | Invoice Number | 397780 |
| | | | Services Through | 01/31/2014 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 | Development Project | | | | | |
| | $16,154.00 | $0.00 | $0.00 | $16,154.00 | $1,245.00 | $17,399.00 |
| | $16,154.00 | $0.00 | $0.00 | $16,154.00 | $1,245.00 | $17,399.00 |

Balance due within 30 days of the invoice date

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

14

Appx. 0298

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

8171 Maple Lawn Blvd., Suite 200, Maple Lawn, MD  20759

# Offit | Kurman
## Attorneys At Law

Tax I.D.:52-1518021

# INVOICE

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

| | |
|---|---|
| Invoice Date | 02/14/2014 |
| Client Number | 00220225 |
| Invoice Number | 397780 |
| Services Through | 01/31/2014 |

00220225.00001  Development Project

## ACCOUNT SUMMARY

PRIOR CHARGES

| | | |
|---|---|---|
| Balance of last invoice | $16,154.00 | |
| NET BALANCE FORWARD | | $16,154.00 |
| CURRENT CHARGES | | |
| Total Services  (details follow) | $1,245.00 | |
| Total Expenses  (details follow) | $0.00 | |
| TOTAL CURRENT CHARGES | | $1,245.00 |
| TOTAL BALANCE NOW DUE FOR THIS MATTER: | | $17,399.00 |

## DETAIL OF CURRENT CHARGES

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| **William E. Erskine** | | | | |
| 01/02/2014 | Review of engineering proposals from Bohler Engineering and Ecotone.  Email to Greg Myers. | 0.60 | 425.00 | 255.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 0.60 | | 255.00 |
| **Timothy C. Lynch** | | | | |
| 01/29/2014 | Meet with Greg re: FHA claims; review of professional contracts; edit same | 1.80 | 450.00 | 810.00 |
| 01/31/2014 | Memo to Raftery re: prep for client meeting on FHA issues | 0.40 | 450.00 | 180.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 2.20 | | 990.00 |
| | TOTAL CURRENT CHARGES FOR THIS MATTER: | 2.80 | | 1,245.00 |

15

Appx. 0299

TOTAL CURRENT CHARGES: $1,245.00

## TIMEKEEPER SUMMARY FOR THIS MATTER

| Timekeeper | Hours | Amount |
|---|---|---|
| William E. Erskine | 0.60 | 255.00 |
| Timothy C. Lynch | 2.20 | 990.00 |
| | 2.80 | $1,245.00 |

16

Appx. 0300

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA



**Offit | Kurman**

Attorneys At Law

Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

| | | | |
|---|---|---|---|
| Invoice Date | 03/10/2014 |
| Client Number | 00220225 |
| Invoice Number | 399148 |
| Services Through | 02/28/2014 |

'

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 | Development Project | | | | | |
| | $17,399.00 | $0.00 | $0.00 | $17,399.00 | $4,070.00 | $21,469.00 |
| | $17,399.00 | $0.00 | $0.00 | $17,399.00 | $4,070.00 | $21,469.00 |

**Balance due within 30 days of the invoice date**

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

17

Appx. 0301

# Offit | Kurman
### Attorneys At Law

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

8171 Maple Lawn Blvd., Suite 200, Maple Lawn, MD 20759

Tax I.D.:52-1518021

## INVOICE

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net
'

| | |
|---|---|
| Invoice Date | 03/10/2014 |
| Client Number | 00220225 |
| Invoice Number | 399148 |
| Services Through | 02/28/2014 |

00220225.00001   Development Project

### ACCOUNT SUMMARY

PRIOR CHARGES

| | | |
|---|---|---|
| Balance of last invoice | $17,399.00 | |
| NET BALANCE FORWARD | | $17,399.00 |
| CURRENT CHARGES | | |
| Total Services  (details follow) | $4,070.00 | |
| Total Expenses  (details follow) | $0.00 | |
| TOTAL CURRENT CHARGES | | $4,070.00 |
| TOTAL BALANCE NOW DUE FOR THIS MATTER: | | $21,469.00 |

### DETAIL OF CURRENT CHARGES

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| **Timothy C. Lynch** | | | | |
| 02/06/2014 | Meet with Raftery re: next steps in FHA matter | 0.40 | 450.00 | 180.00 |
| 02/13/2014 | Call with Greg re: next steps on deal | 0.30 | 450.00 | 135.00 |
| 02/19/2014 | Call with Greg re: next steps; call with Raftery re: same | 0.50 | 450.00 | 225.00 |
| 02/20/2014 | Call with King re: next steps; call with Greg re: same | 0.80 | 450.00 | 360.00 |
| 02/26/2014 | Meet with Greg and Raftery re: litigation and next steps; meet with Greg re: same; memo to Raftery re: next steps; begin review of case law on relevant issues | 2.00 | 450.00 | 900.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 4.00 | | 1,800.00 |
| **John B. Raftery** | | | | |
| 02/06/2014 | Review research by Mac Verstandig, otherwise review Greg's | 2.80 | 400.00 | 1,120.00 |

18

Appx. 0302

| Date | Services | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| | outline of proposed project (.4); meeting with Greg to review and discuss project; review statutes, case law and extensive dialog on goals and methodology; consider protected classes and other potential users of the facility (2.4) | | | |
| 02/26/2014 | meeting with Greg Myers and Tim Lynch to discuss and review case law and applicability of FHA to potential project; discuss end users and potential to boot strap arguments to FHA protected class and reasonable accommodation applicable to disabled potential residents. | 1.50 | 400.00 | 600.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 4.30 | | 1,720.00 |
| **Maurice B. VerStandig** | | | | |
| 02/05/2014 | Research Fair Housing Act treatment of municipal age restrictions; Assess treatment of family status under same statutory scheme; Extensive review of case law governing same; Draft memo to J. Raftery re: same; Review and revise memo | 2.00 | 275.00 | 550.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 2.00 | | 550.00 |
| | TOTAL CURRENT CHARGES FOR THIS MATTER: | 10.30 | | 4,070.00 |
| | TOTAL CURRENT CHARGES: | | | $4,070.00 |

### TIMEKEEPER SUMMARY FOR THIS MATTER

| Timekeeper | Hours | Amount |
|------------|-------|--------|
| Timothy C. Lynch | 4.00 | 1,800.00 |
| John B. Raftery | 4.30 | 1,720.00 |
| Maurice B. VerStandig | 2.00 | 550.00 |
| | 10.30 | $4,070.00 |

19

Appx. 0303

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA



Attorneys At Law

Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net
'

| | | Invoice Date | 04/11/2014 |
| --- | --- | --- | --- |
| | | Client Number | 00220225 |
| | | Invoice Number | 404402 |
| | | Services Through | 03/31/2014 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
| --- | --- | --- | --- | --- | --- | --- |
| 00220225.00001 | Development Project | | | | | |
| | $21,469.00 | ($17,399.00) | $0.00 | $4,070.00 | $5,240.00 | $9,310.00 |
| | $21,469.00 | ($17,399.00) | $0.00 | $4,070.00 | $5,240.00 | $9,310.00 |

Balance due within 30 days of the invoice date

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

20

Appx. 0304



WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

8171 Maple Lawn Blvd., Suite 200, Maple Lawn, MD  20759

Tax I.D.:52-1518021

# INVOICE

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net
'

| | |
|---|---|
| Invoice Date | 04/11/2014 |
| Client Number | 00220225 |
| Invoice Number | 404402 |
| Services Through | 03/31/2014 |

00220225.00001  Development Project

## ACCOUNT SUMMARY

PRIOR CHARGES

| | | |
|---|---|---|
| Balance of last invoice | $21,469.00 | |
| Payments since last invoice | -17,399.00 | |
| NET BALANCE FORWARD | | $4,070.00 |
| CURRENT CHARGES | | |
| Total Services  (details follow) | $5,240.00 | |
| Total Expenses  (details follow) | $0.00 | |
| TOTAL CURRENT CHARGES | | $5,240.00 |
| TOTAL BALANCE NOW DUE FOR THIS MATTER: | | $9,310.00 |

## DETAIL OF CURRENT CHARGES

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| **William E. Erskine** | | | | |
| 03/05/2014 | Telephone call with Greg Myers re: potential for developing property as a residence for disabled people. | 1.30 | 425.00 | 552.50 |
| 03/10/2014 | Prepare for and attend meeting with Greg Myers and Brian King re: review of development options for Goldsboro Road property. | 2.90 | 425.00 | 1,232.50 |
| 03/14/2014 | Meeting with Tim Lynch re: development strategy for Goldsboro Road property. | 0.40 | 425.00 | 170.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 4.60 | | 1,955.00 |
| **Timothy C. Lynch** | | | | |
| 03/03/2014 | Meet with King re: next steps; memo to Raftery re: same | 0.30 | 450.00 | 135.00 |
| 03/04/2014 | Meet with Greg re: status and architect issues and next steps; emails with Raftery re: next steps | 0.50 | 450.00 | 225.00 |

21

Appx. 0305

| Date | Services | Hours | Rate | Amount |
|------|----------|------:|-----:|-------:|
| 03/10/2014 | Meet with Erskine re: prep for meeting with Myers | 0.40 | 450.00 | 180.00 |
| 03/11/2014 | Call with Greg and with Brian re: summary and next steps | 1.40 | 450.00 | 630.00 |
| 03/14/2014 | Meet with Erskine and Raftery re: research issues and next steps; memo to clients re: same | 1.50 | 450.00 | 675.00 |
| 03/21/2014 | Call with Greg re: plan moving forward; begin review of FHA memo; call with Raftery re: same | 0.60 | 450.00 | 270.00 |
| 03/30/2014 | Review Carter memo; review key cases cited therein; draft memo to Myers re: same | 1.90 | 450.00 | 855.00 |
| 03/31/2014 | Meet with Greg re: review of FHA memo and discussion of next steps | 0.70 | 450.00 | 315.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 7.30 | | 3,285.00 |
| | TOTAL CURRENT CHARGES FOR THIS MATTER: | 11.90 | | 5,240.00 |
| | TOTAL CURRENT CHARGES: | | | $5,240.00 |

## TIMEKEEPER SUMMARY FOR THIS MATTER

| Timekeeper | Hours | Amount |
|------------|------:|-------:|
| William E. Erskine | 4.60 | 1,955.00 |
| Timothy C. Lynch | 7.30 | 3,285.00 |
| | 11.90 | $5,240.00 |

22

Appx. 0306

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA



Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

| | Invoice Date | 05/14/2014 |
|---|---|---|
| | Client Number | 00220225 |
| | Invoice Number | 407987 |
| | Services Through | 04/30/2014 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 Development Project | | | | | | |
| | $9,310.00 | $0.00 | $0.00 | $9,310.00 | $7,982.00 | $17,292.00 |
| | $9,310.00 | $0.00 | $0.00 | $9,310.00 | $7,982.00 | $17,292.00 |

Balance due within 30 days of the invoice date

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

23

Appx. 0307

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

8171 Maple Lawn Blvd., Suite 200, Maple Lawn, MD 20759

# Offit|Kurman
Attorneys At Law

Tax I.D.:52-1518021

# INVOICE

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net
,

| | |
|---|---|
| Invoice Date | 05/14/2014 |
| Client Number | 00220225 |
| Invoice Number | 407987 |
| Services Through | 04/30/2014 |

00220225.00001  Development Project

## ACCOUNT SUMMARY

PRIOR CHARGES

| | | |
|---|---|---|
| Balance of last invoice | $9,310.00 | |
| NET BALANCE FORWARD | | $9,310.00 |

CURRENT CHARGES

| | | |
|---|---|---|
| Total Services  (details follow) | $7,982.00 | |
| Total Expenses  (details follow) | $0.00 | |
| TOTAL CURRENT CHARGES | | $7,982.00 |
| TOTAL BALANCE NOW DUE FOR THIS MATTER: | | $17,292.00 |

## DETAIL OF CURRENT CHARGES

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| Matthew T. Carter | | | | |
| 03/11/2014 | Review emails and case law from Raftery, begin research on fair housing issues | 2.70 | 295.00 | 796.50 |
| 03/12/2014 | Continue research on fair housing issues | 3.80 | 295.00 | 1,121.00 |
| 03/13/2014 | Continue research and drafting memo | 3.00 | 295.00 | 885.00 |
| 03/14/2014 | Continue research and drafting of memo re zoning and FHA issues | 2.80 | 295.00 | 826.00 |
| 03/17/2014 | Revise memo. | 6.20 | 295.00 | 1,829.00 |
| 04/01/2014 | Review email from Lynch, review memo and case law | 0.70 | 295.00 | 206.50 |
| 04/07/2014 | Review email from Lynch, review memo, review infor re case law | 0.90 | 295.00 | 265.50 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 20.10 | | 5,929.50 |

24

Appx. 0308

| Date | Services | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| **William E. Erskine** | | | | |
| 04/11/2014 | Review FHA memorandum of law; review related federal and state case law. | 1.60 | 425.00 | 680.00 |
| 04/17/2014 | Telephone call with Tim Lynch to review FHA memo and prospects for successful litigation against Montgomery County based on asserted violations of FHA. | 0.60 | 425.00 | 255.00 |
| 04/21/2014 | Review and reply to email from Tim Lynch re: assessment of FHA memorandum and impact on development of housing for elderly/diabled persons. | 0.30 | 425.00 | 127.50 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 2.50 | | 1,062.50 |
| **Timothy C. Lynch** | | | | |
| 04/01/2014 | Memo to Raftery and Erskine re: next steps on research and land use issues | 0.50 | 450.00 | 225.00 |
| 04/17/2014 | Meet with Erskine re: Carter memo and next steps; prepare memo to Greg re:same and next steps | 1.30 | 450.00 | 585.00 |
| 04/21/2014 | Call from BK re: status and next steps; email to Greg re: same | 0.40 | 450.00 | 180.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 2.20 | | 990.00 |
| | TOTAL CURRENT CHARGES FOR THIS MATTER: | 24.80 | | 7,982.00 |

TOTAL CURRENT CHARGES: $7,982.00

### TIMEKEEPER SUMMARY FOR THIS MATTER

| Timekeeper | Hours | Amount |
|------------|-------|--------|
| Matthew T. Carter | 20.10 | 5,929.50 |
| William E. Erskine | 2.50 | 1,062.50 |
| Timothy C. Lynch | 2.20 | 990.00 |
| | 24.80 | $7,982.00 |

25

Appx. 0309

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA



**Offit|Kurman**
Attorneys At Law

Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

| Invoice Date | 06/10/2014 |
|---|---|
| Client Number | 00220225 |
| Invoice Number | 410031 |
| Services Through | 05/31/2014 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 | Development Project | | | | | |
| | $17,292.00 | $0.00 | $0.00 | $17,292.00 | $4,005.00 | $21,297.00 |
| | $17,292.00 | $0.00 | $0.00 | $17,292.00 | $4,005.00 | $21,297.00 |

Balance due within 30 days of the invoice date

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

26

Appx. 0310

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

8171 Maple Lawn Blvd., Suite 200, Maple Lawn, MD  20759

# Offit | Kurman
### Attorneys At Law

Tax I.D.:52-1518021

## INVOICE

6789 Goldsboro, LLC
**EMAIL INVOICE**
gregbmyers@verizon.net

| | |
|---|---|
| Invoice Date | 06/10/2014 |
| Client Number | 00220225 |
| Invoice Number | 410031 |
| Services Through | 05/31/2014 |

**00220225.00001  Development Project**

**ACCOUNT SUMMARY**

PRIOR CHARGES

| | | |
|---|---|---|
| Balance of last invoice | $17,292.00 | |
| NET BALANCE FORWARD | | $17,292.00 |
| CURRENT CHARGES | | |
| Total Services  (details follow) | $4,005.00 | |
| Total Expenses  (details follow) | $0.00 | |
| TOTAL CURRENT CHARGES | | $4,005.00 |
| **TOTAL BALANCE NOW DUE FOR THIS MATTER:** | | **$21,297.00** |

## DETAIL OF CURRENT CHARGES

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| **William E. Erskine** | | | | |
| 05/05/2014 | Telephone call with Greg Myers re: status of preliminary engineering and environmental constraints study. | 0.60 | 425.00 | 255.00 |
| 05/07/2014 | Prepare for and attend meeting with Greg Myers re: review of status of environmental constraints study.  Discussion of strategy to obtain approval of townhouse development. | 2.70 | 425.00 | 1,147.50 |
| 05/09/2014 | Review of engineering proposal.  Review of Bethesda magazine article on upscale assisted living group homes.  Email Greg Myers. | 0.70 | 425.00 | 297.50 |
| 05/27/2014 | Prepare for and attend meeting with Greg Myers; Brian King and engineering consultants re: subdivision concept plan for Goldsboro Road property.  Review of Montgomery County subdivision regulations re: appealability of informal pre-submission determinations made by planning board. | 3.20 | 425.00 | 1,360.00 |

27

Appx. 0311

|  |  | 7.20 | 3,060.00 |
|---|---|---|---|
| TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: |  |  |  |

**Timothy C. Lynch**

| 02/17/2014 | Park road - Call with client re: specific performance claim; review document and evidence re: same | 0.60 | 450.00 | 270.00 |
|---|---|---|---|---|
| 02/18/2014 | Park road - Review and revise specific performance memo; email to Greg re: same | 0.70 | 450.00 | 315.00 |
| 02/20/2014 | Park road - Call with King re: next steps; call with Greg re: same | 0.80 | 450.00 | 360.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 2.10 | | 945.00 |
| | TOTAL CURRENT CHARGES FOR THIS MATTER: | 9.30 | | 4,005.00 |

TOTAL CURRENT CHARGES:                    $4,005.00

## TIMEKEEPER SUMMARY FOR THIS MATTER

| Timekeeper | Hours | Amount |
|---|---|---|
| William E. Erskine | 7.20 | 3,060.00 |
| Timothy C. Lynch | 2.10 | 945.00 |
| | 9.30 | $4,005.00 |

Appx. 0312

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA


**Offit|Kurman**
Attorneys At Law

Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

| | |
|---|---|
| Invoice Date | 07/07/2014 |
| Client Number | 00220225 |
| Invoice Number | 411630 |
| Services Through | 06/30/2014 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 Development Project | | | | | | |
| | $21,297.00 | $0.00 | $0.00 | $21,297.00 | $0.00 | $21,297.00 |
| | $21,297.00 | $0.00 | $0.00 | $21,297.00 | $0.00 | $21,297.00 |

Balance due within 30 days of the invoice date

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

29

Appx. 0313

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA


Attorneys At Law

Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

'

| | Invoice Date | 08/13/2014 |
|---|---|---|
| | Client Number | 00220225 |
| | Invoice Number | 417743 |
| | Services Through | 07/31/2014 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 | Development Project | | | | | |
| | $21,297.00 | $0.00 | $0.00 | $21,297.00 | $4,825.00 | $26,122.00 |
| | $21,297.00 | $0.00 | $0.00 | $21,297.00 | $4,825.00 | $26,122.00 |

Balance due within 30 days of the invoice date

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

30

Appx. 0314

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

# Offit|Kurman
### Attorneys At Law

8171 Maple Lawn Blvd., Suite 200, Maple Lawn, MD  20759

Tax I.D.:52-1518021

## INVOICE

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net
,

| | |
|---|---|
| Invoice Date | 08/13/2014 |
| Client Number | 00220225 |
| Invoice Number | 417743 |
| Services Through | 07/31/2014 |

**00220225.00001  Development Project**

## ACCOUNT SUMMARY

PRIOR CHARGES

| | | |
|---|---|---|
| Balance of last invoice | $21,297.00 | |
| NET BALANCE FORWARD | | $21,297.00 |
| CURRENT CHARGES | | |
| Total Services  (details follow) | $4,825.00 | |
| Total Expenses  (details follow) | $0.00 | |
| TOTAL CURRENT CHARGES | | $4,825.00 |
| **TOTAL BALANCE NOW DUE FOR THIS MATTER:** | | **$26,122.00** |

## DETAIL OF CURRENT CHARGES

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| **William E. Erskine** | | | | |
| 07/18/2014 | Prepare for and attend meeting with Greg Myers and Tim Lynch to discuss development opportunities for subject property. | 2.20 | 425.00 | 935.00 |
| 07/31/2014 | Telephone call with Greg Myers re: discussion of legal arguments in support of being able to develop property as a minor subdivision. | 1.00 | 425.00 | 425.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 3.20 | | 1,360.00 |
| **Timothy C. Lynch** | | | | |
| 07/12/2014 | Call with client re: prep for meeting with counsel re: next steps; review memo from client re: same | 1.60 | 450.00 | 720.00 |
| 07/14/2014 | Review this emails  and materials in prep for meeting; conf call with counsel (2x) re: same; memo to file re: same | 4.00 | 450.00 | 1,800.00 |
| 07/18/2014 | Meet with client and Erskine re: plan and next steps; memo to | 2.10 | 450.00 | 945.00 |

31

Appx. 0315

| Date | Services | Hours | Rate | Amount |
|------|----------|-------|------|--------|
| | Erskine re: same | | | |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 7.70 | | 3,465.00 |
| | TOTAL CURRENT CHARGES FOR THIS MATTER: | 10.90 | | 4,825.00 |
| | TOTAL CURRENT CHARGES: | | | $4,825.00 |

## TIMEKEEPER SUMMARY FOR THIS MATTER

| Timekeeper | Hours | Amount |
|------------|-------|--------|
| William E. Erskine | 3.20 | 1,360.00 |
| Timothy C. Lynch | 7.70 | 3,465.00 |
| | 10.90 | $4,825.00 |

Appx. 0316



**Attorneys At Law**

Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

| | Invoice Date | 09/08/2014 |
|---|---|---|
| | Client Number | 00220225 |
| | Invoice Number | 418668 |
| | Services Through | 08/31/2014 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 Development Project | | | | | | |
| | $26,122.00 | $0.00 | $0.00 | $26,122.00 | $2,052.50 | $28,174.50 |
| | $26,122.00 | $0.00 | $0.00 | $26,122.00 | $2,052.50 | $28,174.50 |

Balance due within 30 days of the invoice date

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

Appx. 0317

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA

# Offit | Kurman
Attorneys At Law

8171 Maple Lawn Blvd., Suite 200, Maple Lawn, MD 20759

Tax I.D.:52-1518021

## INVOICE

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

| | |
|---|---|
| Invoice Date | 09/08/2014 |
| Client Number | 00220225 |
| Invoice Number | 418668 |
| Services Through | 08/31/2014 |

00220225.00001  Development Project

## ACCOUNT SUMMARY

PRIOR CHARGES

| | | |
|---|---|---|
| Balance of last invoice | $26,122.00 | |
| NET BALANCE FORWARD | | $26,122.00 |
| CURRENT CHARGES | | |
| Total Services (details follow) | $2,052.50 | |
| Total Expenses (details follow) | $0.00 | |
| TOTAL CURRENT CHARGES | | $2,052.50 |
| TOTAL BALANCE NOW DUE FOR THIS MATTER: | | $28,174.50 |

## DETAIL OF CURRENT CHARGES

| Date | Services | Hours | Rate | Amount |
|---|---|---|---|---|
| **William E. Erskine** | | | | |
| 08/02/2014 | Review of potential for developing property as a minor subdivision. Review generally Montgomery County Code Chapters 19; 22A; 50 and 59. | 3.20 | 425.00 | 1,360.00 |
| 08/04/2014 | Preparation for conference call. Telephone call with Greg Myers re: development options for Goldsboro Road property. | 1.10 | 425.00 | 467.50 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 4.30 | | 1,827.50 |
| **Timothy C. Lynch** | | | | |
| 08/04/2014 | Meet with Erskine re: next steps; call with client re: same. | 0.50 | 450.00 | 225.00 |
| | TOTAL CURRENT CHARGES FOR THIS TIMEKEEPER: | 0.50 | | 225.00 |
| | TOTAL CURRENT CHARGES FOR THIS MATTER: | 4.80 | | 2,052.50 |

34

Appx. 0318

TOTAL CURRENT CHARGES: $2,052.50

## TIMEKEEPER SUMMARY FOR THIS MATTER

| Timekeeper | Hours | Amount |
|---|---|---|
| William E. Erskine | 4.30 | 1,827.50 |
| Timothy C. Lynch | 0.50 | 225.00 |
| | 4.80 | $2,052.50 |

Appx. 0319

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA



Attorneys At Law

Tax I.D.:52-1518021

## STATEMENT OF ACCOUNT

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net

| | | | | | |
|---|---|---|---|---|---|
| Invoice Date | 01/08/2015 |
| Client Number | 00220225 |
| Invoice Number | 432010 |
| Services Through | 12/31/2014 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 Development Project | | | | | | |
| | $702.00 | $0.00 | $0.00 | $702.00 | $0.00 | $702.00 |
| | $702.00 | $0.00 | $0.00 | $702.00 | $0.00 | $702.00 |

Balance due within 30 days of the invoice date

Please return the Remittance Page (last page attached) with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

Appx. 0320

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA



Tax I.D.:52-1516021

## * * * * REMITTANCE PAGE * * * *

### (Please return with payment)

6789 Goldsboro, LLC
EMAIL INVOICE
gregbmyers@verizon.net
'

|  | Invoice Date | 01/08/2015 |
|---|---|---|
|  | Client Number | 00220225 |
|  | Invoice Number | 432010 |
|  | Services Through | 12/31/2014 |

| | Prior Balance | Payments Applied | Adjustment Applied | Net Balance Forward | Total Current Charges | Balance Due |
|---|---|---|---|---|---|---|
| 00220225.00001 Development Project | | | | | | |
| | $702.00 | $0.00 | $0.00 | $702.00 | $0.00 | $702.00 |
| | $702.00 | $0.00 | $0.00 | $702.00 | $0.00 | $702.00 |

**Balance due within 30 days of the invoice date**

Please return this Remittance Page with your payment and make payable to Offit Kurman

Please remit to: Offit Kurman - 8171 Maple Lawn Boulevard | Suite 200 | Maple Lawn, MD 20759

301.575.0300

Appx. 0321

# Exhibit C

## Engagement Letter

Appx. 0322

WASHINGTON | BALTIMORE | PHILADELPHIA | WILMINGTON | VIRGINIA



# Offit Kurman
Attorneys At Law

Lisa T. Shattuck, *Client Relations Manager*
301.575.0364          Phone
301.575.0335          Facsimile
LShattuck@offitkurman.com

July 19, 2013

VIA EMAIL ONLY: brian@realestatedimensions.com
6789 Goldsboro, LLC
c/o Real Estate Dimensions, LLC
Attn: Brian King
3925 Beech Avenue
Baltimore, Maryland 21211

Re:    Engagement of Offit Kurman, P.A.: Confirmation of Fee Arrangement

Dear Mr. King:

The purpose of this letter is to confirm the terms of your engagement of Offit Kurman. In this regard, our firm has agreed to represent you on the following terms and conditions:

1.    Fees for services will generally be invoiced based upon the actual time spent on your account by attorneys in our office at the firm's standard hourly rates. The rate schedule attached to this letter lists the billing rates of each attorney, paralegal and law clerk in our firm. In the event that our rates increase in the future, the increased rates shall automatically take effect. Various portions of the representation may be delegated, as appropriate, to other firm lawyers, paralegal and law clerk personnel.

2.    On occasion, there may be circumstances where billing based upon our firm's standard hourly rates is not appropriate. In such circumstances, we will advise you that standard hourly billing is not appropriate and we will bill you for services on an alternative basis.

3.    Any and all activities conducted by the professional members of our staff, including, but not limited to, the making and receipt of telephone calls, drafting and review of correspondence and email, preparation and review of papers, agreements and memorandum, fact investigation, reading and analyzing written materials, travel to and from meetings and court appearances, research, preparation for meetings and court appearances, conferences with you, experts, or other attorneys, will be considered as billable time.

4.    Statements indicating the nature of the services performed and time spent will be forwarded to you periodically. Payment of all amounts invoiced is due within 30 days after the date stated on the invoice. Questions or objections to any statement for services rendered or costs advanced must be raised within 30 days of receipt, or you will be deemed to have approved the statement.

5.    During the course of our representation we may be required to incur certain expenses on your behalf, and the nature of and extent of such expenses will vary with the nature of the representation. We will be entitled to reimbursement for necessary and reasonable costs and expenses incurred in connection with our work in this matter. Examples of these costs and expenses include, but are not limited to, courier charges, outside copy charges, parking and travel expenses. Offit Kurman does not charge clients for internal costs associated with regular postage, internal copies, facsimiles and long distance calls, or for overnight delivery charges.

6.    In connection with our practice, we are often required to engage outside service providers on your behalf. You hereby authorize us to engage such outside vendors as are reasonable and necessary in connection with our work, and to instruct such vendors to bill you directly for their services. You will be responsible for direct and timely payment of those expenses for which you are directly invoiced. Examples of these costs include, but are not limited to, filing fees, expert witness fees, and transcript fees. Unless it is impractical because of exigent circumstances, we will discuss such expenses with you, and obtain your consent, in advance.

Appx. 0323

WASHINGTON   BALTIMORE   PHILADELPHIA   WILMINGTON   VIRGINIA



Attorneys At Law

7.      In furtherance of our continuing efforts to better serve our clients, the firm occasionally will work with outside counsel for some aspects of a particular representation when doing so is, in our opinion, economical and appropriate. The costs associated with the use of outside counsel may include charges for the supervision and administration of the outside counsel.

8.      It is impossible for us to project the amount of time that will be devoted by the firm to your needs. However, if at any time you decide that you desire that we cease further activity on your behalf, you should notify our firm in writing and, upon payment by you of the final statement for our services which will be rendered shortly after receipt by us of your intention to terminate our attorney-client relationship, copies of all pertinent papers in your file will be turned over to you or to any attorney of your selection.

9.      We may withdraw as counsel, terminate this Agreement, and be relieved of the responsibility of performing further work on your behalf, by notifying you in writing. Reasons for such termination may include, but are not limited to, failure on your part to pay fees or expenses under the terms of this Agreement in a timely manner, failure to cooperate with the firm in preparation and/or prosecution of your legal needs, reasons mandated by the rules of professional conduct governing lawyers, a significant disagreement arises as to legal strategy, or discovery of or analysis of facts and/or law which lead the firm to conclude that your matter should not be pursued. You agree to execute such documents as will permit the firm to withdraw from representing you and you agree to pay any remaining balance owed on your account.

10.     After our representation of you has ended, whether or not you have requested your file or any part of it, we may request that you or an authorized representative pick up your files or documents that have been produced during the course of the representation. Absent extenuating circumstances or those cases where our firm specifically agrees to hold certain documents for you, you agree to retrieve the documents within 90 days. If you do not want us to return these to you, please be advised that we may destroy all paper copies other than those that we determine original paper copies must be maintained. In addition, *if we have not heard back from you after the 90 day period has passed, the firm will assume that you have no objections to the destruction of your files or documents.*

11.     Should it ever become necessary for us to take legal action to collect our fees and/or any expenses due under this Fee Agreement, you agree to reimburse us fully for all costs of collection, including, but not limited to, reasonable attorneys' fees and a late fee on the unpaid balance to be calculated at the rate of twelve percent (12%) per annum.

Please countersign this letter in the space provided below for your signature to acknowledge acceptance of the terms and conditions of this engagement. Upon receipt of this countersigned letter we will commence services on your matter. On behalf of the firm, and holding aside the formality of this letter, we look forward to working with you.

Very truly yours,

*Lisa Shattuck*

Lisa T. Shattuck
*Client Relations Manager*

Cc:     Timothy C. Lynch, Esq.

Read & Accepted on behalf of 6879 GOLDSBORO, LLC by:

Brian King                              7/22/2013
_____                 _____
Brian King                              Date

*Please sign and return this letter within 10 business days of receipt.*
00220225 00001

# Offit | Kurman

## Fee Schedule

| Attorney | Rate | Attorney | Rate | Paralegal/Clerk | Rate |
|---|---|---|---|---|---|
| Allman, Alex M. | $375 | McRae, David K | $390 | Dixon, Candace O. | $175 |
| Axenfeld, Robert R. | $375 | Mercurio, Michael N. | $400 | Fee, Carol A. | $100 |
| Beller, Joseph | $400 | Neuhauser, Stanley J. | $350 | Jett, Doreen A. | $175 |
| Ballinger, Jr., Joseph J. | $450 | Nevins, Kristin M. | $350 | Jonson, Samantha G. | $160 |
| Berger, Jason C. | $350 | Niepraschk, Christi L. | $260 | Jordan, Roxanne P. | $165 |
| Berger, Russell B. | $325 | Noll, Alison K. | $400 | King, Lisa M. | $180 |
| Brooks, Sandra A. | $335 | Offit, Maurice L. | $450 | Kovacevich, Anthony | $160 |
| Brownstein, Adam R. | $325 | Offit, Theodore A. | $475 | Landicho, Kathlyn M. | $180 |
| Cannon, William P. | $275 | Ogens, Ronald L. | $495 | LaScuola, Joseph C. | $160 |
| Carter, Matthew T. | $295 | Pallozzi, Angela D. | $235 | Lavin, Deborah A. | $155 |
| Casseres, Daniella | $300 | Pelino, Bryan J. | $330 | Montieth, Gina M. | $160 |
| Coaxum, David S. | $330 | Pelletier, Eric J. | $395 | Redmond, Lucia | $165 |
| Conley, Michael | $500 | Pillsbury, William H. | $360 | Rowe, Kiersten S. | $160 |
| Currey, Gregory P. | $325 | Poppleton, Miller J. | $375 | Trout, Janice C. | $155 |
| Cutler, Gary B. | $350 | Potler, B. Marvin | $350 | Whitlock, Katelynn P. | $160 |
| D'Andrea, Lindsay R.D. | $250 | Raftery, John B. | $400 | | |
| Davis, III William C. | $440 | Repczynski, Thomas W. | $375 | | |
| Delanoy, Jesse D. | $390 | Rosenberg, Brian C. | $365 | | |
| Delawter, Meaghan L. | $210 | Rothman, Alyssa S. | $225 | | |
| Denick, Bernard S. | $375 | Rubenstein, Laura L. | $375 | | |
| Donnelly, Michael | $390 | Salmons, Brent T. | $400 | | |
| Donohue, Sara M. | $450 | Sanders, Alan A. | $360 | | |
| Elias, Mazin I. | $335 | Scaldara, John A. | $375 | | |
| Erskine, William E. | $425 | Seitz, Douglas H. | $350 | | |
| Ettelson, James S. | $450 | Shand, Dina | $200 | | |
| Finnerty, Meghan | $335 | Shane, Steve E. | $375 | | |
| Foster, Don P. | $450 | Shapiro, Bart | $495 | | |
| Goel, Rajiv K. | $385 | Sherman, Bryn H. | $475 | | |
| Gottlieb, Mark E. | $500 | Smith, Karen L. | $330 | | |
| Haley, Michael K. | $325 | Solomon, Glenn D. | $370 | | |
| Hepfer, Cheryl L. | $500 | Stadfeld, Max S. | $350 | | |
| Heyman, William S. | $425 | Steiner, Julius M. | $475 | | |
| Hoffman, Ira E. | $435 | Stern, Seymour B. | $350 | | |
| Hoffman, James M. | $440 | Stone, Steven David | $400 | | |
| Johnson, Gregory P. | $350 | Strickland, Elyse | $395 | | |
| Jones, Glenn M. | $500 | Thomas, William J. | $400 | | |
| Just, Marjorie | $400 | Todman, Stanley I. | $295 | | |
| Kamins, Rachel M. | $350 | Toichin, Edward J. | $375 | | |
| Kamins, Scott V. | $425 | Turet, Craig F. | $375 | | |
| Karen, Ari | $450 | Ulman, Louis J. | $450 | | |
| Kaufman, Gal N. | $440 | VerStandig, Maurice B. | $275 | | |
| Kaufman, Stephen H. | $395 | Vogler, Philip W. | $450 | | |
| Kay, Douglas R. | $375 | Wachs, Jonathan R. | $370 | | |
| Kelting, Todd A. | $350 | Wachter, Chris | $300 | | |
| Kotkin, Diane S. | $375 | Walsh, Donald J. | $395 | | |
| Kurman, Howard K. | $450 | Walter, Harold M. | $450 | | |
| Loffredo, Brian A. | $350 | Walters, Revee M. | $235 | | |
| Lynch, Timothy C. | $450 | Wilburn, Frances C. | $325 | | |
| Marasciulo, Theodore | $400 | Wolf, Rachel M. | $335 | | |
| Mathis, Joseph B. | $250 | Yumkas, Charles | $375 | | |
| McQueen, Catherine H. | $330 | | | | |

as of 7/1/13

Offit | Kurman

ST

Appx. 0325

# Exhibit D

# McRae Emails

## Kira Muren

| | |
|---|---|
| **From:** | Greg Myers <gregbmyers@verizon.net> |
| **Sent:** | Wednesday, October 9, 2019 10:11 PM |
| **To:** | Benjamin Andres |
| **Cc:** | gregbmyers@verizon.net |
| **Subject:** | FW: Note and Guaranty |
| **Attachments:** | 141101_Promissory Note rev2 10-30-14 REDLINE.docx |

FYI

**From:** McRae, Dave <dmcrae@offitkurman.com>
**Sent:** Thursday, October 30, 2014 5:04 PM
**To:** Greg Myers <gregbmyers@verizon.net>
**Subject:** RE: Note and Guaranty

Greg,

Please see the attached further revised ("rev2") redline draft, and let me know if it is acceptable. The only change is the insertion of Section 20.

Thanks,

Dave


**David K. McRae, Esquire**

**Offit | Kurman**®
Attorneys At Law

the perfect **legal partner**®

(301) 575-0378 - Direct
(410) 615-4727 - Mobile
(301) 575-0335 - Facsimile
dmcrae@offitkurman.com
www.offitkurman.com



**Baltimore/Washington**
8171 Maple Lawn Boulevard | Suite 200 | Fulton, MD 20759

**PRIVILEGED COMMUNICATION/PRIVACY NOTICE**
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

**IRS CIRCULAR 230 DISCLOSURE**
To ensure compliance with requirements imposed by the IRS, we inform you that any US federal tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.

1

Appx. 0327

**From:** Greg Myers [mailto:gregbmyers@verizon.net]
**Sent:** Thursday, October 30, 2014 4:31 PM
**To:** McRae, Dave
**Cc:** gregbmyers@verizon.net
**Subject:** RE: Note and Guaranty

Dave - can you add a Section 20 with appropriate language to convey that that under no circumstances is Daniel J. Ring personally or individually liable or responsible for any portion of the debt.

Thank you,
Greg Myers

**From:** McRae, Dave [mailto:dmcrae@offitkurman.com]
**Sent:** Thursday, October 30, 2014 2:30 PM
**To:** Greg Myers
**Subject:** RE: Note and Guaranty

Greg,

The redlined Promissory Note is attached. Regarding non-assignability, I thought it would be more effective (and more up-front with your investor partner) not to tinker with the "pay to the order of" language at the beginning of the Note, but rather, to add new Section 19 which plainly states that the Note may not be assigned without the Borrower's prior written consent.

Apart from making the foregoing change and adding the Guaranty signature line as we discussed, I saw no other areas of the Note that needed modification.

If you have any further questions or concerns, please let me know.

Thanks,

Dave


**David K. McRae, Esquire**

**Offit│Kurman®**
Attorneys At Law

the perfect **legal partner®**

(301) 575-0378 - Direct
(410) 615-4727 - Mobile
(301) 575-0335 - Facsimile
dmcrae@offitkurman.com
www.offitkurman.com



**Baltimore/Washington**
8171 Maple Lawn Boulevard | Suite 200 | Fulton, MD 20759

**PRIVILEGED COMMUNICATION/PRIVACY NOTICE**
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this

2

Appx. 0328

communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

**IRS CIRCULAR 230 DISCLOSURE**
To ensure compliance with requirements imposed by the IRS, we inform you that any US federal tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.


**From:** Greg Myers [mailto:gregbmyers@verizon.net]
**Sent:** Wednesday, October 29, 2014 6:01 PM
**To:** McRae, Dave
**Cc:** gregbmyers@verizon.net
**Subject:** Note and Guaranty

Dave - give me a call after you have looked these over.

Thank you,
Greg Myers
(301) 325-2312

Appx. 0329

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor, | ) | |
| ——————————————— | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Case No. 24-00007-MCR |
| v. | ) | |
| | ) | |
| ROGER SCHLOSSBERG, in His | ) | |
| Official Capacity as Chapter 7 Trustee | ) | |
| of the Bankruptcy Estate of Gregory B. | ) | |
| Myers, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

**OPPOSITION TO DEBTOR'S MOTION TO DISQUALIFY COUNSEL**

Come now Brian King ("Mr. King"), Cristina King ("Ms. King") and the Cristina and Brian

King Children's Trust (the "Trust") (collectively, the "Plaintiffs" or "King Parties," and each a

"Plaintiff" or "King Party"), by and through undersigned counsel, and in opposition to the Debtor's

Motion to Disqualify Counsel (the "Motion," as found at DE #49, with the proponent thereof being

known as the "Debtor" or "Mr. Myers") state as follows:

**I.      Introduction**

At 3:41 pm on July 1, 2025—approximately three hours after evidence closed in a two-day

trial, roughly eighteen months after this adversary proceeding was commenced, and more than five

years after undersigned counsel first appeared in the Debtor's main bankruptcy case—Mr. Myers

filed the instant Motion, seeking the disqualification of counsel. The Motion suggests an

1

Appx. 0330

impermissible conflict to exist (i) "as a result of VerStandig's prior representation of Serv Trust, 6789 Goldsboro LLC, Gregory B. Myers, and Daniel J. Ring, Trustee of Serv Trust. . .," Motion, DE #49, at p. 1; and because (ii) "VerStandig represents the King Parties in the above adversary at the direction of Roger Schlossberg, Trustee, which is a clear conflict of interest. . .," *id.* (emphasis removed to aid readability). The Debtor proceeds to append a prior motion to disqualify undersigned counsel, filed in one of the Debtor's former bankruptcy cases in a separate jurisdiction. *Id.*

The Motion merits denial for various reasons. First, there is not now—and there never has been—a conflict of interest. While undersigned counsel did formerly represent Mr. Myers, the scope of that former representation is unrelated to counsel's subsequent representation of the King Parties. Nor is this coincidental; a careful assessment was undertaken, when counsel was retained by the King Parties, to ensure no conflict of interest would be afoot.

Second, undersigned counsel has never represented Serv Trust—period. This allegation is counterfactual. While Serv Trust has since been found to be the alter ego of Mr. Myers, and undersigned counsel *did* represent Mr. Myers in various matters, none of those matters concerned the Debtor's use of Serv Trust. In every single case in which counsel represented Mr. Myers, the representation was expressly on behalf of Mr. Myers and/or his wife, Barbara Ann Kelly ("Ms. Kelly"), and Serv Trust was not a party to—or consideration in—any such matter.

Third, this litigation was not commenced "at the direction of" Roger Schlossberg ("Mr. Schlossberg" or the "Trustee"). This assertion is also counterfactual. To the contrary, counsel represented the King Parties, in connection with their dispute with Serv Trust, well before Mr. Schlossberg played any role in the case. The Trustee is the King Parties' adversary in this case; while the adversarial posture has been marked by professionalism and cordiality, and while an

2

amicable settlement has been reached after drawn out negotiations, Mr. Schlossberg was—and remains—the King Parties' counterparty.

Fourth, Mr. Myers has waived any right he may have had (and it is urged, for reasons discussed *passim*, that no such right ever existed) to seek disqualification by waiting nearly a year and a half after this litigation was commenced. The Debtor is an active litigant and well familiar with how to file motions, including those seeking extraordinary relief. In waiting so long to file this Motion—and doing so only after the presentation of evidence at trial had concluded—Mr. Myers forfeited any right he may have ever had to seek such relief.

Fifth, even if, counterfactually and *arguendo*, a conflict did exist, the same would be the Trustee's to assert, not Mr. Myers'. The assets, *vel non*, of Serv Trust are assets of the Debtor's bankruptcy estate by virtue of Serv Trust being the Debtor's alter ego and none of the disregarded entity's assets having been exempted. Not only does Title 11 of the United States Code (the "Bankruptcy Code") not permit a debtor to assert a conflict with pre-petition counsel but, rather, the Bankruptcy Code actually expressly allows a trustee to engage a debtor's former counsel. While Mr. Schlossberg has most certainly not employed undersigned counsel in this case, the construct is nonetheless indicative of it being the Trustee—not the Debtor—who holds and guards the ability to assert any putative conflict.

Finally, insofar as the instant adversary proceeding has been substantively concluded by entry of an order approving a compromise of the claims herein, DE #61, it appears the Motion may be moot. This argument, however, is most pertinent in the prism of evidencing the enormous delay on the part of the Debtor in bringing the Motion, and is chiefly advanced as indicia of the inequities and potential prejudice that flow from someone literally waiting until after the close of evidence in a trial before bringing forth such a request for the disqualification of counsel.

3

For these reasons, and as extrapolated upon *infra*, it is respectfully suggested the Motion be denied.

## II.      Relevant Facts

### a.  Representation of the Debtor

Commencing in August of 2010, undersigned counsel was employed as an attorney at Offit Kurman, P.A. ("Offit Kurman").

While at Offit Kurman, undersigned counsel, being both a litigation associate and a member of the Florida Bar,[1] was asked to represent the Debtor in various litigation matters in the state and federal courts of Florida and Maryland (including in various appellate courts), and did so. These representations primarily concerned the attempted foreclosure of properties owned by the Debtor and the Debtor's dealings with various financial institutions. These representations were primarily undertaken with one or more other attorneys employed by Offit Kurman serving as co-counsel, with at least one partner-level attorney working on each case alongside undersigned counsel.

At some point during undersigned counsel's tenure at Offit Kurman, the Debtor sought a meeting with a zoning lawyer, pertaining to property located at 6789 Goldsboro Road, and undersigned counsel was asked to help facilitate the logistics of such since undersigned counsel spoke regularly with the Debtor.

Undersigned counsel has never acted as a zoning lawyer, does not hold himself out as a zoning lawyer, has no topical expertise in the field of zoning law, and did not advise the Debtor in

---

[1] Upon information and belief, at the time said representations commenced, undersigned counsel may have been the only litigation attorney at Offit Kurman to be an active member of the Florida Bar. At all times relevant, undersigned counsel was also licensed to practice law in the State of Maryland, but such was a far less unique qualifier at Offit Kurman, which maintains multiple offices in the State of Maryland.

4

connection with the zoning of the at-issue property. Undersigned counsel does not believe he attended the meeting in question other than to facilitate its beginning and, if he did remain present for the meeting, has no recollection of such.

Undersigned counsel has never furnished representation to Serv Trust and has never counseled the Debtor in connection with Serv Trust. While Serv Trust has been judicially determined to have been the Debtor's alter ego for a prolonged period of time, the representation of the Debtor, furnished by undersigned counsel, never concerned the Debtor's utilization of Serv Trust to hide assets, frustrate creditors, conceal income, or undertake any other activities whatsoever.

Undersigned counsel never saw the Serv Trust trust agreement until after he ceased to represent the Debtor, and then first saw the document at the Debtor's examination in this bankruptcy proceeding.

At no time during undersigned counsel's tenure at Offit Kurman did undersigned counsel have occasion to review the operating agreement (or any amended iteration thereof) for 6789 Goldsboro LLC ("6789 Goldsboro"). Undersigned counsel was not generally aware of the King Parties' existence while at Offit Kurman.[2] Undersigned counsel never spoke to either of the King Parties until more than a year after he left Offit Kurman.

While it appears undersigned counsel carried out one discreet research assignment at the direction of a partner at Offit Kurman, for which time was billed to 6789 Goldsboro LLC, the

---

[2] Mr. King and Ms. King maintain a social relationship with at least one Offit Kurman attorney with whom undersigned counsel frequently worked. Undersigned counsel does not recollect ever hearing either of their names, or discussing either of the King Parties, with this attorney, while at Offit Kurman. Given that nearly a decade has since passed, however, it would be disingenuous to assert—with any modicum of absolute certainty—that no casual, social reference to either or both of the King Parties was ever made.

Appx. 0334

research assignment in question did not concern (i) Serv Trust; (ii) the King Parties; (iii) an operating agreement; (iv) redemption rights; (v) bankruptcy preparation; or (vi) anything of the like. Rather, based on a review of the billing entry appended to the Debtor's Motion, it appears the research assignment concerned "Fair Housing Act treatment of municipal age restrictions," Motion, DE #49, at p. 60, something that is seemingly of absolutely no moment or relevance to any of the issues in this case. In any event, the time entry in question was billed to 6789 Goldsboro LLC, an entity that is now managed by Mr. King, and which most certainly does not assert any objection to undersigned counsel's representation of the King Parties.

### b.   Representation of the King Parties and 6789 Goldsboro LLC

In or about the late summer or early autumn of 2015, undersigned counsel gave notice to Offit Kurman of his intent to separate from the firm, and did thereafter formally depart the firm on or about November 20, 2015 and form The VerStandig Law Firm, LLC ("VLF"). Collateral with undersigned counsel's departure from Offit Kurman, undersigned counsel sought leave to withdraw as counsel for the Debtor in all then-pending matters.[3]

Nearly two years later, in July 2017 the King Parties engaged VLF to serve as their counsel in connection with the redemption of Serv Trust's interest in 6789 Goldsboro LLC. This representation later expanded to encompass the defense of counterclaims brought by Serv Trust and the bringing of a declaratory judgment claim to establish Serv Trust is the alter ego of Mr. Myers. After initiating a claim to establish the redemption of Serv Trust's interest in 6789 Goldsboro LLC, undersigned counsel filed suit against Serv Trust, on behalf of 6789 Goldsboro

---

[3] Offit Kurman also sought to withdraw as counsel in such matters, at the time. This is not coincidental, as part of the reason undersigned counsel gave such a large period of notice before leaving the firm was to allow for various matters to conclude without disruption correlative to undersigned counsel's departure.

LLC; that suit was subsequently administratively (but not substantively) consolidated with the King Parties' suit against Serv Trust.

At the time undersigned counsel was approached by the King Parties, a careful conflict analysis was undertaken to ensure the contemplated representation would not implicate, concern or involve any matter for which undersigned counsel had represented Mr. Myers. Had undersigned counsel not been absolutely assured of such, he would not have agreed to commence representing the King Parties in the matter.

When a counterclaim was brought by Serv Trust, suggesting Mr. King to have breached certain fiduciary duties owed to 6789 Goldsboro LLC, and at the urging of then-counsel for Serv Trust, undersigned counsel ceased acting as counsel for 6789 Goldsboro LLC so as to avoid even the appearance of a conflict of interest in serving as counsel to both an entity (6789 Goldsboro LLC) and an officer thereof (Mr. King) accused of having breached a fiduciary duty owed to the entity. That allegation of a conflict did not concern any prior representation of Mr. Myers. Certain attorneys at Offit Kurman then took over as counsel for 6789 Goldsboro LLC in connection with that litigation; undersigned counsel has not represented 6789 Goldsboro LLC at any time since.

As noted *supra*, 6789 Goldsboro LLC is managed by Mr. King and has been managed by Mr. King at all times since prior to the initiation of this case. The King Parties do not believe there is a conflict in their current counsel having also formerly furnished legal advice to an entity one of the King Parties manages, which is not a debtor in bankruptcy. The one time it appeared such a conflict could theoretically be extant—when Mr. Myers, through his alter ego of Serv Trust, accused Mr. King of breaching a fiduciary duty owed to 6789 Goldsboro—separate counsel was engaged to avoid even the appearance of a conflict. The claim for breach of fiduciary duty has since been dismissed following a state court trial. Neither Mr. Myers nor Mr. Schlossberg control

Appx. 0336

6789 Goldsboro LLC and, with the settlement of this matter, the Debtor's estate no longer purports to hold any interest in 6789 Goldsboro LLC.

## III.    Standard

Under Maryland law, the disqualification of counsel is an extreme remedy, being one that necessarily deprives a party of her/his choice of attorney(s):

> The disqualification of an attorney "is a drastic remedy since it deprives litigants of their right to freely choose their own counsel." The court, however, must also "be mindful of its obligation to the public and to upholding integrity in the judicial system." Accordingly, in deciding a disqualification motion, the court balances "two significant interests . . . : the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community." In light of a party's right to select its own counsel and the drastic nature of disqualification, the movant "'bears a high standard of proof to show that disqualification is warranted.'" Although the court "must not weigh the competing issues with hairsplitting nicety" to avoid disqualification of conflicted counsel, it should allow "[d]isqualification at the urging of opposing counsel . . . only where the conflict is such as clearly to call in question the fair and efficient administration of justice.'"

*Pennsylvania Nat. Mut. Cas. Ins. Co. v. Perlberg*, 819 F. Supp. 2d 449, 452–53 (D. Md. 2011) (quoting *Gross v. SES Americom, Inc.*, 307 F. Supp. 2d 719, 722 (D. Md. 2004) (citing *Buckley v. Airshield Corp.*, 908 F. Supp. 299, 304 (D. Md. 1995)); quoting *Buckley*, 908 F. Supp. at 304 (citing *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 724 (E.D. Va. 1990)); quoting *Stratagene v. Invitrogen Corp.*, 225 F.Supp.2d 608, 610 (D. Md. 2002)). *See also Iomaxis, LLC v. Hurysh*, 2022 U.S. Dist. LEXIS 10582, at *5 (D. Md. Jan. 20, 2022) (holding similarly).

In assessing a request to disqualify counsel on the basis of a claimed conflict emanating from a prior representation, courts engage a two-part analysis:

> In determining whether disqualification under MRPC 1.9 is proper, the court must undertake a two-part inquiry. It must find that the moving party established, first, "that an attorney-client relationship existed with the former client, and second, that the matter at issue in the former representation was the same or substantially related to that in the current action."

*Pennsylvania Nat. Mut. Cas. Ins. Co.*, 819 F. Supp. 2d at 453 (quoting *Stratagene*, 225 F.Supp.2d

8

at 610).

## IV.   Argument: The Motion Should be Denied

### a.   Previous Representations are Unrelated

Inasmuch as undersigned counsel has never served as an attorney for Serv Trust (a now-disregarded entity), and does not presently represent the Debtor, the matter *sub judice* would have to be "substantially related" to a prior representation of the Debtor for disqualification to be appropriate. A plain review of governing law and the facts herein reveals no such substantial relationship to exist.

The Maryland Rules of Professional Conduct spell out, in appreciable detail, the duties a lawyer owes to former clients:

> (a) An attorney who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

> (b) An attorney shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the attorney formerly was associated had previously represented a client:

> (1) whose interests are materially adverse to that person; and

> (2) about whom the attorney had acquired information protected by Rules 19-301.6 (1.6) and 19-301.9 (c) (1.9) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

> (c) An attorney who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Md. Rule 19-301.9

9

Appx. 0338

Thus the first question is if undersigned counsel's representation of the King Parties comes in "the same or a substantially related matter in which [the King Parties'] interests are materially adverse to the interests of [the Debtor]." Plainly, this is answered in the negative. Undersigned counsel's previous representations of the Debtor did not concern Serv Trust, did not concern the Debtor's use of Serv Trust as an alter ego, did not involve Serv Trust's putative ownership of a subordinate interest in 6789 Goldsboro LLC, did not involve the 6789 Goldsboro LLC operating agreement, did not concern a redemption of membership interests under that operating agreement, did not involve the Debtor's bankruptcy case and did not involve the Debtor's dealings with the Trustee. To the contrary, undersigned counsel primarily represented the Debtor in various matters concerning properties held by the Debtor in his own name, and in various disputes the Debtor had with financial institutions.

The second inquiry is equally answered in the negative: it does not appear the matters implicated herein are of any substantial relation to work Offit Kurman did for the Debtor. While the Debtor protests the existence of a meeting with a zoning lawyer at Offit Kurman, it is altogether unclear what such a meeting would have to do with the Debtor's utilization of Serv Trust as his alter ego, with the operating agreement of 6789 Goldsboro LLC, or with the redemption of Serv Trust's former interest in 6789 Goldsboro LLC. However, even if some relationship existed, the second inquiry would still be answered in the negative, as undersigned counsel never acquired any pertinent information concerning the zoning meeting—in fact, undersigned counsel does not practice in the field of zoning law.

This leaves only the third inquiry: whether or not information gleaned from the prior representation of Mr. Myers is now being used against him. In making such an assessment, "a generalized 'strategy' with regard to litigation or settlement is not sufficient to disqualify opposing

10

Appx. 0339

counsel." *Nichols Agency, Inc. v. Enchanted Child Care, Inc.*, 537 F. Supp. 2d 774, 782 (D. Md. 2008). And yet other than a vague understanding of Mr. Myers' generalized litigation strategy (which is one now well known to many through his litigious undertakings in this Honorable Court and others), no such information gleaned is even colorably relevant or capable of being used against Mr. Myers. The subjects of representation are so thoroughly unrelated as to be of no utility; nothing gleaned from a foreclosure suit in Florida is of any moment to whether membership interests in a limited liability company have been redeemed pursuant to the contours of that entity's operating agreement.

To be sure: undersigned counsel did not take the Debtor's file with him when he left Offit Kurman, and at no point in time has undersigned counsel divulged to any of the King Parties any confidence of the Debtor—period. Nor has this been a particularly difficult line to walk, as the King Parties' case is so thoroughly unrelated to the cases in which undersigned counsel represented the Debtor as to be of no relation; nothing about one set of cases would be of any moment to the other, and thus no confidences would ever even near a point of revelation.[4]

### b. Any Conflict Has Long-Since Been Waived

Even if, *arguendo* and counterfactually, a conflict existed because some relation of cases was extant, the same has been waived by the Debtor. This is not a genuine effort to seek shelter from conflicted counsel; the Motion appears to be a last-ditch effort to forestall adjudication of a case *after* trial was held on a settlement motion, being docketed just moments before closing

---

[4] It also bears fleeting note that undersigned counsel truly does not recollect any confidences of the Debtor. It has been roughly a decade since counsel left Offit Kurman; while there no doubt exist recollections of representing the Debtor and of the Debtor's demeanor, any privileged confidences have long-since been lost to the frailty of time. It is possible counsel once knew the Debtor's settlement negotiation strategy in one or more cases involving financial institutions but, even if so, such has been many, many years forgotten by now.

11

arguments commenced.

As Judge Chasanow has previously observed, a failure to timely seek disqualification may result in a waiver of such a claim:

> Courts have held that a party may waive its objection to a conflict of interest by failing to file timely a motion to disqualify. "[T]he mere length of the delay is not dispositive and the Court should not deny a motion to disqualify based on delay alone." The *Buckley* court suggested additional factors that a court should consider: "when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred, and in particular, whether the motion was delayed for tactical reasons; and whether the disqualification would result in prejudice to the nonmoving party."

*In re Modanlo*, 342 B.R. 230, 236–37 (D. Md. 2006) (quoting *Buckley*, 908 F. Supp. at 307 (quoting *Employers Ins. of Wausau v. Albert D. Seeno Constr. Co.*, 692 F. Supp. 1150, 1165 (N.D. Cal. 1988)); citing *Cassidy v. Lourim*, 311 F.Supp.2d 456, 461 & n. 11 (D. Md. 2004)).

Here, the Debtor learned of the claimed conflict at least as far back as September 2017 when undersigned counsel made an appraisal demand on Serv Trust in the care of Mr. Myers. Undersigned counsel brought this adversary proceeding, on behalf of the King Parties, nearly eighteen months ago. There is absolutely no explanation for the delay other than one of tactical election. And asking the King Parties to engage new counsel *after* the close of trial, and *after* an order approving a settlement agreement has been entered, would be grossly prejudicial in nature.

Thus, even if a conflict existed (and, as urged *passim*, one very much does not), the Debtor has long-since waived his right to seek disqualification based upon such a conflict. This is simply not the act of a man concerned about his prior counsel's actions but, rather, the transparently pretextual efforts of an ethically-unmoored litigant seeking to ". . . gum up the judicial process for his own personal benefit. . ." *In re Kelly*, 656 B.R. 541, 598 n.23 (Bankr. D. Md. 2023) (quoting *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 2020 U.S. Dist. LEXIS 26180, 2020 WL 758154 at *4 (D. Md. Feb. 13, 2020)).

12

Appx. 0341

### c. The King Parties Have Not Acted at Mr. Schlossberg's Direction—Ever

Equally, it bears repetition that the King Parties have not ever acted at Mr. Schlossberg's direction. This is a case that is concluding with the King Parties tendering to the Trustee the sum of $150,000.00 and indemnifying the Trustee for future correlative legal fees. The settlement was arrived upon following numerous rounds of negotiation. While the King Parties certainly do not feign to be hostile to the Trustee, or to hold any animus toward the Trustee, they have also been his litigation adversaries in this case.

For the avoidance of any doubt or ambiguity, however, this litigation was *not* commenced at the Trustee's request. The related state court litigation was commenced long before the Trustee had any involvement in the proceedings. Once it became apparent Serv Trust was Mr. Myers' alter ego, the Trustee entered the state court litigation as a nominal defendant. When the state court declared Serv Trust to, in fact, be Mr. Myers' alter ego, the Trustee and the King Parties worked cooperatively to assess the ramifications of that ruling and how best to bring the remaining issues before this Honorable Court. So, yes, there have been multiple moments of agreement along the way, but agreement ought not be conflated with—or mistaken for—the giving of direction. The Trustee has always been represented by his own counsel and the King Parties have always been represented by their own counsel. While polite and often cordial, the relationship between the Trustee and the King Parties has enduringly been one of counterparties never any closer than arm's length.

### d. Representation of the Debtor is Immaterial to Conflict Analysis

The majority of this brief addresses, in various manners, why there does not exist any conflict that flows from prior, unrelated representations of the Debtor. And the King Parties, together with their counsel, assuredly stand firmly by this fairly well-settled proposition. But the

13

proposition is, itself, also something of a red herring. The Debtor is not a party to this adversary proceeding and this adversary proceeding concerns only the redemption of a former asset of Serv Trust—a legal entity that has been found to be the Debtor's alter ego and the assets of which have, accordingly, been deemed assets of the Debtor's bankruptcy estate.

Plainly, Mr. Myers is not a party to this proceeding. While he has sought to intervene (also at the eleventh hour), no such motion has been granted. And, as will be addressed in a separate filing, the relevant intervention motion comes well shy of the standard requisite to enter this case, notably being devoid of "a pleading that sets out a claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), and otherwise failing to establish any grounds for intervention by right or permission. Yet even if, *arguendo*, Mr. Myers could somehow intervene, such would be in a post-trial posture, with a settlement having already been approved. There is, quite simply, no litigation to be had against Mr. Myers. The sole counterparty in this litigation was, and is, Mr. Schlossberg.

The Maryland Rules prohibit the representation of a counterparty, adverse to a former client of an attorney, "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Md. Rule 19-301.9.

The King Parties' interests, in this adversary proceeding, are not adverse to those of Mr. Myers—they are adverse to those of Mr. Schlossberg in his capacity as trustee of Mr. Myers' bankruptcy estate. In fact, if anything, the King Parties' offer to settle the litigation through the payment of monies to the estate is a benefit—not detriment—to Mr. Myers, who will exit

14

Appx. 0343

bankruptcy without a discharge, aided by the relief of those obligations Mr. Schlossberg is able to partially or fully retire through administration of the Debtor's estate.

To be sure, a bankruptcy trustee ought not be conflated with a debtor, and a bankruptcy estate ought not be conflated with a debtor who is a natural person. If anything, the docket in Mr. Myers' main case well exemplifies that the Debtor's interests are assuredly not synonymous with those of Mr. Schlossberg, who Mr. Myers has taken to often vilifying through outlandish and hyperbolic attacks.

So if Mr. Myers is not to be conflated with Mr. Schlossberg, it becomes unclear from where any actual conflict could emanate. The King Parties are not litigating against Mr. Myers; they were litigating—before settling—against Mr. Schlossberg. Yet Mr. Schlossberg has not suggested undersigned counsel to have formerly been his attorney in any related matter, nor has he suggested any prejudice to be extant on account of undersigned counsel's prior, unrelated representation of Mr. Myers.

Lest the foregoing appear technical, it merits notation that the Bankruptcy Code actually goes so far as to not only embrace the distinction between debtors and trustees but, too, to create a paradigm where a trustee is free to engage the services of a debtor's former counsel. 11 U.S.C. § 327(e). The standard for such is merely that the proposed employment of a debtor's former counsel (i) be in the best interests of the estate; and (ii) involve an attorney who is not personally adverse to the debtor or the estate. *Id.*

So even if, counterfactually and *arguendo*, undersigned counsel had once counseled the Debtor in connection with his use of Serv Trust as an alter ego to acquire an interest in 6789 Goldsboro LLC, the Trustee would actually be able to directly hire undersigned counsel to represent the estate's interests in this litigation. And if the Trustee could engage undersigned

15

Appx. 0344

counsel in this litigation, the Trustee could, too, consent to the waiver of any conflict of undersigned counsel in this litigation. Md. Rule 19-301.9.

This, of course, is not what has happened *sub judice*—at all. Undersigned counsel had no related representation of Mr. Myers, undersigned counsel has never furnished counsel to Mr. Myers in connection with his use of Serv Trust, and undersigned counsel has not been the Trustee's counsel in this case. But the foregoing nonetheless speaks to why it is that the Trustee, not Mr. Myers, is the one who would have standing to assess any alleged conflict with opposing counsel, and it is the Trustee, not Mr. Myers, who would need to seek disqualification.

### e. The Motion is Moot

Finally, while the King Parties and their counsel confidently defend the Motion on the merits, they also necessarily note that, as a byproduct of the Debtor having waited so long to bring the Motion, the relief sought therein is now moot. The adversary proceeding is no longer a live controversy, with the compromise of the parties thereto having now been approved by this Honorable Court. And there is, accordingly, no pertinent advocacy for undersigned counsel to undertake on this matter in this Honorable Court.

Where a case is dispositively concluded before a motion for disqualification becomes ripe, the motion does, in turn, become moot. *See Beck v. CKD Praha Holding, A.S.*, 999 F. Supp. 652, 657 (D. Md. 1998) (denying as moot a motion to disqualify counsel when the court elects to abstain from a proceeding); *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 684 (E.D. Va. 2008) (denying as moot a motion to disqualify counsel when a case is being dismissed); *Sister City Logistics, Inc. v. Fitzgerald*, 2025 U.S. Dist. LEXIS 122767, at *8 (S.D. Ga. June 27, 2025) (denying as moot a motion to disqualify after a case was remanded to state court); *Crawford v. Hughes*, 2021 U.S.

16

Appx. 0345

Dist. LEXIS 98864, at *1 n.5 (E.D. Va. May 25, 2021) (denying as moot a disqualification motion when a case has been dismissed).

Of course, none of the foregoing cases deal with a motion to disqualify brought after the close of evidence in a trial. Such is not because topical case law portends poorly for the King Parties; such is, rather, because a diligent review of precedent simply does not appear to turn up any instance of such a motion having ever been brought at such a late stage in an adversary proceeding or a federal civil case. This is, assuredly, not a coincidence: while mootness is no doubt grounds upon which the Motion may be denied, the mere fact that mootness is a relevant consideration speaks, equally, to the enormous and indefensible delay of the Debtor in bringing the Motion nearly a year-and-a-half into this case's pendency.

## V.    Conclusion

Undersigned counsel represented the Debtor in various cases, in Florida and Maryland, from 2010 through 2015. This case concerns a dispute that arose in 2017, between Serv Trust (the Debtor's alter ego) and the King Parties. Undersigned counsel's representation of the Debtor never touched on Serv Trust, the King Parties, or a dispute that would not arise for more than a year after counsel left Offit Kurman. There is, quite plainly, absolutely no relation between the representations. And there is, accordingly, no conflict of interest capable of informing the disqualification of counsel.

WHEREFORE, the King Parties respectfully pray this Honorable Court deny the Motion and afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

17

Appx. 0346

Respectfully submitted,

Dated: July 14, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 576-6885
mac@mbvesq.com
*Counsel for the King Parties*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of July, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to all counsel in this adversary proceeding.

I DO FURTHER CERTIFY that on this 14th day of July, 2025, a copy of the foregoing was served via First Class Mail, postage prepaid, upon:

Gregory Myers
700 Gulf Shore Blvd. N
Naples, Florida 34102
*Debtor*

/s/ Maurice B. VerStandig
Maurice B. VerStandig

18

Appx. 0347



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:

GREGORY B. MYERS,

        Debtor.

_____/

BRIAN KING, *et al.*,

        Plaintiffs,

      v.

ROGER SCHLOSSBERG, Trustee,

        Defendant.

_____/

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

## SECOND MOTION TO DISQUALIFY JUDGE MARIA ELENA CHAVEZ-RUARK

Comes now Gregory B. Myers ("Mr. Myers"), pursuant to 28 U.S.C. § 455(a) and 28

U.S.C. § 455(b)(5)(iii), moves for Judge Maria Elena Chavez-Ruark ("Judge Ruark") to disqualify

herself from further participation in these proceedings due to the July 2, 2025, filing of THIRD

PARTY COMPLAINT AND DEMAND FOR TRIAL BY JURY in Adv. No. 24-00007, against,

*inter alia*, JUDGE MARIA ELENA CHAVEZ-RUARK, in her official capacity, a copy of which

is attached hereto as **Exhibit A**.

When the impartiality of a judge is in doubt, the appropriate remedy is to disqualify that

judge from hearing further proceedings in the matter. In *Caperton v. A. T Massey Coal Co.*, 1129

S. Ct. 2252 (2009), a case concerning disqualification of a state supreme court justice, the U.S.

Supreme Court reaffirmed that litigants have a due process right to an impartial judge and that,

1

Appx. 0348

under circumstances in which judicial bias was probable, due process required disqualification. The court noted, however, that disqualification rules may be and often are more rigorous than the Due Process Clause requires. So it is with disqualification requirements for federal judges, which require disqualification when a judge's impartiality "might reasonably be questioned." 28 U.S.C. § 455(a).

WHEREFORE, Mr. Myers requests that Judge Ruark enter an Order immediately disqualifying herself from any further participation in these proceedings.

RESPECTFULLY SUBMITTED on this 3rd day of July, 2025.

_____
Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 3, 2025, a copy of the foregoing was furnished to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

_____
Gregory B. Myers, *pro se*

3

Appx. 0350



# Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re:

GREGORY B. MYERS,

     Debtor.

_____/

BRIAN KING, *et al.*,

     Plaintiffs,

     v.

ROGER SCHLOSSBERG, Trustee,

     Defendant.

_____/

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

GREGORY MYERS

     Third-Party Plaintiff,

v.

JUDGE MARIA ELENA CHAVEZ-RUARK,
in her official capacity

     Third-Party Defendant,

   and

6789 GOLDSBORO LLC

     Third-Party Defendant,

   and

MAURICE B. VERSTANDIG

1

Appx. 0352

Third-Party Defendant,

THE VERSTANDIG LAW FIRM, LLC

Third-Party Defendant,

and

FRANK MASTRO

Third-Party Defendant,

and

SCHLOSSBERG & ASSOCIATES, P.A.

Third-Party Defendant,

## THIRD PARTY COMPLAINT AND DEMAND FOR TRIAL BY JURY

Comes now GREGORY B. MYERS ("Myers" or "Debtor" or "Third Party Plaintiff"), and pursuant to 11 U.S.C. § 1109(b)[1] and Federal Rule of Civil Procedure 14 made applicable to adversary proceedings pursuant to Bankruptcy Rule 7014, brings this Third Party Complaint and Demand for Trial by Jury (the "Third Party Complaint") against JUDGE MARIA ELENA CHAVEZ-RUARK, in her official capacity ("Ruark"), 6789 GOLDSBORO LLC ("Goldsboro"), MAURICE B. VERSTANDIG ("VerStandig"), THE VERSTANDIG LAW FIRM, LLC ("MBV Law"), FRANK MASTRO ("Mastro"), and SCHLOSSBERG & ASSOCIATES, P.A. ("Schlossberg Law") (with Ruark, Goldsboro, VerStandig, MBV Law, Mastro, and Schlossberg Law being collectively known as the " Third-Party Defendants" and each sometimes being known

---

[1] 11 U.S.C. § 1109(b) provides: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

2

Appx. 0353

as a " Third-Party Defendant"), and does allege as follows:

## INTRODUCTION

1.      It is well established that "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." *Hedges* v. *Dixon County*, 150 U. S. 182, 192 (1893). "A Court of equity cannot, by avowing that there is a right but no remedy known to the law, create a remedy in violation of law . . . ." *Rees* v. *Watertown*, 19 Wall. 107, 122 (1874). See also, *e. g., Thompson* v. *Allen County*, 115 U. S. 550, 555 (1885); 1 J. Story, Equity Jurisprudence § 19 (W. Lyon ed. 1918). See also *INS v. Pangilinan*, 486 U.S. 875, 883, 108 S.Ct. 2210, 2216, 100 L.Ed.2d 882 (1988) (quoting *Hedges v. Dixon County*, 150 U.S. 182, 192, 14 S.Ct. 71, 74, 37 L.Ed. 1044 (1893)); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").

2.      Furthermore, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984)); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 42 (2021) (noting that in *Pulliam*, "the plaintiff sought an injunction only to prevent the judge from enforcing a rule of her own creation").

3.      Former U.S. Attorney General John Ashcroft's remarks summarize the bankruptcy court corruption taking place in Adversary Proceeding No. 24-00007 (the "Adversary"):

> Bankruptcy court corruption is not just a matter of bankruptcy trustees in collusion with corrupt bankruptcy judges. The corruption is supported, and justice hindered by high-ranking officials in the United States Trustee Program. The corruption has advanced to punishing any and all who mention the criminal acts of trustees and organized crime operating through the United States Bankruptcy Courts. As though greed is not enough, the trustees, in collusion with others, intentionally go forth to destroy lives. Exemptions provided by law are denied debtors. Cases are intentionally and unreasonably kept open for years. Parties in cases are sanctioned to discourage

3

Appx. 0354

them from pursuing justice. Contempt of court powers are misused to coerce litigants into agreeing with extortion demands. This does not ensure integrity and restore public confidence.

## PARTIES

4. Myers is a natural person who is a citizen of the state of Florida.

5. Ruark is a bankruptcy judge of the United States Bankruptcy Court for the District of Maryland and is being sued in her official capacity.

6. Goldsboro is a Maryland LLC formed pursuant to the laws of the State of Maryland, with its principal place of business in the State of Maryland.

7. VerStandig is, upon information and belief, a citizen of Nevada and the owner of MBV Law.

8. MBV Law is, upon information and belief, a Maryland LLC formed pursuant to the laws of the State of Maryland, with its principal place of business in Maryland.

9. Mastro is, upon information and belief, a citizen of Maryland and and owner of Schlossberg Law.

10. Schlossberg Law is a partnership operating and organized under the laws of Maryland.

## FACTS

11. On November 18, 2015, Myers filed a voluntary petition for bankruptcy relief under the reorganization provisions of Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), Case 15-26033 (the "Myers Bankruptcy Case").

4

12.    On February 22, 2017, the Myers Bankruptcy Case was converted from a case under chapter 11 to a case under chapter 7 and Schlossberg was appointed as chapter 7 trustee of the bankruptcy estate of Gregory B. Myers (the "Chapter 7 Trustee").

13.    On November 13, 2019, Maurice VerStandig, in his personal capacity, filed a Notice of Removal in this Court—removing State Court Case Nos. 436977-V and 451611-V (collectively, the "State Court Case") from the Circuit Court for Montgomery County, Maryland to the United States Bankruptcy Court for the District of Maryland, thereby initiating Adversary Proceeding 19-00427 (Adv. Proc. 19-00427; Doc 1).

14.    On December 5, 2019, the United States Bankruptcy Court for the District of Maryland (Simpson, J) entered an Order remanding the State Court Case back to the Circuit Court for Montgomery County, Maryland (the "Remand Order"), stating:

> ORDERED, that the above-captioned adversary proceeding is remanded to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. 1452(b).

(Adv. No. 19-00427, Dkt. No. 5).

15. On December 11, 2023, the Bankruptcy Court (Ruark, J) entered an Order approving what the Bankruptcy Court describes as a "Settlement Procedure Motion" which "seeks to *establish a procedural mechanism* for resolving litigation pending in state court among Brian King, Cristina King, and the Cristina and Brian King Children's Trust (collectively, the 'King Parties'), Serv Trust, and the Trustee [Roger Schlossberg] (who was named as a nominal defendant)." The "Settlement Procedure Motion"

16.    On January 10, 2024, Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, the "King Parties"), commenced Adversary Proceeding 24-00007 by filing a *Complaint For Declaratory Relief* [Adv.

5

Appx. 0356

Proc. Dkt. #1] (the "Complaint") against Roger Schlossberg, in his official capacity as Chapter 7 Trustee of Mr. Myers's bankruptcy estate ("Schlossberg" or "Trustee").

17.    On January 10, 2024:

- Brian King filed a Proof of Claim (Claim 21-1) in the amount of Zero Dollars and No Cents ($0.00) with "the basis of the claim" identified as "Equitable and statutory claim, as set forth in Case No. 24-00007"
- Cristina King filed a Proof of Claim (Claim 22-1) in the amount of Zero Dollars and No Cents ($0.00) with "the basis of the claim" identified as "Equitable and statutory claim, as set forth in Case No. 24-00007"
- Cristina and Brian King Children's Trust filed a Proof of Claim (Claim 23-1) in the amount of Zero Dollars and No Cents ($0.00) with "the basis of the claim" identified as "Equitable and statutory claim, as set forth in Case No. 24-00007"

18.    On June 25, 2025, Mr. Myers filed a Notice of Appeal (Doc xx), appealing to the to the United States District Court for the District of Maryland from the following orders entered in Case No. 15-26033-MCR by the United States Bankruptcy Court for the District of Maryland (Ruark, J):

- Order Denying Debtor's Motion To Strike Trustee's Motion For Approval Of Proposed Compromise And Settlement With Brian King, Cristina King, And The Cristina And Brian King Children's Trust (Doc. 1028)
- Order Granting Motion For Approval Of Proposed Compromise And Settlement With Brian King, Cristina King, And The Cristina And Brian King Children's Trust (Doc. 1029).

The referenced appeal was docketed in the United States District Court for the District of Maryland as Case 8:25-cv-02042-TDC.

19.    On June 25, 2025, Mr. Myers filed a Notice of Appeal (Doc xx), appealing to the to the United States District Court for the District of Maryland from the following orders, memorandums, notices, and rulings entered in Adversary Case No. 24-00007 by the United States Bankruptcy Court for the District of Maryland (Ruark, J):

Appx. 0357

- Order Granting Stipulation And Motion To Extend Time (Adv. No. 24-00007; Doc. 7).
- Scheduling Order (Adv. No. 24-00007; Doc. 15).
- Memorandum To Parties (Adv. No. 24-00007; Doc. 27).
- Notice Of Evidentiary Hearing (Adv. No. 24-00007; Doc. 29).
- Order Dissolving Show Cause Order After Response (Adv. No. 24-00007; Doc. 32).
- Notice Of Evidentiary Hearing (Adv. No. 24-00007; Doc. 33).

The referenced appeal was docketed in the United States District Court for the District of Maryland as Case 8:25-cv-02103-TDC.

20.    On June 30, 2025, in Adversary Proceeding 24-00007, Myers filed *Motion to Disqualify Judge Maria Elen Chavez-Ruark* (Case 24-00007; Doc 47) (the "Motion to Disqualify"). Judge Ruark refused to consider or rule on the Motion to Disqualify, constituting judicial misconduct and a violation of Myers's procedural due process rights.

21.    On June 30, 2025, the Maryland Bankruptcy Court orally denied Myers's Motion to Intervene in Adversary Proceeding (Case 24-00007; Doc 43).

22.    On June 30, 2025, the Maryland Bankruptcy Court orally denied Myers's *ore tenus* Motion to Stay [Adversary Proceeding 24-00007] Pending Appeal.

## COUNT I
### Constructive Fraud
### (All Third Party Defendants)

23.    Plaintiff incorporates paragraphs 1 through 22 of the Third Party Complaint as though they were fully set forth within this count of the Third Party Complaint.

24.    Third Party Defendants knowingly and purposefully acted outside the scope of their authority in a manner that is contrary to clearly established law where there was sufficient precedent at the time of their unlawful actions to put them on notice that their conduct was constructively fraudulent and constitutionally prohibited.

25.    Third Party Defendants acted in concert and conspired to put in place a fraudulent

7

Appx. 0358

scheme (i.e., "*establish a procedural mechanism*") to defraud Myers. All Third Party Defendants willfully aided in its execution. See *Etgen v. Washington County Bldg. Loan Ass'n.*, 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land W*ater Co. v. Robinson, 154 Cal. 36, 97 P. 10, 14."). Id. at 418.

26.    Third Party Defendants held positions of public trust and owed a duty of good faith and fair dealing to all parties, including Myers.

27.    Third Party Defendants breached their duty to uphold the public's trust intentionally with malice, and/or with reckless disregard for Myers's rights by willfully and intentionally participating in a fraudulent scheme to convert non-estate property without legal authority or justification.

28.    Third Party Defendants breached their fiduciary duty to Myers intentionally with malice, and/or with reckless disregard for Myers's rights by willfully and intentionally participating in a fraudulent scheme to convert non-estate property without legal authority or justification.

29.    Third Party Defendants actions were taken with support and cooperation of all Third Party Defendants, despite actual knowledge of all relevant law and facts.

30.    As a result of the Third Party Defendants reach of their legal, public, and fiduciary

8

duties, Myers has suffered material harm and material damages, and will continue to incur material harm and material damages due to ~~loss of the Escrow Funds.~~ the Third Party Defendants' fraudulent scheme aforesaid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against Third Party Defendants, jointly and severally, for actual damages in an amount not less than Ten Million Dollars ($10,000,000.00), award Third Party Plaintiff his attorneys' fees and suit costs incurred in connection with the prosecution of this matter and award any other relief it deems just and proper.

## DEMAND FOR JURY TRIAL

Third Party Plaintiff demands to exercise his right to a trial by jury on all claims or issues so triable.

Dated: July 2, 2025

Respectfully submitted,

Gregory B. Myers, pro se
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

9

I HEREBY CERTIFY that on July 2, 2025, a copy of the foregoing was furnished to the

following parties:

Judge Maria Elena Chavez-Ruark
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

Gregory B. Myers, *pro se*

10

Appx. 0361

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

In re:   Case No.: **15–26033 – MCR**   Chapter: **7**   Adversary No.: **24–00007**

**Gregory B Myers**
Debtor

**Brian King, et al.**
Plaintiffs

vs.

**Roger Schlossberg**
Defendant

# DEFICIENCY NOTICE

DOCUMENT:   57 – Second Motion to Disqualify Judge Maria Elena Chavez–Ruark Filed by Gregory B. Myers . (Attachments: # 1 Copy of Third Party Complaint and Demand for Trial by Jury) (Arter, Laurie)

PROBLEM:   **The following items are deficient for the above pleading, and must be cured by 7/17/25. No proposed order was submitted.**

CURE:   A proposed order with a list of those who should receive a copy must be filed. Also, a copy of the proposed order must be transmitted to all other parties to the matter. All proposed orders should be submitted in accordance with the Court's Electronic Filing Procedures. (Exhibit A to Administrative Order 03–02, Local Bankruptcy Rule 9013–3)

CONSEQUENCE:   Failure to cure the problem by the date above may result in the pleading being stricken or other action the Court deems appropriate without further notice. For a proposed order, the failure to cure the problem may result in the relief sought being denied for want of prosecution.

**Additional information on filing requirements: http://www.mdb.uscourts.gov/content/filing–requirements.**
**Additional information for non–attorney filers: http://www.mdb.uscourts.gov/content/after–filing.**

Dated: 7/3/25

Mark A. Neal, Clerk of Court
by Deputy Clerk, Laurie Arter
301–344–3327

cc:   Debtor – Gregory B. Myers

defntc (rev. 12/12/2016)

Appx. 0362

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.:  24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPPOSITION TO DEBTOR'S SECOND MOTION TO DISQUALIFY JUDGE

Defendant, Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers (the "Trustee"), by his undersigned counsel, pursuant to Local Rule 9006-1(a), hereby opposes the *Second Motion to Disqualify Judge Maria Ellena Chavez-Ruark* (the "*Second Motion to Disqualify*"), [Dkt. #57], filed herein by the Debtor, Gregory B. Myers, and respectfully represents as follows:

1.      The sole ground urged in the *Second Motion to Disqualify* is the Debtor's claimed filing of a "Third-Party Complaint and Demand for Jury Trial" in the above-captioned adversary proceeding against the Hon. Maria Ellena Chavez-Ruark and others. *See Second Motion to Disqualify* at 1 and Ex. 1 thereto.

2.      However, no such "Third-Party Complaint and Demand for Jury Trial" has been docketed in the above-captioned adversary proceeding. Indeed, the Debtor is not even a party to this adversary case and, therefore, lacks standing to file a third-party complaint herein. Thus, the

Appx. 0363

"Third-Party Complaint and Demand for Jury Trial" – which is not extant – does not supply a basis for disqualification under 28 U.S.C. § 455(b)(5)(iii) (which provides that a judge shall disqualify himself or herself "in any proceeding" where the judge "is a party to the proceeding").

3.  Further, as set forth in the Trustee's *Opposition to Debtor's Motion to Disqualify Judge*. [Dkt. #72], which is adopted and incorporated herein by reference, the mere threat of litigation against a judge is insufficient to warrant disqualification. *See, e.g., U.S. v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977) ("a judge is not disqualified merely because a litigant sues or threatens to sue him"); *Davis v. Kvalheim*, 2007 WL 1602369, *2 (M.D. Fla. June 1, 2007) ("disqualification is not required where the litigant baselessly sues or threatens to sue the judge"). Thus, the possibility that Judge Chavez-Ruark might be sued by the Debtor does not warrant disqualification.

4.  Finally, even if the Debtor could manufacture a circumstance where Judge Chavez-Ruark is a defendant in the same proceeding in which she is the presiding judge, disqualification would not necessarily be required. "The Supreme Court has recognized that although the use of 'shall' in a statute is normally mandatory, there will be situations where 'practical necessity' permits the use of discretion even in the presence of a 'shall.'" *Mellow v. Sacramento County*, 2008 WL 2169447, *2 (E.D. Cal. May 23, 2008) (quoting *Town of Castle Rock, Colo. v. Gonzalez*, 545 U.S. 748, 761-62 (2005)). Thus, "when a litigant vexatiously sues a judge, or judges, and advances unfounded, spiteful, or frivolous allegations against the judge, then the judge has the duty to say, 'Enough is enough'" and decline to recuse. *See Rochester v. Laubshire*, 2012 WL 2805717, *2 (D.S.C. July 10. 2012) (quoting *Mellow, supra*, 2008 WL 2169447 at *2) ("The recusal statutes do not have to be applied to their illogical extreme"); *accord Springer v. Hunt*, 2017 WL 3380675, *4 (D. Haw. Aug. 4, 2017) (declining to recuse where "[t]o recuse, given the facts of this case, would permit and encourage abuse and manipulation of the judicial system by

2

Appx. 0364

simply naming – with no support – a judge in an amended complaint after dismissal (or, as in this case, partial dismissal) of the original complaint."); *Davis supra*, 2007 WL 1602369 at *3 (concluding, in case where judge was included as putative defendant in *pro se* plaintiff's complaint against "upward of 100 defendants," that "allegations involving the undersigned are as frivolous as the remainder of the complaint, and recusal is therefore not required").

5.      Accordingly, the Debtor's *Second Motion to Disqualify*, like his first motion, is entirely without merit and insufficient to warrant disqualification for the reasons set forth herein and in the Trustee's prior *Opposition*. [Dkt. #72].

WHEREFORE, the Trustee respectfully requests that the *Second Motion to Disqualify* be DENIED.

Respectfully submitted,

SCHLOSSBERG | MASTRO

By:    */s/ Frank J. Mastro*
        Frank J. Mastro #24679
        Roger Schlossberg
        P.O. Box 2067
        Hagerstown, MD 21742
        (301) 739-8610
        fmastro@schlosslaw.com
        *Attorneys for Defendant,*
        *Roger Schlossberg, Trustee*

3

Appx. 0365

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the **15th** day of **July 2025**, a copy of the foregoing

*Opposition to Debtor's Second Motion to Disqualify Judge* and proposed Order was served

electronically via CM/ECF upon:

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012
mac@mbvesq.com
*Attorneys for Plaintiffs*

and via first-class, postage prepaid mail upon:

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. North
Naples, FL 34102
*Debtor*

                                        /s/ Frank J. Mastro
                                        Frank J. Mastro

4

Appx. 0366

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

In re:

GREGORY B. MYERS,

     Debtor.

_____ /

BRIAN KING, et al.,

     Plaintiffs,

      v.

ROGER SCHLOSSBERG, Trustee,

     Defendant.

_____ /

GREGORY MYERS

     Third-Party Plaintiff,

     v.

JUDGE MARIA ELENA CHAVEZ-RUARK,
in her official capacity; 6789 GOLDSBORO LLC;
MAURICE VERSTANDIG; THE VERSTANDIG
LAW FIRM, LLC; FRANK MASTRO; and
SCHLOSSBERG & ASSOCIATES, P.A.

     Third-Party Defendants.

_____ /

Case No.  15-26033-MCR
(Chapter 7)


Adv. No. 24-00007

**MOTION FOR FINAL SUMMARY JUDGMENT AS TO COUNT I OF**
**THIRD PARTY COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Comes now GREGORY B. MYERS ("Mr. Myers" or "Debtor" or "Third Party Plaintiff"),

and hereby moves this Court pursuant to Fed. R. Civ. P. 56 made applicable to adversary

1

proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, for entry of final summary judgment against Third-Party Defendants JUDGE MARIA ELENA CHAVEZ-RUARK, in her official capacity ("Ruark"), 6789 GOLDSBORO LLC ("Goldsboro"), MAURICE B. VERSTANDIG ("VerStandig"), THE VERSTANDIG LAW FIRM, LLC ("MBV Law"), FRANK MASTRO ("Mastro"), and SCHLOSSBERG & ASSOCIATES, P.A. ("Schlossberg Law") (collectively, the Third Party Defendants" or (TPDs")) as to Count I—Constructive Fraud in the *Third Party Complaint And Demand For Trial By Jury* (Doc. 43-1) (the "Third Party Complaint"), and as grounds therefore asserts the following:

## STATEMENT OF UNDISPUTED FACTS

Mr. Myers hereby adopts and incorporates as if fully set forth herein the undisputed facts and arguments set forth in the EMERGENCY MOTION FOR STAY PENDING APPEAL together with any exhibits (Doc 75).

Mr. Myers hereby adopts and incorporates as if fully set forth herein the undisputed facts and arguments set forth in the DEBTOR"S MOTION TO DISQUALIFY COUNSEL together with any exhibits (Doc 49).

## MEMORANDUM OF LAW

### I. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56.

"As a general rule, the court may consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." *Prop. Mgmt. & Invest., Inc. v. Lewis*, 752

2

F.2d 599, 604 n.4 (11th Cir. 1985). Moreover, because the attached exhibits include statements made by the Third Party Defendants or their agents, they would be admissible as non-hearsay under Fed. R. Evid. 801(d).

Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and must be liberally construed by this Court. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) ("pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys" and must be "liberally construed.").

## II. Argument

"[W]here two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability." *Etgen v. Washington County Bldg. Loan Ass'n.*, 184 Md. 412, 41 A.2d 290 (1945) (internal citations omitted).

In the context of bankruptcy proceedings, specifically concerning settlements approved under Rule 9019, a claim of constructive fraud can be asserted to challenge a transfer of assets made by the debtor's bankruptcy estate. Unlike actual fraud, constructive fraud does not require proof of intent to deceive. Furthermore, the misrepresentation supporting constructive fraud can be an omission of material information when the omitting party breaches a duty to disclose that information. Here, the *proposed* "settlement" is illegal, the product of collusion, and against the public interest. *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir.1991).

3

On February 10, 2017, 6789 Goldsboro LLC ("Goldsboro") filed a response in Debtor's administrative case admitting, "Serv Trust...is a fifty percent owner of Goldsboro, a Maryland limited liability company."

On December 19, 2017, during a hearing in the Debtor's administrative case [Case 15-26033; Doc 701], the Chapter 7 Trustee admitted that Myers does not own Serv Trust:

> THE COURT: All right, well, this is, though, an account of Serv
> Trust, right?
> MR. SWEENEY: Correct.
> THE COURT: Okay.
> MR. SWEENEY: That's correct.
> THE COURT: **Not his account?**
> MR. SWEENEY: **That is correct.**
> THE COURT: **All right**. *** **This is his kids' trust**.

On December 18, 2018, in the State Action, The Honorable Anne K. Albright (now sitting on the Appellate Court of Maryland), found that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members," and concluded that Mr. King's actions "**would amount to constructive fraud**."

On January 10, 2019, Serv Trust filed its *Second Amended Counterclaim and Demand for Jury Trial* against the King Parties, and on January 28, 2019, the King Parties filed a *Motion to Dismiss the Second Amended Counterclaim*, which the State Court denied on April 19, 2019. The King Parties's answer was therefore due 15 days from that date (i.e., by May 4, 2019) per Md. Rule 2-321(c). The King Parties, however, *never filed an answer* to the Second Amended Counterclaim. Accordingly, **the facts asserted** in Serv Trust's *Second Amended Counterclaim and Demand for Jury Trial* are now **deemed admitted**. *See Vanhook v. Merchants Mut. Ins. Co.*, 22 Md. App. 22, 27 (1974).

On May 12, 2021, the King Parties filed a Proof of Claim (Claim 3) in Mr. Myers's Florida Bankruptcy Case (Case No. 2:21-bk-00123) **predicated upon the State Action**. Mr. Myers filed

4

an objection, and on June 29, 2021, the Florida Bankruptcy Court (Delano, J) entered an *Order Sustaining Debtor's [Myers's] Objection to Proof of Claim 3 Filed by Brian King & Cristina King [Doc. No. 84]* [Case 2:21-bk-00123-FMD; Doc. 108], stating:

> 1. The Objection to Proof of Claim 3 filed is **SUSTAINED**.
> 2. The claim of Brian King & Cristina King is disallowed in its entirety.

On June 30, 2025, the Chapter 7 Trustee testified under oath as follows:

> SCHLOSSBERG: Your Honor, I never requested Mr. VerStandig at any time to do anything for me in any fashion. *** He is not my attorney.

(Emphasis added). However, at a hearing on September 23, 2019 in the State Action, counsel for the King Parties (Maurice B. VerStandig, Esq.) told Judge Dwyer "**the trustee has asked us to pursue such matters [alter ego claims] in this case**," as follows:

> THE COURT: So I guess I just -- a lot of what you say make sense. But how do I -- how do I not take into consider what Mr. Andres argued, because the alter ego claims -- and I think the case law on this is really clear. So tell me what I'm missing. Alter ego claims belong to the trustee.

> MR. VERSTANDIG: **Yes. The trustee has asked us to pursue such matters in this case** and the bankruptcy court has been very clear in suggesting through its order of extension that the State court litigation was ongoing and judicial economy favors a resolution as part of this case.

A copy of the September 23, 2019, hearing transcript in the State Action is in the record of this case.

On June 30, 2025, the Chapter 7 Trustee testified under oath as follows:

> SCHLOSSBERG: I cannot enter into an agreement binding non-estate property.

**There is no final judgment in the State Action**. This Court's attempt to characterize the January 12, 2023 non-final order entered by the State Court is wholly unsound. First, it is of no

5

Appx. 0371

moment that the King Parties' counsel (VerStanding), in a failed effort to manufacture some *illusion* of finality, prepared the non-final order and *designated* it a "non-final *judgment*" is irrelevant. As Md Rule 2-602(a) clearly states, "an order or other form of decision, **however designated**, ..." Moreover, the State Court's January 12, 203, interlocutory order is not an order "for the payment of money." See *Anthony Plumbing of Maryland, Inc. et al. v. Attorney General of Maryland et al.*, 298 Md. 11 (1983). "The characteristics of a traditional equity order for the payment of money differ markedly from those of a typical judgment at law for the payment of money. The latter type of judgment 'does not purport to order anyone to do anything.'" *Della Ratta v. Dixon,* 422 A.2d 409,47 Md.App. 270 (1980). And, relevant here, it is "**not immediately enforceable**." *id.* at 286, 422 A.2d 409. Accordingly, this Court does not have jurisdiction over the King Parties' claims which involves property titled in the name of a non-debtor (i.e. Serv Trust), so this Court would thus not have subject matter jurisdiction over any issue with regard to that property. Nor could Serv Trust's property be brought into Myers's bankruptcy estate via a claim by the Chapter 7 Trustee because the period of limitations to do that has expired. See 11 U.S.C. § 546. See also *Maiz v. Virani*, 311 F.3d 334 (5th Cir. 2002) (turnover proceeding may not be used to adjudicate whether a corporation is an individual judgment debtor's alter ego).

The King Parties lack statutory authority to file the Adversary Complaint. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014), and the Chapter 7 Trustee has conceded that he is barred under Bankruptcy Rule 9027(a)(3) from removing the State Action to this Court, citing Bankruptcy Rule 9027 and *Roberts v. Creighton*, 2009 WL 7083320 (D. Md. Feb. 27, 2009). Notwithstanding that jurisdictional bar, the Chapter 7 Trustee and the King Parties (VerStandig) have conspired, with the Court's help, "to establish a *procedural mechanism* for resolving litigation pending in state court among [the King Parties], Serv Trust, and the Trustee

6

(who was named as a nominal defendant)" — i.e., a faux removal to *force* their way back into this Court (Judge Shopping) so that Judge Ruark can turn a blind-eye and "rubber stamp" their fraudulent Settlement Motion.

The record reflects that the King Parties, Goldsboro, and the Chapter 7 Trustee represented to the Appellate Court of Maryland (ACM) that "[t]he order from which appellants appealed did not adjudicate or complete the adjudication of any claim in this matter." Furthermore, as Judge Lease said, Maryland adheres to the *Frow Doctrine. See Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 428-33 (1995) discussing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)( "But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."). "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law." *Id.* See also *Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008) (recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties").

A declaratory judgment in a bankruptcy adversary proceeding must be rooted in the specific legal framework of the Bankruptcy Code itself (i.e., it must be tied to a substantive provision of the Bankruptcy Code). Pursuant to the Declaratory Judgment Act of 1934, the Court is authorized to "declare the rights and other legal relations of any interested party seeking such declaration" when there is a "case of actual controversy." 28 U.S.C. § 2201(a). Congress also

7

Appx. 0373

delegated to the Supreme Court the power to make rules of practice and procedure that govern bankruptcy proceedings. 28 U.S.C. § 2075. Such rules, though, can't "abridge, enlarge, or modify any substantive right." Id. Here, the Adversary Complaint is premature (i.e., *not* ripe) because it requires the assumption of future, hypothetical events that have yet to occur (i.e., a final judgment being entered in the State Action). *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 561 (3d Cir. 2002) ("In cases where a plaintiff seeks . . . declaratory relief . . . standing will not lie if adjudication . . . rests upon contingent future events that may not occur as anticipated or indeed may not occur at all."). Because the Adversary Complaint does not allege an actual "case of actual controversy," the Adversary Complaint must be dismissed for lack of jurisdiction.

The Chapter 7 Trustee's proposed "settlement" with the King Parties constitutes fraud. The Chapter 7 Trustee is *purportedly* agreeing to transfer Serv Trust's interest in Goldsboro (i.e., *non-estate property*) in exchange for a $150,000 payment to the Chapter 7 Trustee and, therefore, a violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner. See *In re Anderson*, 377 B.R. 865 (2007). Here, the Chapter 7 Trustee **failed to submit a copy of the actual signed settlement agreement** to the Court and all parties in interest. This Court cannot "rubber stamp" a trustee's proposal. Rather as mandated by the Supreme Court in T.M.T. a Court must be apprised of the 'acts necessary for an intelligent and objective opinion, the probabilities of ultimate success should the claim be litigated'" The purpose of Rule 9019 is to prevent "concealed agreements which are unknown to the creditors and unevaluated by the court." *United Shipping Co.*, 1989 WL 12723 at *5 (Rule 9019's purpose "is to protect other creditors against bad deals made between one creditor and the debtor."). This requires the Court to have access to all facts necessary for an intelligent and objective opinion. The Court cannot make an informed decision about the fairness and equitability of the settlement, i.e., a determination that a

8

Appx. 0374

proposed settlement is fair to the debtor's estate and the paramount interest of creditors, without the Court having first reviewed a copy of the actual signed settlement agreement. Therefore, although Rule 9019 doesn't explicitly mention signed settlement agreements, the practical requirements of seeking and obtaining court approval make providing a copy of the agreement to the court and interested parties a standard and necessary step. All parties in interest need to review the the signed settlement agreement itself to determine if they are prejudiced. This assessment requires the Court reviewing the signed settlement agreement itself. This enables the court to fulfill its duty of ensuring the fairness and equity of the settlement. In essence, the court cannot approve a settlement agreement it hasn't seen. The court needs to examine the details of the agreement to ensure it is fair and equitable to all parties involved, including creditors Without the actual settlement agreement, the court lacks the necessary information to make a determination regarding the fairness and appropriateness of the compromise. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 4 1 4, 424 (1968). *See* Fed. R. Bankr. P. 90 1 9(a); 11 U.S.C. § 102(a) (defining "notice and a hearing"); Fed. R. Bank. P. 2002(a)(3) (requiring 21 days' notice for hearing to approve settlement). Here, the Chapter 7 Trustee's settlement **motion** contains three terms; however, the Settlement Order provides for a **fourth term** which was not part of the settlement motion.

The King Parties have filed **sham or fraudulent proofs of claim** against the estate in an attempt to manufacture standing where none exists. If an objection has been filed against the claim, the creditor cannot withdraw the claim as of right. Instead, they must file a motion to withdraw the claim and seek an order from the court after a hearing where they have provided notice of the hearing to the trustee and all creditors and parties in interest. If a creditor attempts to withdraw their claim after an objection has been filed without obtaining the necessary court order, the

9

debtor's objection to the claim must be sustained. This is because, under the rules, the attempted withdrawal would be **invalid**, leaving the objection unresolved and necessitating a ruling from the court. The King Parties cannot withdraw their claims in a strategic attempt to avoid an adverse ruling(s) or impact the bankruptcy process in an unfair way. See *Bath Iron Works Corp. v. Congoleum Corp. (In re Congoleum Corp.)*, 2021 Bankr. LEXIS 10, 2021 WL 28396 (Bankr. D.N.J. Jan. 4, 2021), where the Bankruptcy Court for the District of New Jersey denied a motion by Congoleum Corporation (the "Debtor") for approval pursuant to Bankruptcy Rule 9019 of a settlement agreement, (the "Settlement") between the Debtor and Bath Iron Works Corporation ("BIW"). The Court declined to approve the Settlement, which was conditioned on the Court making findings that could impact litigation in another court, because the Court was unwilling to make all the requested findings. However, instead of explaining why it was denying approval of the Settlement or issuing partial findings, the Court denied the motion in its entirety, because to do otherwise while related pending litigation existed would, in the Court's view, amount to little more than an inappropriate advisory opinion.

A bankruptcy court cannot approve a trustee's transfer of property that is not part of the bankruptcy estate as part of a settlement under Rule 9019 of the Federal Rules of Bankruptcy Procedure. **Non-Estate Property Not Subject to Trustee's Transfer Powers**: Property that falls outside the definition of the bankruptcy estate is generally not under the control of the trustee and therefore not subject to their power to transfer or liquidate. Moreover, there is **No Basis for Court Approval**: If the property isn't part of the estate, the bankruptcy court lacks the statutory authority to approve its transfer within the context of a Rule 9019 settlement.

"In evaluating a settlement, '[t]he court may give weight to the trustee's opinion that the settlement is fair and equitable,' but may not simply adopt the [t]rustee's position without making

its own independent inquiry." *In re Soup Kitchen Int'l Inc.*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014) (quoting *In re Copperfield Invs., LLC*, 401 B.R. 87, 92 (Bankr. E.D.N.Y. 2009)); see also *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009) ("A court may not simply defer to a [trustee's] judgment, but must independently evaluate the reasonableness of the settlement.")

It is axiomatic that, to approve a settlement, the terms of the settlement must be lawful. See *Arrowsmith v. Mallory (In re Health Diagnostic Lab'y, Inc.)*, 588 B.R. 154, 162 (Bankr. E.D. Va. 2018) (stating that "courts will not approve settlement agreements that are 'illegal, a product of collusion, or against the public interest'" (quoting *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999))); *In re Christensen*, 561 B.R. 195, 215 (Bankr. D. Utah 2016) ("[S]tipulations cannot be approved if they violate the law."), *aff'd sub nom. In re Bird*, 577 B.R. 365 (B.A.P. 10th Cir. 2017); *In re Telcar Grp., Inc.*, 363 B.R. 345, 357 (Bankr. E.D.N.Y. 2007) ("To the extent a proposed settlement includes provisions, the enforcement of which would be illegal or against public policy, it matters not whether the settlement is in the best interests of the estate."). Rather, before entering a consent decree the court must satisfy itself that the agreement "is fair, adequate, and reasonable" and "is not illegal, a product of collusion, or against the public interest." *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir.1991). Because the issuance of a consent decree places the power of the court behind the compromise struck by the parties, the district court must ensure that the agreement is not illegal, a product of collusion, or against the public interest.

Additionally, the Settlement Motion purports to decide rights and to distribute property owned by a non-debtor, non-party (i.e., Serv Trust). The Bankruptcy Code does not authorize a bankruptcy court to eliminate rights with respect to a non-debtor's interest in property. Nor does it authorize a trustee to compromise someone else's claims. The Court did not decide those rights,

11

but approved a settlement by a Chapter 7 Trustee who has no duty or authority to bind the non-debtor, non-party (i.e., Serv Trust).

## III. Conclusion

WHEREFORE, because no genuine issue of material fact exists and Mr. Myers is entitled to judgment as a matter of law, the Court should enter final summary judgment in favor of Mr. Myers and against all Third Party Defendants, jointly and severally, as to Count I—Constructive Fraud in the *Third Party Complaint And Demand For Trial By Jury* (Doc. 43-1) for the relief requested therein. In making this demand, Mr. Myers does not waive any of his rights.

RESPECTFULLY SUBMITTED on July 17, 2025.

Gregory B. Myers, pro se
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
*gregbmyers@verizon.net*

12

Appx. 0378

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2025, a copy of the foregoing was furnished to the

following parties:

Judge Maria Elena Chavez-Ruark
6500 Cherrywood Lane
Greenbelt, Maryland 20770

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

Gregory B. Myers, *pro se*

13

Appx. 0379

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.: 24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**TRUSTEE'S OPPOSITION TO DEBTOR'S "MOTION FOR FINAL
SUMMARY JUDGMENT AS TO COUNT I OF THIRD PARTY COMPLAINT"**

Defendant, Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of Gregory

B. Myers (the "Trustee"), by his undersigned counsel, pursuant to Local Rule 9006-1(a), hereby

opposes the *"Motion for Final Summary Judgment as to Count I of Third Party Complaint and*

*Demand for Jury Trial"* (the "*Motion*"), [Dkt. #78], filed herein by the Debtor, Gregory B.

Myers, and respectfully represents as follows:

1.      No such *"Third-Party Complaint and Demand for Jury Trial"* has been docketed

in the above-captioned adversary proceeding. Without a third-party complaint having been

docketed, there is nothing upon which the Court can award a judgment. Thus, the *Motion* may be

denied on this ground alone.

2.      The *Motion* should be denied for the additional reason that the Debtor is not

presently a party to this adversary case and, thus, has no standing to bring a third-party complaint

herein, let alone file the instant *Motion*.

Appx. 0380

3.      The Trustee acknowledges that the Debtor previously filed a *Motion to Intervene in Adversary Proceeding* (the "*Motion to Intervene*"), [Dkt. #43], in which he asks to intervene in this adversary case notwithstanding that the matter substantively has been resolved by virtue of this Court's *Order Approving Trustee's Compromise and Settlement with King Parties*, [Dkt. #61], entered herein on July 3, 2025.  The Trustee has opposed to the *Motion to Interven*e, *see* [Dkt. #68], and maintains that the *Motion to Intervene* should be denied for the reasons set forth in the Trustee's opposition,

4.      Nevertheless, even if the Debtor hereafter is: (a) permitted to intervene in this adversary case; and (b) granted leave to file a third-party complaint, the filing of any motion for summary judgment thereon would have to await the issuance of a scheduling order by the Court and would be subject to any conditions imposed therein regarding the filing of dispositive motions. *See* Fed. R. Civ. P. 16(b) (incorporated herein by Fed. R. Bankr. P. 7016(a)). Thus, the instant *Motion* is, at best, entirely premature and not ripe for resolution at the present time.

WHEREFORE, for all the foregoing reasons, the Trustee respectfully requests that the *Motion* be DENIED.

Respectfully submitted,

SCHLOSSBERG | MASTRO

By:____*/s/ Frank J. Mastro*_____
          Frank J. Mastro #24679
          Roger Schlossberg
          P.O. Box 2067
          Hagerstown, MD 21742
          (301) 739-8610
          fmastro@schlosslaw.com
          *Attorneys for Defendant,*
          *Roger Schlossberg, Trustee*

2

Appx. 0381

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the **31st** day of **July 2025**, a copy of the *Trustee's Opposition to Debtor's "Motion for Final Summary Judgment as to Count I of Third Party Complaint"* and proposed Order was served electronically via CM/ECF upon:

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012
mac@mbvesq.com
*Attorneys for Plaintiffs*

and via first-class, postage prepaid mail upon:

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. North
Naples, FL 34102
*Debtor*

_/s/ Frank J. Mastro_
Frank J. Mastro

3

Appx. 0382

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor, | ) | |
| ———————————————— | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Case No. 24-00007-MCR |
| v. | ) | |
| | ) | |
| ROGER SCHLOSSBERG, in His | ) | |
| Official Capacity as Chapter 7 Trustee | ) | |
| of the Bankruptcy Estate of Gregory B. | ) | |
| Myers, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

**OPPOSITION TO MOTION FOR DINAL SUMMARY JUDGMENT AS TO
COUNT I OF THIRD PARTY COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Come now Brian King, Cristina King and the Cristina and Brian King Children's Trust
(collectively, the "King Parties"), by and through undersigned counsel, in opposition to the Motion
for Final Summary Judgment as to Count I of Third Party Complaint and Demand for Trial by
Jury (the "Motion," as found at DE #78), and state as follows:

Gregory Myers ("Mr. Myers" or the "Debtor") appears to be moving for summary
judgment on a third party complaint that does not exist. The Motion seeks adjudication of a claim
set forth at docket entry 43-1 but, upon review, no such docket entry exists. And this is not a
defense smugly pegged to a typographical error or founded upon a technicality; upon review of
the docket in this case, there does not appear to have ever been docketed a third party complaint.

1

Appx. 0383

Axiomatically, one cannot seek summary judgment—or any other recognized variety of judgment—on a pleading that does not exist. While the King Parties do not have an on-point citation for this proposition, it is respectfully suggested such may be because there simply does not exist any reported precedent stemming from efforts to obtain summary judgment on a pleading that does not exist. *See, e.g.*, *Richfield Oil Corp. v. NLRB*, 231 F.2d 717, 723 (D.C. Cir. 1956). ("It requires no citation of authority to support the obvious…").

Equally, even if Mr. Myers were to docket a third party complaint, he would be without the ability to secure summary judgment thereupon for the simple reason that prosecution of a third party complaint requires one to already be a party to litigation. *See* Fed. R. Civ. P. 14 (noting that only "[a] defending party" may "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."); Fed. R. Bankr. P. 7014 (incorporating Rule 14 in adversary proceedings).

Mr. Myers is, of course, not a party to this adversary proceeding. And, even if Mr. Myers were to become a party hereto, he still would not be a "defending party," insofar as no claims have been brought against him.

To be sure, other issues abound—not the least of which being that this litigation is subject to a compromise that has been approved by this Honorable Court. *See* DE #61. There is neither a case nor a controversy left to adjudicate herein.

At bottom, the Motion is a request for summary judgment filed by a non-party, premised on a non-existent pleading, in a case that no longer contains a live controversy. Suffice it to posit, the Motion is accordingly well meritorious of denial.

WHEREFORE, the King Parties respectfully pray this Honorable Court deny the Motion and afford such other and further relief as may be just and proper.

2

Appx. 0384

Respectfully submitted,

Dated: July 31, 2025

By: /s/ Maurice B. VerStandig
    Maurice B. VerStandig, Esq.
    Bar No. 18071
    The VerStandig Law Firm, LLC
    9812 Falls Road, #114-160
    Potomac, Maryland 20854
    Phone: (301) 444-4600
    Facsimile: (301) 576-6885
    mac@mbvesq.com
    *Counsel for the King Parties*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of July, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to all counsel in this adversary proceeding.

I DO FURTHER CERTIFY that on this 31st day of July, 2025, a copy of the foregoing was served via First Class Mail, postage prepaid, upon:

Gregory Myers
700 Gulf Shore Blvd. N
Naples, Florida 34102
*Debtor*

/s/ Maurice B. VerStandig
Maurice B. VerStandig

3

Appx. 0385

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re: | ) |
| GREGORY B. MYERS, | ) Case No. 15-26033-MCR |
| Debtor. | ) (Chapter 7) |
| | ) |

**MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND SETTLEMENT
WITH BRIAN KING, CRISTINA KING, AND THE CRISTINA AND
BRIAN KING CHILDREN'S TRUST**

TO THE HONORABLE MARIA ELLENA CHAVEZ-RUARK, UNITED STATES
BANKRUPTCY JUDGE:

COMES NOW, Roger Schlossberg, the Chapter 7 Trustee herein (the "Trustee"), by his undersigned counsel, and in support of the instant *Motion for Approval of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* hereby respectfully represents as follows:

1.      As is set forth in the *Notice of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* filed contemporaneously herewith (the "*Notice*"), the Trustee proposes to enter into a compromise and settlement of a pending dispute with the parties named therein. The background of said dispute and the specific terms and conditions of said proposed compromise and settlement are more particularly set forth in said *Notice*. A copy of said *Notice* is attached hereto and incorporated by reference herein as *Exhibit 1*.

2.      Pursuant to the provisions of Bankruptcy Rules 9019 and 2002, the *Notice* has been forwarded to all parties-in-interest herein as appears by reference to the *Certificate of Service* also filed contemporaneously herewith.

Appx. 0386

3.      If said proposed compromise and settlement is approved by this Court, the parties respectfully submit that this Court should entertain and enter an *Order* in substantially that form attached to the *Notice*.

4.      The parties believe that the above-described proposed compromise and settlement is in the best interests of all parties-in-interest herein and should be approved by the Court.

WHEREFORE, the Trustee respectfully requests that the proposed compromise and settlement be APPROVED.

Respectfully submitted,

SCHLOSSBERG | MASTRO

By:____*/s/ Frank J. Mastro*_____
       Frank J. Mastro #24679
       Roger Schlossberg
       P.O. Box 2067
       Hagerstown, Maryland 21742
       (301) 739-8610
       fmastro@schlosslaw.com
       rschlossberg@schlosslaw.com
       *Attorneys for Trustee*

2

Appx. 0387

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY, that on this *7th* day of *February 2023*, a copy of the foregoing *Motion for Approval of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* was served upon all parties listed on the attached CMECF Mail List (via electronic mail to those parties listed on the Electronic Mail Notice List and via first-class mail postage prepaid to those parties listed on the Manual Notice List), and upon the following parties via first-class, postage prepaid mail:

Maurice B. Verstandig, Esq.
The Verstandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, MD 20854
mac@mvbesq.com
*Attorneys for Brian King, Cristina King, and*
*the Cristina and Brian King Children's Trust*

and via first class, postage prepaid mail upon:

Gregory B. Myers
700 Gulf Shore Blvd. N.
Naples, FL 34102
gregbmyers@verizon.net
*Debtor*

Benjamin Andres
Gordon & Simmons, LLC
1050 Key Parkway, Suite 101
Frederick, MD 21702

Bradford F. Englander
Whiteford Taylor & Preston, LLP
3190 Fairview Park
Suite 800
Falls Church, VA 22042

H. Jason Gold
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW
Suite 900
Washington, DC 20001

3

Appx. 0388

Hunter Harman
Berkshire Hathaway Home Services
Beach Properties of FL
2063 Highway 395 South
Santa Rosa Beach, FL 32459

IPFS Corporation
30 Montgomery Street
Suite 1000
Jersey City, NJ 07302

Barbara Ann Kelly
4505 Wetherill Rd.
Bethesda, MD 20816

Michael K. Myers
7728 Lee Avenue
Alexandria, VA 22308

Serv Trust
3158 Bravertown Street
Suite 206
Edgewater, MD 21037

Tenants by the Entirety
Roger Charles Simmons
Gordon & Simmons, LLC
1050 Key Parkway, Suite 101
Frederick, MD 21702

Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770

_____*/s/ Frank J. Mastro*_____
Frank J. Mastro

4

Appx. 0389

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor. | ) | (Chapter 7) |
| | ) | |

### NOTICE OF PROPOSED COMPROMISE AND SETTLEMENT WITH BRIAN KING, CRISTINA KING, AND THE CRISTINA AND BRIAN KING CHILDREN'S TRUST

TO ALL PARTIES-IN-INTEREST:

PLEASE TAKE NOTE that Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers (the "Trustee"), contemporaneously has filed his *Motion for Approval of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* (the "*Settlement Motion*") seeking authority to compromise and settle the following described matter upon those terms and conditions hereinafter noted.

### Background

Gregory B. Myers ("the Debtor" or "Myers") filed a voluntary Chapter 11 bankruptcy petition on November 18, 2015 ("the Petition Date"). The Debtor remained in possession of the estate's assets and managed its financial affairs until February 22, 2017, when the case was converted to a proceeding under Chapter 7 of the Bankruptcy Code . The Trustee thereafter was duly appointed as the Chapter 7 Trustee herein.

In 2017, the Trustee was named as a nominal defendant in the matter of *Brian King, et al. v. Serv Trust, et al.*, Case No. 439677-V (the "King Case"), in the Circuit Court for Montgomery County, Maryland ("the State Court"), a case which subsequently was consolidated with the related matter of *6789 Goldsboro LLC v. Serv Trust, et al.*, Case No. 451611-V (the "Goldsboro Case";

1

Appx. 0390

collectively, the King Case and Goldsboro Case are hereafter referred to as "the State Court Cases"). Each of the State Court Cases concerns claims against Serv Trust, with the Goldsboro Case also concerning a claim against the Debtor.

In the King Case, which was designated the "lead" case in the State Court, Brian King, Cristina King, and the Cristina and Brian King Children's Trust (the "King Parties") sought declaratory judgments that Serv Trust, a Maryland statutory trust, is the alter ego of the Debtor and, further, that Serv Trust's interest in 6789 Goldsboro LLC ("Goldsboro") has been redeemed by operation of the entity's governing documents.

In the Goldsboro Case, Goldsboro sued both Serv Trust and the Debtor for the alleged breach of a promissory note and guaranty, respectively, and sought an award of monetary damages in excess of $1 million, including accrued interest.[1] The Goldsboro Case originally was brought as an adversary proceeding in this Court, *see 6789 Goldsboro LLC v. Myers, et al.*, Adv. No. 18-407, but this Court entered an *Order of Abstention* on January 30, 2019 which ultimately led to the matter being refiled in State Court.

A trial in the consolidated State Court Cases was scheduled to commence on Tuesday, January 3, 2023, the first business day of the New Year. However, at approximately 4:30 p.m. on Friday, December 30, 2022 – just minutes before the close of business on the last business day

---

[1] The Debtor, in his then-capacity as a co-trustee of Serv Trust, requested that Goldsboro make pre-petition loans totaling $635,000 to Serv Trust, which then forwarded the funds to the Debtor and his wife. On May 18, 2015, in connection with the foregoing loans, Serv Trust executed a Promissory Note in favor of Goldsboro while the Debtor executed a Guaranty Agreement in which he guaranteed Serv Trust's repayment of the loans made by Goldsboro. The Debtor, however, did not list Goldsboro as an unsecured creditor when he filed his bankruptcy petition six months later; which omission was one of the grounds upon which this Court denied a discharge to the Debtor under 11 U.S.C. § 727(a)(4)(A). *See In re Myers*, 2018 WL 4701387, *8 (Bankr. D. Md. Sept. 28, 2018) ("It is not believable that [the Debtor] simply forgot to include his largest unsecured creditor in the first several versions of his schedules when he had executed a personal guarantee in favor of that creditor six months prior to filing for bankruptcy and was requesting advances from the creditor up to and after filing his petition.").

2

before trial – the Debtor filed a notice of removal purporting to remove the action to the U.S. Bankruptcy Court for the Middle District of Florida, where the Debtor's later-filed and separate Chapter 13 case was pending at the time.[2] The King Parties immediately filed an emergency motion to remand noting the various infirmities and inherent bad faith associated with Debtor's attempted removal at the eleventh-hour. On the morning of January 3, 2023, the Florida bankruptcy court remanded the case back to the Circuit Court for Montgomery County in time to allow for the trial of the State Court Cases to proceed as scheduled.

Following the conclusion of the trial on January 3, 2023 – at which evidence was presented showing that, *inter alia*, the Debtor and his wife received the extraordinary sum of $1,217,675.00 out of the $1,371,271.58 distributed by Serv Trust between March 10, 2011 and January 6, 2018 – or more than 88% thereof – the State Court adjudicated Serv Trust to be the alter ego of the Debtor as of and subsequent to the Petition Date. In a subsequent written order entered on January 12, 2023, the State Court memorialized its ruling, holding, *inter alia*, that "Serv Trust is, and as of November 18, 2015 was, the alter ego of Gregory B. Myers" and that "Serv Trust is a disregarded entity, being the alter ego of Mr. Myers." *See Order Entering Partial Judgment and Stay* (the "State Court Order"), attached hereto as ***Exhibit 1***.

In its ruling, the State Court stayed all further proceedings in the State Court Cases as its determination that Serv Trust is the alter ego of the Debtor necessarily rendered the automatic stay of 11 U.S.C. § 362(a) effective as to all remaining causes of action therein. The State Court reasoning that, in light of its alter ego ruling, all claims against Serv Trust must be construed as

---

[2] The Debtor's Florida bankruptcy case ultimately was dismissed on January 20, 2023. On that day, the U.S. Bankruptcy Court for the Middle District of Florida *sua sponte* entered an order which denied confirmation of the Debtor's proposed Chapter 13 plan, dismissed his Chapter 13 case with prejudice, and imposed a two-year ban against refiling, following the court's determination that Myers filed his Chapter 13 case in bad faith (as a tactic to delay and frustrate his creditors rather than as a means to repay them). *See In re Myers*, 2023 WL 350183 (Bankr. M.D. Fla. Jan. 20, 2023).

3

claims against the Estate. *Id*. Thus, the King Parties' remaining claim against Serv Trust, which seeks a declaration regarding the alleged redemption of Serv Trust's interest in Goldsboro, is stayed by operation of 11 U.S.C. § 362(a) (as are Goldsboro's claims against Serv Trust in the Goldsboro Case along with its previously stayed claim therein against the Debtor).

Further, as a matter of law, immediately upon entry of the State Court Order, Serv Trust and all of its assets became property of the Debtor's bankruptcy estate herein ("the Estate"), pursuant to 11 U.S.C. § 541(a), subject to administration by the Trustee as the sole legal representative of the Estate pursuant to 11 U.S.C. § 323. The State Court Order has not been stayed and remains in full force and effect. *See* Md. Rule 2-632. Thus, the Trustee is now the sole person empowered to act with respect to the remaining claims against Serv Trust in the State Court Cases, which are now construed as claims against the Estate.

In consideration of the interests of this Court and all creditors of the Debtor in the important outcome of the remaining claim in the King Case, the Trustee would prefer to litigate the balance of the King Case in this Court and the King Parties have expressed that they are amenable to such an outcome. However, notwithstanding that the remaining claim against Serv Trust in the King Case became a claim against the Estate only as of January 12, 2023, the Trustee likely will not be able to effect a removal of the King Case to this Court.[3] Despite the apparent bar prohibiting removal of the existing King Case to this Court, the Trustee has engaged in negotiations with the King Parties in an attempt to craft a creative solution to the above-described procedural

---

[3] Although this Court would have jurisdiction under 28 U.S.C. § 1452, removal would be timely only if the time period for removal set forth in § 1446(b)(3) would apply. However, the Trustee believes it more likely that the time period set forth in Fed. R. Bankr. P. 9027(a)(3) would apply to make any attempted removal untimely. Although a small minority of jurisdictions have applied § 1446 rather than Rule 9027, *see* Thomas B. Bennett, *Removal, Remand, and Abstention Related to Bankruptcies: Yet Another Litigation Quagmire!*, 27 Cumb. L. Rev. 1027 (1997), this Court and many others have favored the application of Rule 9027. *See, e.g., Roberts v. Creighton*, 2009 WL 7083320 (D. Md. Feb. 27, 2009); Patricia C. Williams and Keller W. Allen, *Removal of State Court Cases to Bankruptcy Court*, 27 Gonz. L. Rev. 129 (1991).

Appx. 0393

conundrum. As a result of those negotiations, said parties now have agreed to the following compromise and settlement, subject to notice to creditors and approval by the Court, on the terms and conditions described below.

**Proposed Compromise and Settlement**

The Trustee and the King Parties have agreed as follows:

(1)     The King Parties and the Trustee shall jointly file a stipulation in the King Case pursuant to which the King Parties will dismiss without prejudice their remaining claim against Serv Trust regarding the alleged redemption of Serv Trust's interest in Goldsboro ("the Redemption Claim").

(2)     In consideration of the foregoing dismissal, the Trustee agrees to toll the statute(s) of limitation applicable to the Redemption Claim *nunc pro tunc* to September 14, 2017, the date the King Case was filed in the State Court.

(3)     The King Parties and the Trustee further agree to endeavor in good faith to negotiate a resolution to the Redemption Claim and, if negotiations are not successful, the King Parties shall refile the Redemption Claim as an adversary proceeding in this Court within thirty (30) days after the entry of an order approving this settlement.

**Trustee's Recommendation**

The Trustee, in the sound exercise of his judgment, believes that the proposed compromise is in the best interest of the Estate and all interested parties herein. The proposed compromise affords the Trustee time to become familiar with the Redemption Claim and to potentially negotiate a resolution of the same (subject, of course, to notice to creditors and approval by this Court), which could yield significant income for the Estate. Even if a resolution is not reached, the Redemption Claim will be litigated in the Estate's preferred forum. The Trustee does not perceive

5

Appx. 0394

that any harm to the Estate will result from the proposed compromise. Therefore, the Trustee strongly recommends approval of this proposed compromise and settlement.

**<u>Manner of Objection</u>**

Parties in interest objecting to the proposed action by the Trustee are to file such Objections in writing with the United States Bankruptcy Court, 6500 Cherrywood Lane, Suite 300, Greenbelt, Maryland 20770, by not later than twenty-one (21) days after the date of this Notice; with a copy of said Objection to be provided to the undersigned by the same date. Objections must specifically state the factual and legal grounds upon which such Objection is based. Hearings may be held before the United States Bankruptcy Court upon any such Objections as are filed, or the Court may determine the matter without a hearing. Further, the Court may conduct a hearing in its discretion regardless of whether any Objections are filed. Any party in interest filing an Objection may be required to be present at such hearing as may be held. If no Objection is filed within the period above-provided, the Court will proceed to consider the Debtor's proposed compromise and settlement as above-proposed without further notice to parties in interest. Parties in interest desiring further information should consult the Court file or communicate with the undersigned.

Date: February 7, 2023                          Respectfully submitted,

                                               SCHLOSSBERG | MASTRO


                                               By:___*/s/ Frank J. Mastro*_____
                                                    Frank J. Mastro #24679
                                                    Roger Schlossberg
                                                    P.O. Box 2067
                                                    Hagerstown, MD 21742
                                                    (301) 739-8610
                                                    fmastro@schlosslaw.com
                                                    rschlossberg@schlosslaw.com
                                                    *Attorneys for Trustee*

6

Appx. 0395

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

BRIAN KING, *et al.*                     :

    Plaintiffs,                          :

                                Case No. 436977-V

    v.                                   :

SERV TRUST, *a Maryland Statutory Trust, et al.*  :

    Defendants.                          :

**Entered: Clerk, Circuit Court for Montgomery County, MD January 12, 2023**

---

6789 GOLDSBORO ROAD LLC,                 :

    Plaintiff,                           :

v.                                       :                Case No. 451611-V
                                  (Consolidated)

SERV TRUST, *et al.*                     :

    Defendants                           :

## ORDER ENTERING PARTIAL JUDGMENT AND STAY

Upon consideration of the evidence adduced at a trial of this matter on January 3, 2023 (the "Trial"), the arguments of counsel for various represented parties at said trial, the record herein, and governing law, it is, by the Circuit Court for Montgomery County, Maryland, hereby:

ORDERED, pursuant to Maryland Rule 2-519, and for those reasons stated on the record at the Trial, that judgment be entered in favor of Brian King, Cristina King, and the Cristina and Brian King Children's Trust (collectively, the "King Parties"), and against Serv Trust, on all claims set forth in the Second Amended Counterclaim filed by Serv Trust herein; and it is further

ORDERED, for those reasons stated on the record at the close of Trial, that judgment be entered in favor of the King Parties on Count II of the First Amended Complaint for Declaratory Judgment (the "Alter Ego Declaratory Claim"); and it is further

FOUND AND ADJUDGED, for those reasons stated on the record at the close of Trial,

1

Appx. 0396

that Serv Trust is regarded herein as a statutory trust under the doctrine of judicial admission; and it is further

FOUND AND ADJUDGED, pursuant to the Alter Ego Declaratory Claim, and for those reasons stated on the record at the close of Trial, that Serv Trust is, and as of November 18, 2015 was, the alter ego of Gregory B. Myers ("Mr. Myers"), pursuant to Maryland law; and it is further

FOUND AND ADJUDGED, pursuant to the Alter Ego Declaratory Claim, and for those reasons stated on the record at the close of Trial, that Serv Trust is a disregarded entity, being the alter ego of Mr. Myers; and it is further

FOUND AND ADJUDGED, pursuant to the Alter Ego Declaratory Claim, and for those reasons stated on the record at the close of Trial, that inasmuch as Serv Trust is the alter ego of Mr. Myers, all further proceedings in this case are stayed pursuant to the provisions of Section 362 of Title 11 of the United States Code, with all such proceedings constituting proceedings within the scope of those set forth in Section 157(b) of Title 28 of the United States Code; and it is further

ORDERED, that all remaining matters in this case are accordingly stayed pending the first to occur of (i) the above-captioned proceeding being removed to the United States Bankruptcy Court for the District of Maryland; (ii) a court of competent jurisdiction affording relief from the stay set forth in Section 362 of Title 11 of the United States Code; or (iii) the occurrence of other events constituting a termination of the stay provided for in Section 362 of Title 11 of the United States Code.

1-9-2023
Dated

Hon. David W. Lease, JUDGE
Circuit Court for Montgomery County

Entered: Clerk, Circuit Court for
Montgomery County, MD
January 12, 2023

2

Appx. 0397

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor. | ) | (Chapter 7) |
| | ) | |

**ORDER APPROVING COMPROMISE AND SETTLEMENT
WITH BRIAN KING, CRISTINA KING, AND THE CRISTINA AND
BRIAN KING CHILDREN'S TRUST**

Upon consideration of the *Motion for Approval of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* (the "*Motion*"), and it appearing to the Court that proper notice of said proposed compromise and settlement has been forwarded to all parties-in-interest herein as required by Bankruptcy Rule 2002, and no objection to said proposed compromise and settlement having been filed in response thereto, and it appearing that the proposed compromise and settlement is in the best interests of all parties-in-interest herein and should be approved by the Court; and

It is, therefore, by the United States Bankruptcy Court for the District of Maryland,

**ORDERED**, that the *Motion* be, and the same hereby is, **GRANTED**; and it is further

Appx. 0398

**ORDERED**, that the proposed compromise and settlement as described in the *Motion* be,

and the same hereby is, **APPROVED**.

**END OF ORDER**

cc:    Roger Schlossberg, Esq.
       Frank J. Mastro, Esq.
       Maurice B. Verstandig, Esq.
       Gregory B. Myers
       Office of the U.S. Trustee
       All persons requesting notice

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| Debtor. | ) | (Chapter 7) |
| | ) | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 7th day of February 2023, a copy of the *Notice of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* was sent to all of the parties listed on the attached CMECF Mail List (via electronic mail to those individuals listed on the Electronic Mail Notice List and via first-class mail postage prepaid to those individuals listed on the Manual Notice List) as indicated below as well as via first-class mail, postage prepaid to all parties listed on the attached Mailing Matrix as filed in these proceedings.

Maurice B. Verstandig, Esq.
The Verstandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, MD 20854
mac@mvbesq.com
*Attorneys for Brian King, Cristina King, and the Cristina and Brian King Children's Trust*

and via first class, postage prepaid mail upon:

Gregory B. Myers
700 Gulf Shore Blvd. N.
Naples, FL 34102
gregbmyers@verizon.net
*Debtor*

Benjamin Andres
Gordon & Simmons, LLC
1050 Key Parkway, Suite 101
Frederick, MD 21702

Appx. 0400

Bradford F. Englander
Whiteford Taylor & Preston, LLP
3190 Fairview Park
Suite 800
Falls Church, VA 22042

H. Jason Gold
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW
Suite 900
Washington, DC 20001

Hunter Harman
Berkshire Hathaway Home Services
Beach Properties of FL
2063 Highway 395 South
Santa Rosa Beach, FL 32459

IPFS Corporation
30 Montgomery Street
Suite 1000
Jersey City, NJ 07302

Barbara Ann Kelly
4505 Wetherill Rd.
Bethesda, MD 20816

Michael K. Myers
7728 Lee Avenue
Alexandria, VA 22308

Serv Trust
3158 Bravertown Street
Suite 206
Edgewater, MD 21037

Tenants by the Entirety
Roger Charles Simmons
Gordon & Simmons, LLC
1050 Key Parkway, Suite 101
Frederick, MD 21702

Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770

2

Appx. 0401

Respectfully submitted,

SCHLOSSBERG | MASTRO

By:   */s/ Frank J. Mastro*
     Frank J. Mastro #24679
     Roger Schlossberg
     P.O. Box 2067
     Hagerstown, Maryland 21742
     (301) 739-8610
     fmastro@schlosslaw.com
     rschlossberg@schlosslaw.com
     *Attorneys for Trustee*

3

Appx. 0402

## Mailing Information for Case 15-26033

**Electronic Mail Notice List** - Parties in the case only

- **Virginia W. Barnhart**    Virginia.Barnhart@wbd-us.com, carmen.cisneros@wbd-us.com
- **Hugh M. (UST) Bernstein**    hugh.m.bernstein@usdoj.gov
- **Kristine D Brown**    LOGSECF@logs.com
- **Daniel R Fogarty**    dfogarty.ecf@srbp.com
- **Christopher C. Fogleman**    cfogleman@gleason-law.com, sgreen@gleason-law.com;pmorse@gleason-law.com
- **Leah Christina Freedman**    bankruptcy@bww-law.com, leah.freedman@bww-law.com
- **Daniel A. Glass**    dglass@eckertseamans.com
- **Steven L. Goldberg**    sgoldberg@mhlawyers.com,
  dmoorehead@mhlawyers.com;sgoldberg@ecf.inforuptcy.com;Goldberg.SteveR92003@notify.bestcase.com;hleaphart@mhlawyers.com;mtaylor@mhlawyers.com
- **Daniel Hodges**    hodges@ewmd.com
- **Gregory P. Johnson**    gjohnson@offitkurman.com, jjenkins@offitkurman.com
- **Susan J. Klein**    sklein@fftlaw.com, lramsey@fftlaw.com
- **Lynn A. Kohen**    lynn.a.kohen@usdoj.gov
- **Kimberly Brooke Lane**    kbritt@ecu.org
- **Richard Edwin Lear**    richard.lear@hklaw.com, kimi.odonnell@hklaw.com;hapi@hklaw.com
- **Frank J. Mastro**    fmastro@schlosslaw.com
- **Stephen A. Metz**    smetz@offitkurman.com, mmargulies@offitkurman.com
- **Valerie P. Morrison**    val.morrison@nelsonmullins.com, robert.ours@nelsonmullins.com;Dylan.trache@nelsonmullins.com;Jason.gold@nelsonmullins.com
- **Jeffrey M. Orenstein**    jorenstein@wolawgroup.com
- **Craig Palik**    cpalik@mhlawyers.com, dmoorehead@mhlawyers.com;cpalik@ecf.inforuptcy.com;Palik.CraigR92003@notify.bestcase.com;hleaphart@mhlawyers.com;mtaylor@mhlawyers.com
- **Eric Pelletier**    epelletier@offitkurman.com, dramos@offitkurman.com
- **Daniel J. Pesachowitz**    dpesacho@siwpc.com, rjones@siwpc.com;bkreferrals@siwpc.com;siwbkecf@siwpc.com;siwpc@ecf.courtdrive.com;siwattecf@siwpc.com
- **Douglas B. Riley**    driley@baldwin-seraina.com
- **John Allen Roberts**    jaroberts@semmes.com, cdavis@semmes.com
- **Roger Schlossberg**    trustee@schlosslaw.com, MD20@ecfcbis.com
- **Roger Schlossberg**    bkcreditor@schlosslaw.com, jkemmerer@schlosslaw.com
- **Roger Charles Simmons**    rsimmons@gordonsimmons.com, dwise@gordonsimmons.com;jdziubla@gordonsimmons.com
- **Andrew Leonard Spivack**    andrew.spivack@brockandscott.com, wbecf@brockandscott.com
- **Paul Sweeney**    psweeney@yvslaw.com,
  jbeckman@yvslaw.com;pgomez@yvslaw.com;cadams@yvslaw.com;yvslawcmecf@gmail.com;sweeneypr39990@notify.bestcase.com;hopkincr39990@notify.bestcase.com;vmichaelides@yvslaw.com
- **Diana C. Theologou**    dtheologou@mtglaw.com
- **US Trustee - Greenbelt**    USTPRegion04.GB.ECF@USDOJ.GOV
- **Diana Carolina Valle**    diana.valle@vallelawfirm.com
- **Maurice Belmont VerStandig**    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com
- **Joshua Welborn**    bankruptcymd@mwc-law.com, ftr432@aol.com
- **Frances Charlotte Wilburn**    fwilburn@offitkurman.com

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive e-mail notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Benjamin Andres**
Gordon & Simmons, LLC
1050 Key Parkway, Suite 101
Frederick, MD 21702

**Bradford F. Englander**
Whiteford Taylor & Preston, LLP
3190 Fairview Park
Suite 800
Falls Church, VA 22042

**H. Jason Gold**
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW
Suite 900
Washington, DC 20001

**Hunter Harman**
Berkshire Hathaway Home Services
Beach Properties of FL
2063 Highway 395 South
Santa Rosa Beach, FL 32459

**IPFS Corporation**
30 Montgomery Street
Suite 1000
Jersey City, NJ 07302

**Barbara Ann Kelly**
4505 Wetherill Rd.
Bethesda, MD 20816

**Gregory B Myers**
700 Gulf Shore Boulevard North
Naples, FL 34102

**Michael K. Myers**
7728 Lee Avenue
Alexandria, VA 22308

**Serv Trust**
3158 Bravertown Street
Suite 206
Edgewater, MD 21037

**Tenants by the Entirety**
Roger Charles Simmons
Gordon & Simmons, LLC

Appx. 0403

1050 Key Parkway, Suite 101
Frederick, MD 21702

**List of Creditors and Parties**

Back

Appx. 0404

Label Matrix for local noticing
0416-0
Case 15-26033
District of Maryland
Greenbelt
Sun Feb  5 07:50:31 EST 2023

6789 Goldsboro LLC
c/o Susan J. Klein, Esquire
Gordon Feinblatt LLC
233 East Redwood Street
Baltimore, MD 21202-3332

678 Goldsboro LN
3925 Beech Avenue
Baltimore, MD 21211-2200

Bank of America National Association
Attn: Jason Perkins, Esquire
Carlton Fields Jorden Burt
450 S. Orange Avenue, Suite 500
Orlando, FL 32801-3370

Bank of America Represented by:
Samuel I White, P.C.
611 Rockville Pike
Suite 100
Rockville, MD 20852-1178

Bank of America, N.A.
Treanor Pope & Hughes, P.A.
500 York Road
Towson, MD 21204-5103

Bank of America, N.A.
Wells Fargo Bank, N.A.
Attention:  Bankruptcy Department (MAC#D
3476 Stateview Boulevard
Fort Mill, SC 29715-7203

Virginia W. Barnhart
Womble Bond Dickinson (US) LLP
100 Light Street
26th Floor
Baltimore, MD 21202-1153

Hugh M.  (UST) Bernstein
Office of U.S. Trustee
101 W. Lombard Street
Suite 2625
Baltimore, MD 21201-2668

(p)U S SECURITIES AND EXCHANGE COMMISSION
ATLANTA REG OFFICE AND REORG
950 E PACES FERRY RD NE STE 900
ATLANTA GA 30326-1382

Kristine D Brown
Shapiro & Brown, LLP
10021 Balls Ford Road
Suite 200
Manassas, VA 20109-2666

Carlton Fields Jorden Burt
Attn: Jason Perkins, Esquire
450 S. Orange Avenue
Orlando, FL 32801-3383

Cheffy Passidomo
821 Fifth Avenue South
Suite 201
Naples, FL 34102-6621

(p)COMPTROLLER OF MARYLAND
BANKRUPTCY UNIT
301 W PRESTON ST ROOM 409
BALTIMORE MD 21201-2383

Crew & Crew, P.A.
238 Miracle Strip Parkway, SW
Fort Walton Beach, FL 32548-6619

Department of the Treasury
Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Bradford F. Englander
Whiteford Taylor & Preston, LLP
3190 Fairview Park
Suite 800
Falls Church, VA 22042-4558

Florida Department of Revenue
5050 West Tennessee Street
Tallahassee, FL 32399-0100

Christopher C. Fogleman
Gleason, Flynn, Emig, Fogleman & McAfee,
11 North Washington Street
Suite 400
Rockville, MD 20850-4278

Leah Christina Freedman
BWW Law Group, LLC
6003 Executive Blvd, Suite 101
Rockville, MD 20852-3813

Daniel A. Glass
Eckert Seamans Cherin & Mellott
1717 Pennsylvania Avenue, NW
12th Floor
Washington, dc 20006-4614

Gleason, Flynn, Emig & Fogleman, Charter
Attn: Christopher Fogleman, Esq.
11 North Washington Street, Suite 400
Rockville, MD 20850-4278

Gleason, Flynn, Emig & Fogleman, Chartered
c/o Christopher C. Fogleman, Esquire
11 North Washington Street, Suite 400
Rockville, MD 20850-4278

H. Jason Gold
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW
Suite 900
Washington, DC 20001-2133

Steven L. Goldberg
McNamee Hosea et al.
6411 Ivy Lane
Suite 200
Greenbelt, MD 20770-1405

Hunter Harman
Berkshire Hathaway Home Services
Beach Properties of FL
2063 Highway 395 South
Santa Rosa Beach, FL 32459-7191

(p)IPFS CORPORATION
30 MONTGOMERY STREET
SUITE 1000
JERSEY CITY NJ 07302-3836

JPMorgan Chase Bank, National Association
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave NW
Suite 900
Washington, DC 20001-2133

Joan C. Myers
13428 Cleveland Drive
Rockville, MD 20850-3603

Gregory P. Johnson
Offit Kurman, P.A.
8850 Stanford Boulevard
Suite 2900
Columbia, MD 21045-4793

Appx. 0405

Barbara Ann Kelly
4505 Wetherill Rd.
Bethesda, MD 20816-1836

Kenwood Country Club
5601 River Road
Bethesda, MD 20816-1299

Kenwood Country Club
c/o Stephen F. Allen, Esq.
301 S. Frederick Avenue
Gaithersburg, MD 20877-2327

Susan J. Klein
Friedman, Framme & Thrush, P.A.
10461 Mill Run Circle, Ste. 550
Owings Mills, MD 21117-5555

Lynn A. Kohen
U.S. Trustee Office
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770-6305

Kimberly Brooke Lane
2021 Meadowview Ln.
Kingsport, TN 37660-7468

Richard Edwin Lear
Holland and Knight LLP
800 17th Street NW
Ste. 1100
Washington, DC 20006-3962

Mandell Menkes LLC
One North Franklin Street
Suite 3600
Chicago, IL 60606-3493

Frank J. Mastro
Schlossberg Mastro & Scanlan
P.O. Box 2067
Hagerstown, MD 21742-2067

McNamee Hosea Jernigan Kim Greenan & Lynch,
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770-1405

McNamee, Hosea, Jernigan, Kim, Greenan & Lyn
6411 Ivy Lane
Suite 200
Greenbelt, MD 20770-1405

Michael K. Myers & Susan R. Myers
7728 Lee Avenue
Alexandria, VA 22308-1003

Valerie P. Morrison
Nelson Mullins Riley & Scarborough LLP
101 Constitution Avenue, N.W.
Suite 900
Washington, DC 20001-2133

Gregory B Myers
700 Gulf Shore Boulevard North
Naples, FL 34102-5325

Michael K. Myers
7728 Lee Avenue
Alexandria, VA 22308-1003

Navy Federal Credit Union
Herbert A. Rosenthal, Chartered
5101 Wisconsin Avenue, NW
Suite 210
Washington, DC 20016-4137

Navy Federal Credit Union
PO Box 3000
Merrifield, VA 22119-3000

Offit Kurman, P.A.
c/o James M. Hoffman, Esquire
4800 Montgomery Lane
9th Floor
Bethesda, MD 20814-3429

Offit Kurman, P.A.
Attn: Miller John Poppleton, Esquire
8171 Maple Lawn Boulevard, Suite 200
Fulton, MD 20759-0001

Offit Kurman, P.A.
James M. Hoffman, Esq.
4800 Montgomery Ln 9th Fl
Bethesda, MD 20814-3429

Craig Palik
McNamee Hosea PA
6411 Ivy Lane
Suite 200
Greenbelt, MD 20770-1405

Daniel J. Pesachowitz
Samuel I. White PC.
6100 Executive Blvd.
Suite 400
Rockville, MD 20852-3959

Regions Bank
1900 Fifth Street
Birmingham, AL 35203-2670

Regions Bank
PO Box 216
Birmingham, AL 35201-0216

Regions Bank
Peter P. Hargitai, Esquire
Andrew J. Steif, Esquire
50 North Laura Street, Suite 3900
Jacksonville, FL 32202-3622

Douglas B. Riley
Baldwin Seraina LLC
111 S. Calvert Street
Suite 1805
Baltimore, MD 21202-6193

John Allen Roberts
Semmes, Bowen & Semmes, P.C.
25 South Charles Street, Suite 1400
Baltimore, MD 21201-2400

Roger Schlossberg
18421 Henson Boulevard
Suite 201
Hagerstown, MD 21742-1392

Roger Schlossberg
P.O. Box 2067
Hagerstown, MD 21742-2067

Seaside III Neighborhood Association,Inc
Attn: Seaside Town Council Inc.
P.O. Box 4957
Santa Rosa Beach, FL 32459-4957

Appx. 0406

Secretary of the Treasury
15th and Pennsylvania Ave., N.W.
Washington, DC 20220-0001

Select Document Servicing, Inc
C/O McCabe, Weisberg & Conway, LLC
312 Marshall Avenue, Suite 800
Laurel, MD 20707-4808

3158 Bravertown Street
Suite 206
Edgewater, MD 21037-2672

Specialized Loan Servicing, LLC
as Servicing Agent for Credit Suisse Fir
Luke Anthony McQueen
SIWPC
6100 Executive Blvd Ste. 400
Rockville, MD 20852-3959

Andrew Leonard Spivack
302 Fellowship Road
Suite 130
Mount Laurel, NJ 08054-1218

State of Maryland DLLR
Division of Unemployment Insurance
1100 N. Eutaw Street, Room 401
Baltimore, MD 21201-2226

SunTrust Bank
Randa S. Azzam
Samuel I. White, P.C.
611 Rockville Pike, Suite 100
Rockville, MD 20852-1178

SunTrust Mortgage, Inc.
c/o McCalla Raymer Pierce, LLC
Bankruptcy Department
1544 Old Alabama Road
Roswell, GA 30076-2102

Susan J. Klein, Esq.
Gordon Feinblatt LLC
233 East Redwood Street
Baltimore, MD 21202-3332

(p)YUMKAS  VIDMAR  SWEENEY & MULRENIN  LLC
11825 WEST MARKET PLACE
2ND FLOOR
FULTON MD 20759-2592

Taxing Authority of Montgomery County
Division of Treasury
255 Rockville Pike, Ste.  L-15
Rockville, MD 20850-4188

Tenants by the Entirety
Roger Charles Simmons
Gordon & Simmons, LLC
1050 Key Parkway, Suite 101
Frederick, MD 21702-4496

The Guardian Life Insurance Company of Ameri
c/o John AllenRoberts, Esquire
Semmes, Bowen & Semmes, P.C.
25 S. Charles Street, Suite 1400
Baltimore, MD 21201-2400

U.S. BANK NA.
SUCCESSOR TRUSTEE TO BANK OF AMERICA, NA
James Gordon Bell
BWW Law Group
6003 Executive Blvd., Suite 101
Rockville, MD 20852-3813

U.S. Bank
as successor trustee to Bank of America
Daniel A. Glass
Eckert Seamans Cherin & Mellott
1717 Pennsylvania Ave., NW 12th Fl.
Washington, DC 20006-4614

U.S. Bank NA
Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City, UT 84165-0250

U.S. Bank National Association
as Trustee and Wells Fargo Bank, N.A., t
c/o Douglas B. Riley, Esquire
Treanor Pope & Hughes, P.A.
500 York Road
Towson, MD 21204-5103

U.S. Bank National Association
as Trustee for Credit Suisse First Bosto
Douglas B. Riley
Treanor Pope & Hughes, P.A.
500 York Road
Towson, MD 21204-5103

U.S. Bank National Association
as Trustee for Credit Suisse First Bosto
Robyn Anne McQuillen
Shapiro & Brown, LLP
10021 Balls Ford Road, Suite 200
Manassas, VA 20109-2666

U.S. Bank National Association
as Trustee for Credit Suisse First Bosto
Shapiro & Brown, LLP
10021 Balls Ford Road, Suite 200
Manassas, VA 20109-2666

U.S. Bank National Association, as Trustee
America's Servicing Company
Attention:  Bankruptcy Department (MAC#D
3476 Stateview Boulevard
Fort Mill, SC 29715-7203

U.S. Bank, NA, successor trustee to BANA, su
c/o Select Portfolio Servicing, Inc.
PO Box 65250, Salt Lake City, Utah 84165

U.S. Bank, as success trustee to BANA, succe
c/c Select Portfolio Servicing, Inc.
PO Box 65250
Salt Lake City, Utah 84165-0250

U.S. Trustee
6305 Ivy Lane #600
Greenbelt, MD 20770-6305

US Bank NA, as Trustee
c/o Select Portfolio Servicing, Inc.
PO Box 65250
Salt Lake City, UT 84165-0250

US Bank National Association as Trustee
for Credit Suisse First Boston CSFB 2005
Carlton Fields Jorden Burt
450 S. Orange Avenue, Suite 500
Orlando, FL 32801-3370

US Bank National Association, as Trustee
c/o ASC Servicing Company
P.O. Box 10335
Des Moines, IA 50306-0335

US Trustee - Greenbelt 11
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770-6305

Diana Carolina Valle
The Valle Law Firm, LLC
3 Bethesda Metro Center
Ste 700
Bethesda, MD 20814-6300

Joshua Welborn
312 Marshall Ave, Suite 800
Laurel, MD 20707-4808

Appx. 0407

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Branch of Reorganization
Sec. & Exch. Commission
3475 Lenox Road NE (Suite 1000)
Atlanta, GA 30327-1232

Comptroller of the Treasury
Compliance Division, Room 409
301 W. Preston Street
Baltimore, MD 21201

IPFS Corporation
30 Montgomery Street
Suite 1000
Jersey City, NJ 07302

(d) IPFS Corporation
30 Montgomery Street
Suite 1000
Jersey City, NJ 07302

Paul Sweeney
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
11825 West Market Place, 2nd Floor
Fulton, MD 20759

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d) 6789 Goldsboro LLC
c/o Susan J. Klein, Esquire
Gordon Feinblatt LLC
233 East Redwood Street
Baltimore, MD 21202-3332

(u) Bank of America, National Assn
INVALID ADDRESS PROVIDED

(u) Sachs & LaSeur, P.A.
INVALID ADDRESS PROVIDED

(d) Roger Schlossberg
P.O. Box 2067
Hagerstown, MD 21742-2067

(d) Serv Trust
3158 Bravertown Street
Suite 206
Edgewater, MD 21037-2672

(u) U.S. Attorney-District of MD
INVALID ADDRESS PROVIDED

End of Label Matrix
Mailable recipients    89
Bypassed recipients     6
Total                  95

Appx. 0408

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

In re:

Gregory B. Myers

　　　　　　　　　　Debtor.

_____ /

Case No.  15-26033-MCR
Chapter 7

**DEBTOR'S MOTION TO DISMISS OR STRIKE TRUSTEE'S MOTION FOR
APPROVAL OF PROPOSED COMPROMISE AND SETTLEMENT WITH BRIAN
KING, CRISTINA KING, AND THE CRISTINA AND BRIAN KING CHILDREN'S
TRUST, OR, IN THE ALTERNATIVE, OPPOSITION TO SAID MOTION**

Gregory B. Myers ("Myers" or "Debtor"), *pro se*, hereby moves to dismiss or strike the the

*Motion For Approval Of Proposed Compromise And Settlement With Brian King, Cristina King,*

*And The Cristina And Brian King Children's Trust* (Doc. 1005) (the "Motion") and the *Notice of*

*Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian*

*King Children's Trust* (Doc. 1005-1) (the "Notice") (with the Motion and Notice hereinafter

collectively referred to as the "Settlement Motion"), filed by Roger Schlossberg, Chapter 7 Trustee

("Schlossberg" or "Trustee") of the Bankruptcy Estate of Gregory B. Myers (hereinafter, the

"Bankruptcy Estate"), on the grounds that the Settlement Motion cannot be adjudicated by motion

and, instead, must be brought as an adversary proceeding. In the alternative, the Debtor requests

that the instant motion be treated as Debtor's opposition to the Settlement Motion. In further

support of the foregoing, the Debtor states as follows:[1]

---

[1] Debtor does not agree that the Settlement Motion is a core proceeding and Debtor does not consent to the entry of any final order(s) or final judgment(s) by the bankruptcy court. This Court does not have authority under § 157 to enter a final judgment on a matter that is not "core" but is merely "related to" the bankruptcy case. *See Stern v. Marshall* discussing a so-called "Stern claim," that is, "a claim designated for final adjudication in the bankruptcy court as a statutory matter but prohibited from proceeding in that way as a constitutional matter." To the extent the Settlement Motion is not dismissed for lack of subject matter jurisdiction or some other reason,

1

## I.    INTRODUCTION

This Court lacks subject matter jurisdiction to consider the Settlement Motion because the relief the Trustee seeks cannot be awarded through motions practice but, instead, must be determined in an adversary proceeding. Moreover, even if a motion was the proper vehicle to obtain such relief, this Court still could not reach the merits of the Settlement Motion as there is an ongoing appeal in the Fourth Circuit concerning this Court's Order xxx. Accordingly, the Court is divested of jurisdiction to consider the relief requested by the Trustee. the issue has effectively been rendered moot.

Cutting through all the pretense, Schlossberg is *using* this Court to *commit a crime* (i.e., theft of Serv Trust's property). Schlossberg is using his relationship with the Maryland Bankruptcy Court to obtain a signature on a *fraudulent* "Rule 9019" settlement order (i.e., while *pretending* that Serv Trust's property is property of the Bankruptcy Estate). Schlossberg doesn't care what the settlement order says as long as it has a bankruptcy judge's signature on it. Schlossberg will then *immediately* ink a deal with King (i.e., "*consummates the settlement*")—before Serv Trust can obtain a stay of the *bogus* 9019 Order—and then Schlossberg will argue on appeal that the issue is "*equitably moot*" (i.e., a bankruptcy-judge created doctrine that Schlossberg has improperly used to *steal untold millions of dollars* from Myers and others). However, the proper authorities are now watching.[2]

---

the bankruptcy court must submit proposed findings of fact and conclusions of law to the District Court for an Article III Judge to make a final determination.

[2] *See, e.g., In re Anderson*, 377 B.R. 865 (2007), holding "the Chapter 7 Trustee's settlement with the owners of the other undivided one-half interest in the property cannot be approved, for, as already discussed, that settlement contemplates the Chapter 7 Trustee conveying to those owners an interest in the property that the bankruptcy estate in all likelihood no longer owns. The bankruptcy estate's receipt of consideration from the Defendants under such circumstances would be tantamount to fraud and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner."

2

Because this Court does not issue *advisory opinions*, the Settlement Motion must be denied, and the proposed compromise disapproved, because there is admittedly no justiciable controversy or cause of action "affecting the estate" and therefore there is nothing for the Trustee "to compromise or settle."

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The King Parties are not "parties in interest" and lack standing.

Brian King, Cristina King, and the Cristina and Brian King Children's Trust (collectively, the "King Parties") have not filed a proof of claim in the Maryland bankruptcy case and are not creditors of the Maryland bankruptcy estate. Accordingly, the King Parties do not qualify as "parties in interest" and thus lack standing to participate in this matter.

That the King Parties are parties to the state court litigation is not a basis for standing in this case. Courts hold that a defendant in a state court proceeding does not have a sufficient stake in the bankruptcy to constitute a "party in interest". *See In re D'Antignac,* No. 05-10620, 2013 Bankr. LEXIS 621, at *7 (Bankr. S.D. Ga. Feb. 19, 2013).

In *E.F. Hutton & Co., Inc. v. Hadley,* 901 F.2d 979, 984-985 (11th Cir.1990), the Eleventh Circuit Court of Appeals reviewed the constitutional requirements for standing, as set forth above. With regard to the "actual injury" requirement the Court stated, "First, the party asserting standing must have suffered actual injury or show the imminence of such injury. [*Citations omitted*] Abstract harm is insufficient; the litigant must establish 'actual or threatened injury.' [*Citations omitted*]" *Id.* at 984. The Eleventh Circuit Court of Appeals also stated, "When standing has been contested, it is the burden of the party claiming standing 'to plead and prove injury in fact, causation, and redressability.' [*Citations omitted*]" *Id.* at 984. The King Parties have not shown any facts alleging any injury and "the court is not required to accept as true unwarranted legal

3

conclusions or unwarranted factual inferences." *Id.* at 753. The King Parties must assert more than a conclusory statement that they have "suffered damages." It is the burden of the party claiming standing "to plead and prove injury in fact, causation, and redressability," *id.* At 984, but here, they cannot.

**B.      The Montgomery County Circuit Court lacked subject matter jurisdiction to enter the Order which the Trustee now relies upon in connection with the Settlement Motion.**

Plaintiff's Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, "Plaintiffs") filed a *First Amended Complaint for Declaratory Judgment* on or about February 13, 2019 (the "First Amended Complaint"), naming defendant Roger Schlossberg in his official capacity as Chapter 7 Trustee of the bankruptcy estate of Gregory B. Myers ("Trustee"), and alleging:

> 8.      The Trustee is the duly-appointed trustee of the Chapter 7 bankruptcy estate of Mr. Myers, and a necessary party to this proceeding as the declaration sought herein materially impact the assets, *vel non,* of that bankruptcy estate.

Because the Plaintiffs have never obtained an order from the United States Bankruptcy Court for the District of Maryland (i.e., the appointing court) to sue the Trustee in Montgomery County Circuit Court, the state court case is required to be dismissed, with prejudice, for lack of subject matter jurisdiction. *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) (before another court may obtain subject-matter jurisdiction over a suit filed against a receiver for acts committed in his official capacity, the plaintiff must obtain leave of the court that appointed the receiver); *Barton v. Barbour*, 104 U.S. 126, 127, 26 L.Ed. 672 (1881).

The U.S. Supreme Court has clearly stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no

4

justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliot* v. *Lessee of Piersol,* 26 U.S. 328 (1828).

Thus, according to *Elliot*, by filing the Settlement Motion, the Trustee is "considered in law [a] trespasser." *Id.*

### C.    The Trustee intentionally mischaracterizes the Circuit Court Order.

The mere blanket statements by Trustee (Mastro) as to the ownership of property and/or the existence of liability under a common law cause of action cannot support a Rule 9019 settlement in this bankruptcy case. *See Appel v. Mainstar Oil Co. (In re B & L Oil Co.),* 46 B.R. 731, 736 (Bankr. D. Colo. 1985) (holding that mere allegations that a third party should "turnover property does not suffice to convert a common law action into a turnover proceeding").

As a threshold matter, the Montgomery County Circuit Court lacked subject matter jurisdiction to enter the

The operative complaint in the King Case requested the following relief:

> WHEREFORE, the Plaintiffs respectfully prays this Honorable Court (i) enter a judgment declaring (a) Serv Trust is the alter ego of Mr. Myers; (b) the assets and liabilities of Serv Trust, including those incident to this litigation, are the assets and liabilities of Mr. Myers' bankruptcy estate, as administered by the Trustee; (c) the counterclaim asserted herein is an asset of Mr. Myers' bankruptcy estate, as administered by the Trustee; and (d) the liabilities of Serv Trust herein, on the consolidated promissory note collection case brought by 6789 Goldsboro, are liabilities of Mr. Myers' bankruptcy estate, as administered by the Trustee; and affording such other and further relief as may be just and proper.

On January 4, 2023, counsel for the King Parties (Maurice VerStandig) sent an email to Judge Lease's chambers, attaching a proposed order, and stating:

> Ms. Littlejohn,
>
> To follow on yesterday's trial, attached please find a proposed order entering partial judgment.

5

Appx. 0413

Regards,
Maurice "Mac" VerStandig, Esq.

On January 12, 2023—having considered the King Parties' proposed order—the Circuit Court (Lease, J.) entered an *Order Entering Partial Judgment And Stay* (the "State Court Order"), *intentionally* striking the following two paragraphs contained in the King Parties' proposed order:

> FOUND AND ADJUDGED, pursuant to the Alter Ego Declaratory Claim, and for those reasons stated on the record at the close of Trial, *that Serv Trust, as the alter ego of Mr. Myers, constitutes an asset of the bankruptcy estate created by Mr. Myers' filing a petition for relief and commencing case number 15-26033 in the United States Bankruptcy Court for the District of Maryland (the "Maryland Bankruptcy Case")*; and it is further

> FOUND AND ADJUDGED, pursuant to the Alter Ego Declaratory Claim, and for those reasons stated on the record at the close of Trial, *that Roger Schlossberg, as trustee of the estate being administered in the Maryland Bankruptcy Case, is the owner of all the assets of Serv Trust, with said estate being equally obligated upon all the liabilities of Serv Trust*; and it is further

(Emphasis supplied).

To summarize, Judge Lease *did not grant* the relief requested in sections (b), (c), and (d) of the "WHEREFORE" clause in the King Parties' operative complaint in the King Case, and Judge Lease *intentionally did not include* the italicized portions of the above two paragraphs from the King Parties' proposed order. The maxim *expressio unius, exclusio alterius* ("the expression of one thing is the exclusion of the other") applies here and reveals the Trustee's characterization of the Circuit Court Order to be *pure fiction and a story written along the way*.[3] For example, the Trustee asserts that "as a matter of law, immediately upon entry of the State Court Order, Serv Trust and all of its assets became property of the Debtor's bankruptcy estate herein [], pursuant to

---

[3] The Trustee's assertion that he appeared in the King Case through counsel "since its inception" in 2017 is categorically false. The Trustee was named as a "nominal defendant" in February 2019.

6

Appx. 0414

11 U.S.C. § 541(a), subject to administration by the Trustee as the sole legal representative of the

Estate pursuant to 11 U.S.C. § 323," and that "the Trustee is now the sole person empowered to

act with respect to the remaining claims against Serv Trust in the State Court Cases, which are

now construed as claims against the Estate." The Trustee's baseless assertions can be found

nowhere in the State Court Order entered by Judge Lease upon which the Trustee arguably relies.

The Circuit Court also did not grant the King Parties (or any other party, including the Trustee) an

interest in Serv Trust's property; a lien on Serv Trust's property; or the right to levy execution on

Serv Trust's assets.

Pursuant to Md. Rule 2-602, the State Court Order is not a final judgment and **has no force or effect** in this Court or any other court. *See* Md. Rule 2-602 providing:

> **(a) Generally.** Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
> (1) is not a final judgment;
> (2) does not terminate the action as to any of the claims or any of the parties; and
> (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.
> **(b) When Allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
> (1) as to one or more but fewer than all of the claims or parties; or
> (2) pursuant to Rule 2-501 (f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

(Emphasis in original).

**D.    This Court's (Lipp, J.) prior findings of fact and conclusions of law are res judicata and the Settlement Motion must be dismissed as a matter of law.**

Serv Trust is a Maryland common law, irrevocable, spendthrift trust created in 2010 by

Joan C. Myers (Myers's mother, now deceased) for the benefit of Myers's five children. Critically,

7

Myers was not the settlor of Serv Trust, and Myers has never been a beneficiary of Serv Trust.

Serv Trust is not a debtor in bankruptcy, did not file a proof of claim in this bankruptcy case, and Schlossberg is not Serv Trust's trustee. Accordingly, the Trustee possesses no authority whatsoever under the Bankruptcy Code or any other applicable non-bankruptcy law to tortiously interfere with Serv Trust's property and legal rights.

On September 28, 2018, this Court (Lipp, J.) made the following "Findings of Fact":

- "Serv Trust is a trust that was created by Myers' mother for the benefit of Myers' five children."

- "It is undisputed that Serv Trust was established to pay educational and other expenses related to Myers' children."

- "Serv Trust has a 50% interest in a Maryland limited liability company named 6789 Goldsboro LLC."

On September 28, 2018, this Court (Lipp, J.) made the following "Conclusions of Law":

- Mr. Myers did not transfer or conceal any property "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under [U.S. Code: Title 11]."

E.    **The *Order Sustaining Debtor's Objection to Proof of Claim 3 Filed by Brian King & Cristina King* in Myers's Florida Bankruptcy Case is res judicata in the Circuit Court and in this Court.**

On June 29, 2021, the Florida Bankruptcy Court entered an *Order Sustaining Debtor's Objection to Proof of Claim 3 Filed by Brian King & Cristina King [Doc. No. 84]* which states:

**ORDERED:**

1. The Objection to Proof of Claim 3 filed is SUSTAINED.

2. The claim of Brian King & Cristina King is disallowed in its entirety.

(Emphasis in original). The Order sustaining Myers's objection to the King Parties' claims against him (including any claims in the state court litigation) is a final and unappealable order that is *res judicata* in the state court action and in this Court with respect to any claims by the King Parties

8

(and anyone in privity with the King Parties).

Relevant here, Maryland law recognizes the "Frow doctrine." *See Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 428-33 (1995) discussing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872), holding:

> If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

(Emphasis supplied). That is precisely the situation here.

### F.  The relief requested by the Trustee requires that he file an Adversary Proceeding.[4]

It has long been established that courts "'can make no decree affecting the rights of an absent person, and can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights.'" *Greeley v. Lowe*, 155 U.S. 58, 70 (1894) (quoting *Shields v. Barrow*, 58 U.S. 130, 141-42 (1854)). This rule is just as strong today as when it was first set forth. *See, e.g., Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008) (recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties").

Bankruptcy Rule 7001 enumerates certain types of matters that must be filed as an adversary proceeding, including "(1) a proceeding to recover money or property, other than a

---

[4] The Trustee acknowledges in the Notice that he is barred from removing the King Case to this Court. *See* Bankruptcy Rule 9027; *Roberts v. Creighton*, 2009 WL 7083320 (D. Md. Feb. 27, 2009).

9

proceeding to compel the debtor to deliver property to the trustee," Fed. R. Bankr. P. 7001(1), and "(7) a proceeding to obtain an injunction or other equitable relief." Fed. R. Bankr. P. 7001(7). The Trustee's request to xxxx unquestionably must be brought as an adversary proceeding. *See, e.g., Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 482 n.1 (4th Cir. 1992) ("A proceeding to recover money [or property] is an adversary proceeding."); *In re Rollins*, 175 B.R. 69, 73 (E.D. Cal. 1994) ("Federal Rule of Bankruptcy Procedure 7001(1) requires that any proceeding to recover money [or property] be brought as an adversary proceeding."). Likewise, here, the Trustee's Settlement Motion is a request for equitable relief that requires an adversary proceeding. *See In re Mitchell*, 44 B.R. 485, 491 (Bankr. N.D. Ala. 1984) ("A proceeding to obtain an accounting is generally an equitable proceeding" subject to Bankruptcy Rule 7001); *In re Turner*, Case No. 02-62636-JPK (Bankr. N.D. Ind. Feb. 9, 2010) ("the debtor's request falls within the provisions of Fed. R. Bankr. P. 7001(7) - 'a proceeding to obtain . . . other equitable relief', *i.e.*, an accounting as to the amount the debtor was required to pay or have paid to a creditor").

To the extent the Trustee now seeks to take away Serv Trust's rights (i.e., the beneficiaries' rights), the Trustee must file an adversary proceeding and the beneficiaries must be joined as defendants and served with a summons in order to afford them fundamental due process. *See Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995) (where an adversary proceeding "is required to resolve the disputed rights of third parties, the potential defendant has the right to expect that the proper procedures will be followed"). *See also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207 (1988) (explaining that courts cannot deviate from the procedures "specified by the Code," even when they sincerely "believ[e] that ... creditors would be better off").

10

The Trustee's proposed settlement does not lie here where a *bona fide dispute* exists as to the existence, magnitude or identity of the subject *res* (like here). *See In re Collins*, 2018 WL 878877, *1, *6 (Bankr. E.D. N.Y. 2018), where the chapter 7 trustee filed a complaint seeking the turnover of a trust corpus from the co-trustees and an accounting for the property or its value pursuant to section 542(a). The corpus consisted of non-residential real estate and a 70% interest in a corporation. The chapter 7 trustee asserted that the trust corpus had vested in the debtor on the death of the grantor's spouse. The co-trustees moved to dismiss. The bankruptcy court denied the motion, but sua sponte ordered the chapter 7 trustee to amend, pursuant to Bankruptcy Rule 7019, to join the grantor of the trust, both because she might have an interest in the trust *and because the beneficiaries' respective interests in the trust were at issue*. *See also In re Brizinova*, 588 B.R. 311, 329 (Bankr. E.D. N.Y. 2018), where debtor owned shares of stock in a company which sold auto parts on the internet. The chapter 7 trustee sought turnover of proceeds of such sales. The bankruptcy court dismissed the turnover count of the trustee's complaint, because the debtor's ownership of the corporate "shares [did] not give her legal title to, or an ownership interest in, [the corporation's] assets." Thus, neither the auto parts inventory nor the proceeds arising from the sale of it were estate assets subject to turnover.

*See also Venn v. Kinjite Motors Inc. (In re WMR Enters. Inc.)*, 163 B.R. 887, 889 (Bankr. N.D. Fla. 1994) (dismissing a complaint for lack of subject matter jurisdiction because "[w]hat this court actually seeks is the equitable enforcement of rights under the contracts between the former debtor and the defendant"); *In re Chapman*, 2018 WL 4620719, *1, *3, *8 (Bankr. S.D. Tex. 2018) (bankruptcy court concluded that it lacked subject matter jurisdiction over the proceeding because the ownership of the property was in dispute).

11

Here, the Trustee's Settlement Motion must be dismissed as a matter of law. *See, e.g., In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) ("A turnover proceeding commenced by motion rather than by complaint will be dismissed"); *Mayex II Corp. v. Du-An Prods., Inc. (In re Mayex II Corp.)*, 178 B.R. 464, 467 (Bankr. W.D. Mo. 1995) (holding that turnover motion would be dismissed where Chapter 11 debtor requested relief by motion, as opposed to properly filed complaint); *In re Ace Indus., Inc.*, 65 B.R. 199, 200 (Bankr. W.D. Mich. 1986) ("[D]ebtor's motion should have been brought as an adversary proceeding…Accordingly, debtor's motion is dismissed with instructions to file an appropriate complaint.").

*Arguendo*, even if the Trustee does file the statutorily mandated adversary complaint, it is still the case that Serv Trust's property "does not become 'property of the estate until it has been recovered by the estate.'" *In re BMT-NW Acquisition, LLC*, 582 B.R. 846, 865–866 (Bankr. D. Del. 2018), quoting Collier on Bankruptcy, ¶ 542.03 (16th ed. 2010), and *In re Conex Holdings, LLC*, 518 B.R. 792, 801, 60 Bankr. Ct. Dec. (CRR) 58, 114 A.F.T.R.2d 2014-6439 (Bankr. D. Del. 2014). *See also In re Kittery Point Partners, LLC*, where the Court held that there could be no serious dispute that the chapter 11 debtor's resort to Code section 542 was *inappropriate* because any payments made on a note and mortgage that the debtor sought to recover "would only become property of the estate upon avoidance of the Note and Mortgage" citing *In re Ang*, 2018 WL 1613573, *14 (Bankr. D. Me. 2018) (action dismissed for failure to state a claim).

ntil such time as the *alleged* estate property has been *recovered* by the estate, the trustee (Schlossberg) has no jurisdiction or authority to administer the *alleged* estate property (i.e.. Serv Trust's property).

G.    **The Circuit Court has no power or authority to "impose" a stay under 11 U.S.C. § 362 where none exists.**

12

Appx. 0420

The Circuit Court's Order, *inter alia*, states "all further proceedings in this case are stayed pursuant to the provisions of Section 362 of Title 11 of the United States Code, with all such proceedings constituting proceedings within the scope of those set forth in Section 157(b) of Title 28 of the United States Code." That ruling is **erroneous** as the automatic stay in Myers's Maryland bankruptcy case **terminated in 2018 for all purposes**. Arguendo, only this Court has the power to reimpose the automatic stay under 11 U.S.C. § 362, and then only upon motion and a noticed hearing to all parties in interest.

The Circuit Court also does not have the power or authority to "constitute" proceedings that are held in Montgomery County Circuit Court to be "within the scope of those set forth in Section 157(b) of Title 28 of the United States Code." I'm pretty sure only Congress can do that.

**H.      The Serv Trust appeal in the Fourth Circuit Divests this Court of Jurisdiction to Consider the Settlement Motion.**

Even if a motion was the proper vehicle to obtain relief, this Court still could not reach the merits of the Settlement Motion as Serv Trust's property and rights are currently the subject of an appeal to the United States Court of Appeals for the Fourth Circuit (USCA4 Appeal: 20-2309). As result, this Court has been divested of jurisdiction over the instant action. *See In re Howes*, 563 B.R. 794, 806 (D. Md. 2016) ("Generally, the filing of a notice of appeal divests a bankruptcy court of its 'control over those aspects of the case involved in the appeal'") (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (*per curiam*)); *see also In re Bradshaw*, 284 B.R. 520, 523 (Bankr. D. Mass. 2002) ("Once a notice of appeal is filed, no lower court should be able to vacate or even modify an order under appeal, not even a bankruptcy court attempting to eliminate the need for a particular appeal…The rationale for this rule is the avoidance of confusion and waste of time that might result from putting the same issues before two courts at the same time.") (quoting *In re Emergency Beacon Corp.*, 58 B.R. 399, 402 (Bankr. S.D.N.Y. 1986)).

13

Therefore, as a matter of law, this Court lacks jurisdiction to consider the Settlement Motion.

## II.    ARGUMENT

The Settlement Motion is not a proper exercise of business judgment by the Trustee and falls below the lowest point in the range of reasonableness. The Trustee has the burden of proof on the Settlement Motion, and the Debtor intends to show at an evidentiary hearing on the Settlement Motion that the Trustee cannot meet that burden.

Because the Settlement Motion is clearly fraudulent, the Court should not apply any business judgment rule deference. *See, In re Dalen*, 259 B.R. 586, 612–13 (Bankr. W.D. Mich. 2001) (deference inappropriate, for example, where "the certainty of a quick and substantial fee from a settlement unduly influenced the Chapter 7 trustee in her decision to compromise an important claim owned by the estate.")

The essential inquiry is to determine whether the settlement reached by the parties is fair and equitable and in the best interests of the estate." *In re Nagle*, No. 05-42227-WIL, 2006 WL 4458701, at *3 (Bankr. D. Md. Dec. 18, 2006) (internal citations omitted). Under the facts and circumstances outlined in detail above, this Court is precluded as a matter of law from finding that the Settlement Motion is "fair and equitable and in the best interests of the estate" (unless this Court condones civil theft).

The Court should also consider the effect of the settlement on third parties. *In re Devon Capital Mgmt., Inc.*, 261 B.R. 619, 623 (Bankr. W.D. Pa. 2001) ("Even if a settlement is fair and equitable to the parties to the settlement, approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced. We must determine that "no one has been set apart for unfair treatment." (citing *Cullen v. Riley (In re Masters Mates and Pilots*

14

*Pension Plan)*, 957 F.2d 1020, 1026 (2d Cir.1992)); *see also, In re Med. Asset Mgmt., Inc.*, 249 B.R. 659 (Bankr. W.D. Pa. 2000) (proposed settlement could not be approved, as not being fair and equitable to unsecured creditors or to debtor's officers and director.) "Ignoring the effect of a settlement on rights of third parties "contravenes a basic notion of fairness." *Devon Capital Mgmt., Inc.*, 261 B.R. at 623, quoting *In re AWECO*, 725 F.2d 293, 298 (5th Cir. 1984).

Here, the settlement is not fair to the Serv Trust beneficiaries as their due process rights have been violated. *See Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995) (where an adversary proceeding "is required to resolve the disputed rights of third parties, the potential defendant has the right to expect that the proper procedures will be followed").

## REQUEST FOR SANCTIONS

Debtor respectfully request that the Court consider entering an Order directing the Trustee to show cause why sanctions should not be entered against him. Bankruptcy Rule 9011(c)(1)(B) permits the Court to "enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto." Fed. R. Bankr. P. 9011(c)(1)(B). Subsection (b)(3) of Rule 9011 requires that in every written motion presented to the court, "the allegations and other factual contentions [shall] have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Bankr. P. 9011(b)(3). *See, e.g., In re Sessoms*, 2012 WL 14267 (Bankr. E.D.N.C. Jan. 4, 2012) ("because of the complete lack of evidentiary support, [movant] is ordered to show cause why it should not be sanctioned for filing a baseless motion for relief from the automatic stay, pursuant to Federal Rule of Bankruptcy Procedure 9011(c)(1)(B)").

In these circumstances, the issuance of a show cause order under Rule 9011(c)(1)(B),

followed by the imposition of sanctions, as may be necessary, will deter future misconduct of this sort by the Trustee and also will "deter repetition of such conduct or comparable conduct by others similarly situated." *See* Fed. R. Bankr. P. 9011(c)(2). At a minimum, however, the Court should not countenance the filing of a motion which is patently frivolous and should utilize its available tools to protect the judicial process from continued abuse by this Trustee, including a referral to the Department of Justice.

Alternatively, the Respondents request that the Court consider imposing sanctions against the Trustee and his counsel pursuant to 28 U.S.C. § 1927 and/or the Court's inherent authority. *Clubs v. Iron Gate Inn, Inc.*, 537 A.2d 1123 (D.C. 1988) ("It is difficult to imagine a case in which a claim wholly without color could be asserted without an improper motive.").

Debtor further requests that the Court enter an Order pursuant to Fed. R. Bankr. P. 9011(c)(1)(B) directing the Trustee to show cause why sanctions should not be entered for filing a patently frivolous motion based on a factual premise completely lacking in evidentiary support.

## REQUEST FOR EVIDENTIARY HEARING

In the unlikely event that this Court does not dismiss the Settlement Motion with prejudice, the Debtor hereby requests an evidentiary hearing and demands strict proof on the substance and merits of the Trustee's Settlement Motion.

**WHEREFORE**, for the foregoing reasons, the Debtor respectfully requests that the Court dismiss the Trustee's Settlement Motion, with prejudice, and consider entering an Order pursuant to Fed. R. Bankr. P. 9011(c)(1)(B) directing the Trustee to show cause why sanctions should not be entered against him for filing a patently frivolous motion based on a factual premise completely lacking in evidentiary support.

16

RESPECTFULLY SUBMITTED on this 27th day of February, 2023.

_____
Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 27, 2023, a copy of the foregoing DEBTOR'S MOTION TO DISMISS OR STRIKE TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND SETTLEMENT WITH BRIAN KING, CRISTINA KING, AND THE CRISTINA AND BRIAN KING CHILDREN'S TRUST, OR, IN THE ALTERNATIVE, OPPOSITION TO SAID MOTION was furnished via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2067
Hagerstown, MD 21742

_____
Gregory B. Myers, *pro se*

17

Appx. 0425

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| Debtor. | ) | (Chapter 7) |
| | ) | |

**TRUSTEE'S OPPOSITION TO DEBTOR'S MOTION TO DISMISS OR STRIKE
TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND
SETTLEMENT WITH BRIAN KING, CRISTINA KING, AND THE
CRISTINA AND BRIAN KING CHILDREN'S TRUST**

COMES NOW, Roger Schlossberg, the Chapter 7 Trustee herein (the "Trustee"), by his undersigned counsel, and in opposition to the *Debtor's Motion to Dismiss or Strike Trustee's Motion for Approval of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust or, in the Alternative, Opposition to Said Motion* ("the *Debtor's Motion to Dismiss*"), [Dkt. # 1010], hereby states:

1.      The Debtor lacks standing to object to the Trustee's *Motion for Approval of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* ("the *Trustee's 9019 Motion*"), [Dkt. #1005], under the rule established in *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985) and its progeny.

2.      In *Willemain*, *supra*, the Fourth Circuit held that an insolvent Chapter 7 debtor lacked standing to challenge the proposed sale of estate property because the debtor had no pecuniary interest in the result of the sale since the proposed sale would not return solvency to the estate or deliver a surplus to the debtor. *Willemain*, 764 F.2d at 1022. Thus, the debtor was not an interested party and, as a result, lacked standing to object. *Id*. at 1022-23.

3.      In reaching its decision, the Fourth Circuit relied on the analogous principle that an insolvent debtor has no pecuniary interest in the distribution of assets among his creditors and, therefore, lacks standing to object to claims against the estate. *Id.* at 1022 (citing 3 J. Moore & L.

Appx. 0426

King, Collier on Bankruptcy ¶ 57.17 [2.1] (14th ed. 1977)); *In re Fischer*, 2010 WL 2746349, *5 (Bankr. D. Md. July 9, 2010); *see also Yadkin Valley Bank and Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir. 1993) (the term "party-in-interest" is "generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceeding").

4.        In this case, the state court in Montgomery County has adjudged Serv Trust to be the alter ego of the Debtor. As a result, Serv Trust is now an asset of the Debtor's bankruptcy estate. The proposed settlement in the *Trustee's 9019 Motion* concerns a procedural matter attendant to a pending (albeit stayed) state court declaratory judgment claim concerning the King Parties' alleged redemption of the membership interest that Serv Trust holds in 6789 Goldsboro LLC, an entity which owns a parcel of real property in Montgomery County (hereafter "the Redemption Claim").

5.        The Debtor's estate, however, is insolvent, *see Trustee's Status Report* filed on April 20, 2021, [Dkt. # 930], and continues to hemorrhage attorney's fees as a result of the continuing bad-faith litigation tactics of the Debtor,[1] who "has shown time and again that he will initiate an action, then exhibit a dereliction in prosecution that reflects no real interest in resolution on the merits." *Myers v. United States Trustee*, 2020 WL 758157, *3 (D. Md. Feb. 13, 2020) (Xinis, J.) (leading the District Court to "conclude that Myers' true goal is to gum up the judicial process for his own personal benefit and ignore valid court orders as he sees fit"); *accord Kelly v.*

---

[1] The United States Bankruptcy Court for the Middle District of Florida recently dismissed with prejudice the Chapter 13 case that the Debtor commenced there in 2021, upon finding that it was filed in bad faith, and imposed upon the Debtor a two-year bar against refiling. *See In re Myers*, 2023 WL 350183 (Bankr. M.D. Fla. Jan. 20, 2023). In so ruling, the Florida court observed that "Debtor did not file the case with the motivation of paying creditors—in fact, he objected to every filed claim in the case; he has demonstrated that he is not sincere in seeking relief under Chapter 13; and he has not shown good faith in dealing with his creditors. Rather, Debtor's actions evidence that his motivation in this case is to delay and frustrate the many parties with whom he is engaged in contentious litigation, some of whom over the course of the last decade." *Id*. at *5.

Appx. 0427

*McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 2022 WL 861395 (D. Md. Mar. 23, 2022) (Hazel, J.) (dismissing three appeals for failure to designate record and finding that "Appellants Barbara Ann Kelly and Gregory B. Myers are acting in bad faith… hav[ing] persisted in questionable litigation strategy that can only be viewed as dilatory and irresponsible"); *Kelly v. Offit Kurman, P.A.*, 2021 WL 3725379 (D. Md. Aug. 23, 2021) (Blake, J.) (denying Myers' untimely filed motion to intervene and "highlight[ing] Myers's procedural defect as a further example of his and Kelly's efforts to complicate and frustrate the judicial process").[2]

6.      Regardless of the result of the procedural dispute which is proposed to be settled by the *Trustee's 9019 Motion*, or the result of the underlying Redemption Claim, as a practical matter there is no possibility that the Debtor's bankruptcy estate will be rendered solvent under any set of circumstances. Thus, under *Willemain*, *supra*, the Debtor has no standing to object to the *Trustee's 9019 Motion* because he lacks a pecuniary interest in the outcome.[3]

7.      Accordingly, this Court should summarily deny the *Debtor's Motion to Dismiss* for lack of standing and grant the *Trustee's 9019 Motion*, which otherwise stands unopposed. In the event, however, that the Court wishes to consider the substance of the *Debtor's Motion to Dismiss*, the Trustee respectfully requests an opportunity to respond to the Debtor's arguments (which are frivolous) at a hearing on the merits.

---

[2] To date Myers has filed 19 appeals in the District Court and six (6) additional appeals in the Fourth Circuit. Currently, three appeals are pending in the Fourth Circuit. The Trustee is a party in two of the pending appeals, including in the Debtor's utterly frivolous appeal of this Court's *Memorandum to Parties*, [Dkt. #944], which was merely a communication to the parties and not a court order, did not adjudicate any contested issues, and did not aggrieve the Debtor in any way.

[3] Although the Debtor has been denied a discharge and will remain liable for any pre-petition debts that are not satisfied in this bankruptcy proceeding, the Redemption Claim is not a monetary claim that conceivably could be enforced against the Debtor at some point in the future. Therefore, the Debtor has no pecuniary interest in the ultimate resolution of this claim.

3

Appx. 0428

WHEREFORE, the Trustee respectfully requests that the *Debtor's Motion to Dismiss* be DENIED.

Respectfully submitted,

SCHLOSSBERG | MASTRO


By:    */s/ Frank J. Mastro*
        Frank J. Mastro #24679
        Roger Schlossberg
        P.O. Box 2067
        Hagerstown, Maryland 21742
        (301) 739-8610
        fmastro@schlosslaw.com
        rschlossberg@schlosslaw.com
        *Attorneys for Trustee*

4

CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this **14th** day of **March 2023**, a copy of the *Trustee's Opposition to Debtor's Motion to Dismiss or Strike Trustee's Motion for Approval of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* and proposed Order was served electronically via CM/ECF upon:

Maurice B. Verstandig, Esq.
The Verstandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, MD 20854
mac@mvbesq.com
*Attorneys for Brian King, Cristina King, and
the Cristina and Brian King Children's Trust*

and via first class, postage prepaid mail upon:

Gregory B. Myers
700 Gulf Shore Blvd. N.
Naples, FL 34102
gregbmyers@verizon.net
*Debtor*

_____*/s/ Frank J. Mastro*_____
Frank J. Mastro

5

Appx. 0430

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re:

Gregory B. Myers

           Debtor.

_____ /

Case No.  15-26033-MCR

Chapter 7

## DEBTOR'S REPLY TO TRUSTEE'S OPPOSITION TO DEBTOR'S MOTION TO DISMISS OR STRIKE TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND SETTLEMENT WITH BRIAN KING, CRISTINA KING, AND THE CRISTINA AND BRIAN KING CHILDREN'S TRUST

Gregory B. Myers ("Myers" or "Debtor"), *pro se*, files this reply (the "Reply") to the *Trustee's Opposition To Debtor's Motion To Dismiss Or Strike Trustee's Motion For Approval Of Proposed Compromise And Settlement With Brian King, Cristina King, And The Cristina And Brian King Children's Trust* (the "Opposition"), and states:

1. The Trustee's assertion that the Debtor lacks standing to object to the Trustee's fraudulent[1] "Settlement Motion" with the King Parties is preposterous. On July 30, 2018, this Court (Lipp, J.) ruled that Myers has standing in connection with matters involving Serv Trust (i.e., referring to Myers's motion to vacate filed in Adversary No. 16-00541, styled *Offit Kurman, P.A., et al. v. Serv Trust*, the Court ruled that "Mr. Myers...[has] standing to bring this").

2. To be sure, the Trustee's Settlement Motion "stands opposed" by the Debtor.[2]

---

[1] Reminiscent, on December 12, 2017, Bradford F. Englander, Esq. told the Court (Lipp, J.) in connection with the Trustee's illegal seizure of fully exempt escrow funds that "We all know what this is, it's -- and my words -- **a money grab**. *** So in every extent possible, it appears that this is an end run around virtually every applicable provision of the Bankruptcy Code and unsupported by any specific provision of the Bankruptcy Code."

[2] The Debtor adopts and incorporates by reference herein the facts and arguments set forth in the *Debtor's Motion To Dismiss Or Strike Trustee's Motion For Approval Of Proposed Compromise And Settlement With Brian King, Cristina King, And The Cristina And Brian King Children's Trust, Or, In The Alternative, Opposition To Said Motion* [Doc. 1010].

1

Appx. 0431

3.      Dispositive here, the Trustee asserts that in **2017**, the Trustee was named as a nominal defendant in the matter of *Brian King, et al. v. Serv Trust, et al.*, Case No. 439677-V, pending in the Circuit Court for Montgomery County, Maryland (the 'King Case'). According to the Trustee, in the King Case, the King Parties seek "declaratory judgments that Serv Trust, a Maryland statutory trust, is the alter ego of the Debtor" (the "alter ego claims"). It is black letter law that in **2017**—during the Trustee's exclusive period—the King Parties lacked standing to pursue the alter ego claims. *See National American Ins. v. Ruppert Landscaping*, 187 F.3d 439 (4th Cir. 1999) ("Reserving the action for the trustee maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process."). The Trustee never initiated any action against Serv Trust and is now barred under 11 U.S.C. § 546(a) from bringing any "action or proceeding under section 544, 545, 547, 548, or 553 of [the Bankruptcy Code]." Accordingly, the Trustee lacks standing to prosecute the *fraudulent* Settlement Motion with the King Parties.

4.      The Trustee also *conspicuously* avoids discussing the fact that on November 13, 2019, Maurice VerStandig removed Case No. 436977-V (the "King Case") and Case No. 451611-V (the "Goldsboro Case") "from the Circuit Court for Montgomery County, Maryland to the United States Bankruptcy Court for the District of Maryland" initiating Adversary No. 19-00427. Almost immediately, on December 5, 2019, this Court (Simpson, J.) entered an *Order Remanding Case* [Adversary No. 19-00427; Doc 5], remanding the King Case and the Goldsboro Case to the Circuit Court for Montgomery County, Maryland. Accordingly, this Court is without jurisdiction to consider the relief the Trustee seeks *vis a vis* the Settlement Motion.

5.      Finally, because the King Parties never obtained an order from this Court authorizing them to sue the Trustee in Montgomery County Circuit Court, the Partial Judgment

2

Appx. 0432

void *ab initio* and the King Case must be dismissed for lack of subject matter jurisdiction. *See McDaniel v. Blust,* 668 F.3d 153, 157 (4th Cir. 2012) (before another court may obtain subject-matter jurisdiction over a suit filed against a receiver for acts committed in his official capacity, the plaintiff must obtain leave of the court that appointed the receiver); *Barton v. Barbour,* 104 U.S. 126, 127, 26 L.Ed. 672 (1881).

6.      In the unlikely event that this Court does not dismiss the Trustee's Settlement Motion, with prejudice, Debtor requests an evidentiary hearing and demands strict proof on the substance and merits of the Trustee's Settlement Motion.[3]

WHEREFORE, the Debtor respectfully requests that the Court enter an order dismissing the Trustee's Settlement Motion, with prejudice, and grant such other and further relief as the law requires.

RESPECTFULLY SUBMITTED on this 21st day of July, 2023.

_____
Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

---

[3] Notably, on December 18, 2018, The Honorable Anne K. Albright (now sitting on the Appellate Court of Maryland), found, *inter alia*, that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members" (his family), and concluding "that would amount to constructive fraud."

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 20, 2023, a copy of the foregoing DEBTOR'S REPLY TO TRUSTEE'S OPPOSITION TO DEBTOR'S MOTION TO DISMISS OR STRIKE TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND SETTLEMENT WITH BRIAN KING, CRISTINA KING, AND THE CRISTINA AND BRIAN KING CHILDREN'S TRUST was furnished via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2067
Hagerstown, MD 21742


_____
Gregory B. Myers, *pro se*

4

Appx. 0434

Entered: December 11th, 2023
Signed: December 10th, 2023

**SO ORDERED**



MARIA ELLENA CHAVEZ-RUARK
U.S. BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt**

In re:

GREGORY B. MYERS,

      Debtor.

Case Number:  15-26033-MCR
(Chapter 7)

**ORDER DENYING DEBTOR'S MOTION TO STRIKE
TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED
COMPROMISE AND SETTLEMENT WITH BRIAN KING, CRISTINA
KING, AND THE CRISTINA AND BRIAN KING CHILDREN'S TRUST**

On February 7, 2023, Roger Schlossberg, the Chapter 7 trustee (the "Trustee") appointed

to administer the Chapter 7 bankruptcy estate of Gregory B. Myers (the "Debtor"), filed a Motion

for Approval of Proposed Compromise and Settlement With Brian King, Cristina King, and the

Cristina and Brian King Children's Trust [Dkt. No. 1005] (the "Settlement Procedure Motion").

The Settlement Procedure Motion seeks to establish a procedural mechanism for resolving

litigation pending in state court among Brian King, Cristina King, and the Cristina and Brian King

Children's Trust (collectively, the "King Parties"), Serv Trust, and the Trustee (who was named

as a nominal defendant).

Appx. 0435

On February 28, 2023, the Debtor filed a Motion to Dismiss or Strike the Settlement Motion or, in the Alternative, Opposition to the Settlement Motion [Dkt. No. 1010] (the "Motion to Strike"). On March 14, 2023, the Trustee filed an opposition to the Motion to Strike [Dkt. No. 1013], and on July 21, 2023, the Debtor filed a reply in support of the Motion to Strike [Dkt. No. 1020]. The Court has reviewed all of the pleadings and finds that a hearing would not aid the decisional process.

Contemporaneously herewith, the Court is entering a detailed order granting the Settlement Procedure Motion (the "Settlement Procedure Order"), which disposes of all of the arguments raised in the Motion to Strike. The Court need not make the same findings herein. Instead, the Court adopts and incorporates the Settlement Procedure Order herein.

For the reasons set forth above and in the Settlement Procedure Order, it is, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Motion to Strike is denied.

cc:     Debtor – Gregory B. Myers, 750 Gulf Shore Boulevard North, Naples, FL 34102
        Debtor – Gregory B. Myers, 4505 Wetherill Road, Bethesda, MD 20816
        Movant – Roger Schlossberg, Chapter 7 Trustee
        Movant's Counsel – Frank J. Mastro, counsel for Chapter 7 Trustee
        United States Trustee – Lynn A. Kohen
        Other – Barbara Ann Kelly, 750 Gulf Shore Boulevard North, Naples, FL 34102
        Other – Barbara Ann Kelly, 4505 Wetherill Road, Bethesda, MD 20816
        All creditors and other parties in interest

**END OF ORDER**

Appx. 0436

Entered: December 11th, 2023
Signed: December 10th, 2023

**SO ORDERED**

*Maria Ellena Chavez-Ruark*

**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at Greenbelt

In re:

GREGORY B. MYERS,

      Debtor.

Case Number:  15-26033-MCR
(Chapter 7)

### ORDER GRANTING MOTION FOR APPROVAL OF PROPOSED
### COMPROMISE AND SETTLEMENT WITH BRIAN KING, CRISTINA
### KING, AND THE CRISTINA AND BRIAN KING CHILDREN'S TRUST

Before the Court is the Motion for Approval of Proposed Compromise and Settlement With

Brian King, Cristina King, and the Cristina and Brian King Children's Trust [Dkt. No. 1005] (the

"Settlement Procedure Motion") filed on February 7, 2023 by Roger Schlossberg, the Chapter 7

trustee (the "Trustee") appointed to administer the Chapter 7 bankruptcy estate of Gregory B.

Myers (the "Debtor").  The Settlement Procedure Motion seeks to establish a procedural

mechanism for resolving litigation pending in state court among Brian King, Cristina King, and

the Cristina and Brian King Children's Trust (collectively, the "King Parties"), Serv Trust, and the

Trustee (who was named as a nominal defendant).  In the event that the Trustee and the King

Parties reach a resolution of their dispute, then the Trustee will file a motion seeking approval of

the settlement and all parties in interest will be given notice and an opportunity to be heard.

Appx. 0437

On February 28, 2023, the Debtor filed a Motion to Dismiss or Strike the Settlement Motion or, in the Alternative, Opposition to the Settlement Motion [Dkt. No. 1010] (the "Motion to Strike"). On March 14, 2023, the Trustee filed an opposition to the Motion to Strike [Dkt. No. 1013], and on July 21, 2023, the Debtor filed a reply in support of the Motion to Strike [Dkt. No. 1020]. The Court has reviewed all of the pleadings and finds that a hearing would not aid the decisional process.

For the following reasons, the Settlement Procedure Motion is granted.

## I.      UNDISPUTED FACTS

The material facts are undisputed. Some of the facts are set forth in the Memorandum Opinion issued by this Court on September 28, 2018 [Adv. No. 17-00193, Dkt. No. 94], which was entered in conjunction with an Order Entering Judgment [Adv. No. 17-00193, Dkt. No. 95] through which the Debtor was denied a discharge under Sections 727(a)(3), 727(a)(4)(A), 727(a)(4)(B), and 727(a)(5) of the United States Bankruptcy Code (the "Bankruptcy Code").[1] The remainder of the facts are established by the record in this bankruptcy case, two related adversary proceedings, and two state court cases, as set forth in more detail below.[2]

---

[1] All statutory references shall be to the Bankruptcy Code unless otherwise stated.

[2] The Court may take judicial notice of docket entries, pleadings, and papers filed in other cases. *In re Marriott Intl., Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 133 (D. Md. 2021), *aff'd sub nom. In re Marriott Intl., Inc.*, 31 F.4th 898 (4th Cir. 2022); *Brown v. Ocwen Loan Servicing, LLC*, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. App'x 200 (4th Cir. 2016). The Court may also take judicial notice of "prior litigation between the same parties where the two cases represent related litigation." *White v. Harris*, 23 F. Supp. 2d 611, 614 (D. Md. 1998) (citing *United States Fidelity & Guar. Co. v. Lawrenson,* 334 F.2d 464, 467 (4th Cir.), cert. denied, 379 U.S. 869 (1964)); *see also Cason v. Holder*, 815 F. Supp. 2d 918, 922 (D. Md. 2011), *aff'd,* 464 Fed. App'x 131 (4th Cir. 2012) (unpublished) ("This Court can take judicial notice of its own records in another case … where the two cases represent related litigation.") (citations omitted) and *In re Modanlo*, 342 B.R. 238, 241 (D. Md. 2006) ("Moreover, the Bankruptcy Court is considered 'a unit of the district court' under 28 U.S.C. § 151, and we believe a district court should properly take judicial notice of its own records.") (quoting *Anderson v. Fed. Deposit Ins. Corp.,* 918 F.2d 1139, 1141 (4th Cir. 1990)).

Appx. 0438

On November 18, 2015, the Debtor filed a voluntary petition for relief under Chapter 11 in this Court. The Debtor's initial Schedule D filed on December 16, 2015 [Dkt. No. 19] listed an entity named Serv Trust as having a claim in the amount of $151,500.00 secured by property known as Lot 6 Seaside 14 Subdivision, Santa Rosa Beach, FL 32459 ("Lot 6"). Serv Trust is a trust that was created by the Debtor's mother for the benefit of the Debtor's children. The Debtor is or was a co-trustee of Serv Trust.

The Debtor testified at his continued meeting of creditors on February 1, 2016 that Serv Trust has a 50% interest in a Maryland limited liability company named 6789 Goldsboro LLC ("Goldsboro LLC"), the sole asset of which is a parcel of residential real property located in Montgomery County, Maryland (the "Goldsboro Property"). The Debtor did not disclose the other 50% owner of Goldsboro LLC at his continued 341 meeting of creditors but testified that the unnamed owner paid the entire purchase price for the Goldsboro Property and made capital contributions into Goldsboro LLC, which funds could be loaned to Serv Trust and used for the beneficiaries of Serv Trust.

On October 25, 2016, while the Debtor's bankruptcy case was proceeding under Chapter 11, the Court entered an order authorizing the Debtor to sell Lot 6 [Dkt. No. 175]. The net proceeds generated from the sale of Lot 6 totaled $1,238,598.91 (the "Lot 6 Sale Proceeds"), which proceeds were subject to various disputed secured claims and liens, including a purported lien in favor of Serv Trust in the amount of $951,803.96 (which is significantly higher than the secured claim set forth in the Debtor's initial Schedule D).

On November 19, 2016, Offit Kurman, P.A. commenced an adversary proceeding against Serv Trust [Adv. No. 16-00541] (the "Serv Trust Adversary Proceeding") seeking to determine the priority and extent of Serv Trust's asserted lien against the Lot 6 Sale Proceeds.

Appx. 0439

On January 27, 2017, Goldsboro LLC filed a Motion for Enlargement of Time to File Proof of Claim in the Debtor's bankruptcy case [Dkt. No. 279]. On January 31, 2017, the Debtor filed a Second Amended Schedule E/F [Dkt. No. 283], which listed, for the first time, Goldsboro LLC as having an unsecured, nonpriority claim against the Debtor in the amount of $476,395.83. On February 3, 2017, Goldsboro LLC filed a proof of claim [Claim No. 17-1] in the Debtor's case asserting a general unsecured claim in the amount of $476,395.83 based on a "Guaranty."

On February 3, 2017, Serv Trust, through its former counsel, filed a line which, among other things consented to the relief requested in the Serv Trust Adversary Proceeding in this Court [Adv. No. 16-00541, Dkt. No. 43]. Three days later, the Court entered a judgment which avoided Serv Trust's asserted lien against the Lot 6 Sale Proceeds as if such lien never existed and disallowed any scheduled or filed claim of Serv Trust in the Debtor's bankruptcy case [Adv. No. 16-00541, Dkt. No. 43].

On February 22, 2017, after an evidentiary hearing, the Court entered an order granting the motion of the United States Trustee to convert the Debtor's case from Chapter 11 to Chapter 7 [Dkt. No. 316]. The Trustee was appointed immediately upon conversion.

On September 14, 2017, the King Parties filed a Complaint for Declaratory Judgment (the "King Declaratory Judgment Complaint") against Serv Trust in the Circuit Court for Montgomery County, Maryland (the "State Court") in the case styled *King, et al. v. Serv Trust, et al.*, Case No. 436977-V (the "King Declaratory Judgment Case"). The King Declaratory Judgment Complaint sought, among other things, (i) a judgment declaring that the King Parties could direct Goldsboro LLC to redeem the interest of Serv Trust in Goldsboro LLC in exchange for previous consideration paid based on an appraisal conducted of the Goldsboro Property pursuant to the Operating

Agreement governing Goldsboro LLC, and (ii) a judgment declaring that Serv Trust's interest in Goldsboro LLC has been redeemed.[3]

On January 24, 2018, Goldsboro LLC filed a Complaint (the "Goldsboro Breach of Contract Complaint") against Serv Trust in the Circuit Court for Garrett County, Maryland in the case styled *6789 Goldsboro LLC v. Serv Trust, et al.*, Case No. C-11-CV-18-000018.   The Goldsboro Breach of Contract Complaint asserted claims for breach of a promissory note and promissory estoppel.[4]  The Circuit Court for Garrett County, Maryland transferred the case to the State Court on July 24, 2018, and the State Court assigned Case No. 451611-V to the case and consolidated it with the King Declaratory Judgment Case (collectively, the "State Court Case").

On February 5, 2018, the Debtor and his wife, Barbara Ann Kelly, filed a joint motion to vacate the judgment entered in the Serv Trust Adversary Proceeding [Adv. No. 16-00541, Dkt. No. 46] (the "Motion to Vacate").  On February 14, 2018, the Debtor and Ms. Kelly filed a joint motion to reopen the Serv Trust Adversary Proceeding [Adv. No. 16-00541, Dkt. No. 51] (the "Motion to Reopen").  Offit Kurman, P.A. and the Trustee filed oppositions to the Motion to Vacate [Adv. No. 16-00541, Dkt. Nos. 56 and 61], and the Trustee filed an opposition to the Motion to Reopen [Adv. No. 16-00541, Dkt. No. 63].  The Court held a hearing to consider the Motion to Vacate, the Motion to Reopen, and related oppositions on July 30, 2018, at which it denied both motions.  On August 3, 2018, the Court entered orders consistent with its ruling [Adv. No. 16-00541, Dkt. Nos. 73 and 74].  The Debtor and Ms. Kelly appealed the orders to the United States District Court for the District of Maryland (the "District Court").  *See* Case No. 8:18-cv-

---

[3] A copy of the King Declaratory Judgment Complaint appears at Adv. No. 18-00407, Dkt. No. 4, Exhibit A.

[4] A copy of the Goldsboro Breach of Contract Complaint appears at Adv. No. 18-00407, Dkt. No. 4, Exhibit B.

02536-PX.  On November 12, 2020, the District Court entered an order dismissing the appeal based on the Debtor and Kelly's failure to comply with filing requirements [Case No. 8:18-cv-02536-PX, Dkt. No. 49].  The Debtor and Ms. Kelly appealed the District Court's dismissal of the appeal to the United States Court of Appeals for the Fourth Circuit where it remains pending.  *See* Case No. 20-02309.

On October 29, 2018, Goldsboro LLC filed a Complaint for Declaratory Judgment against the Debtor, Serv Trust, and the Trustee (the "Goldsboro Declaratory Judgment Complaint") thereby commencing an adversary proceeding in this Court against Serv Trust [Adv. No. 18-00407] (the "Goldsboro Adversary Proceeding").   The Goldsboro Declaratory Judgment Complaint alleged that the King Parties collectively are the other owner of Goldsboro LLC, exercised their right to redeem Serv Trust's interest in Goldsboro LLC, and filed a declaratory judgment action in the State Court in connection therewith (this being the King Declaratory Judgment Complaint filed in the State Court).  The Goldsboro Declaratory Judgment Complaint sought a judgment from this Court declaring that Serv Trust is the alter ego of the Debtor and that the assets and liabilities of Serv Trust are assets and liabilities of the Debtor subject to administration by the Trustee.  Goldsboro LLC also requested an order from this Court staying the State Court Case based on Goldsboro's LLC assertion that Serv Trust is the alter ego of the Debtor.

On January 30, 2019, the Court entered an order abstaining from exercising jurisdiction over the claims asserted in the Goldsboro Adversary Proceeding [Adv. No. 18-00407, Dkt. No. 28] (the "Abstention Order").  The Abstention Order determined that the State Court could determine whether Serv Trust is the alter ego of the Debtor in connection with the State Court Case, and if such a determination was made, then the parties to the State Court Case could come back to this Court to determine a course of action.  On the other hand, if the State Court determined

that Serv Trust is not the alter ego of the Debtor, then the State Court Case would have little impact on the Debtor's bankruptcy case and there would be no basis for the Court to exercise jurisdiction over the Goldsboro Adversary Proceeding. The Abstention Order also stated that the State Court could determine whether the automatic stay of Section 362(a) applies to the State Court Case.

After entry of the Abstention Order, the King Parties filed an amended complaint in the King Declaratory Judgment Case to include a request for declaratory judgment that Serv Trust is the alter ego of the Debtor.

On November 13, 2019, Maurice VerStandig, a named defendant to a counter-complaint and third-party complaint filed by the Debtor in the State Court Case, filed a notice of removal of the State Court Case, thereby removing the matter to this Court [Adv. No. 19-00427, Dkt. No. 1]. On December 3, 2019, the Debtor filed a notice voluntarily dismissing the counter-complaint and third-party complaint in the removed adversary proceeding [Adv. No. 19-00427, Dkt. No. 4]. On December 5, 2019, the Court entered an order remanding the case back to the State Court based on the Debtor's dismissal of the counter-complaint and third-party complaint and the Court's prior Abstention Order [Adv. No. 19-00427, Dkt. No. 5].

On April 20, 2021, the Trustee filed a status report [Dkt. No. 930] in this case detailing how the Lot 6 proceeds were distributed and/or earmarked for future distribution, detailing other assets of the bankruptcy estate, and describing the proofs of claim filed in this case. The status report indicates that the Debtor's bankruptcy estate is insolvent. The Court notes that the Trustee has incurred significantly more legal fees since the filing of the status report.

The State Court Case proceeded to trial on January 3, 2023, at which the State Court determined that Serv Trust is the alter ego of the Debtor. The State Court reduced its oral ruling from the January 3, 2023 trial to a written order entered on January 12, 2023 (the "Alter Ego

Order").[5]  The Alter Ego Order determined that "Serv Trust is, and as of November 18, 2015 was, the alter ego of [the Debtor], pursuant to Maryland law" and further determined that "Serv Trust is a disregarded entity, being the alter ego of [the Debtor]" and therefore, "all further proceedings in this case are stayed pursuant to the provisions of Section 362 of Title 11 of the United States Code" pending the removal of the State Court Case to this Court, the granting of relief from stay, or the occurrence of other events terminating the automatic stay.  Alter Ego Order at p. 2.

On January 23, 2023, shortly after entry of the Alter Ego Order, the Firm entered its appearance in the State Court Case on behalf of Serv Trust and filed a Motion for a New Trial or to Vacate, Alter, or Amend Judgment (the "Post-Trial Motion") on behalf of Serv Trust.[6]  The Post-Trial Motion states that the Firm was retained on January 20, 2023.  The Trustee filed a line in the State Court Case purporting to withdraw the Post-Trial Motion, to which the Firm filed a motion to strike on behalf of Serv Trust.  On February 27, 2023, the State Court held a hearing to consider the Post-Trial Motion, the Trustee's line, and Serv Trust's motion to strike the Trustee's line.

On April 17, 2023, the State Court issued an oral ruling at which it denied the Post-Trial Motion and granted Serv Trust's motion to strike the Trustee's line.[7]  In its oral ruling, the State Court explained that it has jurisdiction to consider the Post-Trial Motion because it has "authority under the Maryland Rules to control its judgments that are non-final."  Transcript at p. 6.  On

---

[5] A copy of the State Court's Alter Ego Order appears at Dkt. No. 1004 (Motion for Sanctions), Exhibit 1.

[6] Copies of the Firm's Notice of Appearance and Post-Trial Motion appear at Dkt. No. 1004 (Motion for Sanctions), Exhibits 2 and 3, respectively.

[7] A copy of the transcript of the State Court's oral ruling appears at Dkt. No. 1015 (Opposition to Motion for Sanctions), Exhibit B.

April 18, 2023, the State Court reduced its oral ruling to a written order denying the Post-Trial Motion and granting the motion to strike.[8]

The Debtor noted an appeal of the order denying the Post-Trial Motion and filed an emergency motion for a stay pending the outcome of the appeal. On May 5, 2023, the Appellate Court of Maryland entered an order denying the Debtor's motion for stay pending appeal.[9] The order gave the Debtor 20 days to show cause why the appeal should not be dismissed because it is an appeal of a nonfinal order. On May 25, 2023, the Debtor voluntarily dismissed his appeal of the order denying the Post-Trial Motion.

## II.      THE SETTLEMENT PROCEDURE MOTION AND RELATED FILINGS

The Trustee maintains that, based on the Alter Ego Order, all claims against Serv Trust must be construed as claims against the Debtor's bankruptcy estate. Similarly, the Trustee maintains that entry of the Alter Ego Order vested all of Serv Trust's assets in the Debtor's bankruptcy estate pursuant to Section 541(a), with those assets subject to administration by the Trustee as the legal representative of the bankruptcy estate under Section 323(a). As such, the Trustee filed the Settlement Procedure Motion seeking the opportunity to settle the remaining claims presented in the King Declaratory Judgment Complaint regarding the asserted redemption of Serv Trust's interest in Goldsboro LLC. The Trustee believes it is unlikely that the King Declaratory Judgment Case can be removed to this Court because any removal would be untimely under Bankruptcy Rule 9027(a)(3). Accordingly, in lieu of removal, the Trustee and the King Parties have agreed to the following terms:

---

[8] A copy of the State Court's order denying the Post-Trial Motion appears at Dkt. No. 1015 (Opposition to Motion for Sanctions), Exhibit C.

[9] A copy of the Appellate Court's order denying the Debtor's motion for stay pending appeal appears at Dkt. No. 1016 (Supplemental Opposition to Motion for Sanctions), Exhibit B.

(1)     The King Parties and the Trustee shall jointly file a stipulation in the King Declaratory Judgment Case pursuant to which the King Parties will dismiss without prejudice their remaining claim against Serv Trust regarding the alleged redemption of Serv Trust's interest in Goldsboro LLC (the "Redemption Claim");

(2)     In consideration of the foregoing dismissal, the Trustee agrees to toll the statute(s) of limitation applicable to the Redemption Claim *nunc pro tunc* to September 14, 2017, the date the King Declaratory Judgment Case was filed in the State Court; and

(3)     The King Parties and the Trustee further agree to endeavor in good faith to negotiate a resolution to the Redemption Claim, and if negotiations are not successful, the King Parties shall refile the Redemption Claim as an adversary proceeding in this Court within thirty (30) days after the entry of an order approving this settlement.

The Trustee avers that in the sound exercise of his judgment, the proposed settlement procedures are in the best interest of the bankruptcy estate and all interested parties herein. The Trustee states that the proposed procedures afford him time to become familiar with the Redemption Claim and to potentially negotiate a resolution of the same, which could yield significant income for the bankruptcy estate. In the event a resolution is not reached, the Trustee states that the Redemption Claim will be litigated in this Court, which is the bankruptcy estate's preferred forum.

The Debtor's Motion to Strike presents numerous arguments in opposition to the Settlement Procedure Motion and is being treated as an opposition to the Settlement Procedure Motion by the Court. Those arguments are:

➢     The relief sought in the Settlement Procedure Motion requires an adversary proceeding because it seeks to recover money or property and seeks equitable relief, and Serv Trust's beneficiaries are required to be joined as defendants;

➢     The Settlement Procedure Motion is not a core proceeding and the Debtor does not consent to entry of any final order by this Court;

➢     The Court is divested of jurisdiction to consider the Settlement Procedure Motion because of the ongoing appeal of the Serv Trust Adversary Proceeding, which remains pending in the United States Court of Appeals for the Fourth Circuit;

- ➢ The Trustee is using the Settlement Procedure Motion to "commit a crime (*i.e.*, theft of Serv Trust's property)" and that the Trustee will consummate a settlement before Serv Trust can obtain a stay of "the bogus 9019 Order;"

- ➢ The Settlement Procedure Motion is seeking an advisory opinion because there is no justiciable controversy or cause of action affecting the bankruptcy estate and therefore, nothing for the Trustee to settle;

- ➢ The King Parties are not "parties in interest" and, therefore, lack standing to participate in this case;

- ➢ The State Court lacked subject matter jurisdiction to enter the Alter Ego Order because the King Parties never obtained leave from this Court to sue the Trustee as required by *Barton v. Barbour*, 104 U.S. 126, 127 (1881);

- ➢ The Trustee is mischaracterizing the Alter Ego Order in that the State Court did not enter a proposed order submitted by the King Parties that explicitly stated that Serv Trust's assets now belong to the Debtor's bankruptcy estate subject to the Trustee's control;

- ➢ The Alter Ego Order is not a final judgment and, therefore, has no force or effect pursuant to Maryland Rule 2-602;

- ➢ The Trustee has no authority under the Bankruptcy Code or any applicable non-bankruptcy law to "tortiously interfere with Serv Trust's property and legal rights" because Serv Trust is not a debtor in bankruptcy, the Debtor is not a settlor or beneficiary of Serv Trust, and Serv Trust and did not file a proof of claim in the Debtor's bankruptcy case;

- ➢ The Order Sustaining the Debtor's Objection to Proof of Claim No. 3 Filed by Brian King and Cristina King in the Debtor's bankruptcy case filed in the United States Bankruptcy Court for the Middle District of Florida is "res judicata" as to any claim the King Parties might have against the Debtor;

- ➢ The State Court erroneously ruled that the automatic stay of Section 362(a) applies to the remaining causes of action in the State Court Case because the automatic stay was terminated in the Debtor's bankruptcy case in 2018 and only this Court has the authority to reimpose the automatic stay; and

- ➢ The Settlement Procedure Motion is not a proper exercise of the Trustee's business judgment and falls below the lowest point in the range of reasonableness because it is fraudulent.

In addition to these arguments, the Debtor requests that the Trustee be ordered to show cause why sanctions should not be imposed against him for filing the Settlement Procedure Motion based on the Debtor's assertion that the Settlement Procedure Motion is frivolous.

Appx. 0447

The Trustee filed an Opposition to the Motion to Strike in which he argues that the Debtor lacks standing to object to the Settlement Procedure Motion under *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985), because the bankruptcy estate is insolvent and the Debtor has no pecuniary interest in any settlement ultimately reached. The Trustee reiterates that the Settlement Procedure Motion involves a procedural matter related to a pending (albeit stayed) state court declaratory judgment claim concerning the Redemption Claim. The Trustee asserts that the Debtor's bankruptcy estate is insolvent (*see* Status Report at Dkt. No. 930) and continues to hemorrhage attorney's fees based on the Debtor's continuing bad-faith litigation tactics as described in several District Court cases involving the Debtor. The Trustee maintains that there is no possibility that the Debtor's bankruptcy estate will be rendered solvent under any set of circumstances. Therefore, the Debtor lacks standing to object to the Settlement Procedure Motion because he lacks a pecuniary interest in the outcome of any achieved settlement.

The Debtor filed a reply in support of the Motion to Strike the Settlement Procedure Motion, stating that the Court previously determined that the Debtor has standing in connection with matters involving Serv Trust in the orders denying the Motion to Vacate and the Motion to Reopen that were entered in the Serv Trust Adversary Proceeding on July 30, 2018. The Debtor further argues that the King Parties lacked standing when they filed the King Declaratory Judgment Case because only the Trustee had standing to bring avoidance actions and he failed to do so within the time limitations set forth in Section 546(a). Consequently, the Debtor argues that the Trustee lacks standing to pursue the Settlement Procedure Motion. The Debtor also argues that this Court rejected a prior attempt to remove the King Declaratory Judgment Case to this Court when it remanded the matter back to the State Court soon after the matter was removed to this Court. The

Debtor argues that the Court is now deprived of jurisdiction to consider the Settlement Procedure Motion in light of the prior remand of the Removed Adversary Proceeding.

III.     **ANALYSIS**

At this juncture, the Trustee is not seeking the approval of specific terms of a compromise with the King Parties.  Rather, in light of the exceptional posture of these proceedings due to the entry of the Alter Ego Order, the Trustee is seeking authorization to negotiate with the King Parties to attempt a resolution of the Redemption Claim.  *See In re Fairpoint Commun.., Inc.*, No. 09-16335(BRL), 2009 WL 10816988 (Bankr. S.D.N.Y Dec. 4, 2009) (approving a motion to establish settlement procedures and requiring further notice of the settlement of certain types of claims).  In exchange, the King Parties and the Trustee will dismiss without prejudice the remaining claims in the King Declaratory Judgment Complaint, the Trustee will toll the statute(s) of limitation applicable to the Redemption Claim, and if negotiations are not successful, the King Parties will refile the Redemption Claim as an adversary proceeding in this Court within thirty (30) days of the date of entry of this Order.  Conversely, and although not expressly stated in the Settlement Procedure Motion, the successful resolution of the Redemption Claim will be subject to approval by this Court pursuant to the legal standard applicable to motions seeking the approval of a compromise or settlement under Bankruptcy Rule 9019, as articulated by this Court in *In re Final Analysis, Inc.*, 417 B.R. 332 (Bankr. D. Md. 2009), after notice and an opportunity to be heard is provided to all parties interest.

Preliminarily, the Court will dispose of the Trustee's argument that the Debtor does not have standing to oppose the Settlement Procedure Motion under the legal principle espoused in *Willemain v. Kivitz.*  In that case, the Court held that an insolvent Chapter 7 debtor is not a party in interest and thus lacks standing to challenge a trustee's motion to sell "because he ha[s] no

pecuniary interest in the distribution of his assets among his creditors." *Willemain v. Kivitz*, 764 F.2d at 1022. Prior to entry of the Alter Ego Order, the Debtor's bankruptcy estate was unquestionably insolvent as detailed in the Trustee's Status Report filed on April 20, 2021 [Dkt. No. 930]. Nevertheless, there is a possibility that Serv Trust's assets, which now belong to the Debtor's bankruptcy estate, may bring significant value to the estate and render it solvent. Although the Court recognizes that this is highly unlikely, out of an abundance of caution, the Court will allow the Debtor to be heard with regard to the Settlement Procedure Motion and will consider the merits of the Motion to Strike.

The Debtor has objected to the Settlement Procedure Motion on numerous grounds, none of which are persuasive. Procedurally, the Trustee may pursue settlement of the Redemption Claim through a motion pursuant to Bankruptcy Rule 9019(a), which provides that "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Moreover, in the event the Trustee ultimately seeks the recovery of property from Serv Trust, which is now considered property of the Debtor's estate pursuant to the Alter Ego Order, Bankruptcy Rule 7001(1) provides that "a proceeding to recover money or property, *other than a proceeding to compel the debtor to deliver property to the trustee*" is an adversary proceeding. Fed. R. Bankr. P. 7001 (*emphasis added*). Thus, the recovery of property from Serv Trust would not be an adversary proceeding and would not require a complaint under Bankruptcy Rule 7003. Furthermore, the settlement of the Redemption Claim constitutes a "core proceeding" under several subparagraphs of Section 157(b)(2) of Title 28 of the United States Code, including (2)(A) (matters concerning the administration of the estate), (2)(C) (counterclaims by the estate against persons filing claims against the estate), (2)(E) (orders to turn over property of the estate), and (2)(O) (other proceedings affecting the liquidation of the assets of the estate).

28 U.S.C. § 157(b)(2).  As a core proceeding, the Debtor's consent to entry of a final judgment is not necessary.  Moreover, entry of this Order is not a final judgment for purposes of finality as it only approves settlement procedures.

The Debtor argues that the beneficiaries of Serv Trust are required to be joined as defendants in this matter.  The Debtor is incorrect.  The beneficiaries of Serv Trust are no longer beneficiaries of Serv Trust because, pursuant to the Alter Ego Order, "Serv Trust is a disregarded entity, being the alter ego of [the Debtor]."  Alter Ego Order, at p. 2.  Therefore, the named beneficiaries are not required to be joined as defendants in an adversary proceeding or named as respondents in any contested matter.  The time for the named beneficiaries to assert any rights to the assets of Serv Trust or to otherwise intervene in the State Court Case was prior to the State Court's determination that Serv Trust is the alter ego of the Debtor.  Moreover, Serv Trust need not be in bankruptcy and the fact that the Debtor was not a settlor or beneficiary is irrelevant because Serv Trust has been determined to be the Debtor's alter ego and the Serv Trust's assets are subject to administration by the Trustee as the legal representative of the bankruptcy estate under Section 323(a).

The Debtor's argument that the King Parties do not have standing to appear in this Court also fails.  The Trustee filed the Settlement Procedure Motion to resolve a potential claim between the bankruptcy estate and the King Parties.  Standing of the King Parties is irrelevant to the Settlement Procedure Motion – the Trustee, as the administrator of the Debtor's bankruptcy estate, certainly has standing to settle any claim against or held by the bankruptcy estate.  *See Dimeglio v. Haines*, No. CIV. Y-93-2656, 1999 WL 1489197, at *2 (D. Md. Dec. 28, 1999) ("The bankruptcy trustee succeeds to all causes of action held by the debtor at the time the bankruptcy petition is filed" and "[o]nce the petition is filed, only the trustee has authority to settle or release

such claims."). Nevertheless, the King Parties became potential creditors of the Debtor upon entry of the Alter Ego Order – long after the claims bar date. Therefore, the King Parties have standing to assert any claims against the Debtor in this Court, are irrefutably parties in interest to this proceeding, and must be given an opportunity to assert their claims against the bankruptcy estate.

Contrary to the Debtor's assertion, the Settlement Procedure Motion is not seeking an advisory opinion from the Court. The Settlement Procedure Motion is the mechanism by which the Trustee is seeking authority to resolve a stayed cause of action in the State Court as contemplated by the Abstention Order.

The Debtor disputes the jurisdiction of the State Court to enter the Alter Ego Order because the King Parties did not obtain leave from this Court to sue the Trustee in the King Declaratory Judgment Case. The Debtor's argument fails. "In *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881), the Supreme Court held that 'before another court may obtain subject-matter jurisdiction over a suit filed against a receiver for acts committed in his official capacity, the plaintiff must obtain leave of the court that appointed the receiver.'" *Conway v. Smith Dev., Inc.*, 64 F.4th 540, 542 (4th Cir. 2023) (quoting *McDaniel v. Blust*, 668 F.3d 153, 156 (4th Cir. 2012)). This doctrine, which is commonly called the "Barton Doctrine," has been extended to suits against bankruptcy trustees and their attorneys. *See Conway v. Smith Dev.*, 64 F.4th at 542. Here, the Trustee was named as a nominal defendant in the King Declaratory Judgment Case. He is not being sued for any act committed in his official capacity as Trustee of the Debtor's bankruptcy estate. Accordingly, the Barton Doctrine is not applicable to this matter.

The Debtor also argues that the refusal of the State Court to enter the proposed order submitted by the King Parties, which included language that Serv Trust's assets belong to the Debtor's bankruptcy estate, instead of the Alter Ego Order is proof that the State Court did not

determine that Serv Trust's assets belong to the Debtor's bankruptcy estate. It is unclear why the State Court did not enter the proposed order submitted by the King Parties, but the effect of the Alter Ego Order is clear. The law dictates that the Alter Ego Order vested all of Serv Trust's assets in the Debtor's bankruptcy estate pursuant to Section 541(a), and those assets are subject to administration by the Trustee as the legal representative of the bankruptcy estate under Section 323(a). The Alter Ego Order need not explicitly state that Serv Trust's assets now belong to the Debtor's bankruptcy estate subject to the Trustee's control for it to be true.

The Debtor further contends that this Court does not have jurisdiction to consider the Settlement Procedure Motion because of the ongoing appeal of the Serv Trust Adversary Proceeding. The Court agrees with the Debtor that, ordinarily, the filing of a notice of appeal divests the bankruptcy court of jurisdiction with regard to the matter being appealed. *Videsh Sanchar Nigam Ltd. v. Startec Global Comm's Corp. (In re Startec Global Comm's Corp.)*, 303 B.R. 605, 607 (D. Md. 2004); *In re Bradshaw*, 284 B.R. 520, 523 (Bankr. D. Mass. 2002). Here, however, the pending appeal of the judgment avoiding Serv Trust's alleged lien in the Lot 6 proceeds which, the Court notes, was entered with Serv Trust's consent through its former counsel, is wholly unrelated to the King Declaratory Judgment Case and the potential settlement of the Redemption Claim.

The Debtor argues that the Trustee has misconstrued or mischaracterized the holding of the Alter Ego Order and that he is using the Settlement Procedure Motion as a means to "steal" Serv Trust's property. It is the Debtor, however, who is misconstruing the Alter Ego Order. As previously stated, the Alter Ego Order specifically determined that "Serv Trust is, and as of November 18, 2015 was, the alter ego of [the Debtor], pursuant to Maryland law" and further determined that "Serv Trust is a disregarded entity, being the alter ego of [the Debtor]." Alter Ego

Appx. 0453

Order at p. 2. Thus, there are no assets belonging to Serv Trust for the Trustee to "steal" because Serv Trust was deemed the alter ego of the Debtor and all of its assets now belong to the Debtor's bankruptcy estate subject to administration by the Trustee. Moreover, the Debtor is incorrect in his argument that the Alter Ego Order has no force or effect because it is not a final judgment under Maryland Rule 2-602. The Alter Ego Order may not have disposed of the entire King Declaratory Judgment Case, but interlocutory orders are still orders of the court with full force and effect albeit subject to revision until entry of a final judgment adjudicating all of the claims by and against all of the parties. *See* Maryland Rule 2-602(a)(3) (an order that does not adjudicate all claims in the action is subject to revision any time before entry of judgment adjudicating all claims of the parties).

The Debtor argues that an order sustaining the Debtor's objection to the King Parties' claim entered on June 29, 2021 in the Debtor's bankruptcy case in the United States Bankruptcy Court for the Middle District of Florida is *res judicata* as to any claim the King Parties might have against the Debtor. Again, however, the Debtor misconstrues the impact of the Alter Ego Order, which was entered on January 12, 2023 – after entry of the order sustaining the Debtor's claim objection and, the Court notes, after the dismissal of the Florida bankruptcy case.[10] Any claim the King Parties may have against the Debtor arose upon entry of the Alter Ego Order and would not be barred by an order entered 18 months earlier under significantly different facts.

The Debtor argues that the State Court had no authority to determine that the State Court Case was stayed upon entry of the Alter Ego Order because the automatic stay was terminated in

---

[10] The Debtor filed the Florida bankruptcy case (Case No. 2:21-bk-00123-FMD) on January 28, 2021. The Florida Bankruptcy Court dismissed that case on January 20, 2023 and set forth its reasons for dismissal in a Memorandum Opinion Denying Confirmation and Dismissing Case [Case No. 2:21-bk-00123-FMD, Dkt. No. 368].

the Debtor's bankruptcy case in 2018 for all purposes and only this Court has the authority to reimpose the automatic stay. A state court has concurrent jurisdiction with bankruptcy courts to determine the applicability of the automatic stay:

> The State court may not grant relief from the stay – that is a matter committed exclusively to the Bankruptcy Court – but it may, when presented with the issue, determine whether, factually or legally, a stay is in effect and whether a particular action it is about to take or has already taken is subject to such a stay. Those determinations are, of course, reviewable on appeal.

*Klass v. Klass*, 377 Md. 13, 21 (2003).

Moreover, the Abstention Order entered in the Goldsboro Adversary Proceeding specifically provided that the State Court could determine whether Serv Trust is the alter ego of the Debtor in connection with the King Declaratory Judgment Case, and if such a determination was made, then the parties could come back to the bankruptcy court to determine a course of action. The Abstention Order further stated: "If the State Court determines that the automatic stay is applicable based on the relationship between the Debtor and Serv Trust, then the matter will be stayed and the parties can come back to this Court to figure out how to proceed." Abstention Order at p. 4. This is exactly what has happened – the State Court determined that Serv Trust is the alter ego of the Debtor so the parties are now back before this Court seeking authority to resolve the remaining Redemption Claim.

The Debtor did not explain his statement that the automatic stay arising in his case terminated for all purposes in 2018. The Court suspects he is referring to when he was denied a discharge in this case. Although the stay of any act against the Debtor, personally, was lifted upon the denial of the Debtor's discharge, Section 362(c) of the Bankruptcy Code provides that "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1).

Lastly, the Debtor argues that the Settlement Procedure Motion is not a proper exercise of the Trustee's business judgment and falls below the lowest point in the range of reasonableness because it is fraudulent. This argument is premature (and, as set forth above, the Trustee is acting within the scope of his authority in filing the Settlement Procedure Motion and therefore is not committing fraud). As previously explained, the Settlement Procedure Motion is not seeking approval of specific settlement terms. It merely seeks approval of the procedural mechanism through which the Trustee and the King Parties are going to pursue resolution of the Redemption Claim. If a resolution is reached, the parties will be required to file a further motion seeking Court approval of any proposed compromise under Bankruptcy Rule 9019. At that time, the Court will consider the reasonableness of any proposed settlement and all parties in interest will be given an opportunity to object and be heard.

Having disposed of all of the Debtor's arguments in opposition to the Settlement Procedure Motion, there is no basis to entertain the Debtor's request that the Trustee show cause why sanctions should not be imposed for filing the Settlement Procedure Motion. The Debtor's request is categorically denied.

For these reasons, it is, by the United States Bankruptcy Court for the District of Maryland, hereby

ORDERED, that the Settlement Procedure Motion is granted; and it is further

ORDERED, that the proposed compromise and settlement procedure described in the Settlement Procedure Motion and related notice is approved; and it is further

ORDERED, that the Trustee and the King Parties may proceed to negotiate a resolution of the Redemption Claim and any proposed settlement is subject to notice to all parties in interest and approval by this Court in accordance with Bankruptcy Rule 9019; and it is further

ORDERED, that the Debtor's request for an order directing the Trustee to show cause why sanctions should not be imposed against him for filing the Settlement Procedure Motion is denied; and it is further

ORDERED, that the deadline for the King Parties to file a proof of claim against the bankruptcy estate is 30 days from the date on which this Order is entered.

cc:     Debtor – Gregory B. Myers, 750 Gulf Shore Boulevard North, Naples, FL 34102
Debtor – Gregory B. Myers, 4505 Wetherill Road, Bethesda, MD 20816
Movant – Roger Schlossberg, Chapter 7 Trustee
Movant's Counsel – Frank J. Mastro, counsel for Chapter 7 Trustee
United States Trustee – Lynn A. Kohen
Other – Barbara Ann Kelly, 750 Gulf Shore Boulevard North, Naples, FL 34102
Other – Barbara Ann Kelly, 4505 Wetherill Road, Bethesda, MD 20816
All creditors and other parties in interest

**END OF ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor, | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| BRIAN KING, CRISTINA KING, | ) | |
| AND THE CRISTINA AND BRIAN | ) | |
| KING CHILDREN'S TRUST, | ) | |
| | ) | Adversary Case No. _____ |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROGER SCHLOSSBERG, in His | ) | |
| Official Capacity as Chapter 7 Trustee | ) | |
| of the Bankruptcy Estate of Gregory B. | ) | |
| Myers, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | | |

## COMPLAINT FOR DECLARATORY RELIEF

Come now Brian King ("Mr. King"), Cristina King ("Mrs. King"), and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (the "Trustee of the Children's Trust," with the trust itself being known as the "Children's Trust")) (Mr. King, Mrs. King, and the Trustee of the Children's Trust being collectively known as the "Plaintiffs" and each sometimes being known as a "Plaintiff"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7003 and Federal Rule of Civil Procedure 3, and as and for their complaint for declaratory relief (the "Complaint") against Roger Schlossberg, in his official capacity as Chapter 7 Trustee of Mr. Myers' bankruptcy estate (the "Trustee" or "Defendant"), state as follows:

1

Appx. 0458

Case 24-00007   Doc 1   Filed 01/10/24   Page 2 of 8

**Introduction**

1.      This action concerns the affairs of 6789 Goldsboro LLC ("6789 Goldsboro"), an entity formed to develop an eponymous parcel of real estate in Bethesda, Maryland.

2.      Gregory B. Myers ("Mr. Myers" or the "Debtor") prevailed upon the Plaintiffs to invest their money into developing the project, with 6789 Goldsboro being funded by the Plaintiffs and having its senior equity interests owned by the Plaintiffs.

3.      In exchange for his efforts locating the project and working to develop the project, Mr. Myers was granted a subordinate, junior equity interest in the company; knowing he would soon be filing bankruptcy, and wishing to conceal that interest from his creditors, Mr. Myers took the interest in the name of Serv Trust, an entity that has now been declared – by the Circuit Court for Montgomery County, Maryland – to be Mr. Myers' alter ego.

4.      At core, the deal with the Plaintiffs and Mr. Myers was simple: Mr. Myers had three years to develop 6789 Goldsboro Road, Bethesda, Maryland 20817 (the "Property") into an asset worth more than the monies invested by the Plaintiffs. If Mr. Myers succeeded in doing so, the junior equity interest would realize value; if Mr. Myers failed to do so, the junior equity interest could be redeemed for previous consideration.

5.      By reason of Mr. Myers taking repeated loans from 6789 Goldsboro, and in light of certain development issues encountered, the Property ultimately was not worth as much as the Plaintiffs had invested; after Mr. Myers performed an attempted act of grift on the Plaintiffs, they accordingly invoked the mechanism to redeem the junior equity interest titularly held by Serv Trust as Mr. Myers' alter ego.

6.      The Plaintiffs now seek a judicial declaration that the junior equity interest has been redeemed; since Mr. Myers is a debtor in bankruptcy, and insofar as the interest was held in the

2

Appx. 0459

name of an entity that has been adjudicated his alter ego, the Trustee is the proper defendant hereto and, accordingly, is the party against whom suit is instantly brought.

**Parties**

7. Mr. King is a natural person who is a citizen of the State of Florida by virtue of his ongoing domicile therein.

8. Mrs. King is a natural person who is a citizen of the State of Florida by virtue of her ongoing domicile therein.

9. Mr. King also brings this suit in his capacity as the Trustee of the Children's Trust, which is a Maryland trust.

10. The Trustee is the duly-appointed trustee of the Chapter 7 bankruptcy estate of Mr. Myers, an estate that includes the assets of Serv Trust, a Maryland statutory trust that has been adjudicated to be the alter ego of Mr. Myers.

**Jurisdiction and Venue**

11. This Honorable Court enjoys jurisdiction over the instant proceeding, pursuant to the allowances of Section 157(b)(2)(A, B, O) of Title 28 of the United States Code, as this case concerns the administration of the Debtor's estate, an equitable claim against the Debtor's estate, and the liquidation of a putative asset of the Debtor's estate.

12. Venue is properly laid in this Honorable Court pursuant to the allowances of Section 1334 of Title 28 of the United States Code, as this matter relates to a proceeding under Title 11 of the United States Code.

**General Allegations: 6789 Goldsboro LLC – Property and Operating Agreement**

13. The Plaintiffs collectively comprise the full Class A members of a 6789 Goldsboro and have done so at all times relevant.

3

Appx. 0460

14.     Mr. Myers, through his alter ego, Serv Trust, was the sole Class B member of 6789 Goldsboro prior to the time at which the subject interest was redeemed.

15.     Pursuant to the First Amended and Restated Operating Agreement of July 18, 2013 (the "Operating Agreement," inclusive of the subsequent amendment thereto), for 6789 Goldsboro, the entity exists to "purchase, acquire, buy, own, trade in, hold, develop, lease, manage, entitle, subdivide, sell, and otherwise deal in and with" the Property. *See* Operating Agreement at § 2.2.

16.     6789 Goldsboro acquired the Property on July 18, 2013 and has owned the Property continuously and without interruption at all times since.

17.     Pursuant to Section 7.7 of the Operating Agreement, as subsequently amended, if the governmental approvals requisite to subdivide the Property into at least nineteen (19) townhouse dwellings are not obtained by July 18, 2016, and the Class A members of 6789 Goldsboro do not elect to sell the Property, the Class A members have the right to have the Property appraised in accordance with the terms of the Operating Agreement.

18.     Pursuant to Section 7.5 of the Operating Agreement, an appraisal of the Property occurs, *inter alia*, when the Class A members notify the Class B member of a demand for appraisal of the Property, and each class of members then has fifteen (15) days to appoint an MAI appraiser.

19.     Under the regime of Section 7.5 of the Operating Agreement, an appraisal is then made by examining the appraisals of the individuals appointed by each class of membership and, if need be, having a third appraiser – mutually selected – undertake an additional appraisal.

20.     Following an appraisal triggered by Section 7.7 of the Operating Agreement, if the appraised value of the Property is found to be less than the monies thus far invested by the Class A members, the Class A members may cause 6789 Goldsboro to redeem the Class B member's interests in exchange for previous consideration.

4

Appx. 0461

**General Allegations: Appraisal**

21.     The governmental approvals requisite to subdivide the Property into at least nineteen (19) townhouse dwellings were not obtained by July 18, 2016 and, further, have not been obtained as of the date of filing of this Complaint.

22.     On August 23, 2017, the Class A members notified Serv Trust of their election to have the Property appraised for purposes of determining if the entity may redeem the interest of Serv Trust.

23.     Specifically, notice was sent by undersigned counsel, on behalf of the Class A members (the Plaintiffs herein), to Serv Trust, via certified mail, return receipt requested, at the address indicated in the Operating Agreement (the "Appraisal Election").

24.     The Appraisal Election was delivered on August 24, 2017.

25.     By electronic mailing dated September 13, 2017, Serv Trust acknowledged its receipt of the Appraisal Election but did not appoint an appraiser pursuant to the Operating Agreement.

26.     Pursuant to the Operating Agreement, the last day for Serv Trust to appoint an appraiser was September 11, 2017.

27.     The Plaintiffs did not receive the appointment of an appraiser from Serv Trust through any of the means specified in the Operating Agreement (nor through any other medium) in a timely (or even untimely) manner.

28.     The Plaintiffs have had the Property appraised by their designated appraiser, and are in receipt of a report indicating its market value – at the time of the subject appraisal – to be between One Million Dollars and No Cents ($1,000,000.00) and One Million Three Hundred Twenty Five Thousand Dollars and No Cents ($1,325,000.00) (the "Class A Appraisal").

5

29. The Class A members' investment in 6789 Goldsboro, as of the time of the Class A Appraisal, exceeds Three Million Five Hundred Thousand Dollars and No Cents ($3,500,000.00) (the "Class A Investment").

## General Allegations: Bankruptcy

30. The relief sought herein was originally pursued in the Circuit Court for Montgomery County, Maryland (the "State Court").

31. As part of the litigation in the State Court, the Plaintiffs also sought a declaration that Serv Trust is the alter ego of Mr. Myers.

32. Notwithstanding myriad delays occasioned by Mr. Myers' gamesmanship (including an effort to remove the State Court suit to a bankruptcy court in Florida on the last business day before trial), the State Court claim to declare Serv Trust to be the alter ego of Mr. Myers was finally tried to the bench in January 2023.

33. Following trial, the State Court ruled in favor of the Plaintiffs, adjudicating, *inter alia*, "Serv Trust is a disregarded entity, being the alter ego of Mr. Myers" and "Serv Trust is, and as of November 18, 2015 was, the alter ego of Gregory B. Myers."

34. The Trustee was a nominal defendant in the State Court litigation and was represented at trial.

35. With Serv Trust being declared the alter ego of Mr. Myers, and the claim concerning the redemption of Serv Trust's interests in 6789 Goldsboro accordingly being a claim against Mr. Myers' bankruptcy estate, the State Court ordered, *inter alia*, "all further proceedings in this case are stayed pursuant to the provisions of Section 362 of Title 11 of the United States Code, with all such proceedings constituting proceedings within the scope of those set forth in Section 157(b) of Title 28 of the United States Code."

Appx. 0463

36.     By agreement of the Plaintiffs and the Trustee, and consistent with an order of this Honorable Court approving the subject agreement, the litigation is thusly now brought in this Honorable Court, so the case may appropriately proceed.

37.     Pursuant to the aforementioned order of this Honorable Court, the parties hereto have entered into settlement negotiations over the past several weeks, albeit to no avail as of present; for the avoidance of doubt, the filing of this Complaint is not intended to stymie or otherwise interfere with those negotiations but, rather, is undertaken solely to protect and preserve the litigation rights of the Plaintiffs.

**Count One**
**Declaratory Judgment: Redemption of Interests**

38.     The Plaintiffs repeat and re-allege each and every foregoing paragraph of this Complaint, as though fully set forth herein.

39.     There does now exist an actual controversy between the parties hereto, concerning their respective rights under the Operating Agreement and the extent, *vel non*, of their legal relations.

40.     The Plaintiffs maintain that the interests of Serv Trust, in 6789 Goldsboro, have been redeemed pursuant to the allowances of the Operating Agreement.

41.     Specifically, Serv Trust failed to timely designate an alternative appraiser for purposes of appraising the Property, let alone procure an appraisal that values the Property at a sum in excess of the Class A Investment.

42.     Specifically, the Class A Appraisal reveals the Property to have a value well below that of the Class A Investment.

43.     Specifically, under the Operating Agreement, the Plaintiffs are entitled to have 6789 Goldsboro redeem the interest of Serv Trust, without any further consideration, where the

7

value of the Property in its present state is less than the sum of the Class A Investment.

44.     The Plaintiffs thusly maintain the interests of Serv Trust, in 6789 Goldsboro, have been fully redeemed, and the Trustee has no right, title, or interest in the affairs, equity, or assets of 6789 Goldsboro.

WHEREFORE, the Plaintiffs respectfully pray this Honorable Court (i) declare Serv Trust to have waived its right to appoint an alternative appraiser under the Operating Agreement by not doing so on or before September 11, 2017; (ii) declare the interest of Serv Trust, in 6789 Goldsboro, to have been fully redeemed; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

THE VERSTANDIG LAW FIRM, LLC,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
1452 W. Horizon Ridge Pkwy., #665
Henderson, Nevada 89012
Phone: 301-444-4600
E-mail: mac@mbvesq.com
*Counsel for the Plaintiffs*

8

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re:<br>GREGORY B. MYERS,<br><br>    Debtor.<br>_____<br><br>BRIAN KING, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>ROGER SCHLOSSBERG, TRUSTEE<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 15-26033-MCR<br>         (Chapter 7)<br><br><br><br><br><br>   Adv. No.:  24-00007 |

## DEFENDANT'S ANSWER TO COMPLAINT

Defendant, Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers (the "Trustee"), by his undersigned counsel, pursuant to Fed. R. Civ. P. 12(a), which is incorporated herein by Fed. R. Bank. P. 7012, hereby submits his *Answer* to the *Complaint for Declaratory Relief* ("the *Complaint*") filed herein by Plaintiffs, Brian King, Cristina King, and the Cristina and Brian King Children's Trust (collectively, the "King Parties" or "Plaintiffs"), and states as follows in response to the correspondingly numbered paragraphs of the *Complaint*:

### Introduction

1.     The allegations in Paragraph 1 state a characterization regarding the nature of the instant action to which no response is required.

2.     The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 2, and therefore denies same.

Appx. 0466

3.      The Trustee admits that the Circuit Court for Montgomery County, Maryland has declared Serv Trust to be the alter ego of Gregory Myers. The Trustee is without knowledge as to the truth of the balance of the allegations set forth in Paragraph 3, and therefore denies same.

4.      The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 4, and therefore denies same.

5.      The Trustee admits that Serv Trust is the alter ego of Gregory Myers. The Trustee is without knowledge as to the truth of the balance of the allegations set forth in Paragraph 5, and therefore denies same.

6.      The allegations in Paragraph 6 state a legal conclusion to which no response is required. To the extent that the allegations in Paragraph 6 may be deemed to require a response, the Trustee admits that Serv Trust has been adjudicated to be the alter ego of Greogry Myers and that the Truste is a proper defendant, but denies the balance of the allegations in Paragraph 6.

Parties

7.      The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 7, and therefore denies same.

8.      The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 8, and therefore denies same.

9.      The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 9, and therefore denies same.

10.     The Trustee admits the allegations in Paragraph 10.

Jurisdiction and Venue

11.     The Trustee admits that this Court has subject matter jurisdiction over the instant matter and that the instant matter is a core bankruptcy proceeding.

12.     The Trustee admits that venue in this Court is proper.

2

General Allegations: 6789 Goldsboro LLC – Property and Operating Agreement

13.     The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 13, and therefore denies same.

14.     The Trustee admits that Serv Trust is the alter ego of Gregory Myers. The Trustee is without knowledge as to the truth of the balance of the allegations set forth in Paragraph 14, and therefore denies same.

15.     The First Amended and Restated Operating Agreement of July 18, 2013 for 6789 Goldsboro (the "Operating Agreement") is not attached to the *Complaint*. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 15, and therefore denies same.

16.     The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 16, and therefore denies same.

17.     The Operating Agreement is not attached to the *Complaint*. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 17, and therefore denies same.

18.     The Operating Agreement is not attached to the *Complaint*. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 18, and therefore denies same.

19.     The Operating Agreement is not attached to the *Complaint*. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 19, and therefore denies same.

20.     The Operating Agreement is not attached to the *Complaint*. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 20, and therefore denies same.

General Allegations: Appraisal

21.     The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 21, and therefore denies same.

22.     The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 22, and therefore denies same.

3

Appx. 0468

23. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 23, and therefore denies same.

24. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 24, and therefore denies same.

25. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 25, and therefore denies same.

26. The Operating Agreement is not attached to the *Complaint*. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 26, and therefore denies same.

27. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 27, and therefore denies same.

28. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 28, and therefore denies same.

29. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 29, and therefore denies same.

General Allegations: Bankruptcy

30. The Trustee admits the allegations in Paragraph 30.

31. The Trustee admits the allegations in Paragraph 31.

32. The Trustee admits the allegations in Paragraph 32.

33. The Trustee admits the allegations in Paragraph 33.

34. The Trustee admits the allegations in Paragraph 34.

35. The Trustee admits the allegations in Paragraph 35.

36. The Trustee admits the allegations in Paragraph 36.

37. The Trustee admits that the parties engaged in settlement negotiations in the weeks prior to the filing of the *Complaint* and that no agreement between the parties was reached as a

4

result of such pre-filing settlement negotiations. The Trustee is advised that Plaintiffs filed the instant *Complaint* in order to protect and preserve their litigation rights and not to stymie or otherwise interfere with the continuation of settlement negotiations between the parties.

Count One
Declaratory Judgment: Redemption of Interests

38. The Trustee incorporates by reference herein his responses to Paragraphs 1-37 of the *Complaint* set forth above.

39. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 39, and therefore denies same.

40. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 40, and therefore denies same.

41. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 41, and therefore denies same.

42. The Trustee is without knowledge as to the truth of the allegations set forth in Paragraph 42, and therefore denies same.

43. The allegations in Paragraph 43 state a legal conclusion to which no response is required. To the extent that the allegations in Paragraph 43 may be deemed to require a response, the Trustee is without knowledge as to the truth of said allegations, and therefore denies same.

44. The allegations in Paragraph 44 state a legal conclusion to which no response is required. To the extent that the allegations in Paragraph 44 may be deemed to require a response, the Trustee denies the allegations in Paragraph 44.

Global Denial

Except as expressly admitted, qualified, or explained above, the Trustee denies each and every allegation of the *Complaint*.

5

Appx. 0470

<u>Affirmative Defenses</u>

1.      The *Complaint*, in whole or in part, fails to state a claim upon which relief can be granted.

2.      The Trustee reserves the right to amend this *Answer* to assert any and all affirmative defenses which may become known to it through discovery.

WHEREFORE, the Trustee prays for relief as follows:

A.      Dismiss Plaintiff's *Complaint*; and

B.      Award such other and further relief as the Court may deem just and proper.

Respectfully submitted,

SCHLOSSBERG | MASTRO

By:____*/s/ Frank J. Mastro*_____
        Frank J. Mastro #24679
        P.O. Box 2067
        Hagerstown, MD 21742
        (301) 739-8610
        fmastro@schlosslaw.com
        *Attorneys for Defendant,*
        *Roger Schlossberg, Trustee*

6

Appx. 0471

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the **15th** day of ***April 2024***, a copy of *Defendant's Answer*

*to Complaint* was served electronically via CM/ECF upon:

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012
mac@mbvesq.com
*Attorneys for Plaintiffs*

                                        */s/ Frank J. Mastro*
                                        Frank J. Mastro

7

Appx. 0472

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT**

|  |  |
|---|---|
| In re:<br><br>GREGORY B. MYERS,<br><br>     Debtor. | Case Number:  15-26033-MCR<br>Chapter 7 |
| BRIAN KING, *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>ROGER SCHLOSSBERG, TRUSTEE,<br><br>     Defendant. | Adversary Number:  24-00007-MCR |

**JOINT RULE 26(f) REPORT**

Plaintiffs, Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust, and Defendant, Roger Schlossberg, in his capacity as the Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers, (collectively, the "Parties"), by their respective undersigned counsel, hereby submit this joint report pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, made applicable in this proceeding pursuant to Rule 7026 of the Federal Rules of Bankruptcy Procedure.  References to "Rule" in this report shall mean the identified rule in the Federal Rules of Civil Procedure unless otherwise stated.

INFORMATION SUBMITTED BY PARTIES

Conference of the Parties.  The Parties conferred on April 15, 2024 as required by Rule 26(f).

Appx. 0473

Requested Deadlines.  The Parties request that the following deadlines be included in the Scheduling Order to be entered by the Court:

    a.    Deadline to complete all discovery: within 180 days of entry of a Scheduling Order by the Court;

    b.    Deadline to make disclosures required by Rule 26(a)(2) and to exchange expert reports, if any:  within 120 days of entry of a Scheduling Order by the Court; and

    c.    Deadline to file and serve dispositive motions:  within 210 days of entry of a Scheduling Order by the Court.

Estimated Length of Trial.  The Parties estimate that the time required to try this case will be two (2) days.

## STIPULATIONS OF THE PARTIES

Changes to Rule 26(f).  Any changes to the timing, form or requirement for disclosures under Rule 26 are set forth in this Joint Rule 26(f) Report.

Discovery, in General.  The subjects on which discovery may be needed are set forth in the allegations of the complaint, any counterclaim and any crossclaim filed in this adversary proceeding.  Discovery will not be conducted in phases or otherwise be limited to or focused on particular issues.

Initial Disclosures.  The Parties will serve all disclosures required by Rule 26(a)(1) within the time set forth in Rule 26(a)(1)(C) and (D).

Supplementation of Discovery Responses.  The Parties will supplement their discovery responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

Disclosure or Discovery of Electronically Stored Information.  The Parties have considered electronically stored information ("ESI") in this case, the nature of the claims, the amount in controversy, the relative ability of the Parties to conduct discovery of ESI, the apparent expenses to the Parties, the time that has passed since the time period apparently in controversy, and other

-2-

Appx. 0474

relevant factors.  Disclosure or discovery of ESI will be handled as follows:  (a) at this time no forensic clones of any hard drives or other electronic storage media are required; (b) the Parties may continue to use their computers and electronic storage media in the ordinary course of their business and personal financial matters; (c) the Parties shall not knowingly or intentionally destroy any ESI relevant to this case from the time period January 1, 2010 through the conclusion of this case; the Parties recognize that their searches for documents for this litigation may reset dates and meta-data; and the Parties need neither change nor ascertain their existing computer ESI deletion or overwriting programs, but may not change them without confirming that the change will not cause more deletions or overwriting than the current programs; (d) if any forensic clones are requested hereafter, the cost of such cloning shall be borne by the Party making the request; and (e) ESI shall be searched by the Party responding to discovery in accordance with the discovery rules and copies of responsive documents shall be produced in paper copy, TIFF, PDF format, or such other format as the Parties hereafter agree.

Claims of Privilege or Protection as Trial-Preparation Materials.  At present, the Parties do not anticipate any issues regarding claims of privilege or protection as trial-preparation materials. The Parties have considered Rule 502 of the Federal Rules of Evidence and agree that the disclosure of any attorney-client, work product or other privileged information shall be deemed inadvertent and not a waiver of any privilege and that such privileged information shall not be used for any purpose.

Limitations on Discovery.  The Parties do not seek to make changes to the limitations on discovery imposed under the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules.

Appx. 0475

Other Orders for the Court to Issue.  The Parties request that the Court issue a Scheduling Order consistent with the terms set forth in this Joint Rule 26(f) Report.  At present, the Parties do not seek entry of any other orders under Rule 26(c) or under Rule 16(b) and (c).

Exhibits and Witnesses.  Each Party understands that (i) it must electronically pre-file its witness list, exhibit list and all exhibits (except those to be used solely for rebuttal purposes) on the Court's docket using CM/ECF as set forth below and in Local Bankruptcy Rule 7016-1(c); (ii) any exhibit that is not pre-filed may be excluded from evidence; (iii) it must attach the exhibits to the exhibit list with each exhibit appearing as a separate attachment and each exhibit labelled and numbered; (iv) it must furnish a complete copy of the witness list, exhibit list and all exhibits to each other party to the adversary proceeding at the time they are filed; and (v) it must furnish a complete copy of the exhibit list and exhibits to anyone the party intends to call as a witness to testify.

Use of Deposition Transcripts.  A Party's pre-filed exhibits shall include any portion of a deposition transcript that will be offered by the Party in its case in chief, and the Party must identify the witness, date and line and page references in the deposition transcript that the Party intends to offer.  Any other Party must make a counter-designation of other parts of the deposition transcript to be offered, as set forth in Fed. R. Civ. P. 32(a)(6), within the time set forth in the Scheduling Order.

Objections to Exhibits and Witnesses.  If the opposing Party does not file timely written objections to pre-filed exhibits and witnesses by the time specified in the Scheduling Order, the exhibits may be admitted into evidence if offered and the witnesses may be allowed to testify if called.

Appx. 0476

Pretrial Statements. If this proceeding cannot be resolved on dispositive motions or by agreement of the Parties, each Party will file a pretrial statement within the time set forth in the Scheduling Order. The pretrial statement shall comply with Local Bankruptcy Rule 7016-1(b).

Settlement. The Parties will continue to discuss settlement and to engage in settlement discussions in good faith.

Consent to Entry of Final Orders and Judgments by Bankruptcy Judge. The Parties consent to entry of final orders and judgments by the presiding bankruptcy judge on all claims, core matters and non-core matters in this adversary proceeding.

Conflicts among the Local Bankruptcy Rules, this Joint Rule 26(f) Report and the Court's Scheduling Order. To the extent there is a conflict among the Local Bankruptcy Rules, the terms of this Joint Rule 26(f) Report and any Scheduling Order issued by the Court, the terms of the Scheduling Order shall govern.

Dated: April 15, 2024.

|  |  |
|---|---|
| _/s/ Maurice B. VerStandig_ | _/s/ Frank J. Mastro_ |
| Maurice B. VerStandig #18071 | Frank J. Mastro #24683 |
| THE VERSTANDIG LAW FIRM, LLC | SCHLOSSBERG \| MASTRO |
| 1452 W. Horizon Ridge Pkwy., Suite 665 | P.O. Box 2067 |
| Henderson, NV 89012 | Hagerstown, MD 21742 |
| (301) 444-4600 | (301) 739-8610 |
| mac@mvbesq.com | fmastro@schlosslaw.com |
| _Counsel for Plaintiffs_ | _Counsel for Defendant_ |

-5-

Appx. 0477

-6-

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on April 19, 2024, I served a copy of the foregoing Joint Rule 26(f) Report on the following by CM/ECF:

Maurice B. VerStandig, Esquire
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012
mac@mvbesq.com
*Counsel for Plaintiffs*

*/s/ Frank J. Mastro*
Frank J. Mastro

-6-

Appx. 0478