Entered: April 26th, 2024
Signed: April 25th, 2024

**SO ORDERED**

MARIA ELLENA CHAVEZ-RUARK
U.S. BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT**

| | |
|---|---|
| In re: | |
| GREGORY B. MYERS, | Case Number:  15-26033-MCR |
| Debtor. | Chapter 7 |
| | |
| BRIAN KING, et al., | |
| Plaintiffs, | |
| v. | Adversary Number:  24-00007-MCR |
| ROGER SCHLOSSBERG, TRUSTEE, | |
| Defendant. | |

**SCHEDULING ORDER**

For good cause appearing, IT IS ORDERED:

1.    Under Local Bankruptcy Rule 7012-1, all parties have consented, or are deemed to have consented, to entry of final orders or judgments by the presiding bankruptcy judge.

Appx. 0479

2.      The parties shall comply with the initial disclosure requirements set forth in Fed. R. Civ. P. 26(a)(1).

3.      Expert witnesses and reports shall be disclosed as set forth in Fed. R. Civ. P. 26(a)(2) by August 30, 2024.

4.      Discovery shall be completed by October 31, 2024.

5.      Dispositive motions shall be filed and served by January 31, 2025.

6.      A party must electronically pre-file its witness list, exhibit list, and all exhibits (except those to be used solely for rebuttal purposes) on the Court's docket using CM/ECF by March 31, 2025 as set forth herein and in Local Bankruptcy Rule 7016-1(c).  Each party shall attach the exhibits to the exhibit list with each exhibit appearing as a separate attachment and each exhibit labelled and numbered.  To the extent there is a conflict between this Order and Local Bankruptcy Rule 7016-1(c), this Order shall govern.  Any exhibit that is not pre-filed as required by this Order may be excluded from evidence.  The party must furnish a complete copy of the witness list, exhibit list, and all exhibits to each other party to the adversary proceeding at the time they are filed.

7.      A party's pre-filed exhibits shall include any portion of a deposition transcript that will be offered by the party in its case in chief, and the party must identify the witness, date, and line and page references in the deposition transcript that the party intends to offer.  Any other party must make a counter-designation of other parts of the deposition transcript to be offered, as set forth in Fed. R. Civ. P. 32(a)(6), by April 14, 2025.

8.      The deadline to object to exhibits and witnesses is April 29, 2025.  Exhibits not timely objected to in writing may be admitted if offered, and witnesses not timely objected to in writing may be allowed to testify if called.

Appx. 0480

9.      Each party must file a pretrial statement, as set forth in Local Bankruptcy 7016-1(b), by April 29, 2025.

10.     A final pretrial conference shall be held on May 7, 2025 at 10:00 a.m.  Unless the parties are notified otherwise, the final pretrial conference will be conducted by videoconference.

11.     The parties estimated that the length of the trial will be two (2) days.

12.     Trial is scheduled for May 12-13, 2025 at 10:00 a.m., 6500 Cherrywood Lane, Courtroom 3C, Greenbelt, MD 20770.

13.     Failure to comply with this Order may result in sanctions being imposed by the Court on the offending party, including but not limited to dismissal of the action.

14.     All parties are advised to review carefully Local Bankruptcy Rule 9037-1 concerning their obligations to limit the introduction of private information and to review transcripts to redact private information.

15.     The parties shall read, be familiar with, and comply with the Court's Protocol for In-Person Hearings (https://www.mdb.uscourts.gov/judges-info/judge/maria-ellena-chavez-ruark).

cc:     All parties
        All counsel of record

**END OF ORDER**

Appx. 0481

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re:<br>GREGORY B. MYERS,<br><br>Debtor. | )<br>) Case No. 15-26033-MCR<br>)        (Chapter 7)<br>)<br>) |
| BRIAN KING, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROGER SCHLOSSBERG, TRUSTEE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Adv. No.:  24-00007<br>)<br>)<br>)<br>)<br>) |

**TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE
AND SETTLEMENT WITH KING PLAINTIFFS**

TO THE HONORABLE MARIA ELLENA CHAVEZ-RUARK, UNITED STATES
BANKRUPTCY JUDGE:

Defendant, Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of Gregory B.

Myers (the "Trustee"), by his undersigned counsel, pursuant to Fed. R. Bank. P. 9019, and in

support of the instant *Motion for Approval of Proposed Compromise and Settlement with King*

*Plaintiffs* hereby respectfully represents as follows:

1.      As is set forth in the *Notice of Proposed Compromise and Settlement with King*

*Plaintiffs* filed contemporaneously herewith (the "*Notice*"), the Trustee proposes to enter into a

compromise and settlement of a pending dispute with the parties named therein.  The background

of said dispute and the specific terms and conditions of said proposed compromise and settlement

are more particularly set forth in said *Notice*.  A copy of said *Notice* is attached hereto and

incorporated by reference herein as ***Exhibit 1***.

Appx. 0482

2.    Pursuant to the provisions of Bankruptcy Rules 9019 and 2002, the *Notice* has been forwarded to all parties-in-interest herein as appears by reference to the *Certificate of Service* also filed contemporaneously herewith.

3.    If said proposed compromise and settlement is approved by this Court, the parties respectfully submit that this Court should entertain and enter an *Order* in substantially that form attached to the *Notice*.

4.    The parties believe that the above-described proposed compromise and settlement is in the best interests of all parties-in-interest herein and should be approved by the Court.

WHEREFORE, the Trustee respectfully requests that the proposed compromise and settlement be APPROVED.

Respectfully submitted,

SCHLOSSBERG | MASTRO

By:    */s/ Frank J. Mastro*
          Frank J. Mastro #24679
          Roger Schlossberg
          P.O. Box 2067
          Hagerstown, MD 21742
          (301) 739-8610
          fmastro@schlosslaw.com
          *Attorneys for Defendant,*
          *Roger Schlossberg, Trustee*

2

Appx. 0483

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the **30th** day of **December 2024**, a copy of the *Trustee's*

*Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs* and proposed

Order was served electronically via CM/ECF upon:

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012
mac@mbvesq.com
*Attorneys for Plaintiffs*

                                         */s/ Frank J. Mastro*
                                         Frank J. Mastro

Appx. 0484

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.: 24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NOTICE OF TRUSTEE'S PROPOSED COMPROMISE
AND SETTLEMENT WITH KING PLAINTIFFS**

TO ALL PARTIES IN INTEREST:

PLEASE TAKE NOTE that Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy

Estate of Gregory B. Myers (the "Trustee"), and the Defendant in the above-captioned adversary

proceeding, contemporaneously has filed his *Motion for Approval of Proposed Compromise and*

*Settlement with King Plaintiffs* (the "*Settlement Motion*") seeking authority to compromise and

settle the following described matter upon those terms and conditions hereinafter noted.

**Background**

Gregory B. Myers ("the Debtor" or "Mr. Myers") filed a voluntary Chapter 11 bankruptcy

petition on November 18, 2015 ("the Petition Date"). The Debtor remained in possession of the

estate's assets and managed its financial affairs until February 22, 2017, when the case was

Appx. 0485

converted to a proceeding under Chapter 7 of the Bankruptcy Code . The Trustee thereafter was duly appointed as the Chapter 7 trustee herein.

In 2017, the Trustee was named as a nominal defendant in the matter of *Brian King, et al. v. Serv Trust, et al*., Case No. 439677-V (the "King Case") then commenced in the Circuit Court for Montgomery County, Maryland ("the State Court");which case subsequently was consolidated with the related matter of *6789 Goldsboro LLC v. Serv Trust, et al*., Case No. 451611-V (the "Goldsboro Case"; collectively, the King Case and the Goldsboro Case are hereafter referred to as "the State Court Cases"). Each of the State Court Cases concerns claims against Serv Trust, with the Goldsboro Case also concerning a claim against the Debtor.

In the King Case, which was designated the "lead" case in the State Court Cases, Brian King, Cristina King, and the Cristina and Brian King Children's Trust (the "King Plaintiffs") sought declaratory judgments that Serv Trust, a Maryland statutory trust, is the alter ego of the Debtor and, further, that Serv Trust's interest in 6789 Goldsboro LLC ("Goldsboro") has been redeemed by Goldsboro in accordance with the entity's governing documents.

In the Goldsboro Case, Goldsboro sued Serv Trust and the Debtor for the alleged breach of a promissory note and guaranty, respectively, and sought an award of monetary damages in excess of $1 million, including accrued interest.[1] The Goldsboro Case originally was brought as

---

[1] The factual milieu out of which the Goldsboro Case arose included the request of the Debtor, in his then-capacity as a co-trustee of Serv Trust, that Goldsboro make pre-petition loans totaling $635,000 to Serv Trust, which then forwarded the funds to the Debtor and his wife. On May 18, 2015, in connection with the foregoing loans, Serv Trust executed a Promissory Note in favor of Goldsboro while the Debtor executed a Guaranty Agreement in which he guaranteed Serv Trust's repayment of the loans made by Goldsboro. The Debtor, however, did not list Goldsboro as an unsecured creditor when he filed his bankruptcy petition six months later; which omission was one of the grounds upon which this Court denied a discharge to the Debtor under 11 U.S.C. § 727(a)(4)(A). *See In re Myers*, 2018 WL 4701387, *8 (Bankr. D. Md. Sept. 28, 2018) ("It is not believable that [the Debtor] simply forgot to include his largest unsecured creditor in the first several versions of his schedules when he had executed a personal guarantee in favor of that creditor six months prior to filing for bankruptcy and was requesting advances from the creditor up to and after filing his petition.").

2

an adversary proceeding in this Court, *see 6789 Goldsboro LLC v. Myers, et al.*, Adv. No. 18-407, but this Court entered an *Order of Abstention* on January 30, 2019 which ultimately led to the matter being refiled in State Court.

A trial in the consolidated State Court Cases was scheduled to commence on Tuesday, January 3, 2023. However, at approximately 4:30 p.m. on Friday, December 30, 2022 – just minutes before the close of business on the last business day before trial – the Debtor filed a notice of removal purporting to remove the action to the U.S. Bankruptcy Court for the Middle District of Florida, where the Debtor's later-filed and separate Chapter 13 case was pending at the time.[2] The King Plaintiffs immediately filed an emergency motion to remand, noting the various infirmities and inherent bad faith associated with Debtor's attempted removal at the eleventh-hour. On the morning of January 3, 2023, the Florida bankruptcy court remanded the case back to the Circuit Court for Montgomery County in time to allow for the trial of the State Court Cases to proceed as scheduled.

Following the conclusion of the trial on January 3, 2023 – at which evidence was presented showing that, *inter alia*, the Debtor and his wife received the extraordinary sum of $1,217,675.00 out of the $1,371,271.58 distributed by Serv Trust between March 10, 2011 and January 6, 2018 – or more than 88% thereof – the State Court adjudicated Serv Trust to be the alter ego of the Debtor as of and subsequent to the Petition Date. In a subsequent written order entered on January 12, 2023 ("the *Alter Ego Order*"), the State Court memorialized its ruling, holding, *inter alia*, that

---

[2] The Debtor's Florida bankruptcy case ultimately was dismissed on January 20, 2023. On that day, the U.S. Bankruptcy Court for the Middle District of Florida *sua sponte* entered an order which denied confirmation of the Debtor's proposed Chapter 13 plan, dismissed his Chapter 13 case with prejudice, and imposed a two-year bar on refiling, following the court's determination that Myers filed his Chapter 13 case in bad faith (as a tactic to delay and frustrate his creditors rather than as a means to repay them). *See In re Myers*, 2023 WL 350183 (Bankr. M.D. Fla. Jan. 20, 2023).

Appx. 0487

"Serv Trust is, and as of November 18, 2015 was, the alter ego of Gregory B. Myers" and that "Serv Trust is a disregarded entity, being the alter ego of Mr. Myers."

In its ruling, the State Court stayed all further proceedings in the State Court Cases as its determination that Serv Trust is the alter ego of the Debtor necessarily rendered the automatic stay of 11 U.S.C. § 362(a) effective as to all remaining causes of action therein. The State Court reasoned that, in light of its alter ego ruling, all claims against Serv Trust must be construed as claims against the Debtor's bankruptcy estate ("the Estate"). *Id*. As a result, the King Plaintiffs' remaining claim against Serv Trust, which seeks a declaration regarding the alleged redemption of Serv Trust's interest in Goldsboro (the "Redemption Claim"), was stayed by operation of 11 U.S.C. § 362(a) (as were Goldsboro's separate claim against Serv Trust in the Goldsboro Case along with its previously stayed claim therein against the Debtor).

Further, as a matter of law, immediately upon entry of the *Alter Ego Order*, Serv Trust and all of its assets became property of the Estate, pursuant to 11 U.S.C. § 541(a), subject to administration by the Trustee as the sole legal representative of the Estate pursuant to 11 U.S.C. § 323. As the *Alter Ego Order* has not been stayed and remains in full force and effect, the Trustee is now the sole person empowered to defend or otherwise act to deal with the remaining claims against Serv Trust in the State Court Cases, which by operation of law are now claims against the Estate.

On February 7, 2023, the Trustee filed in this Court a *Motion for Approval of Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* (the "*Settlement Procedures Motion*"), [Dkt. #1005], which sought approval of a procedural resolution that would enable the litigation of the Redemption Claim in this Court. The proposed settlement consisted of the following elements:

4

Appx. 0488

(1)    The King Plaintiffs and the Trustee would jointly file a stipulation in the State Court Cases pursuant to which the King Plaintiffs would dismiss without prejudice the Redemption Claim against Serv Trust;

(2)    In consideration of the foregoing dismissal, the Trustee would agree to toll the statute(s) of limitation applicable to the Redemption Claim *nunc pro tunc* to September 14, 2017, the date the King Case was filed in the State Court; and

(3)    The King Plaintiffs and the Trustee would endeavor in good faith to negotiate a resolution to the Redemption Claim and, if negotiations were not successful, the King Plaintiffs would refile the Redemption Claim as an adversary proceeding in this Court within thirty (30) days after the entry of an order approving the settlement.

On February 28, 2023, the Debtor filed a motion to dismiss or strike the Trustee's *Settlement Procedure Motion* ("the *Motion to Strike*"). [Dkt. #1010]. On March 14, 2023, the Trustee filed an opposition to the Debtor's *Motion to Strike*. [Dkt. #1013]. On December 11, 2023, this Court entered a detailed memorandum opinion and *Order* granting the Trustee's *Settlement Procedures Motion* and denying the Debtor's *Motion to Strike*. [Dkt. #1029].

Subsequent settlement negotiations between the parties failed to yield a settlement and, on January 11, 2024, the King Plaintiffs re-filed the Redemption Claim as an adversary proceeding in this Court ('the Adversary Case"). [Adv. Dkt. #1]. The Trustee filed an answer to the adversary complaint on April 15, 2024, [Adv. Dkt. #13], and the Court subsequently issued a *Scheduling Order* on April 26, 2024. [Adv. Dkt. #15].[3]

As the Adversary Case progressed, the King Plaintiffs and the Trustee resumed settlement negotiations. This latest round of negotiations ultimately proved to be fruitful as the parties now have agreed to the following compromise and settlement, subject to notice to creditors and approval by the Court, on the terms and conditions described below.

---

[3] On May 7, 2024, the King Plaintiffs and the Trustee filed a stipulation in the State Court Cases dismissing the Redemption Claim without prejudice.

Appx. 0489

**Proposed Compromise and Settlement**

The Trustee and the King Plaintiffs have agreed as follows:

(1) The King Plaintiffs will pay to the Trustee, for the benefit of the Estate, the sum of $150,000.00 (the "Settlement Payment") upon Court approval of the settlement, in order to redeem the entirety of Serv Trust's interest in Goldsboro and settle the Redemption Claim in the Adversary Case;

(2) Upon successful negotiation of the Settlement Payment by the Trustee, the parties will file a Stipulation of Dismissal in the Adversary Case dismissing all claims therein with prejudice; and

(3) The King Plaintiffs also will reimburse the Trustee for all reasonable legal fees and expenses that the Trustee incurs in connection with the litigation of any appeals taken by any party in the event that the *Settlement Motion* is granted by this Court (the "Appellate Legal Fees").

**Trustee's Analysis and Recommendation**

For the reasons set forth below, the Trustee, in the sound exercise of his judgment, believes that the above-proposed compromise and settlement is in the best interest of the Estate and all interested parties herein and should be approved.

**A.      Applicable Legal Standards.**

Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve a compromise or settlement brought before it on motion by the trustee. Fed. R. Civ. P. 9019(a). In order to approve a settlement, a court must consider the following factors: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *In re Essex Constr., LLC*, 575 B.R. 648, 652-53 (Bankr. D. Md. 2017); *see also In re Bowman*, 181 B.R. 836, 843 (Bankr. D. Md. 1995).

Appx. 0490

It is not necessary for a bankruptcy court to conduct a "mini trial" or conclusively determine claims subject to a compromise. *See In re New Concept Housing, Inc.*, 951 F.2d 932, 939 (8th Cir. 1991); *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802 (S.D.N.Y. 1998). Nor is it necessary for the court to find that the proposed settlement constitutes the best result obtainable. *See In re Final Analysis*, *Inc.* 417 B.R. 332, 341-42 (Bankr. D. Md. 2009). Rather, the court need only canvass the issues to determine that the proposed settlement does not fall below the lowest point of reasonableness. *Id*. In doing so, the court does not substitute its judgment for that of the trustee. *See In re Bates*, 211 B.R. 338, 343 (Bankr. D. Minn. 1997). Ultimately, a bankruptcy court's decision to approve or reject settlement may be reviewed only for an abuse of discretion. *In re ASI Reactivation, Inc*., 934 F.2d 1315, 1323-24 (4th Cir. 1991).

**B.      Analysis of the King Plaintiffs' Redemption Claim in the Adversary Case.**

The Trustee has thoroughly reviewed the available evidence related to the Redemption Claim asserted by the King Plaintiffs in the Adversary Case and evaluated the potential merits of the King Plaintiffs' request for a declaration that Serv Trust's interest in Goldsboro previously was fully redeemed by the King Plaintiffs. The Trustee also has evaluated the potential defenses available to him, including those defenses and arguments that previously were asserted by Serv Trust during the litigation of the State Court Cases.

It is the Trustee's informed opinion that he has a dim likelihood of prevailing on the merits should the Redemption Claim be tried in the Adversary Case. Thus, if the King Plaintiffs are successful in the Adversary Case, Serv Trust's interest in Goldsboro will be declared to have been redeemed, rendering this asset worthless to the Estate. The proposed compromise and settlement, by contrast, allows the Trustee to obtain a significant recovery for the Estate while limiting the Estate's exposure to the further expenditure of attorney's fees and litigation costs. A detailed explication of the Trustee's analysis is provided below.

Appx. 0491

1.        **Relevant Background Regarding the Redemption Claim.**

In or about late 2012, the Debtor discovered a parcel of real property located at 6789 Goldsboro Road in Bethesda, Maryland (the "Property") that he thought would be suitable for development.[4] On the recommendation of an acquaintance, the Debtor approached Mr. King about financing the acquisition of the Property. At that time, the Debtor was heavily indebted to a myriad of creditors and facing the clear prospect of bankruptcy. He thus sought to conceal his involvement with, and investment in, the Property by acting through Serv Trust, his alter ego.

The Debtor, acting through Serv Trust, and the King Plaintiffs then formed the Goldsboro entity. Goldsboro's Operating Agreement provides for the King Plaintiffs, as Class A members of the LLC, to put up almost all of the money needed to acquire the Property and fund its development while affording Serv Trust (*i.e.*, the Debtor), the sole Class B member of the LLC, a period of three (3) years in which to make the project profitable or risk having its "sweat equity" redeemed by the King Plaintiffs. Goldsboro ultimately purchased the Property on July 18, 2013 for the price of $1.35 million.

Goldsboro's Operating Agreement provides that if all governmental approvals needed to subdivide the Property into at least nineteen (19) townhouse dwellings are not obtained by July 18, 2016, and the Class A members of Goldsboro do not elect to sell the Property, the Class A members may have the Property appraised in accordance with the terms of the Operating

---

[4] 6789 Goldsboro Road is a 5.23-acre parcel in Bethesda near MacArthur Boulevard and Glen Echo Park. The parcel is perhaps best known for its white, ranch-style mansion that was built in 1935 and was the former residence of Hollywood starlet, Ilona Massey, and her husband, Air Force Maj. Gen. Douglas Dawson, a prominent aide to President Harry S. Truman. *See 19 Townhouses May Replace Bethesda Home of Hungarian Star*, WTOP News (Sept. 19, 2014) (available at https://wtop.com/news/2014/09/19-townhouses-may-replace-bethesda-home-of-hungarian-star/).

Appx. 0492

Agreement.[5]  If the appraised value of the Property is found to be less than the monies invested by the Class A members, the Class A members may cause Goldsboro to redeem the Class B member's interests in consideration of the company's prior distributions or other payments to the Class B member.

Unfortunately for Goldsboro, the necessary government approvals to permit the development of 19 townhomes on the Property were not obtained by July 18, 2016, or at any time thereafter. The Debtor, meanwhile, had become more cash-strapped as the project progressed, leading him to request that Mr. King contribute additional funds to Goldsboro which could then be loaned to Serv Trust and, in turn, to the Debtor, personally, in order to help him defray his ongoing personal expenses. Mr. King agreed and authorized Goldsboro to loan several hundred thousand dollars to the Debtor/Serv Trust. *See* footnote 1, *supra*.

In September of 2016, the King Plaintiffs offered to purchase Serv Trust's Class B shares for the sum of $2 million less repayment of the outstanding loan obligations Serv Trust owed to Goldsboro (for the loans received by Serv Trust for the Debtor's personal benefit). The King Plaintiffs' offer was memorialized in a Memorandum of Understanding ("MOU"), which required: (i) that the offer be accepted by September 12, 2016; and, (ii) if accepted, that closing occur by not later than October 7, 2016. Serv Trust, however, did not accept the MOU by September 12, 2016 and closing did not occur by October 7, 2016.

Several months later, in January 2017, after government officials had denied Serv Trust's bid to develop 19 townhouses on the Property, the Debtor emailed a copy of an executed MOU to

---

[5] The Operating Agreement provides that an appraisal of the Property occurs, *inter alia*, when the Class A members notify the Class B member of a demand for appraisal of the Property. Each class of members then has fifteen (15) days to appoint an MAI appraiser. If the two selected appraisers cannot agree on the value of the Property, then they shall appoint a third appraiser to undertake an additional appraisal to determine the value of the Property.

Appx. 0493

Mr. King and claimed that Serv Trust had timely accepted the buy-out offer. Mr. King rejected the belated tender of an executed MOU and, soon afterward, terminated the Debtor's role as manager of Goldsboro.

The King Plaintiffs then undertook to have the Property appraised. The appraisal obtained by the King Plaintiffs valued the Property as being worth between $1,000,000 and $1,325,000, which was far less than the approximately $3 million that the King Plaintiffs had invested in the project to that point in time.

On or about August 23, 2017, the King Plaintiffs formally notified Serv Trust of their election to have the Property appraised for purposes of determining the redemption value of Serv Trust's interest in Goldsboro and appointed an appraiser pursuant to the terms of the Operating Agreement. Serv Trust, however, did not respond as required under the Operating Agreement by appointing its own appraiser in response to the election made by the King Plaintiffs.

In the absence of a counter-appraisal by Serv Trust, and given that the appraisal obtained by the King Plaintiffs shows that the value of the Property is well-below the amount invested by the King Plaintiffs, the King Plaintiffs contend that this Court should declare that Serv Trust's interest in Goldsboro has been redeemed in consideration of prior distributions/payments to Serv Trust, pursuant to the Operating Agreement.

    **2.      Analysis of the Trustee's Potential Defenses to the Redemption Claim.**

The Trustee has concluded that the potential defenses to the Redemption Claim are not likely to be found to be meritorious.

        **a.      Whether the King Plaintiffs Properly Invoked and Followed the Appraisal Procedures in the Operating Agreement.**

Serv Trust argued in the State Court Cases that the King Plaintiffs did not properly follow the appraisal procedures set forth in the Operating Agreement because: (a) their appraisal was

10

Appx. 0494

dated six (6) days prior to the date they formally notified Serv Trust of their election to have the Property appraised; and (b) Serv Trust never appointed an appraiser. With respect to Serv Trust's first contention, the Trustee observes that there is nothing in the Operating Agreement which mandates that an appraisal must be performed *after* notice of an election is given. Rather, the Operating Agreement states that the appraisers selected by each party are to meet to determine whether they agree on the value of the Property. If they agree, the appraisers are to draft a joint report stating the value of the Property. If they disagree, the appraisers are to draft separate reports. The appraisers, however, are not precluded by the Operating Agreement from basing their opinion, or their separate report, on an appraisal conducted prior to the notice of election.

As to the second contention of Serv Trust advanced in the State Court Cases to the effect that it could prevent a redemption simply by refusing to appoint an appraiser, or by declining to cooperate in the appraisal process, the Trustee notes that the same violates the common law rule obligating parties to a contract to act in good faith with respect to their dealings thereunder. Pellucidly, the actions of Serv Trust in urging that that it effectively could render the appraisal provisions of the Operating Agreement nugatory simply by ignoring them constitutes the very essence of bad faith.  The Operating Agreement afforded Serv Trust the right to appoint its own appraiser to value the Property in the event the appraisal process was invoked by the King Plaintiffs. By failing to appoint its own appraiser, Serv Trust arguably waived its right to participate in the appraisal process set forth in the Operating Agreement. *See, e.g., BarGale Indus., Inc. v. Robert Realty Co.*, 275 Md. 638, 643, 343 A.2d 529, 533 (1975) ("waiver is the intentional relinquishment of a known right… It is elementary that either party to a contract may waive any

11

Appx. 0495

of the provisions made for his benefit").[6] Without a competing appraisal to challenge the appraisal performed by the King Plaintiffs' appraiser, there effectively was no disagreement among the parties as to the value of the Property (and, thus, no need for a third appraiser to become involved in the process). Thus, any argument that the King Plaintiffs did not adhere to the appraisal procedures set forth in the Operating Agreement is unlikely to succeed.[7]

    **b.**   **Whether Serv Trust Accepted the King Plaintiffs' Buy-Out Offer in the MOU.**

  Next, any argument that Serv Trust accepted the buy-out offer memorialized in the MOU also is not likely to succeed. The MOU, by its express terms, required that the offer be accepted by September 12, 2016 and, if accepted, that closing occur by not later than October 7, 2016. Although the Debtor claimed in the State Court Cases that he timely signed the MOU on September 12, 2016 and thereafter mailed it to Mr. King, the Debtor's behavior after September 12, 2016 belies those representations. The Debtor made no effort to draft closing documents (nor did Mr. King, for that matter). There are no email communications from the Debtor acknowledging, or otherwise indicating, that the MOU was accepted (and no original, signed document was ever received by Mr. King). Rather, the email communications between the parties subsequent to Sept. 12, 2016 are focused on meetings with attorneys and advisors in connection with a possible resubmission to local authorities of Goldsboro's proposal to subdivide the Property (which would be of no concern to the Debtor if he, in fact, had timely accepted a buy-out). In any event, closing

---

[6] Unsurprisingly, the King Plaintiffs seek a declaration in the Adversary Case, that "Serv Trust waived its right to appoint an alternative appraiser under the Operating Agreement by not doing so on or before September 11, 2017."

[7] The Trustee suspects that Serv Trust chose not to appoint its own appraiser because it knew that any competent appraiser would not value the Property anywhere near $3 million invested by the King Plaintiffs, where there was no ability to subdivide the parcel in the manner sought by Goldsboro (in light of the denial of such subdivision approval by governmental authorities).

Appx. 0496

never occurred by the October 7, 2016 deadline expressed in the MOU (and there are no communications agreeing to extend the deadline).

The Trustee also notes that in order for this defense to prevail, the Trustee would have to call the Debtor as a witness at trial and the finder of fact would have to credit the Debtor's testimony against the foregoing evidence to the contrary. For the reasons discussed in greater detail below, the Debtor has no credibility as a witness and it is, therefore, extremely likely – if not certain – that this defense will fail.

      **c.      Whether the King Plaintiffs Needed to Obtain Serv Trust's Consent in Order to the Redeem Serv Trust's Interest in Goldsboro.**

Lastly, Serv Trust argued in the State Court Cases that Goldsboro could not redeem Serv Trust's interest without Serv Trust's consent.[8] This argument deserves short shrift as the Operating Agreement expressly provides, in relevant part, that "the *Class A Members shall have the unilateral right and authority (without the consent of the Class B Member*) to cause the Company to redeem the Class B Member's Membership Rights solely in consideration for the Company's previous distributions or other previous payments to the Class B Member" in the event that the appraised value of the Property is less than the Class A Members' cumulative investment.

      **3.      The Debtor's Lack of Credibility as a Witness.**

In any potential trial of the Adversary Case, the Debtor almost certainly would have to be called as a witness and, therefore, the credibility of any testimony he would give would be critically important to the Trustee's case. In light of this most critical element of any prospective trial in this cause, the Trustee has assessed the credibility of the Debtor in connection with his evaluation of the merits of the proposed compromise and settlement.

---

[8] Serv Trust suggested that the King Plaintiffs were required to call a meeting of Goldsboro's members at which the members would need to vote on whether to approve the redemption of Serv Trust's interest in Goldsboro.

Appx. 0497

The Trustee, individually and through counsel, has had the opportunity to observe the Debtor's demeanor on numerous occasions, both in court and outside of court. The Trustee has seen the Debtor address the Court and provide testimony in various contested matters and adversary proceedings over the course of this Chapter 7 case (and in the myriad of Chapter 13 cases filed by the Debtor and his spouse, Barbara Ann Kelly). The Trustee and his counsel also have had the opportunity to question the Debtor outside of court in depositions, in Rule 2004 examinations, and in § 341 examinations. The Trustee and his counsel also have reviewed transcripts of testimony the Debtor has given in other forums in other matters.

It is the Trustee's firm opinion that the Debtor is not a credible witness. The Debtor frequently is evasive when responding to questions and seldom gives a candid answer.[9] Indeed, the Debtor's penchant for giving conflicting testimony is well-documented. *See, e.g.*, *United States Trustee's Pre-Trial Statement*, Adv. No. 17-193, Dkt. #56, at p. 3 ("At the Meeting of Creditors, [the Debtor] testified that the monies he and Kelly received from Serv Trust were distributions for the benefit of their children, who are beneficiaries of Serv Trust. At his 2004 examination, the Debtor testified that the monies he and Kelly received from Serv Trust were loans, not distributions."); *Mem. Op.*, Adv. No. 17-193, Dkt. #94, at p. 21 ("Similarly, the line item for the Bethesda Property in the amount $3,860.96 included on his First Amended Schedule J conflicted with his 341 Meeting testimony that he was not making any post-petition payments on that property either.").

---

[9] This Court made similar observations when it converted the Debtor's case to Chapter 7. *See* Tr. of February 15, 2017 Hearing (Dkt. #711) at p. 301 ("It's troublesome to me that there were major omissions and major errors, and they were not brought to the foreground by the Debtor until caught… I do feel [it's] troublesome, especially because there was some obfuscation, that is refusal to answer certain questions, that might have revealed this. And that is troublesome.").

Appx. 0498

Further, this Court's previous determination "that Myers knowingly and fraudulently made false oaths in his bankruptcy case sufficient to deny him a discharge under § 727(a)(4)(A)," *see In re Myers*, 2018 WL 4701387, *8 (Bankr. D. Md. Sept. 28, 2018)," weighs heavily against the Debtor's credibility. *See also id.* at * 11 ("The numerous falsities indicate a cavalier attitude toward his schedules and a reckless disregard for the truth sufficient to deny him a discharge under § 727(a)(4)(A). His lack of candor and credibility left his creditors, the United States Trustee, and the Chapter 7 Trustee constantly playing catch up to get an understanding of his finances.").

Moreover, numerous courts, including this one, have concluded that the Debtor is a bad faith litigant which, in turn, further calls into question his trustworthiness and veracity. *See, e.g., In re Kelly*, 656 B.R. 541, 603 (Bankr. D. Md. 2023) ("Ms. Kelly filed this case as part of her and Mr. Myers' ongoing scheme to frustrate, hinder, and delay creditors and to cause creditors as much pain as possible along the way. This case is just the latest leg in a long journey designed to exploit and subvert the bankruptcy process."); *Kelly v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 2022 WL 861395, *3-4 (D. Md. Mar. 23, 2022) ("First, the Court finds that Appellants Barbara Ann Kelly and Gregory B. Myers are acting in bad faith… It is plainly clear to this Court that Appellants' appeal tactics have delayed the adjudication of these matters and have prejudiced Appellees by having to incur costs and fees in responding to these appeals."); *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 2020 WL 758151, *3, 5 (D. Md. Feb. 14, 2020) ("Myers has undoubtedly used (and abused) the judicial process to prolong proceedings in the bankruptcy matter and thus delay liquidation and distribution of Myers' assets… In this Court's view, Myers once again attempts, seemingly in bad faith, to manufacture further delay in the resolution of his claims.").

Accordingly, the Trustee believes that the Debtor is completely untrustworthy and offers no utility as a witness. As a result, the Trustee would not be materially aided by eliciting testimony

15

Appx. 0499

from the Debtor and, in fact, the Trustee's prospects at trial likely will be harmed if the Debtor is called as a witness.

**C.      Other Considerations Informing the Trustee's Analysis and Recommendation.**

Even if the Trustee were to try the Adversary Case (at considerable expense) and prevail at trial, there is no guarantee that the Trustee thereafter would be able to liquidate Serv Trust's interest in Goldsboro for more than what is being offered in this proposed settlement. As Goldsboro is a private company, there is no readily accessible market in which the Trustee can liquidate Serv Trust's interest. Further, Serv Trust's interest still would be subject to the King Plaintiffs' ability to invoke the appraisal process to force a redemption. In other words, even if, for example, the Trustee prevails on grounds that the King Plaintiffs did not properly follow the appraisal procedures in 2017, the Trustee cannot prevent the King Plaintiffs from triggering a new round of appraisals following a trial. Given that current online Zillow and Redfin valuations of the Property are roughly between $1.8 - $2.0 million, it is clear that Serv Trust's interest in Goldsboro will be at serious risk of redemption even if the Trustee is successful at trial. This risk of redemption will make it extremely difficult, if not impossible, for the Trustee to market Serv Trust's interest to potential buyers. Thus, the settlement proposed herein is very attractive to the Trustee.

Finally, the Trustee is mindful of the Debtor's propensity to litigate nearly every action that is proposed to be taken by the Trustee and to appeal (and/or to seek reconsideration of) nearly every ruling made by this Court (and by the District Court) that the Debtor perceives to be adverse to his interests.[10] As a result, the Estate has incurred an extraordinary amount of administrative

---

[10] This is not an overstatement. Since the commencement of the instant Chapter 7 case, the Debtor and his spouse, Barbara Ann Kelly, have filed twenty (20) appeals to the District Court. *See Myers v. United States Trustee*, No. 17-CV-01218; *Kelly v. United States Trustee*, No. 17-CV-01239; *Myers v. Schlossberg, et al.*, No. 17-CV-02537; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, No. 17-CV-02781; *Kelly v. Schlossberg*, No. 17-CV-03846; *Myers v. Schlossberg*, No. 17-CV-03847; *Myers, et al. v.*

Appx. 0500

expenses defending against the Debtor's multitudinous (and often frivolous) appeals – none of which have proven successful. Accordingly, the Trustee must anticipate that the Debtor will oppose this proposed settlement and will file yet another appeal if the settlement is approved. To mitigate the expense to the Estate in these circumstances, the Trustee insisted that the King Plaintiffs bear responsibility for reimbursing the Trustee for all Appellate Legal Fees incurred in the event that the proposed settlement is approved by the Court. The King Plaintiffs have agreed to this provision as part of the proposed settlement and its value to the Estate cannot be understated. This provision insures that the Estate will reap the full benefit of the $150,000.00 Settlement Payment to be made by the King Plaintiffs, as the Estate will be insulated from the cost of litigating any appeals related to the settlement.

Accordingly, in consideration of the contemplated cost to litigate the Adversary Case through a contested trial and possible appeals, the concomitant risk of adverse rulings, and the omnipresent vagaries of litigation, the Trustee, in the exercise of his business judgment and for all of the reasons expressed above, believes that the proposed compromise and settlement with the

---

*Schlossberg, et al.*, No. 18-CV-00336; *Myers v. Fitzgerald*, No. 18-CV-01417; *Myers v. Fitzgerald*, No. 18-CV-01630; *Myers, et al. v. Offit Kurman, P.A., et al.*, No. 18-CV-02536; *Myers, et al. v. Schlossberg*, No. 18-CV-03783; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, No. 19-CV-00245; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, No. 19-CV-00636; *Myers v. United States Trustee*, No. 19-CV-00637; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., et al.*, No. 19-CV-03677; *Myers v. Schlossberg*, No. 21-CV-01184; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., et al.*, No. 21-CV-01185; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., et al.*, No. 21-CV-01186; *Myers v. Specialized Loan Servicing, LLC, et al.*, No. 22-CV-00778; *Myers v. King, et al.*, No. 23-CV-03511-DLB.  In addition, Mr. Myers and/or Ms. Kelly have filed six (6) further appeals to the Court of Appeals for the Fourth Circuit. *See Myers, et al. v. Offit Kurman, P.A., et al.*, Appeal No. 18-2144; *Myers v. United States Trustee*, Appeal No. 20-1261; *Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., et al.*, Appeal No. 20-2007; *Myers, et al. v. Offit Kurman, P.A., et al.*, Appeal No. 20-2309; *Kelly, et al. v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., et al.*, Appeal Nos. 22-1378 and 22-1379 (consolidated). The foregoing list does <u>not</u> include any of the appeals filed by Mr. Myers and/or Ms. Kelly in connection with the myriad of intervening Chapter 13 cases that they have commenced in Maryland, Florida, and Delaware.

17

Appx. 0501

King Plaintiffs is in the best interests of all parties-in-interest herein and, therefore, strongly recommends that the proposed compromise and settlement be approved.

### **Manner of Objection**

Parties in interest objecting to the proposed action by the Trustee are to file such Objections in writing with the United States Bankruptcy Court, 6500 Cherrywood Lane, Suite 300, Greenbelt, Maryland 20770, by not later than twenty-one (21) days after the date of this Notice; with a copy of said Objection to be provided to the undersigned by the same date. Objections must specifically state the factual and legal grounds upon which such Objection is based. Hearings may be held before the United States Bankruptcy Court upon any such Objections as are filed, or the Court may determine the matter without a hearing. Further, the Court may conduct a hearing in its discretion regardless of whether any Objections are filed. Any party in interest filing an Objection may be required to be present at such hearing as may be held. If no Objection is filed within the period above-provided, the Court may proceed to consider the Debtor's proposed compromise and settlement as above-proposed without further notice to parties in interest. Parties in interest desiring further information should consult the Court file or communicate with the undersigned.

Date:  December 30, 2024

Respectfully submitted,

SCHLOSSBERG | MASTRO

By:___*/s/ Frank J. Mastro*_____
Frank J. Mastro #24679
Roger Schlossberg
P.O. Box 2067
Hagerstown, MD 21742
(301) 739-8610
fmastro@schlosslaw.com
*Attorneys for Defendant,*
*Roger Schlossberg, Trustee*

18

Appx. 0502

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

In re:                                                      Case No.  15-26033-MCR

GREGORY B. MYERS,                                           (Chapter 7)

     Debtor.

_____/

BRIAN KING, *et al.*,

     Plaintiffs,

v.                                                          Adv. No. 24-00007

ROGER SCHLOSSBERG, TRUSTEE,

     Defendant.

_____/

**GREGORY B. MYERS'S PRELIMINARY OBJECTION TO THE TRUSTEE'S**
**MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND SETTLEMENT**
**WITH KING PLAINTIFFS**

Gregory B. Myers ("Mr. Myers" or "Movant"), *pro se*, files his preliminary objection (the

"Objection") to the *Trustee's Motion For Approval Of Proposed Compromise And Settlement With*

*King Plaintiffs* (Doc. 17) (the "Motion"), and states:

**BACKGROUND**

On December 16, 2022, the Montgomery County Circuit Court (Lease, J) held a hearing in

*King, et al. v. Serv Trust, et al.*, Case No. 436977-V (the "King Case") and *6789 Goldsboro LLC*

*v. Serv Trust, et al.*, Case No. 436977-V (the "Goldsboro Case") (the "King Case" and "Goldsboro

Case" having been consolidated for administrative purposes, and referred to herein collectively as

the "State Court Litigation"). The following statements were placed on the record during the

1

Appx. 0503

December 16, 2022, hearing in the State Court Litigation:

> THE COURT: *** So Mr. Myers is here in court. The matters against Mr. Myers have been stayed. *** Mr. Myers is a party to the case, but his matters have been stayed at this point in time.
>
> THE COURT: What's the status of this matter? I'll start with counsel for the King Parties.
>
> MR. VERSTANDIG: Your Homor, we are prepared to proceed to trial on January 3rd [2023]. Pre-trial statements were filed a couple of years ago prior to a bankruptcy stay and are inclusive of all the exhibits and all the witnesses we plan to rely upon during our trial in January [2023]. It will be a more abbreviated list of witnesses and exhibits because the claims against Mr. Myers are stayed. ***
>
> MR. MYERS: *** If King Parties prevail in either of their two counts, I have potential liability.
>
> THE COURT: They would have to prove those counts against you in a separate trial. The matter would not be -- there would not be any collateral estoppel or res judicata because you did not participate in this case as a party. You were stayed and out of the case.
>
> MR. MYERS: There would still be a ruling that would impose liability upon me.
>
> THE COURT: There would not be a ruling that would impose liability on you. There would be a ruling that would potentially impose liability on Serv Trust. However, these Plaintiffs would have to, if they wanted to proceed against you, would be required to try that matter again separately and there would not be any res judicata or collateral estoppel issues because you were not a party to th[is] case. You were stayed, so you are not considered a party.

(Alterations and emphasis supplied supplied). See also King Plaintiff's motion to stay proceedings,

a copy of which is attached hereto as **Exhibit A** and made a part hereof.

On January 3, 2023, the Montgomery County Circuit Court (Lease, J) made the following

statement on the record in the State Court Litigation:

> THE COURT: And under the Frow doctrine you can, either one of two things: you sort of abstain from going forward because you don't want to try it twice, or two, you can enter the judgment, but then it's a non-final judgment because anything that I do today in essence necessarily would be nonfinal because we don't have, we're not putting all of the claims against all the parties are not getting to an adjudication. **So we don't have a final judgment today under any circumstance**.

2

Appx. 0504

(Emphasis supplied).[1] A copy of the partial hearing transcript is attached hereto as **Exhibit B** and made a part hereof.

On January 3, 2023, Mr. Myers noticed an appeal to the Appellate Court of Maryland ("ACM") stemming from the conduct in the State Court Litigation. The ACM docketed the case as No. 1876, September Term 2022, ACM-REG-1876-2022 (the "ACM Appeal").

On January 12, 2023, the Montgomery County Circuit Court (Lease, J.)—in violation of the ACM's jurisdiction—entered an ORDER ENTERING PARTIAL JUDGMENT AND STAY in the State Court Litigation, ordering "that all remaining matters in this case are accordingly stayed... ."

On April 17, 2023, the Montgomery County Circuit Court (Lease, J) held a hearing in the State Court Litigation and ruled the "triggering mechanism" for bankruptcy jurisdiction would necessarily require entry of a **final order** in the State Court Litigation (i.e., *not* entry of a *non*-final order). A copy of the hearing transcript is attached hereto as **Exhibit C** and made a part hereof

On April 18, 2023, in the ACM Appeal, Mr. Myers filed a motion for stay pending appeal. On April 28, 2023, the King Parties filed a response to Mr. Myers's motion (the "King Parties ACM Response")—which Goldsboro and the Trustee adopted and incorporated in their respective responses filed in the ACM Appeal—arguing:

> "[T]he order from which Mr. Myers instantly seeks a stay is, by its own express terms, non-final. Indeed, the document is titled 'Order Entering Partial Judgment and Stay,' and the order most certainly does not dispose of the totality of the triable issues below."
>
> **"The order from which appellants appealed did not adjudicate or complete the adjudication of any claim in this matter.** It therefore was not a final order[.]"

---

[1] The King Parties have **never** answered the Second Amended Counterclaim filed by Serv Trust in Case 436977-V and are now in default.

Appx. 0505

> "Here, the order below is, by its own titular designation, 'partial' in nature. There are no less than three causes of action that have not yet been tried judgment and, accordingly, upon which no judgment has been entered."

> "[T]here remain unresolved causes of action in both cases that were consolidated below and, as such, there does not exist a final order in either case, even if they were to be considered separately."

(Alterations supplied). A copy of the King Parties ACM Response is attached hereto as **Exhibit D**. The King Parties, Goldsboro, and the Trustee are judicially estopped from taking a different position in this Court.

On May 7, 2024, the King Parties and the Trustee executed and filed a fraudulent "STIPULATION OF DISMISSAL" (the Stipulation") in the State Court Litigation, which states:

> COMES NOW, Plaintiffs, Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, the "King Parties"), and Defendant, Serv Trust, through Roger Schlossberg, the Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers, who is, by operation of law, now the sole legal representative of Serv Trust following this Court's judicial determination herein that Serv Trust is the alter ego of Gregory B. Myers, by and through their respective undersigned counsel, pursuant to Md. Rule 2-506(a), hereby stipulate and agree that Count I of Plaintiffs' First Amended Complaint (Declaratory Judgment: Redemption of Interests) in Case No.: 436977-V shall be, and is hereby, DISMISSED.

A copy of the fraudulent Stipulation is attached hereto as **Exhibit E**.

### ARGUMENT

Serv Trust's property is unaffected unless and until there is a final judgment in the State Court Litigation, and it is **undisputed** that there is no final judgment in the State Court Litigation that adjudicates all claims against all parties in the State Court Litigation. In fact, the King Plaintiffs (VerStandig) represented to the Appellate Court of Maryland that "The order from which appellants appealed did not adjudicate or complete the adjudication of *any claim* in this matter." (Emphasis supplied). The Trustee adopted and incorporated that very argument as his own.

4

Appx. 0506

It is obvious the Settlement Motion—together with Adversary Proceeding No. 24-00007—is a sham; a fraud. See *In re Anderson*, 377 B.R. 865 (2007). holding "the Chapter 7 Trustee's settlement with the owners of the other undivided one-half interest in the property cannot be approved, for, as already discussed, that settlement contemplates the Chapter 7 Trustee conveying to those owners an interest in the property that the bankruptcy estate in all likelihood no longer owns. **The bankruptcy estate's receipt of consideration from the Defendants under such circumstances would be tantamount to fraud and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner.**" (Emphasis supplied). See also email chain attached hereto as **Exhibit F**, evidencing a conspiracy by and among Brian King, Timothy Lynch, Maurice VerStandig and others to commit tax fraud in violation of 26 U.S. Code § 7206, as well and numerous other bad acts.[2] *See Etgen v. Washington County Bldg. Loan Ass'n.*, 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land W*ater Co. v. Robinson, 154 Cal. 36, 97 P. 10, 14."). Id. at 418. The Trustee's "fingerprints" are now on this scheme as well.[3]

---

[2] Notably, on December 18, 2018, **The Honorable Anne K. Albright** (now sitting on the Appellate Court of Maryland), found, *inter alia*, that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members" (his family), and concluding "**that would amount to constructive fraud.**".
3 Given the criminal and fraudulent nature of the Settlement Motion, it is apparent that counsel's

Appx. 0507

On December 5, 2019, the Maryland bankruptcy court (Simpson, J) entered an Order remanding Adv. No. 19-00427 (i.e., the State Court Litigation) "to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. ' 1452(b)." (Adv. No. 19-00427; Dkt. No. 5) the "Remand Order"). A copy of the Remand Order is attached hereto as **Exhibit G** and made a part hereof.

This Court (Chavez-Ruark, J) has previously acknowledged that the Montgomery County Circuit Court (Lease, J) has jurisdiction and authority under the Maryland Rules to **control its judgments** that are non-final. And the Trustee concedes that he is **barred** under Bankruptcy Rule 9027(a)(3) from removing the State Court Litigation to this Court, citing Bankruptcy Rule 9027 and *Roberts v. Creighton*, 2009 WL 7083320 (D. Md. Feb. 27, 2009). Yet, on December 11, 2023, this Court (Chavez-Ruark, J) entered an Order (Doc 1029) in Case 15-26033, which states:

> "The Settlement Procedure Motion is the **mechanism** by which the Trustee is seeking authority to resolve a stayed cause of action in the State Court."

The Bankruptcy Court (Chavez-Ruark, J) has no jurisdiction or authority to approve a "**mechanism**" which amounts to an **improper collateral attack** on the Remand Order entered on December 5, 2019 (Adv. No. 19-00427; Dkt. No. 5). An order remanding a claim or cause of action to the State Court is not reviewable by appeal "or otherwise" (which includes this Court). Only a

---

conduct implicates several cannons of the Model Rules of Professional Conduct. For instance, Rule 1.2(d), which proscribes a lawyer from "counsel[ing] a client to engage, or assist[ing] a client, in conduct that the lawyer knows is criminal or fraudulent"; Rule 3.1, which requires that a lawyer only bring or defend a proceeding when "there is a basis in law and fact for doing so that is not frivolous"; Rule 3.3(4) regarding candor toward the tribunal, which proscribes a lawyer from presenting a "[l]egal argument based on a knowingly false representation of law"; and Rule 3.3(12) which provides that "[l]awyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process[.]" Mr. Myers will be filing a complaint with the Attorney Grievance Commission to determine what, if any, Rules of Professional Conduct counsel might have violated.

Appx. 0508

district court or bankruptcy appellate panel may review a bankruptcy court's remand order under 28 U.S.C. § § 1334(d), 1447(d) and 1452(b). See *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). Accordingly, this Court's (Chavez-Ruark, J) "mechanism" is unlawful and is an affront to the proper jurisdiction of the State Court.

Maryland adheres to the *Frow Doctrine*. *See Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 428-33 (1995) discussing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)( "But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."). "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law." *Id*.

It has long been established that courts "'can make no decree affecting the rights of an absent person, and can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights.'" *Greeley v. Lowe*, 155 U.S. 58, 70 (1894) (quoting *Shields v. Barrow*, 58 U.S. 130, 141-42 (1854)). This rule is just as strong today as when it was first set forth. *See, e.g., Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008) (recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties").

Appx. 0509

The U.S. Supreme Court has clearly stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliot v. Lessee of Piersol*, 26 U.S. 328 (1828). Thus, according to *Elliot*, by filing the instant Motion, the Trustee is "considered in law [a] trespasser." *Id.*

The State Court has made no final determination in the State Court Litigation. Accordingly, the Settlement Motion must be denied because there is no justiciable controversy or cause of action "affecting the estate" and therefore there is nothing for the Trustee "to compromise or settle." See *E.F. Hutton & Co., Inc. v. Hadley*, 901 F .2d 979 (11th Cir.1990) (When standing has been contested, it is the burden of the party claiming standing "to plead and prove injury in fact, causation, and redressability."). The Trustee and the King Plaintiffs cannot meet that burden and "the court is not required to accept as true unwarranted legal conclusions or unwarranted factual inferences." *Id.* at 753. The Trustee and the King Plaintiffs must assert more than a conclusory statement that they have "suffered damages." It is the burden of the party claiming standing "to plead and prove injury in fact, causation, and redressability." Id. At 984. But here, they cannot.

Until the State Court Litigation concludes (i.e., with a final order , the Trustee lacks standing to file this Motion or any other motion affecting Serv Trust or Mr. Myers. This is not a core proceeding (it's a sham) and Mr. Myers does not consent to the entry of any final orders or judgments by the bankruptcy court. To the extent the Settlement Motion is not dismissed for lack of subject matter jurisdiction or some other reason, the bankruptcy court must submit proposed findings of fact and conclusions of law to the Maryland District Court for an Article III Judge to make a final determination. The U.S. Supreme Court has clearly stated that if a court is "without

Appx. 0510

authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliot v. Lessee of Piersol*, 26 U.S. 328 (1828). Thus, according to Elliot, by filing the Settlement Motion, the Trustee is "considered in law [a] trespasser." *Id.*

The Trustee has the burden of proof on the Settlement Motion, and Mr. Myers intends to show at an evidentiary hearing on the Settlement Motion that the Trustee cannot meet that burden. Accordingly, the Trustee's Settlement Motion should be denied

### REQUEST FOR EVIDENTIARY HEARING

Mr. Myers demands that the Court schedule a full evidentiary hearing on the Trustee's Settlement Motion and demands **strict proof** on the substance and merits of the Trustee's Settlement Motion.

RESPECTFULLY SUBMITTED on this 21st day of January, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

9

Appx. 0511

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of January, 2025, a copy of the foregoing

GREGORY B. MYERS'S PRELIMINARY OBJECTION TO THE TRUSTEE'S MOTION FOR

APPROVAL OF PROPOSED COMPROMISE AND SETTLEMENT WITH KING

PLAINTIFFS was furnished via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

_____
Gregory B. Myers, *pro se*

10

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

In re:

GREGORY B. MYERS,

     Debtor.

_____/

BRIAN KING, _et al._,

     Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

     Defendant.

_____/

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

### GREGORY B. MYERS'S PRELIMINARY OBJECTION TO THE TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND <u>SETTLEMENT WITH KING PLAINTIFFS</u>

Gregory B. Myers ("Mr. Myers" or "Movant"), _pro se_, files his preliminary objection (the "Objection") to the _Trustee's Motion For Approval Of Proposed Compromise And Settlement With King Plaintiffs_ (Doc. 17) (the "Motion"), and states:

### BACKGROUND

On December 16, 2022, the Montgomery County Circuit Court (Lease, J) held a hearing in _King, et al. v. Serv Trust, et al._, Case No. 436977-V (the "King Case") and _6789 Goldsboro LLC v. Serv Trust, et al._, Case No. 436977-V (the "Goldsboro Case") (the "King Case" and "Goldsboro Case" having been consolidated for administrative purposes, and referred to herein collectively as the "State Court Litigation"). The following statements were placed on the record during the

1

Appx. 0513

December 16, 2022, hearing in the State Court Litigation:

> THE COURT: *** So Mr. Myers is here in court. The matters against Mr. Myers have been stayed. *** Mr. Myers is a party to the case, but his matters have been stayed at this point in time.
>
> THE COURT: What's the status of this matter? I'll start with counsel for the King Parties.
>
> MR. VERSTANDIG: Your Homor, we are prepared to proceed to trial on January 3rd [2023]. Pre-trial statements were filed a couple of years ago prior to a bankruptcy stay and are inclusive of all the exhibits and all the witnesses we plan to rely upon during our trial in January [2023]. It will be a more abbreviated list of witnesses and exhibits because the claims against Mr. Myers are stayed. ***
>
> MR. MYERS: *** If King Parties prevail in either of their two counts, I have potential liability.
>
> THE COURT: They would have to prove those counts against you in a separate trial. The matter would not be -- there would not be any collateral estoppel or res judicata because you did not participate in this case as a party. You were stayed and out of the case.
>
> MR. MYERS: There would still be a ruling that would impose liability upon me.
>
> THE COURT: There would not be a ruling that would impose liability on you. There would be a ruling that would potentially impose liability on Serv Trust. However, these Plaintiffs would have to, if they wanted to proceed against you, would be required to try that matter again separately and there would not be any res judicata or collateral estoppel issues because you were not a party to th[is] case. You were stayed, so you are not considered a party.

(Alterations and emphasis supplied supplied). See also King Plaintiff's motion to stay proceedings, a copy of which is attached hereto as **Exhibit A** and made a part hereof.

On January 3, 2023, the Montgomery County Circuit Court (Lease, J) made the following statement on the record in the State Court Litigation:

> THE COURT: And under the Frow doctrine you can, either one of two things: you sort of abstain from going forward because you don't want to try it twice, or two, you can enter the judgment, but then it's a non-final judgment because anything that I do today in essence necessarily would be nonfinal because we don't have, we're not putting all of the claims against all the parties are not getting to an adjudication. **So we don't have a final judgment today under any circumstance**.

2

Appx. 0514

(Emphasis supplied).[1] A copy of the partial hearing transcript is attached hereto as **Exhibit B** and made a part hereof.

On January 3, 2023, Mr. Myers noticed an appeal to the Appellate Court of Maryland ("ACM") stemming from the conduct in the State Court Litigation. The ACM docketed the case as No. 1876, September Term 2022, ACM-REG-1876-2022 (the "ACM Appeal").

On January 12, 2023, the Montgomery County Circuit Court (Lease, J.)—in violation of the ACM's jurisdiction—entered an ORDER ENTERING PARTIAL JUDGMENT AND STAY in the State Court Litigation, ordering "that all remaining matters in this case are accordingly stayed… ."

On April 17, 2023, the Montgomery County Circuit Court (Lease, J) held a hearing in the State Court Litigation and ruled the "triggering mechanism" for bankruptcy jurisdiction would necessarily require entry of a **final order** in the State Court Litigation (i.e., *not* entry of a *non*-final order). A copy of the hearing transcript is attached hereto as **Exhibit C** and made a part hereof

On April 18, 2023, in the ACM Appeal, Mr. Myers filed a motion for stay pending appeal. On April 28, 2023, the King Parties filed a response to Mr. Myers's motion (the "King Parties ACM Response")—which Goldsboro and the Trustee adopted and incorporated in their respective responses filed in the ACM Appeal—arguing:

> "[T]he order from which Mr. Myers instantly seeks a stay is, by its own express terms, non-final. Indeed, the document is titled 'Order Entering Partial Judgment and Stay,' and the order most certainly does not dispose of the totality of the triable issues below."
>
> "**The order from which appellants appealed did not adjudicate or complete the adjudication of any claim in this matter**. It therefore was not a final order[.]"

---

[1] The King Parties have **never** answered the Second Amended Counterclaim filed by Serv Trust in Case 436977-V and are now in default.

Appx. 0515

> "Here, the order below is, by its own titular designation, 'partial' in nature. There are no less than three causes of action that have not yet been tried judgment and, accordingly, upon which no judgment has been entered."

> "[T]here remain unresolved causes of action in both cases that were consolidated below and, as such, there does not exist a final order in either case, even if they were to be considered separately."

(Alterations supplied). A copy of the King Parties ACM Response is attached hereto as **Exhibit D**. The King Parties, Goldsboro, and the Trustee are judicially estopped from taking a different position in this Court.

On May 7, 2024, the King Parties and the Trustee executed and filed a fraudulent "STIPULATION OF DISMISSAL" (the Stipulation") in the State Court Litigation, which states:

> COMES NOW, Plaintiffs, Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, the "King Parties"), and Defendant, Serv Trust, through Roger Schlossberg, the Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers, who is, by operation of law, now the sole legal representative of Serv Trust following this Court's judicial determination herein that Serv Trust is the alter ego of Gregory B. Myers, by and through their respective undersigned counsel, pursuant to Md. Rule 2-506(a), hereby stipulate and agree that Count I of Plaintiffs' First Amended Complaint (Declaratory Judgment: Redemption of Interests) in Case No.: 436977-V shall be, and is hereby, DISMISSED.

A copy of the fraudulent Stipulation is attached hereto as **Exhibit E**.

### ARGUMENT

Serv Trust's property is unaffected unless and until there is a final judgment in the State Court Litigation, and it is **undisputed** that there is no final judgment in the State Court Litigation that adjudicates all claims against all parties in the State Court Litigation. In fact, the King Plaintiffs (VerStandig) represented to the Appellate Court of Maryland that "The order from which appellants appealed did not adjudicate or complete the adjudication of *any claim* in this matter." (Emphasis supplied). The Trustee adopted and incorporated that very argument as his own.

Appx. 0516

It is obvious the Settlement Motion—together with Adversary Proceeding No. 24-00007—is a sham; a fraud. See *In re Anderson*, 377 B.R. 865 (2007). holding "the Chapter 7 Trustee's settlement with the owners of the other undivided one-half interest in the property cannot be approved, for, as already discussed, that settlement contemplates the Chapter 7 Trustee conveying to those owners an interest in the property that the bankruptcy estate in all likelihood no longer owns. **The bankruptcy estate's receipt of consideration from the Defendants under such circumstances would be tantamount to fraud and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner.**" (Emphasis supplied). See also email chain attached hereto as **Exhibit F**, evidencing a conspiracy by and among Brian King, Timothy Lynch, Maurice VerStandig and others to commit tax fraud in violation of 26 U.S. Code § 7206, as well and numerous other bad acts.[2] *See Etgen v. Washington County Bldg. Loan Ass'n.*, 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land Water Co. v. Robinson*, 154 Cal. 36, 97 P. 10, 14."). Id. at 418. The Trustee's "fingerprints" are now on this scheme as well.[3]

---

[2] Notably, on December 18, 2018, **The Honorable Anne K. Albright** (now sitting on the Appellate Court of Maryland), found, *inter alia*, that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members" (his family), and concluding "**that would amount to constructive fraud.**".
3 Given the criminal and fraudulent nature of the Settlement Motion, it is apparent that counsel's

5

On December 5, 2019, the Maryland bankruptcy court (Simpson, J) entered an Order remanding Adv. No. 19-00427 (i.e., the State Court Litigation) "to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. ' 1452(b)." (Adv. No. 19-00427; Dkt. No. 5) the "Remand Order"). A copy of the Remand Order is attached hereto as **Exhibit G** and made a part hereof.

This Court (Chavez-Ruark, J) has previously acknowledged that the Montgomery County Circuit Court (Lease, J) has jurisdiction and authority under the Maryland Rules to **control its judgments** that are non-final. And the Trustee concedes that he is **barred** under Bankruptcy Rule 9027(a)(3) from removing the State Court Litigation to this Court, citing Bankruptcy Rule 9027 and *Roberts v. Creighton*, 2009 WL 7083320 (D. Md. Feb. 27, 2009). Yet, on December 11, 2023, this Court (Chavez-Ruark, J) entered an Order (Doc 1029) in Case 15-26033, which states:

> "The Settlement Procedure Motion is the **mechanism** by which the Trustee is seeking authority to resolve a stayed cause of action in the State Court."

The Bankruptcy Court (Chavez-Ruark, J) has no jurisdiction or authority to approve a "**mechanism**" which amounts to an **improper collateral attack** on the Remand Order entered on December 5, 2019 (Adv. No. 19-00427; Dkt. No. 5). An order remanding a claim or cause of action to the State Court is not reviewable by appeal "or otherwise" (which includes this Court). Only a

---

conduct implicates several cannons of the Model Rules of Professional Conduct. For instance, Rule 1.2(d), which proscribes a lawyer from "counsel[ing] a client to engage, or assist[ing] a client, in conduct that the lawyer knows is criminal or fraudulent"; Rule 3.1, which requires that a lawyer only bring or defend a proceeding when "there is a basis in law and fact for doing so that is not frivolous"; Rule 3.3(4) regarding candor toward the tribunal, which proscribes a lawyer from presenting a "[l]egal argument based on a knowingly false representation of law"; and Rule 3.3(12) which provides that "[l]awyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process[.]" Mr. Myers will be filing a complaint with the Attorney Grievance Commission to determine what, if any, Rules of Professional Conduct counsel might have violated.

6

district court or bankruptcy appellate panel may review a bankruptcy court's remand order under 28 U.S.C. § § 1334(d), 1447(d) and 1452(b). See *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). Accordingly, this Court's (Chavez-Ruark, J) "mechanism" is unlawful and is an affront to the proper jurisdiction of the State Court.

Maryland adheres to the *Frow Doctrine. See Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 428-33 (1995) discussing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)( "But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."). "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law." *Id.*

It has long been established that courts "'can make no decree affecting the rights of an absent person, and can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights.'" *Greeley v. Lowe*, 155 U.S. 58, 70 (1894) (quoting *Shields v. Barrow*, 58 U.S. 130, 141-42 (1854)). This rule is just as strong today as when it was first set forth. *See, e.g., Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008) (recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties").

Appx. 0519

The U.S. Supreme Court has clearly stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliot v. Lessee of Piersol,* 26 U.S. 328 (1828). Thus, according to *Elliot,* by filing the instant Motion, the Trustee is "considered in law [a] trespasser." *Id.*

The State Court has made no final determination in the State Court Litigation. Accordingly, the Settlement Motion must be denied because there is no justiciable controversy or cause of action "affecting the estate" and therefore there is nothing for the Trustee "to compromise or settle." See *E.F. Hutton & Co., Inc. v. Hadley,* 901 F .2d 979 (11th Cir.1990) (When standing has been contested, it is the burden of the party claiming standing "'to plead and prove injury in fact, causation, and redressability.'"). The Trustee and the King Plaintiffs cannot meet that burden and "the court is not required to accept as true unwarranted legal conclusions or unwarranted factual inferences." *Id.* at 753. The Trustee and the King Plaintiffs must assert more than a conclusory statement that they have "suffered damages." It is the burden of the party claiming standing "to plead and prove injury in fact, causation, and redressability." Id. At 984. But here, they cannot.

Until the State Court Litigation concludes (i.e., with a final order , the Trustee lacks standing to file this Motion or any other motion affecting Serv Trust or Mr. Myers. This is not a core proceeding (it's a sham) and Mr. Myers does not consent to the entry of any final orders or judgments by the bankruptcy court. To the extent the Settlement Motion is not dismissed for lack of subject matter jurisdiction or some other reason, the bankruptcy court must submit proposed findings of fact and conclusions of law to the Maryland District Court for an Article III Judge to make a final determination. The U.S. Supreme Court has clearly stated that if a court is "without

8

Appx. 0520

authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliot v. Lessee of Piersol*, 26 U.S. 328 (1828). Thus, according to Elliot, by filing the Settlement Motion, the Trustee is "considered in law [a] trespasser." *Id.*

The Trustee has the burden of proof on the Settlement Motion, and Mr. Myers intends to show at an evidentiary hearing on the Settlement Motion that the Trustee cannot meet that burden. Accordingly, the Trustee's Settlement Motion should be denied

## REQUEST FOR EVIDENTIARY HEARING

Mr. Myers demands that the Court schedule a full evidentiary hearing on the Trustee's Settlement Motion and demands **strict proof** on the substance and merits of the Trustee's Settlement Motion.

RESPECTFULLY SUBMITTED on this 21st day of January, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

9

Appx. 0521

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of January, 2025, a copy of the foregoing

GREGORY B. MYERS'S PRELIMINARY OBJECTION TO THE TRUSTEE'S MOTION FOR

APPROVAL OF PROPOSED COMPROMISE AND SETTLEMENT WITH KING

PLAINTIFFS was furnished via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

_____
Gregory B. Myers, *pro se*

10

Appx. 0522

# Exhibit A

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| BRIAN KING, *et al.* | : | |
| Plaintiffs, | : | |
| v. | : | **Case No.: 436977-V** |
| SERV TRUST, *et al.* | : | |
| Defendants, | : | |
| and | : | |
| ROGER SCHLOSSBERG<br>*In His Official Capacity as Trustee*<br>*of the Bankruptcy Estate of Gregory Myers* | : | |
| Nominal Defendant. | : | |

### PLAINTIFFS' MOTION TO STAY PROCEEDINGS PENDING DISPOSITION OF DEFENDANT'S SECOND BANKRUPTCY

Come now Brian King ("Mr. King"), Cristina King ("Mrs. King"), and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (the "Trustee of the Children's Trust," with the trust itself being known as the "Children's Trust") (Mr. King, Mrs. King, and the Trustee of the Children's Trust collectively known as the "Plaintiffs" and each sometimes being known as a "Plaintiff"), by and through undersigned counsel, and move this Honorable Court to stay the above-captioned proceedings pending disposition of Defendant Gregory Myers' bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware.

### I.    Introduction

There are only two non-nominal defendants in this case: Gregory Myers ("Mr. Myers") and Serv Trust. The Plaintiffs contend – both as an affirmative claim of their own and as an affirmative defense to the counterclaims of Serv Trust – that Serv Trust is the alter ego of Mr. Myers. Mr. Myers is now a debtor in two separate bankruptcy proceedings, in two separate judicial

1

districts. While the automatic stay no longer governs his first bankruptcy, since his discharge has been revoked on account of, *inter alia*, his extensive fraudulent conduct, it does currently attach to his second bankruptcy proceeding. And in the presence of that automatic stay, this case cannot meaningfully proceed.

Indeed, not only is Mr. Myers personally a party to this action, but Serv Trust – his alter ego – is the only other defendant herein. Governing law makes clear that in such a circumstance, where significant veil-piercing issues are implicated, the automatic stay extends to the non-debtor party (since such party is, legally speaking, an extension of the debtor himself). That is precisely the reality *sub judice*, and any effort to proceed with this case while dodging the veritable minefield of the automatic stay would be so fraught with legal peril and operative absurdities as to render the effort impractical and grossly inequitable.

## II.   Factual Background

The factual background of this case is too extensive to set forth in sufficient detail herein, and the Plaintiffs incorporate by reference their First Amended Complaint, the Second Amended Complaint of Serv Trust (which is the subject of a pending motion to dismiss), their answer to the First Amended Complaint of Serv Trust, and the other pleadings comprising this file. In broad strokes, however, this matter concerns a real estate investment entity known as 6789 Goldsboro LLC ("Goldsboro") of which the Plaintiffs and Serv Trust were the original members.

The Plaintiffs originally sought herein a declaration that the membership of Serv Trust in Goldsboro has been redeemed by operation of the entity's operating agreement. Serv Trust, in turn, has filed three iterations of a counterclaim that alleges, generally speaking, contractual breaches and wrongful behavior on the part of one or more of the Plaintiffs.

As discovery in this case has progressed, however, it has become apparent that Serv Trust is actually the alter ego of its trustee, Mr. Myers, who used the trust vehicle to shield assets from

Appx. 0525

his numerous personal creditors. This has given rise to both an affirmative defense that Serv Trust lacks standing to pursue its counterclaims, as they are an asset of Mr. Myers' first bankruptcy estate, and a freestanding declaratory judgment claim establishing this alter ego construct so that Mr. Myers' bankruptcy trustee (also a party to this case, as a nominal defendant) may prosecute and defend the action accordingly.

To be sure, the alter ego issues are neither isolated nor lightly supported. The record herein shows, in fairly exacting detail, that Serv Trust was originally created by Mr. Myers' mother, for the supposed benefit of Mr. Myers' children. Mr. Myers has been a trustee of Serv Trust at all times relevant and, it appears, has exercised all decision making authority for Serv Trust – notwithstanding the nominal presence of a co-trustee – at all times relevant.

In or before 2009, Mr. Myers experienced financial difficulties and stopped paying the mortgages on numerous pieces of real property owned by himself, his wife, and/or him and his wife jointly. Following Mr. Myers' financial difficulties, Mr. Myers came to understand that his remaining assets, however great or meager, would eventually be subject to the attack and/or attachment of his creditors.

In or about 2013, Mr. Myers personally discovered the property ultimately acquired by Goldsboro, which was listed as being for sale, and which was being marketed as a single family home. Mr. Myers, having a background in the real estate industry, recognized the property to be on a parcel of land that could support additional dwelling units, and believed that parcel of land to be in a desirable location. Mr. Myers, owing millions of dollars to his creditors, facing the likely prospect of declaring bankruptcy in the coming years, and not having access to the funds requisite to acquire the property, sought out an investment partner and was introduced to Mr. King.

In negotiating a partnership with Mr. King, Mr. Myers did not want to take a subordinate

3

interest in the resulting entity in his own name, knowing that his creditors might be able to attach that interest, obtain a charging order against that interest, or otherwise take it from him. So instead of personally taking the interest in the resulting entity – an interest "funded" by the goodwill of Mr. Myers in finding the property, and the efforts Mr. Myers would expend managing Goldsboro – Mr. Myers indicated the interest would be held by Serv Trust. In accord with this arrangement, Serv Trust became the junior member of the resulting entity. Even though Mr. Myers was supposedly involved with the resulting entity in his role as a trustee of Serv Trust, he personally became the manager of the entity and oversaw efforts to assess development opportunities for the property, putting his own "sweat equity" into the project.

Early in the existence of 6789 Goldsboro, Mr. Myers approached Mr. King, indicated Mr. Myers needed money, and asked for a loan. Mr. King agreed to capitalize Goldsboro with monies to be loaned to Mr. Myers.

Critically, Mr. Myers asked that the loan be made to Serv Trust, instead of to him personally, but that the loan be given to him personally. From 2014 through 2016, Mr. Myers asked Mr. King to capitalize Goldsboro with money for loans to be made on at least twenty-eight (28) separate occasions, with the total of such loans equaling Six Hundred Thirty Thousand Dollars ($630,000.00) (the "Loans") and interest accruing on such loans. Many of the Loans were paid directly to either Mr. Myers or his wife, not to Serv Trust.

In asking for the Loans, Mr. Myers would often indicate the need in a personal regard – not in one aimed at any fiduciary obligation. By way of example, on April 22, 2016, Mr. Myers wrote to Mr. King, "Hey Brian - following up on our conversation the other day - I greatly appreciate you advancing June and July now ($30k) as the insurance company totally f'd me, and I'm on fumes here."

4

Mr. Myers followed up on April 25, 2016, "Brian - I'm dead in the water without the wire on/before May 2. Please reconsider and advance $15k on Monday May 2 (June advance), with the other $15k on May 8 (July advance). I wouldn't ask you to do this unless it was an emergency."

On June 9, 2016, Mr. Myers sent Mr. King another request for money, indicating that some of the money was needed for one of his children but that most of it was for other, completely unrelated things: "I only want to ask you for what I need to survive right now, which is $40k (which includes $15k to pay past tuition for Teddy so he can get his official transcript from Furman to transfer to Trinitiy; **$5k to keep my Chapter 11 alive**, $2,270 for monthly health insurance premiums; $3,500 in past due utilities; **$10k in legal fees for appeals**; food, gas, etc.)" (emphasis added).

It is believed Serv Trust was not, at the time, party to any litigation pending in any appellate court, and Serv Trust has never been a Chapter 11 debtor.

On July 14, 2016, Mr. Myers wrote to Mr. King, "I am sitting here bleeding waiting for Danielle - I have two checks that will be presented today totaling just **under $7k to an attorney - who, if my checks bounce, will withdraw from my appeal** - as well as my family's health insurance expired on July 1 and I am now past the grace period... I am respectfully requesting that you have Chris wire $10k this morning so I can cover these extremely critical payments while Danielle finishes her edits and we can get papers circulated. Holding up a $10k wire given where we are only hurts me." (emphasis added).

On May 16, 2016, Mr. Myers wrote to Mr. King, "Brian - I appreciate the June draw you sent on May 3, but I still need to get the $15k July draw early just to keep my head above water."

Even though Mr. Myers had personally guaranteed all of the Loans, he did not schedule Goldsboro as a creditor in his first bankruptcy and never mentioned his guarantee in his schedules

5

Appx. 0528

or any amendments thereto until such a time as Goldsboro entered an appearance in his bankruptcy proceedings. Both prior to, and during, his bankruptcy, Mr. Myers has used Serv Trust as a tool to access money from Goldsboro without that money becoming part of his bankruptcy estate or being otherwise subject to the attack or collection of his creditors or those of his wife (who has twice been a debtor in bankruptcy since Mr. Myers first became a debtor in bankruptcy).

This behavior is consistent with Mr. Myers' original goal of having the subordinate interest in Goldsboro be acquired by Serv Trust, and not in his own name or that of his spouse, so it would not be attackable by his creditors.

This behavior is also consistent with Mr. Myers' placing a large lien on one of his properties, in favor of Serv Trust (the "Lien"), with the goal of Serv Trust then being able to obtain funds from the sale of that property – for the personal use of Mr. Myers – before junior creditors of Mr. Myers could do so. The Lien became a source of early contention in Mr. Myers' bankruptcy case, as Mr. Myers sold the subject property, disputed nearly every lien on the property – except for Serv Trust's Lien – and made contradictory assertions about the size of the Lien, in an effort to deprive his creditors of money.

On February 15, 2017, following the filing of a motion to convert his first bankruptcy case from Chapter 11 to Chapter 7 (the "Motion to Convert"), filed by the United States of America through a trustee working in the Department of Justice, the United States Bankruptcy Court for the District of Maryland conducted a full evidentiary hearing on the Motion to Convert, at the conclusion of which the Court rendered an oral ruling converting the case to Chapter 7. As the United States Bankruptcy Court for the District of Maryland would later note, Mr. Myers' "failure to list Goldsboro in his initial schedules and his failure to disclose his personal guaranty of Goldsboro's advances to Serv Trust at the 341 Meeting was a significant factor in the Court's

Appx. 0529

decision to convert Myers' case."

On May 18, 2017, United States of America, by and through a trustee serving in the Department of Justice, brought an adversary proceeding in Mr. Myers' bankruptcy to have Mr. Myers' discharge denied (the "Motion to Deny Discharge"). On September 28, 2018, the United States Bankruptcy Court for the District of Maryland granted the Motion to Deny Discharge, issuing a lengthy written memorandum opinion (the "Denial Order").

In the Denial Order, the United States Bankruptcy Court for the District of Maryland observed "The timing of the loans from Goldsboro and the execution of the Goldsboro Guaranty, combined with Myers' obfuscation on his liability to Goldsboro at the 341 Meeting, are sufficient to find the requisite fraudulent intent for purposes of § 727(a)(4)... It is not believable that he simply forgot to include his largest unsecured creditor in the first several versions of his schedules when he had executed a personal guaranty in favor of that creditor six months prior to filing for bankruptcy and was requesting advances from the creditor up to and after filing his petition."

In the Denial Order, the United States Bankruptcy Court for the District of Maryland also observed "Myers was adamant at trial that every payment that he and/or Kelly ever received from Serv Trust was for the benefit of his children." Such testimony of Mr. Myers would have been untruthful in nature, as significant portions of such money were openly sought to pay Mr. Myers' legal fees in connection with various litigation matters (including his bankruptcy), as anecdotally established by the e-mails discussed above.

The Denial Order also observes, "the Court finds that the amount of Serv Trust's secured claim set forth on the Amended Schedule D was inflated and therefore, was a false claim and a false oath under § 727(a)(4)," going on to note that Mr. Myers seemed inclined to use the Serv Trust Lien as a means of receiving money from the proceeds from a sale of property until such a

7

time as Goldsboro – an unscheduled creditor – entered an appearance in this case and foreclosed that possibility.

The Denial Order also finds that Mr. Myers did not keep records of the money he received from Goldsboro (which was supposedly being loaned to Serv Trust) or of how that money was spent, even though he insisted (untruthfully) that it was spent on his children. Goldsboro filed a declaratory judgment action in the United States Bankruptcy Court for the District of Maryland, seeking a declaration that Serv Trust is Mr. Myers' alter ego (the "Bankruptcy Declaration Case"). On January 30, 2019, the United States Bankruptcy Court for the District of Maryland issued an order abstaining from the Bankruptcy Declaration Case and indicating it is more properly determined as part of the above-captioned action in this Honorable Court.

Then, in late February, Mr. Myers – in what one can only surmise to be an effort to forum shop his bankruptcy problems away from the court which issued the aforementioned written opinions - filed a second bankruptcy petition, this time in Delaware. Commensurate therewith, he docketed a suggestion of bankruptcy in this case. *See* DE #105.

### III.    Argument: The Alter Ego Issues Permeating this Case Necessitate its Stay

It is well settled that where the identity of a bankruptcy debtor and a third party defendant are so intertwined as to raise veil-piercing or alter ego issues, the automatic stay extends to cover the non-debtor party. Here, the trustee from Mr. Myers' first bankruptcy is already a party to this case, given the intertwined nature of his assets and those of Serv Trust. But unless and until the trustee from his second bankruptcy can also be joined herein – which will require obtaining stay relief and the permission of a bankruptcy court in another state – this case simply cannot proceed.

"The automatic stay of 11 U.S.C. § 362(a)(1) prevents the 'commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement' of the bankruptcy case." *Dean v. Trans World*

8

*Airlines, Inc.*, 72 F.3d 754, 755 (9th Cir.1995). "[A]ctions taken in violation of the automatic stay are void." *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir.2000) (citing *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992)). It is well established that non-bankruptcy courts have concurrent jurisdiction with the bankruptcy court to determine the scope of the automatic stay. *See In re Baldwin-United Corp. Litig.*, 765 F.2d 343 (2d Cir.1985); *see also In re Colasuonno*, 697 F.3d 164, 172 n. 4 (2d Cir.2012).

By its terms, the automatic stay applies to actions against debtors, debtors' property, or estate property. Similarly, however, the stay also applies to non-debtors "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie Ltd. v. Nygard International ("Queenie")*, 321 F.3d 282, 287 (2d Cir.2003). Examples of actions where a claim will have an "immediate adverse economic consequence on the debtor's estate" include (1) "a claim to establish an obligation of which the debtor is a guarantor;" (2) "a claim against the debtor's insurer;" and (3) "'actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant.'" *Id.* at 288–89 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986)); *see also In re Ladieu*, 2011 WL 748566, at *19 (Bankr. D. Vt. 2011); *Ng v. Adler*, 518 B.R. 228, 246 (E.D.N.Y. 2014).

Here, Mr. Myers is the alter ego of Serv Trust, and under the facts presented, this creates such an identity between Mr. Myers and Serv Trust that a judgment in favor of the Plaintiffs against Serv Trust would be a judgment in favor of the Plaintiffs against Mr. Myers. *See Queenie*, 321 F.3d at 288 (applying the stay to a non-debtor corporation wholly owned by the debtor because adjudication of a claim against the non-debtor corporation would have an immediate adverse economic impact on the debtor); *see also In re Ladieu*, No. 07-10868, 2011 WL 748566, at *19.

9

Appx. 0532

Because of the nature of the Plaintiffs' allegations and claims it is not possible to draw a meaningful distinction between claims asserted against Mr. Myers and claims asserted by/against Serv Trust. *See Hittle v. City of Stockton, Cal.*, 2012 WL 3886099, at *3 (E.D. Cal. 2012) (citing to *Lewis v. Russell*, 2009 WL 1260290, at *2 (E.D.Cal. May 7, 2009)).

Ruling on issues concerning the liability of Serv Trust would require the court to consider the possible liability of Mr. Myers in violation of bankruptcy stay. *Id.* Therefore, the "'identity of interests' [between Mr. Myers and Serv Trust] provides the special or 'unusual circumstances' which justify an order that stays proceedings against" Serv Trust. *See Hittle v. City of Stockton, Cal.*, 2012 WL 3886099, at *3 (citing to *In re Family Health Servs., Inc.*, 105 B.R. 937, 942 (C. D. Cal.1989)).

The "adverse economic consequence" requirement, as articulated in *Queenie* and as derived from *Robins*, has been construed to include any perceptible economic harm to a non-party debtor's tangible or intangible property interest. *In re Adler*, 494 B.R. 43, 57 (Bankr. E.D.N.Y. 2013); *Stephen Inv. Secs. v. SEC*, 27 F.3d 339, 342 n.5 (8th Cir.1994); *N. Star Contracting v. McSpedon (In re N. Star Contracting Corp.)*, 125 B.R. 368, 370 (Bankr.S.D.N.Y.1991).

Since *Robins* and *Queenie*, courts have found the requisite economic harm to an individual debtor when the veil of a non-debtor corporation is pierced based on the alter ego doctrine, as the individual debtor has thereby been rendered personally liable for the relevant corporate debts. *In re Adler*, 494 B.R. 57-58; *S.I. Acquisition, Inc. v. Eastway Delivery Serv. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1147 (5th Cir.1987); *In re Kuecker Equip. Co.*, 338 B.R. 52, 60-61 (Bankr. W.D. Mo.2 006). Courts have regularly considered piercing the corporate veil or the relationship between the parties in analyzing whether the automatic stay should be extended to a non-debtor. *Ng v. Adler*, 518 B.R. 228, 247 (E.D.N.Y. 2014); *See, e.g., In re Ladieu*, 2011 WL 748566,

10

at *19 ("Ladieu is the sole member of Galadieu, and under the facts presented, this creates such an identity between Ladieu and Galadieu that a judgment for Rentreak against Galadieu for default under the Agreement would be a judgment in favor of Rentreak against Ladieu."); *M.E.S., Inc. v. M.J. Favorito Elec., Inc.*, No. 08-CV-0183, 2010 WL 959604, at *2 (E.D.N.Y. Mar. 15, 2010) (finding that there was "no reason to distinguish this case from Queenie" because it was undisputed that debtors wholly owned the corporations to which the automatic stay was sought to apply).

"Critically, when a corporate veil is so pierced, the controlling debtor's liability attaches not as of the issue date of any formal piercing judgment; rather, it had attached at the moment in time in which the factual elements of the piercing remedy, as dictated by governing law, had materialized." *In re Adler*, 494 B.R. 58. "Consequently, so long as the facts necessary to establish a debtor's liability pursuant to [the state's] piercing doctrine arose prepetition, *Queenie*'s "immediate adverse economic consequences" test had been triggered prepetition, and the automatic stay protected any non-debtor alter ego corporation from further judicial action, just as surely as it shielded the individual debtor, even though its status as an alter ego had not yet been ascertained." *Id.*; *see Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline)*, 472 B.R. 98, 103 (B.A.P. 10th Cir.2012). As such, "if two judicial determinations have been made—(1) one or more non-debtor corporations has been found liable for a prepetition debt on a cause of action asserted in a post-petition proceeding, and (2) the veil between these corporate alter egos and the non-party debtor has been pierced—the § 362(a)(1) stay was violated by the post-petition proceeding." *In re Adler*, 494 B.R. 58. This finding hold true "regardless of any knowledge by the issuing court or plaintiff and in spite of a debtor's formal severance from the proceeding." *Id.*; *see, e.g., Secs.*

11

*Investor Prot. Corp. v. Bernard Madoff Inv. Secs.*, 460 B.R. 106, 122 (Bankr. S.D. N.Y.2011); *Tucker v. Am. Int'l Grp.*, 745 F.Supp.2d 53, 63–64, 64 n.15 (D. Conn. 2010).

Here, the facts necessary to establish Mr. Myers' liability arose prepetition. Serv Trust was but an indivisible extension of Mr. Myers before this state court action began. Given that Serv Trust was never anything but Mr. Myers' alter ego, Mr. Myers was always the one real defendant contemplated in *Robins* and *Queenie*. Consequently, *Queenie*'s "immediate adverse economic consequences" test was triggered prepetition, and the automatic stay protects any non-debtor alter ego—Serv Trust—from further judicial action, just as surely as it shields the individual debtor, even though its status as an alter ego has not yet been ascertained. *See, e.g., In re Adler*, 494 B.R. 59.

Accordingly, pursuant to the *Robins* and *Queenie* line of cases, Mr. Myers' status as alter ego of Serv Trust would render any state court decision against Serv Trust a violation of 11 U.S.C. § 362(a)(1). *See, e.g., In re Adler*, 494 B.R. 59, *In re Winer*, 158 B.R. 736, 743 (N.D.Ill.1993); *In re Metal Ctr., Inc.*, 31 B.R. 458, 462–63 (Bankr.D.Conn.1983); *Funding Sys. Railcars, Inc. v. Pullman Std., Inc.*, 34 B.R. 706, 709 (N.D.Ill.1983). Since § 362(a)(1) plainly prohibits the "continuation of ... a judicial ... action or proceeding against the debtor," Mr. Myers' status as an alter ego of Serv Trust renders the state court suit a violation of the stay. 11 U.S.C. § 362(a)(1); *In re Adler*, 494 B.R. 59; *In re Pitts*, 2009 WL 4807615, at *3–4. As a violation of the automatic stay, any proceedings herein would be *void ab initio. In re Adler*, 494 B.R. 59 (citing *Rexnord Holdings v. Bidermann*, 21 F.3d 522, 527 (2d Cir.1994)).

Furthermore, the consequence of an alter ego determination is not simply the imposition of personal liability on Mr. Myers for the obligations of Serv Trust. Rather, since Serv Trust both lacked an existence separate from the person who controlled it and functioned as less than a bona

12

Appx. 0535

fide independent entity during the relevant time period, the acts of Serv Trust are actually the acts of the controlling individual— Mr. Myers. *See Elec. Switching Indus., Inc. v. Faradyne Elecs. Corp.*, 833 F.2d 418, 424 (2d Cir.1987); *Doctor's Assocs. v. Distajo*, 66 F.3d 438, 453–54 (2d Cir.1995) (quoting *Fisser v. Int'l Bank*, 282 F.2d 231, 234 (2d Cir.1960)), *aff'd,* 89 F.3d 109 (2d Cir.1996), *cert. denied,* 517 U.S. 1120 (1996). Accordingly, given the alter ego issues raised herein, the actions and assets of Serv Trust were always, as a matter of fact and law, the actions and assets of the Mr. Myers as an individual.

**IV.    Argument: In the Alternative, the Court Should Utilize its Equitable Discretion to Stay Proceedings Against Serv Trust**

In the event that the Court finds that Serv Trust is not covered by the automatic stay, this Honorable Court may still invoke its discretionary authority to stay the proceedings against *sub judice*. Such a stay would be well supported on equitable grounds, as continuing this litigation without Mr. Myers would invite only a parade of inequitable absurdities.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *In re Mut. Funds Inv. Litig.*, 2011 WL 3819608, at *1 (D. Md. 2011) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n. 6, (1998). Determining whether to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *In re Mut. Funds Inv. Litig.*, 2011 WL 3819608, at *1 (quoting *Landis*, 299 U.S. at 254–55). In striking this balance, courts look to factors such as the length of the requested stay, the hardship that that the movant would face if the motion were denied, the burden a stay would impose on the nonmovant, and whether the stay would promote judicial economy by avoiding duplicative

13

Appx. 0536

litigation. *In re Mut. Funds Inv. Litig.*, 2011 WL 3819608, at *1 (citing *Vasvari v. Rite Aid Corp.*, 2010 WL 3328210 (M.D. Pa. 2010).

Significant factors weigh in favor of this Honorable Court utilizing its equitable discretion to stay proceedings against Serv Trust. Given that Serv Trust was never anything but Mr. Myers' alter ego, Mr. Myers is an indispensable party in this matter and proceeding against Serv Trust alone would severely prejudice the Plaintiffs. Given that Serv Trust both lacked an existence separate from the person who controlled it and functioned as less than a bona fide independent entity during the relevant time period, the acts of Serv Trust are actually the acts of the controlling individual— Mr. Myers. As such, should a trial ensue without Mr. Myers, the Plaintiffs' claims nonetheless dictate that the trial will center around Mr. Myers' wrongful conduct.

Moreover, judicial economy concerns clearly indicate a stay is appropriate because the claims and parties are so interrelated. Proceeding against Serv Trust now would result in a second, nearly identical, litigation of the issues at a later date once Mr. Myers is able to proceed. For example, Mr. King King would have to unnecessarily be subject to deposition twice — once by counsel for Mr. Myers' alter ego of Serv Trust, and once by counsel for Mr. Myers – resulting in myriad potential absurdities and inequitable oddities.

Taking all of these factors into consideration, staying the proceedings against Serv Trust is undoubtedly the most equitable action. And, candidly, given that Mr. Myers' new bankruptcy appears to be a sham proceeding likely subject to dismissal, it is reasonably anticipated a stay need not last that long in any event.

## V.      Conclusion

WHEREFORE, the Plaintiffs respectfully pray this Honorable Court stay the above-captioned proceedings pending disposition of Defendant Gregory Mr. Myers' bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware.

14

Appx. 0537

Respectfully submitted,

THE VERSTANDIG LAW FIRM, LLC,

Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: 301-444-4600
Facsimile: 301-576-6885
E-mail: mac@mbvesq.com
*Counsel for the Plaintiffs*

## REQUEST FOR HEARING

Pursuant to, and in accord with, Maryland Rule 2-311(f), the Plaintiffs request a hearing on their Motion to Stay.

Maurice B. VerStandig, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March, 2019, I caused a true and correct copy of the foregoing paper to be served upon the following persons via First Class Mail, postage prepaid:

Dominic J. Souza, Esq.
Souza LLC
2543 Housley Road
Annapolis, Maryland 21401
*Counsel for Serv Trust*

Frances Wilburn, Esq.
Offit Kurman, P.A.
4800 Montgomery Lane
Suite 900
Bethesda, Maryland 20814
*Counsel for 6789 Goldsboro LLC*

15

Appx. 0538

Roger Schlossberg, Esq.
*In His Official Capacity as Trustee
of the Bankruptcy Estate of Gregory Myers*
18421 Henson Boulevard
Suite 201
Hagerstown, Maryland 21742

Michael B. Joseph, Esq.
*In His Official Capacity as Trustee
of the Second Bankruptcy Estate of Gregory Myers*
824 Market Street
P.O. Box 1351
Wilmington, DE 19899

Maurice B. VerStandig, Esq.

16

Appx. 0539

# Exhibit A

# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

BRIAN KING, *et al.*                                          :

    Plaintiffs,                                          :

    v.                                          :          **Case No.: 436977-V**

SERV TRUST, *et al.*                                          :

    Defendants,                                          :

and                                          :

ROGER SCHLOSSBERG                                          :
*In His Official Capacity as Trustee*
*of the Bankruptcy Estate of Gregory Myers*                                          :

    Nominal Defendant.                                          :

## PLAINTIFFS' MOTION TO STAY PROCEEDINGS PENDING DISPOSITION OF DEFENDANT'S SECOND BANKRUPTCY

Come now Brian King ("Mr. King"), Cristina King ("Mrs. King"), and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (the "Trustee of the Children's Trust," with the trust itself being known as the "Children's Trust") (Mr. King, Mrs. King, and the Trustee of the Children's Trust collectively known as the "Plaintiffs" and each sometimes being known as a "Plaintiff"), by and through undersigned counsel, and move this Honorable Court to stay the above-captioned proceedings pending disposition of Defendant Gregory Myers' bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware.

## I.     Introduction

There are only two non-nominal defendants in this case: Gregory Myers ("Mr. Myers") and Serv Trust. The Plaintiffs contend – both as an affirmative claim of their own and as an affirmative defense to the counterclaims of Serv Trust – that Serv Trust is the alter ego of Mr. Myers. Mr. Myers is now a debtor in two separate bankruptcy proceedings, in two separate judicial

1

Appx. 0541

districts. While the automatic stay no longer governs his first bankruptcy, since his discharge has been revoked on account of, *inter alia*, his extensive fraudulent conduct, it does currently attach to his second bankruptcy proceeding. And in the presence of that automatic stay, this case cannot meaningfully proceed.

Indeed, not only is Mr. Myers personally a party to this action, but Serv Trust – his alter ego – is the only other defendant herein. Governing law makes clear that in such a circumstance, where significant veil-piercing issues are implicated, the automatic stay extends to the non-debtor party (since such party is, legally speaking, an extension of the debtor himself). That is precisely the reality *sub judice*, and any effort to proceed with this case while dodging the veritable minefield of the automatic stay would be so fraught with legal peril and operative absurdities as to render the effort impractical and grossly inequitable.

## II. Factual Background

The factual background of this case is too extensive to set forth in sufficient detail herein, and the Plaintiffs incorporate by reference their First Amended Complaint, the Second Amended Complaint of Serv Trust (which is the subject of a pending motion to dismiss), their answer to the First Amended Complaint of Serv Trust, and the other pleadings comprising this file. In broad strokes, however, this matter concerns a real estate investment entity known as 6789 Goldsboro LLC ("Goldsboro") of which the Plaintiffs and Serv Trust were the original members.

The Plaintiffs originally sought herein a declaration that the membership of Serv Trust in Goldsboro has been redeemed by operation of the entity's operating agreement. Serv Trust, in turn, has filed three iterations of a counterclaim that alleges, generally speaking, contractual breaches and wrongful behavior on the part of one or more of the Plaintiffs.

As discovery in this case has progressed, however, it has become apparent that Serv Trust is actually the alter ego of its trustee, Mr. Myers, who used the trust vehicle to shield assets from

his numerous personal creditors. This has given rise to both an affirmative defense that Serv Trust lacks standing to pursue its counterclaims, as they are an asset of Mr. Myers' first bankruptcy estate, and a freestanding declaratory judgment claim establishing this alter ego construct so that Mr. Myers' bankruptcy trustee (also a party to this case, as a nominal defendant) may prosecute and defend the action accordingly.

To be sure, the alter ego issues are neither isolated nor lightly supported. The record herein shows, in fairly exacting detail, that Serv Trust was originally created by Mr. Myers' mother, for the supposed benefit of Mr. Myers' children. Mr. Myers has been a trustee of Serv Trust at all times relevant and, it appears, has exercised all decision making authority for Serv Trust – notwithstanding the nominal presence of a co-trustee – at all times relevant.

In or before 2009, Mr. Myers experienced financial difficulties and stopped paying the mortgages on numerous pieces of real property owned by himself, his wife, and/or him and his wife jointly. Following Mr. Myers' financial difficulties, Mr. Myers came to understand that his remaining assets, however great or meager, would eventually be subject to the attack and/or attachment of his creditors.

In or about 2013, Mr. Myers personally discovered the property ultimately acquired by Goldsboro, which was listed as being for sale, and which was being marketed as a single family home. Mr. Myers, having a background in the real estate industry, recognized the property to be on a parcel of land that could support additional dwelling units, and believed that parcel of land to be in a desirable location. Mr. Myers, owing millions of dollars to his creditors, facing the likely prospect of declaring bankruptcy in the coming years, and not having access to the funds requisite to acquire the property, sought out an investment partner and was introduced to Mr. King.

In negotiating a partnership with Mr. King, Mr. Myers did not want to take a subordinate

3

Appx. 0543

interest in the resulting entity in his own name, knowing that his creditors might be able to attach that interest, obtain a charging order against that interest, or otherwise take it from him. So instead of personally taking the interest in the resulting entity – an interest "funded" by the goodwill of Mr. Myers in finding the property, and the efforts Mr. Myers would expend managing Goldsboro – Mr. Myers indicated the interest would be held by Serv Trust. In accord with this arrangement, Serv Trust became the junior member of the resulting entity. Even though Mr. Myers was supposedly involved with the resulting entity in his role as a trustee of Serv Trust, he personally became the manager of the entity and oversaw efforts to assess development opportunities for the property, putting his own "sweat equity" into the project.

Early in the existence of 6789 Goldsboro, Mr. Myers approached Mr. King, indicated Mr. Myers needed money, and asked for a loan. Mr. King agreed to capitalize Goldsboro with monies to be loaned to Mr. Myers.

Critically, Mr. Myers asked that the loan be made to Serv Trust, instead of to him personally, but that the loan be given to him personally. From 2014 through 2016, Mr. Myers asked Mr. King to capitalize Goldsboro with money for loans to be made on at least twenty-eight (28) separate occasions, with the total of such loans equaling Six Hundred Thirty Thousand Dollars ($630,000.00) (the "Loans") and interest accruing on such loans. Many of the Loans were paid directly to either Mr. Myers or his wife, not to Serv Trust.

In asking for the Loans, Mr. Myers would often indicate the need in a personal regard – not in one aimed at any fiduciary obligation. By way of example, on April 22, 2016, Mr. Myers wrote to Mr. King, "Hey Brian - following up on our conversation the other day - I greatly appreciate you advancing June and July now ($30k) as the insurance company totally f'd me, and I'm on fumes here."

4

Mr. Myers followed up on April 25, 2016, "Brian - I'm dead in the water without the wire on/before May 2. Please reconsider and advance $15k on Monday May 2 (June advance), with the other $15k on May 8 (July advance). I wouldn't ask you to do this unless it was an emergency."

On June 9, 2016, Mr. Myers sent Mr. King another request for money, indicating that some of the money was needed for one of his children but that most of it was for other, completely unrelated things: "I only want to ask you for what I need to survive right now, which is $40k (which includes $15k to pay past tuition for Teddy so he can get his official transcript from Furman to transfer to Trinitiy; **$5k to keep my Chapter 11 alive**, $2,270 for monthly health insurance premiums; $3,500 in past due utilities; **$10k in legal fees for appeals**; food, gas, etc.)" (emphasis added).

It is believed Serv Trust was not, at the time, party to any litigation pending in any appellate court, and Serv Trust has never been a Chapter 11 debtor.

On July 14, 2016, Mr. Myers wrote to Mr. King, "I am sitting here bleeding waiting for Danielle - I have two checks that will be presented today totaling just **under $7k to an attorney - who, if my checks bounce, will withdraw from my appeal** - as well as my family's health insurance expired on July 1 and I am now past the grace period... I am respectfully requesting that you have Chris wire $10k this morning so I can cover these extremely critical payments while Danielle finishes her edits and we can get papers circulated. Holding up a $10k wire given where we are only hurts me." (emphasis added).

On May 16, 2016, Mr. Myers wrote to Mr. King, "Brian - I appreciate the June draw you sent on May 3, but I still need to get the $15k July draw early just to keep my head above water."

Even though Mr. Myers had personally guaranteed all of the Loans, he did not schedule Goldsboro as a creditor in his first bankruptcy and never mentioned his guarantee in his schedules

Appx. 0545

or any amendments thereto until such a time as Goldsboro entered an appearance in his bankruptcy proceedings. Both prior to, and during, his bankruptcy, Mr. Myers has used Serv Trust as a tool to access money from Goldsboro without that money becoming part of his bankruptcy estate or being otherwise subject to the attack or collection of his creditors or those of his wife (who has twice been a debtor in bankruptcy since Mr. Myers first became a debtor in bankruptcy).

This behavior is consistent with Mr. Myers' original goal of having the subordinate interest in Goldsboro be acquired by Serv Trust, and not in his own name or that of his spouse, so it would not be attackable by his creditors.

This behavior is also consistent with Mr. Myers' placing a large lien on one of his properties, in favor of Serv Trust (the "Lien"), with the goal of Serv Trust then being able to obtain funds from the sale of that property – for the personal use of Mr. Myers – before junior creditors of Mr. Myers could do so. The Lien became a source of early contention in Mr. Myers' bankruptcy case, as Mr. Myers sold the subject property, disputed nearly every lien on the property – except for Serv Trust's Lien – and made contradictory assertions about the size of the Lien, in an effort to deprive his creditors of money.

On February 15, 2017, following the filing of a motion to convert his first bankruptcy case from Chapter 11 to Chapter 7 (the "Motion to Convert"), filed by the United States of America through a trustee working in the Department of Justice, the United States Bankruptcy Court for the District of Maryland conducted a full evidentiary hearing on the Motion to Convert, at the conclusion of which the Court rendered an oral ruling converting the case to Chapter 7. As the United States Bankruptcy Court for the District of Maryland would later note, Mr. Myers' "failure to list Goldsboro in his initial schedules and his failure to disclose his personal guaranty of Goldsboro's advances to Serv Trust at the 341 Meeting was a significant factor in the Court's

6

Appx. 0546

decision to convert Myers' case."

On May 18, 2017, United States of America, by and through a trustee serving in the Department of Justice, brought an adversary proceeding in Mr. Myers' bankruptcy to have Mr. Myers' discharge denied (the "Motion to Deny Discharge"). On September 28, 2018, the United States Bankruptcy Court for the District of Maryland granted the Motion to Deny Discharge, issuing a lengthy written memorandum opinion (the "Denial Order").

In the Denial Order, the United States Bankruptcy Court for the District of Maryland observed "The timing of the loans from Goldsboro and the execution of the Goldsboro Guaranty, combined with Myers' obfuscation on his liability to Goldsboro at the 341 Meeting, are sufficient to find the requisite fraudulent intent for purposes of § 727(a)(4)... It is not believable that he simply forgot to include his largest unsecured creditor in the first several versions of his schedules when he had executed a personal guaranty in favor of that creditor six months prior to filing for bankruptcy and was requesting advances from the creditor up to and after filing his petition."

In the Denial Order, the United States Bankruptcy Court for the District of Maryland also observed "Myers was adamant at trial that every payment that he and/or Kelly ever received from Serv Trust was for the benefit of his children." Such testimony of Mr. Myers would have been untruthful in nature, as significant portions of such money were openly sought to pay Mr. Myers' legal fees in connection with various litigation matters (including his bankruptcy), as anecdotally established by the e-mails discussed above.

The Denial Order also observes, "the Court finds that the amount of Serv Trust's secured claim set forth on the Amended Schedule D was inflated and therefore, was a false claim and a false oath under § 727(a)(4)," going on to note that Mr. Myers seemed inclined to use the Serv Trust Lien as a means of receiving money from the proceeds from a sale of property until such a

7

time as Goldsboro – an unscheduled creditor – entered an appearance in this case and foreclosed that possibility.

The Denial Order also finds that Mr. Myers did not keep records of the money he received from Goldsboro (which was supposedly being loaned to Serv Trust) or of how that money was spent, even though he insisted (untruthfully) that it was spent on his children. Goldsboro filed a declaratory judgment action in the United States Bankruptcy Court for the District of Maryland, seeking a declaration that Serv Trust is Mr. Myers' alter ego (the "Bankruptcy Declaration Case"). On January 30, 2019, the United States Bankruptcy Court for the District of Maryland issued an order abstaining from the Bankruptcy Declaration Case and indicating it is more properly determined as part of the above-captioned action in this Honorable Court.

Then, in late February, Mr. Myers – in what one can only surmise to be an effort to forum shop his bankruptcy problems away from the court which issued the aforementioned written opinions – filed a second bankruptcy petition, this time in Delaware. Commensurate therewith, he docketed a suggestion of bankruptcy in this case. *See* DE #105.

### III. Argument: The Alter Ego Issues Permeating this Case Necessitate its Stay

It is well settled that where the identity of a bankruptcy debtor and a third party defendant are so intertwined as to raise veil-piercing or alter ego issues, the automatic stay extends to cover the non-debtor party. Here, the trustee from Mr. Myers' first bankruptcy is already a party to this case, given the intertwined nature of his assets and those of Serv Trust. But unless and until the trustee from his second bankruptcy can also be joined herein – which will require obtaining stay relief and the permission of a bankruptcy court in another state – this case simply cannot proceed.

"The automatic stay of 11 U.S.C. § 362(a)(1) prevents the 'commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement' of the bankruptcy case." *Dean v. Trans World*

8

Appx. 0548

*Airlines, Inc.*, 72 F.3d 754, 755 (9th Cir.1995). "[A]ctions taken in violation of the automatic stay are void." *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir.2000) (citing *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992)). It is well established that non-bankruptcy courts have concurrent jurisdiction with the bankruptcy court to determine the scope of the automatic stay. *See In re Baldwin-United Corp. Litig.*, 765 F.2d 343 (2d Cir.1985); *see also In re Colasuonno*, 697 F.3d 164, 172 n. 4 (2d Cir.2012).

By its terms, the automatic stay applies to actions against debtors, debtors' property, or estate property. Similarly, however, the stay also applies to non-debtors "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie Ltd. v. Nygard International ("Queenie")*, 321 F.3d 282, 287 (2d Cir.2003). Examples of actions where a claim will have an "immediate adverse economic consequence on the debtor's estate" include (1) "a claim to establish an obligation of which the debtor is a guarantor;" (2) "a claim against the debtor's insurer;" and (3) "'actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant.'" *Id.* at 288–89 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986)); *see also In re Ladieu*, 2011 WL 748566, at *19 (Bankr. D. Vt. 2011); *Ng v. Adler*, 518 B.R. 228, 246 (E.D.N.Y. 2014).

Here, Mr. Myers is the alter ego of Serv Trust, and under the facts presented, this creates such an identity between Mr. Myers and Serv Trust that a judgment in favor of the Plaintiffs against Serv Trust would be a judgment in favor of the Plaintiffs against Mr. Myers. *See Queenie*, 321 F.3d at 288 (applying the stay to a non-debtor corporation wholly owned by the debtor because adjudication of a claim against the non-debtor corporation would have an immediate adverse economic impact on the debtor); *see also In re Ladieu*, No. 07-10868, 2011 WL 748566, at *19.

9

Because of the nature of the Plaintiffs' allegations and claims it is not possible to draw a meaningful distinction between claims asserted against Mr. Myers and claims asserted by/against Serv Trust. *See Hittle v. City of Stockton, Cal.*, 2012 WL 3886099, at *3 (E.D. Cal. 2012) (citing to *Lewis v. Russell*, 2009 WL 1260290, at *2 (E.D.Cal. May 7, 2009)).

Ruling on issues concerning the liability of Serv Trust would require the court to consider the possible liability of Mr. Myers in violation of bankruptcy stay. *Id.* Therefore, the "'identity of interests' [between Mr. Myers and Serv Trust] provides the special or 'unusual circumstances' which justify an order that stays proceedings against" Serv Trust. *See Hittle v. City of Stockton, Cal.*, 2012 WL 3886099, at *3 (citing to *In re Family Health Servs., Inc.*, 105 B.R. 937, 942 (C. D. Cal.1989)).

The "adverse economic consequence" requirement, as articulated in *Queenie* and as derived from *Robins*, has been construed to include any perceptible economic harm to a non-party debtor's tangible or intangible property interest. *In re Adler*, 494 B.R. 43, 57 (Bankr. E.D.N.Y. 2013); *Stephen Inv. Secs. v. SEC*, 27 F.3d 339, 342 n.5 (8th Cir.1994); *N. Star Contracting v. McSpedon (In re N. Star Contracting Corp.)*, 125 B.R. 368, 370 (Bankr.S.D.N.Y.1991).

Since *Robins* and *Queenie*, courts have found the requisite economic harm to an individual debtor when the veil of a non-debtor corporation is pierced based on the alter ego doctrine, as the individual debtor has thereby been rendered personally liable for the relevant corporate debts. *In re Adler*, 494 B.R. 57-58; *S.I. Acquisition, Inc. v. Eastway Delivery Serv. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1147 (5th Cir.1987); *In re Kuecker Equip. Co.*, 338 B.R. 52, 60-61 (Bankr. W.D. Mo.2 006). Courts have regularly considered piercing the corporate veil or the relationship between the parties in analyzing whether the automatic stay should be extended to a non-debtor. *Ng v. Adler*, 518 B.R. 228, 247 (E.D.N.Y. 2014); *See, e.g., In re Ladieu*, 2011 WL 748566,

10

at *19 ("Ladieu is the sole member of Galadieu, and under the facts presented, this creates such an identity between Ladieu and Galadieu that a judgment for Rentreak against Galadieu for default under the Agreement would be a judgment in favor of Rentreak against Ladieu."); *M.E.S., Inc. v. M.J. Favorito Elec., Inc.*, No. 08-CV-0183, 2010 WL 959604, at *2 (E.D.N.Y. Mar. 15, 2010) (finding that there was "no reason to distinguish this case from Queenie" because it was undisputed that debtors wholly owned the corporations to which the automatic stay was sought to apply).

"Critically, when a corporate veil is so pierced, the controlling debtor's liability attaches not as of the issue date of any formal piercing judgment; rather, it had attached at the moment in time in which the factual elements of the piercing remedy, as dictated by governing law, had materialized." *In re Adler*, 494 B.R. 58. "Consequently, so long as the facts necessary to establish a debtor's liability pursuant to [the state's] piercing doctrine arose prepetition, *Queenie*'s "immediate adverse economic consequences" test had been triggered prepetition, and the automatic stay protected any non-debtor alter ego corporation from further judicial action, just as surely as it shielded the individual debtor, even though its status as an alter ego had not yet been ascertained." *Id.*; *see Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline)*, 472 B.R. 98, 103 (B.A.P. 10th Cir.2012). As such, "if two judicial determinations have been made—(1) one or more non-debtor corporations has been found liable for a prepetition debt on a cause of action asserted in a post-petition proceeding, and (2) the veil between these corporate alter egos and the non-party debtor has been pierced—the § 362(a)(1) stay was violated by the post-petition proceeding." *In re Adler*, 494 B.R. 58. This finding hold true "regardless of any knowledge by the issuing court or plaintiff and in spite of a debtor's formal severance from the proceeding." *Id.*; *see, e.g., Secs.*

11

*Investor Prot. Corp. v. Bernard Madoff Inv. Secs.*, 460 B.R. 106, 122 (Bankr. S.D. N.Y.2011); *Tucker v. Am. Int'l Grp.*, 745 F.Supp.2d 53, 63–64, 64 n.15 (D. Conn. 2010).

Here, the facts necessary to establish Mr. Myers' liability arose prepetition. Serv Trust was but an indivisible extension of Mr. Myers before this state court action began. Given that Serv Trust was never anything but Mr. Myers' alter ego, Mr. Myers was always the one real defendant contemplated in *Robins* and *Queenie*. Consequently, *Queenie*'s "immediate adverse economic consequences" test was triggered prepetition, and the automatic stay protects any non-debtor alter ego—Serv Trust—from further judicial action, just as surely as it shields the individual debtor, even though its status as an alter ego has not yet been ascertained. *See, e.g., In re Adler*, 494 B.R. 59.

Accordingly, pursuant to the *Robins* and *Queenie* line of cases, Mr. Myers' status as alter ego of Serv Trust would render any state court decision against Serv Trust a violation of 11 U.S.C. § 362(a)(1). *See, e.g., In re Adler*, 494 B.R. 59, *In re Winer*, 158 B.R. 736, 743 (N.D.Ill.1993); *In re Metal Ctr., Inc.*, 31 B.R. 458, 462–63 (Bankr.D.Conn.1983); *Funding Sys. Railcars, Inc. v. Pullman Std., Inc.*, 34 B.R. 706, 709 (N.D.Ill.1983). Since § 362(a)(1) plainly prohibits the "continuation of ... a judicial ... action or proceeding against the debtor," Mr. Myers' status as an alter ego of Serv Trust renders the state court suit a violation of the stay. 11 U.S.C. § 362(a)(1); *In re Adler*, 494 B.R. 59; *In re Pitts*, 2009 WL 4807615, at *3–4. As a violation of the automatic stay, any proceedings herein would be *void ab initio. In re Adler*, 494 B.R. 59 (citing *Rexnord Holdings v. Bidermann*, 21 F.3d 522, 527 (2d Cir.1994)).

Furthermore, the consequence of an alter ego determination is not simply the imposition of personal liability on Mr. Myers for the obligations of Serv Trust. Rather, since Serv Trust both lacked an existence separate from the person who controlled it and functioned as less than a bona

12

Appx. 0552

fide independent entity during the relevant time period, the acts of Serv Trust are actually the acts of the controlling individual— Mr. Myers. *See Elec. Switching Indus., Inc. v. Faradyne Elecs. Corp.,* 833 F.2d 418, 424 (2d Cir.1987); *Doctor's Assocs. v. Distajo,* 66 F.3d 438, 453–54 (2d Cir.1995) (quoting *Fisser v. Int'l Bank,* 282 F.2d 231, 234 (2d Cir.1960)), *aff'd,*89 F.3d 109 (2d Cir.1996), *cert. denied,*517 U.S. 1120 (1996). Accordingly, given the alter ego issues raised herein, the actions and assets of Serv Trust were always, as a matter of fact and law, the actions and assets of the Mr. Myers as an individual.

**IV.    Argument: In the Alternative, the Court Should Utilize its Equitable Discretion to Stay Proceedings Against Serv Trust**

In the event that the Court finds that Serv Trust is not covered by the automatic stay, this Honorable Court may still invoke its discretionary authority to stay the proceedings against *sub judice.* Such a stay would be well supported on equitable grounds, as continuing this litigation without Mr. Myers would invite only a parade of inequitable absurdities.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *In re Mut. Funds Inv. Litig.,* 2011 WL 3819608, at *1 (D. Md. 2011) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936)); *see also Air Line Pilots Ass'n v. Miller,* 523 U.S. 866, 879 n. 6, (1998). Determining whether to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *In re Mut. Funds Inv. Litig.,* 2011 WL 3819608, at *1 (quoting *Landis,* 299 U.S. at 254–55). In striking this balance, courts look to factors such as the length of the requested stay, the hardship that that the movant would face if the motion were denied, the burden a stay would impose on the nonmovant, and whether the stay would promote judicial economy by avoiding duplicative

13

litigation. *In re Mut. Funds Inv. Litig.*, 2011 WL 3819608, at *1 (citing *Vasvari v. Rite Aid Corp.*, 2010 WL 3328210 (M.D. Pa. 2010).

Significant factors weigh in favor of this Honorable Court utilizing its equitable discretion to stay proceedings against Serv Trust. Given that Serv Trust was never anything but Mr. Myers' alter ego, Mr. Myers is an indispensable party in this matter and proceeding against Serv Trust alone would severely prejudice the Plaintiffs. Given that Serv Trust both lacked an existence separate from the person who controlled it and functioned as less than a bona fide independent entity during the relevant time period, the acts of Serv Trust are actually the acts of the controlling individual— Mr. Myers. As such, should a trial ensue without Mr. Myers, the Plaintiffs' claims nonetheless dictate that the trial will center around Mr. Myers' wrongful conduct.

Moreover, judicial economy concerns clearly indicate a stay is appropriate because the claims and parties are so interrelated. Proceeding against Serv Trust now would result in a second, nearly identical, litigation of the issues at a later date once Mr. Myers is able to proceed. For example, Mr. King King would have to unnecessarily be subject to deposition twice – once by counsel for Mr. Myers' alter ego of Serv Trust, and once by counsel for Mr. Myers – resulting in myriad potential absurdities and inequitable oddities.

Taking all of these factors into consideration, staying the proceedings against Serv Trust is undoubtedly the most equitable action. And, candidly, given that Mr. Myers' new bankruptcy appears to be a sham proceeding likely subject to dismissal, it is reasonably anticipated a stay need not last that long in any event.

V.   Conclusion

WHEREFORE, the Plaintiffs respectfully pray this Honorable Court stay the above-captioned proceedings pending disposition of Defendant Gregory Mr. Myers' bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware.

14

Appx. 0554

Respectfully submitted,

THE VERSTANDIG LAW FIRM, LLC,

Maurice B. VerStandig, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: 301-444-4600
Facsimile: 301-576-6885
E-mail: mac@mbvesq.com
*Counsel for the Plaintiffs*

## REQUEST FOR HEARING

Pursuant to, and in accord with, Maryland Rule 2-311(f), the Plaintiffs request a hearing

on their Motion to Stay.

Maurice B. VerStandig, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March, 2019, I caused a true and correct copy of

the foregoing paper to be served upon the following persons via First Class Mail, postage

prepaid:

Dominic J. Souza, Esq.
Souza LLC
2543 Housley Road
Annapolis, Maryland 21401
*Counsel for Serv Trust*

Frances Wilburn, Esq.
Offit Kurman, P.A.
4800 Montgomery Lane
Suite 900
Bethesda, Maryland 20814
*Counsel for 6789 Goldsboro LLC*

15

Appx. 0555

Roger Schlossberg, Esq.
*In His Official Capacity as Trustee
of the Bankruptcy Estate of Gregory Myers*
18421 Henson Boulevard
Suite 201
Hagerstown, Maryland 21742

Michael B. Joseph, Esq.
*In His Official Capacity as Trustee
of the Second Bankruptcy Estate of Gregory Myers*
824 Market Street
P.O. Box 1351
Wilmington, DE 19899

Maurice B. VerStandig, Esq.

Appx. 0556

# Exhibit B

18

# EXHIBIT A B

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
-------------------------------X
                                :
BRIAN KING, ET AL.,             :
                                :
          Plaintiffs,           :
                                :
               v.               :          Civil No. 436977
                                :
SERV TRUST, ET AL.,             :
                                :
          Defendants.           :
                                :
-------------------------------X
```

EXCERPT FROM HEARING

Rockville, Maryland                                January 3, 2023

DEPOSITION SERVICES, INC.
P.O. BOX 1040
Burtonsville, Maryland 20866
(301) 881-3344

Appx. 0558

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
-------------------------------X
                                :
BRIAN KING, ET AL.,             :
                                :
        Plaintiffs,             :
                                :
            v.                  :        Civil No. 436977
                                :
SERV TRUST, ET AL.,             :
                                :
        Defendants.             :
                                :
-------------------------------X
```

Rockville, Maryland

January 3, 2023

WHEREUPON, the proceedings in the above-entitled matter commenced

BEFORE:    THE HONORABLE DAVID W. LEASE, JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

MAURICE B. VERSTANDIG, Esq.
9812 Falls Road, No. 114-160
Potomac, Maryland 20854

FOR THE DEFENDANTS:

ERIC PELLETIER, Esq.
FRANCES WILBURN, Esq.
Offit Kurman, P.A.
7501 Wisconsin Avenue, Suite 1000W
Bethesda, Maryland 20814

FRANK J. MASTRO, Esq.
Schlossberg, Mastro & Scanlan
P.O. Box 2067
Hagerstown, Maryland 21742

Appx. 0559

3

P R O C E E D I N G S

THE COURT: And under the Frow doctrine you can, either one of two things: you sort of abstain from going forward because you don't want to try it twice, or two, you can enter the judgment, but then it's a non-final judgment because anything that I do today in essence necessarily would be non-final because we don't have, we're not putting all of the claims against all the parties are not getting to an adjudication. So we don't have a final judgment today under any circumstance.

(End of requested portion of the proceeding.)

THE COURT: The reason is sort of I would go forward on their claim today, as opposed to waiting until the defaulting parties, because I don't know when and if Mr. Myers would ever be subject to actual determination in this court, depending on what the bankruptcy courts decide. They could modify the claims or reduce the claims.

(End of requested portion of the proceeding.)

4

√ Digitally signed by Margaret L. vanEkeren

DIGITALLY SIGNED CERTIFICATE

**DEPOSITION SERVICES, INC.** hereby certifies that the attached pages represent an accurate transcript of the electronic sound recording of the proceedings in the Circuit Court for Montgomery County in the matter of:

Civil No. 436977

BRIAN KING, ET AL.

v.

SERV TRUST, ET AL.

By:

*Margaret L. vanEkeren*

———————————————————

Margaret L. vanEkeren
Transcriber

Appx. 0561

# Exhibit C

Appx. 0562

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
-------------------------------X
                               :
BRIAN KING, ET AL.,            :
                               :
        Plaintiffs,            :
                               :
            v.                 :        Civil No. 436977
                               :
SERV TRUST, ET AL.,            :
                               :
        Defendants.            :
                               :
-------------------------------X
```

ORAL OPINION

Rockville, Maryland                            April 17, 2023

DEPOSITION SERVICES, INC.
PO Box 1040
Burtonsville, Maryland 20866
(301) 881-3344

Appx. 0563

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
--------------------------------X
                                 :
BRIAN KING, ET AL.,              :
                                 :
          Plaintiffs,            :
                                 :
               v.                :          Civil No. 436977
                                 :
SERV TRUST, ET AL.,              :
                                 :
          Defendants.            :
                                 :
--------------------------------X
```

Rockville, Maryland

April 17, 2023

WHEREUPON, the proceedings in the above-entitled matter commenced

    BEFORE:   THE HONORABLE DAVID W. LEASE, JUDGE

    APPEARANCES:

FOR THE PLAINTIFFS:

MAURICE B. VERSTANDIG, Esq.
Verstandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854

FOR 6789 GOLDSBORO, LLC:

FRANCES C. WILBURN, Esq.
ERIC J. PELLETIER, Esq.
Offit Kurman, P.A.
7501 Wisconsin Avenue
Suite 1000W
Bethesda, Maryland 20814

Appx. 0564

APPEARANCES, Continued:

FOR ROGER SCHLOSSBERG:

FRANK J. MASTRO, Esq.
Schlossberg, Mastro & Scanlan
P. O. Box 2067
Hagerstown, Maryland   21742

FOR SERV TRUST:

LAURIN H. MILLS, Esq.
Samek, Werther & Mills, LLC
2000 Tower Oaks Boulevard
Suite 200
Rockville, Maryland   20852

4

P R O C E E D I N G S

THE BAILIFF: The Circuit Court for Montgomery County is now in session, the Honorable David W. Lease presiding.

THE COURT: Good morning, everybody. Please be seated.

THE CLERK: Calling Civil Case 436977V, Brian King, et al v. Serv Trust, et al.

THE COURT: All right, good morning. If we could go ahead and have the parties identify themselves, starting with the King plaintiffs' attorneys and then Goldsboro's attorneys and then for Serv Trust?

MR. VERSTANDIG: Good morning, Your Honor. Maurice Verstandig on behalf of the King parties.

MS. WILBURN: Good morning, Your Honor. Frannie Wilburn on behalf of 6789 Goldsboro.

MR. PELLETIER: Good morning, Your Honor. Eric Pelletier here on behalf of 6789 Goldsboro.

MR. MASTRO: Good morning, Your Honor. Frank Mastro on behalf of the Chapter 7 trustee, Roger Schlossberg, who is a nominal defendant in this action. Mr. Schlossberg is with us today as well.

THE COURT: Okay.

MR. SCHLOSSBERG: Good morning, Your Honor. Roger Schlossberg, trustee.

THE COURT: All right, good morning.

5

MR. MILLS: And good morning, Your Honor, Lauren Mills on behalf of Serv Trust.

THE COURT: All right, good morning. So this matter is before the Court. There are several open motions to address today. The primary motion that is of concern was the motion by Serv Trust to in essence alter or amend judgment in the case. And there was -- then there was lines to strike them by the trustee, basically arguing that due to the Court's decision in the case, finding that Serv Trust was the alter ego of Mr. Myers, that once and immediately after that decision was made, Serv Trust became an asset of the bankrupt estate, and therefore the Court did not have -- I guess in essence lost jurisdiction to address the motion for reconsideration or to alter or amend without leave of the United States Bankruptcy Court.

Serv Trust countered that by arguing that the Court could hear the case, because it was a non-final judgment that the Court does have authority under the Maryland rules to address motions to alter or amend, especially if they've been filed within the ten day time period which then stays the time for which a party has to file an appeal, and certainly delays the finality of any judgment entered by the Court.

We heard that motion back on February 27th. I apologize to the parties for taking such a long time to get

6

back to you.  But that's because whenever I had a free moment, I was trying to do a very deep dive to determine if I could find anything that remotely looked like this case with respect to this initial issue where there was a non-final judgment that had some effect on the bankrupt estate, and then there were some attempts at post-judgment motions in the State court to see how that would work out.

Frankly, I didn't find anything.  I took a fairly -- I wanted to find something, because otherwise it is a very sort of unique issue that I understand really both sides' arguments fairly well, and they both have some intuitive value to them.  So, in looking at it -- so with respect to the initial issue here as to whether this Court can even reach the merits of the motion to alter or amend, what I've decided -- and really, there's much authority to it other than the Court has authority under the Maryland rules to control its judgments that are non-final.

I understand the bankruptcy issue, and it may well be correct, but I just think in terms of the authority of the state court, which under the federal system -- when you look at the federalism here, even though bankruptcy would issue a stay, because the asset becomes part of the bankruptcy estate because of this Court's order -- and I believe that the Court does have jurisdiction to consider the merits of the underlying final order, since that is the triggering mechanism which provides

7

the bankruptcy court with the additional assets for the estate. And therefore, based upon that, I would reach the merits of the underlying motion in this case.

Therefore, I will -- there was a motion to strike the trustee's line withdrawing Serv Trust's motion for new trial or to alter or amend judgment. Therefore, based on my ruling, I will deny -- strike that -- I will grant that motion and strike the line withdrawing the response.

So we next turn to the motion for new trial or to alter or amend judgment in the case. It really comes down to one -- the defendant Serv Trust is arguing in essence a lack of notice of the trial date in this case. And, you know, again, I went back, I looked at the docket entries in some detail, because the first issue that came up was that there was no docket entry setting the trial date in this case. So I wanted to make sure whether that was correct or not correct.

However, there is -- we had a hearing on October 6, 2022. At that hearing, the Court set a trial date of January 3, 2023 for a three-day court trial. There is docketed on the -- in the docket -- the hearing sheet from that hearing which sets forth both the trial date of January 3rd as well as the pre-trial date. Therefore, there was a docket entry specifically addressing the trial in this matter and as I think was pointed out by the plaintiffs in this case, the Court of Appeals has been very clear about the fact that any party to a

Appx. 0569

8

litigation is deemed to have knowledge of the docket entries and is charged with that knowledge.

Here, there was clearly a docket entry that noted the court trial in this case. So I do think that there -- initially there's at least constructive notice of the court trial by Serv Trust in this matter.

Additionally, as the trial was approaching on November 28, 2022, there was a motion filed seeking to place Serv Trust in default. That was a default that came about -- the fact that they had had a prior attorney -- and I'll just note for the record that Serv Trust had actively participated in the litigation -- significant participation. Counsel was involved, filing motions. Counsel then withdrew their appearance. Serv Trust was given notice that they had 15 days to add a new counsel or that they could be deemed to be in default in this case.

Serv Trust never sought to hire new counsel until after the judgment in the case was entered. But with respect to notice, the motion to default that was filed against Serv Trust specifically noted the trial date in the motion. And that motion was served on Daniel Ring as trustee of Serv Trust, even though they did not have counsel in the case.

I would note also on December 20, 2022, a motion to hold debtor's pending motions -- and those would be of the debtor Mr. Myers in abeyance pending termination of the

Appx. 0570

9

automatic stay -- was also served on Daniel Ring as trustee for Serv Trust.

The first numbered paragraph in that pleading lists the trial date of January 3, 2023. Additionally, there was a number of filings by Mr. Myers in the case. And I've looked at them. They did not specifically address the trial date. They were all served on Mr. Ring as trustee. So between all of that, there's no doubt in the Court's mind that Mr. Ring as the trustee had not only constructive knowledge of the trial date, but actual knowledge of the trial date in this matter.

So, and lastly, the Court had found that Mr. Myers was the alter ego of Serv Trust, and as the alter ego, knowledge of Mr. Myers would certainly be imputed to Serv Trust in this case. And so the request for a new trial or to alter or amend judgment based on lack of notice to Serv Trust I don't believe is with merit, given the facts as outlined -- as I've just outlined them, that they had notice. I think what they did is they waited until after the trial, and then when they didn't like what had happened, or when Mr. Myers' efforts to delay or prevent the trial from going forward were ultimately unsuccessful and the plaintiffs were able to get a remand so quickly from the Florida bankruptcy court in this matter, that they then sought counsel and did what they should have been doing back within 15 days of the original order when their counsel left the case.

Appx. 0571

10

So we have a situation where I do believe that the judgment was correct under the facts and I don't believe that there's been anything set forth that would justify a new trial or a motion to alter or amend the judgment in this case. Therefore, I'll deny the motion to alter or amend or for new trial in this matter.

All right? I think there might be some -- I don't know if there are other motions to strike. Also, just so I note, there was also a motion to stay pending the decision of this case. That motion will be denied as moot at this point. All right? And if there were other motions to strike, other withdrawals, I'll address those as being granted in the sense that the withdrawals will be just to clean up the docket and file in the case.

All right? So I think that concludes everything unless anybody has any clarification of my ruling in the case.

(No response.)

THE COURT: Hearing no response, I will -- yes, ma'am?

MS. WILBURN: Who will be handling the order?

THE COURT: Excuse me?

MS. WILBURN: The order -- will you do that?

THE COURT: Yes, we'll do an order. We'll just do the order. Okay. We'll just do it.

MS. WILBURN: Thank you, Your Honor.

Appx. 0572

11

THE COURT:  There's too many parties to try to figure out who's going to draft it and circulate it.  I'll just do the order myself and we'll get it done.

All right, so we'll get that order in.  I'm sure that this won't be the last we'll hear of this matter.  So, I appreciate everybody's -- I will just say this.  I appreciate everybody's memoranda and pleadings.  I thought they were very good.  Very helpful to the Court.  I think -- on that first issue, I think there just isn't any law out there.  And so, I don't know if this would be the case that makes that or not, but I really wanted to find something, and I just couldn't.

But again, thanks everybody for your efforts.  I appreciate it very much.  I hope you all have a pleasant rest of your day.  All right?

ALL COUNSEL:  Thank you, Your Honor.

THE BAILIFF:  All rise.

(The proceedings were concluded.)

Appx. 0573

12

Digitally signed by Patricia H. Musso

DIGITALLY SIGNED CERTIFICATE

**DEPOSITION SERVICES, INC.** hereby certifies that the attached pages represent an accurate transcript of the electronic sound recording of the proceedings in the Circuit Court for Montgomery County in the matter of:

Civil No. 436977

BRIAN KING, ET AL.

v.

SERV TRUST, ET AL.

By:

_____

Patricia H. Musso
Transcriber

Appx. 0574

# Exhibit D

Appx. 0575

IN THE APPELLATE COURT OF MARYLAND

| | | |
|---|---|---|
| GREGORY BRIAN MYERS | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No. ACM-REG-1876-2022 |
| | ) | |
| BRIAN KING, et al. | ) | September Term 2022 |
| | ) | |
| Appellees. | ) | |
| | ) | |

## OPPOSITION TO EMERGENCY MOTION FOR STAY PENDING APPEAL

Come now Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, the "King Parties"), appellees herein, by and through undersigned counsel, in opposition to Emergency Motion for Stay Pending Appeal (the "Motion") filed by Gregory B. Myers ("Mr. Myers" or the "Appellant"), and in support thereof state as follows:

### I.    Introduction

After years of delay tactics, the Appellant endeavored to remove the case below, to a Florida bankruptcy court, on the last business day before trial. When that tactic failed, courtesy of a prompt remand, the Appellant failed to appear at trial but filed a *carte blanche* appeal prior to the Circuit Court for Montgomery County, Maryland giving an oral ruling at the close of the trial (and well before a written order would file several days later). He now seeks an emergency stay pending disposition of that appeal but, in so doing, misses at least three critical issues: (i) a motion for a stay pending appeal must first be brought in the trial court; (ii) this appeal is procedurally improper inasmuch as it stems from a non-final order; and (iii) the Appellant is unlikely to succeed

1

Appx. 0576

on this appeal by virtue of the simple reason that he did not appear at trial and, as such, did not preserve any issues for appeal.[1]

For these reasons, and as extrapolated upon *infra*, the Motion merits denial.

## II.     Background: Gregory Myers and Barbara Ann Kelly

The ruling below concerns Mr. Myers and his wife, Barbara Ann Kelly ("Ms. Kelly"), using a trust (putatively established for the benefit of their children) to conceal assets from creditors, including a bankruptcy trustee. This case, however, falls within a broader context, where the litigation tactics of Mr. Myers and Ms. Kelly – including those focused on appellate filings – have, time and again, been held to be exemplars of bad faith.

As noted by one court more than two years ago, in assessing Mr. Myers' bad faith litigation tactics:

> [O]ver the past three years, Myers has filed approximately twenty actions, to include fifteen bankruptcy appeals and five civil cases, seemingly for the purpose of delaying the liquidation of his assets in his bankruptcy case. The overwhelming majority of these cases have been dismissed either by the Court or by Myers voluntarily after Myers failed to designate the record, file a brief, or pay his filing fees…

*Myers v. McNamee, Hosea, Jernigan, Kim, Greenan, & Lynch, P.A.*, 2020 WL 758154, at \*1 (D. Md. 2020).

The United States District Court for the District of Maryland proceeded to further analyze how Mr. Myers' litigious efforts are vexatious in the worst way:

> This behavior has become a longstanding pattern for Myers. In his twenty cases, Myers initiates the action, then exhibits a dereliction in prosecution that reflects no real interest in resolution on the merits. The Court cannot help but conclude that

---

[1] The Appellants first learned of the Motion yesterday. As noted in a separate filing, it appears Mr. Myers – in what has now become a pattern of his – signed a certificate of service but never actually deposited a copy of the Motion in the mails. Save for the happenstance of counsel for a related party checking the docket, the pendency of the Motion would not have been timely discovered. The King Parties hope to supplement this with a more extensive brief in the coming days but, in the interim, file this opposition out of an abundance of caution.

2

Appx. 0577

Myers' true goal is to gum up the judicial process for his own personal benefit and ignore valid court orders as he sees fit. Taking all of this into account, the Court finds that Myers' behavior has reached the point where the Court could hold Myers in contempt of valid court orders and dismiss the action irrespective of the automatic stay.

*Myers*, 2020 WL 758154, at *4 (citing *In re Walters*, 868 F.2d 665, 669 & n.2 (4th Cir. 1989); *CapitalSource Fin., LLC v. Delco Oil, Inc.*, 2010 WL 3733934, at *7 (D. Md. 2010); *S.E.C. v. Bilzerian*, 131 F. Supp. 2d 10, 15 (D. D.C. 2001), aff'd, 75 Fed. Appx. 3 (D.C. Cir. 2003)).

Other courts have, too, found bad faith to be afoot, when confronted with Mr. Myers' various tactics (including his flurry of emergency motions). *See, e.g.*, *Kelly v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 2022 WL 861395, at *3 (D. Md. 2022) ("…the Court finds that Appellants Barbara Ann Kelly and Gregory B. Myers are acting in bad faith."); *Myers v. Schlossberg*, 2019 WL 414875, at *1 (D. Md. 2019) ("Appellants have persisted in questionable litigation strategy that can only be viewed as dilatory and irresponsible."); *In re Myers*, 2023 WL 350183, at *5 (Bankr. M.D. Fla. 2023) ("Debtor's actions throughout the course of this bankruptcy case demonstrate that he did not file his Chapter 13 case or the Plan in good faith").

### III.   Argument: Mr. Myers Did Not First Seek a Stay in the Trial Court

Stays pending appeal are governed by Maryland Rule 8-422, and appellate injunctions are governed by Maryland Rule 8-425. Both require the movant to first seek relief in the trial court, though one my bypass that step in the prism of an injunction if seeking the lower court's review "is not practicable." Md. Rule 2-425(b).

Here, Mr. Myers did not seek a stay or an injunction in the Circuit Court for Montgomery County, Maryland. And, while he now feigns the instant Motion to be an "emergency," he also elected to file the same more than three months after noticing this appeal. There was ample time for Mr. Myers to seek a stay below; he has just elected to not do so.

Appx. 0578

To be sure, this is not a mere formality. If Mr. Myers is seeking injunctive relief, his filing a motion below would have allowed for full briefing of the matter – and introduction of any pertinent evidence – before this Honorable Court was confronted with the same requested. Yet Mr. Myers did not do so: instead he waited three months and then filed an "emergency" motion without offering any explanation as to how matters are more critical today than they were the day the partial judgment was entered in the trial court.

## IV.    Argument: There is No Appellate Jurisdiction

More macroscopically, there is no reason to grant a stay pending appeal because Mr. Myers, as a matter of law, cannot prevail on this appeal. Even putting aside the oddity of his having noted the appeal *before* an oral ruling was had at the close of trial (let alone before a written order was entered), the order from which Mr. Myers instantly seeks a stay is, by its own express terms, non-final. Indeed, the document is titled "Order Entering Partial Judgment and Stay," and the order most certainly does not dispose of the totality of the triable issues below.

Familiarly, "The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." Md. Code Ann., Cts. & Jud. Proc. § 12-301. And while certain interlocutory orders are rendered appealable by Section 12-303 of the Courts and Judicial Proceedings Article, the order below does not nearly fall into one of those specifically-delineated interlocutory categories.

The non-appealability of non-final judgments, in turn, is well established in this Honorable Court. *See, e.g., Paul v. Clarke*, 2015 WL 9394120, at *1 (Md. App. 2015) ("To constitute a final judgment, the judgment must have several attributes. One of which is that it must "adjudicate or complete the adjudication of all claims against all parties [.]" The order from which appellants

4

appealed did not adjudicate or complete the adjudication of any claim in this matter. It therefore was not a final order and, as a consequence, this Court has no jurisdiction to entertain this appeal.") (quoting *Board of Liquor License Commissioners for Baltimore City v. Fells Point Cafe, Inc.*, 344 Md. 120, 129 (1996) (quoting *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989))).

Here, the order below is, by its own titular designation, "partial" in nature. There are no less than three causes of action that have not yet been tried judgment and, accordingly, upon which no judgment has been entered.[2] Thusly, it cannot be said that appellate jurisdiction is instantly manifest and, by extension, it cannot be postured that Mr. Myers has any likelihood of success on this appeal.

## V.     Argument: Mr. Myers Did Not Appear at Trial

This brief is being largely written from a restaurant in rural New England since, as previously noted, Mr. Myers appears to have an affinity for signing certificates of service saying he has placed items in the mail when, in reality, he never did so. It is hoped that the pending motion for an extension of time to reply to the Motion will be granted, and a more substantive argument may be offered forth. In the interim, however, and in the interests of quickly filing something after learning of the Motion on very short notice (courtesy of a fellow lawyer randomly checking the docket), it bears notation that Mr. Myers did not appear at trial in this matter and, as such, did not raise any of these issues at trial.

To be sure, it is not a coincidence that Mr. Myers failed to appeal at trial. During the pre-trial conference, he informed the trial court judge that there would be no trial. And then, seemingly

---

[2] One of Mr. Myers' favored arguments is that despite two cases being consolidated, they cannot be regarded as a singular case. While he alludes to this in his Motion, the argument is of no moment *sub judice*; there remain unresolved causes of action in *both* cases that were consolidated below and, as such, there does not exist a final order in either case, even if they were to be considered separately.

5

Appx. 0580

eager to prove that prophecy to be sage, on the last business day before trial, Mr. Myers removed this case to the United States Bankruptcy Court for the Middle District of Florida. But undersigned counsel, content to spend part of a holiday weekend away from the party scene, filed an emergency remand motion which, in turn, was granted on the first day of trial – before the open of business. And, thusly, after Mr. Myers endeavored to sabotage the trial herein (not for the first time – procedural delay is one of his well-established hallmarks), he never appeared at trial. In fact, it is not even clear if he was in the same state at the time of trial.

All of this matters because Mr. Myers, of course, did not raise any issues at trial since he did not appear at trial. And, as a matter of hornbook law, "A contention not raised below either in the pleadings or in the evidence and not directly passed upon by the trial court is not preserved for appellate review." *Baltimore Cnty., Maryland v. Aecom Services, Inc.*, 28 A.3d 11, 35 (Md. App. 2011) (quoting *Zellinger v. CRC Dev. Corp.*, 281 Md. 614, 620 (1977)).

Mr. Myers has failed to preserve any issues below and, as such, cannot succeed on any appellate arguments (saving, perhaps, one of subject matter jurisdiction) with the case in its current posture. But such is actually not fatal to Mr. Myers' cause; as noted *supra*, there is not yet a final order in this case and, as such, not yet a completed record below. Mr. Myers is free to raise certain issues with the trial court (provided they relate to matters still pending below), and to create a record to be utilized at such a time as this case becomes properly appealable. But, as of present, he has not done so, and this case is most certainly not appealable.

## VI.   Conclusion

WHEREFORE, the King Parties respectfully pray this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

6

Appx. 0581

Respectfully submitted,

Dated: April 28, 2023

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 76723
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the King Parties*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2023, I electronically filed the foregoing with the MDEC

system, and I further caused the same to be served by U.S. Mail to Gregory Myers, 700 Gulf Shore

Blvd. North, Ft. Myers, Florida 34102.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

7

Appx. 0582

# Exhibit E

Case 24-00007   Doc 19-5   Filed 01/21/25   Page 2 of 3

Case 8:26-cv-02175-TDC   Document 12-3   Filed 07/29/25   Page 106 of 453

Case 15-26033   Doc 1040-1   Filed 05/07/24   Page 1 of 2   E-FILED; Montgomery Circuit Court
Docket: 5/7/2024 8:04 AM; Submission: 5/7/2024 8:04 AM
Envelope: 16342212

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| BRIAN KING, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 436977-V |
| ) | |
| SERV TRUST, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| ) | |
| 6789 GOLDSBORO, LLC. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 451611-V |
| ) | |
| SERV TRUST, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## STIPULATION OF DISMISSAL

COMES NOW, Plaintiffs, Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, the "King Parties"), and Defendant, Serv Trust, through Roger Schlossberg, the Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers, who is, by operation of law, now the sole legal representative of Serv Trust following this Court's judicial determination herein that Serv Trust is the alter ego of Gregory B. Myers, by and through their respective undersigned counsel, pursuant to Md. Rule 2-506(a), hereby stipulate and agree that Count 1 of Plaintiffs' First Amended Complaint (Declaratory Judgment: Redemption of Interests) in Case No.: 436977-V shall be, and is hereby, DISMISSED.

Respectfully submitted,

Appx. 0584

| THE VERSTANDIG LAW FIRM, LLC | SCHLOSSBERG \| MASTRO |
|---|---|
| */s/ Maurice B. VerStandig* | */s/ Frank J. Mastro* |
| By: Maurice B. VerStandig #0912170262 | By: Frank J. Mastro #9612180213 |
| 1452 W. Horizon Ridge Pkwy., Suite 665 | P.O. Box 2067 |
| Henderson, NV 89012 | Hagerstown, MD 21742 |
| (301) 444-4600 | (301) 739-8610 |
| mac@mvbesq.com | fmastro@schlosslaw.com |
| *Counsel for Plaintiffs,* | *Counsel for Defendant Serv Trust,* |
| *Brian King, Cristina King, and Brian* | *through Roger Schlossberg, Chapter 7* |
| *King in his capacity as trustee of the* | *Trustee of the Bankruptcy Estate of* |
| *Cristina and Brian King Children's Trust* | *Gregory B. Myers, the judicially-* |
| | *determined alter ego of Serv Trust* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **7th** day of **May 2024**, I served a copy of the foregoing

*Stipulation of Dismissal* via MDEC upon:

Frank J. Mastro, Esq.
Schlossberg | Mastro
P.O. Box 2067
Hagerstown, MD 21742
fmastro@schlosslaw.com
*Attorneys for Serv Trust*

Laurin H. Mills, Esq.
Samek Werther & Mills, LLC
2000 Tower Oaks Blvd., Suite 200
Rockville, MD 20852
laurin@samek-law.com

Eric Pelletier, Esq.
Frances Wilburn, Esq.
Offit Kurman, P.A.
4800 Montgomery Lane, Suite 900
Bethesda, MD 20814
epelletier@offitkurman.com
fwilburn@offitkurman.com
*Attorneys for 6789 Goldsboro LLC*

and via first-class, postage prepaid mail upon:

Gregory B. Myers
700 Gulf Shore Blvd. North
Naples, FL 34102
*Defendant*

*/s/ Maurice B. Verstandig*
Maurice B. Verstandig

2

Appx. 0585

# Exhibit F

Appx. 0586

## Gregory Myers, Trustee

**From:** brian@realestatedimensions.com
**Sent:** Friday, October 11, 2019 11:06 AM
**To:** 'Pelletier, Eric'
**Cc:** 'Lynch, Timothy'; Douglas M. Lederman; 'Mac VerStandig'; Edward M. Schwartz
**Subject:** RE: K1 for ServTrust- Attorney-client privilege

Hi Eric,

I spoke to Ed and Doug yesterday at Gorfine Schiller concerning the language and because the sensitivity of the language, can you rewrite the paragraph in question on Page 35 of the return with the exact language and date? He will amend the return with the corrected language.

Thank you,
Brian

**From:** Pelletier, Eric <epelletier@offitkurman.com>
**Sent:** Thursday, October 10, 2019 3:39 PM
**To:** brian@realestatedimensions.com
**Cc:** Lynch, Timothy <tlynch@offitkurman.com>; 'Mac VerStandig' <mac@mbvesq.com>; Edward M. Schwartz <ESchwartz@gsg-cpa.com>
**Subject:** RE: K1 for ServTrust- Attorney-client privilege

Are you referring to page 35, which mentions bankruptcy. I think that the answer is omit reference to the bankruptcy. I would also be more vague on the date if possible. Mac filed his lawsuit 9/14/2017. You could say "Serv Trust's interests were redeemed pursuant to the operating agreement no later than [pick a date 9/14/2017 or 1/1/2018]."

Brian/ Ed – does this clarify things?

Eric Pelletier

**Offit| Kurman**®
Attorneys at law

240.507.1739 Washington
240.507.1735 Facsimile
www.offitkurman.com



4800 Montgomery Lane | 9th Floor | Bethesda, MD 20814

PRIVILEGED COMMUNICATION/PRIVACY NOTICE
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named

1

Appx. 0587

above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

**IRS CIRCULAR 230 DISCLOSURE**
To ensure compliance with requirements imposed by the IRS, we inform you that any US federal tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** brian@realestatedimensions.com <brian@realestatedimensions.com>
**Sent:** Thursday, October 10, 2019 2:53 PM
**To:** Pelletier, Eric <epelletier@offitkurman.com>
**Cc:** Lynch, Timothy <tlynch@offitkurman.com>; 'Mac VerStandig' <mac@mbvesq.com>; Edward M. Schwartz <ESchwartz@gsg-cpa.com>
**Subject:** FW: K1 for ServTrust

Eric,

I was going to send out the 2018 ServTrust K1 but sent a copy to Mac prior to sending it out. He has concerns with the K1 that needs to be addressed with my accountant. My accountant at Gorfine Schiller that worked on this return is Ed Swartz – 410-356-5900. I have copied him on this email and left him a voice message to expect a call to make sure the return is correct. I have attached the K1 portion of the return and the complete 2018 return for your review.

Please let me know if you have any questions.

Thank you,
Brian

**From:** Mac VerStandig <mac@mbvesq.com>
**Sent:** Thursday, October 10, 2019 2:30 PM
**To:** Brian King <brian@realestatedimensions.com>
**Subject:** RE: K1 for ServTrust

Brian,

The last page is a bit of a problem – the form itself is fine, but this says the interest was redeemed "due to the fact that Serv Trust was going through bankruptcy." That is not the rationale for the redemption, and Serv Trust hasn't actually been in bankruptcy. Any way to get this edited? I'm happy to speak with the accountant if it would help...

(Also, it might be wise to have Eric Pelletier weigh in, since he is officially 6789's counsel. If my fingerprints are on this, it could well fuel another Greg motion...)

Thanks,

Maurice "Mac" VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301)444-4600
Cell: (240)351-6442
Facsimile: (301)576-6885
mac@mbvesq.com

2

Appx. 0588

Twitter: @mac_verstandig

**PRIVILEGED COMMUNICATION/PRIVACY NOTICE**
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

**TAX ADVICE NOTICE**
Any tax advice included in this communication may not contain a full description of all relevant facts or a complete analysis of all relevant tax issues or authorities. This communication is solely for the intended recipient's benefit and may not be relied upon by any other person or entity

**From:** Brian King <brian@realestatedimensions.com>
**Sent:** Thursday, October 10, 2019 11:17 AM
**To:** Mac VerStandig <mac@mbvesq.com>
**Subject:** K1 for ServTrust

Hi Mac,

Attached is the K1 for ServTrust for 2018. My accountant did not send out the K1 when he finished the return on September 15, 2018 when corporate returns were due. Do you want me to send this to Dan Ring? Should I send it certified?

The return reflects the redemption of ownership and 0.00% in all partner share accounts. Please let me know what you would like me to do.

Thanks, Brian

PRIVILEGED COMMUNICATION/PRIVACY NOTICE
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

Any tax advice included in this communication may not contain a full description of all relevant facts or a complete analysis of all relevant tax issues or authorities. This communication is solely for the intended recipient's benefit and may not be relied upon by any other person or entity.

Appx. 0589

# Exhibit G

Entered: December 5th, 2019
Signed: December 4th, 2019

**SO ORDERED**



LORI S. SIMPSON
U.S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BAKNRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

In re:                                    *
                                          *
Gregory B. Myers,                         *        Case No. 15-26033-WIL
                                          *        Chapter 7
            Debtor.                       *
                                          *

---

Gregory B. Myers,                         *
                                          *
            Plaintiff,                    *
                                          *
v.                                        *        Adversary No. 19-00427
                                          *
Brian King, et al.,                       *
                                          *
            Defendants.                   *
                                          *

## ORDER REMANDING CASE

The above-captioned adversary proceeding was commenced on November 13, 2019, upon

the Notice of Removal filed by Maurice VerStandig.  The Notice of Removal states that Gregory

Myers (the "Debtor") filed a third-party claim and counterclaim against various parties (the "Myers

1

Appx. 0591

Defendants") in Consolidated Case No. 451611-V pending in the Circuit Court for Montgomery County, Maryland alleging that the Myers Defendants violated Section 362 of Title 11 of the United States Code (the "Third Party Complaint"). Because the Third Party Complaint asserts that the Myers Defendants violated the automatic stay arising in the Debtor's bankruptcy case pending in this Court, the Myers Defendants consented to the removal of the Circuit Court Action.

On December 3, 2019, the Debtor filed a Notice of Voluntary Dismissal of the Third Party Complaint pursuant to Fed. R. Civ. P. 41, made applicable to this proceeding by Fed. R. Bankr. P. 7041. Based on the dismissal of the Third Party Complaint, and this Court having previously elected to abstain from exercising jurisdiction over the underlying Circuit Court Action[1], the Court will remand this matter to the Circuit Court for Montgomery County, Maryland.

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland, hereby

**ORDERED**, that the above-captioned adversary proceeding is remanded to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. § 1452(b).

cc:     All Counsel
        All Parties
        United States Trustee
        Chapter 7 Trustee: Roger Schlossberg

**END OF ORDER**

---

[1] *See* Order of Abstention (Docket Entry No. 28) entered on January 30, 2019, in Adversary Proceeding 18-00407.

2

Appx. 0592

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.:  24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION TO STRIKE DEBTOR'S OBJECTION TO
TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED
COMPROMISE AND SETTLEMENT WITH KING PLAINTIFFS**

TO THE HONORABLE MARIA ELLENA CHAVEZ-RUARK, UNITED STATES
BANKRUPTCY JUDGE:

Defendant, Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of Gregory B.

Myers (the "Trustee"), by his undersigned counsel, pursuant to Fed. R. Bankr. P. 9013, hereby

moves to strike *Gregory B. Myers's Preliminary Objection to the Trustee's Motion for Approval

of Proposed Compromise and Settlement with King Plaintiffs* (hereafter the "*Debtor's Objection*"),

[Dkt. # 19], on grounds that the Debtor, Gregory B. Myers, lacks standing to object to the Trustee's

motion under the rule established in *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985) and its

progeny. In further support of this motion, the Trustee respectfully states:

1.      On December 30, 2024, the Trustee filed a *Motion for Approval of Proposed

Compromise and Settlement with  King Plaintiffs*, (the "*Trustee's 9019 Motion*"), [Dkt. #17], by

Appx. 0593

which the Trustee seeks Court approval of a proposed settlement with the Plaintiffs herein, Brian King, Cristina King, and the Cristina and Brian King Children's Trust (hereafter the "King Plaintiffs"). Pursuant to the proposed settlement, the King Plaintiffs will, *inter alia*, pay to the Trustee, for the benefit of the bankruptcy estate, the sum of $150,000.00 (the "Settlement Payment") in order to redeem the entirety of the estate's interest in 6789 Goldsboro LLC and settle the claim asserted by the King Plaintiffs in this adversary case.[1]

2.      On January 21, 2025, the Debtor filed the *Debtor's Objection*, [Dkt. #19], which largely attempts to relitigate various failed arguments previously asserted by the Debtor regarding the *Alter Ego Order*, including the finality of said judgment. *Compare, e.g.*, *Debtor's Objection*, [Dkt. #19], at 4-5, 8-9, *with Order Granting Motion for Approval Proposed Compromise and Settlement with Brian King, Cristina King, and the Cristina and Brian King Children's Trust* (the "*Settlement Procedures Order*"), [Case No. 15-26033 at Dkt. #1029], at 18 (holding that "the Debtor is incorrect in his argument that the Alter Ego Order has no force or effect because it is not a final judgment"). This Court, however, need not revisit the arguments set forth in the *Debtor's Objection* because the Debtor lacks standing to object to the proposed settlement.

3.      In *Willemain*, *supra*, the Fourth Circuit held that an insolvent Chapter 7 debtor lacked standing to challenge the proposed sale of estate property because the debtor had no pecuniary interest in the result of the sale since the proposed sale would not return solvency to the estate or deliver a surplus to the debtor. *Willemain*, 764 F.2d at 1022. Thus, the debtor was not an interested party and, as a result, lacked standing to object. *Id*. at 1022-23.

---

[1] As explained in the *Trustee's Motion*, after Serv Trust was judicially adjudicated in state court to be the alter ego of the Debtor, Serv Trust's interest in 6789 Goldsboro LLC, by operation of law, became an asset of the Debtor's bankruptcy estate, subject to administration by the Trustee. The state court order adjudicating Serv Trust to be the alter ego of the Debtor is hereafter referred to as the "*Alter Ego Order*."

Appx. 0594

4.      In reaching its decision in *Willemain*, the Fourth Circuit relied on the analogous principle that an insolvent debtor has no pecuniary interest in the distribution of assets among his creditors and, therefore, lacks standing to object to claims against the estate. *Id.* at 1022 (citing 3 J. Moore & L. King, Collier on Bankruptcy ¶ 57.17 [2.1] (14th ed. 1977)); *In re Fischer*, 2010 WL 2746349, *5 (Bankr. D. Md. July 9, 2010); *see also Yadkin Valley Bank and Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir. 1993) (the term "party-in-interest" is "generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceeding").

5.      In this case, the Debtor's bankruptcy estate is insolvent – as this Court previously has observed. *See Trustee's Status Report*, [Case No. 15-26033 at Dkt. # 930], filed on April 20, 2021; *Settlement Procedures Order* [Case No. 15-26033 at Dkt. #1029], entered on December 11, 2023 ("Prior to entry of the Alter Ego Order, the Debtor's bankruptcy estate was unquestionably insolvent as detailed in the Trustee's Status Report filed on April 20, 2021…The Court notes that the Trustee has incurred significantly more legal fees since the filing of the status report.").[2]

6.      The current proposed settlement with the King Plaintiffs, while significant, will not cause the Debtor's bankruptcy estate to be rendered solvent (nor will it cause the estate to come anywhere close to achieving solvency). Indeed, there is scant hope that the Debtor's estate will ever become solvent, due largely to the Debtor's unparalleled abuse of the bankruptcy process, which has caused the estate to hemorrhage attorney's fees in response to the litany of bad faith tactics employed by the Debtor to frustrate the Trustee's administration of the estate.[3] Thus, under

---

[2] Indeed, the Trustee has incurred nearly $200,000 in additional legal fees since the filing of the April 20, 2021 *Status Report*.

[3] *See, e.g., In re Kelly*, 656 B.R. 541, 548, 605 (Bankr. D. Md. 2023) ("Barbara Ann Kelly, and her husband, Gregory Brian Myers, and their dilatory and abusive litigation tactics are well known to the Court. As discussed in more detail below, Ms. Kelly and Mr. Myers have exploited and subverted the bankruptcy

3

*Willemain*, *supra*, the Debtor has no standing to object to the *Trustee's 9019 Motion* because he lacks a pecuniary interest in the outcome.

7.      Accordingly, this Court should strike the *Debtor's Objection* for lack of standing and grant the *Trustee's 9019 Motion*, which otherwise stands unopposed. However. in the event that the Court wishes to consider the substance of the *Debtor's Objection*, the Trustee respectfully requests an opportunity to respond to the Debtor's arguments (which are frivolous) at a hearing on the merits.

8.      Pursuant to Local Rule 9013-2, the Trustee states that no separate memorandum of law will be filed and that he will rely solely on this motion.

Respectfully submitted,

SCHLOSSBERG | MASTRO

By:    */s/ Frank J. Mastro*
Frank J. Mastro #24679
Roger Schlossberg
P.O. Box 2067
Hagerstown, MD 21742
(301) 739-8610
fmastro@schlosslaw.com
rschlossberg@schlosslaw.com
*Attorneys for Defendant/Movant,*
*Roger Schlossberg, Trustee*

---

process for over eight years… Ms. Kelly and Mr. Myers have systematically and abusively filed bankruptcy cases to stay ongoing litigation and appeals in various court systems. They often oppose efforts by creditors to obtain relief from the automatic stay to allow litigation to continue to final judgment, appeal any adverse rulings, and then start the cycle all over again once the appeal is dismissed or voluntarily withdrawn. This interminable pattern of litigious behavior holds creditors hostage to numerous judicial processes and forces them to incur legal fees to defend against frivolous lawsuits.").

4

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the **31st** day of **January 2025**, I served a copy of the foregoing *Motion to Strike Debtor's Objection to Trustee's Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs* and proposed Order upon all parties listed on the attached *CM-ECF Mailing Information*:

(a) via electronic mail to those individuals included on the *Electronic Mail Notice List* at those email addresses noted thereon;

(b) via first-class mail, postage prepaid, to those individuals included on the *Manual Notice List* as follows:

Gregory B. Myers
700 Gulf Shore Blvd. North
Naples, FL 34102
*Debtor*

Additional copies of the foregoing *Motion* were sent via first-class mail, postage prepaid, to:

Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770

*/s/ Frank J. Mastro*
Frank J. Mastro

Appx. 0597

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:

GREGORY B. MYERS,

     Debtor.

_____/

BRIAN KING, *et al.*,

     Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

     Defendant.

_____/

Case No.  15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

**SUPPLEMENT TO GREGORY B. MYERS'S PRELIMINARY OBJECTION TO
THE TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE
AND *SETTLEMENT* WITH KING PLAINTIFFS**

Gregory B. Myers ("Mr. Myers" or "Movant"), *pro se*, files this supplement (the

"Supplement") to his preliminary objection (the "Objection") to the *Trustee's Motion For*

*Approval Of Proposed Compromise And Settlement With King Plaintiffs* (Doc. 17) (the "Motion"),

and states:[1]

Attached hereto as **Exhibit H** is a copy of the certified transcript of the hearing held in

Montgomery County Circuit Court (Lease, J) on December 16, 2022 (the "Hearing Transcript"),

in the case of *King, et al. v. Serv Trust, et al.*, Case No. 436977-V (the "King Case") and the case

of *6789 Goldsboro LLC v. Serv Trust, et al.*, Case No. 436977-V (the "Goldsboro Case") (the

_____

[1] Mr. Myers adopts and incorporates the totality of his Objection herein by reference.

1

26

"King Case" and "Goldsboro Case" having been consolidated for administrative purposes, and referred to herein collectively as the "State Court Litigation").

The December 16, 2022, hearing transcript (the "Hearing Transcript") states in pertinent part as follows:

> THE COURT: All right, so Mr. Myers is here in the court. And the matters against Mr. Myers have been stayed, in that the matters proceeding to trial in January are the matters against Serv Trust in this case. So Mr. Myers is a party to the case, but his matters have been stayed at this point in time. ***
> ***
> MR. MYERS: May I speak, Your Honor?
> THE COURT: I will let you speak but remember **the matters against you are stayed in this case**.
> MR. MYERS: Your Honor, you used the word matters. The order from the bankruptcy court specifically says the automatic stay shall remain in effect and is not lifted as to any claims against Myers, the debtor. I am a defendant in both of the King party claims. They're not separately against Serv Trust. We're both named as defendants --
> THE COURT: **Right**, and the cases --
> MR. MYERS: -- so the claim can't proceed because I would have liability. If they prevail, I have liability, and the last sentence in the order says but not for any purposes which could impose individual liability upon the debtor.
> THE COURT: **Okay**.
> MR. MYERS: If King parties prevail in either of their two counts, I have potential liability, individual liability. And if --
> THE COURT: Well, **they would have to then...prove those counts against you in a separate trial** and the matter would not be, there would not be any collateral estoppel or res judicata, because you did not participate in the case as a party. **You were stayed and out of the case**, so any --
> MR. MYERS: There would still be a ruling that would impose liability upon me.
> THE COURT: **There would not be a ruling that would impose liability on you**. There would be a ruling that would potentially impose liability on Serv Trust. However, **these plaintiffs would have to, if they wanted to proceed against you, would be required to try that matter again separately**, and there would not be any res judicata or collateral estoppel issues, **because you were not a party to that case...at that time because, well, you were stayed, so you were not considered a party**.
> ***
> THE COURT: I understand you filed some motions. **Those motions are not ripe or at issue at this time**, because --
> MR. MYERS: Subject matter can be raised at any time, right?
> THE COURT: It can be, but you --
> MR. MYERS: Well, I'm raising it right now.

2

Appx. 0599

THE COURT: Well, you've raised it in a motion. These folks over here have an opportunity to read any motion that you file and respond to it, **before the Court makes a ruling**. \*\*\*

\*\*\*

THE COURT: **And again, the matters against you in this case have been stayed. Very clear with the parties here** --

MR. MYERS: I don't know what you mean by the matters.

THE COURT: All claims against you in this case are stayed. There's no --

MR. MYERS: Well, they can't be, because the claims are going forward.

THE COURT: Claims are going forward against Serv Trust, **and Serv Trust is a different** --

MR. MYERS: Well, then they would have to amend their complaint.

THE COURT: No, they would not. We can break out the fact that this case is going, and it is, **you know**, not the most efficient use of resources, **because to the extent that they want to come back subsequently**, depending on what happens in the bankruptcy, **and seek these claims against you, they're going to be required to retry that case against you, without the benefit of anything that occurred in the case against Serv Trust**.

\*\*\*

THE COURT: What I'm saying is that collateral estoppel, res judicata would not apply to you. **Given the fact that you're not a party at this time because of the stay**, that you did not have…a meaningful opportunity to participate in the trial, and as such the doctrines of collateral estoppel and res judicata would not apply. And so that **when you go to trial, if you go trial**, depending, I don't know what's going to happen in your [Florida] bankruptcy, **but if these claims survive the bankruptcy and come into court, then they'll have to try them all over again**.

\*\*\*

THE COURT: I don't know if these claims…would be discharged in the. I'm not familiar with your bankruptcy. I don't know what it's about. I know there's a stay, but in bankruptcy oftentimes claims can be discharged, claims can be reduced, claims can be settled.

MR. MYERS: There are no, they, the King parties, it's already been ruled they have no claims against me.2

THE COURT: **Okay**. \*\*\*

\*\*\*

---

[2] On June 29, 2021, the Florida bankruptcy court entered an *Order Sustaining Debtor's Objection to Proof of Claim 3 Filed by Brian King & Cristina King [Doc. No. 84]* (2:21-bk-00123-FMD; Doc. 108) (the "Order Sustaining Objection to the King Parties' POC"), which **ORDERED**:

    1. **The Objection to Proof of Claim 3 filed is SUSTAINED**.

    2. **The claim of Brian King & Cristina King is disallowed in its entirety**.

A copy of the Order Sustaining Objection to the King Parties' POC is attached hereto as **Exhibit I** and made a part hereof. The Order Sustaining Objection to the King Parties' POC is now a final and unappealable order that is *res judicata* in this case and any other case or proceeding implicating Mr. Myers's rights (including the State Court Litigation), which requires that the instant adversary proceeding be immediately dismissed with prejudice.

3

Appx. 0600

> THE COURT: Well, one is **you're not a live party in this case right now**.
> \*\*\*
> THE COURT: Sir, you don't have standing, given the fact that the matters against you are stayed. \*\*\*
> THE COURT: Well, it makes you a non-party…for the purpose of the upcoming trial, **because the upcoming trial does not involve you**.
> MR. MYERS: It does involve me.
> THE COURT: **It does not**.

(Alterations and emphasis supplied). *See Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 428-33 (1995) discussing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)( "But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, **would be incongruous and illegal**."). (Emphasis supplied). "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. **And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law**." *Id.* (Emphasis supplied).

It has long been established that courts "'can make no decree affecting the rights of an absent person, and can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights.'" *Greeley v. Lowe*, 155 U.S. 58, 70 (1894) (quoting *Shields v. Barrow*, 58 U.S. 130, 141-42 (1854)). This rule is just as strong today as when it was first set forth. *See, e.g., Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008) **(recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties")**.

4

Appx. 0601

The Trustee's Settlement Motion stemming from the King Parties' bogus Adversary Proceeding (No. 24-00007) is a sham, **a fraud on the Court**. See *In re Anderson*, 377 B.R. 865 (2007), holding:

> "[T]he Chapter 7 Trustee's settlement with the owners of the other undivided one-half interest in the property cannot be approved, for, as already discussed, that settlement contemplates the Chapter 7 Trustee conveying to those owners an interest in the property that the bankruptcy estate [never owned]. **The bankruptcy estate's receipt of consideration from the Defendants under such circumstances would be tantamount to fraud and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner**."

(Emphasis supplied).[3] See also *Etgen v. Washington County Bldg. Loan Ass'n.*, 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land Water Co. v. Robinson*, 154 Cal. 36, 97 P. 10, 14."). Id. at 418.

Here, **this Court** "knew of the fraudulent scheme and willfully aided in its execution" by entering the December 11, 2023, Order (Case 15-26033; Doc 1029) (the "Settlement Procedure Motion"), thereby facilitating "**the mechanism**" by which the Trustee and the King Parties are now seeking to **defraud** Mr. Myers and Serv Trust.

---

[3] On December 18, 2018, **The Honorable Anne K. Albright** found that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members" (his family), concluding that Mr. King's actions "**would amount to constructive fraud**.".

5

Appx. 0602

The Trustee has the burden of proof on the Settlement Motion, and Mr. Myers intends to show at an evidentiary hearing on the Settlement Motion that the Trustee cannot meet that burden. Accordingly, the Trustee's Settlement Motion should be denied.[4]

## REQUEST FOR EVIDENTIARY HEARING

Mr. Myers demands that the Court schedule a full evidentiary hearing on the Trustee's Settlement Motion and demands **strict proof** on the substance and merits of the Trustee's Settlement Motion.

RESPECTFULLY SUBMITTED on this 4th day of February, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

---

[4] Mr. Myers reserves all of his rights, claims and defenses, including his rights under the **Federal Tort Claims Act** (FTCA) which allows for private parties to sue the United States in federal court for torts committed by persons acting on behalf of the government. **28 U.S.C. § 2674**.

6

Appx. 0603

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 4, 2025, a copy of the foregoing Supplement was

furnished via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

Gregory B. Myers, *pro se*

Appx. 0604

# Exhibit H

Appx. 0605

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
--------------------------------X
                                :
BRIAN KING, ET AL.,             :
                                :
        Plaintiffs,             :
                                :
             v.                 :        Civil No. 436977
                                :
SERV TRUST, ET AL.,             :
                                :
        Defendants.             :
                                :
--------------------------------X
```

HEARING

Rockville, Maryland                        December 16, 2022

DEPOSITION SERVICES, INC.
P.O. BOX 1040
Burtonsville, Maryland 20866
(301) 881-3344

Appx. 0606

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
-------------------------------X
                                :
BRIAN KING, ET AL.,             :
                                :
          Plaintiffs,           :
                                :
               v.               :        Civil No. 436977
                                :
SERV TRUST, ET AL.,             :
                                :
          Defendants.           :
                                :
-------------------------------X
```

Rockville, Maryland
December 16, 2022

WHEREUPON, the proceedings in the above-entitled matter commenced

BEFORE:    THE HONORABLE DAVID W. LEASE, JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:

MAURICE B. VERSTANDIG, Esq.
9812 Falls Road, #114-160
Potomac, Maryland 20854

FOR THE DEFENDANTS:

ERIC PELLETIER, Esq.
FRANCES WILBURN, Esq.
Offit Kurman, P.A.
7501 Wisconsin Avenue, Suite 1000W
Bethesda, Maryland 20814

FRANK J. MASTRO, Esq.
Schlossberg, Mastro & Scanlan
P.O. Box 2067
Hagerstown, Maryland 21742

GREGORY MYERS, Pro se
700 Gulf Shore Boulevard, North
Naples, Florida 34102

3

P R O C E E D I N G S

THE CLERK:  Calling Civil matter 436977, Brian King, et al. versus Serv Trust, et al.

THE COURT:  All right, let's go ahead and have the parties identify themselves, starting with Plaintiff's counsel, please.

MR. VERSTANDIG:  Good morning, Your Honor.  Maurice Verstandig on behalf of Brian King, Cristina King, and the Cristina and Brian King Children's Trust.

THE COURT:  Sir, you might be muted.

MR. PELLETIER:  Good morning, Your Honor.  Sorry about that.  Eric Pelletier and my partner, Frances Wilburn, here on behalf of 6789 Goldsboro, LLC.

MS. WILBURN:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. MASTRO:  Good morning, Your Honor.  Frank Mastro on behalf of nominal defendant Roger Schlossberg, bankruptcy trustee.

THE COURT:  All right.  All right, and in the courtroom, just so we --

MR. MYERS:  Should I identify myself?

THE COURT:  Yes, please.

MR. MYERS:  Gregory Myers, Your Honor, pro se debtor.

THE COURT:  All right, so Mr. Myers is here in the court.  And the matters against Mr. Myers have been stayed, in

Appx. 0608

4

that the matters proceeding to trial in January are the matters against Serv Trust in this case.  So Mr. Myers is a party to the case, but his matters have been stayed at this point in time.

So what's the status of this matter?  I'll ask, I'll start with counsel for the King parties.

MR. VERSTANDIG:  Thank you.  Your Honor, we are prepared to proceed to trial on January 3rd.  Pre-trial statements were filed a couple of years ago, prior to the last bankruptcy stay, and are inclusive of all of the exhibits and all of the witnesses we're planning to rely upon during our trial in January.  It will be a more abbreviated list of witnesses and exhibits because the claims against Mr. Myers are stayed.

We reasonably anticipate that our portion of the case, and I speak solely for my clients.  Mr. Pelletier and Ms. Wilburn will speak for their portion of the case separately. But we reasonably anticipate our portion of the case will probably take the majority of the day, but not much more than that.

We would also note that Serv Trust is not represented by counsel at this point in time, and while we intend on proceeding to trial, this will greatly resemble ex parte proof, even though it will not take the actual form of ex parte proof. Because of the absence of representation counsel, we don't

believe Serv Trust will be able to meaningfully participate in the trial.

THE COURT: Right. Unlike ex parte proof, where if you're on a default where you, the allegations in the complaint are true and liability is determined, that would not be determined and it would be your, still your burden to prove that by a preponderance of the evidence, or by clear and convincing if there's a fraud count.

MR. VERSTANDIG: Yes, Your Honor.

THE COURT: Okay.

MR. VERSTANDIG: And we appreciate that distinction. I did not mean to suggest otherwise. I simply meant --

THE COURT: No, I understand what you meant.

MR. VERSTANDIG: -- (unintelligible).

THE COURT: It's just the procedure's going to look like that, because unless and until Serv Pro, but if Serv Pro gets counsel before then, they can participate at trial.

MR. VERSTANDIG: Yes, Your Honor. And again, we have our exhibits, we have our witnesses. We are prepared to put on our case, and certainly without pre-trying the case today, we believe it is a convincing case and we believe we will meet our burdens.

THE COURT: All right. Now all right, now anything else? How long do the Goldsboro LLC folks think it's going to take for your case?

6

MR. PELLETIER:  Your Honor, it depends on whether or not Serv Trust gets counsel.  I would assume if it does not get counsel, an hour or an hour and a half.  If it does get counsel, maybe a half day.

THE COURT:  Okay.  All right.  And counsel for Mr. Schlossberg doesn't anticipate much trial time, if any, I gather.

MR. MASTRO:  No trial time for us.  We're just a nominal defendant --

THE COURT:  Right.

MR. MASTRO:  -- on the claim by Mr. Verstandig's client.  Obviously if Mr. Verstandig prevails, then Serv Trust will become an asset of the bankruptcy estate.

THE COURT:  Okay.  All right.

MR. MYERS:  May I speak, Your Honor?

THE COURT:  I will let you speak but remember the matters against you are stayed in this case.

MR. MYERS:  Your Honor, you used the word matters. The order from the bankruptcy court specifically says the automatic stay shall remain in effect and is not lifted as to any claims against Myers, the debtor.

I am a defendant in both of the King party claims. They're not separately against Serv Trust.  We're both named as defendants --

THE COURT:  Right, and the cases --

Appx. 0611

7

MR. MYERS: -- so the claim can't proceed because I would have liability. If they prevail, I have liability, and the last sentence in the order says but not for any purposes which could impose individual liability upon the debtor.

THE COURT: Okay.

MR. MYERS: If King parties prevail in either of their two counts, I have potential liability, individual liability. And if --

THE COURT: Well, they would have to then --

MR. MYERS: -- if you'd let me finish --

THE COURT: -- they would have to prove those counts against you in a separate trial and the matter would not be, there would not be any collateral estoppel or res judicata, because you did not participate in the case as a party. You were stayed and out of the case, so any --

MR. MYERS: There would still be a ruling that would impose liability upon me.

THE COURT: There would not be a ruling that would impose liability on you. There would be a ruling that would potentially impose liability on Serv Trust. However, these plaintiffs would have to, if they wanted to proceed against you, would be required to try that matter again separately, and there would not be any res judicata or collateral estoppel issues, because you were not a party to that case --

MR. MYERS: But I am a party.

Appx. 0612

8

THE COURT: -- at that time because, well, you were stayed, so you were not considered a party.

MR. MYERS: How can the claim go forward against Serv Trust? Serv Trust is not an entity. It is not a statutory trust. It's a Maryland common law trust.

THE COURT: Well, it's, the allegation is it's a, that it is a statutory trust. The documents in the case suggest that it's a statutory trust.

MR. MYERS: No they don't. There's no documents in this case that suggest it's a statutory trust. It's a, it says right in the trust agreement that it's a Maryland common law trust.

But let me move to something that eliminates this discussion, Your Honor. This Court lacks subject matter jurisdiction. I want to confirm --

THE COURT: Well, you can raise that at any time, and that is something that you can raise once the stay against you is lifted.

MR. MYERS: I can raise it right now.

THE COURT: Well, not today, because this is not before the Court. It has not been, I understand you filed some motions. Those motions are not ripe or at issue at this time, because --

MR. MYERS: Subject matter can be raised at any time, right?

9

THE COURT: It can be, but you --

MR. MYERS: Well, I'm raising it right now.

THE COURT: Well, you've raised it in a motion. These folks over here have an opportunity to read any motion that you file and respond to it, before the Court makes a ruling. So anything --

MR. MYERS: Well, you have a trial scheduled on January 4 and 3, and so I would ask you to go ahead and consider that, which is --

THE COURT: Well, I may consider it at the beginning of the trial, but I'm not going to consider it today.

MR. MYERS: Well, then I would ask you to grant me permission to go to the Maryland Court of Appeals, because they'll stay this case in two seconds and dismiss it for lack of subject matter jurisdiction.

THE COURT: Well, I'm not going to grant you permission to do it, but I'm not going to forbid you from doing anything that you think you need to do to protect your rights. You're entitled, if you think that you want to go to the appellate courts and seek an emergency stay, then that's your right to do that. And I don't want to, certainly nothing I'm going to say here is going to prevent you from doing that. I don't grant permission or deny permission for that. That's whatever you want to do.

MR. MYERS: Okay.

10

THE COURT: And again, the matters against you in this case have been stayed. Very clear with the parties here --

MR. MYERS: I don't know what you mean by the matters.

THE COURT: All claims against you in this case are stayed. There's no --

MR. MYERS: Well, they can't be, because the claims are going forward.

THE COURT: Claims are going forward against Serv Trust, and Serv Trust is a different --

MR. MYERS: Well, then they would have to amend their complaint.

THE COURT: No, they would not. We can break out the fact that this case is going, and it is, you know, not the most efficient use of resources, because to the extent that they want to come back subsequently, depending on what happens in the bankruptcy, and seek these claims against you, they're going to be required to retry that case against you, without the benefit of anything that occurred in the case against Serv Trust.

MR. MYERS: Your Honor, I can assure you that if they were ever to come back, they would raise, and if I raise res judicata, any decision would impose individual liability upon me.

11

THE COURT:  Okay.

MR. MYERS:  Okay, the risk is there, and that's what this order says cannot happen.

THE COURT:  What I'm saying is that collateral estoppel, res judicata would not apply to you.  Given the fact that you're not a party at this time because of the stay, that you did not have --

MR. MYERS:  I am a party.

THE COURT:  -- a meaningful opportunity to participate in the trial, and as such the doctrines of collateral estoppel and res judicata would not apply.  And so that when you go to trial, if you go trial, depending, I don't know what's going to happen in your bankruptcy, but if these claims survive the bankruptcy and come into court, then they'll have to try them all over again.

MR. MYERS:  I don't understand what you mean, if these claims survive the bankruptcy.

THE COURT:  Well, I don't, like I said, I'm not --

MR. MYERS:  What do you mean by that?

THE COURT:  I don't know if these claims --

MR. MYERS:  I don't understand.

THE COURT:  -- would be discharged in the, I'm not familiar with your bankruptcy.  I don't know what it's about. I know there's a stay, but in bankruptcy oftentimes claims can be discharged, claims can be reduced, claims can be settled.

12

MR. MYERS: There are no, they, the King parties, it's already been ruled they have no claims against me.

THE COURT: Okay. Well then --

MR. MYERS: Goldsboro has no claims against Serv Trust. I'm sorry, against me.

THE COURT: Okay.

MR. MYERS: Yet they're asking for a judgment where I have a personal guarantee. If you were to --

THE COURT: Well --

MR. MYERS: -- if you were to grant the relief they're requesting, then I automatically have liability, because I'm a guarantor of that debt.

THE COURT: Okay.

MR. MYERS: And I also want to point out that there's a motion to disqualify you pending.

THE COURT: I see that.

MR. MYERS: Well, you need to address that first.

THE COURT: Well, one is you're not a live party in this case right now.

MR. MYERS: Well, I'm alive, and --

THE COURT: You don't have --

MR. MYERS: -- I'm a party.

THE COURT: Sir, you don't have standing, given the fact that the matters against you are stayed. If you want to go to the bankruptcy court and have the bankruptcy court lift

13

the stay so that you can participate in this case, have you --

MR. MYERS:  Your Honor --

THE COURT:  -- then you can --

MR. MYERS:  -- I think you misunderstand --

THE COURT:  -- then you can do that.

MR. MYERS:  -- the nature of an order of an automatic stay or the bankruptcy court saying something's stayed.

THE COURT:  The bankruptcy court --

MR. MYERS:  It does not make me --

THE COURT:  -- explicitly said --

MR. MYERS:  May I finish?

THE COURT:  -- that the case against Serv Trust could go forward.

MR. MYERS:  That doesn't mean I'm not a party.

THE COURT:  All right.

MR. MYERS:  An order from the bankruptcy court that says the claims against me are stayed does not in effect make me a non-party.

THE COURT:  Well, it makes you a non-party --

MR. MYERS:  The Court can't --

THE COURT:  -- for the purpose of the upcoming trial, because the upcoming trial does not involve you.

MR. MYERS:  It does involve me.

THE COURT:  It does not.  I'm telling you --

MR. MYERS:  Well, if you grant them their relief,

14

then I have liability --

THE COURT:  Okay.

MR. MYERS:  -- so I'm not sure how you can say it doesn't involve me.

THE COURT:  Okay.  Well, I'm, that is something --

MR. MYERS:  And I am a party.  Are you saying I'm no longer a party to this case?

THE COURT:  You are stayed in this case.

MR. MYERS:  Then I'm a party.

THE COURT:  You're a party that's been stayed, so --

MR. MYERS:  Okay, then I still have standing.

THE COURT:  Well, you do not.

MR. MYERS:  Of course I do.

THE COURT:  The trial is going forward against Serv Trust.  Now if Serv Trust gets counsel, they can participate at the trial.  If they don't get counsel, then --

MR. MYERS:  Excuse me, that wasn't the issue.  You said I didn't have standing in this case.

THE COURT:  Sir, I'm not going to debate you any longer, and we're done right now.  So we're done talking.

MR. MYERS:  Well, I'd like you to rule on the motion --

THE COURT:  I'm not going to rule on it.

MR. MYERS:  -- for disqualification.

THE COURT:  Sir, I'm not going to rule on it today.

15

This case --

MR. MYERS:  Then you can't proceed in this case, because I'm a party and you need to rule on it first.

THE COURT:  I'm not ruling on it.  The case is going to trial.  We're all set.  I think, is there anything else I need from the parties in this matter?

MR. MYERS:  Well, I can assure you this case is not going to trial.

THE COURT:  You are entitled --

MR. VERSTANDIG:  Nothing further from the King parties, Your Honor.

THE COURT:  All right.  All right, thank you.

UNIDENTIFIED MALE SPEAKER:  Thank you, Your Honor.

THE COURT:  See everybody in court on, I think it's the 3rd of January.  All right, see you then.

UNIDENTIFIED MALE SPEAKER:  Yes, Your Honor.

THE COURT:  Okay, thank you all.  Have a pleasant day.

MS. WILBURN:  Thank you, Your Honor.

UNIDENTIFIED MALE SPEAKER:  Thank you, Your Honor.  Happy holidays.

THE COURT:  Okay.

(The proceedings were concluded.)

16

√ Digitally signed by Margaret L. vanEkeren

DIGITALLY SIGNED CERTIFICATE

**DEPOSITION SERVICES, INC.** hereby certifies that the attached pages represent an accurate transcript of the electronic sound recording of the proceedings in the Circuit Court for Montgomery County in the matter of:

Civil No. 436977

BRIAN KING, ET AL.

v.

SERV TRUST, ET AL.

By:

*Margaret L. vanEkeren*

Margaret L. vanEkeren
Transcriber

# Exhibit I

Case 24-00007 Doc 22-2 Filed 02/04/25 Page 2 of 2
Case 8:26-cv-02175-TDC Document 12-3 Filed 07/29/26 Page 145 of 453
Case 2:21-bk-00123-FMD Doc 108 Filed 06/29/21 Page 1 of 1

ORDERED.

**Dated: June 29, 2021**

*Caryl E. Delano*
Caryl E. Delano
Chief United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**
www.flmb.uscourts.gov

| | | |
|---|---|---|
| IN RE: | ) | Case No.: 2:21-bk-00123-FMD |
| | ) | Chapter 13 |
| Gregory Brian Myers, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

### ORDER SUSTAINING DEBTOR'S OBJECTION TO PROOF
### OF CLAIM 3 FILED BY BRIAN KING & CRISTINA KING [DOC. NO. 84]

THIS CASE came for consideration upon the *Debtor's Objection to Claim No. 3 Filed By Brian King & Cristina King* [Doc. No. 84] (the "Objection"). The Court finds that the Objection was served on all interested parties with the Local Rule 2002-4 negative notice legend informing the parties of their opportunity to object within thirty (30) days of the date of service. No party filed an objection within the time permitted. Accordingly, it is

**ORDERED:**

1.     The Objection to Proof of Claim 3 filed is SUSTAINED.

2.     The claim of Brian King & Cristina King is disallowed in its entirety.

Attorney Undine C. George, Esq. is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.

Appx. 0623

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:

GREGORY B. MYERS,

    Debtor.

_____/

BRIAN KING, *et al.*,

    Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

    Defendant.

_____/

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

**GREGORY B. MYERS'S RESPONSE IN OPPOSITION TO THE TRUSTEE'S MOTION
TO STRIKE DEBTOR'S OBJECTION TO TRUSTEE'S MOTION FOR APPROVAL OF
PROPOSED COMPROMISE AND SETTLEMENT WITH KING PLAINTIFFS**

Gregory B. Myers ("Mr. Myers"), *pro se*, hereby files this response in opposition (the

"Opposition") to the *Motion To Strike Debtor's Objection To Trustee's Motion For Approval Of*

*Proposed Compromise And Settlement With King Plaintiffs* [Dkt. #20] (the "Trustee's Motion to

Strike") filed by Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of Gregory B.

Myers (the "Trustee"), and states:

On December 11, 2023, this Court entered an Order granting "Settlement Procedure

Motion" [Case No. 15-26033 at Dkt. #1029] (the "Order"), stating that "In the event that the

Trustee and the King Parties reach a resolution of their dispute, then the Trustee will file a motion

seeking approval of the settlement ***and all parties in interest will be given notice and an***

1

Appx. 0624

*opportunity to be heard.*" *Id.* (Emphasis supplied).

The Order [Case No. 15-26033 at Dkt. #1029] further states, "although not expressly stated in the Settlement Procedure Motion, the successful resolution of the Redemption Claim will be subject to approval by this Court pursuant to the legal standard applicable to motions seeking the approval of a compromise or settlement under Bankruptcy Rule 9019, as articulated by this Court in *In re Final Analysis, Inc.*, 417 B.R. 332 (Bankr. D. Md. 2009), *after notice and an opportunity to be heard is provided to all parties interest.*" *Id.* (Emphasis supplied).

This Court has already disposed of the Trustee's meritless argument that the Debtor does not have standing to oppose the Settlement Procedure Motion under the legal principle espoused in *Willemain v. Kivitz* in its prior Order [Case No. 15-26033 at Dkt. #1029]. Specifically, the Court ruled that "the parties will be required to file a further motion seeking Court approval of any proposed compromise under Bankruptcy Rule 9019. At that time, the Court will consider the reasonableness of any proposed settlement *and all parties in interest will be given an opportunity to object and be heard.*" *Id.* (Emphasis supplied).

In conclusion, and for the reasons stated above, Mr. Myers requests that the Court enter an order denying the *Motion To Strike Debtor's Objection To Trustee's Motion For Approval Of Proposed Compromise And Settlement With King Plaintiffs* [Dkt. #20].

## REQUEST FOR EVIDENTIARY HEARING

Mr. Myers demands that the Court schedule a full evidentiary hearing on the Trustee's Settlement Motion and demands strict proof on the substance and merits of the Trustee's Settlement Motion.

Appx. 0625

RESPECTFULLY SUBMITTED on this 24th day of February, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of February 2025, a copy of the foregoing

GREGORY B. MYERS'S RESPONSE IN OPPOSITION TO THE TRUSTEE'S MOTION TO

STRIKE DEBTOR'S OBJECTION TO TRUSTEE'S MOTION FOR APPROVAL OF

PROPOSED COMPROMISE AND SETTLEMENT WITH KING PLAINTIFFS was furnished

via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

Gregory B. Myers, *pro se*

3

Appx. 0626

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.: 24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**TRUSTEE'S REPLY TO DEBTOR'S OPPOSITION TO TRUSTEE'S MOTION
TO STRIKE DEBTOR'S OBJECTION TO TRUSTEE'S MOTION FOR APPROVAL
OF PROPOSED COMPROMISE AND SETTLEMENT WITH KING PLAINTIFFS**

TO THE HONORABLE MARIA ELLENA CHAVEZ-RUARK, UNITED STATES
BANKRUPTCY JUDGE:

Defendant, Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of Gregory B.

Myers (the "Trustee"), by his undersigned counsel, hereby submits this memorandum in reply to

*Gregory B. Myers's Response in Opposition to the Trustee's Motion to Strike Debtor's Objection*

*to Trustee's Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs*

(hereafter referred to as the "*Debtor's Opposition*"), [Dkt. # 23], and respectfully states:

1.      The *Debtor's Opposition* is premised on the Debtor's belief that this Court's prior

*Order Granting Motion for Approval Proposed Compromise and Settlement with Brian King,*

*Cristina King, and the Cristina and Brian King Children's Trust* (the "*Settlement Procedures*

Appx. 0627

*Order*"), [Case No. 15-26033 at Dkt. #1029], affords him the right to object to the current proposed compromise and settlement between the Trustee and the King Plaintiffs. The Debtor is mistaken.

2.    The *Settlement Procedures Order* provides that if a resolution of the instant adversary case is reached and a motion for court approval of such resolution is filed, "the Court will consider the reasonableness of any proposed settlement and all *parties in interest* will be given an opportunity to object and be heard." *Id.* at 20 (emphasis supplied). The Debtor, however, is not a "party in interest" entitled to be heard in these circumstances, under the rule established in *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985).

3.    In *Willemain*, the Fourth Circuit held that an insolvent Chapter 7 debtor lacked standing to challenge the proposed sale of estate property because the debtor had no pecuniary interest in the result of the sale since the proposed sale would not return solvency to the estate or deliver a surplus to the debtor. *Willemain*, 764 F.2d at 1022. In reaching this conclusion, the Fourth Circuit explained that "*an insolvent debtor is not a party in interest* and thus lacks standing because he has no pecuniary interest in the distribution of his assets among his creditors." *Id.*; *see also Grausz v. Englander*, 361 F.3d 467, 473 (4th Cir. 2003) ("In the bankruptcy context a party in interest is one who has a pecuniary interest in the distribution of assets to creditors."); *Yadkin Valley Bank and Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir. 1993) (observing that the term "party-in-interest" is "generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceeding").

4.    Finally, although this Court previously allowed the Debtor to be heard in connection with the motion which resulted in the *Settlement Procedures Order*, the Court did so only "out of an abundance of caution," given the theoretical "possibility" that Serv Trust's assets might "bring significant value to the estate and render it solvent." *See Settlement Procedures*

2

Appx. 0628

*Order*, [Case No. 15-26033, Dkt. #1029], at 14 (observing that it was "highly unlikely" that Serv Trust possessed assets of such magnitude to bring solvency to the estate). Here, by contrast, there is *no* possibility that the estate will be rendered solvent by the redemption of Serv Trust's interest in 6789 Goldsboro LLC. Thus, the Debtor clearly lacks standing under *Willemain* to object to the proposed settlement.

Respectfully submitted,

SCHLOSSBERG | MASTRO

By:  */s/ Frank J. Mastro*
Frank J. Mastro #24679
Roger Schlossberg
P.O. Box 2067
Hagerstown, MD 21742
(301) 739-8610
fmastro@schlosslaw.com
rschlossberg@schlosslaw.com
*Attorneys for Defendant/Movant,*
*Roger Schlossberg, Trustee*

3

Appx. 0629

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the **27th** day of **February 2025**, I served a copy of the

*Trustee's Reply to Debtor's Opposition to Trustee's Motion to Strike Debtor's Objection to*

*Trustee's Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs* (the

"*Trustee's Reply*") upon all parties listed on the attached *CM-ECF Mailing Information*:

> (a) via electronic mail to those individuals included on the *Electronic Mail Notice List* at those email addresses noted thereon;
>
> (b) via first-class mail, postage prepaid, to those individuals included on the *Manual Notice List* as follows:

> Gregory B. Myers
> 700 Gulf Shore Blvd. North
> Naples, FL 34102
> *Debtor*

Additional copies of the *Trustee's Reply* were sent via first-class mail, postage prepaid, to:

Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770

*/s/ Frank J. Mastro*
Frank J. Mastro

4

Appx. 0630

Entered: May 6th, 2025
Signed: May 5th, 2025



MARIA ELLENA CHAVEZ-RUARK
U.S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | |
|---|---|
| In re:<br><br>GREGORY B. MYERS,<br><br>    Debtor. | Case Number: 15-26033-MCR<br>(Chapter 7) |
| BRIAN KING, ET AL.,<br><br>    Plaintiffs,<br><br>v.<br><br>ROGER SCHLOSSBERG,<br><br>    Defendant. | Adversary Number: 24-00007-MCR |

### MEMORANDUM TO PARTIES

On April 26, 2024, the Court entered a Scheduling Order [Dkt. No. 15] in this adversary proceeding setting various deadlines, scheduling a final pretrial conference for May 7, 2025, and scheduling a two-day trial for May 13-14, 2025. On December 30, 2024, the Plaintiffs filed the *Trustee's Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs* [Dkt. No. 17] (the "Settlement Motion"). On January 21, 2025, Gregory B. Myers

Appx. 0631

(the "Debtor") filed a Preliminary Objection [Dkt. No. 20] to the Settlement Motion, to which the Trustee filed a Motion to Strike [Dkt. No. 20] on January 31, 2025.  On February 4, 2025, the Debtor filed a Supplement [Dkt. No. 22] to his Preliminary Objection, and on February 24, 2025, the Debtor filed a Response in Opposition to the Motion to Strike [Dkt. No. 23] (together, the "Debtor's Responses")  On February 27, 2025, the Trustee filed a Reply [Dkt. No. 24] to the Debtor's Responses.

On March 6, 2025, the Debtor filed a Suggestion of Bankruptcy [Dkt. No. 25] indicating that he filed a new Chapter 13 bankruptcy case on February 26, 2025 in the United States Bankruptcy Court for the District of Columbia (Case No. 25-00069-ELG) (the "D.C. Bankruptcy Case").  The Suggestion of Bankruptcy requests that all further proceedings in this adversary proceeding be stayed pursuant to the automatic stay provisions of 11 U.S.C. § 362(a).  On April 3, 2025, the Trustee filed a Response [Dkt. No. 26] to the Suggestion of Bankruptcy explaining that the D.C. Bankruptcy Case was dismissed by an order entered on March 26, 2025 (the "D.C. Dismissal Order"), a copy of which is attached to the Trustee's Response.  A review of the D.C. Dismissal Order makes clear that the D.C. Bankruptcy Case was dismissed at the Debtor's request and that the D.C. Bankruptcy Court was retaining jurisdiction to determine pending motions requesting that the dismissal of the D.C. Bankruptcy Case be subject to a bar to refiling.

In light of the Suggestion of Bankruptcy, the Court has not scheduled a hearing to consider the Settlement Motion or taken any other action in this matter since entry of the Scheduling Order.  At the May 7, 2025 pretrial conference, the Court will request that the Trustee and/or Debtor update the Court regarding the status of the D.C. Bankruptcy Case.

On May 1, 2025, the presiding judge's courtroom deputy sent an email to all parties involved in this adversary proceeding reminding them that the pretrial conference is scheduled for May 7, 2025 by videoconference and attaching a copy of the presiding judge's Protocol for Videoconference Hearings.

On May 2, 2025, the Debtor sent an email to the presiding judge's courtroom deputy stating the following:

> In response to your email, and with respect to a hearing in *King, et al. vs. Schlossberg* (24-00007-MCR), Rule 2002 of the Federal Rules of Bankruptcy Procedure provides that "the clerk or the court's designee **must** give the debtor, the trustee, all creditors, and all indenture trustees **at least 21 days' notice** by mail of: ... (3) a hearing to approve a compromise or settlement... ."

> Accordingly, "the clerk or the court's designee **must** give the debtor, the trustee, all creditors, and all indenture trustees **at least 21 days' notice** by mail of: ... (3) a hearing to approve a compromise or settlement" in the case of *King, et al. vs. Schlossberg* (24-00007-MCR).

> Thank you for respecting the Federal Rules of Bankruptcy Procedure.

The boldfaced text appears as boldfaced text in the email.  On May 5, 2025, the Debtor sent a second email to the presiding judge's courtroom deputy forwarding his first email and stating "Ms. Whitfield ??" in an apparent attempt to prompt a response.

The Debtor's communications with chambers are improper.  Parties in interest may communicate with the presiding judge's staff about the date, time, and location of a hearing. Any other communications regarding a bankruptcy case and/or adversary proceeding must be made through a pleading filed with the Court or in oral argument at a hearing.  Accordingly, the presiding judge's chambers will take no further action with respect to the Debtor's improper

Appx. 0633

communications, and the Court cautions the Debtor against further improper communications

with Court personnel.

cc:     All parties
        All counsel
        Office of the United States Trustee

**END OF MEMORANDUM**

Appx. 0634

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

In re:     Case No.: **15–26033 – MCR**     Chapter: **7**     Adversary No.: **24–00007**

**Gregory B Myers**
Debtor

**Brian King, et al.**
Plaintiffs

vs.

**Roger Schlossberg**
Defendant

## NOTICE OF EVIDENTIARY HEARING

In person hearing Courtroom 3–C Greenbelt, Judge Chavez–Ruark.

PLEASE TAKE NOTICE that a hearing will be held

on 6/30/25 at 10:00 AM & 7/1/2025 at 10:00 AM to consider and act upon the following (in addition to other matters already scheduled for the same dates and times):

20 – Motion to Strike Debtor's Objection to Trustee's Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs Filed by Roger Schlossberg.(related document(s) 19 Objection filed by Debtor Gregory B. Myers) (Attachments: # 1 CMECF Mailing Information # 2 Proposed Order) (Mastro, Frank). Modified on 2/3/2025. Related document added. (Arter, Laurie).

23 – Response on behalf of Gregory B. Myers Filed by Gregory B. Myers (related document(s)20 Motion to Strike Debtor's Objection to Trustee's Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs filed by Defendant Roger Schlossberg). (Horning, Kelly)

24 – Response on behalf of Roger Schlossberg Filed by Frank J. Mastro (related document(s)23 Response filed by Debtor Gregory B. Myers, 20 Motion to Strike Debtor's Objection to Trustee's Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs filed by Defendant Roger Schlossberg). (Attachments: # 1 Mailing Information) (Mastro, Frank). Modified on 2/27/2025. Additional related document added. (Arter, Laurie).

**NOTICE TO MOVING PARTY**

**A service list or certificate of service regarding parties noticed by the court may be obtained through CM/ECF or PACER. If you believe that a party entitled to notice is not listed, please provide notice to that party forthwith and file an appropriate certification with the Clerk's office.**

Dated: 5/14/25

Mark A. Neal, Clerk of Court
by Courtroom Deputy Clerk, Jennifer Whitfield
Hearings_mcr@mdb.uscourts.gov

Appx. 0635

Form ntchrgmdb (rev. 08/13/2024)

Appx. 0636

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:

GREGORY B. MYERS,

     Debtor.

_____/

BRIAN KING, *et al.*,

     Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

     Defendant.

_____/

Case No.  15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

**SUPPLEMENTAL OBJECTION TO TRUSTEE'S MOTION FOR APPROVAL OF
PROPOSED COMPROMISE AND SETTLEMENT WITH KING PLAINTIFFS**

Gregory B. Myers ("Mr. Myers" or "Movant"), *pro se*, files this supplemental objection

(the "Supplement Objection") to the *Trustee's Motion For Approval Of Proposed Compromise*

*And Settlement With King Plaintiffs* (Doc. 17) (the "Motion"), and states:

    I.    **A Bankruptcy Rule 9019 settlement cannot be approved without a copy of the
        actual signed settlement agreement being produced.**

The purpose of Rule 9019 is to prevent hidden agreements and ensure the court can make

an informed decision about the fairness and equitability of the settlement. This requires the Court

to have access to all facts necessary for an intelligent and objective opinion. This Court cannot

make a determination if such settlement is fair to such debtor's estate and the paramount interest

of creditors, *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*

1

Appx. 0637

390 U.S. 414, 424 (1968), if the Chapter 7 Trustee has never provided a copy of the **actual signed settlement agreement** to all parties in interest. *See* Fed. R. Bankr. P. 9019(a); 11 U.S.C. § 102(a) (defining "notice and a hearing"); Fed. R. Bankr. P. 2002(a)(3) (requiring 21 days' notice for hearing to approve settlement).

Bankruptcy Rule 9019 is a procedural rule; Bankruptcy Code § 363 is the substantive basis for the debtor's disposition of property in bankruptcy. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 351 (3d Cir. 1999). Under § 363, if a debtor disposes of estate assets outside the "ordinary course of business," then it must do so only after notice and a hearing. 11 U.S.C. § 363(b)(1). *See, e.g., Seminole Walls*, 388 B.R. at 393 & n.5; *Pineo v. Turner (In re Turner)*, 274 B.R. 675, 680 (W.D. Pa. 2002); *Stroud*, 205 B.R. at 725–26.

The purpose of Rule 9019 is to prevent **"concealed agreements which are unknown to the creditors and unevaluated by the court"**. *United Shipping Co.*, 1989 WL 12723 at *5 (Rule 9019's purpose "is to protect other creditors against bad deals made between one creditor and the debtor."). Therefore, although Rule 9019 doesn't explicitly mention signed settlement agreements, the practical requirements of seeking and obtaining court approval make providing a copy of the agreement to the court and interested parties a standard and necessary step. All parties in interest need to review the the signed settlement agreement itself to determine if they are prejudiced. **This assessment requires the Court reviewing the signed settlement agreement itself**. This enables the court to fulfill its duty of ensuring the fairness and equity of the settlement.

In essence, the court cannot approve an agreement it hasn't seen. The court needs to examine the details of the agreement to ensure it is fair and equitable to all parties involved, including creditors Without the actual settlement agreement, the court lacks the necessary

Appx. 0638

information to make a determination regarding the fairness and appropriateness of the compromise.

## II.     This Court cannot approve a settlement agreement involving *non-estate* property.

The Trustee's Settlement Motion cannot be approved as it constitutes fraud on the Court and a breach of the Trustee's fiduciary duties. The proposed settlement—which contemplates the Chapter 7 Trustee conveying ***non-estate property*** to the King Parties in exchange for $150,000— is tantamount to **fraud** and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner. See *In re Anderson*, 377 B.R. 865 (2007).[1] See also *Etgen v. Washington County Bldg. Loan Ass'n.,* 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land W*ater Co. v. Robinson, 154 Cal. 36, 97 P. 10, 14."). Id. at 418.

The Trustee has not met his burden of proof that Serv Trust's property is property of the bankruptcy estate, *Genger*, No. 19-13895 (JLG), 2024 WL 4438857 (Bankr. S.D.N.Y. Oct. 5, 2024, and section 105 does not authorize a bankruptcy court to create substantive rights that are

---

[1] On December 18, 2018, **The Honorable Anne K. Albright** found that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members" (his family), concluding that Mr. King's actions "**would amount to constructive fraud.**".

3

otherwise unavailable under applicable law. Accordingly, the Trustee's Settlement Motion must be denied.

RESPECTFULLY SUBMITTED on this 3rd day of July, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on ~~February 4~~ July 3, 2025, a copy of the foregoing Supplement was furnished via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

Gregory B. Myers, *pro se*

4

Appx. 0640

**MARIA ELLENA CHAVEZ-RUARK, U.S. BANKRUPTCY JUDGE**

Evidentiary Hearing:  YES
Exhibits Filed:  YES

PROCEEDING MEMO − CHAPTER 7

**Case: 24-00007-MCR**                                       Date: 07/03/2025 at 10:00 a.m.

**Brian King, et al. vs. Roger Schlossberg, in His Official Capacity as Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers**

Appearances:  Maurice Belmont VerStandig, counsel for Plaintiffs
              Frank J. Mastro, counsel for Defendant
              L. Jeanette Rice, Office of the United States Trustee

Also present:  Roger Schlossberg, Defendant/Chapter 7 Trustee
               Gregory B. Myers, Debtor (pro se Debtor)
               Brian King, Plaintiff

[17] Application to Compromise Controversy with King Plaintiffs, Filed by Roger Schlossberg. (Attachments: # 1 Notice of Motion # 2 Proposed Order # 3 Certificate of Service # 4 Certificate of Service # 5 List of All Creditors)

> [19] Preliminary Objection to the Trustee's Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs on behalf of Gregory B. Myers Filed by Gregory B. Myers (related document(s)17 Application to Compromise Controversy filed by Defendant Roger Schlossberg). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G)

> [22] Supplement to Gregory B. Myers's Preliminary Objection to the Trustee's Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs Filed by Gregory B. Myers (related document(s)17 Application to Compromise Controversy filed by Defendant Roger Schlossberg, 19 Objection filed by Debtor Gregory B. Myers). (Attachments: # 1 Exhibit H # 2 Exhibit I)

[20] Motion *to Strike Debtor's Objection to Trustee's Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs* Filed by Roger Schlossberg.(related document(s) 19 Objection filed by Debtor Gregory B. Myers) (Attachments: # 1 CMECF Mailing Information # 2 Proposed Order)

> [23] Response on behalf of Gregory B. Myers Filed by Gregory B. Myers (related document(s)20 Motion to Strike Debtor's Objection to Trustee's Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs filed by Defendant Roger Schlossberg).

Appx. 0641

[24] Response on behalf of Roger Schlossberg Filed by Frank J. Mastro (related document(s)23 Response filed by Debtor Gregory B. Myers, 20 Motion to Strike Debtor's Objection to Trustee's Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs filed by Defendant Roger Schlossberg). (Attachments: # 1 Mailing Information)

COMMENTS:       The Court concluded that that the overwhelming evidence is that:
- ➢ the proposed settlement does not fall below the lowest point of reasonableness;
- ➢ the Trustee has exercised sound business judgment in entering into the proposed settlement;
- ➢ the proposed settlement is in the best interest of the bankruptcy estate and all parties in interest; and
- ➢ the proposed settlement should be approved under Bankruptcy Rule 9019(a).

Counsel for the Trustee will prepare a proposed order granting the settlement motion and approving the settlement. The order will expressly include the four settlement terms:
1. The King Parties will pay to the Trustee, for the benefit of the Debtor's bankruptcy estate, the sum of $150,000 to redeem the entirety of the bankruptcy estate's interest in Goldsboro LLC and settle the instant adversary proceeding.
2. After the King Parties pay $150,000 to the Trustee, the King Parties and the Trustee will file a stipulation in the adversary proceeding dismissing all claims therein with prejudice.
3. The King Parties will reimburse the Trustee for all reasonable legal fees and expenses that the Trustee incurs in connection with the litigation of any appeals taken or motions for reconsideration filed by any party in connection with the Trustee's settlement motion.
4. The King Parties' three claims filed in the main bankruptcy case at Claim Nos. 21, 22, and 23 are deemed withdrawn effective when the order becomes final and non-appealable.

As part of the settlement, the King Parties are withdrawing their claims filed in the Debtor's main bankruptcy case, Claim Nos. 21, 22, and 23. Therefore, the Debtor's objections to those claims are overruled as moot.

The Court will have a transcript of its ruling prepared and docketed for the convenience of the parties.

DISPOSITION:    Oral ruling given. Trustee's settlement motion granted and Trustee's counsel will prepare the order granting the motion. Debtor's objections to claims overruled as moot and Court will prepare the order overruling the objections.

Appx. 0642

Entered: July 3rd, 2025
Signed: July 3rd, 2025

**SO ORDERED**

MARIA ELLENA CHAVEZ-RUARK
U.S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | |
|---|---|
| In re:<br><br>GREGORY B. MYERS,<br><br>    Debtor. | Case Number:  15-26033-MCR<br>(Chapter 7) |
| BRIAN KING, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ROGER SCHLOSSBERG,<br><br>    Defendant. | Adversary Number:  24-00007-MCR |

<u>ORDER DENYING MOTION TO STRIKE</u>

On January 10, 2024, Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (together, the "<u>Plaintiffs</u>") filed a Complaint for Declaratory Relief (the "<u>Complaint</u>") against Roger Schlossberg (the "<u>Trustee</u>"), the Chapter 7 Trustee of the bankruptcy estate of Gregory B. Myers (the "<u>Debtor</u>"). The Complaint asserts that the junior equity interest in an entity called 6789 Goldsboro, LLC

Appx. 0643

("Goldsboro") was redeemed pursuant to its Operating Agreement, thereby vesting sole ownership of Goldsboro in the Plaintiffs. An entity named Serv Trust had been the holder of the junior equity interest in Goldsboro, but the Complaint explains that the Circuit Court for Montgomery County, Maryland determined that Serv Trust was the alter ego of the Debtor and the Plaintiffs' claim concerning the redemption of Serv Trust's interest in Goldsboro became a claim against the Debtor's bankruptcy estate. Ultimately, the Complaint seeks a judicial declaration that the interest of Serv Trust and/or the Debtor's bankruptcy estate have been fully redeemed and that the Trustee has no right, title, or interest in Goldsboro.

On December 30, 2024, the Trustee filed a Motion for Approval of Proposed Compromise and Settlement With King Plaintiffs [Dkt. No. 17] (the "Settlement Motion"). The Settlement Motion and related Notice provide that the Plaintiffs will pay to the Trustee, for the benefit of the bankruptcy estate, the sum of $150,000.00 to redeem the entirety of Serv Trust's interest in Goldsboro and will also pay the Trustee's reasonable legal fees and expenses that the Trustee incurs in connection with the litigation of any appeals taken in the event the Settlement Motion is granted.

On January 21, 2025, the Debtor filed a Preliminary Objection [Dkt. No. 19] to the Settlement Motion. The Preliminary Objection asserts, among other things, that the Circuit Court for Montgomery County, Maryland did not enter a final order in the state court litigation in which it determined that Serv Trust was the alter ego of the Debtor. Accordingly, the Debtor argues that there is "no justiciable controversy or cause of action 'affecting the estate' and therefore there is nothing for the Trustee 'to compromise or settle.'" The Debtor avers that until the state court litigation concludes, the Trustee lacks standing to file the Settlement Motion or any "other motion affecting Serv Trust or Mr. Myers."

Appx. 0644

On January 31, 2025, the Trustee filed a Motion to Strike the Debtor's Preliminary Objection [Dkt. No. 20] (the "Motion to Strike") arguing that the Debtor lacks standing to object to the Settlement Motion. The Motion to Strike relies on *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985), which held that an insolvent Chapter 7 debtor lacks standing to challenge the proposed sale of estate property or the distribution of estate assets because an insolvent debtor has no pecuniary interest in the outcome of the proposed transaction if it would not render the estate solvent or return a surplus to the debtor. On February 4, 2025, the Debtor filed a Supplement [Dkt. No. 22] to his Preliminary Objection to the Settlement Motion and a Response [Dkt. No. 23] to the Motion to Strike. On February 27, 2025, the Trustee filed a Reply [Dkt. No. 24] to the Debtor's Response again relying on *Willemain* and reiterating that there is no possibility that the Debtor's bankruptcy estate will be rendered solvent by the redemption of Serv Trust's interest in Goldsboro.

The Court has considered the Motion to Strike and related filings and finds that further briefing and/or a hearing would not aid the decisional process. *See* Md. L. Bankr. R. 9013-1(b) and (c). For the following reasons, the Motion to Strike is denied.

As asserted by the Trustee, the United States Court of Appeals for the Fourth Circuit addressed a debtor's standing in *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985). The Court stated:

> In the analogous setting of whether an insolvent debtor may object to the allowance of claims against the estate, the leading and authoritative bankruptcy treatise as well as numerous tribunals have held that an insolvent debtor is not a party in interest and thus lacks standing because he has no pecuniary interest in the distribution of his assets among his creditors. *See* 3 J. Moore & L. King, *Collier on Bankruptcy* ¶ 57.17[2.1], pp. 275-277 (14th ed. 1977); 3 L. King, *Collier on Bankruptcy* ¶ 502.01[2] (15th ed. 1985). The Eighth Circuit succinctly stated the general rule:

> Thus, since the bankrupt is normally insolvent, he is considered to have no interest in how his assets are distributed among his creditors and is held not to be a party in interest. [citations omitted] However, when it appears that, if the contested claims are disallowed, there may be a surplus of assets to be returned to the bankrupt, the bankrupt is considered to have standing to contest the claims.

*Willemain*, 764 F.2d at 1022 (quoting *Kapp v. Naturelle, Inc.,* 611 F.2d 703, 706-707 (8th Cir. 1979)).

Here, however, the Debtor has been denied a discharge in his bankruptcy case. Under such circumstances, courts have determined that a debtor has a pecuniary interest in estate activities that could reduce the debtor's personal liability post-bankruptcy. *See Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003) ("If legal fees were reduced or disallowed, there would be more money available in the estate to pay the nondischargeable priority claims, and Grausz's personal liability would be reduced. Grausz therefore had a pecuniary interest in the outcome of the fee applications, making him a party in interest to that proceeding."); *see also McGuirl v. White*, 86 F.3d 1232, 1235 (D.C. Cir. 1996) ("We do not agree that the McGuirls' pecuniary interest in challenging the fee application is remote. Because all of the McGuirls' debts are non-dischargeable, any reduction in administrative expenses will necessarily reduce the amount of non-dischargeable claims that remain unpaid and for which the McGuirls would be liable post-bankruptcy."); and *In re Byrd*, No. 04-35620-TJC, 2011 WL 589907, at *5, n. 6 (Bankr. D. Md. Feb. 10, 2011), *aff'd sub nom. Byrd v. Johnson*, 467 B.R. 832 (D. Md. 2012), *aff'd sub nom. In re Byrd*, 484 Fed. Appx. 845 (4th Cir. 2012) (unpublished) ("Case authority supports the principle that *Willemain* does not apply where a debtor is denied a discharge, because bankruptcy actions could have an effect on the amount of the nondischarged claims that the debtor remains obligated to pay once the automatic stay is terminated.").

Although the Debtor does not appear to be challenging the terms of the proposed settlement and instead questions the Trustee's standing to file the Settlement Motion, the Court finds that he has standing to oppose the Settlement Motion. If approved, the contemplated transaction will bring money into the Debtor's bankruptcy estate and, as set forth in *McGuirl*, may reduce the amount of non-dischargeable claims that remain unpaid and for which the Debtor will remain liable post-bankruptcy. *McGuirl*, 86 F.3d at 1235. Thus, the Debtor has a pecuniary interest in the outcome of the Settlement Motion.

For these reasons, it is, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that that the Motion to Strike is denied.

cc:     All Parties
        All Counsel
        Debtor – Gregory B. Myers, 750 Gulf Shore Boulevard North, Naples, FL 34102
        Debtor – Gregory B. Myers, 4505 Wetherill Road, Bethesda, MD 20816

**END OF ORDER**

Appx. 0647

Entered: July 3rd, 2025
Signed: July 3rd, 2025

**SO ORDERED**



**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
|     Debtor. | ) | (Chapter 7) |
| | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.:  24-00007 |
| | ) | |
| ROGER SCHLOSSBERG, TRUSTEE, | ) | |
|     Defendant. | ) | |
| | ) | |

**ORDER APPROVING TRUSTEE'S COMPROMISE**
**AND SETTLEMENT WITH KING PARTIES**

Before the Court is the *Motion for Approval of Proposed Compromise and Settlement with King Plaintiffs* (the "*Rule 9019 Motion*"), [Dkt. No. 17], filed by Roger Schlossberg, the Chapter 7 Trustee herein, and the objections thereto filed by the Debtor, Gregory B. Myers, [Dkt. Nos. 19 and 22]. The Court conducted an in-person evidentiary hearing on June 30, 2025 and July 1, 2025. The Court then convened a virtual hearing on July 3, 2025 to orally issue its findings of fact and conclusions of law, and to deliver its ruling. For the reasons stated on the

Appx. 0648

record at the aforementioned virtual hearing on July 3, 2025, it is by the United States Bankruptcy Court for the District of Maryland, hereby

**ORDERED**, that the *Rule 9019 Motion* shall be, and the same hereby is, **GRANTED**; and it is further

**ORDERED**, that the compromise and settlement set forth below, which is described in the *Rule 9019 Motion* and which was clarified and affirmed by the Trustee and the King Parties at the evidentiary hearing on June 30, 2025 and July 1, 2025, shall be, and the same hereby is, **APPROVED**:

(1)    The King Parties shall pay to the Trustee, for the benefit of the Estate, the sum of $150,000.00 (the "Settlement Payment") which shall be accepted by the Trustee as full consideration for: (i) the transfer by the Trustee to the King Parties of all of the right, title and interest of the Trustee, the Debtor and the bankruptcy estate in and to any and all membership interest in or property of 6789 Goldsboro LLC; and (ii) settlement of all claims asserted by the King Parties in the above-captioned adversary case;

(2)  Upon successful negotiation of the Settlement Payment by the Trustee, the parties shall file a Stipulation of Dismissal with prejudice all claims asserted in the above-captioned adversary case;

(3)  The King Parties shall reimburse the Trustee for all reasonable and necessary legal fees and expenses that the Trustee incurs in connection with the litigation of any appeals, and any motions for reconsideration or motions to alter/amend judgment, taken by any party with respect to this *Order*; and

Appx. 0649

(4)    Proofs of Claim Nos. 21-1, 22-1, and 23-1 filed by the King Parties in Case No. 15-26033 shall be deemed withdrawn by the King Parties effective as of the date that this *Order* becomes final and non-appealable.

**END OF ORDER**

cc:    Roger Schlossberg, Esq.
Frank J. Mastro, Esq.
Maurice B. VerStandig, Esq.
Gregory B. Myers, Debtor
United States Trustee
All persons requesting notice

3

Appx. 0650

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GREGORY B. MYERS, | ) | Case No. 15-26033-MCR |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| BRIAN KING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Case No. 24-00007-MCR |
| v. | ) | |
| | ) | |
| ROGER SCHLOSSBERG, in His | ) | |
| Official Capacity as Chapter 7 Trustee | ) | |
| of the Bankruptcy Estate of Gregory B. | ) | |
| Myers, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## NOTICE OF DISMISSAL WITH PREJUDICE

Come now Brian King, Cristina King and the Cristina and Brian King Children's Trust, alongside Roger Schlossberg in his official capacity as chapter 7 trustee of the bankruptcy estate of Gregory B. Myers, by and through respective undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7041 and Federal Rule of Civil Procedure 41(a)(1)(A)(ii), and give notice of the dismissal of the above-captioned action, *with prejudice*.

*[Signatures on Following Page]*

1

Appx. 0651

Respectfully submitted,

Dated: August 5, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 576-6885
mac@mbvesq.com
*Counsel for the King Parties*

/s/ Frank J. Mastro (signed w/ express permission)
Frank J. Mastro, Esq.
Bar No. #24679
Schlossberg Mastro
P.O. Box 2067
Hagerstown, MD 21742
(301) 739-8610
fmastro@schlosslaw.com
*Attorneys for Defendant, Roger Schlossberg, Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of August, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to all counsel in this adversary proceeding.

I DO FURTHER CERTIFY that on this 5th day of August, 2025, a copy of the foregoing was served via First Class Mail, postage prepaid, upon:

Gregory Myers
700 Gulf Shore Blvd. N
Naples, Florida 34102
*Debtor*

/s/ Maurice B. VerStandig
Maurice B. VerStandig

2

Appx. 0652

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

In re:

Gregory B. Myers

        Debtor.

Case No.  15-26033-MCR
Chapter 7

_____/

**OBJECTION TO CLAIM 22-1 FILED BY CRISTINA KING,
NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

Debtor, Gregory B. Myers ("Mr. Myers" or "Debtor"), *pro se*, pursuant to 11 U.S.C. § 502(a), objects to Claim 22-1 filed by Cristina King (Claim 22-1), and in support thereof states:

1.      Debtor commenced this case by filing a bankruptcy petition on November 18, 2015 (the "Petition Date").

2.      On January 10, 2024, Cristina King filed a Proof of Claim (Claim 22-1) in the amount of Zero Dollars and No Cents ($0.00) with "the basis of the claim" identified as "Equitable and statutory claim, as set forth in Case No. 24-00007". Claim 22-1 was submitted "under penalty of perjury" by Maurice B. VerStandig, Esquire and The VerStandig Law Firm, LLC.

3.      Claim 22-1 lacks attachments or factual support. For example, Claim 22-1 fails to attach a copy of the referenced "Case" and fails to attach redacted copies of any other documents supporting Claim 22-1 as required by Bankruptcy Rule 3001(c).

4.      Claim 22-1 is a fraudulent attempt to create a monetary connection between Serv Trust and Mr. Myers's Chapter 7 bankruptcy estate where there is none. *See, e.g., In re Anderson*, 377 B.R. 865 (2007).

5.      Claim 22-1 is counterfactual and legally meritless for the reasons set forth in **Exhibits A, B, C, D, E** and **F**, which are incorporated herein by reference and made a part hereof

1

Appx. 0653

for all relevant purposes.

6.    Claim 22-1 is invalid on its face because it is time barred by 11 U.S.C. §502 and Rule 3002 of the Federal Rules of Bankruptcy Procedure. See *In re Stone*, 473 B.R. 465 (Bankr. M.D. Fla. 2012). Further, the Court has no authority or discretion to modify the claims bar date in Mr. Myer's Chapter 7 bankruptcy case (i.e., by ordering "the deadline for the King Parties to file a proof of claim against the bankruptcy estate is 30 days from the date on which this Order is entered" or January 10, 2024). *See* Fed. R. Bankr. P. 3002(c); Fed. R. Bankr. P. 9006(b)(3). *See also In re Aboody*, 223 B.R. 36 (B.A.P. 1st Cir. 1998) (excusable neglect standard is inapplicable to the filing of a proof of claim in a case under Chapter 7).

7.    Accordingly, Claim 22-1 should be disallowed in its entirety.

## **RESERVATION OF RIGHTS**

8.    Nothing herein shall be construed as an admission that Debtor was or is indebted to Cristina King or that any of the claims or amounts asserted in Claim 22-1 are valid. Debtor reserves the right to amend or supplement this Objection if Debtor deems it necessary and appropriate, for any reason, including, without limitation, the right to add documents and assert claims or defenses, at law or in equity, arising prior to, on, or after the Petition Date.

9.    Debtor does not waive any rights at law or equity or any rights or causes of action that Debtor has or may have against any person, including but not limited to Cristina King, that (i) affect or seek to affect in any way the rights or interests of the Debtor or any other party in interest in this case, including (a) property of the Debtor or the Debtor's estate, or proceeds thereof, (b) claims against or interests in the Debtor, (c) other rights or interests of creditors of the Debtor or other parties in interest in this case, or (d) property or proceeds thereof in the possession, custody, or control of Cristina King or other parties in interest in this case in which the Debtor possesses a

2

legal right of user or other rights, whether known or unknown, future or contingent, express or implied; or (ii) requires or prohibits, or seeks to require or prohibit, any act, delivery of any property, payment or other conduct by the Debtor or any other party in interest. Debtor further reserves any rights to recoupment and setoff, and, if appropriate, may exercise such rights without further order of the Court and without amending this Objection.

10.     This Objection is not intended to be, and shall not be construed as, an election of remedies; a waiver of any claims or defenses; or an admission as to the jurisdiction of this Court and/or a waiver to contest the jurisdiction of this Court. Neither this Objection nor any pleading, claim, or suit shall waive any right of Debtor (i) to have final orders in non-core matters entered only after de novo review by a higher court, (ii) to trial by jury in any proceeding so triable in this case or any case, controversy, or proceeding related to this case, (iii) to have the reference withdrawn in any matter subject to mandatory or discretionary withdrawal, or (iv) to any other rights, claims, actions, defenses, setoffs or recoupments, under agreements, in law, in equity, or otherwise, all of which rights, claims, actions, defenses, setoffs, and recoupments are expressly reserved.

## REQUEST FOR EVIDENTIARY HEARING

11.     Debtor requests that the Court schedule an evidentiary hearing on Claim 22-1 and Debtor demands strict proof on the substance and merits of Claim 22-1.

**WHEREFORE**, for the reasons set forth above, Debtor Gregory B. Myers requests that the Court enter an order sustaining Debtor's Objection to Claim 22-1, disallowing Claim 22-1 in its entirety, and grant such other and further relief as this action may require. [1]

---

[1] Judges abuse the power of the judicial office when they abbreviate or change critical aspects of the adversary process in ways that run counter to the scheme established by relevant constitutional and statutory law. *Oberholzer v. Comm'n on Judicial Performance*, 20 Cal.4th 371, 84 Cal.Rptr.2d

3

Appx. 0655

## NOTICE TO CLAIMANT CRISTINA KING

**Please take notice that:**

**WITHIN 30 DAYS AFTER THE DATE OF SERVICE OF THE OBJECTION, THE CLAIMANT MAY FILE AND SERVE A MEMORANDUM IN OPPOSITION, TOGETHER WITH ANY DOCUMENTS AND OTHER EVIDENCE THE CLAIMANT WISHES TO ATTACH IN SUPPORT OF ITS CLAIM, UNLESS THE CLAIMANT WISHES TO RELY SOLELY UPON THE PROOF OF CLAIM. AN INTERESTED PARTY MAY REQUEST A HEARING THAT WILL BE HELD AT THE COURT'S DISCRETION.**

**RESPECTFULLY SUBMITTED** on this 6th day of May, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
*gregbmyers@verizon.net*

---

466, 975 P.2d 663, 679 (1999) (legal error "can constitute misconduct if it involves 'bad faith, bias, abuse of authority, disregard for fundamental rights, intentional disregard of the law or any purpose other than the faithful discharge of judicial duty' " (citing cases)); *In re Quirk*, 705 So.2d at 178 ("egregious legal error, legal error motivated by bad faith, and a continuing pattern of legal error" can also constitute misconduct). The record in this case creates a stark appearance of misconduct sufficient to support a finding that this Court has committed serious judicial misconduct by abusing power that is prejudicial to the effective and expeditious administration of the business of the courts. 28 U.S.C. § 351(a).

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May 2025, a copy of the foregoing was furnished via first class U.S. Mail, postage prepaid to the following parties:

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

_____
Gregory B. Myers

5

Appx. 0657

USBC-MD G FILED
6 MAY '25 PM4:12

# Exhibit A

Appx. 0658

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### (Greenbelt Division)

| | |
|---|---|
| In re: | |
| GREGORY B. MYERS, | Case No. 15-26033-MCR |
| Debtor. | (Chapter 7) |
| _____/ | |
| BRIAN KING, et al., | |
| Plaintiffs, | |
| v. | Adv. No. 24-00007 |
| ROGER SCHLOSSBERG, TRUSTEE, | |
| Defendant. | |
| _____/ | |

### GREGORY B. MYERS'S PRELIMINARY OBJECTION TO THE TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND <u>SETTLEMENT WITH KING PLAINTIFFS</u>

Gregory B. Myers ("Mr. Myers" or "Movant"), *pro se*, files his preliminary objection (the "Objection") to the *Trustee's Motion For Approval Of Proposed Compromise And Settlement With King Plaintiffs* (Doc. 17) (the "Motion"), and states:

### BACKGROUND

On December 16, 2022, the Montgomery County Circuit Court (Lease, J) held a hearing in *King, et al. v. Serv Trust, et al.*, Case No. 436977-V (the "King Case") and *6789 Goldsboro LLC v. Serv Trust, et al.*, Case No. 436977-V (the "Goldsboro Case") (the "King Case" and "Goldsboro Case" having been consolidated for administrative purposes, and referred to herein collectively as the "State Court Litigation"). The following statements were placed on the record during the

1

Appx. 0659

December 16, 2022, hearing in the State Court Litigation:

> THE COURT: *** So Mr. Myers is here in court. The matters against Mr. Myers have been stayed. *** Mr. Myers is a party to the case, but his matters have been stayed at this point in time.
>
> THE COURT: What's the status of this matter? I'll start with counsel for the King Parties.
>
> MR. VERSTANDIG: Your Honor, we are prepared to proceed to trial on January 3rd [2023]. Pre-trial statements were filed a couple of years ago prior to a bankruptcy stay and are inclusive of all the exhibits and all the witnesses we plan to rely upon during our trial in January [2023]. It will be a more abbreviated list of witnesses and exhibits because the claims against Mr. Myers are stayed. ***
>
> MR. MYERS: *** If King Parties prevail in either of their two counts, I have potential liability.
>
> THE COURT: They would have to prove those counts against you in a separate trial. The matter would not be -- there would not be any collateral estoppel or res judicata because you did not participate in this case as a party. You were stayed and out of the case.
>
> MR. MYERS: There would still be a ruling that would impose liability upon me.
>
> THE COURT: There would not be a ruling that would impose liability on you. There would be a ruling that would potentially impose liability on Serv Trust. However, these Plaintiffs would have to, if they wanted to proceed against you, would be required to try that matter again separately and there would not be any res judicata or collateral estoppel issues because you were not a party to th[is] case. You were stayed, so you are not considered a party.

(Alterations and emphasis supplied supplied). See also King Plaintiff's motion to stay proceedings,

a copy of which is attached hereto as **Exhibit A** and made a part hereof.

On January 3, 2023, the Montgomery County Circuit Court (Lease, J) made the following

statement on the record in the State Court Litigation:

> THE COURT: And under the Frow doctrine you can, either one of two things: you sort of abstain from going forward because you don't want to try it twice, or two, you can enter the judgment, but then it's a non-final judgment because anything that I do today in essence necessarily would be nonfinal because we don't have, we're not putting all of the claims against all the parties are not getting to an adjudication. **So we don't have a final judgment today under any circumstance**.

(Emphasis supplied).[1] A copy of the partial hearing transcript is attached hereto as **Exhibit B** and made a part hereof.

On January 3, 2023, Mr. Myers noticed an appeal to the Appellate Court of Maryland ("ACM") stemming from the conduct in the State Court Litigation. The ACM docketed the case as No. 1876, September Term 2022, ACM-REG-1876-2022 (the "ACM Appeal").

On January 12, 2023, the Montgomery County Circuit Court (Lease, J.)—in violation of the ACM's jurisdiction—entered an ORDER ENTERING PARTIAL JUDGMENT AND STAY in the State Court Litigation, ordering "that all remaining matters in this case are accordingly stayed... ."

On April 17, 2023, the Montgomery County Circuit Court (Lease, J) held a hearing in the State Court Litigation and ruled the "triggering mechanism" for bankruptcy jurisdiction would necessarily require entry of a **final order** in the State Court Litigation (i.e., *not* entry of a *non-final* order). A copy of the hearing transcript is attached hereto as **Exhibit C** and made a part hereof.

On April 18, 2023, in the ACM Appeal, Mr. Myers filed a motion for stay pending appeal. On April 28, 2023, the King Parties filed a response to Mr. Myers's motion (the "King Parties ACM Response")—which Goldsboro and the Trustee adopted and incorporated in their respective responses filed in the ACM Appeal—arguing:

> "[T]he order from which Mr. Myers instantly seeks a stay is, by its own express terms, non-final. Indeed, the document is titled 'Order Entering Partial Judgment and Stay,' and the order most certainly does not dispose of the totality of the triable issues below."
>
> **"The order from which appellants appealed did not adjudicate or complete the adjudication of any claim in this matter. It** therefore was not a final order[.]"

---

[1] The King Parties have **never** answered the Second Amended Counterclaim filed by Serv Trust in Case 436977-V and are now in default.

Appx. 0661

"Here, the order below is, by its own titular designation, 'partial' in nature. There are no less than three causes of action that have not yet been tried judgment and, accordingly, upon which no judgment has been entered."

"[T]here remain unresolved causes of action in both cases that were consolidated below and, as such, there does not exist a final order in either case, even if they were to be considered separately."

(Alterations supplied). A copy of the King Parties ACM Response is attached hereto as **Exhibit D**. The King Parties, Goldsboro, and the Trustee are judicially estopped from taking a different position in this Court.

On May 7, 2024, the King Parties and the Trustee executed and filed a fraudulent "STIPULATION OF DISMISSAL" (the Stipulation") in the State Court Litigation, which states:

> COMES NOW, Plaintiffs, Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, the "King Parties"), and Defendant, Serv Trust, through Roger Schlossberg, the Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers, who is, by operation of law, now the sole legal representative of Serv Trust following this Court's judicial determination herein that Serv Trust is the alter ego of Gregory B. Myers, by and through their respective undersigned counsel, pursuant to Md. Rule 2-506(a), hereby stipulate and agree that Count I of Plaintiffs' First Amended Complaint (Declaratory Judgment: Redemption of Interests) in Case No.: 436977-V shall be, and is hereby, DISMISSED.

A copy of the fraudulent Stipulation is attached hereto as **Exhibit E**.

### ARGUMENT

Serv Trust's property is unaffected unless and until there is a final judgment in the State Court Litigation, and it is **undisputed** that there is no final judgment in the State Court Litigation that adjudicates all claims against all parties in the State Court Litigation. In fact, the King Plaintiffs (VerStandig) represented to the Appellate Court of Maryland that "The order from which appellants appealed did not adjudicate or complete the adjudication of *any claim* in this matter." (Emphasis supplied). The Trustee adopted and incorporated that very argument as his own.

4

Appx. 0662

It is obvious the Settlement Motion—together with Adversary Proceeding No. 24-00007—is a sham; a fraud. See *In re Anderson*, 377 B.R. 865 (2007), holding "the Chapter 7 Trustee's settlement with the owners of the other undivided one-half interest in the property cannot be approved, for, as already discussed, that settlement contemplates the Chapter 7 Trustee conveying to those owners an interest in the property that the bankruptcy estate in all likelihood no longer owns. **The bankruptcy estate's receipt of consideration from the Defendants under such circumstances would be tantamount to fraud and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner.**" (Emphasis supplied). See also email chain attached hereto as **Exhibit F**, evidencing a conspiracy by and among Brian King, Timothy Lynch, Maurice VerStandig and others to commit tax fraud in violation of 26 U.S. Code § 7206, as well and numerous other bad acts.[2] *See Etgen v. Washington County Bldg. Loan Ass'n.*, 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land Water Co. v. Robinson*, 154 Cal. 36, 97 P. 10, 14."). Id. at 418. The Trustee's "fingerprints" are now on this scheme as well.[3]

---

[2] Notably, on December 18, 2018, **The Honorable Anne K. Albright** (now sitting on the Appellate Court of Maryland), found, *inter alia*, that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members" (his family), and concluding "**that would amount to constructive fraud.**".

[3] Given the criminal and fraudulent nature of the Settlement Motion, it is apparent that counsel's

Appx. 0663

On December 5, 2019, the Maryland bankruptcy court (Simpson, J) entered an Order remanding Adv. No. 19-00427 (i.e., the State Court Litigation) "to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. ' 1452(b)." (Adv. No. 19-00427; Dkt. No. 5) the "Remand Order"). A copy of the Remand Order is attached hereto as **Exhibit G** and made a part hereof.

This Court (Chavez-Ruark, J) has previously acknowledged that the Montgomery County Circuit Court (Lease, J) has jurisdiction and authority under the Maryland Rules to **control its judgments** that are non-final. And the Trustee concedes that he is **barred** under Bankruptcy Rule 9027(a)(3) from removing the State Court Litigation to this Court, citing Bankruptcy Rule 9027 and *Roberts v. Creighton*, 2009 WL 7083320 (D. Md. Feb. 27, 2009). Yet, on December 11, 2023, this Court (Chavez-Ruark, J) entered an Order (Doc 1029) in Case 15-26033, which states:

> "The Settlement Procedure Motion is the **mechanism** by which the Trustee is seeking authority to resolve a stayed cause of action in the State Court."

The Bankruptcy Court (Chavez-Ruark, J) has no jurisdiction or authority to approve a "**mechanism**" which amounts to an **improper collateral attack** on the Remand Order entered on December 5, 2019 (Adv. No. 19-00427; Dkt. No. 5). An order remanding a claim or cause of action to the State Court is not reviewable by appeal "or otherwise" (which includes this Court). Only a

---

conduct implicates several cannons of the Model Rules of Professional Conduct. For instance, Rule 1.2(d), which proscribes a lawyer from "counsel[ing] a client to engage, or assist[ing] a client, in conduct that the lawyer knows is criminal or fraudulent"; Rule 3.1, which requires that a lawyer only bring or defend a proceeding when "there is a basis in law and fact for doing so that is not frivolous"; Rule 3.3(4) regarding candor toward the tribunal, which proscribes a lawyer from presenting a "[l]egal argument based on a knowingly false representation of law"; and Rule 3.3(12) which provides that "[l]awyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process[.]" Mr. Myers will be filing a complaint with the Attorney Grievance Commission to determine what, if any, Rules of Professional Conduct counsel might have violated.

Appx. 0664

district court or bankruptcy appellate panel may review a bankruptcy court's remand order under 28 U.S.C. § § 1334(d), 1447(d) and 1452(b). See *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 129, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). Accordingly, this Court's (Chavez-Ruark, J) "mechanism" is unlawful and is an affront to the proper jurisdiction of the State Court.

Maryland adheres to the *Frow Doctrine. See Curry v. Hillcrest Clinic, Inc.,* 337 Md. 412, 428-33 (1995) discussing *Frow v. De La Vega,* 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)( "But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."). "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants: and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law." *Id.*

It has long been established that courts "'can make no decree affecting the rights of an absent person, and can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights.'" *Greeley v. Lowe,* 155 U.S. 58, 70 (1894) (quoting *Shields v. Barrow,* 58 U.S. 130, 141-42 (1854)). This rule is just as strong today as when it was first set forth. *See, e.g., Republic of Philippines v. Pimentel,* 553 U.S. 851, 871 (2008) (recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties").

Appx. 0665

The U.S. Supreme Court has clearly stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliot v. Lessee of Piersol*, 26 U.S. 328 (1828). Thus, according to *Elliot*, by filing the instant Motion, the Trustee is "considered in law [a] trespasser." *Id.*

The State Court has made no final determination in the State Court Litigation. Accordingly, the Settlement Motion must be denied because there is no justiciable controversy or cause of action "affecting the estate" and therefore there is nothing for the Trustee "to compromise or settle." See *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979 (11th Cir.1990) (When standing has been contested, it is the burden of the party claiming standing "to plead and prove injury in fact, causation, and redressability."). The Trustee and the King Plaintiffs cannot meet that burden and "the court is not required to accept as true unwarranted legal conclusions or unwarranted factual inferences." *Id.* at 753. The Trustee and the King Plaintiffs must assert more than a conclusory statement that they have "suffered damages." It is the burden of the party claiming standing "to plead and prove injury in fact, causation, and redressability." Id. At 984. But here, they cannot.

Until the State Court Litigation concludes (i.e., with a final order, the Trustee lacks standing to file this Motion or any other motion affecting Serv Trust or Mr. Myers. This is not a core proceeding (it's a sham) and Mr. Myers does not consent to the entry of any final orders or judgments by the bankruptcy court. To the extent the Settlement Motion is not dismissed for lack of subject matter jurisdiction or some other reason, the bankruptcy court must submit proposed findings of fact and conclusions of law to the Maryland District Court for an Article III Judge to make a final determination. The U.S. Supreme Court has clearly stated that if a court is "without

Appx. 0666

authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliot v. Lessee of Piersol*, 26 U.S. 328 (1828). Thus, according to Elliot, by filing the Settlement Motion, the Trustee is "considered in law [a] trespasser." *Id.*

The Trustee has the burden of proof on the Settlement Motion, and Mr. Myers intends to show at an evidentiary hearing on the Settlement Motion that the Trustee cannot meet that burden. Accordingly, the Trustee's Settlement Motion should be denied

## REQUEST FOR EVIDENTIARY HEARING

Mr. Myers demands that the Court schedule a full evidentiary hearing on the Trustee's Settlement Motion and demands **strict proof** on the substance and merits of the Trustee's Settlement Motion.

RESPECTFULLY SUBMITTED on this 21st day of January, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

9

Appx. 0667

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21ˢᵗ day of January, 2025, a copy of the foregoing

GREGORY B. MYERS'S PRELIMINARY OBJECTION TO THE TRUSTEE'S MOTION FOR

APPROVAL OF PROPOSED COMPROMISE AND SETTLEMENT WITH KING

PLAINTIFFS was furnished via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

_____
Gregory B. Myers, *pro se*

10

Appx. 0668

USBC-MD G FILED
6 MAY '25 PM4:12

# Exhibit B

Entered: December 5th, 2019
Signed: December 4th, 2019

**SO ORDERED**



LORI S. SIMPSON
U.S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BAKNRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Gregory B. Myers, | * | Case No. 15-26033-WIL |
| | * | Chapter 7 |
| Debtor. | * | |
| | * | |

|  |  |  |
|---|---|---|
| Gregory B. Myers, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Adversary No. 19-00427 |
| | * | |
| Brian King, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

### ORDER REMANDING CASE

The above-captioned adversary proceeding was commenced on November 13, 2019, upon

the Notice of Removal filed by Maurice VerStandig. The Notice of Removal states that Gregory

Myers (the "Debtor") filed a third-party claim and counterclaim against various parties (the "Myers

1

Appx. 0670

Defendants") in Consolidated Case No. 451611-V pending in the Circuit Court for Montgomery County, Maryland alleging that the Myers Defendants violated Section 362 of Title 11 of the United States Code (the "Third Party Complaint"). Because the Third Party Complaint asserts that the Myers Defendants violated the automatic stay arising in the Debtor's bankruptcy case pending in this Court, the Myers Defendants consented to the removal of the Circuit Court Action.

On December 3, 2019, the Debtor filed a Notice of Voluntary Dismissal of the Third Party Complaint pursuant to Fed. R. Civ. P. 41, made applicable to this proceeding by Fed. R. Bankr. P. 7041. Based on the dismissal of the Third Party Complaint, and this Court having previously elected to abstain from exercising jurisdiction over the underlying Circuit Court Action[1], the Court will remand this matter to the Circuit Court for Montgomery County, Maryland.

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland, hereby

**ORDERED**, that the above-captioned adversary proceeding is remanded to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. § 1452(b).


cc:    All Counsel
       All Parties
       United States Trustee
       Chapter 7 Trustee: Roger Schlossberg


**END OF ORDER**


---

[1] *See* Order of Abstention (Docket Entry No. 28) entered on January 30, 2019, in Adversary Proceeding 18-00407.

2

Appx. 0671

USBC-MD G FILED
6 MAY '25 PM 4:13

# Exhibit C

IN THE APPELLATE COURT OF MARYLAND

| | | |
|---|---|---|
| GREGORY BRIAN MYERS | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No. ACM-REG-1876-2022 |
| | ) | |
| BRIAN KING, et al. | ) | September Term 2022 |
| | ) | |
| Appellees. | ) | |
| | ) | |

## OPPOSITION TO EMERGENCY MOTION FOR STAY PENDING APPEAL

Come now Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, the "King Parties"), appellees herein, by and through undersigned counsel, in opposition to Emergency Motion for Stay Pending Appeal (the "Motion") filed by Gregory B. Myers ("Mr. Myers" or the "Appellant"), and in support thereof state as follows:

### I.    Introduction

After years of delay tactics, the Appellant endeavored to remove the case below, to a Florida bankruptcy court, on the last business day before trial. When that tactic failed, courtesy of a prompt remand, the Appellant failed to appear at trial but filed a *carte blanche* appeal prior to the Circuit Court for Montgomery County, Maryland giving an oral ruling at the close of the trial (and well before a written order would file several days later). He now seeks an emergency stay pending disposition of that appeal but, in so doing, misses at least three critical issues: (i) a motion for a stay pending appeal must first be brought in the trial court; (ii) this appeal is procedurally improper inasmuch as it stems from a non-final order; and (iii) the Appellant is unlikely to succeed

1

Appx. 0673

on this appeal by virtue of the simple reason that he did not appear at trial and, as such, did not preserve any issues for appeal.[1]

For these reasons, and as extrapolated upon *infra*, the Motion merits denial.

## II.    Background: Gregory Myers and Barbara Ann Kelly

The ruling below concerns Mr. Myers and his wife, Barbara Ann Kelly ("Ms. Kelly"), using a trust (putatively established for the benefit of their children) to conceal assets from creditors, including a bankruptcy trustee. This case, however, falls within a broader context, where the litigation tactics of Mr. Myers and Ms. Kelly – including those focused on appellate filings – have, time and again, been held to be exemplars of bad faith.

As noted by one court more than two years ago, in assessing Mr. Myers' bad faith litigation tactics:

> [O]ver the past three years, Myers has filed approximately twenty actions, to include fifteen bankruptcy appeals and five civil cases, seemingly for the purpose of delaying the liquidation of his assets in his bankruptcy case. The overwhelming majority of these cases have been dismissed either by the Court or by Myers voluntarily after Myers failed to designate the record, file a brief, or pay his filing fees....

*Myers v. McNamee, Hosea, Jernigan, Kim, Greenan, & Lynch, P.A.*, 2020 WL 758154, at *1 (D. Md. 2020).

The United States District Court for the District of Maryland proceeded to further analyze how Mr. Myers' litigious efforts are vexatious in the worst way:

> This behavior has become a longstanding pattern for Myers. In his twenty cases, Myers initiates the action, then exhibits a dereliction in prosecution that reflects no real interest in resolution on the merits. The Court cannot help but conclude that

---

[1] The Appellants first learned of the Motion yesterday. As noted in a separate filing, it appears Mr. Myers – in what has now become a pattern of his – signed a certificate of service but never actually deposited a copy of the Motion in the mails. Save for the happenstance of counsel for a related party checking the docket, the pendency of the Motion would not have been timely discovered. The King Parties hope to supplement this with a more extensive brief in the coming days but, in the interim, file this opposition out of an abundance of caution.

2

Myers' true goal is to gum up the judicial process for his own personal benefit and ignore valid court orders as he sees fit. Taking all of this into account, the Court finds that Myers' behavior has reached the point where the Court could hold Myers in contempt of valid court orders and dismiss the action irrespective of the automatic stay.

*Myers*, 2020 WL 758154, at *4 (citing *In re Walters*, 868 F.2d 665, 669 & n.2 (4th Cir. 1989); *CapitalSource Fin., LLC v. Delco Oil, Inc.*, 2010 WL 3733934, at *7 (D. Md. 2010); *S.E.C. v. Bilzerian*, 131 F. Supp. 2d 10, 15 (D. D.C. 2001), aff'd, 75 Fed. Appx. 3 (D.C. Cir. 2003)).

Other courts have, too, found bad faith to be afoot, when confronted with Mr. Myers' various tactics (including his flurry of emergency motions). *See, e.g., Kelly v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 2022 WL 861395, at *3 (D. Md. 2022) ("…the Court finds that Appellants Barbara Ann Kelly and Gregory B. Myers are acting in bad faith."); *Myers v. Schlossberg*, 2019 WL 414875, at *1 (D. Md. 2019) ("Appellants have persisted in questionable litigation strategy that can only be viewed as dilatory and irresponsible."); *In re Myers*, 2023 WL 350183, at *5 (Bankr. M.D. Fla. 2023) ("Debtor's actions throughout the course of this bankruptcy case demonstrate that he did not file his Chapter 13 case or the Plan in good faith").

### III.    Argument: Mr. Myers Did Not First Seek a Stay in the Trial Court

Stays pending appeal are governed by Maryland Rule 8-422, and appellate injunctions are governed by Maryland Rule 8-425. Both require the movant to first seek relief in the trial court, though one my bypass that step in the prism of an injunction if seeking the lower court's review "is not practicable." Md. Rule 2-425(b).

Here, Mr. Myers did not seek a stay or an injunction in the Circuit Court for Montgomery County, Maryland. And, while he now feigns the instant Motion to be an "emergency," he also elected to file the same more than three months after noticing this appeal. There was ample time for Mr. Myers to seek a stay below; he has just elected to not do so.

3

Appx. 0675

To be sure, this is not a mere formality. If Mr. Myers is seeking injunctive relief, his filing a motion below would have allowed for full briefing of the matter – and introduction of any pertinent evidence – before this Honorable Court was confronted with the same requested. Yet Mr. Myers did not do so: instead he waited three months and then filed an "emergency" motion without offering any explanation as to how matters are more critical today than they were the day the partial judgment was entered in the trial court.

### IV.    Argument: There is No Appellate Jurisdiction

More macroscopically, there is no reason to grant a stay pending appeal because Mr. Myers, as a matter of law, cannot prevail on this appeal. Even putting aside the oddity of his having noted the appeal *before* an oral ruling was had at the close of trial (let alone before a written order was entered), the order from which Mr. Myers instantly seeks a stay is, by its own express terms, non-final. Indeed, the document is titled "Order Entering Partial Judgment and Stay," and the order most certainly does not dispose of the totality of the triable issues below.

Familiarly, "The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." Md. Code Ann., Cts. & Jud. Proc. § 12-301. And while certain interlocutory orders are rendered appealable by Section 12-303 of the Courts and Judicial Proceedings Article, the order below does not nearly fall into one of those specifically-delineated interlocutory categories.

The non-appealability of non-final judgments, in turn, is well established in this Honorable Court. *See, e.g., Paul v. Clarke*, 2015 WL 9394120, at *1 (Md. App. 2015) ("To constitute a final judgment, the judgment must have several attributes. One of which is that it must "adjudicate or complete the adjudication of all claims against all parties [.]" The order from which appellants

4

Appx. 0676

appealed did not adjudicate or complete the adjudication of any claim in this matter. It therefore was not a final order and, as a consequence, this Court has no jurisdiction to entertain this appeal.") (quoting *Board of Liquor License Commissioners for Baltimore City v. Fells Point Cafe, Inc.*, 344 Md. 120, 129 (1996) (quoting *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989))).

Here, the order below is, by its own titular designation, "partial" in nature. There are no less than three causes of action that have not yet been tried judgment and, accordingly, upon which no judgment has been entered.[2] Thusly, it cannot be said that appellate jurisdiction is instantly manifest and, by extension, it cannot be postured that Mr. Myers has any likelihood of success on this appeal.

### V.    Argument: Mr. Myers Did Not Appear at Trial

This brief is being largely written from a restaurant in rural New England since, as previously noted, Mr. Myers appears to have an affinity for signing certificates of service saying he has placed items in the mail when, in reality, he never did so. It is hoped that the pending motion for an extension of time to reply to the Motion will be granted, and a more substantive argument may be offered forth. In the interim, however, and in the interests of quickly filing something after learning of the Motion on very short notice (courtesy of a fellow lawyer randomly checking the docket), it bears notation that Mr. Myers did not appear at trial in this matter and, as such, did not raise any of these issues at trial.

To be sure, it is not a coincidence that Mr. Myers failed to appeal at trial. During the pre-trial conference, he informed the trial court judge that there would be no trial. And then, seemingly

---

[2] One of Mr. Myers' favored arguments is that despite two cases being consolidated, they cannot be regarded as a singular case. While he alludes to this in his Motion, the argument is of no moment *sub judice*; there remain unresolved causes of action in *both* cases that were consolidated below and, as such, there does not exist a final order in either case, even if they were to be considered separately.

Appx. 0677

eager to prove that prophecy to be sage, on the last business day before trial, Mr. Myers removed this case to the United States Bankruptcy Court for the Middle District of Florida. But undersigned counsel, content to spend part of a holiday weekend away from the party scene, filed an emergency remand motion which, in turn, was granted on the first day of trial – before the open of business. And, thusly, after Mr. Myers endeavored to sabotage the trial herein (not for the first time – procedural delay is one of his well-established hallmarks), he never appeared at trial. In fact, it is not even clear if he was in the same state at the time of trial.

All of this matters because Mr. Myers, of course, did not raise any issues at trial since he did not appear at trial. And, as a matter of hornbook law, "A contention not raised below either in the pleadings or in the evidence and not directly passed upon by the trial court is not preserved for appellate review." *Baltimore Cnty., Maryland v. Aecom Services, Inc.*, 28 A.3d 11, 35 (Md. App. 2011) (quoting *Zellinger v. CRC Dev. Corp.*, 281 Md. 614, 620 (1977)).

Mr. Myers has failed to preserve any issues below and, as such, cannot succeed on any appellate arguments (saving, perhaps, one of subject matter jurisdiction) with the case in its current posture. But such is actually not fatal to Mr. Myers' cause; as noted *supra*, there is not yet a final order in this case and, as such, not yet a completed record below. Mr. Myers is free to raise certain issues with the trial court (provided they relate to matters still pending below), and to create a record to be utilized at such a time as this case becomes properly appealable. But, as of present, he has not done so, and this case is most certainly not appealable.

## VI. Conclusion

WHEREFORE, the King Parties respectfully pray this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

6

Respectfully submitted,

Dated: April 28, 2023

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 76723
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the King Parties*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2023, I electronically filed the foregoing with the MDEC system, and I further caused the same to be served by U.S. Mail to Gregory Myers, 700 Gulf Shore Blvd. North, Ft. Myers, Florida 34102.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

7

Appx. 0679

USBC-MD 6 FILED
6 MAY '25 PM4:13

# Exhibit D

Appx. 0680

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re:

GREGORY B. MYERS,

    Debtor.

_____/

BRIAN KING, et al.,

    Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

    Defendant.

_____/

Case No. 15-26033-MCR

(Chapter 7)

Adv. No. 24-00007

## SUPPLEMENT TO GREGORY B. MYERS'S PRELIMINARY OBJECTION TO THE TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND *SETTLEMENT* WITH KING PLAINTIFFS

Gregory B. Myers ("Mr. Myers" or "Movant"). *pro se*, files this supplement (the "Supplement") to his preliminary objection (the "Objection") to the *Trustee's Motion For Approval Of Proposed Compromise And Settlement With King Plaintiffs* (Doc. 17) (the "Motion"), and states:[1]

Attached hereto as **Exhibit H** is a copy of the certified transcript of the hearing held in Montgomery County Circuit Court (Lease, J) on December 16, 2022 (the "Hearing Transcript"), in the case of *King, et al. v. Serv Trust, et al.*, Case No. 436977-V (the "King Case") and the case of *6789 Goldsboro LLC v. Serv Trust, et al.*, Case No. 436977-V (the "Goldsboro Case") (the

_____

[1] Mr. Myers adopts and incorporates the totality of his Objection herein by reference.

1

26

"King Case" and "Goldsboro Case" having been consolidated for administrative purposes, and referred to herein collectively as the "State Court Litigation").

The December 16, 2022, hearing transcript (the "Hearing Transcript") states in pertinent part as follows:

THE COURT: All right, so Mr. Myers is here in the court. And the matters against Mr. Myers have been stayed, in that the matters proceeding to trial in January are the matters against Serv Trust in this case. So Mr. Myers is a party to the case, but his matters have been stayed at this point in time. \*\*\*

\*\*\*

MR. MYERS: May I speak, Your Honor?

THE COURT: I will let you speak but remember **the matters against you are stayed in this case**.

MR. MYERS: Your Honor, you used the word matters. The order from the bankruptcy court specifically says the automatic stay shall remain in effect and is not lifted as to any claims against Myers, the debtor. I am a defendant in both of the King party claims. They're not separately against Serv Trust. We're both named as defendants --

THE COURT: **Right**, and the cases --

MR. MYERS: -- so the claim can't proceed because I would have liability. If they prevail, I have liability, and the last sentence in the order says but not for any purposes which could impose individual liability upon the debtor.

THE COURT: **Okay**.

MR. MYERS: If King parties prevail in either of their two counts, I have potential liability, individual liability. And if --

THE COURT: **Well, they would have to then...prove those counts against you in a separate trial** and the matter would not be, there would not be any collateral estoppel or res judicata, because you did not participate in the case as a party. **You were stayed and out of the case**, so any --

MR. MYERS: There would still be a ruling that would impose liability upon me.

THE COURT: **There would not be a ruling that would impose liability on you**. There would be a ruling that would potentially impose liability on Serv Trust. However, **these plaintiffs would have to, if they wanted to proceed against you, would be required to try that matter again separately**, and there would not be any res judicata or collateral estoppel issues, **because you were not a party to that case...at that time because, well, you were stayed, so you were not considered a party**.

\*\*\*

THE COURT: I understand you filed some motions. **Those motions are not ripe or at issue at this time**, because --

MR. MYERS: Subject matter can be raised at any time, right?

THE COURT: It can be, but you --

MR. MYERS: Well, I'm raising it right now.

2

THE COURT: Well, you've raised it in a motion. These folks over here have an opportunity to read any motion that you file and respond to it, **before the Court makes a ruling.** \*\*\*
\*\*\*

THE COURT: **And again, the matters against you in this case have been stayed. Very clear with the parties here --**

MR. MYERS: I don't know what you mean by the matters.

THE COURT: All claims against you in this case are stayed. There's no --

MR. MYERS: Well, they can't be, because the claims are going forward.

THE COURT: Claims are going forward against Serv Trust, **and Serv Trust is a different** --

MR. MYERS: Well, then they would have to amend their complaint.

THE COURT: No, they would not. We can break out the fact that this case is going, and it is, you know, not the most efficient use of resources, because **to the extent that they want to come back subsequently, depending on what happens in the bankruptcy, and seek these claims against you, they're going to be required to retry that case against you, without the benefit of anything that occurred in the case against Serv Trust.**
\*\*\*

THE COURT: What I'm saying is that collateral estoppel, res judicata would not apply to you. **Given the fact that you're not a party at this time because of the stay,** that you did not have…a meaningful opportunity to participate in the trial, and as such the doctrines of collateral estoppel and res judicata would not apply. And so that **when you go to trial, if you go trial,** depending, I don't know what's going to happen in your [Florida] bankruptcy, **but if these claims survive the bankruptcy and come into court, then they'll have to try them all over again.**
\*\*\*

THE COURT: I don't know if these claims…would be discharged in the, I'm not familiar with your bankruptcy, I don't know what it's about. I know there's a stay, but in bankruptcy oftentimes claims can be discharged, claims can be reduced, claims can be settled.

MR. MYERS: There are no, they, the King parties, it's already been ruled they have no claims against me.2

THE COURT: **Okay.** \*\*\*
\*\*\*

---

[2] On June 29, 2021, the Florida bankruptcy court entered an *Order Sustaining Debtor's Objection to Proof of Claim 3 Filed by Brian King & Cristina King [Doc. No. 84]* (2:21-bk-00123-FMD; Doc. 108) (the "Order Sustaining Objection to the King Parties' POC"), which **ORDERED:**

1. **The Objection to Proof of Claim 3 filed is SUSTAINED.**
2. **The claim of Brian King & Cristina King is disallowed in its entirety.**

A copy of the Order Sustaining Objection to the King Parties' POC is attached hereto as **Exhibit I** and made a part hereof. The Order Sustaining Objection to the King Parties' POC is now a final and unappealable order that is *res judicata* in this case and any other case or proceeding implicating Mr. Myers's rights (including the State Court Litigation), which requires that the instant adversary proceeding be immediately dismissed with prejudice.

Appx. 0683

> THE COURT: Well. one is **you're not a live party in this case right now**.
> \*\*\*
> THE COURT: Sir, you don't have standing, given the fact that the matters against you are stayed. \*\*\*
> THE COURT: Well, it makes you a non-party…for the purpose of the upcoming trial, **because the upcoming trial does not involve you**.
> MR. MYERS: It does involve me.
> THE COURT: **It does not**.

(Alterations and emphasis supplied). *See Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 428-33 (1995) discussing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)( "But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, **would be incongruous and illegal**."). (Emphasis supplied). "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. **And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law**." *Id*. (Emphasis supplied).

It has long been established that courts "'can make no decree affecting the rights of an absent person, and can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights.'" *Greeley v. Lowe*, 155 U.S. 58, 70 (1894) (quoting *Shields v. Barrow*, 58 U.S. 130, 141-42 (1854)). This rule is just as strong today as when it was first set forth. *See, e.g., Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008) **(recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties")**.

Appx. 0684

The Trustee's Settlement Motion stemming from the King Parties' bogus Adversary Proceeding (No. 24-00007) is a sham, **a fraud on the Court**. See *In re Anderson*, 377 B.R. 865 (2007), holding:

> "[T]he Chapter 7 Trustee's settlement with the owners of the other undivided one-half interest in the property cannot be approved, for, as already discussed, that settlement contemplates the Chapter 7 Trustee conveying to those owners an interest in the property that the bankruptcy estate [never owned]. **The bankruptcy estate's receipt of consideration from the Defendants under such circumstances would be tantamount to fraud and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner.**"

(Emphasis supplied).[3] See also *Etgen v. Washington County Bldg. Loan Ass'n*, 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land Water Co. v. Robinson*, 154 Cal. 36, 97 P. 10, 14."). Id. at 418.

Here, **this Court** "knew of the fraudulent scheme and willfully aided in its execution" by entering the December 11, 2023, Order (Case 15-26033; Doc 1029) (the "Settlement Procedure Motion"), thereby facilitating "**the mechanism**" by which the Trustee and the King Parties are now seeking to **defraud** Mr. Myers and Serv Trust.

---

[3] On December 18, 2018, **The Honorable Anne K. Albright** found that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members" (his family), concluding that Mr. King's actions "**would amount to constructive fraud.**".

Appx. 0685

The Trustee has the burden of proof on the Settlement Motion, and Mr. Myers intends to show at an evidentiary hearing on the Settlement Motion that the Trustee cannot meet that burden. Accordingly, the Trustee's Settlement Motion should be denied.[4]

**REQUEST FOR EVIDENTIARY HEARING**

Mr. Myers demands that the Court schedule a full evidentiary hearing on the Trustee's Settlement Motion and demands **strict proof** on the substance and merits of the Trustee's Settlement Motion.

RESPECTFULLY SUBMITTED on this 4th day of February, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

---

[4] Mr. Myers reserves all of his rights, claims and defenses, including his rights under the **Federal Tort Claims Act** (FTCA) which allows for private parties to sue the United States in federal court for torts committed by persons acting on behalf of the government. **28 U.S.C. § 2674.**

Appx. 0686

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 4, 2025, a copy of the foregoing Supplement was

furnished via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

_____
Gregory B. Myers, *pro se*

Appx. 0687



# Exhibit E

Appx. 0688

Case 15-26033 Doc 1051-5 Filed 05/06/25 Page 2 of 6
Case 8:26-cv-02175-TDC Document 12-3 Filed 07/29/26 Page 211 of 453
Case 24-00007 Doc 22-2 Filed 02/04/25 Page 2 of 2
Case 2:21-bk-00123-FMD Doc 108 Filed 06/29/21 Page 1 of 1

ORDERED.

Dated: June 29, 2021

*Caryl E. Delano*

Caryl E. Delano
Chief United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION
www.flmb.uscourts.gov

|  |  |  |
|---|---|---|
| IN RE: | ) | Case No.: 2:21-bk-00123-FMD |
|  | ) | Chapter 13 |
| Gregory Brian Myers, | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

### ORDER SUSTAINING DEBTOR'S OBJECTION TO PROOF OF CLAIM 3 FILED BY BRIAN KING & CRISTINA KING [DOC. NO. 84]

THIS CASE came for consideration upon the *Debtor's Objection to Claim No. 3 Filed By Brian King & Cristina King* [Doc. No. 84] (the "Objection"). The Court finds that the Objection was served on all interested parties with the Local Rule 2002-4 negative notice legend informing the parties of their opportunity to object within thirty (30) days of the date of service. No party filed an objection within the time permitted. Accordingly, it is

### ORDERED:

1. The Objection to Proof of Claim 3 filed is SUSTAINED.

2. The claim of Brian King & Cristina King is disallowed in its entirety.

Attorney Undine C. George, Esq. is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.

Appx. 0689

# Exhibit F

## Gregory Myers, Trustee

| | |
|---|---|
| **From:** | brian@realestatedimensions.com |
| **Sent:** | Friday, October 11, 2019 11:06 AM |
| **To:** | 'Pelletier, Eric' |
| **Cc:** | 'Lynch, Timothy'; Douglas M. Lederman; 'Mac VerStandig'; Edward M. Schwartz |
| **Subject:** | RE: K1 for ServTrust- Attorney-client privilege |

Hi Eric,

I spoke to Ed and Doug yesterday at Gorfine Schiller concerning the language and because the sensitivity of the language, can you rewrite the paragraph in question on Page 35 of the return with the exact language and date? He will amend the return with the corrected language.

Thank you,
Brian

**From:** Pelletier, Eric <epelletier@offitkurman.com>
**Sent:** Thursday, October 10, 2019 3:39 PM
**To:** brian@realestatedimensions.com
**Cc:** Lynch, Timothy <tlynch@offitkurman.com>; 'Mac VerStandig' <mac@mbvesq.com>; Edward M. Schwartz <ESchwartz@gsg-cpa.com>
**Subject:** RE: K1 for ServTrust- Attorney-client privilege

Are you referring to page 35, which mentions bankruptcy. I think that the answer is omit reference to the bankruptcy. I would also be more vague on the date if possible. Mac filed his lawsuit 9/14/2017. You could say "Serv Trust's interests were redeemed pursuant to the operating agreement no later than [pick a date 9/14/2017 or 1/1/2018]."

Brian/ Ed – does this clarify things?

Eric Pelletier

**Offit | Kurman**
Attorneys at law

240.507.1739  Washington
240.507.1735  Facsimile
www.offitkurman.com

4800 Montgomery Lane  |  9th Floor  |  Bethesda, MD 20814

**PRIVILEGED COMMUNICATION/PRIVACY NOTICE**
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named

1

Appx. 0691

above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

IRS CIRCULAR 230 DISCLOSURE
To ensure compliance with requirements imposed by the IRS, we inform you that any US federal tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.

From: brian@realestatedimensions.com <brian@realestatedimensions.com>
Sent: Thursday, October 10, 2019 2:53 PM
To: Pelletier, Eric <epelletier@offitkurman.com>
Cc: Lynch, Timothy <tlynch@offitkurman.com>; 'Mac VerStandig' <mac@mbvesq.com>; Edward M. Schwartz <ESchwartz@gsg-cpa.com>
Subject: FW: K1 for ServTrust

Eric,

I was going to send out the 2018 ServTrust K1 but sent a copy to Mac prior to sending it out. He has concerns with the K1 that needs to be addressed with my accountant. My accountant at Gorfine Schiller that worked on this return is Ed Swartz – 410-356-5900. I have copied him on this email and left him a voice message to expect a call to make sure the return is correct. I have attached the K1 portion of the return and the complete 2018 return for your review.

Please let me know if you have any questions.

Thank you,
Brian

From: Mac VerStandig <mac@mbvesq.com>
Sent: Thursday, October 10, 2019 2:30 PM
To: Brian King <brian@realestatedimensions.com>
Subject: RE: K1 for ServTrust

Brian,

The last page is a bit of a problem – the form itself is fine, but this says the interest was redeemed "due to the fact that Serv Trust was going through bankruptcy." That is not the rationale for the redemption, and Serv Trust hasn't actually been in bankruptcy. Any way to get this edited? I'm happy to speak with the accountant if it would help...

(Also, it might be wise to have Eric Pelletier weigh in, since he is officially 6789's counsel. If my fingerprints are on this, it could well fuel another Greg motion...)

Thanks,

Maurice "Mac" VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301)444-4600
Cell: (240)351-6442
Facsimile: (301)576-6885
mac@mbvesq.com

2

Appx. 0692

Twitter: @mac_verstandig

PRIVILEGED COMMUNICATION/PRIVACY NOTICE
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication

TAX ADVICE NOTICE
Any tax advice included in this communication may not contain a full description of all relevant facts or a complete analysis of all relevant tax issues or authorities. This communication is solely for the intended recipient's benefit and may not be relied upon by any other person or entity

**From:** Brian King <brian@realestatedimensions.com>
**Sent:** Thursday, October 10, 2019 11:17 AM
**To:** Mac VerStandig <mac@mbvesq.com>
**Subject:** K1 for ServTrust

Hi Mac,

Attached is the K1 for ServTrust for 2018. My accountant did not send out the K1 when he finished the return on September 15, 2018 when corporate returns were due. Do you want me to send this to Dan Ring? Should I send it certified?

The return reflects the redemption of ownership and 0.00% in all partner share accounts. Please let me know what you would like me to do.

Thanks, Brian

PRIVILEGED COMMUNICATION/PRIVACY NOTICE
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication

Any tax advice included in this communication may not contain a full description of all relevant facts or a complete analysis of all relevant tax issues or authorities. This communication is solely for the intended recipient's benefit and may not be relied upon by any other person or entity

3

Appx. 0693

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:

Gregory B. Myers

        Debtor.

Case No.  15-26033-MCR
Chapter 7

_____/

**OBJECTION TO CLAIM 23-1 FILED BY CRISTINA AND BRIAN KING CHILDREN'S
TRUST, NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

Debtor, Gregory B. Myers ("Mr. Myers" or "Debtor"), *pro se*, pursuant to 11 U.S.C. §
502(a), objects to Claim 23-1 filed by Cristina and Brian King Children's Trust (Claim 23-1), and
in support thereof states:

1.      Debtor commenced this case by filing a bankruptcy petition on November 18, 2015
(the "Petition Date").

2.      On January 10, 2024, Cristina and Brian King Children's Trust filed a Proof of
Claim (Claim 23-1) in the amount of Zero Dollars and No Cents ($0.00) with "the basis of the
claim" identified as "Equitable and statutory claim, as set forth in Case No. 24-00007". Claim 23-
1 was submitted "under penalty of perjury" by Maurice B. VerStandig, Esquire and The
VerStandig Law Firm, LLC.

3.      Claim 23-1 lacks attachments or factual support. For example, Claim 23-1 fails to
attach a copy of the referenced "Case" and fails to attach redacted copies of any other documents
supporting Claim 23-1 as required by Bankruptcy Rule 3001(c).

4.      Claim 23-1 is a fraudulent attempt to create a monetary connection between Serv
Trust and Mr. Myers's Chapter 7 bankruptcy estate where there is none. *See, e.g., In re Anderson*,
377 B.R. 865 (2007).

1

Appx. 0694

5.     Claim 23-1 is counterfactual and legally meritless for the reasons set forth in **Exhibits A, B, C, D, E** and **F**, which are incorporated herein by reference and made a part hereof for all relevant purposes.

6.     Claim 23-1 is invalid on its face because it is time barred by 11 U.S.C. §502 and Rule 3002 of the Federal Rules of Bankruptcy Procedure. See *In re Stone*, 473 B.R. 465 (Bankr. M.D. Fla. 2012). Further, the Court has no authority or discretion to modify the claims bar date in Mr. Myer's Chapter 7 bankruptcy case (i.e., by ordering "the deadline for the King Parties to file a proof of claim against the bankruptcy estate is 30 days from the date on which this Order is entered" or January 10, 2024). *See* Fed. R. Bankr. P. 3002(c); Fed. R. Bankr. P. 9006(b)(3). *See also In re Aboody*, 223 B.R. 36 (B.A.P. 1st Cir. 1998) (excusable neglect standard is inapplicable to the filing of a proof of claim in a case under Chapter 7).

7.     Accordingly, Claim 23-1 should be disallowed in its entirety.

## RESERVATION OF RIGHTS

8.     Nothing herein shall be construed as an admission that Debtor was or is indebted to Cristina and Brian King Children's Trust or that any of the claims or amounts asserted in Claim 23-1 are valid. Debtor reserves the right to amend or supplement this Objection if Debtor deems it necessary and appropriate, for any reason, including, without limitation, the right to add documents and assert claims or defenses, at law or in equity, arising prior to, on, or after the Petition Date.

9.     Debtor does not waive any rights at law or equity or any rights or causes of action that Debtor has or may have against any person, including but not limited to Cristina and Brian King Children's Trust, that (i) affect or seek to affect in any way the rights or interests of the Debtor or any other party in interest in this case, including (a) property of the Debtor or the Debtor's estate, or proceeds thereof, (b) claims against or interests in the Debtor, (c) other rights

Appx. 0695

or interests of creditors of the Debtor or other parties in interest in this case, or (d) property or proceeds thereof in the possession, custody, or control of Cristina and Brian King Children's Trust or other parties in interest in this case in which the Debtor possesses a legal right of user or other rights, whether known or unknown, future or contingent, express or implied; or (ii) requires or prohibits, or seeks to require or prohibit, any act, delivery of any property, payment or other conduct by the Debtor or any other party in interest. Debtor further reserves any rights to recoupment and setoff, and, if appropriate, may exercise such rights without further order of the Court and without amending this Objection.

10.     This Objection is not intended to be, and shall not be construed as, an election of remedies; a waiver of any claims or defenses; or an admission as to the jurisdiction of this Court and/or a waiver to contest the jurisdiction of this Court. Neither this Objection nor any pleading, claim, or suit shall waive any right of Debtor (i) to have final orders in non-core matters entered only after de novo review by a higher court, (ii) to trial by jury in any proceeding so triable in this case or any case, controversy, or proceeding related to this case, (iii) to have the reference withdrawn in any matter subject to mandatory or discretionary withdrawal, or (iv) to any other rights, claims, actions, defenses, setoffs or recoupments, under agreements, in law, in equity, or otherwise, all of which rights, claims, actions, defenses, setoffs, and recoupments are expressly reserved.

## REQUEST FOR EVIDENTIARY HEARING

11.     Debtor requests that the Court schedule an evidentiary hearing on Claim 23-1 and Debtor demands strict proof on the substance and merits of Claim 23-1.

Appx. 0696

**WHEREFORE**, for the reasons set forth above, Debtor Gregory B. Myers requests that the Court enter an order sustaining Debtor's Objection to Claim 23-1, disallowing Claim 23-1 in its entirety, and grant such other and further relief as this action may require. [1]

### NOTICE TO CLAIMANT CRISTINA AND BRIAN KING CHILDREN'S TRUST

Please take notice that:

> **WITHIN 30 DAYS AFTER THE DATE OF SERVICE OF THE OBJECTION, THE CLAIMANT MAY FILE AND SERVE A MEMORANDUM IN OPPOSITION, TOGETHER WITH ANY DOCUMENTS AND OTHER EVIDENCE THE CLAIMANT WISHES TO ATTACH IN SUPPORT OF ITS CLAIM, UNLESS THE CLAIMANT WISHES TO RELY SOLELY UPON THE PROOF OF CLAIM. AN INTERESTED PARTY MAY REQUEST A HEARING THAT WILL BE HELD AT THE COURT'S DISCRETION.**

**RESPECTFULLY SUBMITTED** on this 6th day of May, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
*gregbmyers@verizon.net*

---

[1] Judges abuse the power of the judicial office when they abbreviate or change critical aspects of the adversary process in ways that run counter to the scheme established by relevant constitutional and statutory law. *Oberholzer v. Comm'n on Judicial Performance*, 20 Cal.4th 371, 84 Cal.Rptr.2d 466, 975 P.2d 663, 679 (1999) (legal error "can constitute misconduct if it involves 'bad faith, bias, abuse of authority, disregard for fundamental rights, intentional disregard of the law or any purpose other than the faithful discharge of judicial duty'" (citing cases)); *In re Quirk*, 705 So.2d at 178 ("egregious legal error, legal error motivated by bad faith, and a continuing pattern of legal error" can also constitute misconduct). The record in this case creates a stark appearance of misconduct sufficient to support a finding that this Court has committed serious judicial misconduct by abusing power that is prejudicial to the effective and expeditious administration of the business of the courts. 28 U.S.C. § 351(a).

4

Appx. 0697

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May 2025, a copy of the foregoing was

furnished via first class U.S. Mail, postage prepaid to the following parties:

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

_____
Gregory B. Myers

Appx. 0698

USBC-MD G FILED
6 MAY '25 PM4:08

# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:

GREGORY B. MYERS,

    Debtor.

_____/

BRIAN KING, et al.,

    Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE.

    Defendant.

_____/

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

## GREGORY B. MYERS'S PRELIMINARY OBJECTION TO THE TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND <u>SETTLEMENT WITH KING PLAINTIFFS</u>

Gregory B. Myers ("Mr. Myers" or "Movant"), *pro se*, files his preliminary objection (the "Objection") to the *Trustee's Motion For Approval Of Proposed Compromise And Settlement With King Plaintiffs* (Doc. 17) (the "Motion"), and states:

### BACKGROUND

On December 16, 2022, the Montgomery County Circuit Court (Lease, J) held a hearing in *King, et al. v. Serv Trust, et al.,* Case No. 436977-V (the "King Case") and *6789 Goldsboro LLC v. Serv Trust, et al.,* Case No. 436977-V (the "Goldsboro Case") (the "King Case" and "Goldsboro Case" having been consolidated for administrative purposes, and referred to herein collectively as the "State Court Litigation"). The following statements were placed on the record during the

1

Appx. 0700

December 16, 2022, hearing in the State Court Litigation:

> THE COURT: *** So Mr. Myers is here in court. The matters against Mr. Myers have been stayed. *** Mr. Myers is a party to the case, but his matters have been stayed at this point in time.
>
> THE COURT: What's the status of this matter? I'll start with counsel for the King Parties.
>
> MR. VERSTANDIG: Your Honor, we are prepared to proceed to trial on January 3rd [2023]. Pre-trial statements were filed a couple of years ago prior to a bankruptcy stay and are inclusive of all the exhibits and all the witnesses we plan to rely upon during our trial in January [2023]. It will be a more abbreviated list of witnesses and exhibits because the claims against Mr. Myers are stayed. ***
>
> MR. MYERS: *** If King Parties prevail in either of their two counts, I have potential liability.
>
> THE COURT: They would have to prove those counts against you in a separate trial. The matter would not be -- there would not be any collateral estoppel or res judicata because you did not participate in this case as a party. You were stayed and out of the case.
>
> MR. MYERS: There would still be a ruling that would impose liability upon me.
>
> THE COURT: There would not be a ruling that would impose liability on you. There would be a ruling that would potentially impose liability on Serv Trust. However, these Plaintiffs would have to, if they wanted to proceed against you, would be required to try that matter again separately and there would not be any res judicata or collateral estoppel issues because you were not a party to th[is] case. You were stayed, so you are not considered a party.

(Alterations and emphasis supplied supplied). See also King Plaintiff's motion to stay proceedings,

a copy of which is attached hereto as **Exhibit A** and made a part hereof.

On January 3, 2023, the Montgomery County Circuit Court (Lease, J) made the following

statement on the record in the State Court Litigation:

> THE COURT: And under the Frow doctrine you can, either one of two things: you sort of abstain from going forward because you don't want to try it twice, or two, you can enter the judgment, but then it's a non-final judgment because anything that I do today in essence necessarily would be nonfinal because we don't have, we're not putting all of the claims against all the parties are not getting to an adjudication. **So we don't have a final judgment today under any circumstance**.

(Emphasis supplied).[1] A copy of the partial hearing transcript is attached hereto as **Exhibit B** and made a part hereof.

On January 3, 2023, Mr. Myers noticed an appeal to the Appellate Court of Maryland ("ACM") stemming from the conduct in the State Court Litigation. The ACM docketed the case as No. 1876, September Term 2022, ACM-REG-1876-2022 (the "ACM Appeal").

On January 12, 2023, the Montgomery County Circuit Court (Lease, J.)—in violation of the ACM's jurisdiction—entered an ORDER ENTERING PARTIAL JUDGMENT AND STAY in the State Court Litigation, ordering "that all remaining matters in this case are accordingly stayed...."

On April 17, 2023, the Montgomery County Circuit Court (Lease, J) held a hearing in the State Court Litigation and ruled the "triggering mechanism" for bankruptcy jurisdiction would necessarily require entry of a **final order** in the State Court Litigation (i.e., *not* entry of a *non*-final order). A copy of the hearing transcript is attached hereto as **Exhibit C** and made a part hereof

On April 18, 2023, in the ACM Appeal, Mr. Myers filed a motion for stay pending appeal. On April 28, 2023, the King Parties filed a response to Mr. Myers's motion (the "King Parties ACM Response")—which Goldsboro and the Trustee adopted and incorporated in their respective responses filed in the ACM Appeal—arguing:

> "[T]he order from which Mr. Myers instantly seeks a stay is, by its own express terms, non-final. Indeed, the document is titled 'Order Entering Partial Judgment and Stay,' and the order most certainly does not dispose of the totality of the triable issues below."
>
> **"The order from which appellants appealed did not adjudicate or complete the adjudication of any claim in this matter. It** therefore was not a final order[.]"

---

[1] The King Parties have **never** answered the Second Amended Counterclaim filed by Serv Trust in Case 436977-V and are now in default.

3

"Here, the order below is, by its own titular designation, 'partial' in nature. There are no less than three causes of action that have not yet been tried judgment and, accordingly, upon which no judgment has been entered."

"[T]here remain unresolved causes of action in both cases that were consolidated below and, as such, there does not exist a final order in either case, even if they were to be considered separately."

(Alterations supplied). A copy of the King Parties ACM Response is attached hereto as **Exhibit D**. The King Parties, Goldsboro, and the Trustee are judicially estopped from taking a different position in this Court.

On May 7, 2024, the King Parties and the Trustee executed and filed a fraudulent "STIPULATION OF DISMISSAL" (the Stipulation") in the State Court Litigation, which states:

> COMES NOW, Plaintiffs, Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, the "King Parties"), and Defendant, Serv Trust, through Roger Schlossberg, the Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers, who is, by operation of law, now the sole legal representative of Serv Trust following this Court's judicial determination herein that Serv Trust is the alter ego of Gregory B. Myers, by and through their respective undersigned counsel, pursuant to Md. Rule 2-506(a), hereby stipulate and agree that Count I of Plaintiffs' First Amended Complaint (Declaratory Judgment: Redemption of Interests) in Case No.: 436977-V shall be, and is hereby, DISMISSED.

A copy of the fraudulent Stipulation is attached hereto as **Exhibit E**.

## ARGUMENT

Serv Trust's property is unaffected unless and until there is a final judgment in the State Court Litigation, and it is **undisputed** that there is no final judgment in the State Court Litigation that adjudicates all claims against all parties in the State Court Litigation. In fact, the King Plaintiffs (VerStandig) represented to the Appellate Court of Maryland that "The order from which appellants appealed did not adjudicate or complete the adjudication of *any claim* in this matter." (Emphasis supplied). The Trustee adopted and incorporated that very argument as his own.

4

Appx. 0703

It is obvious the Settlement Motion—together with Adversary Proceeding No. 24-00007—is a sham; a fraud. See *In re Anderson*, 377 B.R. 865 (2007), holding "the Chapter 7 Trustee's settlement with the owners of the other undivided one-half interest in the property cannot be approved, for, as already discussed, that settlement contemplates the Chapter 7 Trustee conveying to those owners an interest in the property that the bankruptcy estate in all likelihood no longer owns. **The bankruptcy estate's receipt of consideration from the Defendants under such circumstances would be tantamount to fraud and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner.**" (Emphasis supplied). See also email chain attached hereto as **Exhibit F**, evidencing a conspiracy by and among Brian King, Timothy Lynch, Maurice VerStandig and others to commit tax fraud in violation of 26 U.S. Code § 7206, as well and numerous other bad acts.[2] *See Etgen v. Washington County Bldg. Loan Ass'n.*, 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land Water Co. v. Robinson*, 154 Cal. 36, 97 P. 10, 14."). Id. at 418. The Trustee's "fingerprints" are now on this scheme as well.[3]

---

[2] Notably, on December 18, 2018, **The Honorable Anne K. Albright** (now sitting on the Appellate Court of Maryland), found, *inter alia*, that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members" (his family), and concluding "**that would amount to constructive fraud.**".

[3] Given the criminal and fraudulent nature of the Settlement Motion, it is apparent that counsel's

Appx. 0704

On December 5, 2019, the Maryland bankruptcy court (Simpson, J) entered an Order remanding Adv. No. 19-00427 (i.e., the State Court Litigation) "to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. ' 1452(b)," (Adv. No. 19-00427; Dkt. No. 5) the "Remand Order"). A copy of the Remand Order is attached hereto as **Exhibit G** and made a part hereof.

This Court (Chavez-Ruark, J) has previously acknowledged that the Montgomery County Circuit Court (Lease, J) has jurisdiction and authority under the Maryland Rules to **control its judgments** that are non-final. And the Trustee concedes that he is **barred** under Bankruptcy Rule 9027(a)(3) from removing the State Court Litigation to this Court, citing Bankruptcy Rule 9027 and *Roberts v. Creighton*, 2009 WI. 7083320 (D. Md. Feb. 27, 2009). Yet, on December 11, 2023, this Court (Chavez-Ruark, J) entered an Order (Doc 1029) in Case 15-26033, which states:

> "The Settlement Procedure Motion is the **mechanism** by which the Trustee is seeking authority to resolve a stayed cause of action in the State Court."

The Bankruptcy Court (Chavez-Ruark, J) has no jurisdiction or authority to approve a "**mechanism**" which amounts to an **improper collateral attack** on the Remand Order entered on December 5, 2019 (Adv. No. 19-00427; Dkt. No. 5). An order remanding a claim or cause of action to the State Court is not reviewable by appeal "or otherwise" (which includes this Court). Only a

---

conduct implicates several cannons of the Model Rules of Professional Conduct. For instance, Rule 1.2(d), which proscribes a lawyer from "counsel[ing] a client to engage, or assist[ing] a client, in conduct that the lawyer knows is criminal or fraudulent"; Rule 3.1, which requires that a lawyer only bring or defend a proceeding when "there is a basis in law and fact for doing so that is not frivolous"; Rule 3.3(4) regarding candor toward the tribunal, which proscribes a lawyer from presenting a "[l]egal argument based on a knowingly false representation of law"; and Rule 3.3(12) which provides that "[l]awyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process[.]" Mr. Myers will be filing a complaint with the Attorney Grievance Commission to determine what, if any, Rules of Professional Conduct counsel might have violated.

Appx. 0705

district court or bankruptcy appellate panel may review a bankruptcy court's remand order under 28 U.S.C. § § 1334(d), 1447(d) and 1452(b). See *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 129, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). Accordingly, this Court's (Chavez-Ruark, J) "mechanism" is unlawful and is an affront to the proper jurisdiction of the State Court.

Maryland adheres to the *Frow Doctrine. See Curry v. Hillcrest Clinic, Inc.,* 337 Md. 412, 428-33 (1995) discussing *Frow v. De La Vega,* 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)( "But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."). "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law." *Id.*

It has long been established that courts "'can make no decree affecting the rights of an absent person, and can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights.'" *Greeley v. Lowe,* 155 U.S. 58, 70 (1894) (quoting *Shields v. Barrow,* 58 U.S. 130, 141-42 (1854)). This rule is just as strong today as when it was first set forth. *See, e.g., Republic of Philippines v. Pimentel,* 553 U.S. 851, 871 (2008) (recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties").

Appx. 0706

The U.S. Supreme Court has clearly stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification. and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliot v. Lessee of Piersol*, 26 U.S. 328 (1828). Thus, according to *Elliot*, by filing the instant Motion, the Trustee is "considered in law [a] trespasser." *Id.*

The State Court has made no final determination in the State Court Litigation. Accordingly, the Settlement Motion must be denied because there is no justiciable controversy or cause of action "affecting the estate" and therefore there is nothing for the Trustee "to compromise or settle." See *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979 (11th Cir.1990) (When standing has been contested, it is the burden of the party claiming standing "to plead and prove injury in fact, causation, and redressability."). The Trustee and the King Plaintiffs cannot meet that burden and "the court is not required to accept as true unwarranted legal conclusions or unwarranted factual inferences." *Id.* at 753. The Trustee and the King Plaintiffs must assert more than a conclusory statement that they have "suffered damages." It is the burden of the party claiming standing "to plead and prove injury in fact, causation, and redressability." Id. At 984. But here, they cannot.

Until the State Court Litigation concludes (i.e., with a final order, the Trustee lacks standing to file this Motion or any other motion affecting Serv Trust or Mr. Myers. This is not a core proceeding (it's a sham) and Mr. Myers does not consent to the entry of any final orders or judgments by the bankruptcy court. To the extent the Settlement Motion is not dismissed for lack of subject matter jurisdiction or some other reason, the bankruptcy court must submit proposed findings of fact and conclusions of law to the Maryland District Court for an Article III Judge to make a final determination. The U.S. Supreme Court has clearly stated that if a court is "without

authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliot v. Lessee of Piersol*, 26 U.S. 328 (1828). Thus, according to Elliot, by filing the Settlement Motion, the Trustee is "considered in law [a] trespasser." *Id.*

The Trustee has the burden of proof on the Settlement Motion, and Mr. Myers intends to show at an evidentiary hearing on the Settlement Motion that the Trustee cannot meet that burden. Accordingly, the Trustee's Settlement Motion should be denied

## REQUEST FOR EVIDENTIARY HEARING

Mr. Myers demands that the Court schedule a full evidentiary hearing on the Trustee's Settlement Motion and demands **strict proof** on the substance and merits of the Trustee's Settlement Motion.

RESPECTFULLY SUBMITTED on this 21st day of January, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

9

Appx. 0708

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of January, 2025, a copy of the foregoing

GREGORY B. MYERS'S PRELIMINARY OBJECTION TO THE TRUSTEE'S MOTION FOR

APPROVAL OF PROPOSED COMPROMISE AND SETTLEMENT WITH KING

PLAINTIFFS was furnished via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Gregory B. Myers, *pro se*

10

Appx. 0709

USBC-MD G FILED
6 MAY '25 PM4:08

# Exhibit B

3

Entered: December 5th, 2019
Signed: December 4th, 2019

**SO ORDERED**



LORI S. SIMPSON
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BAKNRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Gregory B. Myers. | * | Case No. 15-26033-WIL |
| | * | Chapter 7 |
| Debtor. | * | |
| | * | |

| | | |
|---|---|---|
| Gregory B. Myers. | * | |
| | * | |
| Plaintiff. | * | |
| | * | |
| v. | * | Adversary No. 19-00427 |
| | * | |
| Brian King. et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

ORDER REMANDING CASE

The above-captioned adversary proceeding was commenced on November 13, 2019, upon

the Notice of Removal filed by Maurice VerStandig.   The Notice of Removal states that Gregory

Myers (the "Debtor") filed a third-party claim and counterclaim against various parties (the "Myers

1

Appx. 0711

Defendants") in Consolidated Case No. 451611-V pending in the Circuit Court for Montgomery County, Maryland alleging that the Myers Defendants violated Section 362 of Title 11 of the United States Code (the "Third Party Complaint"). Because the Third Party Complaint asserts that the Myers Defendants violated the automatic stay arising in the Debtor's bankruptcy case pending in this Court, the Myers Defendants consented to the removal of the Circuit Court Action.

On December 3, 2019, the Debtor filed a Notice of Voluntary Dismissal of the Third Party Complaint pursuant to Fed. R. Civ. P. 41, made applicable to this proceeding by Fed. R. Bankr. P. 7041. Based on the dismissal of the Third Party Complaint, and this Court having previously elected to abstain from exercising jurisdiction over the underlying Circuit Court Action[1], the Court will remand this matter to the Circuit Court for Montgomery County, Maryland.

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland, hereby

**ORDERED**, that the above-captioned adversary proceeding is remanded to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. § 1452(b).

cc:   All Counsel
      All Parties
      United States Trustee
      Chapter 7 Trustee: Roger Schlossberg

### END OF ORDER

---

[1] *See* Order of Abstention (Docket Entry No. 28) entered on January 30, 2019, in Adversary Proceeding 18-00407.

2

Appx. 0712

USBC-MD G FILED
6 MAY '25 PM4:09

# Exhibit C

Appx. 0713

## IN THE APPELLATE COURT OF MARYLAND

GREGORY BRIAN MYERS )
)
Appellant, )
)
v. ) Case No. ACM-REG-1876-2022
)
BRIAN KING, et al. ) September Term 2022
)
Appellees. )
)

### OPPOSITION TO EMERGENCY MOTION FOR STAY PENDING APPEAL

Come now Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, the "King Parties"), appellees herein, by and through undersigned counsel, in opposition to Emergency Motion for Stay Pending Appeal (the "Motion") filed by Gregory B. Myers ("Mr. Myers" or the "Appellant"), and in support thereof state as follows:

### I. Introduction

After years of delay tactics, the Appellant endeavored to remove the case below, to a Florida bankruptcy court, on the last business day before trial. When that tactic failed, courtesy of a prompt remand, the Appellant failed to appear at trial but filed a *carte blanche* appeal prior to the Circuit Court for Montgomery County, Maryland giving an oral ruling at the close of the trial (and well before a written order would file several days later). He now seeks an emergency stay pending disposition of that appeal but, in so doing, misses at least three critical issues: (i) a motion for a stay pending appeal must first be brought in the trial court; (ii) this appeal is procedurally improper inasmuch as it stems from a non-final order; and (iii) the Appellant is unlikely to succeed

1

Appx. 0714

on this appeal by virtue of the simple reason that he did not appear at trial and, as such, did not preserve any issues for appeal.[1]

For these reasons, and as extrapolated upon *infra*, the Motion merits denial.

## II.    Background: Gregory Myers and Barbara Ann Kelly

The ruling below concerns Mr. Myers and his wife, Barbara Ann Kelly ("Ms. Kelly"), using a trust (putatively established for the benefit of their children) to conceal assets from creditors, including a bankruptcy trustee. This case, however, falls within a broader context, where the litigation tactics of Mr. Myers and Ms. Kelly – including those focused on appellate filings – have, time and again, been held to be exemplars of bad faith.

As noted by one court more than two years ago, in assessing Mr. Myers' bad faith litigation tactics:

> [O]ver the past three years, Myers has filed approximately twenty actions, to include fifteen bankruptcy appeals and five civil cases, seemingly for the purpose of delaying the liquidation of his assets in his bankruptcy case. The overwhelming majority of these cases have been dismissed either by the Court or by Myers voluntarily after Myers failed to designate the record, file a brief, or pay his filing fees...

*Myers v. McNamee, Hosea, Jernigan, Kim, Greenan, & Lynch, P.A.*, 2020 WL 758154, at *1 (D. Md. 2020).

The United States District Court for the District of Maryland proceeded to further analyze how Mr. Myers' litigious efforts are vexatious in the worst way:

> This behavior has become a longstanding pattern for Myers. In his twenty cases, Myers initiates the action, then exhibits a dereliction in prosecution that reflects no real interest in resolution on the merits. The Court cannot help but conclude that

---

[1] The Appellants first learned of the Motion yesterday. As noted in a separate filing, it appears Mr. Myers – in what has now become a pattern of his – signed a certificate of service but never actually deposited a copy of the Motion in the mails. Save for the happenstance of counsel for a related party checking the docket, the pendency of the Motion would not have been timely discovered. The King Parties hope to supplement this with a more extensive brief in the coming days but, in the interim, file this opposition out of an abundance of caution.

Myers' true goal is to gum up the judicial process for his own personal benefit and ignore valid court orders as he sees fit. Taking all of this into account, the Court finds that Myers' behavior has reached the point where the Court could hold Myers in contempt of valid court orders and dismiss the action irrespective of the automatic stay.

*Myers*, 2020 WL 758154, at *4 (citing *In re Walters*, 868 F.2d 665, 669 & n.2 (4th Cir. 1989); *CapitalSource Fin., LLC v. Delco Oil, Inc.*, 2010 WL 3733934, at *7 (D. Md. 2010); *S.E.C. v. Bilzerian*, 131 F. Supp. 2d 10, 15 (D. D.C. 2001), aff'd, 75 Fed. Appx. 3 (D.C. Cir. 2003)).

Other courts have, too, found bad faith to be afoot, when confronted with Mr. Myers' various tactics (including his flurry of emergency motions). *See, e.g., Kelly v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 2022 WL 861395, at *3 (D. Md. 2022) ("...the Court finds that Appellants Barbara Ann Kelly and Gregory B. Myers are acting in bad faith."); *Myers v. Schlossberg*, 2019 WL 414875, at *1 (D. Md. 2019) ("Appellants have persisted in questionable litigation strategy that can only be viewed as dilatory and irresponsible."); *In re Myers*, 2023 WL 350183, at *5 (Bankr. M.D. Fla. 2023) ("Debtor's actions throughout the course of this bankruptcy case demonstrate that he did not file his Chapter 13 case or the Plan in good faith").

### III.    Argument: Mr. Myers Did Not First Seek a Stay in the Trial Court

Stays pending appeal are governed by Maryland Rule 8-422, and appellate injunctions are governed by Maryland Rule 8-425. Both require the movant to first seek relief in the trial court, though one my bypass that step in the prism of an injunction if seeking the lower court's review "is not practicable." Md. Rule 2-425(b).

Here, Mr. Myers did not seek a stay or an injunction in the Circuit Court for Montgomery County, Maryland. And, while he now feigns the instant Motion to be an "emergency," he also elected to file the same more than three months after noticing this appeal. There was ample time for Mr. Myers to seek a stay below; he has just elected to not do so.

3

To be sure, this is not a mere formality. If Mr. Myers is seeking injunctive relief, his filing a motion below would have allowed for full briefing of the matter – and introduction of any pertinent evidence – before this Honorable Court was confronted with the same requested. Yet Mr. Myers did not do so: instead he waited three months and then filed an "emergency" motion without offering any explanation as to how matters are more critical today than they were the day the partial judgment was entered in the trial court.

IV.     Argument: There is No Appellate Jurisdiction

More macroscopically, there is no reason to grant a stay pending appeal because Mr. Myers, as a matter of law, cannot prevail on this appeal. Even putting aside the oddity of his having noted the appeal *before* an oral ruling was had at the close of trial (let alone before a written order was entered), the order from which Mr. Myers instantly seeks a stay is, by its own express terms, non-final. Indeed, the document is titled "Order Entering Partial Judgment and Stay," and the order most certainly does not dispose of the totality of the triable issues below.

Familiarly, "The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." Md. Code Ann., Cts. & Jud. Proc. § 12-301. And while certain interlocutory orders are rendered appealable by Section 12-303 of the Courts and Judicial Proceedings Article, the order below does not nearly fall into one of those specifically-delineated interlocutory categories.

The non-appealability of non-final judgments, in turn, is well established in this Honorable Court. *See, e.g., Paul v. Clarke*, 2015 WL 9394120, at *1 (Md. App. 2015) ("To constitute a final judgment, the judgment must have several attributes. One of which is that it must "adjudicate or complete the adjudication of all claims against all parties [.]" The order from which appellants

4

Appx. 0717

appealed did not adjudicate or complete the adjudication of any claim in this matter. It therefore was not a final order and, as a consequence, this Court has no jurisdiction to entertain this appeal.") (quoting *Board of Liquor License Commissioners for Baltimore City v. Fells Point Cafe, Inc.*, 344 Md. 120, 129 (1996) (quoting *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989))).

Here, the order below is, by its own titular designation, "partial" in nature. There are no less than three causes of action that have not yet been tried judgment and, accordingly, upon which no judgment has been entered.[2] Thusly, it cannot be said that appellate jurisdiction is instantly manifest and, by extension, it cannot be postured that Mr. Myers has any likelihood of success on this appeal.

## V. Argument: Mr. Myers Did Not Appear at Trial

This brief is being largely written from a restaurant in rural New England since, as previously noted, Mr. Myers appears to have an affinity for signing certificates of service saying he has placed items in the mail when, in reality, he never did so. It is hoped that the pending motion for an extension of time to reply to the Motion will be granted, and a more substantive argument may be offered forth. In the interim, however, and in the interests of quickly filing something after learning of the Motion on very short notice (courtesy of a fellow lawyer randomly checking the docket), it bears notation that Mr. Myers did not appear at trial in this matter and, as such, did not raise any of these issues at trial.

To be sure, it is not a coincidence that Mr. Myers failed to appeal at trial. During the pre-trial conference, he informed the trial court judge that there would be no trial. And then, seemingly

---

[2] One of Mr. Myers' favored arguments is that despite two cases being consolidated, they cannot be regarded as a singular case. While he alludes to this in his Motion, the argument is of no moment *sub judice*: there remain unresolved causes of action in *both* cases that were consolidated below and, as such, there does not exist a final order in either case, even if they were to be considered separately.

eager to prove that prophecy to be sage, on the last business day before trial, Mr. Myers removed this case to the United States Bankruptcy Court for the Middle District of Florida. But undersigned counsel, content to spend part of a holiday weekend away from the party scene, filed an emergency remand motion which, in turn, was granted on the first day of trial – before the open of business. And, thusly, after Mr. Myers endeavored to sabotage the trial herein (not for the first time – procedural delay is one of his well-established hallmarks), he never appeared at trial. In fact, it is not even clear if he was in the same state at the time of trial.

All of this matters because Mr. Myers, of course, did not raise any issues at trial since he did not appear at trial. And, as a matter of hornbook law, "A contention not raised below either in the pleadings or in the evidence and not directly passed upon by the trial court is not preserved for appellate review." *Baltimore Cnty., Maryland v. Aecom Services, Inc.*, 28 A.3d 11, 35 (Md. App. 2011) (quoting *Zellinger v. CRC Dev. Corp.*, 281 Md. 614, 620 (1977)).

Mr. Myers has failed to preserve any issues below and, as such, cannot succeed on any appellate arguments (saving, perhaps, one of subject matter jurisdiction) with the case in its current posture. But such is actually not fatal to Mr. Myers' cause: as noted *supra*, there is not yet a final order in this case and, as such, not yet a completed record below. Mr. Myers is free to raise certain issues with the trial court (provided they relate to matters still pending below), and to create a record to be utilized at such a time as this case becomes properly appealable. But, as of present, he has not done so, and this case is most certainly not appealable.

## VI.    Conclusion

WHEREFORE, the King Parties respectfully pray this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

6

Appx. 0719

Respectfully submitted,

Dated: April 28, 2023

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 76723
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the King Parties*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2023, I electronically filed the foregoing with the MDEC system, and I further caused the same to be served by U.S. Mail to Gregory Myers, 700 Gulf Shore Blvd. North, Ft. Myers, Florida 34102.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

7

Appx. 0720

USBC-MD G FILED
6 MAY '25 PM4:09

# Exhibit D

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

In re:

GREGORY B. MYERS,

      Debtor.

_____/

BRIAN KING, et al.,

      Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

      Defendant.

_____/

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

### SUPPLEMENT TO GREGORY B. MYERS'S PRELIMINARY OBJECTION TO THE TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND *SETTLEMENT* WITH KING PLAINTIFFS

Gregory B. Myers ("Mr. Myers" or "Movant"), *pro se*, files this supplement (the "Supplement") to his preliminary objection (the "Objection") to the *Trustee's Motion For Approval Of Proposed Compromise And Settlement With King Plaintiffs* (Doc. 17) (the "Motion"), and states:[1]

Attached hereto as **Exhibit H** is a copy of the certified transcript of the hearing held in Montgomery County Circuit Court (Lease, J) on December 16, 2022 (the "Hearing Transcript"), in the case of *King, et al. v. Serv Trust, et al.,* Case No. 436977-V (the "King Case") and the case of *6789 Goldsboro LLC v. Serv Trust, et al.,* Case No. 436977-V (the "Goldsboro Case") (the

---

[1] Mr. Myers adopts and incorporates the totality of his Objection herein by reference.

Appx. 0722

"King Case" and "Goldsboro Case" having been consolidated for administrative purposes, and referred to herein collectively as the "State Court Litigation").

The December 16, 2022, hearing transcript (the "Hearing Transcript") states in pertinent part as follows:

> THE COURT: All right, so Mr. Myers is here in the court. And the matters against Mr. Myers have been stayed, in that the matters proceeding to trial in January are the matters against Serv Trust in this case. So Mr. Myers is a party to the case, but his matters have been stayed at this point in time. ***
> ***
> MR. MYERS: May I speak, Your Honor?
> THE COURT: I will let you speak but remember **the matters against you are stayed in this case**.
> MR. MYERS: Your Honor, you used the word matters. The order from the bankruptcy court specifically says the automatic stay shall remain in effect and is not lifted as to any claims against Myers, the debtor. I am a defendant in both of the King party claims. They're not separately against Serv Trust. We're both named as defendants --
> THE COURT: **Right**, and the cases --
> MR. MYERS: -- so the claim can't proceed because I would have liability. If they prevail, I have liability, and the last sentence in the order says but not for any purposes which could impose individual liability upon the debtor.
> THE COURT: **Okay**.
> MR. MYERS: If King parties prevail in either of their two counts, I have potential liability, individual liability. And if --
> THE COURT: **Well, they would have to then...prove those counts against you in a separate trial** and the matter would not be, there would not be any collateral estoppel or res judicata, because you did not participate in the case as a party. **You were stayed and out of the case**, so any --
> MR. MYERS: There would still be a ruling that would impose liability upon me.
> THE COURT: **There would not be a ruling that would impose liability on you**. There would be a ruling that would potentially impose liability on Serv Trust. However, **these plaintiffs would have to, if they wanted to proceed against you, would be required to try that matter again separately**, and there would not be any res judicata or collateral estoppel issues, **because you were not a party to that case...at that time because, well, you were stayed, so you were not considered a party**.
> ***
> THE COURT: I understand you filed some motions. **Those motions are not ripe or at issue at this time**, because --
> MR. MYERS: Subject matter can be raised at any time, right?
> THE COURT: It can be, but you --
> MR. MYERS: Well, I'm raising it right now.

Appx. 0723

THE COURT: Well, you've raised it in a motion. These folks over here have an opportunity to read any motion that you file and respond to it, **before the Court makes a ruling.** ***

***

THE COURT: **And again, the matters against you in this case have been stayed. Very clear with the parties here --**

MR. MYERS: I don't know what you mean by the matters.

THE COURT: All claims against you in this case are stayed. There's no --

MR. MYERS: Well, they can't be, because the claims are going forward.

THE COURT: Claims are going forward against Serv Trust, **and Serv Trust is a different** --

MR. MYERS: Well, then they would have to amend their complaint.

THE COURT: No, they would not. We can break out the fact that this case is going, and it is, **you know**, not the most efficient use of resources, **because to the extent that they want to come back subsequently, depending on what happens in the bankruptcy, and seek these claims against you, they're going to be required to retry that case against you, without the benefit of anything that occurred in the case against Serv Trust.**

***

THE COURT: What I'm saying is that collateral estoppel, res judicata would not apply to you. **Given the fact that you're not a party at this time because of the stay**, that you did not have…a meaningful opportunity to participate in the trial, and as such the doctrines of collateral estoppel and res judicata would not apply. And so that **when you go to trial**, **if you go trial**, depending, I don't know what's going to happen in your [Florida] bankruptcy, **but if these claims survive the bankruptcy and come into court, then they'll have to try them all over again.**

***

THE COURT: I don't know if these claims…would be discharged in the, I'm not familiar with your bankruptcy. I don't know what it's about. I know there's a stay, but in bankruptcy oftentimes claims can be discharged, claims can be reduced, claims can be settled.

MR. MYERS: There are no, they, the King parties, it's already been ruled they have no claims against me.2

THE COURT: **Okay.** ***

***

---

[2] On June 29, 2021, the Florida bankruptcy court entered an *Order Sustaining Debtor's Objection to Proof of Claim 3 Filed by Brian King & Cristina King [Doc. No. 84]* (2:21-bk-00123-FMD; Doc. 108) (the "Order Sustaining Objection to the King Parties' POC"), which **ORDERED:**

  1. **The Objection to Proof of Claim 3 filed is SUSTAINED.**

  2. **The claim of Brian King & Cristina King is disallowed in its entirety**.

A copy of the Order Sustaining Objection to the King Parties' POC is attached hereto as **Exhibit I** and made a part hereof. The Order Sustaining Objection to the King Parties' POC is now a final and unappealable order that is *res judicata* in this case and any other case or proceeding implicating Mr. Myers's rights (including the State Court Litigation), which requires that the instant adversary proceeding be immediately dismissed with prejudice.

THE COURT: Well, one is **you're not a live party in this case right now**.
\*\*\*
THE COURT: Sir, you don't have standing, given the fact that the matters against you are stayed. \*\*\*
THE COURT: Well, it makes you a non-party...for the purpose of the upcoming trial. **because the upcoming trial does not involve you**.
MR. MYERS: It does involve me.
THE COURT: **It does not**.

(Alterations and emphasis supplied). *See Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 428-33 (1995) discussing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)( "But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, **would be incongruous and illegal**."). (Emphasis supplied). "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. **And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law**." *Id.* (Emphasis supplied).

It has long been established that courts "'can make no decree affecting the rights of an absent person, and can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights.'" *Greeley v. Lowe*, 155 U.S. 58, 70 (1894) (quoting *Shields v. Barrow*, 58 U.S. 130, 141-42 (1854)). This rule is just as strong today as when it was first set forth. *See, e.g., Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008) **(recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties")**.

4

The Trustee's Settlement Motion stemming from the King Parties' bogus Adversary Proceeding (No. 24-00007) is a sham, **a fraud on the Court**. See *In re Anderson*, 377 B.R. 865 (2007), holding:

> "[T]he Chapter 7 Trustee's settlement with the owners of the other undivided one-half interest in the property cannot be approved, for, as already discussed, that settlement contemplates the Chapter 7 Trustee conveying to those owners an interest in the property that the bankruptcy estate [never owned]. **The bankruptcy estate's receipt of consideration from the Defendants under such circumstances would be tantamount to fraud and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner.**"

(Emphasis supplied).[3] See also *Eigen v. Washington County Bldg. Loan Ass'n.*, 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land Water Co. v. Robinson*, 154 Cal. 36, 97 P. 10, 14."). Id. at 418.

Here, **this Court** "knew of the fraudulent scheme and willfully aided in its execution" by entering the December 11, 2023, Order (Case 15-26033: Doc 1029) (the "Settlement Procedure Motion"), thereby facilitating "**the mechanism**" by which the Trustee and the King Parties are now seeking to **defraud** Mr. Myers and Serv Trust.

---

[3] On December 18, 2018, **The Honorable Anne K. Albright** found that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members" (his family), concluding that Mr. King's actions "**would amount to constructive fraud.**".

Appx. 0726

The Trustee has the burden of proof on the Settlement Motion, and Mr. Myers intends to show at an evidentiary hearing on the Settlement Motion that the Trustee cannot meet that burden. Accordingly, the Trustee's Settlement Motion should be denied.[4]

## REQUEST FOR EVIDENTIARY HEARING

Mr. Myers demands that the Court schedule a full evidentiary hearing on the Trustee's Settlement Motion and demands **strict proof** on the substance and merits of the Trustee's Settlement Motion.

RESPECTFULLY SUBMITTED on this 4th day of February, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

---

[4] Mr. Myers reserves all of his rights, claims and defenses, including his rights under the **Federal Tort Claims Act** (FTCA) which allows for private parties to sue the United States in federal court for torts committed by persons acting on behalf of the government. **28 U.S.C. § 2674.**

6

Appx. 0727

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 4, 2025, a copy of the foregoing Supplement was furnished via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

_____
Gregory B. Myers, *pro se*

Appx. 0728

USBC-MD G FILED
6 MAY '25 PM4:10

# Exhibit E

Case 15-26033    Doc 1052-5    Filed 05/06/25    Page 2 of 6
Case 8:26-cv-02175-TDC    Document 12-3    Filed 07/29/26    Page 252 of 453
Case 24-00007    Doc 22-2    Filed 02/04/25    Page 2 of 2
Case 2:21-bk-00123-FMD    Doc 108    Filed 06/29/21    Page 1 of 1

ORDERED.

Dated: June 29, 2021

*Caryl E. Delano*

Caryl E. Delano
Chief United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| IN RE: | ) | Case No.: 2:21-bk-00123-FMD |
| | ) | Chapter 13 |
| Gregory Brian Myers. | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

### ORDER SUSTAINING DEBTOR'S OBJECTION TO PROOF
### OF CLAIM 3 FILED BY BRIAN KING & CRISTINA KING [DOC. NO. 84]

THIS CASE came for consideration upon the *Debtor's Objection to Claim No. 3 Filed By Brian King & Cristina King* [Doc. No. 84] (the "Objection"). The Court finds that the Objection was served on all interested parties with the Local Rule 2002-4 negative notice legend informing the parties of their opportunity to object within thirty (30) days of the date of service. No party filed an objection within the time permitted. Accordingly, it is

ORDERED:

1.    The Objection to Proof of Claim 3 filed is SUSTAINED.

2.    The claim of Brian King & Cristina King is disallowed in its entirety.

Attorney Undine C. George, Esq. is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.

Appx. 0730

# Exhibit F

## Gregory Myers, Trustee

| | |
|---|---|
| **From:** | brian@realestatedimensions.com |
| **Sent:** | Friday, October 11, 2019 11:06 AM |
| **To:** | 'Pelletier, Eric' |
| **Cc:** | 'Lynch, Timothy'; Douglas M. Lederman; 'Mac VerStandig'; Edward M. Schwartz |
| **Subject:** | RE: K1 for ServTrust- Attorney-client privilege |

Hi Eric,

I spoke to Ed and Doug yesterday at Gorfine Schiller concerning the language and because the sensitivity of the language, can you rewrite the paragraph in question on Page 35 of the return with the exact language and date? He will amend the return with the corrected language.

Thank you,
Brian

**From:** Pelletier, Eric <epelletier@offitkurman.com>
**Sent:** Thursday, October 10, 2019 3:39 PM
**To:** brian@realestatedimensions.com
**Cc:** Lynch, Timothy <tlynch@offitkurman.com>; 'Mac VerStandig' <mac@mbvesq.com>; Edward M. Schwartz <ESchwartz@gsg-cpa.com>
**Subject:** RE: K1 for ServTrust- Attorney-client privilege

Are you referring to page 35, which mentions bankruptcy. I think that the answer is omit reference to the bankruptcy. I would also be more vague on the date if possible. Mac filed his lawsuit 9/14/2017. You could say "Serv Trust's interests were redeemed pursuant to the operating agreement no later than [pick a date 9/14/2017 or 1/1/2018]."

Brian/ Ed – does this clarify things?

Eric Pelletier

**Offit | Kurman®**
Attorneys at law

240.507.1739  Washington
240.507.1735  Facsimile
www.offitkurman.com

4800 Montgomery Lane  |  9th Floor  |  Bethesda, MD 20814

**PRIVILEGED COMMUNICATION/PRIVACY NOTICE**
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named

1

Appx. 0732

above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

**IRS CIRCULAR 230 DISCLOSURE**
To ensure compliance with requirements imposed by the IRS, we inform you that any US federal tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** brian@realestatedimensions.com <brian@realestatedimensions.com>
**Sent:** Thursday, October 10, 2019 2:53 PM
**To:** Pelletier, Eric <epelletier@offitkurman.com>
**Cc:** Lynch, Timothy <tlynch@offitkurman.com>; 'Mac VerStandig' <mac@mbvesq.com>; Edward M. Schwartz <ESchwartz@gsg-cpa.com>
**Subject:** FW: K1 for ServTrust

Eric,

I was going to send out the 2018 ServTrust K1 but sent a copy to Mac prior to sending it out. He has concerns with the K1 that needs to be addressed with my accountant. My accountant at Gorfine Schiller that worked on this return is Ed Swartz – 410-356-5900. I have copied him on this email and left him a voice message to expect a call to make sure the return is correct. I have attached the K1 portion of the return and the complete 2018 return for your review.

Please let me know if you have any questions.

Thank you,
Brian

**From:** Mac VerStandig <mac@mbvesq.com>
**Sent:** Thursday, October 10, 2019 2:30 PM
**To:** Brian King <brian@realestatedimensions.com>
**Subject:** RE: K1 for ServTrust

Brian,

The last page is a bit of a problem – the form itself is fine, but this says the interest was redeemed "due to the fact that Serv Trust was going through bankruptcy." That is not the rationale for the redemption, and Serv Trust hasn't actually been in bankruptcy. Any way to get this edited? I'm happy to speak with the accountant if it would help...

(Also, it might be wise to have Eric Pelletier weigh in, since he is officially 6789's counsel. If my fingerprints are on this, it could well fuel another Greg motion...)

Thanks,

Maurice "Mac" VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301)444-4600
Cell: (240)351-6442
Facsimile: (301)576-6885
mac@mbvesq.com

2

Appx. 0733

Twitter: @mac_verstandig

**PRIVILEGED COMMUNICATION/PRIVACY NOTICE**
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

**TAX ADVICE NOTICE**
Any tax advice included in this communication may not contain a full description of all relevant facts or a complete analysis of all relevant tax issues or authorities. This communication is solely for the intended recipient's benefit and may not be relied upon by any other person or entity.

**From:** Brian King <brian@realestatedimensions.com>
**Sent:** Thursday, October 10, 2019 11:17 AM
**To:** Mac VerStandig <mac@mbvesq.com>
**Subject:** K1 for ServTrust

Hi Mac,

Attached is the K1 for ServTrust for 2018. My accountant did not send out the K1 when he finished the return on September 15, 2018 when corporate returns were due. Do you want me to send this to Dan Ring? Should I send it certified?

The return reflects the redemption of ownership and 0.00% in all partner share accounts. Please let me know what you would like me to do.

Thanks, Brian

**PRIVILEGED COMMUNICATION/PRIVACY NOTICE**
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

Any tax advice included in this communication may not contain a full description of all relevant facts or a complete analysis of all relevant tax issues or authorities. This communication is solely for the intended recipient's benefit and may not be relied upon by any other person or entity

Appx. 0734

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

In re:

Gregory B. Myers

      Debtor.

Case No. 15-26033-MCR
Chapter 7

_____ /

**OBJECTION TO CLAIM 21-1 FILED BY BRIAN KING,**
**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

Debtor, Gregory B. Myers ("Mr. Myers" or "Debtor"), *pro se*, pursuant to 11 U.S.C. §

502(a), objects to Claim 21-1 filed by Brian King (Claim 21-1), and in support thereof states:

1.      Debtor commenced this case by filing a bankruptcy petition on November 18, 2015

(the "Petition Date").

2.      On January 10, 2024, Brian King filed a Proof of Claim (Claim 21-1) in the amount

of Zero Dollars and No Cents ($0.00) with "the basis of the claim" identified as "Equitable and

statutory claim, as set forth in Case No. 24-00007". Claim 21-1 was submitted "under penalty of

perjury" by Maurice B. VerStandig, Esquire and The VerStandig Law Firm, LLC.

3.      Claim 21-1 lacks attachments or factual support. For example, Claim 21-1 fails to

attach a copy of the referenced "Case" and fails to attach redacted copies of any other documents

supporting Claim 21-1 as required by Bankruptcy Rule 3001(c).

4.      Claim 21-1 is a fraudulent attempt to create a monetary connection between Serv

Trust and Mr. Myers's Chapter 7 bankruptcy estate where there is none. *See, e.g., In re Anderson*,

377 B.R. 865 (2007).

5.      Claim 21-1 is counterfactual and legally meritless for the reasons set forth in

**Exhibits A, B, C, D, E** and **F**, which are incorporated herein by reference and made a part hereof

1

Appx. 0735

for all relevant purposes.

6.    Claim 21-1 is invalid on its face because it is time barred by 11 U.S.C. §502 and Rule 3002 of the Federal Rules of Bankruptcy Procedure. See *In re Stone*, 473 B.R. 465 (Bankr. M.D. Fla. 2012). Further, the Court has no authority or discretion to modify the claims bar date in Mr. Myer's Chapter 7 bankruptcy case (i.e., by ordering "the deadline for the King Parties to file a proof of claim against the bankruptcy estate is 30 days from the date on which this Order is entered" or January 10, 2024). *See* Fed. R. Bankr. P. 3002(c); Fed. R. Bankr. P. 9006(b)(3). *See also In re Aboody*, 223 B.R. 36 (B.A.P. 1st Cir. 1998) (excusable neglect standard is inapplicable to the filing of a proof of claim in a case under Chapter 7).

7.    Accordingly, Claim 21-1 should be disallowed in its entirety.

**RESERVATION OF RIGHTS**

8.    Nothing herein shall be construed as an admission that Debtor was or is indebted to Brian King or that any of the claims or amounts asserted in Claim 21-1 are valid. Debtor reserves the right to amend or supplement this Objection if Debtor deems it necessary and appropriate, for any reason, including, without limitation, the right to add documents and assert claims or defenses, at law or in equity, arising prior to, on, or after the Petition Date.

9.    Debtor does not waive any rights at law or equity or any rights or causes of action that Debtor has or may have against any person, including but not limited to Brian King, that (i) affect or seek to affect in any way the rights or interests of the Debtor or any other party in interest in this case, including (a) property of the Debtor or the Debtor's estate, or proceeds thereof, (b) claims against or interests in the Debtor, (c) other rights or interests of creditors of the Debtor or other parties in interest in this case, or (d) property or proceeds thereof in the possession, custody, or control of Brian King or other parties in interest in this case in which the Debtor possesses a

2

Appx. 0736

legal right of user or other rights, whether known or unknown, future or contingent, express or implied; or (ii) requires or prohibits, or seeks to require or prohibit, any act, delivery of any property, payment or other conduct by the Debtor or any other party in interest. Debtor further reserves any rights to recoupment and setoff, and, if appropriate, may exercise such rights without further order of the Court and without amending this Objection.

10. This Objection is not intended to be, and shall not be construed as, an election of remedies; a waiver of any claims or defenses; or an admission as to the jurisdiction of this Court and/or a waiver to contest the jurisdiction of this Court. Neither this Objection nor any pleading, claim, or suit shall waive any right of Debtor (i) to have final orders in non-core matters entered only after de novo review by a higher court, (ii) to trial by jury in any proceeding so triable in this case or any case, controversy, or proceeding related to this case, (iii) to have the reference withdrawn in any matter subject to mandatory or discretionary withdrawal, or (iv) to any other rights, claims, actions, defenses, setoffs or recoupments, under agreements, in law, in equity, or otherwise, all of which rights, claims, actions, defenses, setoffs, and recoupments are expressly reserved.

## REQUEST FOR EVIDENTIARY HEARING

11. Debtor requests that the Court schedule an evidentiary hearing on Claim 21-1 and Debtor demands strict proof on the substance and merits of Claim 21-1.

**WHEREFORE**, for the reasons set forth above, Debtor Gregory B. Myers requests that the Court enter an order sustaining Debtor's Objection to Claim 21-1, disallowing Claim 21-1 in its entirety, and grant such other and further relief as this action may require. [1]

---

[1] Judges abuse the power of the judicial office when they abbreviate or change critical aspects of the adversary process in ways that run counter to the scheme established by relevant constitutional and statutory law. *Oberholzer v. Comm'n on Judicial Performance*, 20 Cal.4th 371, 84 Cal.Rptr.2d

Appx. 0737

## NOTICE TO CLAIMANT BRIAN KING

**Please take notice that:**

WITHIN 30 DAYS AFTER THE DATE OF SERVICE OF THE OBJECTION, THE CLAIMANT MAY FILE AND SERVE A MEMORANDUM IN OPPOSITION, TOGETHER WITH ANY DOCUMENTS AND OTHER EVIDENCE THE CLAIMANT WISHES TO ATTACH IN SUPPORT OF ITS CLAIM, UNLESS THE CLAIMANT WISHES TO RELY SOLELY UPON THE PROOF OF CLAIM. AN INTERESTED PARTY MAY REQUEST A HEARING THAT WILL BE HELD AT THE COURT'S DISCRETION.

**RESPECTFULLY SUBMITTED** on this 6th day of May, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
*gregbmyers@verizon.net*

---

466, 975 P.2d 663, 679 (1999) (legal error "can constitute misconduct if it involves 'bad faith, bias, abuse of authority, disregard for fundamental rights, intentional disregard of the law or any purpose other than the faithful discharge of judicial duty' " (citing cases)); *In re Quirk*, 705 So.2d at 178 ("egregious legal error, legal error motivated by bad faith, and a continuing pattern of legal error" can also constitute misconduct). The record in this case creates a stark appearance of misconduct sufficient to support a finding that this Court has committed serious judicial misconduct by abusing power that is prejudicial to the effective and expeditious administration of the business of the courts. 28 U.S.C. § 351(a).

4

Appx. 0738

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May 2025, a copy of the foregoing was

furnished via first class U.S. Mail, postage prepaid to the following parties:

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

_____
Gregory B. Myers

Appx. 0739

USBC-MD G FILED
6 MAY '25 PM 4:02

# Exhibit A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

In re:

GREGORY B. MYERS,

    Debtor.

_____/

BRIAN KING, et al.,

    Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

    Defendant.

_____/

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

## GREGORY B. MYERS'S PRELIMINARY OBJECTION TO THE TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND <u>SETTLEMENT WITH KING PLAINTIFFS</u>

Gregory B. Myers ("Mr. Myers" or "Movant"), _pro se_, files his preliminary objection (the "Objection") to the _Trustee's Motion For Approval Of Proposed Compromise And Settlement With King Plaintiffs_ (Doc. 17) (the "Motion"), and states:

### BACKGROUND

On December 16, 2022, the Montgomery County Circuit Court (Lease, J) held a hearing in _King, et al. v. Serv Trust, et al._, Case No. 436977-V (the "King Case") and _6789 Goldsboro LLC v. Serv Trust, et al._, Case No. 436977-V (the "Goldsboro Case") (the "King Case" and "Goldsboro Case" having been consolidated for administrative purposes, and referred to herein collectively as the "State Court Litigation"). The following statements were placed on the record during the

1

Appx. 0741

December 16, 2022, hearing in the State Court Litigation:

> THE COURT: *** So Mr. Myers is here in court. The matters against Mr. Myers have been stayed. *** Mr. Myers is a party to the case, but his matters have been stayed at this point in time.
>
> THE COURT: What's the status of this matter? I'll start with counsel for the King Parties.
>
> MR. VERSTANDIG: Your Homor, we are prepared to proceed to trial on January 3rd [2023]. Pre-trial statements were filed a couple of years ago prior to a bankruptcy stay and are inclusive of all the exhibits and all the witnesses we plan to rely upon during our trial in January [2023]. It will be a more abbreviated list of witnesses and exhibits because the claims against Mr. Myers are stayed. ***
>
> MR. MYERS: *** If King Parties prevail in either of their two counts, I have potential liability.
>
> THE COURT: They would have to prove those counts against you in a separate trial. The matter would not be -- there would not be any collateral estoppel or res judicata because you did not participate in this case as a party. You were stayed and out of the case.
>
> MR. MYERS: There would still be a ruling that would impose liability upon me.
>
> THE COURT: There would not be a ruling that would impose liability on you. There would be a ruling that would potentially impose liability on Serv Trust. However, these Plaintiffs would have to, if they wanted to proceed against you, would be required to try that matter again separately and there would not be any res judicata or collateral estoppel issues because you were not a party to th[is] case. You were stayed, so you are not considered a party.

(Alterations and emphasis supplied supplied). See also King Plaintiff's motion to stay proceedings, a copy of which is attached hereto as **Exhibit A** and made a part hereof.

On January 3, 2023, the Montgomery County Circuit Court (Lease, J) made the following statement on the record in the State Court Litigation:

> THE COURT: And under the Frow doctrine you can, either one of two things: you sort of abstain from going forward because you don't want to try it twice, or two, you can enter the judgment, but then it's a non-final judgment because anything that I do today in essence necessarily would be nonfinal because we don't have, we're not putting all of the claims against all the parties are not getting to an adjudication. **So we don't have a final judgment today under any circumstance**.

Appx. 0742

(Emphasis supplied).¹ A copy of the partial hearing transcript is attached hereto as **Exhibit B** and made a part hereof.

On January 3, 2023, Mr. Myers noticed an appeal to the Appellate Court of Maryland ("ACM") stemming from the conduct in the State Court Litigation. The ACM docketed the case as No. 1876, September Term 2022, ACM-REG-1876-2022 (the "ACM Appeal").

On January 12, 2023, the Montgomery County Circuit Court (Lease, J.)—in violation of the ACM's jurisdiction—entered an ORDER ENTERING PARTIAL JUDGMENT AND STAY in the State Court Litigation, ordering "that all remaining matters in this case are accordingly stayed…."

On April 17, 2023, the Montgomery County Circuit Court (Lease, J) held a hearing in the State Court Litigation and ruled the "triggering mechanism" for bankruptcy jurisdiction would necessarily require entry of a **final order** in the State Court Litigation (i.e., *not* entry of a *non*-final order). A copy of the hearing transcript is attached hereto as **Exhibit C** and made a part hereof

On April 18, 2023, in the ACM Appeal, Mr. Myers filed a motion for stay pending appeal. On April 28, 2023, the King Parties filed a response to Mr. Myers's motion (the "King Parties ACM Response")—which Goldsboro and the Trustee adopted and incorporated in their respective responses filed in the ACM Appeal—arguing:

> "[T]he order from which Mr. Myers instantly seeks a stay is, by its own express terms, non-final. Indeed, the document is titled 'Order Entering Partial Judgment and Stay,' and the order most certainly does not dispose of the totality of the triable issues below."

> **"The order from which appellants appealed did not adjudicate or complete the adjudication of any claim in this matter. It** therefore was not a final order[.]"

---

¹ The King Parties have **never** answered the Second Amended Counterclaim filed by Serv Trust in Case 436977-V and are now in default.

3

Appx. 0743

"Here, the order below is, by its own titular designation, 'partial' in nature. There are no less than three causes of action that have not yet been tried judgment and, accordingly, upon which no judgment has been entered."

"[T]here remain unresolved causes of action in both cases that were consolidated below and, as such, there does not exist a final order in either case, even if they were to be considered separately."

(Alterations supplied). A copy of the King Parties ACM Response is attached hereto as **Exhibit D**. The King Parties, Goldsboro, and the Trustee are judicially estopped from taking a different position in this Court.

On May 7, 2024, the King Parties and the Trustee executed and filed a fraudulent "STIPULATION OF DISMISSAL" (the Stipulation") in the State Court Litigation, which states:

> COMES NOW, Plaintiffs, Brian King, Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively, the "King Parties"), and Defendant, Serv Trust, through Roger Schlossberg, the Chapter 7 Trustee of the Bankruptcy Estate of Gregory B. Myers, who is, by operation of law, now the sole legal representative of Serv Trust following this Court's judicial determination herein that Serv Trust is the alter ego of Gregory B. Myers, by and through their respective undersigned counsel, pursuant to Md. Rule 2-506(a), hereby stipulate and agree that Count I of Plaintiffs' First Amended Complaint (Declaratory Judgment: Redemption of Interests) in Case No.: 436977-V shall be, and is hereby, DISMISSED.

A copy of the fraudulent Stipulation is attached hereto as **Exhibit E**.

## ARGUMENT

Serv Trust's property is unaffected unless and until there is a final judgment in the State Court Litigation, and it is **undisputed** that there is no final judgment in the State Court Litigation that adjudicates all claims against all parties in the State Court Litigation. In fact, the King Plaintiffs (VerStandig) represented to the Appellate Court of Maryland that "The order from which appellants appealed did not adjudicate or complete the adjudication of *any claim* in this matter." (Emphasis supplied). The Trustee adopted and incorporated that very argument as his own.

4

It is obvious the Settlement Motion—together with Adversary Proceeding No. 24-00007—is a sham; a fraud. See *In re Anderson*, 377 B.R. 865 (2007), holding "the Chapter 7 Trustee's settlement with the owners of the other undivided one-half interest in the property cannot be approved, for, as already discussed, that settlement contemplates the Chapter 7 Trustee conveying to those owners an interest in the property that the bankruptcy estate in all likelihood no longer owns. **The bankruptcy estate's receipt of consideration from the Defendants under such circumstances would be tantamount to fraud and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner.**" (Emphasis supplied). See also email chain attached hereto as **Exhibit F**, evidencing a conspiracy by and among Brian King, Timothy Lynch, Maurice VerStandig and others to commit tax fraud in violation of 26 U.S. Code § 7206, as well and numerous other bad acts.[2] *See Etgen v. Washington County Bldg. Loan Ass'n.*, 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land Water Co. v. Robinson*, 154 Cal. 36, 97 P. 10, 14."). Id. at 418. The Trustee's "fingerprints" are now on this scheme as well.[3]

---

[2] Notably, on December 18, 2018, **The Honorable Anne K. Albright** (now sitting on the Appellate Court of Maryland), found, *inter alia*, that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members" (his family), and concluding "**that would amount to constructive fraud.**".
[3] Given the criminal and fraudulent nature of the Settlement Motion, it is apparent that counsel's

Appx. 0745

On December 5, 2019, the Maryland bankruptcy court (Simpson, J) entered an Order remanding Adv. No. 19-00427 (i.e., the State Court Litigation) "to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. ' 1452(b)." (Adv. No. 19-00427; Dkt. No. 5) the "Remand Order"). A copy of the Remand Order is attached hereto as **Exhibit G** and made a part hereof.

This Court (Chavez-Ruark, J) has previously acknowledged that the Montgomery County Circuit Court (Lease, J) has jurisdiction and authority under the Maryland Rules to **control its judgments** that are non-final. And the Trustee concedes that he is **barred** under Bankruptcy Rule 9027(a)(3) from removing the State Court Litigation to this Court, citing Bankruptcy Rule 9027 and *Roberts v. Creighton*, 2009 WL 7083320 (D. Md. Feb. 27, 2009). Yet, on December 11, 2023, this Court (Chavez-Ruark, J) entered an Order (Doc 1029) in Case 15-26033, which states:

> "The Settlement Procedure Motion is the **mechanism** by which the Trustee is seeking authority to resolve a stayed cause of action in the State Court."

The Bankruptcy Court (Chavez-Ruark, J) has no jurisdiction or authority to approve a "**mechanism**" which amounts to an **improper collateral attack** on the Remand Order entered on December 5, 2019 (Adv. No. 19-00427; Dkt. No. 5). An order remanding a claim or cause of action to the State Court is not reviewable by appeal "or otherwise" (which includes this Court). Only a

---

conduct implicates several cannons of the Model Rules of Professional Conduct. For instance, Rule 1.2(d), which proscribes a lawyer from "counsel[ing] a client to engage, or assist[ing] a client, in conduct that the lawyer knows is criminal or fraudulent"; Rule 3.1, which requires that a lawyer only bring or defend a proceeding when "there is a basis in law and fact for doing so that is not frivolous"; Rule 3.3(4) regarding candor toward the tribunal, which proscribes a lawyer from presenting a "[l]egal argument based on a knowingly false representation of law"; and Rule 3.3(12) which provides that "[l]awyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process[.]" Mr. Myers will be filing a complaint with the Attorney Grievance Commission to determine what, if any, Rules of Professional Conduct counsel might have violated.

Appx. 0746

district court or bankruptcy appellate panel may review a bankruptcy court's remand order under 28 U.S.C. §§ 1334(d), 1447(d) and 1452(b). See *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). Accordingly, this Court's (Chavez-Ruark, J) "mechanism" is unlawful and is an affront to the proper jurisdiction of the State Court.

Maryland adheres to the *Frow Doctrine*. See *Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 428-33 (1995) discussing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)( "But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."). "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law." *Id*.

It has long been established that courts "'can make no decree affecting the rights of an absent person, and can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights.'" *Greeley v. Lowe*, 155 U.S. 58, 70 (1894) (quoting *Shields v. Barrow*, 58 U.S. 130, 141-42 (1854)). This rule is just as strong today as when it was first set forth. *See, e.g., Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008) (recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties").

The U.S. Supreme Court has clearly stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliot v. Lessee of Piersol*, 26 U.S. 328 (1828). Thus, according to *Elliot*, by filing the instant Motion, the Trustee is "considered in law [a] trespasser." *Id.*

The State Court has made no final determination in the State Court Litigation. Accordingly, the Settlement Motion must be denied because there is no justiciable controversy or cause of action "affecting the estate" and therefore there is nothing for the Trustee "to compromise or settle." See *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979 (11th Cir.1990) (When standing has been contested, it is the burden of the party claiming standing "to plead and prove injury in fact, causation, and redressability."). The Trustee and the King Plaintiffs cannot meet that burden and "the court is not required to accept as true unwarranted legal conclusions or unwarranted factual inferences." *Id.* at 753. The Trustee and the King Plaintiffs must assert more than a conclusory statement that they have "suffered damages." It is the burden of the party claiming standing "to plead and prove injury in fact, causation, and redressability." Id. At 984. But here, they cannot.

Until the State Court Litigation concludes (i.e., with a final order, the Trustee lacks standing to file this Motion or any other motion affecting Serv Trust or Mr. Myers. This is not a core proceeding (it's a sham) and Mr. Myers does not consent to the entry of any final orders or judgments by the bankruptcy court. To the extent the Settlement Motion is not dismissed for lack of subject matter jurisdiction or some other reason, the bankruptcy court must submit proposed findings of fact and conclusions of law to the Maryland District Court for an Article III Judge to make a final determination. The U.S. Supreme Court has clearly stated that if a court is "without

8

authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Elliot v. Lessee of Piersol*, 26 U.S. 328 (1828). Thus, according to Elliot, by filing the Settlement Motion, the Trustee is "considered in law [a] trespasser." *Id.*

The Trustee has the burden of proof on the Settlement Motion, and Mr. Myers intends to show at an evidentiary hearing on the Settlement Motion that the Trustee cannot meet that burden. Accordingly, the Trustee's Settlement Motion should be denied

## REQUEST FOR EVIDENTIARY HEARING

Mr. Myers demands that the Court schedule a full evidentiary hearing on the Trustee's Settlement Motion and demands **strict proof** on the substance and merits of the Trustee's Settlement Motion.

RESPECTFULLY SUBMITTED on this 21st day of January, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

9

Appx. 0749

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of January, 2025, a copy of the foregoing GREGORY B. MYERS'S PRELIMINARY OBJECTION TO THE TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE AND SETTLEMENT WITH KING PLAINTIFFS was furnished via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

_____
Gregory B. Myers, *pro se*

10

Appx. 0750

USBC-MD G FILED
6 MAY '25 PM4:02

# Exhibit B

Entered: December 5th, 2019
Signed: December 4th, 2019

**SO ORDERED**



LORI S. SIMPSON
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BAKNRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Gregory B. Myers. | * | Case No. 15-26033-WIL |
| | * | Chapter 7 |
| Debtor. | * | |
| | * | |
| | | |
| Gregory B. Myers. | * | |
| | * | |
| Plaintiff. | * | |
| | * | |
| v. | * | Adversary No. 19-00427 |
| | * | |
| Brian King. et al.. | * | |
| | * | |
| Defendants. | * | |
| | * | |

**ORDER REMANDING CASE**

The above-captioned adversary proceeding was commenced on November 13, 2019, upon

the Notice of Removal filed by Maurice VerStandig.   The Notice of Removal states that Gregory

Myers (the "Debtor") filed a third-party claim and counterclaim against various parties (the "Myers

1

Appx. 0752

Defendants") in Consolidated Case No. 451611-V pending in the Circuit Court for Montgomery County, Maryland alleging that the Myers Defendants violated Section 362 of Title 11 of the United States Code (the "Third Party Complaint"). Because the Third Party Complaint asserts that the Myers Defendants violated the automatic stay arising in the Debtor's bankruptcy case pending in this Court, the Myers Defendants consented to the removal of the Circuit Court Action.

On December 3, 2019, the Debtor filed a Notice of Voluntary Dismissal of the Third Party Complaint pursuant to Fed. R. Civ. P. 41, made applicable to this proceeding by Fed. R. Bankr. P. 7041. Based on the dismissal of the Third Party Complaint, and this Court having previously elected to abstain from exercising jurisdiction over the underlying Circuit Court Action[1], the Court will remand this matter to the Circuit Court for Montgomery County, Maryland.

Accordingly, it is, by the United States Bankruptcy Court for the District of Maryland, hereby

**ORDERED**, that the above-captioned adversary proceeding is remanded to the Circuit Court for Montgomery County, Maryland pursuant to 28 U.S.C. § 1452(b).

cc:      All Counsel
         All Parties
         United States Trustee
         Chapter 7 Trustee: Roger Schlossberg

## END OF ORDER

---

[1] *See* Order of Abstention (Docket Entry No. 28) entered on January 30, 2019, in Adversary Proceeding 18-00407.

2

Appx. 0753

USBC-MD G FILED
6 MAY '25 PM4:04

# Exhibit C

IN THE APPELLATE COURT OF MARYLAND

GREGORY BRIAN MYERS )
)
Appellant, )
)
v. ) Case No. ACM-REG-1876-2022
)
BRIAN KING, et al. ) September Term 2022
)
Appellees. )
)

## OPPOSITION TO EMERGENCY MOTION FOR STAY PENDING APPEAL

Come now Brian King. Cristina King, and Brian King in his capacity as trustee of the Cristina and Brian King Children's Trust (collectively. the "King Parties"), appellees herein. by and through undersigned counsel, in opposition to Emergency Motion for Stay Pending Appeal (the "Motion") filed by Gregory B. Myers ("Mr. Myers" or the "Appellant"), and in support thereof state as follows:

### I.    Introduction

After years of delay tactics. the Appellant endeavored to remove the case below, to a Florida bankruptcy court, on the last business day before trial. When that tactic failed. courtesy of a prompt remand. the Appellant failed to appear at trial but filed a *carte blanche* appeal prior to the Circuit Court for Montgomery County. Maryland giving an oral ruling at the close of the trial (and well before a written order would file several days later). He now seeks an emergency stay pending disposition of that appeal but, in so doing, misses at least three critical issues: (i) a motion for a stay pending appeal must first be brought in the trial court; (ii) this appeal is procedurally improper inasmuch as it stems from a non-final order; and (iii) the Appellant is unlikely to succeed

1

Appx. 0755

on this appeal by virtue of the simple reason that he did not appear at trial and, as such, did not preserve any issues for appeal.[1]

For these reasons, and as extrapolated upon *infra*, the Motion merits denial.

## II.     Background: Gregory Myers and Barbara Ann Kelly

The ruling below concerns Mr. Myers and his wife, Barbara Ann Kelly ("Ms. Kelly"), using a trust (putatively established for the benefit of their children) to conceal assets from creditors, including a bankruptcy trustee. This case, however, falls within a broader context, where the litigation tactics of Mr. Myers and Ms. Kelly – including those focused on appellate filings – have, time and again, been held to be exemplars of bad faith.

As noted by one court more than two years ago, in assessing Mr. Myers' bad faith litigation tactics:

> [O]ver the past three years, Myers has filed approximately twenty actions, to include fifteen bankruptcy appeals and five civil cases, seemingly for the purpose of delaying the liquidation of his assets in his bankruptcy case. The overwhelming majority of these cases have been dismissed either by the Court or by Myers voluntarily after Myers failed to designate the record, file a brief, or pay his filing fees...

*Myers v. McNamee, Hosea, Jernigan, Kim, Greenan, & Lynch, P.A.*, 2020 WL 758154, at *1 (D. Md. 2020).

The United States District Court for the District of Maryland proceeded to further analyze how Mr. Myers' litigious efforts are vexatious in the worst way:

> This behavior has become a longstanding pattern for Myers. In his twenty cases, Myers initiates the action, then exhibits a dereliction in prosecution that reflects no real interest in resolution on the merits. The Court cannot help but conclude that

---

[1] The Appellants first learned of the Motion yesterday. As noted in a separate filing, it appears Mr. Myers – in what has now become a pattern of his – signed a certificate of service but never actually deposited a copy of the Motion in the mails. Save for the happenstance of counsel for a related party checking the docket, the pendency of the Motion would not have been timely discovered. The King Parties hope to supplement this with a more extensive brief in the coming days but, in the interim, file this opposition out of an abundance of caution.

Appx. 0756

Myers' true goal is to gum up the judicial process for his own personal benefit and ignore valid court orders as he sees fit. Taking all of this into account, the Court finds that Myers' behavior has reached the point where the Court could hold Myers in contempt of valid court orders and dismiss the action irrespective of the automatic stay.

*Myers*, 2020 WL 758154, at *4 (citing *In re Walters*, 868 F.2d 665, 669 & n.2 (4th Cir. 1989); *CapitalSource Fin., LLC v. Delco Oil, Inc.*, 2010 WL 3733934, at *7 (D. Md. 2010); *S.E.C. v. Bilzerian*, 131 F. Supp. 2d 10, 15 (D. D.C. 2001), aff'd, 75 Fed. Appx. 3 (D.C. Cir. 2003)).

Other courts have, too, found bad faith to be afoot, when confronted with Mr. Myers' various tactics (including his flurry of emergency motions). *See, e.g., Kelly v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 2022 WL 861395, at *3 (D. Md. 2022) ("...the Court finds that Appellants Barbara Ann Kelly and Gregory B. Myers are acting in bad faith."); *Myers v. Schlossberg*, 2019 WL 414875, at *1 (D. Md. 2019) ("Appellants have persisted in questionable litigation strategy that can only be viewed as dilatory and irresponsible."); *In re Myers*, 2023 WL 350183, at *5 (Bankr. M.D. Fla. 2023) ("Debtor's actions throughout the course of this bankruptcy case demonstrate that he did not file his Chapter 13 case or the Plan in good faith").

### III.    Argument: Mr. Myers Did Not First Seek a Stay in the Trial Court

Stays pending appeal are governed by Maryland Rule 8-422, and appellate injunctions are governed by Maryland Rule 8-425. Both require the movant to first seek relief in the trial court, though one my bypass that step in the prism of an injunction if seeking the lower court's review "is not practicable." Md. Rule 2-425(b).

Here, Mr. Myers did not seek a stay or an injunction in the Circuit Court for Montgomery County, Maryland. And, while he now feigns the instant Motion to be an "emergency," he also elected to file the same more than three months after noticing this appeal. There was ample time for Mr. Myers to seek a stay below; he has just elected to not do so.

Appx. 0757

To be sure, this is not a mere formality. If Mr. Myers is seeking injunctive relief, his filing a motion below would have allowed for full briefing of the matter – and introduction of any pertinent evidence – before this Honorable Court was confronted with the same requested. Yet Mr. Myers did not do so: instead he waited three months and then filed an "emergency" motion without offering any explanation as to how matters are more critical today than they were the day the partial judgment was entered in the trial court.

## IV.   Argument: There is No Appellate Jurisdiction

More macroscopically, there is no reason to grant a stay pending appeal because Mr. Myers, as a matter of law, cannot prevail on this appeal. Even putting aside the oddity of his having noted the appeal *before* an oral ruling was had at the close of trial (let alone before a written order was entered), the order from which Mr. Myers instantly seeks a stay is, by its own express terms, non-final. Indeed, the document is titled "Order Entering Partial Judgment and Stay," and the order most certainly does not dispose of the totality of the triable issues below.

Familiarly, "The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." Md. Code Ann., Cts. & Jud. Proc. § 12-301. And while certain interlocutory orders are rendered appealable by Section 12-303 of the Courts and Judicial Proceedings Article, the order below does not nearly fall into one of those specifically-delineated interlocutory categories.

The non-appealability of non-final judgments, in turn, is well established in this Honorable Court. *See, e.g., Paul v. Clarke,* 2015 WL 9394120, at *1 (Md. App. 2015) ("To constitute a final judgment, the judgment must have several attributes. One of which is that it must "adjudicate or complete the adjudication of all claims against all parties [.]" The order from which appellants

4

appealed did not adjudicate or complete the adjudication of any claim in this matter. It therefore was not a final order and, as a consequence, this Court has no jurisdiction to entertain this appeal.") (quoting *Board of Liquor License Commissioners for Baltimore City v. Fells Point Cafe, Inc.*, 344 Md. 120, 129 (1996) (quoting *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989))).

Here, the order below is, by its own titular designation, "partial" in nature. There are no less than three causes of action that have not yet been tried judgment and, accordingly, upon which no judgment has been entered.[2] Thusly, it cannot be said that appellate jurisdiction is instantly manifest and, by extension, it cannot be postured that Mr. Myers has any likelihood of success on this appeal.

## V. Argument: Mr. Myers Did Not Appear at Trial

This brief is being largely written from a restaurant in rural New England since, as previously noted, Mr. Myers appears to have an affinity for signing certificates of service saying he has placed items in the mail when, in reality, he never did so. It is hoped that the pending motion for an extension of time to reply to the Motion will be granted, and a more substantive argument may be offered forth. In the interim, however, and in the interests of quickly filing something after learning of the Motion on very short notice (courtesy of a fellow lawyer randomly checking the docket), it bears notation that Mr. Myers did not appear at trial in this matter and, as such, did not raise any of these issues at trial.

To be sure, it is not a coincidence that Mr. Myers failed to appeal at trial. During the pre-trial conference, he informed the trial court judge that there would be no trial. And then, seemingly

---

[2] One of Mr. Myers' favored arguments is that despite two cases being consolidated, they cannot be regarded as a singular case. While he alludes to this in his Motion, the argument is of no moment *sub judice*; there remain unresolved causes of action in *both* cases that were consolidated below and, as such, there does not exist a final order in either case, even if they were to be considered separately.

Appx. 0759

eager to prove that prophecy to be sage, on the last business day before trial, Mr. Myers removed this case to the United States Bankruptcy Court for the Middle District of Florida. But undersigned counsel, content to spend part of a holiday weekend away from the party scene, filed an emergency remand motion which, in turn, was granted on the first day of trial – before the open of business. And, thusly, after Mr. Myers endeavored to sabotage the trial herein (not for the first time – procedural delay is one of his well-established hallmarks), he never appeared at trial. In fact, it is not even clear if he was in the same state at the time of trial.

All of this matters because Mr. Myers, of course, did not raise any issues at trial since he did not appear at trial. And, as a matter of hornbook law, "A contention not raised below either in the pleadings or in the evidence and not directly passed upon by the trial court is not preserved for appellate review." *Baltimore Cnty., Maryland v. Aecom Services, Inc.*, 28 A.3d 11, 35 (Md. App. 2011) (quoting *Zellinger v. CRC Dev. Corp.*, 281 Md. 614, 620 (1977)).

Mr. Myers has failed to preserve any issues below and, as such, cannot succeed on any appellate arguments (saving, perhaps, one of subject matter jurisdiction) with the case in its current posture. But such is actually not fatal to Mr. Myers' cause: as noted *supra*, there is not yet a final order in this case and, as such, not yet a completed record below. Mr. Myers is free to raise certain issues with the trial court (provided they relate to matters still pending below), and to create a record to be utilized at such a time as this case becomes properly appealable. But, as of present, he has not done so, and this case is most certainly not appealable.

## VI. Conclusion

WHEREFORE, the King Parties respectfully pray this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

6

Respectfully submitted,

Dated: April 28, 2023

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 76723
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the King Parties*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2023, I electronically filed the foregoing with the MDEC system, and I further caused the same to be served by U.S. Mail to Gregory Myers, 700 Gulf Shore Blvd. North, Ft. Myers, Florida 34102.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

7

USBC-MD G FILED
6 MAY '25 PM4:07

# Exhibit D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:

GREGORY B. MYERS,

    Debtor.

_____/

BRIAN KING, *et al.*,

    Plaintiffs,

v.

ROGER SCHLOSSBERG, TRUSTEE,

    Defendant.

_____/

Case No. 15-26033-MCR
(Chapter 7)

Adv. No. 24-00007

**SUPPLEMENT TO GREGORY B. MYERS'S PRELIMINARY OBJECTION TO
THE TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE
AND *SETTLEMENT* WITH KING PLAINTIFFS**

Gregory B. Myers ("Mr. Myers" or "Movant"), *pro se*, files this supplement (the "Supplement") to his preliminary objection (the "Objection") to the *Trustee's Motion For Approval Of Proposed Compromise And Settlement With King Plaintiffs* (Doc. 17) (the "Motion"), and states:[1]

Attached hereto as **Exhibit H** is a copy of the certified transcript of the hearing held in Montgomery County Circuit Court (Lease, J) on December 16, 2022 (the "Hearing Transcript"), in the case of *King, et al. v. Serv Trust, et al.*, Case No. 436977-V (the "King Case") and the case of *6789 Goldsboro LLC v. Serv Trust, et al.*, Case No. 436977-V (the "Goldsboro Case") (the

---

[1] Mr. Myers adopts and incorporates the totality of his Objection herein by reference.

1

Appx. 0763

"King Case" and "Goldsboro Case" having been consolidated for administrative purposes, and referred to herein collectively as the "State Court Litigation").

The December 16, 2022, hearing transcript (the "Hearing Transcript") states in pertinent part as follows:

> THE COURT: All right, so Mr. Myers is here in the court. And the matters against Mr. Myers have been stayed, in that the matters proceeding to trial in January are the matters against Serv Trust in this case. So Mr. Myers is a party to the case, but his matters have been stayed at this point in time. \*\*\*
> \*\*\*
> MR. MYERS: May I speak, Your Honor?
> THE COURT: I will let you speak but remember **the matters against you are stayed in this case**.
> MR. MYERS: Your Honor, you used the word matters. The order from the bankruptcy court specifically says the automatic stay shall remain in effect and is not lifted as to any claims against Myers, the debtor. I am a defendant in both of the King party claims. They're not separately against Serv Trust. We're both named as defendants --
> THE COURT: **Right**, and the cases --
> MR. MYERS: -- so the claim can't proceed because I would have liability. If they prevail, I have liability, and the last sentence in the order says but not for any purposes which could impose individual liability upon the debtor.
> THE COURT: **Okay**.
> MR. MYERS: If King parties prevail in either of their two counts, I have potential liability, individual liability. And if --
> THE COURT: **Well, they would have to then...prove those counts against you in a separate trial** and the matter would not be, there would not be any collateral estoppel or res judicata, because you did not participate in the case as a party. **You were stayed and out of the case**, so any --
> MR. MYERS: There would still be a ruling that would impose liability upon me.
> THE COURT: **There would not be a ruling that would impose liability on you**. There would be a ruling that would potentially impose liability on Serv Trust. However, **these plaintiffs would have to, if they wanted to proceed against you, would be required to try that matter again separately**, and there would not be any res judicata or collateral estoppel issues, **because you were not a party to that case...at that time because, well, you were stayed, so you were not considered a party**.
> \*\*\*
> THE COURT: I understand you filed some motions. **Those motions are not ripe or at issue at this time**, because --
> MR. MYERS: Subject matter can be raised at any time, right?
> THE COURT: It can be, but you --
> MR. MYERS: Well, I'm raising it right now.

Appx. 0764

THE COURT: Well, you've raised it in a motion. These folks over here have an opportunity to read any motion that you file and respond to it, **before the Court makes a ruling.** \*\*\*

\*\*\*

THE COURT: **And again, the matters against you in this case have been stayed. Very clear with the parties here** --

MR. MYERS: I don't know what you mean by the matters.

THE COURT: All claims against you in this case are stayed. There's no --

MR. MYERS: Well, they can't be, because the claims are going forward.

THE COURT: Claims are going forward against Serv Trust, **and Serv Trust is a different** --

MR. MYERS: Well, then they would have to amend their complaint.

THE COURT: No, they would not. We can break out the fact that this case is going, and it is, **you know**, not the most efficient use of resources, **because to the extent that they want to come back subsequently**, depending on what happens in the bankruptcy, **and seek these claims against you, they're going to be required to retry that case against you, without the benefit of anything that occurred in the case against Serv Trust.**

\*\*\*

THE COURT: What I'm saying is that collateral estoppel, res judicata would not apply to you. **Given the fact that you're not a party at this time because of the stay,** that you did not have…a meaningful opportunity to participate in the trial, and as such the doctrines of collateral estoppel and res judicata would not apply. And so that **when you go to trial, if you go trial,** depending, I don't know what's going to happen in your [Florida] bankruptcy, **but if these claims survive the bankruptcy and come into court, then they'll have to try them all over again.**

\*\*\*

THE COURT: I don't know if these claims…would be discharged in the, I'm not familiar with your bankruptcy, I don't know what it's about. I know there's a stay, but in bankruptcy oftentimes claims can be discharged, claims can be reduced, claims can be settled.

MR. MYERS: There are no, they, the King parties, it's already been ruled they have no claims against me.2

THE COURT: **Okay.** \*\*\*

\*\*\*

---

2 On June 29, 2021, the Florida bankruptcy court entered an *Order Sustaining Debtor's Objection to Proof of Claim 3 Filed by Brian King & Cristina King [Doc. No. 84]* (2:21-bk-00123-FMD; Doc. 108) (the "Order Sustaining Objection to the King Parties' POC"), which **ORDERED:**

> 1. **The Objection to Proof of Claim 3 filed is SUSTAINED.**
> 2. **The claim of Brian King & Cristina King is disallowed in its entirety.**

A copy of the Order Sustaining Objection to the King Parties' POC is attached hereto as **Exhibit I** and made a part hereof. The Order Sustaining Objection to the King Parties' POC is now a final and unappealable order that is *res judicata* in this case and any other case or proceeding implicating Mr. Myers's rights (including the State Court Litigation), which requires that the instant adversary proceeding be immediately dismissed with prejudice.

Appx. 0765

THE COURT: Well, one is **you're not a live party in this case right now**.
\*\*\*
THE COURT: Sir, you don't have standing, given the fact that the matters against you are stayed. \*\*\*
THE COURT: Well, it makes you a non-party...for the purpose of the upcoming trial. **because the upcoming trial does not involve you**.
MR. MYERS: It does involve me.
THE COURT: **It does not**.

(Alterations and emphasis supplied). *See Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 428-33 (1995) discussing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872)( "But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, **would be incongruous and illegal**."). (Emphasis supplied). "If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. **And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law**." *Id.* (Emphasis supplied).

It has long been established that courts "'can make no decree affecting the rights of an absent person, and can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights.'" *Greeley v. Lowe*, 155 U.S. 58, 70 (1894) (quoting *Shields v. Barrow*, 58 U.S. 130, 141-42 (1854)). This rule is just as strong today as when it was first set forth. *See, e.g., Republic of Philippines v. Pimentel*, 553 U.S. 851, 871 (2008) **(recognizing that the non-joined parties "would not be bound by the judgment in an action where they were not parties")**.

4

The Trustee's Settlement Motion stemming from the King Parties' bogus Adversary Proceeding (No. 24-00007) is a sham, **a fraud on the Court**. See *In re Anderson*, 377 B.R. 865 (2007), holding:

> "[T]he Chapter 7 Trustee's settlement with the owners of the other undivided one-half interest in the property cannot be approved, for, as already discussed, that settlement contemplates the Chapter 7 Trustee conveying to those owners an interest in the property that the bankruptcy estate [never owned]. **The bankruptcy estate's receipt of consideration from the Defendants under such circumstances would be tantamount to fraud and, therefore, would be in violation of the Chapter 7 Trustee's fiduciary duty to administer the bankruptcy estate in a lawful manner.**"

(Emphasis supplied).[3] See also *Eigen v. Washington County Bldg. Loan Ass'n.*, 184 Md. 412, 41 A.2d 290 (1945) ("where two or more persons conspire to carry out a fraud to cheat another, each of them is liable to the defrauded party irrespective of the degree of his activity in the fraudulent transaction or whether he shared in the profits of the scheme. In order to establish liability of a participant in a fraud, it is not necessary to show that he was a party to its contrivance at its inception. If it is shown that he knew of the fraudulent scheme and willfully aided in its execution, he is chargeable with the consequences. All persons who participate in such a transaction are jointly liable for the ensuing injury regardless of the degree of culpability. *Lomita Land Water Co. v. Robinson*, 154 Cal. 36, 97 P. 10, 14."). Id. at 418.

Here, **this Court** "knew of the fraudulent scheme and willfully aided in its execution" by entering the December 11, 2023, Order (Case 15-26033: Doc 1029) (the "Settlement Procedure Motion"), thereby facilitating "**the mechanism**" by which the Trustee and the King Parties are now seeking to **defraud** Mr. Myers and Serv Trust.

---

[3] On December 18, 2018, **The Honorable Anne K. Albright** found that Brian King as the Managing Member of 6789 Goldsboro LLC breached his fiduciary duty to Serv Trust "in order to benefit himself and the other class A members" (his family), concluding that Mr. King's actions "**would amount to constructive fraud.**".

The Trustee has the burden of proof on the Settlement Motion, and Mr. Myers intends to show at an evidentiary hearing on the Settlement Motion that the Trustee cannot meet that burden. Accordingly, the Trustee's Settlement Motion should be denied.[4]

## REQUEST FOR EVIDENTIARY HEARING

Mr. Myers demands that the Court schedule a full evidentiary hearing on the Trustee's Settlement Motion and demands **strict proof** on the substance and merits of the Trustee's Settlement Motion.

RESPECTFULLY SUBMITTED on this 4th day of February, 2025.

Gregory B. Myers, *pro se*
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

---

[4] Mr. Myers reserves all of his rights, claims and defenses, including his rights under the **Federal Tort Claims Act** (FTCA) which allows for private parties to sue the United States in federal court for torts committed by persons acting on behalf of the government. **28 U.S.C. § 2674**.

Appx. 0768

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 4, 2025, a copy of the foregoing Supplement was furnished via first class U.S. Mail, postage prepaid to the following parties:

Roger Schlossberg
Frank J. Mastro
P.O. Box 2017
Hagerstown, MD 21742-2017

Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., Suite 665
Henderson, NV 89012

Gregory B. Myers, *pro se*

Appx. 0769

USBC-MD 6 FILED
6 MAY '25 PM4:07

# Exhibit E

Appx. 0770

Case 15-26033    Doc 1053-5    Filed 05/06/25    Page 2 of 2
Case 8:26-cv-02175-TDC    Document 12-3    Filed 07/29/26    Page 293 of 453
Case 24-00007   Doc 22-2   Filed 02/04/25   Page 2 of 2
Case 2:21-bk-00123-FMD   Doc 108   Filed 06/29/21   Page 1 of 1

ORDERED.

**Dated: June 29, 2021**

*Caryl E Delano*

Caryl E Delano
Chief United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**
www.flmb.uscourts.gov

IN RE:                    )        Case No.: 2:21-bk-00123-FMD
                          )        Chapter 13
Gregory Brian Myers,      )
                          )
    Debtor.               )
                          )
_____ )

**ORDER SUSTAINING DEBTOR'S OBJECTION TO PROOF
OF CLAIM 3 FILED BY BRIAN KING & CRISTINA KING [DOC. NO. 84]**

THIS CASE came for consideration upon the *Debtor's Objection to Claim No. 3 Filed By Brian King & Cristina King* [Doc. No. 84] (the "Objection"). The Court finds that the Objection was served on all interested parties with the Local Rule 2002-4 negative notice legend informing the parties of their opportunity to object within thirty (30) days of the date of service. No party filed an objection within the time permitted. Accordingly, it is

**ORDERED:**

1.    The Objection to Proof of Claim 3 filed is SUSTAINED.

2.    The claim of Brian King & Cristina King is disallowed in its entirety.

Attorney Undine C. George, Esq. is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.

Appx. 0771

USBC-MD G FILED
6 MAY '25 PM4:27

# Exhibit F

Appx. 0772

## Gregory Myers, Trustee

| | |
|---|---|
| **From:** | brian@realestatedimensions.com |
| **Sent:** | Friday, October 11, 2019 11:06 AM |
| **To:** | 'Pelletier, Eric' |
| **Cc:** | 'Lynch, Timothy'; Douglas M. Lederman; 'Mac VerStandig'; Edward M. Schwartz |
| **Subject:** | RE: K1 for ServTrust- Attorney-client privilege |

Hi Eric,

I spoke to Ed and Doug yesterday at Gorfine Schiller concerning the language and because the sensitivity of the language, can you rewrite the paragraph in question on Page 35 of the return with the exact language and date? He will amend the return with the corrected language.

Thank you,
Brian

**From:** Pelletier, Eric <epelletier@offitkurman.com>
**Sent:** Thursday, October 10, 2019 3:39 PM
**To:** brian@realestatedimensions.com
**Cc:** Lynch, Timothy <tlynch@offitkurman.com>; 'Mac VerStandig' <mac@mbvesq.com>; Edward M. Schwartz <ESchwartz@gsg-cpa.com>
**Subject:** RE: K1 for ServTrust- Attorney-client privilege

Are you referring to page 35, which mentions bankruptcy. I think that the answer is omit reference to the bankruptcy. I would also be more vague on the date if possible. Mac filed his lawsuit 9/14/2017. You could say "Serv Trust's interests were redeemed pursuant to the operating agreement no later than [pick a date 9/14/2017 or 1/1/2018]."

Brian/ Ed – does this clarify things?

Eric Pelletier

**Offit | Kurman**®
Attorneys at law

240.507.1739  Washington
240.507.1735  Facsimile
www.offitkurman.com

4800 Montgomery Lane  |  9th Floor  |  Bethesda, MD 20814

**PRIVILEGED COMMUNICATION/PRIVACY NOTICE**
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named

1

above  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited   If you have received this communication in error, please immediately notify us by telephone and delete this communication

**IRS CIRCULAR 230 DISCLOSURE**
To ensure compliance with requirements imposed by the IRS, we inform you that any US federal tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** brian@realestatedimensions.com <brian@realestatedimensions.com>
**Sent:** Thursday, October 10, 2019 2:53 PM
**To:** Pelletier, Eric <epelletier@offitkurman.com>
**Cc:** Lynch, Timothy <tlynch@offitkurman.com>; 'Mac VerStandig' <mac@mbvesq.com>; Edward M. Schwartz <E.Schwartz@gsg-cpa.com>
**Subject:** FW: K1 for ServTrust

Eric,

I was going to send out the 2018 ServTrust K1 but sent a copy to Mac prior to sending it out. He has concerns with the K1 that needs to be addressed with my accountant. My accountant at Gorfine Schiller that worked on this return is Ed Swartz – 410-356-5900. I have copied him on this email and left him a voice message to expect a call to make sure the return is correct. I have attached the K1 portion of the return and the complete 2018 return for your review.

Please let me know if you have any questions.

Thank you,
Brian

**From:** Mac VerStandig <mac@mbvesq.com>
**Sent:** Thursday, October 10, 2019 2:30 PM
**To:** Brian King <brian@realestatedimensions.com>
**Subject:** RE: K1 for ServTrust

Brian,

The last page is a bit of a problem – the form itself is fine, but this says the interest was redeemed "due to the fact that Serv Trust was going through bankruptcy." That is not the rationale for the redemption, and Serv Trust hasn't actually been in bankruptcy. Any way to get this edited? I'm happy to speak with the accountant if it would help...

(Also, it might be wise to have Eric Pelletier weigh in, since he is officially 6789's counsel. If my fingerprints are on this, it could well fuel another Greg motion...)

Thanks,

Maurice "Mac" VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301)444-4600
Cell: (240)351-6442
Facsimile: (301)576-6885
mac@mbvesq.com

2

Appx. 0774

Twitter: @mac_verstandig

PRIVILEGED COMMUNICATION/PRIVACY NOTICE
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

TAX ADVICE NOTICE
Any tax advice included in this communication may not contain a full description of all relevant facts or a complete analysis of all relevant tax issues or authorities. This communication is solely for the intended recipient's benefit and may not be relied upon by any other person or entity.

**From:** Brian King <brian@realestatedimensions.com>
**Sent:** Thursday, October 10, 2019 11:17 AM
**To:** Mac VerStandig <mac@mbvesq.com>
**Subject:** K1 for ServTrust

Hi Mac,

Attached is the K1 for ServTrust for 2018. My accountant did not send out the K1 when he finished the return on September 15, 2018 when corporate returns were due. Do you want me to send this to Dan Ring? Should I send it certified?

The return reflects the redemption of ownership and 0.00% in all partner share accounts. Please let me know what you would like me to do.

Thanks, Brian

PRIVILEGED COMMUNICATION/PRIVACY NOTICE
Information contained in this transmission is attorney-client privileged and confidential. It is solely intended for use by the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and delete this communication.

Any tax advice included in this communication may not contain a full description of all relevant facts or a complete analysis of all relevant tax issues or authorities. This communication is solely for the intended recipient's benefit and may not be relied upon by any other person or entity.

Appx. 0775

**MARIA ELLENA CHAVEZ-RUARK, U.S. BANKRUPTCY JUDGE**

Evidentiary Hearing:  YES
Exhibits Filed:  YES

PROCEEDING MEMO − CHAPTER 7

**Case: 15-26033-MCR**                              Date: 07/03/2025 at 10:00 a.m.
**Gregory B. Myers**

Appearances:  Gregory B. Myers, Debtor
Frank J. Mastro, counsel for Chapter 7 Trustee
Maurice Belmont VerStandig, counsel for Brian King, Cristina King &
    Cristina and Brian King Children's Trust
Roger Schlossberg, Chapter 7 Trustee
L. Jeanette Rice, Office of the United States Trustee

Also present:  Brian King, Interested Party/Plaintiff in Adv. No. 24-00007

[1051] Objection to Claim Number 22 and Request for a Evidentiary Hearing In Re: Cristina King in the Amount of $0.00. Notice Served on 5/6/2025 Filed by Gregory B Myers . Responses due by 6/5/2025. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E)

[1052] Objection to Claim Number 23 and Request for a Evidentiary Hearing In Re: Cristina and Brian King Children's Trust c/o The VerStandig Law Firm, LLC in the Amount of $0.00. Notice Served on 5/6/2025 Filed by Gregory B Myers . Responses due by 6/5/2025. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E)

[1053] Objection to Claim Number 21 and Request for Evidentiary Hearing In Re: Brian King in the Amount of $0.00. Notice Served on 5/6/2025 Filed by Gregory B Myers . Responses due by 6/5/2025. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F)

COMMENTS:          As part of the settlement approved in Adv. No. 24-00007, the King Parties are withdrawing their claims filed in the Debtor's main bankruptcy case, Claim Nos. 21, 22, and 23.  Therefore, the Debtor's objections to those claims are overruled as moot.

DISPOSITION:      Oral ruling given.  Trustee's settlement motion in Adv. No. 24-00007 granted and Trustee's counsel will prepare the order granting the motion.  Debtor's objections to claims overruled as moot and Court will prepare the order overruling the objections.

Appx. 0776

Entered: July 3rd, 2025
Signed: July 3rd, 2025

**SO ORDERED**



**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Greenbelt**

In re:

GREGORY B. MYERS,

    Debtor.

Case Number:  15-26033-MCR
(Chapter 7)

ORDER OVERRULING CLAIM OBJECTIONS AS MOOT

On May 6, 2025, the Debtor, Gregory B. Myers (the "Debtor") filed an Objection to Claim Number 22-1 filed by Cristina King [Dkt. No. 1051], an Objection to Claim Number 23-1 filed by Cristina King and Brian King Children's Trust [Dkt. No. 1052], and an Objection to Claim Number 21-1 filed by Brian King [Dkt. No. 1053] (together, the "Claim Objections").  On June 30, 2025 and July 1, 2025, the Court held a combined evidentiary hearing to consider the Claim Objections and an Application to Compromise Controversy (the "Settlement Motion") filed by Roger Schlossberg, the Trustee appointed to administer the Debtor's bankruptcy estate (the "Trustee"), in Adversary Proceeding 24-00007-MCR (the "Adversary Proceeding").  The Settlement Motion seeks to resolve a Complaint for Declaratory Relief filed by Brian King, Cristina King, and the Cristina and Brian King Children's Trust (together, the "King Parties") against the Trustee.  As part of the proposed settlement, the King Parties have agreed to withdraw Proof of Claim Nos. 21-1, 22-1, and 23-1.

Appx. 0777

At the conclusion of the two-day evidentiary hearing, the Court took the Settlement Motion and Claim Objections under advisement, and scheduled a hearing to give its oral ruling for July 3, 2025.  On July 3, 2025, the Court recited its oral ruling pursuant to which it granted the Settlement Motion.  Upon approval of the Settlement Motion, the Claim Objections were deemed withdrawn effective when the Order granting the Settlement Motion becomes final and non-appealable.  Accordingly, as set forth on the record at the hearing on July 3, 2025, it is, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Claim Objections are overruled as moot.

cc:    Debtor – Gregory B. Myers
       Chapter 7 Trustee – Roger Schlossberg
       Counsel for Chapter 7 Trustee – Frank J. Mastro
       Counsel for the King Parties – Maurice Belmont VerStandig
       U.S. Trustee
       All other parties in interest

**END OF ORDER**

Appx. 0778

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

In Re:                              Case No. 15-26033

GREGORY B. MYERS,                   Chapter 7

          Debtor.                   Greenbelt, Maryland
                                    Monday, June 30, 2025
: : : : : : : : : : : : : : :

BRIAN KING, ET AL.,                 Adv. Proc. 24-00007

          Plaintiffs.

v.

ROGER SCHLOSSBERG,

          Defendant.

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :


                    TRANSCRIPT OF HEARING ON

                         RE: 24-00007
     17 APPLICATION TO COMPROMISE CONTROVERSY FILED BY DEFENDANT
                        ROGER SCHLOSSBERG
           19 OBJECTION FILED BY DEBTOR GREGORY B. MYERS
    20 MOTION FOR MISCELLANEOUS RELIEF FILED BY DEFENDANT ROGER
                           SCHLOSSBERG
       22 SUPPORT DOCUMENT FILED BY DEBTOR GREGORY B. MYERS
          23 RESPONSE FILED BY DEBTOR GREGORY B. MYERS
        24 RESPONSE FILED BY DEFENDANT ROGER SCHLOSSBERG

                         RE: 15-26033
     1051 OBJECTION TO CLAIM FILED BY DEBTOR GREGORY B MYERS
     1052 OBJECTION TO CLAIM FILED BY DEBTOR GREGORY B MYERS
     1053 OBJECTION TO CLAIM FILED BY DEBTOR GREGORY B MYERS
       1060 OPPOSITION FILED BY INTERESTED PARTY BRIAN KING,
              INTERESTED PARTY CRISTINA KING

        BEFORE THE HONORABLE MARIA ELLENA CHAVEZ-RUARK,
               UNITED STATES BANKRUPTCY JUDGE



APPEARANCES:

| For Roger Schlossberg, Chapter 7 Trustee: | Frank J. Mastro, Esq. |
|---|---|
| | Roger Schlossberg, Esq. |
| | SCHLOSSBERG & MASTRO |
| | 18421 Henson Boulevard |
| | Suite 201 |
| | Hagerstown, MD 21742 |

| For Brian King: | Maurice B. VerStandig, Esq. |
|---|---|
| | THE VERSTANDIG LAW FIRM, LLC |
| | 9812 Falls Road |
| | Suite 114-160 |
| | Potomac, MD 20854 |

| Also Present: | Gregory B. Myers |
|---|---|
| | Pro Se Debtor |

| Audio Operator: | Jennifer Whitfield |
|---|---|
| | (301)344-3965 |

| Transcript prepared by: | ESCRIBERS |
|---|---|
| | 7227 North 16th Street |
| | Suite #207 |
| | Phoenix, Arizona 85020 |
| | (800)257-0885 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

escribers

www.escribers.net | 800-257-0885

Appx. 0780

GREENBELT, MARYLAND - JUNE 30, 2025

THE CLERK:  All rise.  Silence, please, and come to order.  The United States Bankruptcy Court for the District of Maryland is now in session, the Honorable Maria Ellena Chavez-Rurak presiding.

Please be seated.  Calling the case of Gregory B. Myers, case number 15-26033.  The matters for consideration for the Court today are docket entry 1051, objection to claim number 22, filed by the debtor, docket entry 1052, objection to claim number 23, filed by the debtor, docket entry 1053, objection to claim number 21, filed by the debtor, and docket entry 1060, opposition to objections, filed on behalf of the King parties.

And we're also calling adversary number 24-00007, King, et al. v. Schlossberg.  The matters before the Court are docket entry 17, application to compromise controversy, filed on behalf of the defendant, docket entry 19, preliminary objection to trustee's application to compromise controversy filed by the debtor, docket entry 22, supplement to preliminary objection, filed by the debtor, docket entry 20, motion to strike debtor's objection, filed on behalf of the defendant, docket entry 23, response to motion to strike, filed by the debtor, and docket entry 24, response to opposition filed on behalf of the defendant.

Starting with counsel for the plaintiffs, please

state your name and clients for the record.

MR. MASTRO: Good morning, Your Honor. Frank Mastro on behalf of the Chapter 7 trustee, Roger Schlossberg.

THE COURT: Good morning.

MR. SCHLOSSBERG: Good morning, Your Honor. Roger Schlossberg, trustee, counsel to the trustee.

THE COURT: Good morning.

MR. VERSTANDIG: Good morning, Your Honor. Maurice VerStandig on behalf of Brian King, Cristina King, and Brian and Cristina King in their capacity as trustees of the Cristina and Brian King Children's Trust.

THE COURT: Good morning to you.

MR. MYERS: Good morning, Your Honor. Gregory Myers.

THE COURT: Good morning, Mr. Myers.

MR. MYERS: Morning.

THE COURT: All right. Well, we have a number of matters on the docket for today. We have, in the main bankruptcy case, Mr. Myers' objections to the three claims filed by we'll just refer to them as the King parties. And then in the adversary proceeding, we have the application to compromise controversy filed by the trustee and a motion to strike the debtor's objection to the trustee's motion.

The Court understands that there was also a motion to intervene filed by Mr. Myers and a motion to dismiss the adversary proceeding filed by Mr. Myers. Apparently, they



were filed after business hours on Friday evening and were just docketed literally just moments ago. So I don't know if the plaintiff and -- the plaintiffs and the defendant have had an opportunity to look at that. The Court is not going to consider the motion to intervene or the motion to dismiss today because they were just filed.

With regard to the motion to strike, and the Court has given Mr. Myers an opportunity to be heard on other matters, but the Court is going to deny the motion to strike filed by the trustee.

So Willemain v. Kivett, 764 F.2d 1019, decided by the Fourth Circuit in 1985 --

Please, everyone, have a seat. I'm sorry. You don't have to continue standing.

The court set forth the well-known rule that when a Chapter 7 case has an insolvent debtor, that the debtor -- or has an insolvent bankruptcy estate, that the debtor does not have a right to be heard. Here, Mr. Myers has been denied a discharge or his discharge was revoked. And therefore, to the extent any claims are not discharged in the bankruptcy proceeding, he has a pecuniary interest. So the Court is going to give him an opportunity to be heard.

Let me cite to a couple of cases. Grausz v. Englander, 321 F.3d 467, out of the Fourth Circuit, 2003. McGuirl v. White, 86 F.3d 1232, out of the D.C. Circuit, 1996.



Appx. 0783

opportunity to be heard as a party-in-interest.

With regard to your other motions, they were filed -- some were filed on Friday evening.  Apparently, some were filed moments before this hearing began.  I haven't seen what you filed this morning, and so I'm not going to consider it.  If you wanted -- if you wanted the Court to consider a motion before this hearing, you should have filed it earlier.  So --

MR. MYERS:  Respectfully, respectfully, Your Honor, there's no time limit.  Subject matter jurisdiction can be raised at any time.  You have an obligation to consider and resolve your subject matter jurisdiction.

You have a clear conflict of interest.  It cannot wait.  It must be resolved.  You must rule on it.  That is the case law.  I know it.  You know it.  And so if you don't, then everything here will be void.  So you need to consider this and rule on it because you do have a clear conflict of interest.

THE COURT:  Mr. Myers, I --

MR. MYERS:  Thank you.

THE COURT:  -- don't need you to tell me what I need to do.  You can sit down.  I'm going to go forward with the hearing.  Thank you.

MR. MYERS:  Okay.  Well, then I'll place --

THE COURT:  All right.  So --

MR. MYERS:  -- my objection on the record for --



trial.

THE COURT:  You filed a motion to disqualify.  You didn't file a complaint in this court.

MR. MYERS:  Filed a complaint.

THE COURT:  Don't misstate the facts.

MR. MYERS:  I filed the complaint.  You're the one who's misstating what I'm saying.  I filed the complaint in the district court before this hearing ever began.

THE COURT:  You asked me if I was going to rule on any motions.

MR. MYERS:  I asked you if you were going to enter an --

THE COURT:  I'm not ruing on your motion to disqualify --

MR. MYERS:  -- order on the --

THE COURT:  Let me finish.  I am not ruling on your motion to disqualify, which was docketed minutes before this hearing began.  And that was only because you said you filed pleadings, and we had no knowledge of them.  You've known about this hearing for two months.  You waited until five minutes before the hearing began to file these things.

I'm not ruling on the motions you filed last night, and I'm not ruling on any motions you filed this morning because I haven't read them.  I haven't seen them because you waited until the last minute, even though I've told you time

escribers

www.escribers.net | 800-257-0885

Appx. 0785

Case 24-00007   Doc 107   Filed 01/07/26   Page 213 of 217
Case 8:26-cv-02175-TDC   Document 12-3   Filed 07/29/26   Page 308 of 453

213

and time again not to wait until the last minute to file.

MR. MYERS:  Then you should continue the hearing and rule on the motion to disqualify.

THE COURT:  So I am not continuing the hearing.  I am not continuing the hearing.

MR. MYERS:  Okay.

THE COURT:  We are going forward tomorrow.  I'm going to give you a limited amount of time to put on your case.  And then I'm going to rule.

MR. MYERS:  Well, are you going to enter an order tonight denying my motion to stay?  You just denied it.

THE COURT:  I denied it.  It's on the record.  You didn't file a motion, and so I'm not going --

MR. MYERS:  You denied it.  Are you going to enter an order tomorrow then?

THE COURT:  I'm not going to enter a written order when you have not filed a written motion.  You made an oral motion.  I denied it.  Denied.  I'm not staying it.

MR. SCHLOSSBERG:  Your Honor.  Your Honor, a motion to disqualify, it was docketed sometime during the day today.  It was docketed this morning --

THE COURT:  I haven't even read it yet.

MR. MASTRO:  We haven't seen it.  Haven't had a chance to respond to it.  Nobody (indiscernible) --

MR. SCHLOSSBERG:  Filing after 10 o'clock this



morning.

THE COURT:  And parties-in-interests are going to have an opportunity to --

MR. SCHLOSSBERG:  I just now (indiscernible).

MR. MYERS:  Well, we'll see what the district court says.

THE COURT:  Let me finish.  Parties-in-interest will have an opportunity to respond.  And so I am not ruling on anything before the hearing begins at 10 a.m. tomorrow, and we will wrap this hearing up by 1 or 1:30 tomorrow.

Anything further before we conclude?

Mr. Myers.

MR. MYERS:  I think this is a sham.  I think you don't have jurisdiction.  I think you have a conflict of interest.  And I'll be in the district court in the morning.

THE COURT:  You have fun with that.  Your objection's noted.

Mr. Mastro.  Mr. Schlossberg.  Mr. VerStandig. Anything further?

MR. VERSTANDIG:  No, Your Honor.  Nothing further. Just looking forward on scheduling, I want to be open with the Court.  I'm obligated in another court on Wednesday, so I look forward to concluding tomorrow.

THE COURT:  The Court has a full docket on Wednesday. We will not be continuing on Wednesday.



CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

January 6, 2026

_____       _____

RIVER WOLFE                             DATE

TTA-Certified Digital Legal Transcriber CDLT-265

escribers

www.escribers.net | 800-257-0885

Appx. 0788

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

In Re:                          :    Case No. 15-26033

GREGORY B. MYERS,               :    Chapter 7

          Debtor.              :    Greenbelt, Maryland
                                     Tuesday, July 1, 2025
: : : : : : : : : : : : : : :

BRIAN KING, ET AL.              :    Adv. Proc. 24-00007

          Plaintiffs           :

          - against -          :

ROGER SCHLOSSBERG, TRUSTEE     :

          Defendant.           :

: : : : : : : : : : : : : : :


TRANSCRIPT OF HEARING ON
RE: 24-00007
17 APPLICATION TO COMPROMISE CONTROVERSY FILED BY DEFENDANT
ROGER SCHLOSSBERG;
19 OBJECTION FILED BY DEBTOR GREGORY B. MYERS;
20 MOTION FOR MISCELLANEOUS RELIEF FILED BY DEFENDANT ROGER
SCHLOSSBERG;
22 SUPPORT DOCUMENT FILED BY DEBTOR GREGORY B. MYERS;
23 RESPONSE FILED BY DEBTOR GREGORY B. MYERS;
24 RESPONSE FILED BY DEFENDANT ROGER SCHLOSSBERG

RE: 15-26033
1051 OBJECTION TO CLAIM FILED BY DEBTOR GREGORY B. MYERS;
1052 OBJECTION TO CLAIM FILED BY DEBTOR GREGORY B. MYERS;
1053 OBJECTION TO CLAIM FILED BY DEBTOR GREGORY B. MYERS;
1060 OPPOSITION FILED BY INTERESTED PARTY BRIAN KING
INTERESTED PARTY CRISTINA KING;
BEFORE THE HONORABLE MARIA ELLENA CHAVEZ-RUARK
UNITED STATES BANKRUPTCY JUDGE



www.escribers.net | 800-257-0885

Appx. 0789

APPEARANCES:

For the Debtor:                     Gregory B. Myers, Pro se

For Chapter 7 Trustee               Frank J. Mastro, Esq.
Roger Schlossberg:                  Roger Schlossberg, Esq.
                                    SCHLOSSBERG & MASTRO
                                    18421 Henson Boulevard
                                    Suite 201
                                    Hagerstown, MD 21742


For King parties:                   Maurice Belmont VerStandig, Esq.
                                    THE VERSTANDIG LAW FIRM, LLC
                                    9812 Falls Road
                                    #114-160
                                    Potomac, MD 20854

Audio Operator:                     JENNIFER WHITFIELD
                                    301-344-3965


Transcript prepared by:             ESCRIBERS
                                    7227 North 16th Street
                                    Suite #207
                                    Phoenix, Arizona 85020
                                    (800)257-0885


Proceedings recorded by electronic sound recording; transcript produced by transcription service.

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

Greenbelt, MD - July 1, 2025

THE CLERK:  All rise.  Silence, please, and come to order.  The United States Bankruptcy Court for the District of Maryland is now in session, the Honorable Maria Ellena Chavez-Ruark presiding.

Please be seated.  Calling the case of Gregory Myers, case number 15-26033.  The matters for consideration for the Court today are docket entry 1051, objection to claim number 22, filed by the debtor; docket entry 1052, objection to claim number 23, filed by the debtor; docket entry 1053, objection to claim number 21, filed by the debtor; docket entry 1060, opposition to objections filed on behalf of the King parties.

We're also here for the adversary case of King, et al. v. Schlossberg, adversary number 24-00007.  The matters for consideration are docket entry 17, application for compromise controversy, filed on behalf of the defendant; docket entry 19, preliminary objection to trustee's application to compromise controversy, filed by the debtor; docket entry 22, supplemental to the preliminary objection, filed by the debtor; docket entry 20, motion to strike debtor's objection, filed on behalf of the defendant; docket entry 23, response to motion, filed by the debtor; and docket entry 24, response to opposition, filed on behalf of the defendant.

Starting with counsel for the plaintiff in the



Appx. 0791

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

adversary, please identify yourself and your clients for the record.

MR. VERSTANDIG:  Good morning, Your Honor.  Maurice VerStandig, on behalf of Brian King, Cristina King, and the Cristina and Brian King Children's Trust.

THE COURT:  Good morning.

MR. MASTRO:  Good morning, Your Honor.  Frank Mastro, on behalf of Roger Schlossberg, the Chapter 7 trustee and defendant in the adversary proceeding.

THE COURT:  Good morning.

MR. SCHLOSSBERG:  Good morning, Your Honor.  Roger Schlossberg, Chapter 7 trustee, counsel to trustee.

THE COURT:  Good morning.

MR. MYERS:  Good morning, Your Honor.  Greg Myers, sorry for being late.  There was an accident.

THE COURT:  Good morning.

All right.  So I believe where we left off is that the trustee had completed -- had finished putting on his case.

MR. MASTRO:  Correct.

THE COURT:  Do you have any other evidence, Mr. Mastro, that you would like to offer?

MR. MASTRO:  Not at this time, Your Honor.

THE COURT:  All right.  Thank you.

Mr. VerStandig, any evidence you want to offer --

MR. VERSTANDIG:  Your Honor --


www.escribers.net | 800-257-0885

Appx. 0792

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

you going to be referring to all of that or just certain items?

THE WITNESS:  Yeah, just certain items, but a lot of it.

THE COURT:  Okay.

THE WITNESS:  It may not -- you know, some -- most of it's already been in the -- put in the record.

THE COURT:  Okay.  And I also want to remind you that I'm going to give you until 1 o'clock  today to put on your case.  So I encourage you to use your time wisely.

Do you have copies of those exhibits for everyone else in the courtroom?

THE WITNESS:  No, I don't.

THE COURT:  Okay.  And did you email them to Mr. Mastro, Mr. Schlossberg, Mr. VerStandig and to the Court by 9 p.m. yesterday?

THE WITNESS:  Well, a lot of these are already marked.

THE COURT:  Did you email an exhibit list and attach the exhibit email as I --

THE WITNESS:  I didn't email anything to them.

THE COURT:  Let me finish my question, please, because we're recording, and I want to make sure we have a clear transcript.

Did you email an exhibit list and your exhibits to



www.escribers.net | 800-257-0885

Appx. 0793

the counsel who are appearing today, and to the Court, as I instructed you to do, by 9 p.m. last night?

THE WITNESS:  I did not email anything to them last night.  I am a party-in-interest.  I'm not a party to this case.  They've never joined me as a party in this case.  And so I'm going to be referring to documents that are already in the record.  They're ECF documents, filed in court proceedings, which the Court can take judicial notice of.  I don't need to put them in as exhibits.  I can just ask you to take judicial notice, and you can take judicial notice.

THE COURT:  All right.  Well, I'm willing to do that with regard to pleadings that have been filed in the proceedings in your bankruptcy case and this adversary proceeding.  But anything else, I'm not going to, because you have not provided them to everyone in advance to look at, as instructed, both on the Court's website and by an email from this Court a week or two ago, and then, again, as I instructed you yesterday.

So I will take judicial notice of pleadings that have been filed in your bankruptcy case, in this Court, and in the adversary proceeding that is before the Court today, but nothing else.  And so you may not refer to any documents, you may not have anything at the witness stand with you other than what is being marked as exhibits and what the Court is taking judicial notice of.  Do you understand?

escribers
www.escribers.net | 800-257-0885

Appx. 0794

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

well, that -- that only applies if Mr. Myers is a trustee, which is complete garbage. You can read the order. It's clear as day. So Mr. Mastro intentionally misled the Court. Anyway, I'll file the transcript.

Your Honor, yesterday we discussed Mr. VerStandig's conflict of interest and Offit Kurman's conflict of interest. And because in -- which, I did file Judge Dwyer's hearing transcript, where Mr. VerStandig states in that transcript that the trustee asked us to pursue this claim. And that's relevant because Mr. VerStandig was my client --

MR. SCHLOSSBERG: Your Honor, I just heard that this was filed. Where was it filed? I'm trying to keep track of those things.

THE COURT: Where was it filed, Mr. Myers?

THE WITNESS: Filed last week, in this case.

THE COURT: Where? Where was it --

THE WITNESS: This case. Judge Dwyer's transcript was a copy -- an exhibit.

THE COURT: And where does that appear?

THE WITNESS: It's --

THE COURT: It was filed in the main bankruptcy case or the adversary?

THE WITNESS: No, in the adversary.

THE COURT: Okay. Where is it?

THE WITNESS: It was very recent. We had this


www.escribers.net | 800-257-0885

Appx. 0795

hearing on Monday, so it might have been -- you said you saw it docketed on Friday or Thursday.

THE COURT:  What are you talking about, the motion to dismiss or the motion to intervene?

THE WITNESS:  Motion to dismiss, probably.  Is there an attachment, Judge Dwyer's hearing transcript?

THE COURT:  Okay.  Give me a moment here.  All right. He filed a motion to dismiss this adversary proceeding on Friday, June 27th at 5:20 p.m.  And Exhibit B, which of course, the Court has not reviewed, looked at, or considered, is a transcript of a motions hearing from September 23rd, 2019.  Is that what you're referring to?

THE WITNESS:  In the state court action.

THE COURT:  In the Montgomery County action.

THE WITNESS:  When -- and -- and with Judge Dwyer.

THE COURT:  Okay.  All right.  Continue.

THE WITNESS:  Yes, that's what I'm referring to.

MR. SCHLOSSBERG:  Is that attached, Your Honor?

THE COURT:  It's attached as Exhibit B to Docket No. 45, filed on Friday evening.

MR. SCHLOSSBERG:  Court's indulgence just a moment, Your Honor.

(Counsel confer)

MR. SCHLOSSBERG:  Your Honor, I don't want -- I don't want to confuse the situation.  I'll reserve that because in

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

any event, I object.  I renew the objection I've been making throughout.  I object to it.  It was not on the exhibit list, which doesn't exist.  It was not provided to us.  And he's now in court without copies for the parties, and we're supposed to meaningfully consider this.  Respectfully, Your Honor, it's not fair to the parties.

THE COURT:  Understood, Mr. Schlossberg, and I will tell you that I am going to take a break to hear two hearings this afternoon.  And the parties will come back for closing argument after that, so I will give you an opportunity to review it, so we will --

MR. SCHLOSSBERG:  I'm sorry, Your Honor.  We all thought that we were hard stop at 1:30.

THE COURT:  His case ends at 1 o'clock, is what I said.  He has until 1 o'clock to put on his case.

MR. SCHLOSSBERG:  Oh, so you had a docket after that. I'm sorry.  I assumed that -- I know my cocounsel assumed that we were done then.  Frankly, I made other -- I'll cancel my plans.  No problem.  This is important.

THE COURT:  Let's talk about it after the witness is off the stand.  Okay?

MR. SCHLOSSBERG:  All right.  All right.

THE COURT:  I'll work with the parties on timing.

MR. SCHLOSSBERG:  All right.  Thank you.

THE COURT:  All right.  And I'm going to -- we will

escribers
www.escribers.net | 800-257-0885

Appx. 0797

Case 24-00007   Doc 108   Filed 01/07/26   Page 59 of 181
Case 8:26-cv-02175-TDC   Document 12-3   Filed 07/29/26   Page 320 of 453                59

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

make five copies of -- it's Docket No. 45-2.  And we will mark that as Debtor No. 9.

(Transcript was hereby marked for identification as Debtor's Exhibit 9, as of this date.)

THE COURT:  So we will have those copies momentarily for everyone.

Mr. Myers, please continue.  So the Court will take judicial notice of the transcript from September 23rd, 2019.  All right.  Please continue, Mr. Myers.  You have about thirty minutes left.  You said you were wrapping up.

THE WITNESS:  So Judge Lipp, the U.S. Trustee, Mr. VerStandig -- he was at my 2004 examination of my main case -- they all had the Serv Trust document.  Serv Trust document was established in 2010 by my mother, who's now deceased.  She was the settlor.  I was not a settlor.  I am not a beneficiary.  I am simply a cotrustee.  And Serv Trust -- not by me, but by Daniel J. Ring, my mother's CPA, the other cotrustee.  Daniel J. Ring, in 2012, I believe it was, filed articles of incorporation up in the State of Maryland and established 6789 Goldsboro LLC.  I didn't.  And 6789 Goldsboro LLC was owned one hundred percent by Serv Trust, not me.

6789 Goldsboro LLC then entered into a -- through a term sheet, through a mountain of paper where the King parties had counsel.  Serv Trust was represented by Pillsbury (ph.).  There were term sheets.  There were operating agreement

escribers
www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

drafts.  Okay.  There was -- there is zero debate that I have no interest in Serv Trust.  Any suggestion by Mr. VerStandig and his clients is bogus because the first time anybody ever mentioned that Serv Trust was my property was two months after Judge Albright told Mr. VerStandig that that memorandum of understanding was an enforceable contract and that his client was going in front of a jury for fraud.

Mr. VerStandig scrambled, looked for a way out the back door, Montgomery County Circuit Court.  And then he colluded with Roger Schlossberg to come up with this bogus alter-ego thing, and there is no connection to me.  This -- none of the cases -- you can read a million of them.  They all involve people who own property and put it into their own self-settled trust, anything like that.  I've never put any property into Serv Trust.  I have never had any ownership in 6789 Goldsboro LLC, and the King parties have admitted this over and over.  And that's why I said yesterday, when Mr. Schlossberg is reading one document, there are numerous documents associated with 6789 Goldsboro LLC that confirm, confirm, affirm that all of what I just said is true, that I have no interest in it.

It's -- so -- so what happened on January 3 in the Montgomery County Circuit Court is irrelevant.  It's not over.  There -- I'm going -- there's going to be more proceedings.  And I will -- in my opinion, the circuit court didn't have

escribers
www.escribers.net  |  800-257-0885

jurisdiction because of Judge Delano's order, because it was removed and never remanded. And therefore, even if -- notwithstanding those two things, Judge Lease made clear, you all, meaning the King parties and Goldsboro, need to come back to my court because nothing I do today -- you can't use anything I do today, there is no adjudication.

And as I mentioned yesterday in cross-examination, I -- I told the Court that Mr. VerStandig filed in the Maryland Court of Appeals, and he confirmed exactly that. Those were his words, and the trustee joined in it, that there is no adjudication of any claim against any party in the Montgomery Circuit Court proceeding.

So where does that bring us? That brings us to a trustee that has come into this court, filed a 9019 settlement motion with the King parties. And he's -- and he's trying to obtain money payment from the King parties, and he in -- in turn is fraudulently conveying to them property that this bankruptcy estate does not own. There has never, ever been an adversary filed by Mr. Schlossberg against Serv Trust, which would have to happen under 547. He was time-barred from doing so. He then asked VerStandig and the King parties to prosecute it.

And to the extent there is a conflict of interest because VerStandig represented me -- and by the way, you were going to rule on it today. I -- I have the -- there's two

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

motions for disqualification. One was filed by my attorney in the Florida case when Mr. VerStandig came down. And I would note for the Court, as soon as she filed it, he hightailed it out of there. He withdrew his appearance, so.

THE COURT: And so what is it I'm ruling on today, other than the --

THE WITNESS: I'm asking -- I would like to have in the record the motions for disqualification because I have counsel here that are my former counsel, that are counsel to 6789. There's legal bills in here. There are -- it's absolutely incontrovertible that Mr. VerStandig represented 6789 Goldsboro LLC, Serv Trust, me, and Offit Kurman did, as well. And because Mr. Schlossberg asked Mr. VerStandig to bring that claim on behalf of the trustee, in the trustee's stead, because he was time-barred, my contention is the trustee is now disqualified, fruit of the poisonous tree.

So I would like to have in the record the records because Mr. VerStandig stood up here yesterday, Judge, and he lied to you. He said he's never represented Serv Trust. His name is all over numerous invoices in 2013 discussing the 6789 Goldsboro development, discussing King. Timothy Lynch, who was my original attorney, who's the president of Offit Kurman, is the ringleader of this whole thing. He's Brian King's personal attorney. He introduced me to Brian King, and he specifically put in writing that he could not, his firm could

www.escribers.net | 800-257-0885

Appx. 0801

not, represent any parties if there was ever a disagreement. Well, that went by the wayside when I got sideways with Offit Kurman, but I've never waived my privilege. Serv Trust has never waived its privilege. And 6789 Goldsboro LLC, when I was a manager, never waived its privilege. And Mr. VerStandig is in the exhibits that are attached to this.

And then, by the way, that was won in the Florida case. In the Maryland state court action, Roger Simmons (ph.) filed a motion to disqualify Mr. VerStandig. And because I was stayed and there was no final adjudication, Judge Lease says, well, we haven't even taken up those motions yet. So none of those motions have even been heard yet because that case is far from over.

And so my contention is, unless Mr. Schlossberg has filed a 547 action against Serv Trust, a party who's never filed a proof of claim in this case, to bring their property into my bankruptcy estate -- and even -- and even Judge Lease recognized that the claim that Mr. VerStandig was trying to bring -- and you -- and you can see it in Judge Dwyer. She was confused, and they -- and they basically just ran her down a rabbit hole and confused the hell out of her with a pack of lies. But she understood that alter-ego claims are the exclusive property of the bankruptcy estate, and the trustee is the only party that can bring them. And he failed to bring it. He's time-barred, and -- and so he had the King parties

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

go try and do an end run and get that property here, and that doesn't work.

Even if the King parties file a claim in state court, that doesn't obviate the fact that Mr. Schlossberg, the Chapter 7 trustee, is time-barred, and he has to file an action in this court. This court has to determine that Serv Trust is property of my estate, not the Maryland court. The Maryland court hasn't adjudicated it yet.

So this whole thing is illegal. It's unlawful. It's unethical. It smells. And -- and -- and again, Serv Trust never filed a proof of claim in my case, so this court has no jurisdiction over Serv Trust. And so he -- and -- and you know, I'm not getting into the discussion of, could a trustee enter into a settlement agreement if, in fact, the property was property of the estate. That's not the point of this. The point of this is Serv Trust property is now property of the estate.

And I read a bunch of case law last night, and this court, before it can even consider a 1919 motion, has to make a determination that what he's trying to do involves property of the estate, and it doesn't. It's the first thing. Without property of the estate, this court has no jurisdiction. Without that res, this Court has no jurisdiction to resolve state court claims that are going on.

And in fact, because -- as I mentioned earlier,

escribers
www.escribers.net | 800-257-0885

Appx. 0803

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

because Serv Trust has a pending counterclaim and is not a party in this case, it would -- the -- the most that could happen would be findings of fact and conclusions of law that could be submitted to the district court because it would be a violation of Stern and Wellness and the rest of that pack of cases, because Serv Trust is not here.  Serv Trust -- he's -- he's -- he's failed to -- to join all the indispensable parties.  Dan Ring's not here.  I'm not a party, but I'm not a trustee anymore, so I guess I don't have to be a party. But -- but for Serv Trust's purposes, he'd need to join Dan Ring, and he'd need to join all the beneficiaries.  It's their property.

And it's a -- it's a common law trust.  It's right in the document.  And King even recognized it was a common law trust back in 2013 when VerStandig and Offit Kurman were representing Serv Trust, 6789, and me, and Dan Ring.  And when the term sheet was being put together -- and in the term sheet, it says Serv Trust is a common-law trust.

So the fact that, you know, he wanted to bank on some kind of statutory trust, even Judge Lease said, that's irrelevant.  It doesn't really matter.  That trust agreement is a contract.  The property belongs to the beneficiaries. There is no possible way, under Maryland law, in a -- in a common-law spendthrift trust, which Judge Lipp found is valid and is for the benefit of my five children, the

escribers

www.escribers.net | 800-257-0885

Appx. 0804

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

beneficiaries -- there is no way under Maryland law that a trustee could -- could ever be charged with the res of that trust, absolutely not a possibility.  It's not -- it's not my irrevocable trust, and -- and it is -- it is irrevocable.

And it's disgraceful that Mr. VerStandig would lie to the Court because he knew it's an irrevocable trust.  He's been involved in many proceedings.  As a matter of fact, he was there helping form the deal with the King parties in 2013 with Offit Kurman.  And I can certainly provide all the invoices, and it's voluminous, voluminous.  He was involved in the deal structure.  Offit Kurman represented me in the note with the King parties.  Tim Lynch, Offit Kurman, and now he's in bed with the trustee, which -- which is a conflict of interest.  Trustees should be disqualified from this.  I mean, you know, this whole thing is just a sham.

And I want to go to the valuation, end up at the valuation.  The -- the property was purchased in 2013 for a million, 350.  I get calls weekly --

MR. VERSTANDIG:  Objection.  Hearsay.

THE WITNESS:  Okay.  Fine.  This -- this appraisal that was never let in was a total --

THE COURT:  The objection is sustained.

MR. VERSTANDIG:  Thank you, Your Honor.

THE WITNESS:  Yeah.  The -- the -- the -- Mr. VerStandig tried to end run the memorandum of understanding



www.escribers.net | 800-257-0885

Appx. 0805

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

THE COURT:  Whatever you want to refer to, Mr. Myers.

THE WITNESS:  All right.  This is page 21 of the transcript, page 22 of 55 of the court filing.  This is Mr. VerStandig.  "If Mr. Myers doesn't wish to be present to contribute evidence or testimony or whatever it -- whatever it may be towards adjudication of this matter, we have no objection to him being let out of the case, he is here solely as a necessary party, and they" -- referring to Serv Trust, and I guess, me.  I don't know.  They, being our side.  "And they are very much accurate when they say we are not asserting, meaning my client, I don't speak for Mr. Pelletier (ph.), we are not asserting a monetary claim against them".

He brought a -- he brought an improper declaratory judgment action after Serv Trust filed the counterclaim.  And he specifically told Judge Dwyer that -- that the only reason he bought -- brought Count 2 is because Serv Trust filed the counterclaim.  And so he's using a declaratory judgment action as an affirmative defense to Serv Trust's standing to sue the King parties.  Under Maryland law, that's completely unallowed.  You cannot bring a declaratory judgment action to assert an affirmative defense that you can assert in a -- in a pending counterclaim.  That's not a proper declaratory judgment action.

(Pause)

THE WITNESS:  And confirming that, on page 22 of the

escribers
www.escribers.net | 800-257-0885

Appx. 0806

transcript, page 23 of 55, Mr. VerStandig tells the Court, "Your Honor, my clients are being sued by Serv Trust for" -- this is the counterclaim -- "for myriad claims that are not subject to today's motions, but that are part of this case, my clients are being sued for breach of fiduciary duty, breach of contract, constructive fraud, and so on and so forth, our position, very simply, is that Serv Trust cannot sue us for these things because it does not own any litigation rights to such claims, to the extent they exist at all".  Okay.  There's been no ruling yet, and he's already making this statement. "And the reason" -- let's see.  Blah, blah.  Okay.

So he sums up his -- his Count 2 on page 23 of the transcript, page 24 of 55.  This is -- this is what Mr. VerStandig describes his Count 2 alter ego as.  "In terms of what is there that is a justiciable controversy, that is it, we have alleged that they don't have standing, to be sniping at us, for lack of a more eloquent term, and that in reality, the claim endeavored to adjudicate in this court belonged to the bankruptcy trustee".  You can't bring a declaratory judgment action to raise an affirmative defense that -- when there's a pending counterclaim.  You have to raise it in the counterclaim.

(Counsel confer)

THE WITNESS:  Yeah, I'm smarter than you think, Mr. Schlossberg.



GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

marked as exhibits.  All exhibits should remain on the stand.

We have Debtor's Exhibits 1 through 9 on the stand at this

point.  All right.

So let's talk about where we go from here.

Mr. Mastro, do you have cross-examination for this

witness?

MR. MASTRO:  No, Your Honor.

THE COURT:  Mr. VerStandig?

MR. VERSTANDIG:  No, Your Honor.

THE COURT:  All right.  All right.  Mr. Myers, that

completes the presentation of evidence in your case.  So we

have --

MR. MYERS:  I just want the record to show that you

cut me short.

THE COURT:  Noted.

So we have closing arguments left.  Let's talk about

the timing of that.  So the Court has hearings at 1:30 and 2

o'clock.  We can come back this afternoon and have closing

arguments, or we can set another time to do that.

MR. VERSTANDIG:  We'll be here today, Your Honor.

MR. SCHLOSSBERG:  Yeah.

THE COURT:  All right.

MR. MYERS:  Your Honor, let me get off the witness

stand so I can stand down there, because I'm going to make a

different suggestion.

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

THE COURT:  All right.  Are the parties ready for closing arguments?

MR. SCHLOSSBERG:  Yes, Your Honor.

MR. VERSTANDIG:  Yes, Your Honor.

THE COURT:  Mr. Myers, are you ready?

MR. MYERS:  Yes.

THE COURT:  Okay.  All right.  Mr. Mastro, Mr. VerStandig, which one of you is going to take the lead?

MR. VERSTANDIG:  Your Honor, I will go first.  I will be brief, and Mr. Mastro will follow.

THE COURT:  All right.  Give me just one moment, please.

MR. VERSTANDIG:  Yes, Your Honor.

THE COURT:  I just want to get organized.

(Pause)

THE COURT:  All right.

MR. VERSTANDIG:  Thank you, Your Honor.

Your Honor, I'm going to start by addressing the claim objection, which is the majority of my argument.

The Fourth Circuit standard, which I think is familiar to the Court, is what was announced in Stancill v. Harford Sands, which establishes the familiar burden-shifting dynamic.  A proof of claim, once entered into evidence -- and all three proofs of claim are in the record before you -- is prima facie evidence of the validity thereof under Rule 3001.

www.escribers.net | 800-257-0885

The burden then shifts to the objecting party to establish some core issue with the claim or some grounds of objection thereupon.  And if and only if the objecting party meets that burden does the burden then shift back to the claimant to rebut what the objecting party has put forward.  There's no doubt that we have the three claims in evidence, and thus there's no doubt but that they are prima facie evidence of the validity thereof.

Mr. Myers, in writing, although not discussed during the past two days, has raised two technical objections.

One is that there are no writings appended to the proof of claim.  The problem with that objection, and this is the L.A. airport case we cited in our papers from the Ninth Circuit, is that there is no writing required unless a proof of claim is premised upon a writing.  And if you look at Rule 3001(c), subsection (1), it literally says, "Claim based on a writing".  And what this generally refers to is a promissory note, a settlement agreement, some written instrument evidencing indebtedness.  And what the L.A. airport case teaches us is that where a proof of claim is premised upon something other than a written instrument, there is no legal obligation to affix a copy thereto for the simple reason that there isn't something obvious to affix thereto.  In the L.A. airport case, the question was, did you need to affix the tax code to the proof of claim.  Here, I suppose the suggestion

escribers
www.escribers.net | 800-257-0885

Appx. 0810

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

would have been that we affixed the entire adversary

proceeding.  That is clearly not what Rule 3001 requires.

The second technical issue raised by Mr. Meyers is

that the claims were filed beyond the claims bar date.  Now,

the Supreme Court made very clear in Pioneer that a court may

allow claims to be late filed in a Chapter 7 case.  Here, you

entered an order roughly eighteen months ago permitting my

clients to file proofs of claim within thirty days of the

entry of that order.  That is a final order that, in point of

fact, has been appealed.  And I'm not making reference to

the --

THE COURT:  All right.  Hold on one moment.

Did we lose our recording equipment?

THE CLERK:  No, the recorder is still going, but

everything else stopped.  My computer went out.

THE COURT:  Should we take a short recess?

THE CLERK:  Sure.

THE COURT:  Okay.  We'll take a short recess.  Mr.

VerStandig, put a pin in that.  Hold your thought.

MR. VERSTANDIG:  Thank you, Your Honor.

THE COURT:  We'll come back to it.

THE CLERK:  All rise.  Court is now in recess.

(Whereupon a recess was taken)

THE CLERK:  All rise.  United States Bankruptcy Court

for the District of Maryland now resumes its regular session,

www.escribers.net | 800-257-0885

Appx. 0811

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

the Honorable Maria Ellena Chavez-Ruark presiding.  Please be seated.

THE COURT:  All right.  I'm sorry about that, Mr. VerStandig.  There's quite a storm going on out there.

MR. VERSTANDIG:  Yes, Your Honor.

THE COURT:  So hopefully we do not lose electricity again.

All right.  So you were saying that the Court entered an order allowing the King parties to file their proofs of claim?

MR. VERSTANDIG:  Yes, Your Honor.  That order was entered approximately eighteen months ago.  And what's significant about that order is it's been appealed.  And I'm not making reference to the appeal that was filed last week.  It was actually appealed by Mr. Myers shortly after it was entered.  It went up to the district court.  There was a show cause order in the district court.  And upon receipt of the show cause order, Mr. Myers dismissed his appeal.  It was remanded back to this Court in October of 2024.

So we know that there is an order, under Pioneer, allowing claims to be late filed.  And we know that despite an effort to overturn or obstruct that order on appeal, no such success has been had.

Moving aside from the technical objections, there is this sort of omnipresent allegation that the claims ought to

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

asset, that asset being Serv Trust's interest in 6789 Goldsboro LLC, which Serv Trust having been previously determined to be the alter ego of the debtor.

And just to review, the proposed settlement really has three components. The first component, the plaintiffs are paying the trustee $150,000, the plaintiffs being the King parties, in order to redeem the entirety of Serv Trust's interest in Goldsboro. And in the process, it moots out or settles the claim in the adversary case. The claim in the adversary case, once the settlement payment is successfully negotiated, that's going to be dismissed with prejudice.

And then the trustee testified to the third element, which is important to him -- and we'll get to this -- that the King plaintiffs have agreed to reimburse the trustee for all reasonable legal fees and expenses that the trustee incurs in connection with the litigation of any appeals taken by any party in the event this motion is granted. And I said we'll get to that, and that is also going to be an important part of this.

Now, the Court knows, in any 9019 motion, there's certain standards the Court has to look at. The factors the Court considers are: the probability of success in litigation, the likely difficulties in collection -- and that one is really not relevant here because, as I mentioned before, the trustee is not bringing a claim. He doesn't have

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

to contemplate that, okay, if I get a judgment, what are my odds of collecting that judgment once I get it?  So that number two is not really a factor.  Number three, the complexity of litigation, and the expense, inconvenience and delay involved with litigating the matter.  And four, the paramount interest of the creditors in this case.

As the Court knows, the Court doesn't need to necessarily conduct a mini trial, although over the last two days, it sure seemed that way.  All the Court has got to do is find that the proposed settlement doesn't fall below the lowest level of reasonableness.  The Court does not substitute its judgment for the business judgment of the trustee.

So with those standards in mind, Mr. Schlossberg testified at length, both on direct, and in roughly four hours of cross-exam, as to his process, his thought process, his judgment in evaluating and ultimately recommending this settlement to the Court in the 9019 motion.

The first thing he did is, as he testified, he considered the merits of the claims in the adversary case asserted by the King parties.  He went through, in exhaustive detail, the operating agreement, including the provisions in, I believe it was section 7, regarding the redemption of the Class B interests.

The trustee determined that there was a demand for the appraisal process made by the King plaintiffs.  That's the

escribers
www.escribers.net | 800-257-0885

Appx. 0814

THE COURT:  Do you have -- well, okay.  None of that's in evidence, but okay.

MR. MYERS:  Okay.  Well, they filed a one -- they filed a zero dollar, no-backup, time-barred claim, no motion to file late-filed proof of claim, and --

THE COURT:  In Florida?

MR. MYERS:  No, here.  Here.  Their claims here were for zero dollars.  The basis is a hypothetical whatever happens in an adversary proceeding, which is not a basis for a proof of claim in a Chapter 7 case.  In a Chapter 7 case, there has to be money.  So they don't want any money.  That's the whole nature of this whole charade.  And so putting aside that it's one page, zero dollars, no support, okay?

And Mr. VerStandig even said I guess we could have fixed the entire adversary proceeding.  Well, that's not going to get him anywhere anyway.  So it's a bogus proof of claim.  It was filed too late.  They never filed a motion to file a late-filed proof of claim.

And Mr. VerStandig even testified, in the Montgomery County Circuit Court case that the King parties don't have a claim against the estate.  So he's judicially estopped there, the King parties are.  It's in the transcript which I did file in the Court record.  So for all those --

MR. VERSTANDIG:  Mr. Myers is referencing a transcript that he docketed after evidence closed in this

escribers

www.escribers.net | 800-257-0885

Appx. 0815

Case 24-00007   Doc 108   Filed 01/07/26   Page 114 of 181
Case 8:26-cv-02175-TDC   Document 12-3   Filed 07/29/26   Page 338 of 453

114

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

settlements based on nonfinal orders.  I approve settlements based on agreements of parties that haven't even gone through litigation, where just parties have said that they have claims against each other, or one party has a claim against the other, and they've reached a settlement.  I approve that all the time.

So what do you have that says that the Court cannot approve a settlement unless there is a final nonappealable order in place?  Because at that point, what is there left to settle?

MR. MYERS:  You're --

THE COURT:  The whole purpose of the --

MR. MYERS:  You're missing --

THE COURT:  Let me finish.

MR. MYERS:  Well, I'm limited to an hour.

THE COURT:  Stop talking.  I'm talking.

MR. MYERS:  Yeah, but --

THE COURT:  I'm asking you a question about what you just said.

MR. MYERS:  And I --

THE COURT:  Let me finish.  So if litigation has concluded, and there is a final nonappealable order, then what is there to settle?

MR. MYERS:  There is no --

THE COURT:  The rights have already been determined.

escribers
www.escribers.net | 800-257-0885

Appx. 0816

But I approve settlements all the time, and Rule 9019 is applied all the time, even when there's not a final nonappealable order.  So tell me what your authority is for saying that I need a final nonappealable order before I can apply Rule 9019.

MR. MYERS:  This is a bankruptcy court.  Your jurisdiction is restricted to res, period.  If there's no property -- if Serv Trust's property is not property of the estate, that's the first question you ask.

THE COURT:  I'm not approving a settlement regarding Serv Trust's property.  I'm approving a settlement regarding claims that have been asserted against each other.

MR. MYERS:  No, you are.  You're approving a settlement that would transfer nonestate property to the King parties, which --

THE COURT:  No, I've been asked to approve a settlement of whatever the estate's interest may be.  Maybe it has all rights, maybe it has very little rights.

MR. MYERS:  I'd prefer to continue.

THE COURT:  Maybe even it has no rights at all.  But I've been asked to approve a settlement of the estate's interest.  And so I don't have to define what that is.  I only have to say whether or not the trustee exercised good business judgment in reaching that settlement.  So what do you have --

MR. MYERS:  May I continue?

escribers
www.escribers.net | 800-257-0885

THE COURT:  -- that says that I have to determine that the estate has an interest in property to be able to approve a settlement?

MR. MYERS:  That's a fundamental aspect of this Court.  You can't approve any agreement for nonestate property.  Judge Schneider (ph.) will tell you that.  And I know you know that.  If it's not estate property, you have no authority or jurisdiction to determine rights in it.

THE COURT:  I've been asked to approve a settlement of whatever the estate's rights may be.  I have not been asked to determine whether the bankruptcy estate has rights.  If the bankruptcy estate has no rights at all, and Mr. Schlossberg has negotiated a settlement that brings $150,000 into the estate for no rights at all, then that is a huge win for the bankruptcy estate.

MR. MYERS:  You're kidding me.  He cannot -- he cannot, as a trustee, with a fiduciary duty, enter into an agreement, on behalf of this bankruptcy estate, to transfer nonestate property to the King parties in exchange for money.  That's the Anderson case.  That's fraud, period.  He doesn't -- it's not estate property.  He doesn't have any right in it.  He doesn't have any jurisdiction over it.  He doesn't have any authority over it.

And your first obligation, before you can even consider this bogus fraudulent 9019 crap, is to determine is

escribers
www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

Serv Trust's property property of this estate.  And he testified yesterday -- he testified yesterday he has never filed an adversary against Serv Trust.  Serv Trust's property has never come into this estate.  The only way that Serv Trust's property can come into my bankruptcy estate is by some action, because they're a third party, they have their own property.  He would need to go and file an adversary to pull that property back into the estate.  He didn't do that.  He had one year after he was appointed to do it.  He elected not to do it.  A nonfinal state court order does not make Serv Trust's property of this estate.  Okay?

THE COURT:  Because you're saying the order is not valid?

MR. MYERS:  Your Honor, a bankruptcy court has to make a determination.

THE COURT:  Why?  I've never --

MR. MYERS:  The --

THE COURT:  I've never had to make a determination of what the estate's interest is.  Instead, the settlement is always a settlement of whatever rights and interests the estate may have.  I don't have to define them.  We can argue all day long about whether the Montgomery County order is a valid order or not.  I'm not aware of anything that says it only becomes valid when it's final and nonappealable.  You haven't cited any case law to that.

escribers
www.escribers.net | 800-257-0885

Appx. 0819

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

So we can disagree on that. But I will say to you -- and I'll say to you you're wrong, and you will find plenty of case law on that. And that's so fundamental, it's like the sky is above and the ground is below. You can't authorize an order for nonestate property.

THE COURT: I'm not authorized -- he hasn't asked me to --

MR. MYERS: It is. It's right -- it's right in the agreement.

THE COURT: He's asked me -- this Court is only going to approve a settlement with respect to the estate's interests. I'm not approving anything beyond that.

MR. MYERS: But he does -- the state doesn't have an interest in that property.

THE COURT: Well, you can make that argument later on.

MR. MYERS: But you haven't even determined it. At least you've admitted that.

THE COURT: I don't --

MR. MYERS: So on appeal, it's easy.

THE COURT: I don't have to.

MR. MYERS: You don't have to determine if it's estate property that he wants to transfer?

THE COURT: I don't have to. I may make that determination.

escribers

www.escribers.net | 800-257-0885

Appx. 0820

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

THE COURT: I'm asking you questions because I'm trying to understand your position and get authority for your position.

MR. MYERS: Okay. So my position is this.

THE COURT: I --

MR. MYERS: I don't want to get lost in semantics. Until -- once you remand a case to state court, until that court resolves all claims against all parties, there is no decision in that Court. Even though they preliminarily can enter something like a nonfinal order, it can be revised. And I'm not even a party to the trial, so they couldn't even determine alter ego, which is what Judge Lease said. It's in all my filings. You have the transcripts. You have the December 16th transcript, and you also have the trial transcript now.

THE COURT: Well, he entered judgment in favor of the King parties on the alter ego claim. The counterclaim was dismissed, and the other count to the complaint was dismissed. So why is the order not final? What is there left for the Montgomery County Court to decide? Both of the counts of the complaint have been fully resolved --

MR. MYERS: No, they haven't.

THE COURT: And the counterclaim has been -- judgment has been entered in favor of the King parties on the counterclaim. So what is there left for the Montgomery County

escribers
www.escribers.net | 800-257-0885

Appx. 0821

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

Court to determine?  Why is this not a final order?

MR. MYERS:  Judge, there were four claims, two from Goldsboro, two from King parties.  He resolved -- without me being there, in violation of the automatic stay, he resolved -- he took evidence on this alter ego claim.  He's never resolved Count 2.  He's never resolved either --

THE COURT:  Count 2 says, "Judgment entered in favor of the King parties on Count 2".  So he did.

MR. MYERS:  I'm sorry.  He never resolved Count 1.  Count 2 was the alter ego.

THE COURT:  Well, the testimony was that Count 1 was dismissed.

MR. MYERS:  Count 1 wasn't dismissed.

THE COURT:  That another count -- the other count was dismissed.  I mean, all right.  Well, I'll ask Mr. Mastro to clear it up.

MR. MYERS:  Here, I'll clear it up for you right now.  And the Fourth Circuit's already cleared it up with Mr. VerStandig.  He can't go in and Mr. -- Mr. Schlossberg, when there's no -- Serv Trust is not his property.  He can't agree to dismiss Count 1 before the Montgomery County Circuit Court even makes a decision, final decision, that Serv Trust is property of whoever.

And guess what?  The case law also says that, even if Montgomery County says the moon is made of green cheese, you,

escribers
www.escribers.net | 800-257-0885

Appx. 0822

as a bankruptcy court, still have to make a determination, independently, as to whether Serv Trust is property of the estate. You can no longer do that because he's never filed a 547 or any action against Serv Trust.

You know, I know this law backwards and forwards. And so there are still three claims left in that case. And Mr. VerStandig is trying to pull the same stunt he pulled in Kiviti that the Fourth Circuit told him to go pound sand. You cannot create a final judgment by dismissing a claim, okay? And that's what they were trying to do.

And he's all over the record in the transcript saying, well, if you resolve the -- if you resolve the alter ego, I'm sure Goldsboro's counsel and I could get together, and we'd dismiss all of the other counts, and then you'd have yourself a final judgment.

Read the Kiviti decision. The Fourth Circuit told him forget it; that's not how it works. Every circuit court has now taken up this issue because people were trying to create finality. They can't create it.

THE COURT: And what is the citation for Kiviti?

MR. MYERS: Kiviti v. -- well, he's -- he was in the case. It was Fourth Circuit.

THE COURT: You're citing the case. I'm asking you.

MR. MYERS: K-I-V-I-T-I  v. something with a "B". Okay?



www.escribers.net | 800-257-0885

Appx. 0823

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

nondebtor, nonestate property, then that's an Article III judge. That's not this Court. This Court has no jurisdiction over nonestate property. That was Judge Schneider. Point blank. If it's nonestate property, or it's exempt property, but if it's nonestate property, he says I have no jurisdiction to determine rights in it.

THE COURT: Well, doesn't he have -- doesn't, at the very least, even assuming what you're saying is true, that the Chapter 7 trustee doesn't have the rights of Sun Trust, doesn't he have.

MR. MYERS: Serv Trust, you mean?

THE COURT: I'm sorry, Serv Trust.

MR. MYERS: Yeah.

THE COURT: Doesn't he have your rights? He's the Chapter 7 trustee of your estate. So whatever rights and interests you had, as of the bankruptcy filing, he can settle those rights and transfer those rights. And he has --

MR. MYERS: The --

THE COURT: And why would the Court not have jurisdiction over that?

MR. MYERS: There's been no determination that Serv Trust is my alter ego.

THE COURT: Well, there has been a determination. You disagree with it. You don't want to abide by it. But that aside, why do I need a determination that there's been --

escribers

www.escribers.net | 800-257-0885

Appx. 0824

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

I approve settlements all the time.

MR. MYERS:  Okay.  Well, then you're doing it wrong.

THE COURT:  Well, thank you for telling me that.

MR. MYERS:  Okay?  If you're approving settlements of nonestate property, then that's a big problem.

THE COURT:  I told you, I'm approving settlements of the estate's rights and interests.  I am entitled to do that.

MR. MYERS:  Okay.

THE COURT:  I don't have to define what those rights and interests are.

MR. MYERS:  You --

THE COURT:  I only have to say whatever rights and interests the estate may have you are authorized to settle them.  That's all.

MR. MYERS:  No, ma'am.

THE COURT:  Okay.

MR. MYERS:  No, ma'am.

THE COURT:  All right.

MR. MYERS:  You cannot -- you cannot, as a Article I judge, in a bankruptcy court, approve a settlement agreement before you've even been convinced that there's property of the estate.  If you --

THE COURT:  Who said I haven't been convinced that there's property of the estate?

MR. MYERS:  Well, you --



www.escribers.net | 800-257-0885

Appx. 0825

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

an appeal to the district court, and the district court affirmed Judge Kindred.

We then took an appeal to the Fourth Circuit.  The Fourth Circuit has a doctrine that says you're not allowed to manufacture finality for purposes of creating appellate jurisdiction unless your case is -- and this is a quote -- "dead as a doornail", meaning there must be nothing you can recover.

The Fourth Circuit has said that, if you lose your motion for class certification, but the lead plaintiff still has a claim for five dollars, that's something you can still litigate.  But if there is a trial court order that decimates any potential cognizable recovery of the remaining causes of action, then you may stipulate to dismiss and take your appeal.

In Kiviti, what the Fourth Circuit ruled -- and this is interesting and a little bit harrowing -- is that even though Judge Kindred's order rendered the case moot, it doesn't matter because -- wait for it -- mootness is an Article III doctrine arising under the case or controversy provision of the Constitution, and bankruptcy courts are Article I courts, and thus bankruptcy courts may hear moot matters or offer advisory opinions.

It is a weird ruling.  But here's the interesting part about the ruling that matters more for today.  Nothing in

escribers
www.escribers.net | 800-257-0885

GREGORY B. MYERS; KING, ET AL. v. SCHLOSSBERG

Kiviti said we couldn't stipulate to dismiss and make it a final order.  Nothing in Kiviti questioned that it became a final order when we stipulated to dismiss.  The holding in Kiviti, and the whole controversy in Kiviti was whether or not, by doing that, we waived the ability to appeal the final order.

Everyone agreed that it was a final order once we entered into the stip of dismissal, the Fourth Circuit, my opposing counsel, and myself.  What Kiviti says is, because we manufactured the finality, we are not to be rewarded with the ability to take an appeal therefrom, since bankruptcy courts can hear moot issues and thus we didn't need to manufacture finality.

Applying that to what we have in Montgomery County, there are two possibilities.  One, if you were to strictly apply Kiviti, is that since Mr. Schlossberg, as the agent of Serv Trust, and I stipulated to dismiss the remaining cause of action, finality was manufactured, and it's not properly reviewable on appeal.

I will tell you, that's not a position I would take. I don't think the Maryland appellate system is bound by Kiviti.  I think Kiviti is a bad decision.  I lost Kiviti. I'll be very honest about that.  But that's also not a position anyone ever had to take because no timely appeal was filed.  Kiviti doesn't go to whether or not it's a final

escribers
www.escribers.net | 800-257-0885

Appx. 0827

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*Sharona Shapiro*                    January 5, 2026

_____        _____

SHARONA SHAPIRO                          DATE

AAERT Certified Electronic Transcriber CET-492

escribers

www.escribers.net | 800-257-0885

Appx. 0828

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

In Re:                                 Case No. 15-26033, 24-00007

Gregory B. Myers,                      Chapter 7

            Debtor.                    Greenbelt, Maryland
                                       Thursday, July 3, 2025

: : : : : : : : : : : : : : : :

TRANSCRIPT OF HEARING ON
17 APPLICATION TO COMPROMISE CONTROVERSY FILED BY DEFENDANT
ROGER SCHLOSSBERG, 19 OBJECTION FILED BY DEBTOR GREGORY B.
MYERS, 20 MOTION FOR MISCELLANEOUS RELIEF FILED BY DEFENDANT
ROGER SCHLOSSBERG, 22 SUPPORT DOCUMENT FILED BY DEBTOR GREGORY
B. MYERS, 23 RESPONSE FILED BY DEBTOR GREGORY B. MYERS, 24
RESPONSE FILED BY DEFENDANT ROGER SCHLOSSBERG, 1051 OBJECTION
TO CLAIM FILED BY DEBTOR GREGORY B MYERS, 1052 OBJECTION TO
CLAIM FILED BY DEBTOR GREGORY B MYERS, 1053 OBJECTION TO CLAIM
FILED BY DEBTOR GREGORY B MYERS, 1060 OPPOSITION FILED BY
INTERESTED PARTY BRIAN KING, INTERESTED PARTY CRISTINA KING)
BEFORE THE HONORABLE MARIA ELLENA CHAVEZ-RUARK
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For Chapter 7 Trustee Roger Schlossberg: | Frank J. Mastro, Esq. |
| | Roger Schlossberg, Esq. |
| | SCHLOSSBERG & MASTRO |
| | 18421 Henson Boulevard |
| | Suite 201 |
| | Hagerstown, MD 21742 |
| For Brian King | Maurice Belmont Verstanig, Esq. |
| | THE VERSTANDIG LAW FIRM, LLC |
| | 9812 Falls Road |
| | #114-160 |
| | Potomac, MD 20854 |
| For U.S. Trustee: | L. Jeanette Rice |
| | OFFICE OF U.S. TRUSTEE |
| | 6305 Ivy Lane |
| | Suite 600 |
| | Greenbelt, MD 20770 |

Audio Operator:            JENNIFER WHITFIELD
                           301-344-3965

Transcript prepared by:    ESCRIBERS
                           7227 North 16th Street
                           Suite #207
                           Phoenix, Arizona 85020
                           (800)257-0885

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Case 8:26-cv-02175-TDC   Document 12-3   Filed 07/29/26   Page 353 of 453

Greenbelt, MD - July 3, 2025

THE CLERK:  Calling the case of Gregory B. Myers, case number 15-26033.  The matters -- we're here for oral ruling regarding the matters of docket entry 1051, objection of claim number 22 filed by the Debtor, docket entry 1052, objection to claim number 23 filed by the Debtor, docket entry 1053, objection to claim number 21 filed by the Debtor, and docket entry 1060, opposition to objections filed on behalf of the King parties.

We're also here for adversary number 24-00007, King et al vs. Schlossberg.  The matters before the Court are docket entry 17, application of compromise controversy filed on behalf of the defendant, docket entry 19, preliminary objection of Trustee's application to compromise controversy filed by the Debtor, docket entry 22, supplement to preliminary objection filed by the Debtor, docket entry 20, motion to strike Debtor's objection filed on behalf of the defendant, docket entry 23, response to motion filed by the Debtor, and docket entry 24, response to opposition filed on behalf of the defendant.

Starting with counsel for the plaintiffs and the adversary, please identify yourself and client for the record.

MR. VERSTANDIG:  Good morning, Your Honor.  Maurice Verstandig, on behalf of Brian King, Cristina King, and the Cristina and Brian King Children's Trust.  I am joined today

by Brian King, who is simply passively listening over Zoom.

THE COURT:  Good morning.

MR. MASTRO:  Good morning, Your Honor.  Frank Mastro, on behalf of Roger Schlossberg, the Chapter 7 Trustee and the defendant in the adversary case.

THE COURT:  Good morning.

MR. SCHLOSSBERG:  Good morning, Your Honor.  Roger Schlossberg, Chapter 7 Trustee, counsel for Trustee.

THE COURT:  Good morning.

MR. MYERS:  Good morning.  Good morning, Your Honor. Greg Myers, Debtor, third-party plaintiff.  And I note that it says there's ten participants on this Zoom, but I haven't heard of ten different people.  Thank you.

THE COURT:  Good morning.

MS. RICE:  Good morning again, Jeanette Rice, office of the U.S. Trustee.

THE COURT:  And good morning to you, Ms. Rice.

So the Court offers its deepest apologies.  We've had a major technical failure on our end and none of the Court's ruling was recorded.  The equipment is still not working, so the Court is recording this using the Zoom recording function. And what the Court will do is the Court will have a transcript of its ruling prepared and docketed on the docket for the convenience of the parties.  And so if any of the parties would not -- would like to disconnect and not stick around for



the ruling, you're welcome to disconnect.  And the Court will excuse you from the ruling.

If you're willing to stick around for the Court's ruling, you heard most of it.  The Court will cover that again.  And again, I offer my sincerest apologies.

MR. MYERS:  Your Honor, I don't understand.  So is there a recording of the prior ruling?

THE COURT:  Mr. Myers, as I just stated, the recording equipment failed.  There is no recording of that ruling.  I am going to start over at the beginning and give the ruling all over again, and the Court will prepare a transcript of its ruling and put that on the docket for the benefit of the parties.  So if anyone does not want to stay on for the Court's ruling, the Court will excuse their attendance.

MR. MYERS:  Uh-huh.

THE COURT:  All right.  I'm going to go ahead and get started.  Before the Court is a motion to approve a settlement filed by the Chapter 7 Trustee in the Debtor's main bankruptcy case, and the Debtor's objections to three claims filed in his bankruptcy case.  The Court will overrule the Debtor's objections to the settlement motion, grant the settlement motion, and approve the settlement motion, and approve the settlement.  The claims are being withdrawn in connection with the settlement.  So the objections to those three claims will



be overruled as moot.

Notwithstanding the Debtor's repeated mischaracterizations of the underlying facts, the material facts here are not disputed.  The Court adopts the findings of fact and conclusions of law set forth in three of its prior rulings.  The first is its memorandum opinion issued on September 28th, 2018, in the adversary proceeding styled United States Trustee v Myers, Adversary Number 17-00193 at docket number 94 in that adversary proceeding.  The second is the Court's memorandum opinion issued on December 11th, 2023, the Chapter 13 case filed by the Debtor's wife, Barbara Ann Kelly, case number 23-12700 at docket number 106.  And the third is the court's order granting motion for approval of proposed compromise and settlement issued on December 11th, 2023, in the Debtor's main bankruptcy case, case number 15-26033, at docket number 1029.

In the interest of time, the Court will not restate all of its factual findings and legal conclusions, but adopts the findings and conclusions in those three decisions.  The Court summarizes its prior findings of facts and makes additional findings of facts based on the evidence presented at the hearing on June 30th and July 1st as follows: The Debtor filed a voluntary Chapter 11 bankruptcy petition on November 18th, 2018.  Excuse me, 2015.  At the time that he filed the case, there was a trust that has been referred to in



Case 8:26-cv-02175-TDC   Document 12-3   Filed 07/29/26   Page 357 of 453

these proceedings as Serv Trust.  Serv Trust was created by the Debtor's mother for the benefit of the Debtor's children. And at some point in time, the Debtor was a co-Trustee of the Serv Trust trust.

The Debtor testified at his meeting of creditors on February 1st, 2016, that Serv Trust has a 50 percent interest in a Maryland limited liability company called 6789 Goldsboro LLC, which owns a parcel of residential real property located in Montgomery County.  I will refer to 6789 Goldsboro LLC as Goldsboro LLC, or Goldsboro, or the LLC.  On February 22nd, 2017, after an evidentiary hearing, this Court entered an order granting the motion of the United States Trustee to convert the Debtor's case from a Chapter 11 proceeding to a Chapter 7 proceeding.  At that time, Mr. Schlossberg was appointed as the Chapter 7 Trustee of the Debtor's bankruptcy estate.

There are three pieces of litigation, in addition to the instant adversary proceeding, that are most relevant to the Trustee's settlement motion.  First, on September 14th, 2017, Brian King, Cristina King, and the Cristina and Brian King Children's Trust filed a complaint for declaratory judgment against Serv Trust in the Circuit Court for Montgomery County in the case styled King et al v. Serv Trust et al, case number 436977-B.  I will refer to Mr. King, Mrs. King, and their trust as the King parties, and I will refer to



this case as the King declaratory judgment case.

The complaint in the King declaratory judgment case sought, among other things, a judgment declaring that the King parties could direct Goldsboro LLC to redeem the interest of Serv Trust in the LLC in exchange for previous consideration. Excuse me, in exchange for previous consideration paid based on an appraisal conducted of the Goldsboro property pursuant to the operating agreement governing the LLC and a judgment declaring that Serv Trust's interest in Goldsboro, LLC has been redeemed.

Second, on January 24th, 2018, Goldsboro, LLC filed a complaint against Serv Trust in the Circuit Court for Garrett County in the case styled 6789 Goldsboro, LLC v. Serv Trust et al, case Number C-11-CV-18-000018.  I will refer to this case as the Goldsboro breach of contract case.  The complaint in this case asserted claims for breach of a promissory note and promissory estoppel.  The Circuit Court for Garrett County transferred the Goldsboro breach of contract case to the Circuit Court for Montgomery County on July 24th, 2018, and the Circuit Court for Montgomery County assigned case number 451611-V to the case and consolidated it with the King declaratory judgment case.  I will refer to the consolidated case as the State Court case, and to the Circuit Court for Montgomery County as the State Court.

And third, on October 29th, 2018, Goldsboro, LLC



filed a complaint for declaratory judgment against the Debtor Seve Trust and the Trustee in this Court, thereby commencing adversary number 18-00407, which I will refer to as the Goldsboro adversary proceeding. The complaint in the Goldsboro adversary proceeding alleged that the King parties collectively are the other owner of Goldsboro, LLC, and exercise their right to redeem Serv Trust interest in the LLC. The complaint sought a judgment from this Court declaring that Serv Trust is the alter ego of the Debtor, and that the assets and liabilities of Serv Trust are assets and liabilities of the Debtor, subject to administration by the Trustee. Goldsboro, LLC also requested an order from this Court stating -- excuse me, staying the State Court case based on Goldsboro LLC's assertion that Serv Trust is the alter ego of the Debtor.

On January 30th, 2019, the Court entered an order abstaining from exercising jurisdiction over the claims asserted in the Goldsboro adversary proceeding. The abstention order determined that the State Court could determine whether Serv Trust is the alter ego of the Debtor in connection with the State Court case, and if such a determination was made, then the parties to the State Court case could come back to this Court to determine a course of action. On the other hand, if the State Court determined that Serv Trust is not the alter ego of the Debtor, then the State



www.escribers.net | 800-257-0885

Appx. 0837

Court case would have little impact on the Debtor's bankruptcy case, and there would be no basis for the Court to exercise jurisdiction over the Goldsboro adversary proceeding.

The abstention order also stated that the State Court could determine whether the automatic stay of Section 362-A applied to the State Court case. After entry of the abstention order, the King parties filed an amended complaint in the King declaratory case to include a request for declaratory judgment that Serv Trust is the alter ego of the Debtor. The consolidated State Court case was scheduled for trial on January 3rd, 2023. At approximately 4:30 p.m. on Friday, December 30th, 2022, just minutes before the close of business, on the last business day before trial, the Debtor filed a notice of removal purporting to remove the action to the United States Bankruptcy Court for the Middle District of Florida, where the Debtors later filed and separate Chapter 13 case was pending at the time.

The King parties immediately filed an emergency motion to remand, alleging various infirmities and inherent bad faith associated with the Debtor's attempted removal at the 11th hour, on the morning of January 3rd, 2023, the Florida Bankruptcy Court remanded the case back to the Circuit Court for Montgomery County in time to allow for the trial of the State Court case to proceed as scheduled. And so on January 3rd, 2023, the State Court case proceeded to trial as



Appx. 0838

scheduled, and the State Court determined that Serv Trust is the alter ego of the Debtor.  The State Court reduced its oral ruling from the January 3rd, 2023 trial to a written order entered on January 12th, 2023, and I will refer to that order as the alter ego order.

The alter ego order determined, and I quote, Serv Trust is, and as of November 18th, 2015, which was the petition date, was the alter ego of Gregory B. Myers pursuant to Maryland law, end quote.  The alter ego order further determined, and I quote, Serv Trust is a disregarded entity, being the alter ego of Mr. Myers, end quote.  The alter ego order entered judgment in favor of the King parties on the alter ego claim, which was Count II of a two count complaint and enter judgment in favor of the King parties on all claims set forth in Serv Trust's counterclaim.

Because it found that the Debtor is the alter ego of Serv Trust, the alter ego order further provided that all further proceedings in the case were stayed pursuant to Section 362 of the Bankruptcy Code, pending the removal of the State Court case to this Court, the granting of relief from stay, or the occurrence of other events terminating the automatic stay.  The stayed proceedings included the King parties' claim in Count I, seeking a declaratory judgment regarding the alleged redemption of Serv Trust's interest in Goldsboro, LLC, as well as Goldsboro, LLC's separate claim


www.escribers.net | 800-257-0885

Appx. 0839

against Serv Trust in the Goldsboro breach of contract case.

Goldsboro, LLC's claim against the Debtor in the Goldsboro breach of contract case had already been stayed at that point. The Trustee testified that the King parties later dismissed Count I of the complaint in the King declaratory judgment case. The Trustee maintains that, based on the alter ego order, all claims against Serv Trust must be construed as claims against the Debtor's bankruptcy estate, and Serv Trust assets are property of the Debtor's bankruptcy estate pursuant to Section 541-A, with those assets subject to administration by the Trustee as the legal representative of the bankruptcy estate under Section 323-A.

On February 7th, 2023, the Trustee filed a motion for approval of proposed compromise and settlement with the King parties, which the Court will refer to as the Settlement Procedures Motion. That motion appears at docket number 1005 in the Debtor's bankruptcy case. This motion sought approval of a procedural mechanism for resolving the remaining claims presented in the King declaratory judgment case regarding the asserted redemption of Serv Trust's interest in Goldsboro, LLC. Pursuant to an agreement by the parties and the Trustee, the King parties and the Trustee would jointly file a stipulation in the State Court case, pursuant to which the King parties would dismiss, without prejudice, the redemption claim against Serv Trust. In consideration of the dismissal,

the Trustee would agree to toll the statute of limitations applicable to the redemption claim nunc pro tunc to September 14th, 2017, the date the King parties filed the declaratory judgment case in the State Court.  And the King parties and the Trustee would endeavor in good faith to negotiate a resolution to the redemption claim.  And if negotiations were not successful, the King parties would refile the redemption claim as an adversary proceeding in this Court within 30 days.

In support of the settlement procedures motion, the Trustee argued that the proposed settlement procedures are in the best interest of the bankruptcy estate and all interested parties.  The Trustee said the proposed procedures would afford him time to become familiar with the redemption claim and potentially negotiate a resolution of the same, which could yield significant benefit and significant income for the bankruptcy estate.  In the event a resolution could not be reached, the Trustee reiterated that the redemption claim would be relitigated in this Court, which was the bankruptcy estate's preferred forum.

The Debtor filed a motion to strike the settlement procedures motion, and that motion to strike appears at docket number 1010 in the Debtor's main bankruptcy case.  The Court treated the motion to strike as an opposition to the settlement procedures motion.  In his motion to strike, the Debtor made many of the same arguments that he made in

opposition to the Trustee's pending settlement motion.  On December 11th, 2023, this Court entered a 21-page order at docket number 1029, overruling the Debtor's objections, granting the settlement procedures motion, and approving the settlement procedures proposed by the Trustee.

Subsequent settlement negotiations between the King parties and the Trustee failed to yield a settlement. Consequently, on January 11th, 2024, the King parties filed a complaint for declaratory relief against the Trustee in the instant adversary proceeding adversary number 24-00007.  The one count complaint requests that this Court declare Serv Trust to have waived its right to appoint an alternative appraiser under the Goldsboro, LLC operating agreement by not doing so on or before September 11th, 2017, and declare that Serv Trust's interest in Goldsboro, LLC has been fully redeemed.

As the adversary case progressed, the King plaintiffs and the Trustee resumed settlement negotiations, and this latest round of negotiations ultimately proved to be fruitful. The parties agreed to a compromise and settlement subject to notice to creditors and approval by the Court.  The proposed settlement includes four terms.  First, the King parties will pay to the Trustee, for the benefit of the Debtor's bankruptcy estate, the sum of $150,000 to redeem the entirety of Serv Trust's interest in Goldsboro, LLC and settle the instant



adversary proceeding. The King parties and the Trustee confirmed during this week's hearing that they are asking this Court to approve a redemption and transfer of only the bankruptcy estate's interest in Goldsboro, LLC.  They are not asking this Court to determine that the Debtor is the alter ego of Serv Trust, that Serv Trust assets are property of the Debtor's bankruptcy estate, or that the Trustee has the authority to administer the assets of Serv Trust.

The second term is that after the King parties pay $150,000 to the Trustee, the King parties and the Trustee will file a stipulation of dismissal in the instant adversary proceeding, dismissing all claims herein with prejudice. Third, the King parties will reimburse the Trustee for all reasonable legal fees and expenses that the Trustee incurs in connection with the litigation of any appeals taken by any party in the event that the Court grants the Trustee's settlement motion.  And fourth, the King parties will withdraw their three claims filed in the Debtor's main bankruptcy case at claim numbers 21, 22, and 23.  The King parties and the Trustee added this fourth term at the beginning of this week's hearing, so it is not included in the Trustee's settlement motion.

The standard for approval of the Trustee's settlement motion is well settled.  Bankruptcy rule 9019-A provides that on the Trustee's motion and after notice and a hearing, the


www.escribers.net | 800-257-0885

Appx. 0843

Court may approve a compromise or settlement.  To approve a settlement, the Court must consider four factors.  First, the probability of success in litigation.  Second, the likely difficulties in collection.  Third, the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it.  And fourth, the paramount interest of the creditors.  Those factors are set forth in in re: Essex Construction LLC 575 B.R. 648 at pages 652 to 53.  That is a decision of the Bankruptcy Court for the District of Maryland, 2017.  The factors are also set forth in in re: Bauman 181 B.R. 836 at page 843, also decided by the Bankruptcy Court for the District of Maryland in 1995.

It is not necessary for a bankruptcy court to conduct a mini trial or conclusively determine claims subject to a compromise.  In re: Concept Housing Inc., 951 F. 2nd 932 at 939 out of the Eighth Circuit, 1991, and in re: Ashford Hotels Limited, 226 B.R. 797 at 802 out of the Southern District of New York, 1998.  Nor is it necessary for the Court to find that the proposed settlement constitutes the best result obtainable.  In re: Final Analysis, Inc. 417 B.R. 332 at pages 341 to 41 out of the Bankruptcy Court for the District of Maryland, 2009.  Rather, the Court need only canvass the issues to determine that the proposed settlement does not fall below the lowest point of reasonableness.  That's from the Final Analysis case.  In doing so, the Court does not



substitute its judgment for that of the Trustee.  In re: Bates 211 B.R. 338 at page 343 out of the Bankruptcy Court for the District of Minnesota, 1997.

The Court has canvased the issues here as directed by Final Analysis, and concludes that the proposed settlement does not fall below the lowest point of reasonableness.  The Trustee has exercised sound business judgment in entering into the proposed settlement.  The proposed settlement is in the best interest of the bankruptcy estate and all parties-in-interest, and the proposed settlement should be approved under Bankruptcy rule 9019-A.  In the Trustee settlement motion and testimony, he provides ample support for the settlement.  He analyzed and evaluated the King parties' redemption claim and the bankruptcy's potential -- bankruptcy estate's potential defenses, including those defenses and arguments that previously were asserted by Serv Trust during the litigation of the State Court case.

Based on this analysis and evaluation, the Trustee concluded that the estate has a dim likelihood of prevailing on the merits should the settlement not be approved and the redemption claim be tried.  If the Trustee has to litigate the redemption claim, and the King parties are successful on the claim, Serv Trust's interest in Goldsboro, LLC will be declared to have been redeemed, rendering this asset completely worthless to the bankruptcy estate.  The proposed



compromise and settlement, by contrast, allows the Trustee to obtain a significant recovery from the bankruptcy estate while limiting the estate's exposure to the further expenditure of attorney's fees and litigation costs, which cannot be understated, given the Debtor's propensity for frivolous litigation.

The Trustee described the formation of Goldsboro, LLC by the King parties, the key terms of its operating agreement, and the relationship between Goldsboro, LLC and Serv Trust. The operating agreement provides for the King parties, as class A members of the LLC, to put up almost all of the money needed to acquire the property and fund its development, while affording Serv Trust, the sole class B member of the LLC, a period of three years to make the project profitable or risk having its sweat equity redeemed by the King parties. Goldsboro, LLC ultimately purchased the property on July 18th, 2013 for $1.35 million.

Goldsboro LLC's operating agreement provides that if all governmental approvals needed to subdivide the property into at least 19 townhouse dwellings are not obtained by July 18th, 2016, and the class A members of Goldsboro, LLC do not elect to sell the property, the class A members may have the property appraised in accordance with the terms of the operating agreement. If the appraised value of the property is is found to be less than the monies invested by the class A


www.escribers.net | 800-257-0885

Appx. 0846

members, the class A members, the King parties, may cause Goldsboro, LLC to redeem the interests of the class B member, Serv Trust, in consideration of the company's prior distributions or other payments to the class B member.

The necessary government approvals to permit the development of 19 townhomes on the property were not obtained by July 18th, 2016, or at any time thereafter.  The Debtor, meanwhile, had become more cash strapped as the project progressed, leading him to request that Mr. King contribute additional funds to Goldsboro, LLC, which could then be loaned to Serv Trust and in turn, to the Debtor personally to help him defray his ongoing personal expenses.  Mr. King agreed and authorized Goldsboro, LLC to loan hundreds of thousands of dollars to Serv Trust, which then forwarded the funds to the Debtor and his wife.

On May 18th, 2015, in connection with the loan, Serv Trust executed a promissory note in favor of Goldsboro, LLC, while the Debtor executed a guaranty agreement in which he guaranteed Serv Trust repayment of the loans made by LLC.  The Debtor did not list Goldsboro, LLC as an unsecured creditor when he filed his bankruptcy petition six months later, and this Court found that the Debtor made a knowing and fraudulent false oath justifying denial of the Debtor's Chapter 7 discharge under Section 727-A 4-A.  That decision is reported as in re: Myers 2018 Westlaw 4701387.  And again, that is a



decision out of this Court on September 28th, 2018.

I quote from that decision as follows:  It is not believable that Mr. Myers simply forgot to include his largest unsecured creditor in the first of several versions -- in the first several versions of his schedules, when he had executed a personal guarantee in favor of that creditor six months prior to the filing for bankruptcy, and was requesting advances from the creditor up to and after filing his petition, end quote.

In September 2016, the King parties offered to purchase Serv Trusts class B interests for $2 million less repayment of the outstanding loan obligations Serv Trust owed to Goldsboro, LLC.  These were the loans received by Serv Trust for the Debtor's personal benefit.  The King Parties offer was memorialized in a memorandum of understanding, which required that the offer be accepted by September 12th, 2016, and if accepted, that closing occur not later than October 7th, 2016.  According to the Trustee, Serv Trust did not accept the MOU by September 12th, 2016 and closing did not occur by October 7th, 2016.  This is supported by the emails between Mr. King and the Debtor in January 2017, when the Debtor emailed a copy of an executed MOU to Mr. King claiming that Serv Trust had timely accepted the buyout offer, and Mr. King rejected the tender of the executed MOU.

The King parties then began the process set forth in



the operating agreement to cause Goldsboro, LLC to redeem Serv Trust's interests, which included a notice and appraisal process.  In the subject adversary proceeding, the King parties claim that Goldsboro, LLC has redeemed Serv Trust's interests.  The Trustee concluded, based on his review and analysis, and his 42 years' experience as a Chapter 7 Trustee, that the King parties will likely prevail on their claim.  The Court finds this conclusion reasonable, given the facts here.

As advanced by the Trustee, it appears that the King parties properly invoked and followed the procedures set forth in the operating agreement.  He testified that the King parties obtained an appraisal, and that there was no valuation dispute because Serv Trust did not appoint an appraiser or participate in the appraisal process.  He also testified that he believed Serv Trust did not accept the buyout memorialized in the MOU, which expressly required that the offer be accepted by September 12th, 2016, and if accepted, that closing occur by October 7th, 2016.

Although the Debtor claims that he timely signed the MOU on September 12th, 2016 and mailed it -- emailed it to Mr. King -- or excuse me, and mailed it to Mr. King, the Debtor made no effort to draft closing documents and the emails between Mr. King and the Debtor in 2017 confirm that Mr. King did not receive an executed copy of the MOU by the due date.

Finally, and perhaps most significantly, the Trustee



Appx. 0849

www.escribers.net | 800-257-0885

Case 8:26-cv-02175-TDC Document 12-3 Filed 07/29/26 Page 372 of 453

testified that he does not have personal knowledge of what transpired among the King parties, Goldsboro, LLC, Serv Trust and the Debtor and therefore, would have to rely on the Debtor as a witness to prove the estate's defenses to the King parties' redemption claim. In fact, in cross-examining the Trustee, the Debtor appeared to consider it a victory that the Trustee admitted that he does not have personal knowledge and would have to rely on the Debtor's testimony to defend against the King parties' claim.

But as poignantly pointed out by the Trustee, the Debtor will have no credibility whatsoever as a witness with this Court or likely any other court. The Court need look no further than the Debtor's conduct during the hearing this week to conclude that it cannot trust a word that comes out of the Debtor's mouth. For example, notwithstanding entry of the alter ego order by the State Court, the Debtor repeatedly insisted that judgment has not been entered on the alter ego claim, even after the Court pointed him multiple times to the alter ego order, which is called a judgment in the title, and expressly states that judgment is entered on the alter ego claim. He still remains steadfast in his rantings that judgment has not been entered.

In addition, as stated earlier, in denying the Debtor a discharge, this Court found that the Debtor knowingly and fraudulently made a false oath, exhibited what the Court

escribers
www.escribers.net | 800-257-0885

Case 24-00007     Doc 77     Filed 07/15/25     Page 23 of 45

called a cavalier attitude toward his sworn schedules, and demonstrated what the Court described as, quote, a reckless disregard for the truth sufficient to deny him a discharge, end quote. How can the Court trust any sworn testimony by the Debtor after these findings?

The Debtor's credibility is also belied by his prior conflicting testimony. And the Court refers the parties to the United States Trustee's pre-trial statement and adversary number 17-00193 at docket number 56, page 3, where the United States Trustee states, and I quote, at the meeting of creditors, Mr. Myers testified that the monies he and Kelly received from Serv Trust were distributions for the benefit of their children, who are beneficiaries of Serv Trust. At his 2004 examination, the Debtor testified that the monies he and Kelly received from Serv Trust were loans, not distributions, end quote.

The Court also directs the parties to the Court's memorandum opinion in that same adversary proceeding at docket number 94, page 21, where the Court states, and I quote, similarly, the line item for the Bethesda property in the amount $3,860.96 included on his first amended Schedule J conflicted with his 341 meeting testimony that he was not making any post-petition payments on that property either, end quote.

Furthermore, the Debtor's dilatory and abusive



litigation tactics are well known to the Court and are discussed in great detail in this Court's 101-page memorandum opinion entered on December 11th, 2023, in the Chapter 11 case filed by the Debtor's wife.  As discussed in great detail in that opinion, the Debtor and his wife have exploited and subverted the bankruptcy process for more than what has now been ten years.  In that decision, the Court found that they have exploited, manipulated, and abused the bankruptcy process to hinder and delay creditors from enforcing their security interests or otherwise pursuing their claims, all while forcing those same creditors to incur substantial legal fees to protect their interests in various state and federal courts.

The Court found that the Debtor and his wife subverted and perverted the bankruptcy and litigation processes, and abused, harassed, and harmed innocent creditors and parties in interest.  The Court granted extraordinary relief in that decision, designed to protect creditors and other parties-in-interest from further bad faith conduct, obstruction, and harassment by the Debtor and his wife.  The Debtor's past conduct has destroyed any credibility he would otherwise have with this Court.

To put it bluntly, the Court does not believe a word that is spoken or written by the Debtor.  The record is replete with examples of the Debtor's inability and/or

unwillingness to be truthful. Moreover, the Debtor is belligerent, obnoxious, disrespectful, condescending, argumentative, aggressive, confrontational, antagonistic, pugnacious, combatant, and offensive. He mischaracterizes things, then demands that everyone accept his distorted and often outright false recitation of the facts and law.

His propensity for chaos and disrespect for the tribunal and parties is staggering. And he has demonstrated, on many occasions, his disgust and loathing for the Trustee. As both the Trustee and the Debtor pointed out, the Trustee does not have personal knowledge of the facts and therefore would have to rely on the Debtor's testimony. There is no way the Debtor will cooperate with the Trustee in defending against the redemption claim.

As discussed in great detail in this Court's December 11th, 2023 memorandum opinion entered in Ms. Kelly's case and in the June 11th, 2025 memorandum opinion entered in the Debtor's most recent failed bankruptcy case in the United States Bankruptcy Court for the District of Columbia, other courts have had similar experiences with the Debtor. The Trustee is effectively left unable to put on a defense to the King parties' claim. The only witness he has to rely on is the Debtor, and that is worse than having no witness at all. For all of these reasons, the Court concludes that the Trustee is unlikely to succeed if he were to litigate the redemption

escribers
www.escribers.net | 800-257-0885

Appx. 0853

claim with the King parties.

The Court will touch briefly, on the other factors for the Court to consider.  First, the likely difficulties in collection.  Even if the Trustee were to litigate the adversary proceeding and prevail at trial, there is no guarantee that the Trustee thereafter would be able to liquidate Serv Trust's interest in Goldsboro, LLC for more than what is being offered in the proposed settlement.  Because Goldsboro, LLC is a private company, there is no readily accessible market in which the Trustee could liquidate Serv Trust's interests.

Furthermore, Serv Trust's interest still would be subject to the King parties' ability to invoke the appraisal process to force a redemption.  In other words, even if, for example, the Trustee prevails on grounds that the King parties did not properly follow the appraisal procedures in 2017, the Trustee cannot prevent the King parties from triggering a new round of appraisals following a trial.  Given that the current online Redfin valuation of the property is approximately $2 million, it is clear that Serv Trust's interest in Goldsboro will be at serious risk of redemption, even if the Trustee is successful at trial.  This risk of redemption will make it extremely difficult, if not impossible, for the Trustee to market Serv Trust's interest to potential buyers.  The difficulty in collecting any award makes the proposed


www.escribers.net  |  800-257-0885

Appx. 0854

settlement the most attractive path to recovery for the Trustee.

Next, the Court must consider the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it. The Trustee negotiated, as part of the proposed settlement, that the King parties will pay his legal fees relating to any appeals of the settlement order. The Debtor has demonstrated that he will seek reconsideration of and appeal every decision by this Court, and the bankruptcy estate has incurred an extraordinary amount of administrative expenses defending against the Debtor's multitudinous and frivolous appeals, none of which have proven successful.

It is eminently reasonable for the Trustee to assume that the Debtor will appeal the Court's order approving the settlement. To mitigate the expense to the estate, the Trustee convinced the King parties to bear responsibility for reimbursing the Trustee for all legal fees incurred in connection with the Debtor's inevitable appeal. The value of this provision to the estate cannot be understated. It ensures that the bankruptcy estate will reap the full benefit of the $150,000 settlement payment to be made by the King parties, as the estate will be insulated from the cost of litigating any appeals related to the settlement. Finally, the proposed settlement is in the best interest of creditors. By the settlement, the Trustee is bringing a significant sum

into the estate to pay allowed claims.

The Debtor raised several objections to the proposed settlement, and many of those objections were rejected by the Court in connection with the approval of the settlement procedures motion. I will address them in no particular order, but I will start with the objection to which the Debtor dedicated most of his testimony and argument.

First, the Debtor argues that the alter ego order has no force or effect because it is not a final judgment under Maryland Rule 2-602. It is unclear to the Court whether the alter ego order is, in fact, a final judgment. In it, the State Court entered judgment in favor of the King parties on the alter ego claim in Count II, and entered judgment in favor of the king parties on all claims asserted in Serv Trust's counterclaim. The King parties later dismissed Count I.

If the King declaratory judgment case and the Goldsboro breach of contract case were administratively consolidated, then the alter ego order very likely is a final judgment. If the two cases were substantively consolidated or consolidated for all purposes, then the alter ego order may not be a final judgment. But regardless of whether the alter ego order is a final judgment, it is still a valid judgment that is entitled to full force and effect. The lack of finality does not render the judgment null and void. The lack of finality means only that the judgment may be revised by the


www.escribers.net | 800-257-0885

issuing court until entry of a final judgment adjudicating all of the claims by and against all of the parties, or the judgment may be reversed by an appellate court.

Maryland Rule 2-602-A says that an order that adjudicates fewer than all of the claims in an action is not a final judgment, and is subject to revision at any time before entry of a final judgment.  Section 12-101-F of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland defines final judgment as, quote, a judgment, decree, sentence, order, determination, decision, or other action by a court from which an appeal may be taken, end quote.

As stated less than two weeks ago by the Appellate Court of Maryland, the purpose of Maryland Rule 2-602 is to prevent piecemeal appeals and the interruption of ongoing judicial proceedings.  That comes from Haywood v Henry et al. 2025 Westlaw 1752308 at page 7.  It was decided on June 25th, 2025, and cites to Sigma Reproductive Health Center v. State 297 Maryland 660 at page 665, a decision from 1983.

There is nothing to suggest that the purpose of the rule on final judgments is to determine when an order becomes effective.  In contrast, Maryland Rule 2-601 A-4 actually provides that a judgment is effective when it is entered as provided in Maryland Rule 2-601-B.  Again, Maryland Rule 2-601 A-4 provides that a judgment is effective when it is entered. Maryland Rule 2-601 B-2 provides, and I quote, the clerk shall



escribers

www.escribers.net  |  800-257-0885

Appx. 0857

enter a judgment by making an entry of it on the docket of the electronic case management system used by that Court, along with such description of the judgment as the clerk deems appropriate, end quote.

Maryland Rule 2-601-D provides, and I quote, the date of the judgment is the date that the clerk enters the judgment on the electronic case management system docket, end quote. Applying Maryland Rule 2-601, the alter ego order is a judgment that was entered when it was docketed. That is January 12th, 2023. And became effective on that date. Nothing in Maryland Rule 2-601 limits its application to final judgments. Therefore, regardless of whether the alter ego order is a final order, it is still a valid and effective order unless and until it is revised by the State Court or reversed on appeal.

I want to be clear, even if this were not so, it would not impact the Court's approval of the proposed settlement because the Trustee is settling and transferring the bankruptcy estate's rights and interests with respect to Goldsboro, LLC, whatever those rights and interests may be. At the outset of the Court's ruling, the Court stated that it is not required to conduct a mini trial or conclusively determine the claims that are the subject of the compromise.

The sole issue for the Court is whether the proposed settlement falls below the lowest point of reasonableness. In



doing so, the Court does not substitute its judgment for that of the Trustee.  The Court is not required to determine the validity and merits of the claims, and the Court is not required to define the rights and interests being settled and/or transferred.  The Court is only approving a settlement and/or transfer with regard to the bankruptcy estate's rights and interests as to Goldsboro, LLC, whatever those rights and interests may be.

The Debtor's second argument is that the Court is violating the Rooker-Feldman Doctrine by considering a settlement premised on the alter ego order, but then he argues that the Court should not apply the alter ego order because it was incorrectly decided, and the State Court did not have jurisdiction to determine the alter ego claim.  He has vacillated between these diametrically opposed arguments numerous times.  The Court is not reviewing the alter ego order, and the Court is not relitigating issues decided by the State Court.  The Court is simply applying the State Court's order because it is a valid order and a valid determination of the party's rights.

It is unclear to the Court whether the Debtor previously raised the argument that the State Court did not have jurisdiction to determine the alter ego claim in the State Court case, but there is nothing in the record to support this argument.  The Debtor also argues that the State



www.escribers.net | 800-257-0885

Appx. 0859

Court incorrectly and improperly decided the alter ego claim, because Judge Lippe determined the Debtor's rights and Serv Trust in her September 28th, 2018 memorandum opinion denying him a discharge.  This is belied by the fact that she entered an order abstaining from determining the alter ego claim four months later, on January 30th, 2019, in the Goldsboro adversary proceeding.

The Debtor also argues that the alter ego case was not properly remanded by the bankruptcy court for the Middle District of Florida to the State Court.  That the Florida bankruptcy court stayed the litigation and therefore that the State Court did not have jurisdiction to determine the alter ego claim and enter the alter ego order.  There is no evidence in the record whatsoever to support any of these contentions.

In addition, the Debtor argues that this Court does not have jurisdiction to approve the proposed settlement because the Court abstained.  Once again, he mischaracterizes the facts.  The Court abstained with regard to whether the Debtor is the alter ego of Serv Trust and whether Serv Trust's, assets or property of the bankruptcy estate.  The Court is not deciding those issues today, and those issues have been decided already by the State Court.  Today, the Court is deciding whether a settlement between the Trustee, as representative of the bankruptcy estate and the King parties, should be approved.  The Court has not abstained with regard



Appx. 0860

Case 8:26-cv-02175-TDC    Document 12-3    Filed 07/29/26    Page 383 of 453

to that issue and has jurisdiction to decide it.

The Debtor's third argument is that Serv Trust assets cannot be property of his bankruptcy estate because his bankruptcy estate was constituted on November 18th, 2015, when he filed his bankruptcy petition.  He claims that anything that occurred after the petition date does not constitute property of his bankruptcy estate, and further argues that the State Court cannot order relief nunc pro tunc.  Once again, the Debtor misinterprets, misapplies, and mischaracterizes the effect of the alter ego order.

The State Court determined on January 12th, 2023, that Serv Trust is, and as of November 18th, 2025, the petition date, was the alter ego of the Debtor.  The State Court did not order relief nunc pro tunc.  It simply determined the Debtor's rights and interests with respect to Serv Trust as of a specified date.  His argument that a court cannot determine a party's rights as of a past date is nonsensical.

The Debtor's fourth argument is that approval of the settlement is not a core proceeding.  The Debtor is incorrect, and the Court rejected this argument when the Debtor raised it in opposition to the settlement procedures motion.  Approval of a settlement under Bankruptcy Rule 9019-A is a court proceeding under several paragraphs of Section 157-B-2 of Title 28 of the United States Code, including 2-A, which

escribers

www.escribers.net | 800-257-0885

Appx. 0861

addresses matters concerning the administration of the estate, 2-C, which addresses counterclaims by the estate against persons filing claims against the estate, 2-E, which addresses orders to turn over property of the estate, and 2-O, which addresses other proceedings affecting liquidation of assets of the estate.

The Court refers the parties to Wheatley v Wood in re: Wood 2021 Westlaw 3640612, which concluded that a motion to approve a settlement under Bankruptcy Rule 9019 is a court proceeding, and the Court has authority to enter a final order under 28 U.S.C. Section 157-B 2-A and O.  The Court also refers the parties to in re: Junk 566 B.R. 897, at page 904, a decision issued by the Bankruptcy Court for the Southern District of Ohio in 2017, in which that court concluded that bankruptcy courts have Constitutional authority to enter final orders approving settlements under Bankruptcy Rule 9019.  And finally, the Court refers the parties to in re: Full Spectrum Management, LLC, 621 B.R. 421 at page 424, a decision of the bankruptcy court for the Western District of Michigan 2020, which has the same holding as in re: Junk.

The fifth argument advanced by the Debtor is that the beneficiaries of Serv Trust are required to be joined as defendants in this matter.  Again, the Debtor is incorrect, and the Court rejected this argument when the Debtor raised it in opposition to the settlement procedures motion.  The



beneficiaries of Serv Trust are no longer beneficiaries of Serv Trust because pursuant to the alter ego order, Serv Trust is a disregarded entity, being the alter ego of the Debtor. Therefore, the named beneficiaries are not required to be joined as defendants in an adversary proceeding or named as respondents in any contested matter.

The time for the named beneficiaries to assert any rights to the assets of Serv Trust, or to otherwise intervene in the State Court case was prior to the State Court's determination that Serv Trust is the alter ego of the Debtor. Moreover, Serv Trust need not be in bankruptcy, and the fact that the Debtor was not a settlor or beneficiary is irrelevant, because Serv Trust has been determined to be the Debtor's alter ego, and Serv Trust's assets have been determined to be subject to administration by the Trustee as a legal representative of the bankruptcy estate under Section 323-A.

The Debtor's sixth argument is that the King parties do not have standing to appear in this Court. Again, the Debtor is incorrect, and the Court rejected this argument when the Debtor raised it in opposition to the settlement procedures motion. The Trustee filed the settlement motion to resolve claims and disputes between the bankruptcy estate and the King parties. Standing of the King parties is wholly irrelevant to the settlement motion. The Trustee, as the



www.escribers.net | 800-257-0885

Appx. 0863

administrator of the Debtor's bankruptcy estate, has standing to settle any claim held by or against the bankruptcy estate.

The Court refers the parties to Dimeglio v. Haines 1999 Westlaw 1489197 at page 2, a decision of the United States District Court for the District of Maryland on December 28th, 1999.  In that case, the Court held that the bankruptcy Trustee succeeds to all causes of action held by the Debtor as of the petition date, and only the Trustee has authority to settle or release such claims.  Nevertheless, the King parties became potential creditors of the Debtor upon entry of the alter ego order long after the claim's bar date.  Therefore, the King parties have standing to assert any claims against the Debtor in this Court, and are irrefutably parties and interest to this proceeding.

The Debtor's seventh argument is that any claims filed by the King parties are untimely because they were filed after the claim's bar date.  For the same reasons stated with regard to the last objection, the King parties became potential creditors of the Debtor only after entry of the alter ego order, which was years after the expiration of the claim's bar date, and the Court gave them an opportunity to assert their claims against the bankruptcy estate.

The Debtor's eighth argument is that the King parties are estopped from asserting any claims in this bankruptcy proceeding, because the bankruptcy court in the Middle

District of Florida sustained the Debtor's objection to their claims in his bankruptcy case there.  However, the King parties asserted those claims before the State Court issued the alter ego order, which gave rise to the King parties' claims asserted in this bankruptcy proceeding.  Again, the Court rejected this argument when the Debtor raised it in opposition to the settlement procedures motion.

The Debtors ninth argument is that the King parties do not have a monetary claim, and that their proofs of claim only assert equitable rights.  Again, the Debtor is incorrect. The proofs of claim assert claims based on what the King parties describe as equitable and statutory claims as set forth in the adversary proceeding.  The complaint in the adversary proceeding asserts a claim for declaratory relief. That is a claim.  Section 105-A -- excuse me, 105 -- 1015 of the Bankruptcy Code says that the word claim means right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or a right to equitable remedy for breach of performance if such breach gives rise to a right to payment whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured and matured, disputed, undisputed, secured or unsecured.

It is well settled that the term claim is to be



escribers

www.escribers.net | 800-257-0885

Appx. 0865

broadly interpreted. In Johnson v. Home State Bank, 501 US 78, at page 83, the United -- decided in 1991, the United States Supreme Court stated, and I quote, Congress intended to adopt the broadest available definition of claim, end quote. It cannot be reasonably disputed that the King parties have a claim against the bankruptcy estate, and that this Court has jurisdiction over the allowance and disallowance of claims.

The Debtor's 10th argument is that Mr. Verstandig, counsel for the King parties, has a conflict of interest. This issue was not properly before the Court at this time. The Debtor waited until after the close of evidence on Tuesday, July 1st, the second day of the hearing on the Trustee's settlement motion, to file a motion to disqualify Mr. Verstandig. As the Court has told the Debtor numerous times, it will not consider pleadings filed on the eve of a hearing. It should be obvious that the Court will also not consider a pleading that is filed after the close of evidence.

In addition, the Debtor filed a handful of other motions after business hours on Friday, June 27th, which was the last business day before the hearing on the Trustee's settlement motion began and just minutes before the hearing began on Monday, June 30th. The Court understands that the Debtor even filed more pleadings in person this morning, even though he represented to the Court that he was not available today because he was going to be in Florida for a hearing.

The Court also understands that that the Debtor has insisted that the Court read them before giving its ruling. The Court hasn't and the Court won't. The Court has told the Debtor time and again it will not consider, prior to a hearing, pleadings filed on the eve of that hearing. Yet, he still waits until minutes prior to a hearing, or even in the middle or at the end of a hearing, to file pleadings that he could have filed days, weeks, months, or even years ago. The Court will address these motions in the ordinary course, after the Court has had an opportunity to review them, and if appropriate, parties and interests have had an opportunity to object.

The Court has a final comment and a question regarding the Debtor's objections to the proposed settlement. First, the comment. The procedural posture of this adversary proceeding is exactly what was contemplated by the Court and the parties when the Court entered its abstention order on January 30th, 2019, six and a half years ago, in the Goldsboro adversary proceeding. The abstention order specifically provided that the State Court could determine whether Serv Trust is the alter ego of the Debtor in connection with the King declaratory judgment case, and if such a determination was made, then the parties could come back to the bankruptcy court to determine a course of action.

The abstention order further stated, and I quote, if

escribers
www.escribers.net | 800-257-0885

Appx. 0867

the State Court determines that the automatic stay is applicable based on the relationship between the Debtor and Serv Trust, then the matter will be stayed and the parties can come back to this Court to figure out how to proceed, end quote.  That's at page 4 of the abstention order.

This is exactly what has happened.  The State Court determined that Serv Trust is the alter ego of the Debtor.  So the parties are now back before this Court seeking authority to resolve the remaining redemption claim as contemplated by the abstention order.  It has been a long road, and we are finally at the point at which the dispute with the King parties regarding the redemption claim, which the Court understands to be the final matter for administration by the Trustee, is being resolved.

And this leads to the Court's question.  Why is the Debtor not embracing this settlement?  The Court denied him a discharge, so he is going to remain personally liable for any claims that exist.  Serv Trust and the Debtor have no viable defense to the redemption claim, and the Trustee negotiated a settlement that will bring $150,000 into the estate, and the estate will not have to bear the financial burden of the inevitable appeal by the Debtor.  This is an extraordinary result for the bankruptcy estate.  The Debtor stands to benefit greatly from this settlement.

Resolution of the dispute with the King parties



brings us all one giant step closer to completing the administration of the bankruptcy estate.  Normally, the Court would say that it is astounded that someone is opposing this settlement, but it is par for the course with this Debtor.  He has opposed most, if not all, of the Trustee's actions in this case, and he has appealed most, if not all, of this Court's orders.  For reasons that are unclear to the Court, it is obvious that the Debtor's sole goal is to remain in bankruptcy as long as possible, and to inflict as much pain and hardship on his creditors and the Trustee as possible.

As previously discussed, the Court is not required to conduct a mini trial or find that the proposed settlement constitutes the best result obtainable.  Even so the Court did in fact conduct a full two-day evidentiary hearing and fines, as a matter of fact, that the proposed settlement is indeed the best possible result for the bankruptcy estate and creditors.  The Trustee has exercised good business judgment in entering into the proposed settlement, and the Court will not substitute its judgment for that of the Trustee.

For all of these reasons, the Court concludes that the overwhelming evidence is that the proposed settlement does not fall below the lowest point of reasonableness.  The Trustee has exercised sound business judgment in entering into the settlement.  The proposed settlement is in the best interest of the bankruptcy estate, and all parties-in-

Case 8:26-cv-02175-TDC    Document 12-3    Filed 07/29/26    Page 392 of 453

interest, including the Debtor, and the proposed settlement, should be approved under Bankruptcy Rule 9019-A.

To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such.  And to the extent of the -- any of the Court's conclusions of law constitute findings of fact, they are so adopted.  The Court will have a transcript of its ruling prepared and docketed for the convenience of the parties.

Mr. Mastro, the Court would like you to upload a proposed order granting the settlement motion and approving the settlement today simply saying --

MR. MASTRO:  Yes, Your Honor.

THE COURT:  -- for the reasons stated on the record at the hearing held today, the motion is granted, the settlement is approved and include the four terms.  Again, the four terms are as follows:  First, the King parties will pay to the Trustee, for the benefit of the Debtor's bankruptcy estate, the sum of $150,000 to redeem the entirety of the bankruptcy estate's interest in Goldsboro, LLC, and settle the instant adversary proceeding.  Second, after the King parties pay $150,000 to the Trustee, the King parties and the Trustee will file a stipulation of dismissal in the instant adversary proceeding, dismissing all claims therein with prejudice.

Third, the King parties will reimburse the Trustee for all reasonable legal fees and expenses that the Trustee



incurs in connection with the litigation of any appeals taken by any party in the event that the Court grants the Trustee's settlement motion.  And fourth, the King parties three claims filed in the main bankruptcy case at claim numbers 21, 22, and 23 are deemed withdrawn effective when the order becomes final and non-appealable.

As part of the settlement, the King parties are withdrawing their claims, claim numbers 21, 22, and 23. Therefore, the Court need not consider the Debtor's objections to those claims, and his objections to those claims are overruled as moot.  That is the ruling of the Court.

MR. SCHLOSSBERG:  Your Honor, very quick question. The obligation of the King parties to bear the expense of any appeals, I believe, was contemplated among the King parties' counsel and counsel for the Trustee to include any proceedings on motions for reconsideration.

May we so amend the order to that effect?

THE COURT:  You may.

MR. SCHLOSSBERG:  Thank you.

THE COURT:  Any questions regarding the Court's ruling, Mr. Mastro, since you're drafting the order?

MR. MASTRO:  No, Your Honor.

THE COURT:  All right.  Thank you.

MR. MASTRO:  Understood.

MR. SCHLOSSBERG:  Thank you.



THE COURT:  The Court appreciates everyone's time. And again, the Court sincerely apologizes for the technology fail earlier today.  Again, the Court will prepare -- we'll have prepared a transcript of its ruling, and the Court will docket it on the case docket as soon as it is ready.  Thank you all for your time.

MR. SCHLOSSBERG:  Thank you.

MR. VERSTANDIG:  Thank you.

MR. MASTRO:  Thank you.

MR. SCHLOSSBERG:  Good weekend.

THE CLERK:  Court is now adjourned.

(Whereupon these proceedings were concluded.)

escribers
www.escribers.net | 800-257-0885

Appx. 0872

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

July 13, 2025

_____          _____

DIANA DODSON                              DATE

TTA-Certified Digital Legal Transcriber CDLT-134

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

GREGORY B. MYERS,

    Appellant,

    v.

ROGER SCHLOSSBERG, BRIAN KING,
CRISTINA AND BRIAN KING
CHILDREN'S TRUST and
CRISTINA KING,

    Appellees.

Civil Action No. 25-2042-TDC

---

GREGORY B. MYERS,

    Appellant,

    v.

ROGER SCHLOSSBERG, BRIAN KING,
CRISTINA AND BRIAN KING
CHILDREN'S TRUST and
CRISTINA KING,

    Appellees.

Civil Action Nos. 25-2103-TDC
                25-2337-TDC
                25-2635-TDC

---

GREGORY B. MYERS,

    Appellant,

    v.

ROGER SCHLOSSBERG, BRIAN KING,
CRISTINA KING and
CRISTINA AND BRIAN KING
CHILDREN'S TRUST,

    Appellees.

Civil Action No. 25-2338-TDC

## MEMORANDUM OPINION

Appx. 0874

Appellant Gregory B. Myers has appealed 13 orders of the United States Bankruptcy Court for the District of Maryland across five different appeals, Nos. 25-2042-TDC, 25-2103-TDC, 25-2337-TDC, 25-2338-TDC, and 25-2635-TDC. Having reviewed the submitted materials, the Court finds that no hearing is necessary because the facts and legal arguments have been adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr. P. 8019(b). For the reasons set forth below, Myers's Motion to Supplement the Record will be GRANTED, Myers's Motion to Compel will be DENIED, Myers's appeal of the bankruptcy court's orders in No. 25-2042-TDC will be DISMISSED, and the bankruptcy court's orders in the remaining appeals will be AFFIRMED.

## BACKGROUND

### I. Goldsboro LLC

In late 2012, Appellant-Debtor Gregory B. Myers located a parcel of real property located at 6789 Goldsboro Road in Bethesda, Maryland ("the Property") that he believed to be suitable for the development of townhomes. Myers decided to approach Appellee Brian King about financing the purchase of the Property, which led to the establishment of a limited liability company ("LLC"), 6789 Goldsboro LLC ("Goldsboro LLC"). Specifically, the members of Goldsboro LLC consisted of three Class A members, Brian King, Cristina King, and the Cristina and Brian King Children's Trust (collectively, "the King Parties"), and one Class B member, Serv Trust, which was a trust created by Myers's mother for the benefit of Myers's children and of which Myers was a co-trustee. According to Goldsboro LLC's Operating Agreement ("the Operating Agreement"), the King Parties provided almost all of the funds needed to purchase the Property, and Serv Trust was provided a period of three years in which to make the project profitable, or Serv Trust's interest in the Property could be redeemed by the King Parties. In particular, the Operating Agreement

2

Appx. 0875

stated that if government approvals needed to subdivide the property into at least 19 townhomes were not obtained by July 18, 2016, the King Parties could have the Property appraised. If the appraised value of the Property fell below the King Parties' total investment in the Property, the King Parties could then redeem Serv Trust's interest in Goldsboro LLC in that they could claim Serv Trust's interest in the Property in exchange for the value of payments and distributions previously paid to Serv Trust. On July 18, 2013, Goldsboro LLC purchased the Property for $1.35 million. Myers was named as manager of Goldsboro LLC.

The necessary government approvals to permit the development of 19 townhomes on the Property were never obtained. However, as the project progressed, Myers convinced Brian King to contribute additional funds to Goldsboro LLC, which could then be loaned to Serv Trust or to Myers. In September 2016, the King Parties offered to purchase Serv Trust's shares in Goldsboro LLC for $2 million, reduced by the amount needed to repay Serv Trust's outstanding loan obligations to Goldsboro LLC. Serv Trust was required to accept the offer by September 12, 2016 but did not do so.

In January 2017, after the local government denied the proposal to develop townhomes on the Property, Myers emailed Brian King an executed Memorandum of Understanding in which he claimed that Serv Trust had timely accepted the King Parties' offer. Brian King rejected the untimely acceptance and terminated Myers as the manager of Goldsboro LLC.

Pursuant to the terms of the Operating Agreement, the King Parties had the Property appraised and determined that it was worth between $1 million and $1.325 million, below the approximately $3 million the King Parties had invested in the Property. As a result, pursuant to the Operating Agreement, the King Parties could redeem, or claim, Serv Trust's ownership interest in Goldsboro LLC without additional payments to Serv Trust.

3

## II.    Bankruptcy and Related Proceedings

Meanwhile, on November 18, 2015, Myers filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Maryland ("the bankruptcy court"). On February 22, 2017, Myers's bankruptcy was converted to a Chapter 7 bankruptcy, and the United States Trustee ("the Trustee") was appointed in relation to that proceeding.

On September 14, 2017, the King Parties filed a Complaint in the Circuit Court for Montgomery County, Maryland ("the State Court Case") seeking a declaratory judgment that Serv Trust's interest in Goldsboro LLC had been redeemed pursuant to the terms of the Operating Agreement ("the Redemption Claim").

On October 29, 2018, Goldsboro LLC commenced an adversary proceeding in the bankruptcy court (Bankr. No. 18-00407) against Myers, Serv Trust, and the Trustee, in which it sought a declaratory judgment that Serv Trust was the alter ego of Myers and that, as such, Serv Trust's assets and liabilities were subject to administration by the Trustee. Goldsboro LLC also sought an order staying the State Court Case. On January 30, 2019, the bankruptcy court entered an order abstaining from exercising jurisdiction over the claims in the adversary proceeding after determining that the State Court Case could result in a finding of whether Serv Trust was the alter ego of Myers, and if such a finding was made, the parties could return to the bankruptcy court for further proceedings. After the entry of the bankruptcy court's abstention order, the King Parties filed an amended complaint in the State Court Case seeking a declaratory judgment that Serv Trust was Myers's alter ego.

After a trial in the State Court Case on January 3, 2023, the court determined that Serv Trust was the alter ego of Myers and entered an order reflecting that judgment on January 12, 2023 ("the Alter Ego Order"). Specifically, the Alter Ego Order found that Serv Trust was Myers's alter

4

ego as of November 18, 2015, the day on which Myers filed his original bankruptcy petition, that Serv Trust was therefore a disregarded entity, and that because Serv Trust was Myers's alter ego, any remaining proceedings in the State Court Case were subject to the automatic stay provision in 11 U.S.C. § 362(a), including those relating to the Redemption Claim.

Upon the entry of the Alter Ego Order, the Trustee took the position that all of Serv Trust's assets became part of Myers's bankruptcy estate as a matter of law. As a result, the King Parties and the Trustee entered into negotiations over how to resolve the King Parties' Redemption Claim against Serv Trust in the State Court Case. On February 7, 2023, the King Parties and the Trustee filed in the bankruptcy court a Notice of a Proposed Compromise and Settlement which proposed that the King Parties would dismiss the Redemption Claim in the State Court Case in exchange for the Trustee's agreement to a tolling of the applicable statute of limitations. The parties further agreed to negotiate for 30 days at which point if there was no resolution of the Redemption Claim, the King Parties would refile the Redemption Claim as an adversary proceeding in Myers's bankruptcy case. On December 11, 2023, the bankruptcy court issued an order approving the Proposed Compromise and Settlement. Approximately 18 months later, on June 26, 2025, Myers appealed this order to this Court in No. 25-2042-TDC. Meanwhile, when the negotiations did not result in a settlement, the King Parties filed proofs of claim in Myers's bankruptcy case and refiled the Redemption Claim as an adversary proceeding (Bankr. No. 24-00007) on January 11, 2024 ("the Adversary Proceeding").

During the Adversary Proceeding, the King Parties and the Trustee resumed negotiations, and on December 30, 2024, the Trustee filed a "Notice of Trustee's Proposed Compromise and Settlement with King Plaintiffs." Appellee's App'x ("A.A.") 45, No. 25-2103-TDC, ECF No. 29-1. Under the terms of the proposed settlement, the King Parties would pay to the Trustee, for the

5

benefit of the bankruptcy estate, $150,000 in order to gain control of Serv Trust's interest in Goldsboro LLC and resolve the Redemption Claim in the Adversary Proceeding. Once the payment was made, the parties would dismiss the claims in the Adversary Proceeding, and the King Parties would reimburse the Trustee for attorney's fees and expenses incurred in connection with any appeals taken from the bankruptcy court's approval of the settlement.

On January 21, 2025, Myers filed objections to the proposed settlement, and on June 26, 2025, he filed a Notice of Appeal in relation to seven orders issued by the bankruptcy court in the Adversary Proceeding, including: (1) an Order to Show Cause Why the Complaint Should Not be Dismissed for Want of Prosecution; (2) an Order Granting the Stipulation and Motion to Extend Time; (3) the Scheduling Order; (4) a Memorandum to the Parties; (5) a Notice of an Evidentiary Hearing; (6) an Order Dissolving the Show Cause Order After Response; and (7) a second Notice of an Evidentiary Hearing. This appeal was assigned No. 25-2103-TDC.

On June 30 and July 1, 2025, in the Adversary Proceeding, the bankruptcy court held a two-day evidentiary hearing regarding the proposed settlement, in which the King Parties, the Trustee, and Myers all participated. On July 3, 2025, the bankruptcy court issued an oral ruling, which it later memorialized in a written order, approving the proposed settlement between the King Parties and the Trustee ("the Settlement Order"). That same day, the bankruptcy court issued an Order Overruling Claim Objections as Moot in relation to Myers's objections to the King Parties' proofs of claim. On July 17, 2025, Myers filed a Notice of Appeal through which he initiated an appeal of the Settlement Order, which was assigned No. 25-2337-TDC. That same day, Myers filed a second Notice of Appeal through which he initiated an appeal of the Order Overruling Claim Objections as Moot, which was assigned No. 25-2338-TDC.

Appx. 0879

On July 16, 2025, in the Adversary Proceeding, Myers filed an Emergency Motion for a Stay Pending Appeal and a Motion to Shorten the Time to Respond to the Emergency Motion to Stay Pending Appeal. The bankruptcy court denied both Motions on July 18, 2025. On August 1, 2025, Myers filed a Notice of Appeal relating to the denial of these motions, which was assigned No. 25-2635-TDC.

On October 23, 2025, this Court issued an order consolidating Nos. 25-2103-TDC, 25-2337-TDC, and 25-2635-TDC for purposes of appeal ("the Consolidated Appeals"). On January 8, 2026, Myers filed a Motion to Compel the Production of the Executed Settlement Agreement, and on January 9, 2026, Myers filed a Motion to Supplement the Record with certain hearing transcripts. Finally, Myers filed an Emergency Motion for a Stay Pending Appeal on February 19, 2026, which the Court denied on April 29, 2026.

## DISCUSSION

The Court has before it three different bankruptcy appeals advanced by Myers: No. 25-2042-TDC; the Consolidated Appeals in Nos. 25-2103-TDC, 25-2337-TDC, and 25-2635-TDC; and No. 25-2338-TDC. Because these appeals all arise out of Myers's bankruptcy proceedings and all relate to the same general matters in which the King Parties are the adverse party to Myers, the Court will address them in the same ruling.

## I.  Standard of Review

On an appeal from the bankruptcy court, this Court reviews legal conclusions *de novo*, factual findings for clear error, and discretionary decisions for abuse of discretion. *Copley v. United States*, 959 F.3d 118, 121 (4th Cir. 2020); *In re Harford Sands, Inc.*, 372 F.3d 637, 639 (4th Cir. 2004).

7

Appx. 0880

## II.     Procedural Motions

Before addressing the appeals, the Court considers and resolves certain procedural motions filed by Myers.

### A.     Motion to Supplement the Record

Myers has filed an unopposed Motion to Supplement the Record through which he seeks to supplement the appellate record with transcripts of the bankruptcy court's June 30 and July 1, 2025 hearing on the Settlement Order, which were unavailable when Myers made his initial designation of record. Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8009 permits either party to correct an omission or misstatement in the record by filing a supplemental record with the court in which the appeal is pending. *See* Fed. R. Bankr. P. 8009(e)(2)(C). Accordingly, the Court will grant this Motion. In addition, where Myers included the transcript of the bankruptcy court's oral ruling approving the Settlement Order as Appendix F-1 to his opening brief, but that transcript was not included in Myers's original designation of record, the Court will construe this Motion as including a request to supplement the record with the transcript included in Appendix F-1 and will grant that request.

### B.     Motion to Compel

Myers has also filed a Motion to Compel the Production of the Executed Settlement Agreement, in which he requests that the Court require the Trustee to produce the executed settlement agreement approved in the Settlement Order, or to certify that no agreement was ever executed. Appellees oppose this Motion and argue that Myers failed to raise the issue of the lack of a signed settlement agreement before the bankruptcy court and that the production of any written settlement agreement is immaterial to the appeal because Bankruptcy Rule 9019 does not require a written settlement agreement.

8

Appx. 0881

Where this Court's review of appeals from the bankruptcy court is generally limited to the record before the bankruptcy court, and it is undisputed that no such written settlement agreement was presented to the bankruptcy court, it is neither necessary nor proper to include extra-record evidence in the record before this Court. *See In re CPDC, Inc.*, 337 F.3d 436, 443 (5th Cir. 2003) (holding that the Bankruptcy Rules do not "permit items to be added to the record on appeal to the district court if they were not part of the record before the bankruptcy court"); *In re Bartlett*, 92 B.R. 142, 143 (E.D.N.C. 1988) ("[I]n reviewing a bankruptcy case on appeal, a district court can consider only that evidence which was presented before the bankruptcy court and made a part of the record."). Moreover, as discussed below, the Court concludes that a written settlement agreement is not required for a bankruptcy court to approve a settlement pursuant to Bankruptcy Rule 9019, so the production and inclusion of any such written settlement agreement would be immaterial to the Court's ruling on the appeals. *See infra* part IV.B.2. Accordingly, Myers's Motion to Compel will be denied.

## III.    No. 25-2042-TDC

In No. 25-2042-TDC, Myers seeks review of two orders of the bankruptcy court: (1) the December 11, 2023 Order Denying the Debtor's Motion to Strike the Trustee's Motion for Approval of the Proposed Compromise and Settlement with the King Parties; and (2) the December 11, 2023 Order Granting the Trustee's Motion for Approval of the Proposed Compromise and Settlement with the King Parties. Rather than filing an appellant's brief, Myers has filed a Notice entitled "Appellant Gregory B. Myers's Notice of Overlapping Issues and Cross-Application of Opening Brief," in which he cross-references the arguments made in his opening brief filed in the Consolidated Appeals. Notice at 1–2, No. 25-2042-TDC, ECF No. 18. In No. 25-2042-TDC, Appellees have filed a Motion to Dismiss the Appeal in which they argue that the

Appx. 0882

Court lacks jurisdiction over the appeal because Myers's Notice of Appeal was untimely filed, and because this appeal is Myers's second attempt to obtain appellate review over the bankruptcy court orders at issue. Myers has not filed any brief in opposition to Appellees' Motion to Dismiss.

A party seeking to appeal an order of the bankruptcy court must file a notice of appeal with the Clerk of the bankruptcy court within 14 days of the entry of the order to be appealed. *See* Fed. R. Bankr. P. 8002(a)(1). The issue of whether an appellant has timely filed a notice of appeal in a bankruptcy appeal is jurisdictional. *See In re Berman-Smith*, 737 F.3d 997, 1003 (5th Cir. 2013); *In re Myers*, No. 20-2309, 2024 WL 2764717, at *1 (4th Cir. May 30, 2024).

Here, the two bankruptcy court orders at issue in No. 25-2042-TDC were both entered on December 11, 2023, so the deadline to file a notice of appeal period was 14 days after that date, or on December 25, 2023. Myers, however, filed his Notice of Appeal on June 26, 2025, over 18 months after the entry of the appealed orders. Therefore, Myers's Notice of Appeal is untimely, and the Court lacks jurisdiction to review the underlying orders. Accordingly, the Court will grant the Motion to Dismiss and will dismiss No. 25-2042-TDC.

## IV. Consolidated Appeals (Nos. 25-2103-TDC, 25-2337-TDC, and 25-2635-TDC)

In the Consolidated Appeals, Myers seeks review of 10 orders of the bankruptcy court in relation to the Adversary Proceeding involving the King Parties: (1) the Order to Show Cause Why the Complaint Should Not be Dismissed for Want of Prosecution; (2) the Order Granting the Stipulation and Motion to Extend Time; (3) the Scheduling Order; (4) a Memorandum to the Parties; (5) a Notice of an Evidentiary Hearing; (6) the Order Dissolving the Show Cause Order After Response; (7) a second Notice of an Evidentiary Hearing; (8) the Settlement Order; (9) the Order Denying the Emergency Motion for a Stay Pending Appeal; and (10) the Order Denying the Motion to Shorten the Time to Respond to the Emergency Motion for a Stay Pending Appeal.

10

Appx. 0883

## A.    Abandoned Arguments

In his opening brief, Myers's arguments relate only to the reasons that the bankruptcy court erred in issuing the Settlement Order, and he asserts no arguments relating to the nine other bankruptcy court orders referenced in the Notices of Appeal.  Appellees thus argue that Myers has abandoned the appeal of these nine orders.  In a bankruptcy appeal, issues not raised in the opening brief are deemed abandoned on appeal.  *See Moses v. CashCall, Inc.*, 781 F.3d 63, 79 (4th Cir. 2015); *Lyerly v. Internal Revenue Serv.*, 235 B.R. 401, 404 (W.D.N.C. 1998) (citing *Tucker v. Waddell*, 83 F.3d 688, 690 n.1 (4th Cir. 1996)); *Bastman v. Hassell*, No. 5:18-cv-486-D, 2019 WL 2366422, at *3 (E.D.N.C. May 15, 2019).  Indeed, the Federal Rules of Bankruptcy Procedure and the Federal Rules of Appellate Procedure both require that the argument section of an appellant's brief must contain the "appellant's contentions and the reasons for them."  Fed. R. Bankr. P. 8014(a)(8); *see also* Fed. R. App. P. 28(a)(8)(A) (same).  The United States Court of Appeals for the Fourth Circuit has held that the failure to comply with this requirement waives any such claim on appeal.  *See Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 607 (4th Cir. 2009).

Upon review of Myers's opening brief, the Court finds that he has asserted arguments only in relation to the Settlement Order.  Accordingly, the Court finds that Myers has abandoned any arguments relating to the other nine bankruptcy court orders in the Consolidated Appeals and therefore summarily affirms the bankruptcy court as to those orders.

## B.    Settlement Order

In the opening brief, Myers asserts five arguments for why the bankruptcy court erred in issuing the Settlement Order:  (1) the bankruptcy court lacked subject matter jurisdiction to approve the Settlement Order; (2) the bankruptcy court erred when it approved the compromise pursuant to Bankruptcy Rule 9019 without a written settlement agreement; (3) the bankruptcy

11

Appx. 0884

court violated Myers's constitutional right to due process of law when, as part of the Settlement Order, it held that the King Parties' proofs of claim were withdrawn even while Myers's objections to those claims were pending; (4) the Settlement Order is not a final order; and (5) the bankruptcy court abused its discretion by approving the Settlement Order when it did not have the statutory authority to do so.

### 1. Subject Matter Jurisdiction

Myers first argues that the bankruptcy court lacked subject matter jurisdiction to issue the Settlement Order because it could not approve a settlement affecting Serv Trust's property, which he argues was not bankruptcy estate property. Specifically, Myers argues that a claim that Serv Trust is his alter ego must be litigated and determined in a Chapter 5 adversary proceeding, which has not occurred, and that such status cannot be determined by a "non-final state-court order" such as the ruling in the State Court Case. Appellant's Brf. at 11, No. 25-2103-TDC, ECF No. 21.

The issue of whether the bankruptcy court had subject matter jurisdiction to issue the Settlement Order is a question of law which the Court reviews *de novo*. *See Copley*, 959 F.3d at 121; *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1007 (4th Cir. 2014) ("We review questions of law, including a lower court's determination of its subject-matter jurisdiction, de novo."). A bankruptcy court, as a unit of a United States District Court, has exclusive jurisdiction over the property of the bankruptcy estate. *See* 28 U.S.C. §§ 151, 1334(e)(1). A bankruptcy estate generally includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, whether property is an asset of a bankruptcy estate is determined by state law, in this case, Maryland law. *See In re Levitsky*, 401 B.R. 695, 710 (Bankr. D. Md. 2008).

As to whether Serv Trust's assets can be considered property of Myers's bankruptcy estate, the State Court's Alter Ego Order entered on January 12, 2023, which determined that Serv Trust was Myers's alter ego as of November 18, 2015, that Serv Trust was a disregarded entity, and that any remaining state court proceedings against Serv Trust were subject to the Bankruptcy Code's automatic stay provision set forth in 11 U.S.C. § 362, was a valid, final order. Indeed, the Court takes judicial notice that, although Myers appealed the State Court Case in which the Alter Ego Order was entered, on February 11, 2026, the Appellate Court of Maryland issued its mandate dismissing Myers's appeal. *See* Mandate at 1, *Myers v. Serv Trust*, No. ACM-REG-0910-2025 (Md. App. Ct. Feb. 11, 2026). As for its status as of the entry of the Settlement Order on July 3, 2025, before the dismissal of the appeal, a judgment becomes effective "when entered," Md. Rule 2–601(a)(4), and there was no stay pending appeal, so as the bankruptcy court concluded, it was a valid judgment entitled to full force and effect. Thus, as of January 12, 2023, Serv Trust was an alter ego of Myers, its assets were part of Myers's bankruptcy estate, and the bankruptcy court had subject matter jurisdiction over the administration of Serv Trust's assets.

Myers's argument that any alter ego determination must be made in a bankruptcy court adversary proceeding is without merit. Myers has identified no authority establishing such a requirement. In *In re Bogdan*, 414 F.3d 507 (4th Cir. 2005), cited by Myers, the court held that the property of a bankruptcy estate includes a cause of action assigned to it by a creditor, and the Trustee has standing to advance such a claim on behalf of the estate. *See id.* at 512. In *Wilson v. Dollar General Corp.*, 717 F.3d 337 (4th Cir. 2013), also cited by Myers, the court held that a Chapter 13 debtor possesses standing, concurrent with the Trustee, to maintain non-bankruptcy causes of action on behalf of the estate. *Id.* at 343. Neither of these cases address or limit the ability of third parties to seek a declaratory judgment in state court that an entity such as Serv Trust

13

is the alter ego of a debtor such as Myers, or otherwise require such claims to be brought by the Trustee in an adversary proceeding. Myers's citation to *Law v. Siegel*, 571 U.S. 415 (2014), is similarly unpersuasive. *Law* stands for the unremarkable proposition that a bankruptcy court, when exercising its statutory and inherent powers, cannot contravene specific statutory provisions. *See id.* at 421.

Notably, the bankruptcy court specifically agreed to have the alter ego determination made in the State Court Case. The record reflects that on October 29, 2018, Goldsboro LLC commenced an adversary proceeding in the bankruptcy court seeking a declaratory judgment that Serv Trust was the alter ego of Myers, and that Serv Trust's assets and liabilities were thus subject to administration by the Trustee. However, on January 30, 2019, the bankruptcy court entered an order abstaining from exercising jurisdiction over the claims in the adversary proceeding after determining that whether Serv Trust was the alter ego of Myers could be decided in the State Court Case. In its abstention order, the bankruptcy court directed that if the state court determined that Serv Trust was Myers's alter ego, then the parties could return to the bankruptcy court for further proceedings. Notably, Myers did not and does not appeal the bankruptcy court's abstention order, and the exact sequence of events envisioned in the bankruptcy court's abstention order came to pass when the State Court determined that Serv Trust was Myers's alter ego, and the parties then returned to the bankruptcy court.

Regardless, Myers overreads the extent of the bankruptcy court's Settlement Order. Although Myers argues that the bankruptcy court exceeded its constitutional limitations when it "purported to enter a final, binding order purporting to transfer non-estate property owned by a non-debtor trust," the Settlement Order did not do so. Appellant's Brf. at 11. Rather, the Settlement Order authorizes the Trustee to transfer to the King Parties "all of the right, title and

14

interest of the Trustee, the Debtor and the bankruptcy estate in and to any and all membership interest in or property of 6789 Goldsboro LLC." A.A. 205. By limiting the Settlement Order in this way, the bankruptcy court ensured that the Settlement Order extended only to property of the bankruptcy estate, without needing to adjudicate the exact contours of what interests of Serv Trust, if any, were part of the bankruptcy estate. Accordingly, even if the Alter Ego Order were deemed to be invalid or inapplicable, the bankruptcy court still would have had subject matter jurisdiction to enter the Settlement Order.

### 2.      Lack of a Written Agreement

Next, Myers argues that the bankruptcy court committed legal error when it approved the Settlement Order pursuant to Bankruptcy Rule 9019 without an "executed settlement agreement" that was "submitted, admitted, or incorporated into the order." Appellant's Brf. at 13. As a result, Myers argues that the bankruptcy court improperly approved a settlement "whose existence, scope, and enforceability cannot be verified from the record." *Id.* Myers also argues that the bankruptcy court inappropriately added terms to the Settlement Order at the hearing on the proposed settlement without providing prior notice. Specifically, Myers objects to the term in the Settlement Order that the King Parties' proofs of claim filed in the underlying bankruptcy case would be deemed withdrawn. The Court reviews these issues of law *de novo*. *See Barlow*, 772 F.3d at 1007.

Upon review, the Court first finds that Myers has waived these arguments because he did not timely raise them before the bankruptcy court. Objections to the proposed settlement between the Trustee and the King Parties were due 21 days after the issuance of Notice of the Trustee's Proposed Compromise and Settlement, which was filed on December 30, 2024. Although Myers filed timely objections to the proposed settlement on January 21, 2025, those objections focused on the validity of the State Court Alter Ego Order and did not include an objection to the lack of a

15

written settlement agreement. Although Myers filed supplemental objections to the proposed settlement on July 3, 2025, which included an objection to the lack of a written settlement agreement, these objections were submitted months after the deadline for submitting objections, after the bankruptcy court had already held a two-day hearing on the proposed settlement, and on the morning that the bankruptcy court issued its oral ruling approving the proposed settlement. Because those supplemental objections were not timely filed, the bankruptcy court declined to consider them.

An Appellant's failure to raise properly a non-jurisdictional issue before a bankruptcy court will generally be treated as a waiver of that issue on appeal. *See United Rentals, Inc. v. Angell,* 592 F.3d 525, 531 n.2 (4th Cir. 2010) ("Because this argument is raised for the first time on appeal, we do not address it."); *Rusnack v. Cardinal Bank, N.A.,* 695 F. App'x 704, 711 (4th Cir. 2017) ("We regularly decline to hear claims litigants raise for the first time on appeal . . . [t]he same rationale applies with equal force to arguments not raised before the bankruptcy court . . . ."). In particular, courts have concluded that, as occurred here, when a party fails to assert an argument before the bankruptcy court in a timely manner, the issue can be deemed waived on appeal. *See In re Maurice,* 21 F.3d 767, 771 (7th Cir. 1994) (concluding that "[r]aising the issue after the judge has conducted the hearing and received all of the evidence is too late; failing to timely object to the alleged error waives any right to later appeal the issue"); *In re Imerys Talc Am., Inc.* 38 F.4th 361, 372–73 (3d Cir. 2022) (agreeing with the district court that when a party first raised an argument "in a 'supplemental objection' filed months after the bankruptcy court's deadline for objections had passed," the issue had been waived on appeal, but then considering the issue as a matter of discretion because the bankruptcy court had addressed its merits). Although there is a limited exception to the waiver rule when the error is plain and the refusal to consider the issue

16

would result in a miscarriage of justice, Myers has made no showing that this exception is applicable here. *See Dean v. McDow*, 299 B.R. 133, 139 (E.D. Va. 2003). Because Myers failed to timely raise this issue before the bankruptcy court, he has waived this argument.

Even if the argument was not waived, it is without merit. Bankruptcy Rule 9019 allows a bankruptcy court to approve a compromise or settlement "[o]n the trustee's motion and after notice and a hearing." Fed. R. Bankr. P. 9019(a). Notice must be given, in relevant part, to "all creditors" and "the debtor." *Id.* Nothing in the rule requires that there be a written settlement agreement, an "executed settlement agreement," or a settlement agreement that is "submitted, admitted, or incorporated into the order," as Myers suggests. Appellant's Brf. at 13. Rather, Rule 9019 and due process are satisfied "without setting forth verbatim the full text of a proposed settlement," which may be described "in general terms." *In re Drexel Burnham Lambert Grp. Inc*, 995 F.2d 1138, 1145 (2d Cir. 1993). For the same reason, the inclusion of the provision withdrawing the proofs of claim did not violate the notice requirement because it does not require "a detailed description of each item" in the proposed settlement. *Id.* at 1144. To hold otherwise would be to ignore that negotiations over the precise wording of a proposed settlement may still be ongoing after the notice is issued. *See id.* at 1145 ("[P]recise specificity apparently was impossible given that negotiations with respect to details of the settlement agreement were ongoing and not concluded until the proverbial eleventh hour.") For all of these reasons, the Court rejects the argument that the bankruptcy court violated Rule 9019 and due process when it issued the Settlement Order without a written settlement agreement.

### 3.    Due Process on Proofs of Claim

Myers also argues that the bankruptcy court violated due process when, in the Settlement Order, it permitted the King Parties to withdraw their proofs of claim filed in the underlying

17

bankruptcy case despite Myers's pending objections to them. Myers further argues that allowing the withdrawal of the proofs of claim violated Bankruptcy Rule 3006. This issue raises a mixed question of law and fact which the Court reviews *de novo* because it primarily requires consideration of legal principles. *See Rinn v. First Union Nat'l Bank*, 176 B.R. 401, 407 (D. Md. 1995).

To begin, as Appellees point out, it is difficult to see how Myers's due process rights were violated when the King Parties agreed to withdraw their proofs of claim against his bankruptcy estate—proofs of claim to which he objected. Although Myers argues that his objections to the proofs of claim were extinguished without adjudication, which "deprived the Debtor of notice and a hearing, in violation of due process," Appellant's Brf. at 14, the King Parties' withdrawal of these proofs of claim effectively granted Myers the relief he sought when he filed those objections. To the extent that any due process rights were impacted by the Settlement Order, it was the King Parties' right to have their proofs of claim adjudicated.

Even considering the due process argument, the standard procedural due process requirements of notice and an opportunity to be heard were satisfied. *See Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014) ("At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard."). First, as to notice, the Notice of the Trustee's Proposed Compromise and Settlement, docketed on December 30, 2024, stated that "[u]pon successful negotiation of the Settlement Payment by the Trustee, the parties will file a Stipulation of Dismissal in the Adversary Case dismissing all claims therein with prejudice." A.A. 50. Where the withdrawn proofs of claim were for an "[e]quitable and statutory claim, as set forth in [the Adversary Proceeding]," Myers had advanced notice that the dismissal of the claims in the Adversary Proceeding would encompass dismissal of the proofs of claim,

18

which were filed in order to preserve the King Parties' right to pursue relief in the Adversary Proceeding. A.A. 211, 214, 217.

Further, Myers had notice of, attended, and participated in the bankruptcy court's hearing on the proposed settlement on June 30 and July 1, 2025, after which the bankruptcy court memorialized the withdrawal of the proofs of claim in the Settlement Order. During the hearing, when the King Parties confirmed that they would withdraw their proofs of claim in the bankruptcy case, Myers was provided with an opportunity to address the bankruptcy court immediately after that discussion. A.A. 224–25. Where Myers received notice and an opportunity to be heard, the Court does not find that the bankruptcy court's approval of the withdrawal of the proofs of claim violated due process. For the same reasons, that action did not violate Bankruptcy Rule 3006, which requires notice to the debtor of the hearing at which a proof of claim will be withdrawn and further provides that "[a] creditor may not withdraw a proof of claim" if an objection to it has been filed "unless the court orders otherwise after notice and a hearing." Fed. R. Bankr. P. 3006(a)(1), (b).

### 4.    Final Order

Myers next argues that the Settlement Order is not a final order. If Myers were correct that the Settlement Order is not a final order, then this Court would be required to dismiss this appeal, because the Court only has jurisdiction to hear appeals "from final judgments, orders, and decrees," unless the court grants leave to appeal an interlocutory order, which Myers has neither sought nor received. 28 U.S.C. §§ 158(a)(1), (3); *see* Fed. R. Bankr. P. 8004(a) (setting forth the requirements for a party seeking to appeal an interlocutory order under 28 U.S.C. § 158(a)(3)).

Regardless, a bankruptcy court's order approving a settlement between parties under Rule 9019 is a final order. *See In re Gibraltar Res., Inc.*, 210 F.3d 573, 576 (5th Cir. 2000) ("A

19

Appx. 0892

bankruptcy court's approval of a settlement order that brings to an end litigation between parties is a 'final' order."); *In re The Bennett Funding Grp., Inc.*, 439 F.3d 155, 160 (2d Cir. 2006) (citing *In re Gibraltar Res., Inc.*). Here, where the Settlement Order was such an order, and the Adversary Proceeding was then dismissed with prejudice, Notice of Dismissal (Bankr. No. 24-00007) at 1, No. 25-2103-TDC, ECF No. 26-4, the Court rejects Myers's argument that the Settlement Order is not a final order.

### 5.   Lack of Statutory Authority

Finally, Myers argues that the bankruptcy court abused its discretion because the Settlement Order "transferred or extinguished rights in non-estate property." Appellant's Brf. at 14. This argument mirrors Myers's argument that the bankruptcy court lacked subject matter jurisdiction because it could not approve a settlement affecting Serv Trust's property, which Myers maintains was non-estate property. In the context of that argument, the Court has already concluded that Serv Trust's property was part of the bankruptcy estate, and that even if it was not, the Settlement Order authorized the transfer to the King Parties of only the interests of Myers and the bankruptcy estate in Goldsboro LLC, so it did not transfer any property outside of the bankruptcy estate. *See supra* part IV.B.1. Based on these same findings, the Court rejects the argument that the bankruptcy court exceeded its statutory authority when it issued the Settlement Order.

For all of the reasons discussed above, the Court affirms the bankruptcy court's approval of the Settlement Order.

## V.   No. 25-2338-TDC

In No. 25-2338-TDC, Myers seeks review of the bankruptcy court's July 3, 2025 Order Overruling the Claim Objections as Moot, in which the bankruptcy court ruled that Myers's

objections to the King Parties' withdrawn proofs of claim were moot. As in No. 25-2042-TDC, rather than filing an appellant's brief, Myers has filed a Notice entitled "Appellant Gregory B. Myers's Notice of Overlapping Issues and Cross-Application of Opening Brief," in which he cross-references his arguments made in the appellant's brief filed in the Consolidated Appeals, including those addressing "the bankruptcy court's authority to enter the challenged orders." Notice at 1–2, No. 25-2338-TDC, ECF No. 14. In the Consolidated Appeals, Myers argued that the bankruptcy court violated due process and Bankruptcy Rule 3006 when, in the Settlement Order, it allowed the King Parties' proofs of claim to be deemed withdrawn despite Myers's pending objections to those proofs of claim. However, as discussed above, the Court has concluded that the bankruptcy court did not violate due process and Bankruptcy Rule 3006 and instead properly permitted the King Parties to withdraw their proofs of claim in the Settlement Order. *See supra* part IV.B.3. For the same reasons, the Court also finds that the bankruptcy court properly overruled as moot Myers's objections to the Kings Parties' proofs of claim once they were withdrawn pursuant to the Settlement Order. Accordingly, the Court affirms the bankruptcy court's Order Overruling the Claim Objections as Moot.

## CONCLUSION

For the foregoing reasons, Myers's Motion to Supplement the Record will be GRANTED, Myers's Motion to Compel will be DENIED, Myers's appeal of the bankruptcy court's orders in No. 25-2042-TDC will be DISMISSED, and the bankruptcy court's orders in Nos. 25-2103-TDC, 25-2337-TDC, 25-2338-TDC, and 25-2635-TDC will be AFFIRMED. A separate Order shall issue.

Date: June 3, 2026



THEODORE D. CHUANG
United States District Judge

21

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| GREGORY B. MYERS,<br><br>  Appellant,<br><br>  v.<br><br>ROGER SCHLOSSBERG, BRIAN KING,<br>CRISTINA AND BRIAN KING<br>CHILDREN'S TRUST and<br>CRISTINA KING,<br><br>  Appellees. | Civil Action No. 25-2042-TDC |
| GREGORY B. MYERS,<br><br>  Appellant,<br><br>  v.<br><br>ROGER SCHLOSSBERG, BRIAN KING,<br>CRISTINA AND BRIAN KING<br>CHILDREN'S TRUST and<br>CRISTINA KING,<br><br>  Appellees. | Civil Action Nos. 25-2103-TDC<br>25-2337-TDC<br>25-2635-TDC |
| GREGORY B. MYERS,<br><br>  Appellant,<br><br>  v.<br><br>ROGER SCHLOSSBERG, BRIAN KING,<br>CRISTINA KING and<br>CRISTINA AND BRIAN KING<br>CHILDREN'S TRUST,<br><br>  Appellees. | Civil Action No. 25-2338-TDC |

## ORDER

Appx. 0895

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that:

1. Appellant Gregory B. Myers's Motion to Supplement the Record, ECF No. 20 (No. 25-2103-TDC), is GRANTED.

2. Myers's Motion to Compel, ECF No. 19 (No. 25-2103-TDC), is DENIED.

3. Appellees' Motion to Dismiss, ECF No. 19 (No. 25-2042-TDC), is GRANTED.

4. The bankruptcy court's orders appealed in No. 25-2103-TDC, 25-2337-TDC, 25-2338-TDC, and 25-2635-TDC are AFFIRMED.

5. The Clerk shall close Nos. 25-2042-TDC, 25-2103-TDC, 25-2337-TDC, 25-2338-TDC, and 25-2635-TDC.

Date: June __3__, 2026

THEODORE D. CHUANG
United States District Judge

2

Appx. 0896

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

GREGORY B. MYERS,

    Appellant,

    v.

ROGER SCHLOSSBERG,
BRIAN KING,
CRISTINA AND BRIAN KING
CHILDREN'S TRUST and
CRISTINA KING,

    Appellees.

Civil Action Nos. 25-2103-TDC
25-2337-TDC
25-2635-TDC

## ORDER

Appellant Gregory B. Myers has filed a Motion to Alter or Amend the Judgment and/or for Rehearing. ECF No. 44. The Court construes the Motion as a Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and a Motion for Rehearing pursuant to Federal Rule of Bankruptcy Procedure 8022. In the Motion, Myers asks this Court to reconsider its June 3, 2026 Memorandum Opinion and Order dismissing Myers's bankruptcy appeal in No. 25-2042-TDC and affirming the bankruptcy court in Nos. 25-2103-TDC, 25-2337-TDC, 25-2338-TDC, and 25-2635-TDC.

A Motion for Reconsideration under Federal Rule of Civil Procedure Rule 59(e) may be granted only (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012). The same standard is used to evaluate a Motion for Rehearing under Bankruptcy Rule 8022. *See Kelly*

Appx. 0897

*v. Schlossberg*, Nos. PX-17-3846, PX-17-3847, PX-18-0336, 2018 WL 4357486, at *2 (D. Md. Sept. 12, 2018) ("Although the Rule does not specify a standard of review, the standard used to evaluate motions to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e) is appropriate."), *aff'd per curiam*, 773 F. App'x 161, 162 (4th Cir. 2019).

Myers cites no intervening change in controlling law, points to no new evidence, and, upon review Myers's arguments, the Court finds that there was no clear legal error or manifest injustice in its prior reasoning. The Court thus finds no basis to alter its June 3, 2026 Memorandum Opinion and Order.

Accordingly, it is hereby ORDER that:

1. Appellant Gregory B. Myers's Motion to Alter or Amend the Judgment and/or for Rehearing, ECF No. 44, is DENIED.

2. The Clerk shall close the case.

Date: June **29**, 2026

_____
THEODORE D. CHUANG
United States District Judge

2

Appx. 0898

Civil Action Nos. 25-2042-TDC, 25-2103-TDC, 25-2337-TDC, 25-2635-TDC, and 25-2338-TDC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GREGORY B. MYERS, <br><br> Appellant, <br><br> v. <br><br> ROGER SCHLOSSBERG, BRIAN KING, CRISTINA KING and CRISTINA AND BRIAN KING CHILDREN'S TRUST, <br><br> Appellees. | Civil Action No. 25-2042-TDC <br><br> **AT BALTIMORE** <br> **CLERK**, U.S. DISTRICT COURT <br> DISTRICT OF MARYLAND <br> **BY** ⁀EPUTY <br> JUL 1 6 2026 <br><br> ___ FILED  ___ ENTERED <br> ___ LOGGED  _S2.5_ RECEIVED <br> Night Drop Box |
| GREGORY B. MYERS, <br><br> Appellant, <br><br> v. <br><br> ROGER SCHLOSSBERG, BRIAN KING, CRISTINA KING and CRISTINA AND BRIAN KING CHILDREN'S TRUST, <br><br> Appellees. | Civil Action Nos. 25-2103-TDC <br> 25-2337-TDC <br> 25-2635-TDC |
| GREGORY B. MYERS, <br><br> Appellant, <br><br> v. <br><br> ROGER SCHLOSSBERG, BRIAN KING, CRISTINA KING and CRISTINA AND BRIAN KING CHILDREN'S TRUST, <br><br> Appellees. | Civil Action No. 25-2338-TDC |

Appx. 0899

## APPELLANT GREGORY B. MYERS'S AMENDED MOTION FOR STAY PENDING APPEAL OF THE EFFECT AND ENFORCEABILITY OF THE JUNE 3, 2026 MEMORANDUM OPINION AND ORDER

### TABLE OF CONTENTS

I. RELIEF REQUESTED ........................................................................................ 2

II. BACKGROUND ............................................................................................... 3

III. LEGAL STANDARD ...................................................................................... 5

IV. A STAY IS WARRANTED ............................................................................. 6

A. The June 3 Ruling should not have operative effect while this Court reviews related orders in the same Adversary. ....................................................... 6

B. Myers has made a strong showing of likely success on threshold Rule 9019, Rule 7001, section 541, standing, and due-process issues. ...................................... 7

C. The state-court order was nonfinal, stayed, and incapable of supplying the missing estate-property adjudication. ...................................................... 8

D. The June 3 Ruling's January 12, 2023 date creates an independent Chapter 7 snapshot-rule defect. ......................................................................... 16

E. The Florida Chapter 13 automatic stay creates an additional defect. ................ 18

F. The challenged conclusions should have no operative or preclusive effect pending review. ........................................................................... 20

G. Irreparable harm and the remaining factors support a stay. ............................. 21

V. NO BOND SHOULD BE REQUIRED ........................................................... 22

VI. CAUSE EXISTS FOR A STAY BEYOND 30 DAYS ................................... 22

VII. CONCLUSION ............................................................................................. 23

Appx. 0900

Appellant Gregory B. Myers respectfully moves under Federal Rule of Bankruptcy Procedure 8025(b), Federal Rule of Appellate Procedure 8(a), and this Court's inherent authority for a stay pending appeal of the effect and enforceability of this Court's June 3, 2026 Memorandum Opinion and Order (the "June 3 Ruling") (ECF Nos. 41 and 42), and the June 29, 2026 Order denying rehearing (the "June 29 Order") (ECF No. 45). This Amended Motion supersedes Appellant's Motion for Stay Pending Appeal filed on July 13, 2026 in Civil Action No. 8:25-cv-02042-TDC (ECF No. 27), Civil Action No. 8:25-cv-02103-TDC (ECF No. 48), and Civil Action No. 8:25-cv-02338-TDC (ECF No. 21).

Myers has appealed the June 3 Ruling and the June 29 Order to the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit"). The appeal presents threshold legal issues concerning whether the Bankruptcy Court had authority to approve the July 3, 2025 Settlement Order in Adversary Proceeding No. 24-00007 (the "Adversary") without a final estate-property adjudication, a Trustee-filed Rule 7001 adversary proceeding, service, due process, necessary parties, standing, relief from stay, and a valid state-court predicate.

Myers requests a full stay pending Fourth Circuit review. Alternatively, and at minimum, he requests a limited stay or abeyance until this Court resolves Civil Action No. 26-2175-TDC, the pending appeal concerning later orders entered in the same Adversary.

1

Appx. 0901

The narrowest basis for relief is procedural. Civil Action No. 26-2175-TDC raises overlapping *Griggs*, Rule 8008, Rule 9024 / Rule 60(b)(4), party-status, indispensable-party, settlement-implementation, and post-appeal-jurisdiction issues. This Court has accepted the designation and statement of issues for filing and set a merits briefing deadline. Ex. 1. The June 3 Ruling should not be given operative or preclusive effect while this Court is reviewing later orders from the same Adversary.

This motion does not ask the Court to retry the Montgomery County action or decide unadjudicated state-law issues. It seeks to preserve the legal status quo. The exhibits establish the procedural posture, appellate overlap, nonfinality, inconsistent positions, automatic-stay and due-process issues, and irreparable-harm risk, while preserving a complete stay record.

## I. RELIEF REQUESTED

Myers respectfully requests an order staying the effect and enforceability of the June 3 Ruling and the June 29 Order, including, to the extent within this Court's authority, any operative, preclusive, enforcement, governance, title, control, evidentiary, or estoppel effect of this Court's conclusions that (i) the January 12, 2023 state-court "Order Entering Partial Judgment and Stay" was a "valid, final order" and (ii) "as of January 12, 2023, Serv Trust was an alter ego of Myers, its

Appx. 0902

assets were part of Myers's bankruptcy estate, and the bankruptcy court had subject matter jurisdiction over the administration of Serv Trust's assets."

At minimum, Myers requests that the Court stay, or alternatively hold in abeyance, the operative and preclusive effect of the June 3 Ruling until it resolves Civil Action No. 26-2175-TDC.

The stay should also provide that the June 3 Ruling shall not operate pending appeal as a substitute for a final, unstayed, executable state-court judgment, a Rule 7001 adversary proceeding, a section 541 estate-property adjudication, service, due process, standing, relief from stay, or an adjudication binding Serv Trust, the current Serv Trust trustee, the Serv Trust beneficiaries, 6789 Goldsboro LLC, Myers, or other absent nonparties.

## II. BACKGROUND

The Bankruptcy Court's July 3, 2025 Settlement Order approved a proposed compromise between Chapter 7 Trustee Roger Schlossberg (the "Trustee") and Brian King, Cristina King, and the Cristina and Brian King Children's Trust (collectively, the "King Parties") under Bankruptcy Rule 9019. The proposed settlement concerned Serv Trust's interest in 6789 Goldsboro LLC. Serv Trust is a non-debtor Maryland spendthrift trust, and 6789 Goldsboro LLC is a non-debtor Maryland limited liability company.

3

The Trustee did not file an adversary proceeding against Serv Trust, the current Serv Trust trustee, the Serv Trust beneficiaries, or 6789 Goldsboro LLC; did not name and serve those necessary parties; and did not obtain a final section 541 adjudication determining that Serv Trust's interest in 6789 Goldsboro LLC was property of Myers's Chapter 7 bankruptcy estate.

The Settlement Order referred to redemption of "Serv Trust's interest," but its operative transfer language conveyed only "all of the right, title and interest of the Trustee, the Debtor and the bankruptcy estate" in any membership interest in or property of 6789 Goldsboro LLC. Serv Trust was not identified as a transferor. Thus, the Settlement Order depended on an unresolved predicate: whether the estate had any right to administer, transfer, or settle Serv Trust's interest in 6789 Goldsboro LLC. Ex. 21.

On June 3, 2026, this Court affirmed the Bankruptcy Court's orders. It characterized the January 12, 2023 state-court order as "valid" and "final" and held that "as of January 12, 2023, Serv Trust was an alter ego of Myers, its assets were part of Myers's bankruptcy estate, and the bankruptcy court had subject matter jurisdiction over the administration of Serv Trust's assets." Ex. 21. The Court denied rehearing on June 29, 2026, and Myers appealed.

Separately, Myers appealed on June 1, 2026 from the Bankruptcy Court's May 26, 2026 order denying his protective motion concerning six April 15, 2026

4

orders entered in the same Adversary. That appeal is Civil Action No. 26-2175-TDC. This Court accepted Myers's designation and statement of issues for filing and set briefing. Ex. 1.

## III. LEGAL STANDARD

Bankruptcy Rule 8025(b) authorizes the district court to stay its judgment pending appeal to the court of appeals. Federal Rule of Appellate Procedure 8(a) ordinarily requires the applicant to seek relief first in the district court.

A stay is governed by four factors: (1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether he will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 433-35 (2009). The first two factors are the most critical. *Id.* at 434.

Myers makes the required showing. The appeal presents predominantly legal errors reviewed de novo; the requested relief preserves rather than alters the status quo; related issues from the same Adversary remain pending before this Court; and allowing the June 3 conclusions to operate now risks consequences that later appellate relief may not fully reverse.

Appx. 0905

## IV. A STAY IS WARRANTED

### A. The June 3 Ruling should not have operative effect while this Court reviews related orders in the same Adversary.

Civil Action No. 26-2175-TDC concerns the Bankruptcy Court's May 26, 2026 order denying relief concerning the April 15 orders entered in the Adversary. Myers filed that appeal on June 1, 2026, two days before this Court entered the June 3 Ruling in the earlier appeals.

The later appeal substantially overlaps the first appeals and cannot sensibly be reviewed in isolation. Myers's designation identifies whether the Bankruptcy Court had jurisdiction under the "functional test" to enter the April 15 orders while related issues in the same Adversary were already on appeal; whether the orders were void, ineffective, or without preclusive effect under *Griggs*; and whether relief was warranted under Rule 9024, Rule 60(b)(4), or Rule 8008. Ex. 1. The issues concern the same Adversary, settlement structure, party-status and indispensable-party questions, summary-judgment ruling, and post-appeal jurisdictional sequence.

Fourth Circuit law cautions against fragmented finality analysis in adversary proceedings. In *Kiviti v. Bhatt*, 80 F.4th 520, 529-31 (4th Cir. 2023), the court held that the district court lacked jurisdiction over an appeal from an order dismissing one count while another count in the same adversary proceeding remained

6

Appx. 0906

unresolved, and rejected an effort to manufacture finality through a later dismissal without prejudice. Ex. 25.

Myers does not concede that the June 3 Ruling is nonappealable; he filed a protective appeal so that appealability, finality, and related-review issues may be addressed without waiver. Even if the June 3 Ruling is appealable as to the district-court appeals it resolved, its operative and preclusive effect should be stayed while this Court reviews later orders entered in the same Adversary.

The orderly and least disruptive course is to preserve the status quo, or hold the June 3 Ruling's operative effect in abeyance, until Civil Action No. 26-2175-TDC is resolved. That relief does not require reconsideration of the merits; it avoids piecemeal review, inconsistent treatment, and use of the June 3 Ruling to foreclose issues still pending before this Court.

**B. Myers has made a strong showing of likely success on threshold Rule 9019, Rule 7001, section 541, standing, and due-process issues.**

These threshold issues present predominantly legal questions reviewed de novo and, for the reasons below, establish a strong likelihood of success.

Rule 9019 authorizes approval of a compromise. It does not create estate property, adjudicate title, recover non-estate property, or bind absent non-debtor property owners. Before Rule 9019 discretion could operate here, there had to be a lawful estate-property predicate.

7

Appx. 0907

The Trustee never filed a Rule 7001 adversary proceeding seeking an estate-property determination against Serv Trust, its current trustee, its beneficiaries, or 6789 Goldsboro LLC. If the Trustee intended to administer Serv Trust's Goldsboro interest as property of Myers's estate, he had to obtain a section 541 determination in a proceeding binding those parties. He did not.

**C. The state-court order was nonfinal, stayed, and incapable of supplying the missing estate-property adjudication.**

Maryland finality ordinarily requires an unqualified disposition of all claims against all parties, absent proper Rule 2-602(b) certification. *McLaughlin v. Ward*, 240 Md. App. 76, 83 (2019); Md. Rule 2-602(a). The state-court actions were consolidated for all purposes. Judge Lease stated on January 3, 2023 that there would be no final judgment "under any circumstance" because all claims and parties were not being adjudicated. Ex. 2. The resulting interlocutory order was titled "Order Entering Partial Judgment and Stay," and the litigation was stayed. Ex. 4A.

Judge Lease's own later ruling confirms nonfinality. On April 17, 2023, while addressing Serv Trust's post-trial motion, he repeatedly described the January 12 ruling as a "non-final judgment" and recognized the Circuit Court's authority to control judgments that are nonfinal. Ex. 4B. The resulting April 18

8

Appx. 0908

order denied Serv Trust's motion but did not enter an all-claims/all-parties final judgment. Ex. 4C.

Appellees' prior positions confirm the same point. In the first Appellate Court of Maryland appeal, the King Parties represented that the January 12 order was expressly nonfinal and did not adjudicate or complete adjudication of any claim. Goldsboro and the Trustee joined that position. Exs. 5A-5C. Those representations are incompatible with treating the same order as a final estate-property predicate.

Appellees' Joint Response later created a materially inaccurate linkage between the January 12 order and a different Maryland appeal. After characterizing the January 12 ruling as the State Court's "judgment," Appellees stated that "Mr. Myers did appeal the State Court order," cited *Myers v. Serv Trust*, ACM No. 910, and described that appeal as dismissed or "since-failed." Ex. 5I. The Trustee likewise called ACM No. 910 "the instant appeal of the alter ego judgment." Ex. 5G.

The actual notice of appeal conclusively shows otherwise. It states that Myers appealed the order entered June 25, 2025, and attaches that order as Exhibit A. Ex. 5F. The June 25 order merely denied Myers's Rule 2-507 motion to dismiss for lack of prosecution as moot, based on a May 7, 2024 stipulation purporting to dismiss Count I of the King Parties' First Amended Complaint. Ex. 5E. ACM No.

9

Appx. 0909

910 therefore was not an appeal from the January 12 order or from a final judgment resolving all claims against all parties.

The Appellate Court dismissed ACM No. 910 under Maryland Rule 8-602(c)(5) for failure to file a brief. Ex. 5H. It did not affirm the January 12 order, decide that the January 12 order was final, adjudicate the unresolved claims, or lift the state-court stay. Nevertheless, the June 3 Ruling cited the ACM No. 910 mandate immediately after declaring the January 12 order "valid" and "final," and then used that finality conclusion to infer that Serv Trust's assets were estate property as of January 12, 2023. Ex. 21. Because ACM No. 910 involved a different later order, its dismissal supplies no support for either the finality premise or the resulting estate-property inference.

Nor did the May 7, 2024 stipulation transform the January 12 order into a final judgment. It dismissed only Count I in Case No. 436977-V; it did not dismiss Count II as to Myers, resolve Goldsboro's claims in Case No. 451611-V, or dispose of the consolidated action. Ex. 5D. It did not specify dismissal with prejudice and was not a separate final-judgment document signed by the court or clerk. Under Maryland Rules 2-506 and 2-601 and Hiob v. Progressive American Insurance Co., 440 Md. 466, 487-88 (2014), that partial stipulation did not itself enter final judgment. A voluntary dismissal without prejudice cannot manufacture finality for an interlocutory ruling. Collins v. Li, 158 Md. App. 252, 267, 273-74 (2004).

10

Appx. 0910

Rule 2-519 did not cure the problem. Serv Trust had demanded a jury trial on all claims, and its operative counterclaims included legal damages claims concerning its Class B interest in 6789 Goldsboro LLC. Exs. 8-9. No jury was empaneled. The Rule 2-519 reference did not resolve those claims or convert the partial order into a final all-claims/all-parties judgment.

The December 16, 2022 pretrial transcript further confirms that Myers remained a party, the claims against him were stayed, the trial did not involve him, and a ruling against Serv Trust would not bind him through res judicata or collateral estoppel. Ex. 3.

The June 3 Ruling relied on the January 30, 2019 abstention order but omitted the December 5, 2019 remand order. After VerStandig removed the consolidated state action and Myers dismissed the section 362 third-party claim, the Bankruptcy Court remanded the matter under 28 U.S.C. section 1452(b). Ex. 6. The later King-filed Adversary functioned as a substitute for removal after the Trustee acknowledged that removal was unavailable under Rule 9027. Ex. 7. The Settlement Procedures Order also contemplated dismissal of Count II, confirming that the state action remained pending. Id.

If the January 12 order was final and dispositive, no Rule 9027 workaround and no later dismissal of Count II were needed. If it was nonfinal, the King-filed

Appx. 0911

Adversary and Rule 9019 process could not supply the missing final judgment, derivative standing, Rule 7001 proceeding, service, or section 541 adjudication.

Count II itself confirms the substitution problem. The King Parties asked the state court to declare not only that Serv Trust was Myers's alter ego, but that Serv Trust's assets, liabilities, counterclaim, and Goldsboro liabilities were assets or liabilities of Myers's bankruptcy estate administered by the Trustee. Ex. 10. That was substantively a claim against Myers and alleged property of Myers within 11 U.S.C. section 102(2).

Although a state court may determine underlying state-law rights properly before it, Count II asked the Circuit Court to go further and declare that Serv Trust's assets and liabilities were assets and liabilities of Myers's bankruptcy estate. That asserted bankruptcy-estate consequence implicated section 541 and the district court's exclusive in rem jurisdiction under 28 U.S.C. section 1334(e), and it could not be supplied through a nonfinal state-court order entered without the necessary parties and without relief from the Florida automatic stay.

The January 12 order did not adjudicate a transfer of title or a November 18, 2015 estate-property consequence. It separately found that Serv Trust "is, and as of November 18, 2015, was" Myers's alter ego and that Serv Trust "is a disregarded entity." The November 18 modifier appears only in the alter-ego finding. The order did not state that title to any Serv Trust asset transferred on that date. Ex. 4A.

12

Appx. 0912

Neither "alter ego" nor "disregarded entity" supplied the missing title adjudication. Maryland's alter-ego doctrine ordinarily disregards a corporation's or LLC's separate form for a defined remedial purpose; it is not a literal equation or a self-executing conveyance. See *Hildreth v. Tidewater Equipment Co.*, 378 Md. 724, 734-36 (2003). Myers was one of Serv Trust's co-trustees, so literal identity would produce the incoherent proposition that the trust was its own co-trustee. At most, the label could address a defined claim or liability; it could not rewrite fiduciary offices, make Myers a beneficiary, or transfer every trust asset.

The Trust Agreement establishes an irrevocable fiduciary relationship governed by Maryland trust law, not a corporation or LLC whose assets could be collapsed through unexplained entity-disregard language. Serv Trust was created by Joan Conlen Myers, not Myers; Myers was trustee, not settlor or beneficiary; the beneficiaries were his descendants; and the agreement states that trustee powers are exercisable solely in a fiduciary capacity and contains spendthrift restrictions. Ex. 11. The Harrison letter confirms that Myers and Daniel Ring acted in trustee capacities. Ex. 12.

The Bankruptcy Code preserves those capacity and ownership distinctions. Section 541(b)(1) excludes any power that the debtor may exercise solely for the benefit of another. Section 541(d) provides that when a debtor holds only legal title and not the corresponding equitable interest, the estate receives only that limited

Appx. 0913

legal title, not an equitable interest the debtor does not hold. And section 541(c)(2) enforces a transfer restriction on a debtor's beneficial interest in a trust when enforceable under nonbankruptcy law. *Patterson v. Shumate*, 504 U.S. 753, 758-59 (1992). Thus, even assuming Myers held fiduciary legal title or trustee powers on the petition date, neither the powers nor the beneficiaries' equitable interests became his personal property or the estate's beneficial property.

The Maryland Trust Act confirms the same result and applies to trusts created before January 1, 2015 and judicial proceedings commenced after that date. Md. Code Ann., Est. & Trusts section 14.5-1006(a)(1)-(2). It defines a beneficiary as a person holding a beneficial interest or a power in a capacity other than trustee, section 14.5-103(d); requires the trust and its terms to operate for the beneficiaries, section 14.5-404(b); and makes a spendthrift provision valid and enforceable, section 14.5-504(a)-(d). If "disregarded entity" was intended to modify or terminate the trust or reallocate its beneficial ownership, sections 14.5-409(b) and 14.5-410 specify that such a proceeding may be commenced by a trustee or beneficiary and condition relief on the required consents and, where a beneficiary does not consent, adequate protection of that beneficiary's interests. The King Parties were neither trustees nor beneficiaries of Serv Trust, and the current trustee and beneficiaries were absent. Ex. 23.

Appx. 0914

By the January 3, 2023 trial, Myers also had executed a written resignation as co-trustee, signed May 1, 2022 and effective May 31, 2022. Ex. 14C. The Florida Bankruptcy Court expressly acknowledged the executed resignation and provided that, even if it were invalid or ineffective, any relief as to Myers extended only to a representative capacity and not to individual liability. Ex. 14B. Thus, Appellees could not rely on any present trustee office or current control by Myers to justify treating trust property as his personal property; and even on the Florida court's stated contingency, trustee authority remained fiduciary rather than beneficial.

Judge Lipp's contemporaneous record distinguished fiduciary capacity from personal ownership. At the December 19, 2017 hearing, she asked whether the Serv Trust account was "not [Myers's] account," and Trustee's counsel answered, "That is correct." She called Serv Trust "his kids' trust"; Myers testified that Serv Trust owned the 50% Goldsboro interest and that he held no personal or pecuniary interest. Ex. 13A. Judge Lipp's final 2018 findings confirmed that Serv Trust was created and funded by Myers's mother for his children, that Myers and Ring were co-trustees, and that Serv Trust held the Goldsboro interest. Ex. 13B.

Judge Albright had denied dismissal of Serv Trust's MOU contract and specific-performance claims and held that alleged intentional suppression of the property's value, if proved, could constitute constructive fraud. Ex. 9D. King swore

15

in March 2018 that Myers acted "on behalf of Serv Trust," Goldsboro lent to Serv Trust, and Class A contributions funded those loans. Ex. 17C. After Count II was filed, King testified that Serv Trust was the Class B member, Goldsboro issued loans to Serv Trust, and the MOU offered to purchase Serv Trust's interest. Ex. 17D. Sixteen days later, his second affidavit recast the same interest and loans as "putative" and personal to Myers. Ex. 17E. These materially different sworn descriptions show contested theories, not an adjudicated conveyance of title or beneficiary interests.

The January 3 transcript confirms that the Trust Agreement was not in evidence and that King counsel incorrectly represented that Serv Trust was revocable. Ex. 2. A partial order entered on that record could not supply a binding section 541 adjudication or extinguish the rights of the absent trustee and beneficiaries.

Other evidence reinforces the point. The Trustee said Serv Trust "will become" estate property only if King prevailed; Goldsboro identified Myers's liability solely as "Guaranty"; King counsel disclaimed a monetary claim against Myers; and Florida Claim 3 was disallowed. Exs. 16-19.

**D. The June 3 Ruling's January 12, 2023 date creates an independent Chapter 7 snapshot-rule defect.**

The June 3 Ruling did not hold that Serv Trust's assets were estate property on the November 18, 2015 petition date. It selected January 12, 2023: "Thus, as of

16

Appx. 0916

January 12, 2023, Serv Trust was an alter ego of Myers, its assets were part of Myers's bankruptcy estate." Ex. 21. That date creates an independent section 541 problem.

In *Bellinger v. Buckley*, Judge Bredar applied controlling Fourth Circuit precedent and held that a materially new property interest acquired after a Chapter 7 petition does not enter the estate under section 541(a)(1), which reaches interests existing "as of the commencement of the case." 577 B.R. 193, 196-97, 202-05 (D. Md. 2017), aff'd for the reasons stated by the district court, 719 F. App'x 209 (4th Cir. 2018). State law determines the existence, nature, and scope of the interest; federal law determines whether it enters the estate. A new postpetition interest belongs to the Chapter 7 debtor absent an applicable statutory mechanism by which the estate captures it. *Id.* Ex. 24.

If the January 12 order created, fixed, or vested a new interest in Myers or a new estate-property consequence, that interest arose more than seven years after the Chapter 7 petition. Section 541(a)(1) did not capture it; the narrow section 541(a)(5) exceptions do not apply; and section 541(a)(7) does not cure the defect because no conveyance, recovery judgment, or other transaction caused the estate itself to acquire Serv Trust's property. The June 3 Ruling identified no statutory capture mechanism.

Appx. 0917

If, alternatively, January 12 merely recognized an interest that supposedly existed on November 18, 2015, neither Lease nor the Bankruptcy Court adjudicated that Myers held legal or beneficial ownership of Serv Trust's assets on the petition date. Lease retroactively dated only the alter-ego label, not title or beneficiary status. That ownership question required the Rule 7001 and section 541 adjudication that never occurred. Alter ego cannot function as a time machine that retroactively rewrites the bankruptcy petition-date ownership snapshot. Under either characterization, the estate-property conclusion lacks the required legal bridge.

**E. The Florida Chapter 13 automatic stay creates an additional defect.**

The Florida Bankruptcy Court allowed the Maryland action to proceed only against non-debtor parties and expressly preserved the automatic stay as to claims against Myers individually. It later clarified that even representative-capacity relief could not be used "for any purposes which could impose individual liability upon the Debtor." Ex. 14.

The King Parties confirmed that stay relief was granted only "to pursue claims against the Serv Trust," that they "cannot pursue claims against the Debtor individually," and that they were "not seeking such relief." Ex. 15. Those representations cannot be limited to an immediate money judgment because a "claim against the debtor" includes a claim against property of the debtor. 11

18

U.S.C. section 102(2); *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 558 (1990).

In March 2019, during Myers's Delaware Chapter 13 case, the King Parties moved to stay the entire state action. They asserted that it could not "meaningfully proceed"; no "meaningful distinction" could be drawn between claims involving Myers and Serv Trust; a judgment against Serv Trust would be a judgment against Myers; Myers was indispensable; and the Chapter 13 trustee had to be joined after stay relief and bankruptcy-court permission. They also called alter ego an "affirmative claim of their own." Ex. 26. Yet the January 3, 2023 trial proceeded against Serv Trust alone while Myers remained a named, stayed defendant and without the Florida Chapter 13 trustee. The limited Florida stay-relief order did not authorize the inseparable alter-ego claim to impose individual or property consequences on Myers.

On January 12, 2023, Myers's Florida Chapter 13 case remained pending. Ex. 20. If the January 12 order caused, fixed, recognized, transferred, or imposed a property consequence by which Serv Trust's assets became property of Myers or either bankruptcy estate, the order affected an alleged Myers property interest while the Florida stay remained in effect. The Florida Bankruptcy Court had not authorized that relief.

Appx. 0919

Conversely, if the January 12 order did not affect Myers, his alleged property interests, or property of the Florida Chapter 13 estate, it could not be the event that caused Serv Trust's assets to become property of the Maryland Chapter 7 estate. To the extent Appellees retreat to a November 18, 2015 theory, that theory required a Rule 7001 / section 541 adjudication binding Serv Trust, the Serv Trust trustee, the Serv Trust beneficiaries, and 6789 Goldsboro LLC. That did not happen.

Accordingly, if the January 12 order affected Myers or an alleged Myers property interest, it violated the Florida stay and is void, *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982), or at minimum incapable of supplying an enforceable estate-property predicate. If it did not, it cannot support the June 3 Ruling's January 12 estate-property conclusion. Either way, the predicate fails.

## F. The challenged conclusions should have no operative or preclusive effect pending review.

The requested stay is directed to the June 3 Ruling's legal effect, not reconsideration of its merits. Pending appellate review, and to the extent within this Court's authority, the challenged conclusions should not have operative or preclusive effect concerning Serv Trust's interest in 6789 Goldsboro LLC, 6789 Goldsboro LLC, Myers, or absent nonparty rights.

Appx. 0920

A stay would preserve the status quo while the Fourth Circuit decides whether the Bankruptcy Court had authority to approve the settlement structure and while this Court resolves the overlapping later appeal.

## G. Irreparable harm and the remaining factors support a stay.

The harm is not merely monetary. The June 3 Ruling concerns the Trustee's asserted right to administer Serv Trust's interest in 6789 Goldsboro LLC and the rights of non-debtor entities and absent nonparties. If the challenged conclusions operate before review, they may be used as predicates concerning ownership, standing, mootness, control, and preclusion.

That risk is concrete. Appellees have already argued in the Adversary that the settlement fully resolved the case, that Myers is not a party, and that later motions are moot. Ex. 22. Without a stay, the June 3 conclusions may be invoked in the later appeal, the Bankruptcy Court, and the state court. Those consequences may not be fully reversible after the rights of Serv Trust, the current Serv Trust trustee, the Serv Trust beneficiaries, and 6789 Goldsboro LLC have been affected.

The Joint Response also characterized the Settlement Order as transferring the assets of Myers, the Trustee, and the estate - "whatever they may be" - to the King Parties. Ex. 5I. When combined with the June 3 Ruling's conclusion that Serv Trust's assets were estate property, that position creates a present risk that Appellees will assert ownership, governance, or disposition rights over Serv Trust's

Appx. 0921

interest in 6789 Goldsboro LLC before appellate review is complete, even though Serv Trust is not identified as a transferor in the Settlement Order. Ex. 21.

A stay will not substantially harm Appellees. It requires no payment, unwinds no transaction, and leaves them the benefit of the judgment if affirmed. A limited stay or abeyance simply prevents the June 3 Ruling from operating as a shortcut before the related appeals are decided.

The public interest favors orderly appellate review, enforcement of the automatic stay, respect for remand orders, due process, and protection of nonparty property rights. Settlement approval cannot substitute for statutory authority, necessary parties, service, stay relief, and a binding adjudication of property rights.

## V. NO BOND SHOULD BE REQUIRED

No bond should be required because the requested relief is nonmonetary, preserves existing legal and property positions, and creates no collection risk.

## VI. CAUSE EXISTS FOR A STAY BEYOND 30 DAYS

The 14-day automatic stay under Bankruptcy Rule 8025(a) has expired. Cause exists under Rule 8025(b)(2) for a stay extending beyond 30 days after entry of judgment. Myers timely sought rehearing, promptly appealed after rehearing was denied, and now seeks preservation while the Fourth Circuit reviews the June 3 Ruling and June 29 Order. Furthermore, Civil Action No. 26-2175-TDC remains pending and involves overlapping issues arising from the same Adversary.

Appx. 0922

A stay is necessary to preserve meaningful appellate review and to prevent the challenged conclusions from being invoked as operative predicates before the related appeals are resolved.

## VII. CONCLUSION

Myers respectfully requests an order staying the effect and enforceability of the June 3 Ruling (ECF Nos. 41 and 42) and the June 29 Order (ECF No. 45) pending Fourth Circuit review.

At minimum, Myers requests that the Court stay, or alternatively hold in abeyance, the operative and preclusive effect of the June 3 Ruling until Civil Action No. 26-2175-TDC is resolved.

Myers further requests that the stay include, to the extent within this Court's authority, any operative, preclusive, enforcement, governance, title, control, evidentiary, or estoppel effect of this Court's conclusions that (i) the January 12, 2023 state-court "Order Entering Partial Judgment and Stay" was a "valid, final order" and (ii) "as of January 12, 2023, Serv Trust was an alter ego of Myers, its assets were part of Myers's bankruptcy estate, and the bankruptcy court had subject matter jurisdiction over the administration of Serv Trust's assets."

Myers also requests that the June 3 Ruling not operate pending review as a substitute for a final, unstayed, executable state-court judgment, a Rule 7001 proceeding, a section 541 adjudication, service, due process, standing, stay relief,

Appx. 0923

or an adjudication binding Serv Trust, the current Serv Trust trustee, the Serv Trust beneficiaries, 6789 Goldsboro LLC, Myers, or other absent nonparties.

Dated: July 16, 2026

Respectfully submitted,

Gregory B. Myers, pro se
700 Gulf Shore Blvd. N.
Naples, Florida 34102
(301) 325-2312
gregbmyers@verizon.net

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Bankruptcy Procedure 8013(f)(3)(A) and 8015(h), I certify that this Amended Motion contains 5,120 words, excluding the items exempted by Rule 8015(g). This Amended Motion was prepared in a 14-point proportionally spaced typeface using Times New Roman.

Gregory B. Myers, pro se

Appx. 0924

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of July, 2026, I filed the foregoing APPELLANT GREGORY B. MYERS'S AMENDED MOTION FOR STAY PENDING APPEAL OF THE EFFECT AND ENFORCEABILITY OF THE JUNE 3, 2026 MEMORANDUM OPINION AND ORDER, together with the accompanying Proposed Order and Exhibit Appendix, including the Index of Exhibits, with the Clerk of the United States District Court for the District of Maryland, and served a true and correct copy by First-Class United States Mail, postage prepaid, upon Maurice B. VerStandig, Esq., The VerStandig Law Firm, LLC, 9812 Falls Road, #114-160, Potomac, Maryland 20854, counsel for the King Parties; and Frank J. Mastro, Esq., Schlossberg | Mastro, P.O. Box 2067, Hagerstown, Maryland 21742, counsel for Roger Schlossberg, Chapter 7 Trustee.

Gregory B. Myers, pro se

25

Appx. 0925

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

GREGORY B. MYERS,     )
             )
  Appellant,      )
             )
v.             ) Case No.: 25-2103-TDC
             )
ROGER SCHLOSSBERG, TRUSTEE, )
*et al.*,           )
             )
  Appellees.      )
             )

**OPPOSITION TO APPELLANT'S AMENDED
MOTION FOR STAY PENDING APPEAL**

Appellee, Roger Schlossberg, Chapter 7 Trustee of the Bankruptcy Estate of

Gregory B. Myers (the "Trustee"), by his undersigned counsel, hereby opposes

*Appellant Gregory B. Myers' Amended Motion for Stay Pending Appeal of the Effect*

*and Enforceability of the June 3, 2026 Memorandum Opinion and Order* (the

"*Motion*"), [Dkt. # 51], and respectfully states as follows:

1.  Appellant, Gregory B. Myers ("Myers"), the debtor below, fails to

carry his burden of satisfying each of the elements necessary to support a stay

pending appeal, which involves consideration of the same factors a party must prove

in order to obtain a preliminary injunction. *See, e.g., Campbell v. Garrett*, 2026 WL

1092006, *2 (W.D. Va. Apr. 22, 2026); *In re Kaiser Gypsum Co.*, 2021 WL

3476138, *1 (W.D.N.C. Aug. 6, 2021); *BDC Capital v. Thoburn Ltd. P'ship*, 508

Appx. 0926

B.R. 633, 636 (E.D. Va. 2014) (observing that "[a] preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (citations omitted). Here, Myers cannot satisfy any factor.

2.     First, Myers does not show any likelihood of success on further appeal. Because this Court affirmed the bankruptcy court's orders which, *inter alia*, approved a proposed settlement between the Trustee and the King Parties (*i.e.*, Appellees Brian King, Cristina King, and the Cristina and Brian King Children's Trust) and denied Myers' motion for a stay of the settlement approval order pending appeal – there is an extraordinarily high bar that Myers must overcome in order to obtain relief. Indeed, as aptly observed by a sister court when ruling on a similar motion filed under Rule 8025(b):

> In affirming the Bankruptcy Court's orders, this Court left the bankruptcy proceedings in place and, under such circumstances, the Court has already determined that [Appellant] failed to succeed on the merits. Asking the district court to then find that, under the first prong, [Appellant] is likely to succeed on the merits on appeal under Rule 8025 would require the district court to find that its own order is likely to be reversed. This is a standard that is rarely going to be satisfied.

*Credit One Bank, N.A. v. Anderson (In re Anderson)*, 560 B.R. 84, 89 (S.D.N.Y. 2016) (citations omitted).

3.      Here, Myers merely reargues that the bankruptcy court lacked subject matter jurisdiction because it made no independent determination that Serv Trust – the previously adjudicated alter ego of Myers – was an asset of the bankruptcy estate. *See Motion* at § IV.B. This argument is specious because, as this Court concluded, the approved settlement was limited to a transfer of "all of the right, title and interest of the Trustee, the Debtor and the bankruptcy estate in and to any and all membership interest in or property of 6789 Goldsboro LLC" which, in turn, "ensured that the Settlement Order extended only to property of the bankruptcy estate, without needing to adjudicate the exact contours of what interests of Serv Trust, if any, were part of the bankruptcy estate." *See Memorandum Opinion*, [Dkt. #41], at 14-15.

4.      Similarly specious is Myers' contention that the state court order adjudicating Serv Trust to be his alter ego was nonfinal. *See Motion* at § IV.C. This Court agreed with the bankruptcy court that the Alter Ego Order "was a valid, final order" and that it was "entitled to full force and effect" by the bankruptcy court given that it had not been stayed. *See Memorandum Opinion*, [Dkt. #41], at 13. Moreover, this Court took judicial notice that, on February 11, 2026, the Appellate Court of Maryland dismissed Myers' appeal in the state court case in which the Alter Ego Order was entered. *Id.*

3

5. Not only has Myers failed to make the required showing that he is likely to prevail on appeal to the Fourth Circuit,[1] he also makes no showing of irreparable harm. Indeed, the *Motion* does not articulate how this Court's judgment will harm Myers, if at all, let alone explain how such harm will be irreparable. Rather, it merely speculates as to what might occur in the absence of a stay. *See, e.g., Motion* at § IV.G ("If the challenged conclusions operate before review, they *may be* used as predicates…"); *id.* ("Without a stay, the June 3 conclusions *may be* invoked…"); *id.* ("Those consequences *may not be* fully reversible…") (emphasis added).

6. Further, Appellees already have consummated the settlement approved more than a year ago by the bankruptcy court. The Trustee clearly would be prejudiced if forced to return the consideration he has received from the King Parties in the settlement.[2]

7. Finally, Myers has not articulated any conceivable public interest that would be furthered by the imposition of a stay in this case. Rather, the public interest would be served by denying a stay. The instant *Motion* is yet another attempt by

---

[1] Myers also appears to assert a new argument which was not raised below (or previously in this Court), concerning the alleged effect of the automatic stay in his Florida bankruptcy case, *see Motion* at § IV.E, and, therefore, cannot be urged as a ground for reversal of this Court's judgment on further appeal. *See, e.g., United Rentals, Inc. v. Angell*, 592 F.3d 525, 531 n.2 (4th Cir. 2010) ("Because this argument is raised for the first time on appeal, we do not address it.").

[2] Indeed, Myers' prior request for a stay of the settlement order pending appeal was denied by the bankruptcy court and that denial subsequently was affirmed by this Court.

4

Myers – who has a well-documented history of litigation abuse[3] – "to gum up the judicial process and ignore valid court orders as he sees fit," as this Court has observed in Myers' prior appeals. *See, e.g., Myers v. McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A.*, 2020 WL 758154, *4 (D. Md. Feb. 13, 2020) (Xinis, J.).

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that the *Motion* be DENIED.

Respectfully submitted,

SCHLOSSBERG | MASTRO

_____/s/ Frank J. Mastro_____
Frank J. Mastro #24679
P.O. Box 2067
Hagerstown, MD 21742
(301) 739-8610
fmastro@schlosslaw.com
*Attorneys for Appellee,*
*Roger Schlossberg, Trustee*

---

[3] "Since 2015, hundreds of pages of opinions from more than a dozen different courts (both federal and state) have been written regarding the legal machinations, 'sprawling tapestry of bad faith abuse of the bankruptcy process,' and 'dilatory and abusive litigation tactics' by the Debtor [Mr. Myers], his spouse, Barbara Ann Kelly ('Ms. Kelly'), and the entities they own." *In re Myers*, 2025 WL 1662344, *2 (Bankr. D.D.C. June 11, 2023) (further observing that "[t]he Debtor and Ms. Kelly are not 'honest but unfortunate debtors,' but instead seek only to utilize the bankruptcy system as a sword to delay unfavorable litigation results and frustrate their creditors").

Appx. 0930

CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. Bankr. P. 8015(h), I hereby certify that the foregoing Opposition complies with the type-volume limitations of Fed. R. Bankr. P. 8013(f)(3) because this document contains 1,089 words as measured by Microsoft Word. I further certify that this motion complies with the typeface and type style requirements of Fed. R. Bankr. P. 8013(f)(2) because this document has been prepared in Microsoft Word using a proportionally spaced typeface (14-point Times New Roman font).

> */s/ Frank J. Mastro*
> Frank J. Mastro


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the **23rd** day of **July 2026**, I served a copy of the foregoing *Opposition to Appellant's Amended Motion for Stay Pending Appeal* upon all parties as follows: (a) electronically via ECF to:

> Maurice B. VerStandig, Esq.
> 9812 Falls Road, #114-160
> Potomac, MD 20854
> mac@mvbesq.com
> *Attorney for Appellees,*
> *Brian King, Cristina King and the*
> *Cristina and Brian King Children's Trust*

and (b) via first-class mail, postage prepaid, to:

> Gregory B. Myers
> 700 Gulf Shore Blvd. North
> Naples, FL 34102
> *Appellant / Debtor*

> */s/ Frank J. Mastro*
> Frank J. Mastro

6

Appx. 0931